

**Search for Cases by:** Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print

GrantedPublicAccess **Logoff MFPUDLOWSKI**

## 21TE-CC00360 - JENNIFER BUMETER ET AL V MACO MANAGEMENT COM ET AL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

**Sort Date Entries:** ◉ Descending   ○ Ascending

**Display Options:** All Entries

---

**12/29/2022** ☐ **Motion Hearing Held**

DOCKET ENTRY FROM MOTION HEARING 12-29-2022 CASE HEARD IN PHELPS COUNTY---- PARTIES APPEAR BY COUNSEL. PLAINTIFF'S GRANTED 30 DAYS TO RESPOND. COUNSEL AND THE COURT CONFER AND VARIOUS RULINGS MADE ON OBJECTIONS TO DISCOVERY WHICH ARE TO BE MEMORIALIZED IN A FORMAL ORDER TO BE APPROVED FOR BOTH SIDES BEFORE IT IS SUBMITTED TO THE COURT. JB

   **Scheduled For:** 12/29/2022;  1:00 PM ;  JOHN D BEGER;  Phelps

**12/28/2022** ☐ **Response Filed**

Defendants Response to Plaintiffs Motion for Leave to File Second Amended Petition; Electronic Filing Certificate of Service.
   **Filed By:** MARIE FRANCES WEISENBERGER
   **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**12/27/2022** ☐ **Judge/Clerk - Note**

PLEASE NOTE THIS CASE WILL BE HEARD IN PHELPS COUNTY AND NOT TEXAS COUNTY ON 12-29-2022 AT 9:00 A.M.

**12/21/2022** ☐ **Notice of Hearing Filed**

NOH on MFL to File 2nd Amd Pet; Electronic Filing Certificate of Service.
   **Filed By:** BRANDON JACOB KLAR
   **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Memorandum Filed**

Memo of Good Faith; Electronic Filing Certificate of Service.
   **Filed By:** BRANDON JACOB KLAR
   **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Judge/Clerk - Note**

FILINGS ON 12-21-2022 SENT TO JUDGE BEGER PER ACTION QUEUE FOR REVIEW.

☐ **Response Filed**

Plfs Resp to Defs Objs to Depo Topics; Electronic Filing Certificate of Service.
   **Filed By:** BRANDON JACOB KLAR
   **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Motion for Leave**

Mtn for Leave to File 2nd Amd Pet; Second Amended Petition; Electronic Filing Certificate of Service.
   **Filed By:** BRANDON JACOB KLAR

☐ **Memorandum Filed**

Memo in Opp to Mtn for Special Master; Electronic Filing Certificate of Service.
   **Filed By:** BRANDON JACOB KLAR

☐ **Memorandum Filed**

Memo Good Faith; Electronic Filing Certificate of Service.
   **Filed By:** BRANDON JACOB KLAR

☐ **Notice of Hearing Filed**

Notice of Hearing Motion Summary for December 29, 2022; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC.

**Response Filed**

Defendants Response in Opposition to Plaintiffs Motion for Entry of Scheduling Order; Exhibit A; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** SUMMERSVILLE ESTATES, L.P.

12/20/2022 **Motion Filed**

Defendants Motion for Protective Order to Limit Corporate Representaive Topics and Production; Exhibit 1; Exhibit 2; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**Motion Filed**

Defendants Motion for Appointment of a Special Master; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

**Cert Serv Resp Req Prod Doc Th**

Certificate of Service; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

12/16/2022 **Notice to Take Deposition**

ANOD of Crp Rep of Summersville; Ex A - ANOD of Summersville; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Notice to Take Deposition**

2nd ANOD of Crp Rep of Maco; Ex A - 2nd ANOD of Maco; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR

**Cert Serv Req Prod Docs Things**

COS - Ps 4th Supp RFP to Maco Summersville; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Cert Serv Answers Interrog Fil**

COS - Ps 1st Supp Ans to Ds Revised Written Rogs; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR

12/14/2022 **Motion Filed**

Motion for Entry of Scheduling Order; Exhibit 1; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

12/09/2022 **Notice to Take Deposition**

NOD of Crp Rep of Summersville; Ex A - NOD of Summersville; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Notice to Take Deposition**

ANOD of Crp Rep of Maco; Ex A - ANOD of Maco; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR

12/05/2022 **Cert Serv Req Prod Docs Things**

COS - Plfs 3rd Supp RFP to Dfts Maco Summersville; Electronic Filing Certificate of Service.
**Filed By:** MICHAEL PAUL SINGER
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**11/23/2022** ☐ **Cert Serv Resp Req Prod Doc Th**

Certificate of Service; Electronic Filing Certificate of Service.
> **Filed By:** MARIE FRANCES WEISENBERGER
> **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**11/03/2022** ☐ **Motion Hearing Scheduled**

> **Associated Entries:** 12/29/2022 - Motion Hearing Held ⊞
> **Scheduled For:** 12/29/2022;  1:00 PM ;  JOHN D BEGER;  Phelps

**11/02/2022** ☐ **Motion Hearing Held**

CASE CALLED. PETITIONERS APPEAR BY COUNSEL BRANDON KLAR VIA WEBEX. RESPONDENTS APPEAR BY COUNSEL CRAIG KLOTZ VIA WEBEX. RICHARD HANSON APPEARS. PARTIES TAKE UP DISCOVERY ISSUES ON COURTS MOTION. CASE IS SET FOR 12-29-2022 AT 1:00 P.M. IN PHELPS COUNTY. COUNSEL TO APPEAR IN PERSON.
> **Scheduled For:** 11/02/2022;  8:59 AM ;  JOHN D BEGER;  Texas

☐ **Notice**

Notice of Cancellation of Deposition - Meier; Electronic Filing Certificate of Service.
> **Filed By:** MARIE FRANCES WEISENBERGER
> **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Notice**

Notice of Cancellation of Deposition - Bumeter; Electronic Filing Certificate of Service.
> **Filed By:** MARIE FRANCES WEISENBERGER

**11/01/2022** ☐ **Response Filed**

Response in Opposition to Plaintiffs Application and Affidavit; Electronic Filing Certificate of Service.
> **Filed By:** MARIE FRANCES WEISENBERGER
> **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Entry of Appearance Filed**

Entry of Appearance; Electronic Filing Certificate of Service.
> **Filed By:** CRAIG KLOTZ
> **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**10/27/2022** ☐ **Application Filed**

Application for Attys Fees Related to Disc Disputes; Affidavit of Brandon J. Klar; Ex 1; Ex 2; Ex 3; Electronic Filing Certificate of Service.
> **Filed By:** BRIAN DAVID KLAR
> **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**10/26/2022** ☐ **Reply**

Reply in Support of Plaintiffs Motion to Amend and for Attorneys Fees; Electronic Filing Certificate of Service.
> **Filed By:** BRANDON JACOB KLAR
> **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Notice of Hearing Filed**

Notice of Hearing Combined Summary 11-2-22; Electronic Filing Certificate of Service.
> **Filed By:** MARIE FRANCES WEISENBERGER
> **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Response Filed**

Response in Opposition to Plaintiffs Motion to Amend Scheduling Order and for Attorneys Fees; Exhibit 1; Electronic Filing Certificate of Service.
> **Filed By:** MARIE FRANCES WEISENBERGER

**10/25/2022** ☐ **Notice**

Notice of Hearing 11-2-22; Electronic Filing Certificate of Service.
> **Filed By:** BRANDON JACOB KLAR

EXHIBIT A - STATE COURT FILE

**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Motion Filed**

Motion to Amend Scheduling Order and for Attorneys Fees; Exhibit 1; Exhibit 2; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR
    **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

10/24/2022 ☐ **Cert Serv Req Prod Docs Things**

COS - Plfs 2nd Supp RFP to Dfts; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR
    **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

10/14/2022 ☐ **Notice to Take Deposition**

Notice of Deposition for Eric Meier; Electronic Filing Certificate of Service.
    **Filed By:** MARIE FRANCES WEISENBERGER
    **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Notice to Take Deposition**

Notice of Deposition for Jennifer Bumeter; Electronic Filing Certificate of Service.
    **Filed By:** MARIE FRANCES WEISENBERGER

10/12/2022 ☐ **Notice**

Notice of Cancellation of Depos; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR
    **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

10/11/2022 ☐ **Entry of Appearance Filed**

EOA - REH; Electronic Filing Certificate of Service.
    **Filed By:** RICHARD EDWARD HANSON
    **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

10/10/2022 ☐ **Notice to Take Deposition**

NOD of Michelle McGuire; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR
    **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Notice to Take Deposition**

NOD of Casey Carter; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR

☐ **Notice to Take Deposition**

NOD of Linda Eberly; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR

☐ **Notice to Take Deposition**

NOD of Jennifer Christianson; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR

☐ **Notice to Take Deposition**

NOD of Steve Conner; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR

10/05/2022 ☐ **Response Filed**

Response to Motion for Protective Order; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR
    **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Memo of Law in Suppt of Filed**

Memorandum in Support; Exhibit 1; Exhibit 2; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR

EXHIBIT A - STATE COURT FILE

**10/03/2022** ☐ **Notice of Hearing Filed**

Notice of Hearing; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Motion Filed**

Defendants Motion for Protective Order for Witness; Exhibits A-M; Exhibits N-P; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

☐ **Response Filed**

Defendants Response in Opposition to Plaintiffs Motion to Compel; Exhibit A; Exhibit B; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

**09/30/2022** ☐ **Subpoena Served**

Return or Service on Bridgett Kittner - Served on 7.14.22; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER

**09/23/2022** ☐ **Cert Serv Resp Req Prod Doc Th**

Certificate of Service; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**09/13/2022** ☐ **Motion Hearing Scheduled**

Judge Beger By computer: https://mocourts.webex.com/meet/john.beger Join by phone +1-408-418-9388 United States Toll Access code: 960 524 065
**Associated Entries: 11/02/2022 - Motion Hearing Held** ⊞
**Scheduled For:** 11/02/2022;  8:59 AM ;  JOHN D BEGER;  Texas

**09/12/2022** ☐ **Notice of Hearing Filed**

NOH on Plfs MTC; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**09/08/2022** ☐ **Motion to Compel**

Motion to Compel; Exhibit 1; Exhibit 2; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**09/02/2022** ☐ **Jury Trial Scheduled**

**Scheduled For:** 08/14/2023;  9:00 AM ;  JOHN D BEGER;  Texas

☐ **Trial Setting Held**

CASE CALLED. PETITIONERS APPEAR BY COUNSEL BRANDON KLAR VIA WEBEX. RESPONDENTS APPEAR BY COUNSEL MARIE WEISENBERGER VIA WEBEX. JURY TRIAL SET FOR AUGUST 14-16, 2023 AT 9:00 A.M.
**Scheduled For:** 09/02/2022;  8:59 AM ;  JOHN D BEGER;  Texas

☐ **Cert Serv Resp Req Prod Doc Th**

Certificate of Service; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**08/26/2022** ☐ **Cert Serv Req Prod Docs Things**

Certificate of Service; Electronic Filing Certificate of Service. Plaintiff's Jennifer Bumeter and Eric Meier's Supplemental Requests for Production of documents directed to defendants
**Filed By:** BRANDON JACOB KLAR

EXHIBIT A - STATE COURT FILE

**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Motion Filed**

Defendants Motion for Clarification and to Amend 7.26.22 Order; Exhibit 1 to Defendants Motion for Clarification and to Amend the 7-26-22 Order; Electronic Filing Certificate of Service.
    **Filed By:** MARIE FRANCES WEISENBERGER
    **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

08/17/2022  **Notice to Take Deposition**

Cross Notice of Videotaped Deposition; Electronic Filing Certificate of Service.
    **Filed By:** MARIE FRANCES WEISENBERGER
    **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

08/08/2022  **Notice to Take Deposition**

NOD of Dawn Sims; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR
    **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Cert Serv Resp Req Prod Doc Th**

Certificate of Service; Electronic Filing Certificate of Service.
    **Filed By:** MARIE FRANCES WEISENBERGER
    **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**Order**

JOINT STIPULATION AND PROTECTIVE ORDER. ANY PARTY MAY SUBMIT DOCUMENTS AS CONFIDENTIAL INFORMATION WITHIN STIPULATION AND PROTECTIVE ORDER.

08/05/2022  **Response Filed**

Defendants Response in Opposition to Motion for Relief filed 7.27.22; Exhibit A; Electronic Filing Certificate of Service.
    **Filed By:** MARIE FRANCES WEISENBERGER
    **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

08/03/2022  **Judge/Clerk - Note**

PROPOSED STIPULATION AND PROTECTIVE ORDER SENT TO JUDGE BEGER FOR REVIEW PER ACTION QUEUE.

**Proposed Order Filed**

Joint Stipulation and Protective Order; Electronic Filing Certificate of Service.
    **Filed By:** MARIE FRANCES WEISENBERGER
    **On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

07/27/2022  **Memorandum Filed**

Memorandum in Support; Exhibit 1; Exhibit 2; Electronic Filing Certificate of Service.
    **Filed By:** BRANDON JACOB KLAR
    **On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Trial Setting Scheduled**

TO JOIN WEBEX: Judge Beger By computer: https://mocourts.webex.com/meet/john.beger Join by phone +1-408-418-9388 United States Toll Access code: 960 524 065
    **Associated Entries: 09/02/2022 - Trial Setting Held**
    **Scheduled For:** 09/02/2022; 8:59 AM ; JOHN D BEGER; Texas

07/26/2022  **Order**

ORDER REGARDING DISCOVERY PERTAINING TO PARTIES AND FACT WITNESSES. DEFENDANTS AND THEIR AGENTS OR REPRESENTATIVES SHALL BE DEPOSED WITHIN 90 DAYS OF THIS ORDER, CONDITIONED UPON PLAINTIFF'S PROVIDING 10 DAYS WRITTEN NOTICE OF THE PERSON TO BE DEPOSED. PLAINTIFF'S SHALL BE DEPOSED WITHIN 90 DAYS OF THIS ORDER. FACT WITNESSES IDENTIFIED BY DEFENDANTS AND PLAINTIFF'S SHALL BE DEPOSED WITHIN 120 DAYS OF PARTY DEADLINE. THE PARTIES WILL WORK COOPERATIVELY TO SCHEDULE DEPOSITIONS. THIS ORDER, INCLUSIVE OF THE ABOVE

EXHIBIT A - STATE COURT FILE

DATES ARE SUBJECT TO TO CHANGE BY WRITTEN AGREEMENT OF THE PARTIES OR BY FURTHER ORDER OF THE COURT. THIS ORDER SHALL NOT BE READ TO INCLUDE A SCHEDULING ORDER FOR THE DEPOSITIONS OF ANY EXPERTS TO BE NAMED IN THE FURTER BY EACH RESPECTIVE PARTY. CASE SET 9-2-2022 AT 9:00 A.M. FOR SETTING. COUNSEL MAY APPEAR BY WEBEX.
**Filed By:** JOHN D BEGER

**Order**

MOTION FOR RELIEF ARGUED AND TAKEN UNDER ADVISEMENT ON 7-19-2022. REQUEST FOR DISCLOSURE NUMBER 4 (EXHIBIT A TO THE MOTION) IS GRANTED.
**Filed By:** JOHN D BEGER

**07/21/2022**    **Proposed Order Filed**

Defendants Proposed Order Regarding Discovery Pertaining to Parties and Fact Witnesses; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**Judge/Clerk - Note**

PROPOSED ORDER SENT TO JUDGE BEGER PER ACTION QUEUE FOR REVIEW.

**Proposed Order Filed**

Proposed Order Regarding Discovery; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**07/20/2022**    **Exhibit Filed**

Deposition Transcript and Exhibits of Susan Austin - part 8; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**Exhibit Filed**

Deposition Transcript and Exhibits of Susan Austin - part 7; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

**Exhibit Filed**

Deposition Transcript and Exhibits of Susan Austin - part 6; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**Exhibit Filed**

Deposition Transcript and Exhibits of Susan Austin - part 5; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

**Exhibit Filed**

Deposition Transcript and Exhibits of Susan Austin - part 4; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

**Exhibit Filed**

Deposition Transcript and Exhibits of Susan Austin - part 3; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**Exhibit Filed**

Deposition Transcript and Exhibits of Susan Austin - part 2; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

**Exhibit Filed**

Deposition Transcript and Exhibits of Susan Austin - part 1; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

**07/19/2022**    **Order**

MOTION FOR RELIEF ARGUED AND SUBMITTED PENDING RECEIPT OF TRANSCRIPT. MOTION FOR PROTECTIVE ORDER AND TO QUASH CORPORATE REPRESENTATIVE IS DENIED. EACH SIDE GIVEN ONE WEEK TO PROVIDE PROPOSED SCHEDULING ORDER TO COURT.

EXHIBIT A - STATE COURT FILE

**Filed By:** JOHN D BEGER
**Associated Entries:** 07/05/2022 - <u>Motion Filed</u> ⊞
**Associated Entries:** 07/06/2022 - <u>Motion to Quash</u> ⊞
**Associated Entries:** 07/14/2022 - <u>Motion Filed</u> ⊞

☐ **Motion Hearing Held**

CASE CALLED. PETITIONERS APPEAR BY COUNSEL BRANDON KLAR. RESPONDENT APPEARS BY COUNSEL MARIE WEISENBEGER. MOTION FOR RELIEF ARGUED AND SUBMITTED PENDING RECEIPT OF TRANSCRIPT. MOTION FOR PROTECTIVE ORDER AND TO QUASH CORPORATE REPRESENTATIVE IS DENIED. EACH SIDE GIVEN ONE WEEK TO PROVIDE PROPOSED SCHEDULING ORDER TO COURT.
**Scheduled For:** 07/19/2022;  8:59 AM ;  JOHN D BEGER;  Texas

**07/14/2022** ☐ <u>**Objections Filed**</u>

Defendant Macos Objections to Corporate Representative Topics; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC.

☐ <u>**Memo of Law in Suppt of Filed**</u>

Memorandum in Support and Opposition; Exhibit 1; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ <u>**Motion Filed**</u>

Defendants Motion for Protective Order and Motion to Quash Corporate Representative Deposition Notice; Exhibit A; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.
**Associated Entries:** 07/19/2022 - Order ⊞

**07/12/2022** ☐ **Judge/Clerk - Note**

By computer: https://mocourts.webex.com/meet/john.beger Join by phone +1-408-418-9388 United States Toll Access code: 960 524 065

☐ <u>**Notice of Hearing Filed**</u>

NOH on Plfs Mtn for Relief; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Motion Hearing Scheduled**

**Associated Entries:** 07/19/2022 - Motion Hearing Held ⊞
**Scheduled For:** 07/19/2022;  8:59 AM ;  JOHN D BEGER;  Texas

☐ <u>**Notice of Hearing Filed**</u>

Notice of Hearing; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**07/08/2022** ☐ <u>**Notice to Take Deposition**</u>

NOD of Corp Rep of Maco Managment Co; Ex A; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ <u>**Notice**</u>

Notice of Cancellation of Deposition of Rebecca Johnson; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ <u>**Notice**</u>

Notice of Cancellation of Depo of Dawn Sims; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

EXHIBIT A - STATE COURT FILE

**07/07/2022** ☐ **Judge/Clerk - Note**

MOTION FOR RELIEF AND MOTION TO QUASH SENT TO JUDGE BEGER PER ACTION QUEUE FOR REVIEW.

**07/06/2022** ☐ **Memo of Law in Suppt of Filed**

Memorandum in Support and Opposition; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Motion to Quash**

Defendants Motion to Quash Sims Notice of Deposition; Exhibit A; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.
**Associated Entries: 07/19/2022 - Order** ⊞

☐ **Response Filed**

Defendants Response in Opposition to Motion for Relief; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

**07/05/2022** ☐ **Motion Filed**

Motion for Relief; Exhibit A; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER
**Associated Entries: 07/19/2022 - Order** ⊞

**07/01/2022** ☐ **Notice**

Notice of Deposition; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**06/29/2022** ☐ **Notice to Take Deposition**

Notice of Deposition; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**06/27/2022** ☐ **Subpoena Served**

RETURN OF SERVICE-SERVED-SUBPOENA-REBECCA JOHNSON
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**06/14/2022** ☐ **Answer Filed**

Defendants Answer to Plaintiffs First Amended Petition Wrongful Death; Exhibit A; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Notice to Take Deposition**

Re-Notice of Deposition - Susan Austin; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**06/13/2022** ☐ **Notice**

Notice of Deposition; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Notice**

Notice of Cancellation of Videotaped Deposition; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Order - Denied**

THE DEFENDANTS ARGUMENTS WILL LIKEL BE RECONSIDERED IN A MOTION FOR SUMMARY JUDGMENT. THE MOTION TO DISMISS IS DENIED.
**Filed By:** JOHN D BEGER
**Associated Entries:** 05/23/2022 - **Motion to Dismiss** ±

**06/10/2022** ☐ **Motion Hearing Scheduled**

CASE CALLED. PETITIONER APPEARS BY COUNSEL BRANDON KLAR. RESPONDENT APPEARS BY COUNSEL MARIC PUDLOWSKI. PARTIES APPEAR BY WEBEX. ARGUMENT HEARD ON MOTION TO DISMISS AND TAKEN UNDER SUBMISSION.
**Associated Entries:** 04/19/2022 - Hearing Continued/Rescheduled ±
**Associated Entries:** 05/18/2022 - Motion Hearing Scheduled
**Scheduled For:** 06/10/2022; 8:59 AM ; JOHN D BEGER; Texas

☐ **Notice**

Notice of Cancellation of Deposition; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**06/09/2022** ☐ **Memorandum Filed**

Memorandum in Opposition; Exhibit A; Exhibit B; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**05/23/2022** ☐ **Request Filed**

Defendants Request to Appear by Webex; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Notice of Hearing Filed**

Notice of Hearing; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

☐ **Memo of Law in Suppt of Filed**

Memorandum in Support of Defendants Motion to Dismiss; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

☐ **Motion to Dismiss**

Defendants Motion to Dismiss First Amended Petition, or Alternatively, Motion to Strike and for More Definite Statement; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**Associated Entries:** 06/13/2022 - **Order - Denied** ±

**05/18/2022** ☐ **Motion Hearing Scheduled**

**Associated Entries:** 06/10/2022 - Motion Hearing Scheduled ±
**Scheduled For:** 06/10/2022; 8:59 AM ; JOHN D BEGER; Texas

**05/17/2022** ☐ **Amend Pet/Mot to Modfy Filed**

1st Amended Petition; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Hearing Continued/Rescheduled**

CASE CALLED. PETITIONERS APPEAR BY COUNSEL BRANDON KLAR BY WEBEX. RESPONDENTS APPEAR BY COUNSEL DAVID AHLHEIM BY WEBEX. CASE CONTINUED TO 6-10-2022 AT 9:00 A.M.
**Hearing Continued From:** 05/17/2022; 8:59 AM Motion Hearing

**05/13/2022** ☐ **Notice to Take Deposition**

Notice of Deposition; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**05/10/2022** ☐ **Notice to Take Deposition**

Notice of Deposition for Eric Meier; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Notice to Take Deposition**

Notice of Deposition for Jennifer Bumeter; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER

**04/20/2022** ☐ **Motion Hearing Scheduled**

**Associated Entries: 05/17/2022 - Hearing Continued/Rescheduled** ⊞
**Scheduled For:** 05/17/2022;  8:59 AM ;  JOHN D BEGER;  Texas

**04/19/2022** ☐ **Hearing Continued/Rescheduled**

CASE CALLED AND CONTINUED TO 5-17-2022 AT 9:00 A.M. COUNSEL MAY APPEAR BY
WEBEX FOR MOTION TO DISMISS.
**Hearing Continued From:** 04/19/2022;  8:59 AM Motion Hearing

☐ **Notice of Hearing Filed**

Notice of Hearing; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**04/18/2022** ☐ **Certification Filed**

Certificate of Service; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Judge/Clerk - Note**

DEFENDANTS REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DIMISS COUNT III
SENT TO JUDGE BEGER PER ACTION QUEUE FOR REVIEW.

☐ **Reply**

Defendants Reply to Plaintiffs Memorandum in Opposition to Motion to Dismiss Count III; Electronic
Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**04/15/2022** ☐ **Judge Assigned**

Judge Sidney Pearson to be assigned to the Circuit Court of Texas County, Mo 5-17-2022 for the
purpose of hearing those matters set before the Honorable John D Beger. This assignment is for the
duty of this period only and not an assignment for the individual case.

☐ **Judge/Clerk - Note**

Judge Beger By computer: https://mocourts.webex.com/meet/john.beger Join by phone +1-408-418-
9388 United States Toll Access code: 960 524 065

☐ **Order**

COUNSEL FOR EITHER PARTY MAY APPEAR BY WEBEX JB

**04/14/2022** ☐ **Judge/Clerk - Note**

PLAINTIFF'S JENNIFER BUMETER AND ERIC MEIER'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS SENT TO JUDGE BEGER FOR REVIEW.

**04/13/2022** ☐ **Memorandum Filed**

EXHIBIT A - STATE COURT FILE

Plaintiffs Memorandum in Opposition to Defendants Motion to Dismiss; Exhibit A; Exhibit B; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

04/01/2022 ☐ **Cert Serv Answers Interrog Fil**

Certificate of Service; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

03/16/2022 ☐ **Cert Serv Answers Interrog Fil**

Certificate of Service; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Cert Serv of Interrog Filed**

Certificate of Service; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Request Filed**

Request to Appear by Webex; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

03/15/2022 ☐ Judge/Clerk - Note

TO APPEAR BY WEBEX PLEASE ENTER THE FOLLOWING INFORMATION: Judge Beger By computer: https://mocourts.webex.com/meet/john.beger Join by phone +1-408-418-9388 United States Toll Access code: 960 524 065

☐ **Request Filed**

Plaintiffs Request to Appear by Webex; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

02/18/2022 ☐ Motion Hearing Scheduled

TO JOIN BY WEBEX ENTER THE FOLLOWING By computer: https://mocourts.webex.com/meet/john.beger Join by phone +1-408-418-9388 United States Toll Access code: 960 524 065
**Associated Entries: 04/19/2022 - Hearing Continued/Rescheduled** ⊞
**Scheduled For:** 04/19/2022; 8:59 AM ; JOHN D BEGER; Texas

☐ **Notice of Hearing Filed**

Notice of Hearing; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

02/17/2022 ☐ **Cert Serv Req Prod Docs Things**

Certificate of Service - Defendants Wrongful Death IROGS and RFP to Plaintiffs; Electronic Filing Certificate of Service.
**Filed By:** DAVID THOMAS AHLHEIM
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Entry of Appearance Filed**

Entry of Appearance; Electronic Filing Certificate of Service.
**Filed By:** MARIE FRANCES WEISENBERGER
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

02/14/2022 ☐ **Certificate of Service**

Certificate of Service; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR

EXHIBIT A - STATE COURT FILE

**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**01/04/2022** ☐ **Memo of Law in Suppt of Filed**

Defendants Memorandum of Law in Support of its Motion to Dismiss Count III; Electronic Filing Certificate of Service.
**Filed By:** LINDA MARIE FREEMAN
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**12/20/2021** ☐ **Notice to Take Deposition**

Notice of Deposition; Electronic Filing Certificate of Service.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**12/16/2021** ☐ **Judge/Clerk - Note**

MOTION TO DISMISS COUNT III OF PLAINTIFF'S PETITION SENT TO JUDGE BEGER PER ACTION QUEUE FOR REVIEW.

**12/15/2021** ☐ **Motion to Dismiss**

Defendants Motion to Dismiss Count III of Plaintiffs Petition; Electronic Filing Certificate of Service.
**Filed By:** LINDA MARIE FREEMAN
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Answer Filed**

Defendants Answers and Affirmative Defenses; Electronic Filing Certificate of Service.
**Filed By:** LINDA MARIE FREEMAN

**11/15/2021** ☐ **Entry of Appearance Filed**

Entry of Appearance - LMF; Electronic Filing Certificate of Service.
**Filed By:** LINDA MARIE FREEMAN
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

☐ **Entry of Appearance Filed**

Entry of Appearance - DTA; Electronic Filing Certificate of Service.
**Filed By:** DAVID THOMAS AHLHEIM
**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**11/09/2021** ☐ **Summons Issued-Circuit**

Document ID: 21-SMCC-733, for SUMMERSVILLE ESTATES, L.P.. Summons attached for attorney to retrieve for service.

☐ **Summons Issued-Circuit**

Document ID: 21-SMCC-732, for MACO MANAGEMENT COMPANY, INC.. Summons attached for attorney to retrieve for service.

☐ **Filing Info Sheet eFiling**

**Filed By:** BRANDON JACOB KLAR

☐ **Note to Clerk eFiling**

**Filed By:** BRANDON JACOB KLAR

☐ **Pet Filed in Circuit Ct**

PETITION FOR DAMAGES.
**Filed By:** BRANDON JACOB KLAR
**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

☐ **Judge Assigned**

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - November 09, 2021 - 09:13 AM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, | ) |
| | ) |
| and | ) |
| | ) |
| ERIC MEIER, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| MACO MANAGEMENT CO., INC., and | ) |
| | ) **JURY TRIAL DEMANDED** |
| Serve: 221 Bolivar Street | ) |
| Jefferson City, MO 65101 | ) |
| | ) |
| SUMMERSVILLE ESTATES, L.P. | ) |
| | ) |
| Serve: James K. Maddox | ) |
| 111 N. Main Street, PP Box 68 | ) |
| Clarkton, MO 63837 | ) |
| | ) |
| Defendants. | ) |
| | ) |

**PETITION FOR DAMAGES**
**(WRONGFUL DEATH)**

COME NOW, Plaintiffs, JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through the undersigned counsel, and for their claims against Defendant MACO MANAGEMENT CO., INC. and SUMMERSVILLE ESTATES, L.P. (collectively "Defendants"), state as follows:

**INTRODUCTION, PARTIES AND VENUE**

1. Plaintiff Jennifer Bumeter is and was at all times relevant a resident of St. Charles County, Missouri.

2. Plaintiff Eric Meier is and was at all times relevant a resident of St. Charles County, Missouri.

EXHIBIT A - STATE COURT FILE

3.      Plaintiffs are the children and only class (1) beneficiaries of Robin Rose Fischer ("Decedent") pursuant to RSMo §537.080.

4.      Defendant Maco Management Co., Inc. ("Defendant Maco") is, and was at all times relevant, a professional real estate management company with offices located throughout the State of Missouri.

5.      Defendant Maco is responsible for overseeing and managing several low-income housing complexes in the state of Missouri, including the Summersville Estates, located in Summersville, Missouri ("Summersville Estates"), located in Texas County, Missouri.

6.      Defendant Summersville Estates, L.P. ("Defendant Summersville") is, and was at all times relevant, the property owner of Summersville Estates and the principal of Defendant Maco.

7.      Defendant Maco vests several of the supervision duties and responsibilities for Summersville Estates in its property manager, Dawn Sims ("Ms. Sims").

8.      Prior to her employment with Defendant Maco, Ms. Sims had no experience as a property manager or in any similar field.

9.      Decedent was a tenant of Summersville Estates from July 1, 2016 until her death on June 27, 2021.

10.     Decedent was, at all times relevant herein, disabled and required the ambulatory assistance of a cane or walker.

11.     The incident which resulted in Decedent's death ("Incident") took place at Summersville Estates and, as such, venue is proper in Texas County, Missouri.

12.     On or about June 27, 2021, Decedent's neighbor at Summersville Estates alerted authorities to the presence of smoke in her own apartment.

13. Members of both Summersville's Police Department and Fire and Rescue Department ("Emergency Departments") arrived at Summersville Estates and were unable to determine the origin of such smoke or the location of any possible fire.

14. Incident reports from each of the Emergency Departments make absolutely no mention whatsoever of smoke detectors or any similar alarm being triggered from any apartment at Summersville Estates. One such report states that smoke detectors were present, but their power supply and operation could not be determined.

15. Eventually, officers and fire fighters determined the origin of the fire as being Decedent's apartment unit.

16. By the time a rescue could be attempted, Decedent had succumbed to the presence of smoke in her apartment unit.

17. The Texas County coroner determined Decedent's cause of death was carbon monoxide poisoning due to smoke inhalation.

18. Ms. Sims purportedly conducted an inspection of Decedent's apartment on June 15, 2021, and she reported that such inspection revealed working smoke alarms and clean firestops.

19. Neither of the two (2) smoke detectors in Decedent's apartment were in place or in working condition at the time of the Incident, and Ms. Sims was aware of the same.

20. Ms. Sims was aware, or should have been aware, of the facts set forth in paragraph 19 above prior to the Incident.

21. The fire suppression devices in Decedent's apartment unit which remained in place following the Incident expired in October 2020.

22. Ms. Sims was aware, or should have been aware, of the facts set forth in paragraph 21 above prior to the Incident.

Electronically Filed - Texas - November 09, 2021 - 09:13 AM

## COUNT I – WRONGFUL DEATH
### Against Defendant Maco

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and for their cause of action for wrongful death pursuant to RSMo §537.080 state as follows:

23.	Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

24.	Plaintiffs are the son and daughter of Decedent and, as such, are the proper parties under Missouri's Wrongful Death Statute to bring this cause of action against Defendant Maco.

25.	Defendant Maco, by and through its agent, servant, and employee, Ms. Sims, owed a duty to Decedent to effectuate maintenance and repairs, properly inspect apartment units and generally ensure the safety of Defendant Maco's tenants.

26.	Defendant Maco, by and through its agent, servant, and employee, Ms. Sims, breached this duty and is guilty of one or more of the following acts of negligence by failing to adhere to the standards of due care, skill and practice ordinarily exercised by members of their profession under the same or similar circumstances, to-wit:

a.	By negligently and carelessly hiring Ms. Sims to manage a low-income housing complex when they were aware she lacked experience in such field;

b.	By negligently and carelessly failing to train Ms. Sims or any other agent, servant or employee who was responsible for the maintenance and supervision of Summersville Estates;

c.	By negligently and carelessly failing to supervise Ms. Sims's actions, or inactions, in any way;

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - November 09, 2021 - 09:13 AM

d. By negligently and carelessly allowing Ms. Sims to have improper personal relationships with tenants, and others, which hampered her ability to appropriately perform the duties for which she was hired;

e. By negligently and carelessly failing to implement appropriate supervisory measures which would have ensured Ms. Sims' performance of the duties for which she was hired;

f. By negligently and carelessly allowing Ms. Sims to forge inspection reports which purportedly memorialize the performance of her job duties;

g. By negligently and carelessly relying on Ms. Sims' purported apartment inspections and failing to take any additional efforts to ensure the safety of its tenants;

h. By negligently and carelessly failing to provide adequate personnel and/or staff to ensure Ms. Sim's oversight and supervision; and

i. By negligently and carelessly failing to perform and measure up to the required standards of care required and observed by members of the same profession and in further particulars presently unknown to Plaintiffs but which are exceedingly likely to be disclosed upon proper discovery procedures during the course of litigation.

27. Dawn Sims was, at all relevant times, an employee and agent of Defendant Maco. At all relevant times, Ms. Sims acted within the scope of her employment with Defendant Maco, and her acts and omissions are directly chargeable to her employer, Defendant Maco under state law pursuant to *respondeat superior*.

28. As a direct and proximate result of Defendant Maco's negligence as stated above, Decedent was forced to endure severe pain and suffering, as well as anxiety, mental distress, anguish, and ultimately death.

29. As a further direct and proximate cause of the negligence of Defendant Maco as stated above, Plaintiffs have suffered immense loss in the passing of their mother, including but in no way limited to, loss her services, consortium, companionship, comfort, guidance, instruction, counsel, and support. Moreover, Decedent's death resulted in Plaintiffs' payment of expenses for her funeral and final disposition, as well as expenses for their own therapeutic treatment.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendant Maco, for the wrongful death of Robin Rose Fischer, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

<div align="center">

**COUNT II – WRONGFUL DEATH**
**Against Defendant Summersville**

</div>

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and for their cause of action for wrongful death pursuant to RSMo §537.080 state as follows:

30. Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

31. Plaintiffs are the son and daughter of Decedent and, as such, are the proper parties under Missouri's Wrongful Death Statute to bring this cause of action against Defendant Summersville.

32. Defendant Maco was, at all relevant times, an agent of Defendant Summersville. At all relevant times, Defendant Maco acted within the scope of its agency with Defendant

Summersville, and its acts and omissions are directly chargeable to its principal, Defendant Summersville under state law pursuant to *respondeat superior*.

33. As a direct and proximate result of Defendant Maco's negligence as stated above, Decedent was forced to endure severe pain and suffering, as well as anxiety, mental distress, anguish, and ultimately death.

34. As a further direct and proximate cause of the negligence of Defendant Maco as stated above, Plaintiffs have suffered immense loss in the passing of their mother, including but in no way limited to, loss her services, consortium, companionship, comfort, guidance, instruction, counsel, and support. Moreover, Decedent's death resulted in Plaintiffs' payment of expenses for her funeral and final disposition, as well as expenses for their own therapeutic treatment.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendant Summersville, for the wrongful death of Robin Rose Fischer, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

## COUNT III – NEGLIGENT HIRING AND SUPERVISION
### Against Defendants Maco and Summersville

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and, pleading in the alternative to Counts I and II, state as follows:

35. Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

36. At all times relevant to Plaintiffs' claims, Ms. Sims was acting under an agreement to perform services for Defendants.

Electronically Filed - Texas - November 09, 2021 - 09:13 AM

37. Prior to the Incident, Defendants, by and through their employees and agents, committed one or more of the following acts of negligence:

    a. Negligently and carelessly failing to make a reasonable inquiry into Ms. Sims' competence to work as a property manager; and/or

    b. Negligently and carelessly hiring or otherwise entrusting the management of their low-income housing complex to an inadequately trained, incompetent, or unfit property manager; and/or

    c. Negligently and carelessly failing to properly train Ms. Sims to perform the duties and tasks required of her; and/or

    d. Negligently and carelessly failing to properly supervise Ms. Sims to ensure she was performing the duties and tasks required of her.

38. Defendants owed a duty to all tenants of Summersville Estates, including Decedent, to exercise reasonable care to determine the qualifications of its property manager when selecting him or her, and to adequately instruct, train and supervise such property manager in order to reasonably assure her or she would manage Summersville Estates in a non-negligent manner.

39. As a direct and proximate result of the aforesaid negligent and careless acts of Defendants, Ms. Sims was allowed to repeatedly cut corners in the performance of her job duties, including the performance of apartment inspections.

40. As a further direct and proximate result of the aforesaid negligent and careless acts of Defendants, Ms. Sims repeatedly failed to perform her job duties and did not ensure Decedent's apartment was properly equipped with functioning smoke detectors or fire suppression devices— resulting in Decedent's death.

Electronically Filed - Texas - November 09, 2021 - 09:13 AM

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendants, jointly and severally, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar _____
 BRANDON J. KLAR, #72884
 *Attorney for Plaintiff*
 1505 S. Big Bend Boulevard
 St. Louis, Missouri 63117
 Phone: (314) 863-1117
 Fax: (314) 863-1118
 Email: bjklar@lawsaintlouis.com



# IN THE 25TH JUDICIAL CIRCUIT, TEXAS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOHN D BEGER | Case Number: 21TE-CC00360 |
| Plaintiff/Petitioner:<br>JENNIFER BUMETER , et al<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>BRANDON JACOB KLAR<br>1505 SOUTH BIG BEND BLVD<br>ST LOUIS, MO 63117 |
| Defendant/Respondent:<br> MACO MANAGEMENT COMPANY, INC. , et al | Court Address:<br>TEXAS COUNTY JUSTICE CENTER<br>519 NORTH GRAND AVE, STE 202 |
| Nature of Suit:<br>CC Wrongful Death | HOUSTON, MO  65483                (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  **MACO MANAGEMENT COMPANY, INC.**
                          **Alias:**

**221 BOLIVAR STREET**
**JEFFERSON CITY, MO  65101**

*COURT SEAL OF*

*TEXAS COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

*/s/ MARCI MOSLEY CIRCUIT CLERK*

_____November 9, 2021_____      _____
                    Date                                    Deputy Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
    Printed Name of Sheriff or Server                      Signature of Sheriff or Server
                  **Must be sworn before a notary public if not served by an authorized officer:**

                  Subscribed and sworn to before me on _____ (date).

*(Seal)*

                  My commission expires: _____     _____
                                              Date                          Notary Public

| | |
|---|---|
| **Sheriff's Fees, if applicable** | |
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

 A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

EXHIBIT A STATE COURT FILE



# IN THE 25TH JUDICIAL CIRCUIT, TEXAS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOHN D BEGER | Case Number: 21TE-CC00360 |
| Plaintiff/Petitioner:<br>JENNIFER BUMETER , et al<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>BRANDON JACOB KLAR<br>1505 SOUTH BIG BEND BLVD<br>ST LOUIS, MO 63117 |
| Defendant/Respondent:<br>**SUMMERSVILLE ESTATES, L.P. et al** | Court Address:<br>TEXAS COUNTY JUSTICE CENTER<br>519 NORTH GRAND AVE, STE 202<br>HOUSTON, MO 65483 |
| Nature of Suit:<br>CC Wrongful Death | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to:  SUMMERSVILLE ESTATES, L.P.
                             **Alias:**

**111 N. MAIN STREET, PP BOX 68**
**CLARKTON, MO  63837**

***COURT SEAL OF***

***TEXAS COUNTY***

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

*/s/ MARCI MOSLEY CIRCUIT CLERK*

\_\_\_\_November 9, 2021_____     _____
                Date                                              Deputy Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____     _____
        Printed Name of Sheriff or Server                                   Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____     _____
                                              Date                                            Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $\_\_\_\_\_10.00\_\_\_\_\_ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$**_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only: Document ID #21-SMCC-433* **EXHIBIT A- STATE COURT FILE** 1 of 2 Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 24 of 786

Electronically Filed - Texas - November 15, 2021 - 11:05 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER, )
and ERIC MEIER, )
)
Plaintiffs, )
)
v. ) Cause No.    21TE-CC00360
)
MACO MANAGEMENT CO., INC., )
and SUMMERSVILLE ESTATES, L.P., )
)
Defendants. )

## ENTRY OF APPEARANCE

COMES NOW Linda M. Freeman and Childress Ahlheim Cary LLC and enter their

appearance on behalf of Defendants Maco Management Co., Inc., and Summersville Estates,

L.P.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ LINDA M. FREEMAN
David T. Ahlheim    #50853
Linda M. Freeman    #59770
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
lfreeman@jchildresslaw.com
*Attorneys for Defendants*

1

Electronically Filed - Texas - November 15, 2021 - 11:05 AM

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of November, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

/s/      LINDA M. FREEMAN

46.2444

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - November 15, 2021 - 11:03 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
          Plaintiffs,                )
                                     )
v.                                   )     Cause No.     21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
          Defendants.                )

## ENTRY OF APPEARANCE

COMES NOW David T. Ahlheim and Childress Ahlheim Cary LLC and enter their

appearance on behalf of Defendants Maco Management Co., Inc., and Summersville Estates,

L.P.


                              CHILDRESS AHLHEIM CARY LLC


                              BY:/s/ DAVID T. AHLHEIM
                              David T. Ahlheim      #50853
                              Linda M. Freeman      #59770
                              1010 Market Street, Suite 500
                              St. Louis, Missouri 63101
                              314-621-9800
                              314-621-9802 (fax)
                              dahlheim@jchildresslaw.com
                              lfreeman@jchildresslaw.com
                              *Attorneys for Defendants*

1

Electronically Filed - Texas - November 15, 2021 - 11:03 AM

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 15th day of November, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

/s/        DAVID T. AHLHEIM

2

Electronically Filed - Texas - December 15, 2021 - 04:11 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,　　　　　　　)
and ERIC MEIER,　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　Cause No.　　21TE-CC00360
　　　　　　　　　　　　　　　　)
MACO MANAGEMENT CO., INC.,　　　)
and SUMMERSVILLE ESTATES, L.P.,　)
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)

**DEFENDANTS MACO MANAGEMENT CO., INC. AND SUMMERSVILLE ESTATES, L.P.'S MOTION TO DISMISS COUNT III OF PLAINTIFFS' PETITION FOR DAMAGES**

COME NOW Defendants Maco Management Co., Inc. and Summersville Estates, L.P., by and through counsel Childress Ahlheim Cary LLC, and move this Honorable Court pursuant to Missouri Rules of Civil Procedure 55.27 to dismiss Count III of Plaintiffs' Petition. In support thereof, Defendants state as follows:

1. Plaintiff has filed a three-count petition for damages against Defendants Maco Management Co., Inc., and Summersville Estates, L.P., relating to a fire that occurred on or about June 27, 2021.

2. Plaintiffs have filed a wrongful death action against Defendant Maco (Count I), wrongful death against Defendant Summersville (Count II), and negligent hiring and supervision against Defendants Maco and Summersville (Count III). This motion is directed to Count III.

3. Plaintiffs allege in their petition that Dawn Sims was a property manager for Defendants, and at all relevant times was an employee of Defendant Maco and was acting as an agent and employee within the course and scope of her employment and/or agency. (Petition ¶27).

1

4. That Defendants admitted in their Answer, simultaneously filed, that Dawn Sims is a property manager for Defendants and was acting as an agent and employee within the course and scope of its employment on behalf of Defendant Maco at and around the time of the fire.

5. In order for a Plaintiff to prevail on a negligent supervision claim, there is a "necessary and indispensable element that the employee be acting outside of the scope her employment." See *Nickel v. Stephens College*, 480 S.W.3d 390, 402 (Mo. App.WD 2015).

6. That Defendants have admitted Dawn Sims was acting within the course and scope of her employment at the time of the fire.

7. Further, in order for an employer to be liable for negligent hiring, a Plaintiff must know or should have known of an employee's "dangerous proclivities" and the employer's negligence must have been the cause of Plaintiff's injuries. See *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 570 (Mo.App.ED 1983).

8. Plaintiffs have failed to plead any specific "dangerous proclivity" of Dawn Sims, failed to plead Defendants knew or should have known of any specific "dangerous proclivity" of Dawn Sims or any other employee and failed to plead any "dangerous proclivities" were consistent with any employee misconduct.

9. As such, Count III Negligent Hiring and Supervision, should properly be dismissed pursuant to Missouri case law.

WHEREFORE, Defendants pray this Honorable Court dismiss Count III without prejudice and for all other relief this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ *Linda Freeman*

David T. Ahlheim       #50853
Linda M. Freeman       #59770
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
lfreeman@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of December, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/       *Linda Freeman*

3

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
    Plaintiffs,                    )
                                     )
v.                                   )          Cause No.        21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
    Defendants.                    )

**DEFENDANTS MACO MANAGEMENT CO., INC. AND SUMMERSVILLE
ESTATES, L.P.'S ANSWER TO PLAINTIFF'S PETITION FOR DAMAGES
(WRONGFUL DEATH)**

COME NOW Defendants Maco Management Co., Inc. and Summersville Estates, L.P., by

and through their attorneys, and for their Answer states as follows:

1. Defendants have insufficient information in which to admit or deny the assertions

contained in Paragraph 1 and therefore deny same.

2. Defendants have insufficient information in which to admit or deny the assertions

contained in Paragraph 2 and therefore deny same.

3. Defendants have insufficient information in which to admit or deny the assertions

contained in Paragraph 3 and therefore deny same.

4. Admit.

5. Admit.

6. Admit.

7. Defendants deny the allegations in paragraph 7 as written.

8. Defendants deny the allegations in paragraph 8.

1

9. Admit.

10. Defendants have insufficient information in which to admit or deny the assertions contained in Paragraph 10 and therefore deny same.

11. Defendant makes no answer to allegations in paragraph 11 as it states a legal conclusion as to proper venue under Missouri statutes. To the extent it states a factual assertion, Defendants deny the same.

12. Deny.

13. Defendants deny the allegations in paragraph 13. Further, Plaintiff's "fact" contained in paragraph 13 is contraindicated by paragraph 15.

14. Deny.

15. Defendants generally admit the origin of the fire appears to have been in Decedent's apartment. Defendant denies any assertion or allegation as to the cause or exact origin of the fire.

16. Deny.

17. Defendants deny the allegations in paragraph 17 and move to strike the allegation as it is not a statement of fact but a purported expert conclusion of the Texas County Coroner without legal foundation for this opinion.

18. Defendants move to strike the allegations in paragraph 18 as they are not a "simple plain statement of fact" but argumentative. Defendants admit conducting inspections of Decedent's apartment. Defendant refers to the inspection report, attested and signed by Decedent, for a complete assessment of the inspections and timing thereof. To the extent not specifically admitted, Defendants deny the same.

Electronically Filed - Texas - December 15, 2021 - 04:11 PM

19. Defendants deny the allegations in paragraph 19 as written. Upon investigation of the fire scene, smoke detectors were found on Decedent's microwave. To the extent not specifically admitted herein, Defendant denies the same.

20. Deny.

21. Deny.

22. Deny.

## Count I – WRONGFUL DEATH (Maco)

23. Defendants re-state and re-assert their answers to all allegations in Paragraphs 1 – 22 as if more fully set out herein.

24. Defendants have insufficient information in which to admit or deny the assertions contained in Paragraph 24 and therefore deny same.

25. Deny.

26. Defendants deny all allegations contained within Paragraph 26, including subparagraphs a-i.

27. Defendants admit Dawn Sims was an employee of Maco. Defendant denies remaining allegations in paragraph 27 as it states a misstatement of law and legal conclusion as to applicability of the *respondeat superior law*.

28. Deny.

29. Deny.

WHEREFORE having fully answered the allegations of Count I of Plaintiffs' Petition, Defendants pray this cause of action be dismissed, with costs assessed to Plaintiffs and for any and all further relief this Court deems just and proper.

3

Electronically Filed - Texas - December 15, 2021 - 04:11 PM

## COUNT II – WRONGFUL DEATH (Summerville)

30.  Defendants re-state and re-assert their answers to all allegations in Paragraphs 1 – 29 as if more fully set out herein.

31.  Defendants have insufficient information in which to admit or deny the assertions contained in Paragraph 24 and therefore deny same.

32.  Defendants admit Dawn Sims was an employee of Maco.  Defendant denies remaining allegations in paragraph 32 as it states a misstatement of law and legal conclusion as to applicability of the *respondeat superior* law.

33.  Deny.

34.  Deny.

WHEREFORE having fully answered the allegations in Count II of Plaintiffs' Petition, Defendants pray this case of action be dismissed, with costs assessed to Plaintiff and for any and all further relief this Court deems just and proper.

## COUNT III – NEGLIGENT HIRING AND SUPERVISION

Defendants make no answer to allegations in Count II but adopt and incorporate by reference its Motion to Dismiss Count III simultaneously filed.

## AFFIRMATIVE DEFENSES

1.  In further answer and affirmative defense, Defendants state that Plaintiffs' Petition fails to state a claim upon which relief may be granted.

2.  In further answer and affirmative defense, Defendants state that whatever injuries and/or damages the Plaintiffs may have sustained on the occasion referred to in Plaintiffs' Petition were caused, or in the alternative, contributed to be caused, by the carelessness, negligence, and/or contributory fault of Plaintiffs' decedent in failing to exercise the requisite degree of care at the

Electronically Filed - Texas - December 15, 2021 - 04:11 PM

time and place referred to therein and any judgment for Plaintiff must be reduced by the percentage of negligence assessed to Plaintiffs / Plaintiff's decedent.

These actions include but are not limited to:

a. Decedent negligently and/or recklessly and/or intentionally removed functional smoke detectors in her apartment;

b. Decedent negligently and/or recklessly and/or intentionally failed to notify management that she disable or caused smoke alarms to be disabled; and

c. Decedent negligently and/or recklessly and/or intentionally caused the fire by improper use of cigarettes or other sources of ignition.

3. In further answer and affirmative defense, Defendants state that if Plaintiffs sustained any damages, which Defendants specifically deny, then any alleged damages were caused by subsequent intervening events or occurrences.

WHEREFORE having fully answered the allegations of Plaintiffs' Petition and in light of these affirmative defenses, Defendants pray this cause of action be dismissed, with costs assessed to Plaintiffs and for any and all further relief this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ *Linda Freeman*
David T. Ahlheim      #50853
Linda M. Freeman      #59770
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
lfreeman@jchildresslaw.com
*Attorneys for Defendants*

5

Electronically Filed - Texas - December 15, 2021 - 04:11 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of December, 2021, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ _Linda Freeman_

6

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

|  |  |  |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| | ) | |
| and | ) | |
| | ) | Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MACO MANAGEMENT CO., INC., and | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF DEPOSITION OF AT&T WIRELESS**
**CUSTODIAN OF RECORDS**

TO:    AT&T Wireless
      Subpoena Compliance Center
      11760 US Highway 1, Ste. 600
      North Palm Beach, FL 33408

DATE & TIME:  January 25, 2022, at 3:00 P.M.

DEPONENT(S):  AT&T Wireless Custodian of Records

LOCATION:   Klar, Izsak & Stenger, L.L.C.
      1505 S. Big Bend
      St. Louis, Missouri 63117

REPORTER:   Kelly Daniels, CCR

PLEASE TAKE NOTICE that the attorneys for Plaintiff will at the above date, hour and

place, take the deposition of the above person before a certified court reported and notary public

duly authorized to administer oaths and said person shall at that time and date produce for review

and inspection the documents identified in the Subpoena attached hereto.

Dated this 20th day of December 2021.

EXHIBIT A – STATE COURT FILE

Electronically Filed - Texas - December 20, 2021 - 11:06 AM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.


By:   /s/ Brandon J. Klar
      BRANDON J. KLAR, #72884
      Attorney for Plaintiffs
      1505 S. Big Bend Blvd.
      St. Louis, Missouri 63117
      Tel: (314) 863-1117
      Fax: (314) 863-1118
      Email: bjklar@lawsaintlouis.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of December 2021, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.


**CC:**   **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
          Kelly J. Daniels, CCR
          49 W. Glenwood Ln.
          St. Louis, MO 63122-5142


                                        /s/ Brandon J. Klar

Electronically Filed - Texas - Texas - January 04, 2022 - 10:42 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )    Cause No.    21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNT III**

COMES NOW, Defendants Maco Management Co. Inc., and Summersville Estates, L.P., by and through undersigned counsel, and in support of their Motion to Dismiss Count III of Plaintiffs' Petition, states as follows:

**INTRODUCTION**

Plaintiffs filed their Petition against Defendants Maco Management Co., Inc., (Maco) and Summersville Estates, L.P., (Summersville) following the death of their mother, Robin Fischer (Decedent). Plaintiffs have alleged Decedent passed away as a result of a fire within Decedent's apartment unit, owned and managed by Defendants. Plaintiffs now seek damages under a theory of negligent hiring and supervision, alleging Defendants negligently hired, trained and supervised Dawn Sims, the property manager for the apartment unit in question (Count III, Plaintiffs' Petition).

However, as discussed herein, Count III of Plaintiffs' Petition should be dismissed for its failure to state a claim for which relief can be granted. In order to successfully plead a negligent

EXHIBIT A - STATE COURT FILE

hiring or supervision claim, Plaintiffs must show that an employer knew or should have known of an employee's "dangerous proclivities" and that the employer's negligence was the proximate cause of the plaintiff's injury. Plaintiff has failed to sufficiently plead any facts identifying a "dangerous proclivity" of an employee of the Defendants, let alone how that "dangerous proclivity" led to Plaintiffs' injury. Further, in order for a negligent supervision claim to survive, an essential element is that the employee must be acting outside of the scope of her employee, a fact specifically refuted by Plaintiffs' own petition and admitted by the Defendants. As such, Count III must be dismissed.

## STANDARD

An employer may be liable for the negligent hiring of an employee where the employer "knew or should have known of the employee's dangerous proclivities and the employer's negligence was the proximate cause of the plaintiff's injury". See *Gaines v. Monsanto Co.*, 655 S.W.2d568, 570 (Mo. App. ED 1983). Negligence must be related to the employee's dangerous proclivities at the time of the hiring. *Reed v. Kelly*, 37 S.W.3d 274, 277 (Mo. App. ED 2000). Negligent hiring is "independent of respondeat superior liability for negligent acts of an employee acting within the scope of his employment". *Gaines* at 570.

Similarly, an employee may be liable for the negligent supervision of an employee. For an employer to be liable under this theory, a plaintiff must demonstrate "(1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or property." *Davis v. Lutheran South High School Ass'n of St. Louis*, 200 S.W.3d 163, 165-66 (Mo. App. ED 2006). Further, "a negligent supervision claim requires as a necessary and indispensable element that the employee

be acting outside of the scope of her employment." *Nickel v. Stephens College*, 480 S.W.3d 390, 402 (Mo. App. WD 2015).

<div align="center"><u>**ARGUMENT**</u></div>

In order to survive a negligent hiring claim, the Plaintiff must demonstrate not only that the employee had "dangerous proclivities", but also that the employer was aware of (or should have been aware of) those proclivities at the time of hiring and the misconduct was consistent with that proclivity. *Gaines* at 570. See also *Reed* at 277. The question is not whether an employee was unhirable, but rather whether the employer's knowledge of a dangerous proclivity at the time of hiring was the proximate cause of a plaintiff's injury. *Reed* at 277. See also *Higginbotham v. Pit Stop Bar and Grill, LLC*, 548 S.W.3d 323 (Mo. App. ED 2018).

Further, in order for a negligent hiring claim as well as a negligent supervision claim to survive, the Plaintiff must show that the employee was acting outside of the scope of her employment. *Nickel* at 420. See also *McHaffie By and Through McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. banc 1995). Once an employer has admitted respondeat superior, it is improper to proceed under the theory of negligent hiring or supervision. *McHaffie* at 827.

**A. Plaintiff has failed to sufficiently allege Dawn Sims' "dangerous proclivities"**

Plaintiffs have alleged Defendants were negligent in their hiring of Dawn Sims as a property manager under the negligent hiring theory. A necessary part of that claim is to allege a "dangerous proclivity" that the employer knew or should have known about at the time of hiring. See Gaines. In this case, Plaintiffs have failed to identify a dangerous proclivity, let alone allege that Defendants knew or should have known about it. While Plaintiffs have made vague allegations to Ms. Sims' inexperience as a property manager, they have not alleged any misconduct on behalf of Ms. Sims that would be consistent with a "dangerous proclivity".

<div align="center">Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 42 of 786</div>
<div align="center">EXHIBIT A - STATE COURT FILE</div>

Inexperience is not sufficient. If inexperience alone were a "dangerous proclivity", the workforce would disappear as all entry-level hires would leave an employer open to a negligent hiring claim.

Additionally, Plaintiffs have failed to allege that Defendants knew or should have known of any dangerous proclivity of Ms. Sims. Without identifying any specific dangerous proclivity of Ms. Sims, it is impossible to plead Defendants knew of one. It also renders impossible Plaintiffs' ability to demonstrate that any alleged misconduct was consistent with Ms. Sims' dangerous proclivities:

> "Absent some dangerous proclivity of the employee and knowledge of that proclivity on the part of the employer, then, a plaintiff cannot maintain a negligent hiring or retention claim." *Braxton v DKMZ Trucking, Inc.*, 2013 WL 6592771.

Plaintiffs' failure to plead dangerous proclivities on the part of Ms. Sims' leaves this Court with no option but to dismiss Count III of their Petition.

### B. Dawn Sims was acting within the scope of her employment.

In order for Plaintiffs to proceed on a claim under theories of negligent hiring or negligent supervision, it is a necessary and indispensable element of those claims that the employee be acting outside the scope of her employment. See *Gaines* and *Nickel*. Plaintiffs have alleged that all times relevant, Ms. Sims was acting within her scope of employment. See Plaintiffs Petition, Paragraph 27. Defendants have admitted such. Plaintiffs' own pleadings have rendered their claims of negligent hiring and supervision impossible and as such, Count III must be dismissed.

## CONCLUSION

This Court is left with no alternative but to dismiss Count III of Plaintiffs' Petition. As set forth above, under multiple theories, Count III of Plaintiffs' action fails to state a claim upon which relief can be granted. First, Plaintiffs have failed to allege any dangerous proclivity of an employee of Defendants (specifically Dawn Sims). Second, Plaintiffs have failed to allege Defendants knew or should have known of any dangerous proclivity. Further, Plaintiffs have failed to plead sufficient facts to show that a dangerous proclivity of Ms. Sims was the proximate cause of injury to the Plaintiffs. Lastly, Plaintiffs have failed to allege Ms. Sims was acting outside her scope of employment when any alleged injury was sustained. As such, Defendants pray this Court dismiss Count III with prejudice and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ LINDA M. FREEMAN
David T. Ahlheim       #50853
Linda M. Freeman       #59770
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
lfreeman@jchildresslaw.com
*Attorneys for Defendants*

Electronically Filed - Texas - January 04, 2022 - 10:42 AM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 4th day of January 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

/s/      LINDA M. FREEMAN

Electronically Filed - Texas - February 14, 2022 - 10:47 AM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, an individual ) | |
| ) | |
| AND ) | |
| ) | |
| ERIC MEIER, an individual ) | |
| ) | |
| Plaintiffs, ) | Cause No.: 21TE-CC00360 |
| ) | |
| v. ) | Division: |
| ) | |
| MACO MANAGEMENT COMPANY, INC., ) | |
| A Missouri Limited Liability Company ) | |
| ) | |
| AND ) | |
| ) | |
| SUMMERSVILLE ESTATES, L.P., ) | |
| A Missouri Limited Liability Company ) | |
| ) | |
| Defendants. ) | |

## CERTIFICATE OF SERVICE

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER, by and through their undersigned counsel, and hereby certify that original copies of Plaintiffs Jennifer Bumeter and Eric Meier's First Set of Interrogatories Directed to Defendants and Plaintiffs Jennifer Bumeter and Eric Meier's First Requests for Production of Documents Directed to Defendants, together with a copy of this Certificate, were served upon the following attorneys of record via electronic mail this 14th day of February 2022.

CHILDRESS AHLHEIM CARY LLC
David T. Ahlheim
Linda M. Freeman
dahlheim@jchildresslaw.com
lfreeman@jchildresslaw.com

EXHIBIT A - STATE COURT FILE

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar _____
    BRANDON J. KLAR, #72884
    *Attorney for Plaintiff*
    1505 S. Big Bend Boulevard
    St. Louis, Missouri 63117
    Phone:    (314) 863-1117
    Fax:    (314) 863-1118
    Email:    bjklar@lawsaintlouis.com

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - February 17, 2022 - 04:04 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICFATE OF SERVICE

COME NOW Defendants, by and through counsel, and state that Defendants' Wrongful

Death Interrogatories and Request for Production of Documents directed to Plaintiffs have been

served on all counsel of record via electronic mail in Word format on this 17th day of February

2022:

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*


CHILDRESS AHLHEIM CARY LLC

BY:/s/ DAVID T. AHLHEIM
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

1

Electronically Filed - Texas - February 17, 2022 - 03:19 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
     Plaintiffs,                      )
                                     )
v.                                   )    Cause No.    21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
     Defendants.                      )

## ENTRY OF APPEARANCE

COMES NOW Marie F. Pudlowski and Childress Ahlheim Cary LLC and enter their

appearance on behalf of Defendants Maco Management Co., Inc., and Summersville Estates, L.P.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim    #50853
Marie F. Pudlowski   #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of February 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

1

EXHIBIT A - STATE COURT FILE

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.     21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Defendants Maco Management Co., Inc. and Summersville

Estates, LP, by and through undersigned counsel, will call up for hearing their Motion to Dismiss

Count III of Plaintiffs' Petition on April 19, 2022, at 9:00 AM in Texas County Circuit Court

before Judge Beger, or as soon thereafter as counsel may be heard, via WebEx.

https://mocourts.webex.com/meet/john.beger

Join by phone
+1-408-418-9388 United States Toll

Access code: 960 524 065

CHILDRESS AHLHEIM CARY LLC

BY:/s/ DAVID T. AHLHEIM
David T. Ahlheim     #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

1

Electronically Filed - Texas - February 18, 2022 - 02:21 PM

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 18th day of February 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

46.2444

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - March 15, 2022 - 04:12 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER,                      )
                                       )
and                                    )
                                       )
ERIC MEIER,                            )    Cause No.: 21TE-CC00360
                                       )
      Plaintiffs,              )
v.                                     )
                                       )
MACO MANAGEMENT CO., INC., and         )
                                       )
SUMMERSVILLE ESTATES, L.P.             )
                                       )
      Defendants.              )

## REQUEST TO APPEAR BY WEBEX

COME NOW, Plaintiffs Jennifer Bumeter and Eric Meier, by and through the undersigned counsel, and respectfully request this Court's approval to appear via Webex at the hearing presently scheduled for Tuesday, April 19, 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By:    /s/ Brandon J. Klar
BRANDON J. KLAR, #72884
Attorney for Plaintiffs
1505 S. Big Bend Blvd.
St. Louis, Missouri 63117
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

Electronically Filed - Texas - March 15, 2022 - 04:12 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 15th day of March 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )        Cause No.      21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

## CERTIFICATE OF SERVICE

COME NOW Defendants, by and through counsel, and state that Defendants' Objections

to Plaintiffs' First Set of Interrogatories and Request for Production have been served on all

counsel of record via electronic mail on this 16th day of March 2022:

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

                                          CHILDRESS AHLHEIM CARY LLC

                                          BY:/s/  MARIE F. PUDLOWSKI
                                          David T. Ahlheim      #50853
                                          Marie F. Pudlowski     #64228
                                          1010 Market Street, Suite 500
                                          St. Louis, Missouri 63101
                                          314-621-9800
                                          314-621-9802 (fax)
                                          dahlheim@jchildresslaw.com
                                          mpudlowski@jchildresslaw.com
                                          *Attorneys for Defendants*

1

Electronically Filed - Texas - March 16, 2022 - 03:27 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                     )
and ERIC MEIER,                       )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )    Cause No.    21TE-CC00360
                                      )
MACO MANAGEMENT CO., INC.,            )
and SUMMERSVILLE ESTATES, L.P.,       )
                                      )
        Defendants.                   )

## CERTIFICFATE OF SERVICE

COME NOW Defendants, by and through counsel, and state that Defendants' Revised

Demand for Answers to Written Interrogatories directed to Plaintiffs Meier and Bumeter have been

served on all counsel of record via electronic mail in Word format on this 16th day of March 2022:

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim       #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

1

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| JENNIFER BUMETER, | ) |
| and ERIC MEIER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    Cause No.    21TE-CC00360 |
| | ) |
| MACO MANAGEMENT CO., INC., | ) |
| and SUMMERSVILLE ESTATES, L.P., | ) |
| | ) |
| Defendants. | ) |

## REQUEST TO APPEAR BY WEBEX

COME NOW, Defendants Maco Management Co., Inc. and Summersville Estates, L.P.,

by and through undersigned counsel, and respectfully request this Court's approval to appear via

Webex at the hearing presently scheduled for Tuesday, April 19, 2022.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 16th day of March 2022, the foregoing was
filed electronically with the Clerk of the Court to be served by operation of the Court's electronic
filing system upon counsel of record.

/s/      MARIE F. PUDLOWSKI

1

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.        21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

COME NOW Defendants, by and through counsel, and state that Defendants' Answers and

Objections to Plaintiffs' First Set of Interrogatories and Defendants' Objections and Responses to

Plaintiffs' First Request for Production have been served on all counsel of record via electronic

mail on this 1st day of April 2022:

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

                                        CHILDRESS AHLHEIM CARY LLC

                                        BY:/s/ MARIE F. PUDLOWSKI
                                        David T. Ahlheim      #50853
                                        Marie F. Pudlowski    #64228
                                        1010 Market Street, Suite 500
                                        St. Louis, Missouri 63101
                                        314-621-9800
                                        314-621-9802 (fax)
                                        dahlheim@jchildresslaw.com
                                        mpudlowski@jchildresslaw.com
                                        *Attorneys for Defendants*

1

Electronically Filed - Texas - April 13, 2022 - 04:15 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
and⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀Cause No.: 21TE-CC00360
ERIC MEIER,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
MACO MANAGEMENT CO., INC., and⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
SUMMERSVILLE ESTATES, L.P.⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀)

## <u>PLAINTIFFS JENNIFER BUMETER AND ERIC MEIER'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Memorandum in Opposition to Defendants' Motion to Dismiss, state as follows:

## LEGAL STANDARD

In determining the sufficiency of a petition challenged by a motion to dismiss we give the petition its broadest intendment, treat all facts alleged as true, and construe the allegations favorably to plaintiffs to determine whether they invoke principles of substantive law. *McCoy v. Liberty Foundry Co.,* 635 S.W.2d 60, 62–63 (Mo.App.1982); *Gaines v. Monsanto Co.,* 655 S.W.2d 568, 570 (Mo. Ct. App. 1983). The trial court's ruling on a motion to dismiss for failure to state a claim must be construed liberally and favorably to plaintiffs, giving them the benefit of all inferences fairly deducible from the facts stated therein. *Jaime v. Neurological Hospital Ass'n of Kansas City,* 488 S.W.2d 641, 643 (Mo. 1973).

EXHIBIT A - STATE COURT FILE

## ARGUMENT

1.  **Plaintiffs have sufficiently alleged Dawn Sims' Dangerous Proclivities so as to Warrant a Claim of Negligent Hiring Which Must Be Submitted to the Trier of Fact**

Matters of foreseeability and proximate cause must be left for the court and jury after presentation of evidence. *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 (Mo. App. E.D. 1983). Dawn Sims was hired by Defendant MACO Management Company, Inc. ("Defendant MACO") as the property manager of Summersville Estates in September 2018. Summersville Estates is a government assisted living facility and, on information and belief, is occupied by many elderly and disabled individuals. Prior to her employment with Defendant MACO, Ms. Sims was employed as a makeup artist, sales associate, caregiver, and security officer—notably with <u>no experience</u> as a property manager. *See* **Exhibit A**.

Ms. Sims was referred to the position of property manager by a Mr. Steve Conner, who is <u>related to Ms. Sims,</u> also employed by Defendant MACO and is listed as Ms. Sims' emergency contact. *See* **Exhibit B**. Ms. Sims was not qualified to perform the work for which she was hired, and Defendant MACO failed altogether to ensure her training or qualifications. Defendants claim that the Plaintiffs have failed to identify "dangerous proclivities" of Ms. Sims for which Defendants were aware. The term "dangerous proclivities" unquestionably includes an individual's refusal or inability to perform duties and obligations required of her—particularly when the performance of such duties and obligations is reasonably relied upon by others for their own safety. Here, Defendant MACO knew about Ms. Sims' lack of qualifications and the dangerous proclivities which resulted therefrom. Defendant MACO's nepotistic hiring of a severely unqualified employee to manage housing for the elderly and disabled led to a wide range of foreseeable harms—including the exact harm which occurred here, an apartment fire.

Defendants failed to responsibly ensure they hired a qualified and capable property manager, and the determination of whether Ms. Sims' refusal and/or inability to perform her duties amounted to a "dangerous proclivity" of which Defendants were aware is a question necessarily determined by the trier of fact—not on a Motion to Dismiss. *Dibrill v. Normandy Assocs., Inc.,* 383 S.W.3d 77, 89 (Mo. Ct. App. 2012).

### 2. Dawn Sims Acted at All Times Within the Scope of Her Employment

Defendants allege that a necessary and indispensable element of a claim for negligent supervision requires the employee be "acting outside the scope of her employment". Defendants claim that, because they admitted Ms. Sims was **at all times** acting within the scope of her employment, any such claim for negligent supervision must fail.

If Defendants concede that each of the acts asserted by Plaintiffs in their Petition took place within the scope of Ms. Sims' employment and/or at the direction of Defendants, there is no need for Plaintiffs to pursue their claim for Negligent Supervision. Therefore, on the basis of Defendants' admissions that Ms. Sims was at all times acting within the course and scope of her employment with Defendant MACO, Plaintiffs shall voluntarily dismiss their claim for Negligent Supervision. That said, Plaintiffs' Third Count sounds in both Negligent Hiring <u>and</u> Supervision. Plaintiffs maintain, as stated above, that their claim for Negligent Hiring must stand.

### CONCLUSION

Defendants' failures to train, qualify, or supervise Ms. Dawn Sims—despite her position of authority and responsibility for the well-being of others—led directly to the untimely death of Ms. Robin Fischer. Defendants were at all times aware of their own failures and of Ms. Sims' resultant dangerous proclivities, which included an inability to perform the duties and responsibilities of her job. Plaintiffs ask this Court to deny Defendants' Motion to Dismiss

respective to Plaintiffs' claim of Negligent Hiring, and to award Plaintiffs any other and further

relief deemed just and proper under the circumstances.

<div style="margin-left: 50%;">

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By:    /s/ Brandon J. Klar      
     BRANDON J. KLAR, #72884
     *Attorney for Plaintiffs*
     1505 S. Big Bend Blvd.
     St. Louis, Missouri 63117
     Tel: (314) 863-1117
     Fax: (314) 863-1118
     Email: bjklar@lawsaintlouis.com

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of April 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

<div style="margin-left: 50%;">

/s/ Brandon J. Klar    

</div>

PLAINTIFF'S
EXHIBIT

A

**Employment History:** A resume does not substitute for an employment application.

Provide the following information of your past and current employers or volunteer activities, starting with the most recent. Explain any gaps in employment in the comments section below. (Include the last 5 years of employment history.)

| From: Dec 17 | To: June 18 | Employer: STT Inc | Telephone Number: (989) 326-0660 |
|---|---|---|---|
| Job Title: Security officer | | Address: Various locations, MI | |
| Immediate Supervisor and Title: Calvin Rusch, CO-owner | Starting Salary: $11.25/hr Ending Salary: $15.00/hr | Type of work performed: Protection of assets, supervisory duties, payroll, hiring/firing, interviews, paperwork, medical standbys | |
| From: June 16 | To: May 18 | Employer: Gladys Remaly | Telephone Number: 231 627-6996 |
| Job Title: Caregiver | | Address: Beaugrand Est., MI | |
| Immediate Supervisor and Title: Gladys Remaly, Member | Starting Salary: 10.00/hr Ending Salary: 10.00/hr | Type of work performed: Caregiving for an elderly man with dementia, making sure his needs were met (cooked meals, housework, keeping his mind active), maintenance. | |
| From: Aug 17 | To: Nov 17 | Employer: Halloween Superstores | Telephone Number: 231 838-0054 |
| Job Title: Sales Assoc. | | Address: Petoskey, MI | |
| Immediate Supervisor and Title: Nicole Green, General Mgr | Starting Salary: 10.00/hr Ending Salary: 10.00/hr | Type of work performed: Seasonal position helping people with makeup and costuming needs at a Halloween store. | |
| From: April 07 | To: Current | Employer: Shattered Moon FX | Telephone Number: 231 818 2046 |
| Job Title: Owner | | Address: Cheboygan, MI | |
| Immediate Supervisor and Title: Self | Starting Salary: per job Ending Salary: per job | Type of work performed: Makeup fx and costuming for film, company management, paperwork filing, implementing clients needs | |

Comments: _____

**Applicant Statement:** Please read the following statements carefully before signing this application. Only those applications that are signed, dated, and completed in full are considered valid.

I certify that all information I have provided in order to apply for and secure work with the employer is true, complete, and correct. I understand that any information provided by me that is found to be false, incomplete, or misrepresented in any respect, will be sufficient cause to cancel further consideration of this application, or immediately discharge me from the employer's service whenever it is discovered.

I expressly authorize, without reservation, the employer, its representatives, employees or agents to contact and obtain information from all references (personal and professional), employers, public agencies, licensing authorities, and educational institutions and to otherwise verify the accuracy of all information provided by me in this application, resume, or job interview. I hereby waive any and all rights and claims I may have regarding the employer, its agents, employees or representatives for seeking, gathering and using such information in the employment process and all other persons, corporations or organizations for furnishing such information.

I understand that the employer does not unlawfully discriminate in employment and no question on this application is used for the purpose of limiting or excusing any applicant from consideration for employment on a basis prohibited by applicable local, state or federal law.

I understand that this application remains current for only 90 days. At the conclusion of that, if I have not heard from the employer and still wish to be considered for employment, it will be necessary to reapply and fill out a new application.

If I am hired, I understand that I am free to resign at any time, with or without cause and without prior notice, and the employer reserves the same right to terminate my employment at any time, with or without prior notice, except as may be required by law. This application does not constitute an agreement or contract for employment for any specified period of definite duration. I understand that no supervisor or representative of the employer is authorized to make any assurance to the contrary and that no implied, oral or written agreements contrary to the foregoing express language are valid unless they are in writing and signed by the employer's president. I understand that I am required to pass a drug test prior and/or during my employment.

I also understand that if I am hired, I will be required to provide proof of identity and legal authority to work in the United States and that federal immigration laws require me to complete an I-9 Form in this regard.

I have read and understand the foregoing statements and accept the same as conditions of my employment.

Signature of Applicant: _____   Date: 9-6-18

MACO318



# MACO MANAGEMENT COMPANY, Inc.

**Employment Application**

Equal Opportunity Employer

Incomplete applications will not be considered.

**A Drug Free Workplace**



**PLAINTIFF'S EXHIBIT**

B

| Last Name | First Name | Middle Initial | Social Security Number |
|---|---|---|---|
| Sims | Dawn | M | ▆▆▆▆▆▆ |

| Address: Number & Street | City | State | Zip Code |
|---|---|---|---|
| 25765 State Highway 19 | Eminence | MO | 65466 |

Positions Desired: 1. Mgt/maint. 2. _____ 3. _____

My Salary Expectations are: Negotiable

1. How did you hear about us? Or referred by: Jennifer & Steve (Conner)
2. Do you have any relatives or acquaintances employed by MACO Management Company or its affiliates? (Yes) No
   If yes, please states names: Steve Conner
3. If employed, will you be able to submit verification of your legal right to work in the United States? (Yes) No
4. Have you previously been employed by MACO Management Company or its affiliates? Yes (No)
   If yes, please provide: Department _____ Position _____ Date _____
5. Have you ever worked under any other name that would enable us to check your employment history? (Yes) No
   If yes, please provide name(s): Dawn M LaCross
6. Have you ever been convicted of a first degree Misdemeanor or Felony? Yes (No)
   If yes, please provide date(s) and details: _____

*For the purpose of this application, convictions applied to finding of guilt, with or without adjudication of guilt, as a result of a jury verdict, non-jury trial, or entry of a plea of guilty or nolo contendere (no contest).*
*Answering "Yes" to these questions does not constitute an automatic denial of employment. Factors such as date of the offense, seriousness and nature of the violation, rehabilitation and position applied for will be taken into account.*

**\*We do conduct background checks\***

I prefer: Full-Time ✗ Part-Time ✗ Seasonal _____ Temporary _____

I can work: Any Shift _____ Work Hours Preferred: _____

I can work: Monday ✗ Tuesday ✗ Wednesday ✗ Thursday ✗ Friday ✗ Saturday ✗ Sunday _____

| References: | Name | Telephone | Number of Years Known |
|---|---|---|---|
| | Haynze Whitmore | ▆▆▆▆ | 20+ |
| | Ryan Blazic | ▆▆▆▆ | 4+ |
| | Josh Smith | ▆▆▆▆ | <1-worked with |

**Skills and Qualifications:**

Summarize any training, skills, licenses and/or certificates that may qualify you as being able to perform job-related functions in the position for which you are applying.

I've had management experience, and know how to fix things. My course of study in college was small business management.

| Education: Name/Location | Years Completed | Did you graduate? | Course of Study |
|---|---|---|---|
| High School | 1 2 3 (4) | (Yes) No | General required |
| College | 1 (2) 3 4 | Yes (No) | Small business mgt. |
| Other | 1 2 3 4 | Yes No | |

If you speak, read or write a foreign language(s), please indicate on the line below:

_____

Electronically Filed - Texas - April 13, 2022 - 04:15 PM

# 4576
Division 7
50000
$ 13.00/hr

**Checklist for New Hire**

Date: 9-18-18

Office: Summersville

Name: Dawn M Sims    Position: Mgt/maintence

Address: 25765 State Highway 19 Eminence 65466

Social Security Number: ███████████

Emergency Contact Info: Steve Conner ████████████

Weekly Schedule and Pay Rate: M-F  13⁰⁰ an hour

**Application Package:**

Application ✓

Background Release ✓

Copy of SS Card/ Driver's License ✓

MACO Authorization ✓

Employment Report Discloser ✓

**New Hire Package:**

W4 ✓

State W4 ✓

I-9 ✓

Post-Accident Policy ✓

401K ✓

Direct Deposit Form & Copy of Check ✓

Handbook Receipt ✓

Harassment Receipt ✓

Duties & Responsibility Receipt ✓

Insurance Accept/Decline ✓



MACO305

EXHIBIT A - STATE COURT FILE

FILED
4/15/2022
MARCI MOSLEY
CIRCUIT CLERK
TEXAS COUNTY, MO

# IN THE TWENTY-FIFTH JUDICIAL CIRCUIT OF MISSOURI

**WHEREAS,** assignment and temporary transfer of judicial personnel from one court to another, as the administration of justice requires, is authorized under the Constitution, Article V, Sections 15 and 17, and the Revised Statutes of Missouri, Sections 478.072, 478.240 and 478.245, it is ordered that:

The **HONORABLE SIDNEY T PEARSON** be assigned to the Circuit Court of TEXAS County, Missouri, on May 17, 2022, for the purpose of hearing those matters set before the Honorable John D. Beger. This assignment is for the duty of this time period only and not an assignment for the individual case.

It is further ordered that the judge hereby assigned shall have the same powers and responsibilities as the judges of the court to which transferred.

_____
JOHN D BEGER
Presiding Judge

Dated: April 15, 2022

cc by email: Hon. Sid Pearson

EXHIBIT A - STATE COURT FILE

FILED
4/15/2022
MARCI MOSLEY
CIRCUIT CLERK
TEXAS COUNTY, MO

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                          )
                                           )
and                                        )
                                           )
ERIC MEIER,                                )   Cause No.: 21TE-CC00360
                                           )
        Plaintiffs,                        )
                                           )
v.                                         )
                                           )
MACO MANAGEMENT CO., INC., and             )
                                           )
SUMMERSVILLE ESTATES, L.P.                 )
                                           )
        Defendants.                        )

## REQUEST TO APPEAR BY WEBEX

COME NOW, Plaintiffs Jennifer Bumeter and Eric Meier, by and through the undersigned

counsel, and respectfully request this Court's approval to appear via Webex at the hearing

presently scheduled for Tuesday, April 19, 2022.

4-15-22
Counsel for either
party may appear
by Webex.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
Attorney for Plaintiffs
1505 S. Big Bend Blvd.
St. Louis, Missouri 63117
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

**IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI**

JENNIFER BUMETER,                    )
                                     )
and                                  )
                                     )
ERIC MEIER,                          )     Cause No.: 21TE-CC00360
                                     )
     Plaintiffs,                     )
                                     )
v.                                   )
                                     )
MACO MANAGEMENT CO., INC., and       )
                                     )
SUMMERSVILLE ESTATES, L.P.           )
                                     )
     Defendants.                     )

**<u>CERTIFICATE OF SERVICE</u>**

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER, by and through their

undersigned counsel, and state that Plaintiffs' Answers, Responses and Objections to Defendants'

First Set of Interrogatories and Requests for Production have been served on all counsel of record

via electronic mail this 18th day of April 2022.

          Respectfully Submitted,

          KLAR, IZSAK & STENGER, L.L.C.


          By:    /s/ Brandon J. Klar      
          BRANDON J. KLAR, #72884
          *Attorney for Plaintiffs*
          1505 S. Big Bend Blvd.
          St. Louis, Missouri 63117
          Tel: (314) 863-1117
          Fax: (314) 863-1118
          Email: bjklar@lawsaintlouis.com

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S RELY TO**
**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**THEIR MOTION TO DISMISS COUNT III**

COMES NOW, Defendants Maco Management Co. Inc., and Summersville Estates, L.P., by and through undersigned counsel, and for their Reply to Plaintiff's Memorandum in Opposition to their Motion to Dismiss, states as follows:

**ARGUMENT**

A petition must contain a short and plain statement of the facts and must identify the facts upon which plaintiff's claim rests. MO. SUP. CT. R. 55.05. The pleader must state ultimate facts, or allegations that infer those facts, which support **every element** of a cause of action pleaded to survive a motion to dismiss. *Id.*; *see also Hoag v. McBride & Son Inv. Co.*, 967 S.W.2d 157, 174 (Mo. Ct. App. E.D. 1998).

Here, Plaintiff comingles facts and legal theories into three separate counts of:

- Count I for *Respondeat Superior* against Maco;
- Count II for *Respondeat Superior* against Summersville; and
- Count III for Negligent Hiring/Supervision against Maco and Summersville.

EXHIBIT A - STATE COURT FILE

The theory of r*espondeat superior* is well set forth in Missouri caselaw and jury instructions relating to an employer's liability for negligent acts of an employee done within the course and scope of employment. *See* MAI 18.01. Though Missouri caselaw has recognized theories of negligent hiring and supervision under which an employer might be held to have derivative or dependent liability for the conduct of an employee in causing injury to a third party, Missouri has no approved jury instructions for such theories.

    **1.   Count III for Negligent Hiring Must be Dismissed because Alleged Lack of Prior Experience in the Job Field Does Not and Should Not in the Interest of Public Policy Amount to a Dangerous Proclivity Sufficient to Support an Element of Negligent Hiring**

Per Missouri caselaw, one element of negligent hiring, which Plaintiff is required to allege and prove, is that the employee not only had "dangerous proclivities," but also that the employer was aware of (or should have been aware of) those proclivities at the time of hiring. *See Gaines v. Monsanto Co.*, 655 S.W.2d568, 570 (Mo. App. ED 1983); s*ee also McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. banc 1995). "Dangerous proclivity" is not definitely defined by caselaw or the jury instructions. In natural English, it means a tendency or predisposition to act in a manner that endangers others or property.

Here, Plaintiffs' Petition contains a single, factual reference to an alleged "dangerous proclivity" known at the time of hiring, that is "prior to her employment with Defendant Maco, Ms. Sims had no experience as a property manager or in any similar field." Pl. Pet. ¶ 8. Plaintiff attempts to allege further facts in their opposition response, which are not alleged in the Petition (such as her exact prior employment history and nepotism due to a referral by a family member). Even if the Court gives Plaintiff the benefit of assuming all the alleged facts are true (plead and unplead), Plaintiffs are still asking the Court to find that hiring an employee who has no direct experience in the field and is recommended by family member amounts to foreseeable notice that

the employee will act in a way that harms others or property. This is illogical from a commonsense perspective.

Further, such a finding is not supported by Missouri caselaw. Missouri cases on dangerous proclivity often deal with an employee's prior criminal behavior. None were found that held lack of direct job-related experience amounts to a dangerous proclivity. And, the *Dibrill* case cited by Plaintiff in support is easily distinguishable from the present case. *See Dibrill v. Normandy Assocs., Inc.,* 383 S.W.3d 77 (Mo. Ct. App. E.D. 2012). In *Dibrill*, the dangerous proclivity alleged was a prior criminal history of felonious assault by the employee that could have been located by the employer through a background check. *Id.* at 87-88. *Dibrill* did not deal with lack of job-related experience as is alleged here; and thus, *Dibrill* is not determinative in this case.

Moreover, such a finding would place an unreasonable and impossible burden on all employers to hire only individuals who have prior experience in the exact position. This would essentially stall the job market. Thus, such a finding is also disfavored on the grounds of public policy.

For all these reasons, Plaintiffs' allegations in both the Petition and opposition response fail to amount to a dangerous proclivity under the law. Defendant's motion to dismiss must be granted as to Count III's theory of negligent hiring given the absence of factual support for this required element.

> **2. Count III for Negligent Supervision Must be Dismissed because Lack of Facts to Support an Element of Negligent Supervision**

Along these same lines, Per Missouri caselaw, Defendant's motion to dismiss must be granted as to Count III's theory of negligent supervision. A theory of negligent supervision requires Plaintiff to allege and prove that the employer knew or should have should have known the necessity to control the employee to prevent the employee from creating an unreasonable risk

EXHIBIT A - STATE COURT FILE

of harm to others by acting in a manner outside the scope of employment. *See Intermed Ins. Co. v. Hill*, 367 S.W.3d 84, 89 (Mo. Ct. App. 2012).

Again, Plaintiffs have failed to allege any facts to support that Maco knew or should have known that Sim's would act in a way outside her scope of employment that would cause an unreasonable risk of harm. Plaintiffs alleged as fact in support Sim's the lack of experience in the field. Pl. Pet. ¶ 8. Additionally, Plaintiffs allege Sim purportedly conducted an inspection over a week prior and should have known the smoke alarms/fire depression device was not working. Pl. Pet. ¶ 18-22. Once again even if taken as true, it is illogical jump from a common perspective that these facts amount to notice to an employer that an employee is acting outside their scope of employment in a way that will cause harm to others and needs controlled. Even more so, there is no factual allegation this ever happened previously. There is no factual allegation that this was a pattern of behavior.

Plaintiffs provide no caselaw on point. Such a finding under these limited facts again would place an unreasonable burden on employers when hiring and supervising everyday tasks of an employee. For all these reasons, Defendant's motion to dismiss must be granted as to Count III's theory of negligent supervision given the absence of factual support for a required element.

### 3. Count I and II Allegations Sounding in Negligent Hiring and Supervision Must be Stricken

Lastly, Plaintiffs' Petition comingles the three theories of liability alleged. Plaintiffs' Counts I and II for *respondeat superior* allege conclusionary statements of negligent hiring and supervision (Pet. Ct. I ¶ 26a-e, h-I and ¶ 37 a-d) in support of a claim for *respondeat superior.* Under a theory of *respondeat superior*, the determination is whether the employee committed a negligent act within the scope of employment. Negligent supervision and training are not elements of such a claim nor relevant. For this reason, along with the reasons set forth above for dismissal

of such claims, all the provisions related to negligent hiring and supervision set forth in Counts I and II must be stricken (Pet. Ct. I ¶ 26a-e, h-I and ¶ 37 a-d).

WHEREFORE, Defendants pray this Court dismiss Count III with prejudice, strike the provisions of negligent hiring/supervision contained in Count I and II, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim       #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 18th day of April 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

/s/       MARIE F. PUDLOWSKI

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - April 19, 2022 - 01:59 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )    Cause No.    21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Defendants Maco Management Co., Inc. and Summersville

Estates, LP, by and through undersigned counsel, will call up for hearing their Motion to Dismiss

Count III of Plaintiffs' Petition on May 17, 2022, at 9:00 AM in Texas County Circuit Court before

Judge Beger, or as soon thereafter as counsel may be heard, via WebEx.

https://mocourts.webex.com/meet/john.beger

Join by phone
+1-408-418-9388 United States Toll

Access code: 960 524 065

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski      #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

1

Electronically Filed - Texas - April 19, 2022 - 01:59 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of April 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

46.2444

EXHIBIT A – STATE COURT FILE

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
      Plaintiffs,              )
                                     )
v.                                   )      Cause No.      21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
      Defendants.              )

## NOTICE OF DEPOSITION

TO:                          COUNSEL OF RECORD

DATE & HOUR:                 June 13, 2022, immediately following the deposition of
                             Jennifer Bumeter

PLACE OF DEPOSITION:         Klar, Izsak & Stenger, L.L.C.
                             1125 Olivette Executive Parkway
                             St. Louis, MO 63132

PERSON TO BE DEPOSED:        Eric Meier

COURT REPORTER:              Veritext
                             800-567-8658

PLEASE TAKE NOTICE that at the above date, hour and place we shall cause the

deposition of the above person to be taken upon oral examination and pursuant to Rule 57.03 of

the Missouri Rules of Civil procedure before a shorthand reporter and suitable notary public.  Any

party or their attorney may appear and participate as they see fit.

1

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim          #50853
Marie F. Pudlowski       #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of May 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

46.2444

Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 76 of 786

EXHIBIT A - STATE COURT FILE

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF DEPOSITION

TO:                               COUNSEL OF RECORD

DATE & HOUR:                      June 13, 2022 at 10:30 a.m.

PLACE OF DEPOSITION:              Klar, Izsak & Stenger, L.L.C.
                                  1125 Olivette Executive Parkway
                                  St. Louis, MO 63132

PERSON TO BE DEPOSED:             Jennifer Bumeter

COURT REPORTER:                   Veritext
                                  800-567-8658

PLEASE TAKE NOTICE that at the above date, hour and place we shall cause the

deposition of the above person to be taken upon oral examination and pursuant to Rule 57.03 of

the Missouri Rules of Civil procedure before a shorthand reporter and suitable notary public. Any

party or their attorney may appear and participate as they see fit.

1

EXHIBIT A - STATE COURT FILE

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski      #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of May 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

2

Electronically Filed - Texas - Texas - May 13, 2022 - 01:25 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER, )
and ERIC MEIER, )
  )
    Plaintiffs, )
  )
v. )   Cause No.    21TE-CC00360
  )
MACO MANAGEMENT CO., INC., )
and SUMMERSVILLE ESTATES, L.P., )
  )
    Defendants. )

## <u>NOTICE OF VIDEOTAPED DEPOSITION</u>

TO:                   COUNSEL OF RECORD

DATE & HOUR:        June 29, 2022 at 10:30 a.m.

PLACE OF DEPOSITION:    Doniphan-Ripley County Library
                            (Genealogy Room)
                            207 Locust Street
                            Doniphan, MO 63935
                            (573) 996-2616

PERSON TO BE DEPOSED:   Susan Austin

COURT REPORTER:       Veritext
                            800-567-8658

PLEASE TAKE NOTICE that at the above date, hour and place we shall cause the deposition of the above person to be taken upon oral examination and pursuant to Rule 57.03 of the Missouri Rules of Civil procedure before a shorthand reporter and suitable notary public. The deposition shall be recorded by videotape. Any party or their attorney may appear and participate as they see fit.

1

CHILDRESS AHLHEIM CARY LLC

BY: /s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski      #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 13th day of May 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

Electronically Filed - Texas - May 17, 2022 - 12:52 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER, )
)
and )
)
ERIC MEIER, )
) Case No.: 21TE-CC00360
Plaintiffs, )
v. )
)
MACO MANAGEMENT CO., INC., )
)
and )
)
SUMMERSVILLE ESTATES, L.P. )
)
Defendants. )
)

**FIRST AMENDED PETITION**
**(WRONGFUL DEATH)**

COME NOW, Plaintiffs, JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through the undersigned counsel, and for their claims against Defendant MACO MANAGEMENT CO., INC. and SUMMERSVILLE ESTATES, L.P. (collectively "Defendants"), state as follows:

**INTRODUCTION, PARTIES AND VENUE**

1. Plaintiff Jennifer Bumeter is and was at all times relevant a resident of St. Charles County, Missouri.

2. Plaintiff Eric Meier is and was at all times relevant a resident of St. Charles County, Missouri.

3. Plaintiffs are the children and only class (1) beneficiaries of Robin Rose Fischer ("Decedent") pursuant to RSMo §537.080.

Electronically Filed - Texas - May 17, 2022 - 12:52 PM

4.  Defendant Maco Management Co., Inc. ("Defendant Maco") is, and was at all times relevant, a professional real estate management company with offices located throughout the State of Missouri.

5.  Defendant Maco is responsible for overseeing and managing several low-income housing complexes in the state of Missouri, including the Summersville Estates, located in Summersville, Missouri ("Summersville Estates"), located in Texas County, Missouri.

6.  Defendant Summersville Estates, L.P. ("Defendant Summersville") is, and was at all times relevant, the property owner of Summersville Estates and the principal of Defendant Maco.

7.  Defendant Maco vests several of the supervision duties and responsibilities for Summersville Estates in its property manager, Dawn Sims ("Ms. Sims").

8.  Prior to her employment with Defendant Maco, Ms. Sims had no experience as a property manager or in any similar field.

9.  Decedent was a tenant of Summersville Estates from July 1, 2016 until her death on June 27, 2021.

10.  Decedent was, at all times relevant herein, disabled and required the ambulatory assistance of a cane or walker.

11.  The incident which resulted in Decedent's death ("Incident") took place at Summersville Estates and, as such, venue is proper in Texas County, Missouri.

12.  On or about June 27, 2021, Decedent's neighbor at Summersville Estates alerted authorities to the presence of smoke in her own apartment.

EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 82 of 786

Electronically Filed - Texas - May 17, 2022 - 12:52 PM

13. Members of both Summersville's Police Department and Fire and Rescue Department ("Emergency Departments") arrived at Summersville Estates and were unable to determine the origin of such smoke or the location of any possible fire.

14. Incident reports from each of the Emergency Departments make absolutely no mention whatsoever of smoke detectors or any similar alarm being triggered from any apartment at Summersville Estates. One such report states that smoke detectors were present, but their power supply and operation could not be determined.

15. Eventually, officers and fire fighters determined the origin of the fire as being Decedent's apartment unit.

16. By the time a rescue could be attempted, Decedent had succumbed to the presence of smoke in her apartment unit.

17. The Texas County coroner determined Decedent's cause of death was carbon monoxide poisoning due to smoke inhalation.

18. Ms. Sims purportedly conducted an inspection of Decedent's apartment on June 15, 2021, and she reported that such inspection revealed working smoke alarms and clean firestops.

19. Neither of the two (2) smoke detectors in Decedent's apartment were in place or in working condition at the time of the Incident, and Ms. Sims was aware of the same.

20. Ms. Sims was aware, or should have been aware, of the facts set forth in paragraph 19 above prior to the Incident.

21. The fire suppression devices in Decedent's apartment unit which remained in place following the Incident expired in October 2020.

22. Ms. Sims was aware, or should have been aware, of the facts set forth in paragraph 21 above prior to the Incident.

Electronically Filed - Texas - May 17, 2022 - 12:52 PM

## COUNT I – WRONGFUL DEATH
### Against Defendant Maco

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and for their cause of action for wrongful death pursuant to RSMo §537.080 state as follows:

23. Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

24. Plaintiffs are the son and daughter of Decedent and, as such, are the proper parties under Missouri's Wrongful Death Statute to bring this cause of action against Defendant Maco.

25. Defendant Maco, by and through its agent, servant, and employee, Ms. Sims, owed a duty to Decedent to effectuate maintenance and repairs, properly inspect apartment units and generally ensure the safety of Defendant Maco's tenants.

26. Defendant Maco, by and through its agent, servant, and employee, Ms. Sims, breached this duty and is guilty of one or more of the following acts of negligence by failing to adhere to the standards of due care, skill and practice ordinarily exercised by members of their profession under the same or similar circumstances, to-wit:

    a. By negligently and carelessly hiring Ms. Sims to manage a low-income housing complex when they were aware she lacked experience in such field;

    b. By negligently and carelessly failing to train Ms. Sims or any other agent, servant or employee who was responsible for the maintenance and supervision of Summersville Estates;

    c. By negligently and carelessly failing to supervise Ms. Sims's actions, or inactions, in any way;

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - May 17, 2022 - 12:52 PM

d. By negligently and carelessly allowing Ms. Sims to have improper personal relationships with tenants, and others, which hampered her ability to appropriately perform the duties for which she was hired;

e. By negligently and carelessly failing to implement appropriate supervisory measures which would have ensured Ms. Sims' performance of the duties for which she was hired;

f. By negligently and carelessly allowing Ms. Sims to forge inspection reports which purportedly memorialize the performance of her job duties;

g. By negligently and carelessly relying on Ms. Sims' purported apartment inspections and failing to take any additional efforts to ensure the safety of its tenants;

h. By negligently and carelessly failing to provide adequate personnel and/or staff to ensure Ms. Sim's oversight and supervision; and

i. By negligently and carelessly failing to perform and measure up to the required standards of care required and observed by members of the same profession and in further particulars presently unknown to Plaintiffs but which are exceedingly likely to be disclosed upon proper discovery procedures during the course of litigation.

27. Dawn Sims was, at all relevant times, an employee and agent of Defendant Maco. At all relevant times, Ms. Sims acted within the scope of her employment with Defendant Maco, and her acts and omissions are directly chargeable to her employer, Defendant Maco under state law pursuant to *respondeat superior*.

Electronically Filed - Texas - May 17, 2022 - 12:52 PM

28. As a direct and proximate result of Defendant Maco's negligence as stated above, Decedent was forced to endure severe pain and suffering, as well as anxiety, mental distress, anguish, and ultimately death.

29. As a further direct and proximate cause of the negligence of Defendant Maco as stated above, Plaintiffs have suffered immense loss in the passing of their mother, including but in no way limited to, loss her services, consortium, companionship, comfort, guidance, instruction, counsel, and support. Moreover, Decedent's death resulted in Plaintiffs' payment of expenses for her funeral and final disposition, as well as expenses for their own therapeutic treatment.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendant Maco, for the wrongful death of Robin Rose Fischer, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

## COUNT II – WRONGFUL DEATH
### Against Defendant Summersville

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and for their cause of action for wrongful death pursuant to RSMo §537.080 state as follows:

30. Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

31. Plaintiffs are the son and daughter of Decedent and, as such, are the proper parties under Missouri's Wrongful Death Statute to bring this cause of action against Defendant Summersville.

32. Defendant Maco was, at all relevant times, an agent of Defendant Summersville. At all relevant times, Defendant Maco acted within the scope of its agency with Defendant

Summersville, and its acts and omissions are directly chargeable to its principal, Defendant Summersville under state law pursuant to *respondeat superior*.

33.     As a direct and proximate result of Defendant Maco's negligence as stated above, Decedent was forced to endure severe pain and suffering, as well as anxiety, mental distress, anguish, and ultimately death.

34.     As a further direct and proximate cause of the negligence of Defendant Maco as stated above, Plaintiffs have suffered immense loss in the passing of their mother, including but in no way limited to, loss her services, consortium, companionship, comfort, guidance, instruction, counsel, and support. Moreover, Decedent's death resulted in Plaintiffs' payment of expenses for her funeral and final disposition, as well as expenses for their own therapeutic treatment.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendant Summersville, for the wrongful death of Robin Rose Fischer, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

<u>**COUNT III – NEGLIGENT HIRING**</u>
**Against Defendants Maco and Summersville**

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and, pleading in the alternative to Counts I and II, state as follows:

35.     Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

36.     At all times relevant to Plaintiffs' claims, Ms. Sims was acting under an agreement to perform services for Defendants.

EXHIBIT A – STATE COURT FILE

Electronically Filed - Texas - May 17, 2022 - 12:52 PM

37. At all times relevant to Plaintiffs' claims, Ms. Sims had dangerous proclivities which included, without limitation, a refusal and inability to perform the duties and obligations required of her in the performance of employment related tasks.

38. Defendants knew or should have known of Ms. Sims' dangerous proclivities.

39. Prior to the Incident, Defendants, by and through their employees and agents, committed one or more of the following acts of negligence associated with the dangerous proclivities of Ms. Sims:

a. Negligently and carelessly failing to make a reasonable inquiry into Ms. Sims' competence to work as a property manager; and/or

b. Negligently and carelessly hiring or otherwise entrusting the management of their low-income housing complex to an inadequately trained, incompetent, or unfit property manager; and/or

c. Negligently and carelessly failing to properly train Ms. Sims to perform the duties and tasks required of her; and/or

d. Negligently and carelessly failing to properly oversee Ms. Sims in the performance of the duties and tasks required of her.

40. Defendants owed a duty to all tenants of Summersville Estates, including Decedent, to exercise reasonable care to determine the qualifications of its property manager when selecting him or her, and to adequately instruct, train and supervise such property manager in order to reasonably assure her or she would manage Summersville Estates in a non-negligent manner.

41. As a direct and proximate result of the aforesaid negligent and careless acts of Defendants, Ms. Sims was allowed to repeatedly cut corners in the performance of her job duties, including the performance of apartment inspections.

42.     As a further direct and proximate result of the aforesaid negligent and careless acts of Defendants, Ms. Sims repeatedly failed to perform her job duties and did not ensure Decedent's apartment was properly equipped with functioning smoke detectors or fire suppression devices—resulting in Decedent's death.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendants, jointly and severally, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
BRANDON J. KLAR,           #72884
*Attorney for Plaintiff*
1125 Olivette Executive Pkwy., Ste. 120
St. Louis, Missouri 63132
Phone:     (314) 863-1117
Fax:        (314) 863-1118
Email:      bjklar@lawsaintlouis.com

Electronically Filed - Texas - May 23, 2022 - 04:23 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## REQUEST TO APPEAR BY WEBEX

COME NOW, Defendants Maco Management Co., Inc. and Summersville Estates, L.P.,

by and through undersigned counsel, and respectfully request this Court's approval to appear via

Webex at the hearing presently scheduled for June 10, 2022.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of May 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/      MARIE F. PUDLOWSKI

1

Electronically Filed - Texas - May 23, 2022 - 04:23 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## **NOTICE OF HEARING**

PLEASE TAKE NOTICE that Defendants Maco Management Co., Inc. and Summersville

Estates, LP, by and through undersigned counsel, will call up for hearing their Motion to Dismiss

Plaintiffs' First Amended Petition on June 10, 2022, at 9:00 AM in Texas County Circuit Court

before Judge Beger, or as soon thereafter as counsel may be heard, via WebEx.

https://mocourts.webex.com/meet/john.beger

Join by phone
+1-408-418-9388 United States Toll

Access code: 960 524 065

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of May 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

46.2444

EXHIBIT A - STATE COURT FILE

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )    Cause No.    21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FIRST AMENDED PETITION, OR ALTERNATIVELY,
<u>MOTION TO STRIKE AND FOR MORE DEFINITE STATEMENT</u>**

COMES NOW, Defendants Maco Management Co. Inc., and Summersville Estates, L.P., by and through undersigned counsel, and for the Memorandum in Support of Defendants' Motion to Dismiss the First Amended Petition, or alternatively, Motion to Strike and for More Definite Statement pursuant to Missouri Supreme Court Rule 55.27, states as follows:

## I.    BACKGROUND

Plaintiffs filed a Petition for Damages (Wrongful Death) on November 9, 2021, alleging Decedent passed away because of a fire within Decedent's apartment unit, owned and managed by Defendants. Defendants responded with a Motion to Dismiss Count III for Negligent Supervision and Negligent Hiring. Hearing and argument on the Motion to Dismiss took place on May 17, 2022, resulting in Plaintiffs requesting and the Court granting leave for an amended pleading.

Plaintiffs filed the First Amended Petition (Wrongful Death) on May 17, 2022. The First Amended Petition sets forth the following Counts:

- Count I for *Respondeat Superior* against Maco;

- Count II for *Respondeat Superior* against Summersville; and

- Count III for Negligent Hiring against Maco and Summersville.

The First Amended Petition tracks the original Petition language, except for the removal of the negligent supervision claim and the addition of paragraphs 37 and 38 to Count III. Plaintiffs' First Amended Petition continues to comingle theories of liability and lacks factual support, leaving Defendants unable to properly prepare their defense. Defendants continue to seek relief from the Court in the form of a dismissal, or alternatively, an order for clarification of the pleading so Defendants have sufficient notice and understanding of the legal and factual theories alleged against them.

## II.    ARGUMENT

Plaintiffs' First Amended Petition as written fails to state a claim upon which relief can be granted in part due to lack of factual allegations in support of each distinct claim and in part due to improperly uniting several legal claims. A Court shall dismiss a pleading for failing to state a claim upon which relief can be granted. MO. SUP. CT. R. 55.27(a)(6). A petition must contain a short and plain statement of the facts and must identify the facts upon which each of plaintiffs' claims rest. MO. SUP. CT. R. 55.05. The pleader must state ultimate facts, or allegations that infer those facts, which support **every element** of a cause of action pleaded to survive a motion to dismiss. *Id.*; *see also Hoag v. McBride & Son Inv. Co.*, 967 S.W.2d 157, 174 (Mo. Ct. App. E.D. 1998).

The Court must also provide relief when Plaintiffs improperly unite several claims. MO. SUP. CT. R. 55.27(a)(10). The Court may order stricken from any pleading the redundant, immaterial, or impertinent matter. MO. SUP. CT. R. 55.27(e). The Court may also order a more definite statement of any matter contained in a pleading that is not averred with sufficient

2

Electronically Filed - Texas - May 23, 2022 - 04:23 PM

definiteness or particularity to enable the party properly to prepare responsive pleadings or to prepare generally for trial. MO. SUP. CT. R. 55.27(d).

The theory of r*espondeat superior* is well set forth in Missouri caselaw and jury instructions relating to an employer's liability for negligent acts of an employee done within the course and scope of employment. *See* MAI 18.01. Missouri caselaw has recognized the distinct theories of negligent hiring or negligent supervision where an employer might be held to have derivative or dependent liability for the conduct of an employee in causing injury to a third party. Missouri has no approved jury instructions for such theories. This is to some extent because once an employer admits an alleged negligent act was done within the course and scope of employment, the Missouri Supreme Court has held the other theories of liability (beyond *respondeat superior*) serve no real purpose, and unnecessarily expend the court and litigants' energy and time. *State Ex Rel McHaffie v. Bunch*, 891 S.W.2d 822, 825-826 (Mo. banc 1995) (allowing only the therapy of *respondeat superior* to proceed, not negligent entrustment and negligent hiring).

### A. Count I and II Fail to State a Claim for *Respondeat Superior*

Count I and II of Plaintiffs' First Amended Petition improperly comingle three distinct theories of liability—respondeat superior, negligent hiring, and negligent supervision, requiring Defendants to speculate as to the legal and factual allegations asserted against it in Count I and Count II. Furthermore, this comingling leaves Count I and II devoid of any factual support for an essential element of a *respondeat superior* claim.

Under a theory of *respondeat superior*, an element of determination of liability is whether the employee committed a negligent act within the scope of employment. *See* MAI 18.01. A claim for *respondeat superior* must allege some negligent act committed by the employee within the scope of employment. *Id.* Alleged acts of negligent supervision or training by the employer

3

are not elements of such a claim, nor relevant. *See id.; see also McHaffie* 891 S.W.2d at 825-826 (recognizing that evidence related to negligent hiring and supervision could be potentially inflammatory and is irrelevant to the contested issues of *respondeat superior* liability).

Here, Plaintiffs appear to be asserting liability via *respondeat superior* in Counts I and II based on acts by employee Sims. Yet, all the alleged facts in support of Counts I and II refer to acts of negligent hiring and supervision by the employer, not Sims. *See* 1st Am. Pet. Ct. I ¶ 26a-i and Ct. II ¶ 33. As worded, paragraph 26(a) alleges negligent hiring, paragraph 26(b) alleges negligent training, paragraph 26(c) alleges negligent supervision, paragraphs 26(d-h) allege different versions of improper or inappropriate supervision, and paragraph 26(i) alleges a catchall of failing to measure up to a required standard of care. Such allegations are not relevant to determination of *respondeat superior* and should be stricken from Count I and II as redundant, immaterial, and impertinent.

Moreover, once stricken, it becomes clear that Counts I and II fail to provide a plain factual statement as to any alleged negligent act or acts done by Sims within the course and scope of her employment. Absent such an alleged fact, Count I and Count II fail to state a claim for *respondeat superior*. Absent such an alleged fact, Count I and Count II fail to sufficiently notify Defendants of the claims against it.

For all these reasons, the Court must dismiss Counts I and II for failure to state a claim upon which relief can be granted. Alternatively, the Court should order stricken from Counts I and II the irrelevant (and potentially inflammatory) factual allegations pertaining to negligent supervision and hiring (in paragraph 26) and order a more definite statement as to the act of negligence by Sims being asserted in support of Counts I and II.

Electronically Filed - Texas - May 23, 2022 - 04:23 PM

**B. Count III Fails to State a Claim for Negligent Hiring**

Count III of Plaintiffs' First Amended Petition is also devoid of any factual support for essential elements of a negligent hiring claim. To make a case for negligent hiring, Plaintiffs must allege the employee had "dangerous proclivities" and the employer was aware of (or should have been aware of) those proclivities **at the time of hiring**. *See Gaines v. Monsanto Co.*, 655 S.W.2d568, 570 (Mo. App. ED 1983); s*ee also McHaffie v. Bunch*, 891 S.W.2d 822 (Mo. banc 1995). The claim requires "evidence that would cause the employer to foresee that the employee would create an unreasonable risk of harm outside the scope of his employment." *Dibrill v. Normandy Assocs., Inc.,* 383 S.W.3d 77, 87 (Mo. Ct. App. 2012). Dangerous proclivities almost always involve an employee's prior criminal or violent behavior. *See Dibrill,* 383 S.W.3d 77. No Missouri case has held lack of direct job-related experience or refusal to do work tasks amounts to a dangerous proclivity. Absent some dangerous proclivity of the employee and knowledge of that proclivity on the part of the employer, a Plaintiff cannot maintain a negligent hiring claim. *Braxton v. DKMZ Trucking, Inc.,* 2013 WL 6592771, at *2 (E.D. Mo. Dec. 16, 2013).

Here, Plaintiffs' initial petition contained a single, factual reference to an alleged "dangerous proclivity" known at the time of hiring, that is "prior to her employment with Defendant Maco, Ms. Sims had no experience as a property manager or in any similar field." 1st Am. Pet. ¶ 8. In further support, Plaintiffs' First Amended Petition added another vague, conclusionary allegation that "Ms. Sims had dangerous proclivities which included, without limitation, a refusal and inability to perform the duties and obligations required of her performance of employment related tasks. Defendants knew or should have known of Ms. Sims' dangerous proclivities." 1st Am. Pet. ¶ 37-38. Plaintiffs do not go on to specify the alleged duties ad

EXHIBIT A - STATE COURT FILE

obligations.  Rather, Plaintiffs again proceed to comingle claims, making generalized statements about a failure to train and oversee employee Sims. 1st Am. Pet. ¶ 39(c-d).

Once again, the irrelevant allegations related to negligent training and supervision should be stricken.  The remaining, generalized allegations related to lack of prior job experience and refusal to perform unknown job-related duties cannot and should not amount to factual support that Sims possessed a dangerous proclivity.  Even more so, generalized allegations cannot and should not amount to factual support that Defendants knew about such dangerous proclivity at the time of hiring.  Such a finding would place an unreasonable and impossible burden on all employers.

Ultimately, Plaintiffs fail to allege facts that rise to the level of a dangerous proclivity under the law.  The vague, conclusionary facts in support of Count III do not come close to the scenarios where Missouri courts have allowed a claim of negligent hiring to proceed.  Count III fails to state a claim for negligent hiring given the absence of factual support for the required elements.  Thus, Defendant's Motion to Dismiss as to Count III must be granted.

WHEREFORE, Defendants pray this Court dismiss the First Amended Petition with prejudice, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

6

EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 98 of 786

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 23rd day of May 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*                    /s/      MARIE F. PUDLOWSKI

7

EXHIBIT A - STATE COURT FILE

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                     )
and ERIC MEIER,                       )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )       Cause No.      21TE-CC00360
                                      )
MACO MANAGEMENT CO., INC.,            )
and SUMMERSVILLE ESTATES, L.P.,       )
                                      )
        Defendants.                   )

**DEFENDANTS' MOTION TO DISMISS**
**FIRST AMENDED PETITION, OR ALTERNATIVELY,**
**MOTION TO STRIKE AND FOR MORE DEFINITE STATEMENT**

COMES NOW, Defendants Maco Management Co. Inc., and Summersville Estates, L.P., by and through undersigned counsel, and for Defendants' Motion to Dismiss the First Amended Petition, or alternatively, Motion to Strike and for More Definite Statement pursuant to Missouri Supreme Court Rule 55.27, state as follows:

1. Plaintiffs filed a Petition for Damages (Wrongful Death) on November 9, 2021, alleging Decedent passed away because of a fire within Decedent's apartment unit, owned and managed by Defendants.

2. Defendants responded with a Motion to Dismiss. At the hearing on such motion, Plaintiffs requested, and the Court granted leave for an amended pleading.

3. Plaintiffs filed the First Amended Petition (Wrongful Death) on May 17, 2022. The First Amended Petition sets forth Count I for *Respondeat Superior* against Maco; Count II for *Respondeat Superior* against Summersville; and Count III for Negligent Hiring against Maco and Summersville.

EXHIBIT A - STATE COURT FILE

4. Counts I and II of Plaintiffs' First Amended Petition improperly comingle three distinct theories of liability—respondeat superior, negligent hiring, and negligent supervision, requiring Defendants to speculate as to the legal and factual allegations asserted against it in Count I and Count II. Furthermore, this comingling leaves Count I and II devoid of any factual support for an essential element of a *respondeat superior* claim, that is an alleged negligent act by an employee within the course and scope of employment.

5. Count III of Plaintiffs' First Amended Petition is also devoid of any factual support for essential elements of a negligent hiring claim, that is an alleged dangerous proclivity by an employee and knowledge by the employee of such dangerous proclivity at the time of hiring.

6. Ultimately, Plaintiffs' First Amended Petition comingles theories of liability and lacks required factual support. Defendants are left to speculate as to the legal claims and facts asserted against them, hindering their ability to prepare a proper defense.

7. Pursuant to Missouri Supreme Court Rule 55.27, and for the reasons stated herein and in the attached memorandum in support, Defendants seek relief from the Court in the form of a dismissal as to Counts I-III for failure to state a claim. Alternatively, Defendants seek an order to strike the irrelevant and redundant allegations related to negligent supervision (paragraph 26(a-i) and 29(c-d)) and an order for a more definite statement as to the facts left supporting the required elements of each count.

WHEREFORE, Defendants pray this Court provide the relief requested above, and for any other relief as this Court deems just and proper.

EXHIBIT A - STATE COURT FILE

CHILDRESS AHLHEIM CARY LLC


BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim    #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of May 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*                    /s/      MARIE F. PUDLOWSKI

**IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, | ) |
| | ) |
| and | ) |
| | ) |
| ERIC MEIER, | )  Cause No.: 21TE-CC00360 |
| | ) |
|     Plaintiffs, | ) |
| v. | ) |
| | ) |
| MACO MANAGEMENT CO., INC., and | ) |
| | ) |
| SUMMERSVILLE ESTATES, L.P. | ) |
| | ) |
|     Defendants. | ) |

## PLAINTIFFS JENNIFER BUMETER AND ERIC MEIER'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Memorandum in Opposition to Defendants' Motion to Dismiss, state as follows:

### LEGAL STANDARD

In determining the sufficiency of a petition challenged by a motion to dismiss we give the petition its broadest intendment, **treat all facts alleged as true**, and construe the allegations favorably to plaintiffs to determine whether they invoke principles of substantive law. *McCoy v. Liberty Foundry Co.,* 635 S.W.2d 60, 62–63 (Mo.App.1982); *Gaines v. Monsanto Co.,* 655 S.W.2d 568, 570 (Mo. Ct. App. 1983). The trial court's ruling on a motion to dismiss for failure to state a claim must be construed liberally and favorably to plaintiffs, **giving them the benefit of all inferences fairly deducible from the facts stated therein**. *Jaime v. Neurological Hospital Ass'n of Kansas City,* 488 S.W.2d 641, 643 (Mo. 1973).

Electronically Filed - Texas - June 09, 2022 - 04:19 PM

## ARGUMENT

### 1. Defendants' Motion to Dismiss Fails Both Substantively and Procedurally

Defendants seek to dismiss Plaintiffs' First Amended Petition, in part, based on their belief that Plaintiffs have failed to provide sufficient factual allegations to support their claims. Defendants allege in their Memorandum in Support of Motion to Dismiss ("Memorandum in Support") that the Plaintiffs have not provided a "factual statement as to any alleged negligent act or acts done by [Dawn] Sims within the course and scope of her employment." Defendants' assertion is patently false and misleading. Though couched as a challenge to the adequacy of Plaintiffs' First Amended Petition, Defendants' Motion to Dismiss challenges the merits of Plaintiffs' claims based on factual disagreements and arguments based in semantics. Missouri courts have repeatedly held such arguments to be improper on a motion to dismiss. *Fenlon v. Union Elec. Co.,* 266 S.W.3d 852, 854 (Mo. App. 2008); *Moore v. Missouri Highway Transp. Com'n,* 169 S.W.3d 595, 599 (Mo. App. 2005).

Regardless, Plaintiffs asserted several factual allegations as to Ms. Sims' negligence in the First Amended Petition. As alleged therein, Ms. Sims claims to have inspected the apartment of Decedent and reported "working smoke alarms and clean firestops" prior to the fire which caused Decedent's death ("Incident"). *See* 1st Am. Pet. ¶ 18. As further articulated, at the time of the Incident, neither smoke detectors in Decedent's apartment were in operable condition nor plugged in. *See* 1st Am. Pet. ¶ 19. Further, the fire suppression devices in Decedent's apartment expired eight (8) months prior to the Incident. *See* 1st Am. Pet. ¶ 21. Plaintiffs should not be required to spell out for Defendants how such factual statements render Ms. Sims' negligence "fairly deducible". *Jaimie,* 488 S.W.2d 643.

Electronically Filed - Texas - June 09, 2022 - 04:19 PM

Moreover, despite Defendants' assertions, the allegations contained in Plaintiffs' paragraph 26 unquestionably serve as **facts providing additional notice** to Defendants of the claims against them by way of Ms. Sims' negligence. *Id.* Within paragraph 26(a-i), Ms. Sims is alleged to be negligent in each of the following ways: an entire inability to perform her job duties (¶ 26(a-c; e)); an inability or refusal to perform her job duties due to improper personal relationships she formed while in the course and scope of her employment (¶ 26(d)); forging inspection reports, failing to perform her job duties, and endangering the welfare of tenants (¶ 26(f-h)); and, most succinctly, failing altogether to adhere to the standards of care required of members of the same profession[1] (¶ 26(i)).

Defendants' assertion that Plaintiffs have failed to provide factual support for their claims is incorrect; Plaintiffs have unquestionably alleged sufficient facts to invoke principles of substantive law. This Court should properly deny Defendants' Motion to Dismiss respective to Counts I and II.

**2. Plaintiffs have sufficiently alleged Dawn Sims' Dangerous Proclivities so as to Warrant a Claim of Negligent Hiring Which Must Be Submitted to the Trier of Fact**

Defendants accurately state in their Memorandum in Support that, to make a case for negligent hiring, Plaintiffs must **allege** the employee had "dangerous proclivities" at the time of hiring. That is exactly what the Plaintiffs have done here. *See* 1st Am. Pet. ¶ 37-39. The Plaintiffs

---

[1] ¶ 26(i) also states Ms. Sims was negligent "in further particulars presently unknown to Plaintiffs but which are exceedingly likely to be disclosed upon proper discovery procedures during the course of litigation".

here, like all plaintiffs, are not required to prove every element or fact related to a claim in their initial pleading[2]—such is the purpose of discovery.

Matters of foreseeability and proximate cause must be left for the court and jury after presentation of evidence. *Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 (Mo. App. E.D. 1983). Dawn Sims was hired by Defendant MACO Management Company, Inc. ("Defendant MACO") as the property manager of Summersville Estates in September 2018. Summersville Estates is a government assisted living facility and, on information and belief, is occupied by many elderly and disabled individuals. Prior to her employment with Defendant MACO, Ms. Sims was employed as a makeup artist, sales associate, caregiver, and security officer—notably with <u>no experience</u> as a property manager. *See* **Exhibit A**.

Ms. Sims was referred to the position of property manager by a Mr. Steve Conner, who is <u>related to Ms. Sims,</u> also employed by Defendant MACO and is listed as Ms. Sims' emergency contact. *See* **Exhibit B**. Ms. Sims was not qualified to perform the work for which she was hired, and Defendants failed altogether to ensure her training or qualifications. The facts available to Plaintiffs lend credence to the belief that Defendants were at all times aware that Ms. Sims possessed dangerous proclivities. Here, **<u>at the very least</u>**, Defendants knew about Ms. Sims' lack of qualifications and the dangerous proclivities which resulted therefrom. Defendants' nepotistic hiring of a severely unqualified employee to manage housing for the **elderly and disabled** led to a wide range of foreseeable harms—including the exact harm which occurred here, an apartment fire.

---

[2] The determination of factual questions is **not appropriate on a motion to dismiss**. (emphasis added) *Chochorowski v. Home Depot U.S.A., Inc.,* 295 S.W.3d 194, 197 (Mo. App. 2009); citing *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 306 (Mo. banc 1993); *Fenlon v. Union Elec. Co.,* 266 S.W.3d 852, 854 (Mo. App. 2008).

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - June 09, 2022 - 04:19 PM

The fact of the matter is clear: Plaintiffs properly alleged a claim for Negligent Hiring, and it is now their burden to prove the same with evidence obtained through the course of litigation. Any determination as to Ms. Sims' "dangerous proclivities"—including Defendants' awareness of the same and whether Ms. Sims' refusal and/or inability to perform her duties amounted to a "dangerous proclivity" of which Defendants were aware—is a question necessarily determined by the trier of fact and may not appropriately be decided on a Motion to Dismiss. *Dibrill v. Normandy Assocs., Inc.,* 383 S.W.3d 77, 89 (Mo. Ct. App. 2012). This Court should properly deny Defendants' Motion to Dismiss respective to Count III.

## CONCLUSION

Plaintiffs' First Amended Petition sufficiently alleges claims for Wrongful Death based in *respondeat superior,* as well as Negligent Hiring. The facts alleged by Plaintiffs must be accepted as true by this Court when ruling on the instant Motion. Defendants, through their employee Dawn Sims, negligently caused the untimely death of Ms. Robin Fischer. Defendants were at all times aware of their own failures and of Ms. Sims' dangerous proclivities, which included an inability or refusal to perform the duties and responsibilities of her job. Plaintiffs ask this Court to deny Defendants' Motion to Dismiss, and to award Plaintiffs any other and further relief deemed just and proper under the circumstances.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
*Attorney for Plaintiffs*
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Email: bjklar@lawsaintlouis.com

Electronically Filed - Texas - June 09, 2022 - 04:19 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of June 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

PLAINTIFF'S EXHIBIT

tabbies

A
_____

**Employment History:** A resume does not substitute for an employment application.

Provide the following information of your past and current employers or volunteer activities, starting with the most recent. Explain any gaps in employment in the comments section below. (Include the last 5 years of employment history.)

| From: Dec 17 | To: June 18 | Employer: STT Inc | Telephone Number: |
|---|---|---|---|
| Job Title: Security officer | | Address: Various locations, MI | (989) 326-0660 |
| Immediate Supervisor and Title: Calvin Rusch, CO-owner | Starting Salary: $11.25/hr  Ending Salary: $15.00/hr | Type of work performed: Protection of assets, supervisory duties, payroll, hiring/firing, interviews, paperwork, medical standbys | |
| From: June 16 | To: May 18 | Employer: Gladys Remaly | Telephone Number: 231 627-6996 |
| Job Title: Caregiver | | Address: Beaugrand Est., MI | |
| Immediate Supervisor and Title: Gladys Remaly, Minister | Starting Salary: 10.00/hr  Ending Salary: 10.00/hr | Type of work performed: Caregiving for an elderly man with dementia, making sure his needs were met (cooked meals, housework, keeping his mind active), maintenance. | |
| From: Aug 17 | To: Nov 17 | Employer: Halloween Superstores | Telephone Number: 231 838-0054 |
| Job Title: Sales Assoc. | | Address: Petoskey, MI | |
| Immediate Supervisor and Title: Nicole Green, General Mgr | Starting Salary: 10.00/hr  Ending Salary: 10.00/hr | Type of work performed: Seasonal position helping people with makeup and costuming needs at a Halloween store. | |
| From: April 07 | To: Current | Employer: Shattered Moon FX | Telephone Number: 231 818 2046 |
| Job Title: Owner | | Address: Cheboygan, MI | |
| Immediate Supervisor and Title: Self | Starting Salary: per job  Ending Salary: per job | Type of work performed: Makeup fx and costuming for film, company management, paperwork filing, implementing clients needs | |

Comments: _____

Applicant Statement: Please read the following statements carefully before signing this application. Only those applications that are signed, dated, and completed in full are considered valid.

I certify that all information I have provided in order to apply for and secure work with the employer is true, complete, and correct. I understand that any information provided by me that is found to be false, incomplete, or misrepresented in any respect, will be sufficient cause to cancel further consideration of this application, or immediately discharge me from the employer's service whenever it is discovered.

I expressly authorize, without reservation, the employer, its representatives, employees or agents to contact and obtain information from all references (personal and professional), employers, public agencies, licensing authorities, and educational institutions and to otherwise verify the accuracy of all information provided by me in this application, resume, or job interview. I hereby waive any and all rights and claims I may have regarding the employer, its agents, employees or representatives for seeking, gathering and using such information in the employment process and all other persons, corporations or organizations for furnishing such information.

I understand that the employer does not unlawfully discriminate in employment and no question on this application is used for the purpose of limiting or excusing any applicant from consideration for employment on a basis prohibited by applicable local, state or federal law.

I understand that this application remains current for only 90 days. At the conclusion of that, if I have not heard from the employer and still wish to be considered for employment, it will be necessary to reapply and fill out a new application.

If I am hired, I understand that I am free to resign at any time, with or without cause and without prior notice, and the employer reserves the same right to terminate my employment at any time, with or without prior notice, except as may be required by law. This application does not constitute an agreement or contract for employment for any specified period or definite duration. I understand that no supervisor or representative of the employer is authorized to make any assurance to the contrary and that no implied, oral or written agreements contrary to the foregoing express language are valid unless they are in writing and signed by the employer's president. I understand that I am required to pass a drug test prior and/or during my employment.

I also understand that if I am hired, I will be required to provide proof of identity and legal authority to work in the United States and that federal immigration laws require me to complete an I-9 Form in this regard.

I have read and understand the foregoing statements and accept the same as conditions of my employment.

Signature of Applicant: _____  Date: 9-6-18

MACO318



# MACO MANAGEMENT COMPANY, Inc.

**Employment Application**

Equal Opportunity Employer

Incomplete applications will not be considered.

**A Drug Free Workplace**



**PLAINTIFF'S EXHIBIT**

B

| Last Name | First Name | Middle Initial | Social Security Number |
|---|---|---|---|
| Sims | Dawn | M | ▆▆▆▆▆▆▆ |

| Address: Number & Street | City | State | Zip Code |
|---|---|---|---|
| 25765 State Highway 19 | Eminence | MO | 65466 |

Positions Desired: 1. Mgt/maint. 2. _____ 3. _____

My Salary Expectations are: Negotible

1. How did you hear about us? Or referred by: Jennifer & Steve (Conner)
2. Do you have any relatives or acquaintances employed by MACO Management Company or its affiliates? **(Yes)** No
   If yes, please states names: Steve Conner
3. If employed, will you be able to submit verification of your legal right to work in the United States? **(Yes)** No
4. Have you previously been employed by MACO Management Company or its affiliates? Yes **(No)**
   If yes, please provide: Department _____ Position _____ Date _____
5. Have you ever worked under any other name that would enable us to check your employment history? **(Yes)** No
   If yes, please provide name(s): Dawn M LaCross
6. Have you ever been convicted of a first degree Misdemeanor or Felony? Yes **(No)**
   If yes, please provide date(s) and details: _____

*For the purpose of this application, convictions applied to finding of guilt, with or without adjudication of guilt, as a result of a jury verdict, non-jury trial, or entry of a plea of guilty or nolo contendere (no contest).*
*Answering "Yes" to these questions does not constitute an automatic denial of employment. Factors such as date of the offense, seriousness and nature of the violation, rehabilitation and position applied for will be taken into account.*

**\*We do conduct background checks\***

I prefer: Full-Time __✗__ Part-Time __✗__ Seasonal _____ Temporary _____

I can work: Any Shift _____ Work Hours Preferred: _____

I can work: Monday __✗__ Tuesday __✗__ Wednesday __✗__ Thursday __✗__ Friday __✗__ Saturday __✗__ Sunday _____

| References: Name | Telephone | Number of Years Known |
|---|---|---|
| Haynze Whitmore | ▆▆▆▆▆ | 20 + |
| Ryan Blazic | ▆▆▆▆▆ | 4 + |
| Josh Smith | ▆▆▆▆▆ | <1 - worked with |

Skills and Qualifications:

Summarize any training, skills, licenses and/or certificates that may qualify you as being able to perform job-related functions in the position for which you are applying.

I've had management experience, and know how to fix things. My course of study in college was small business management.

| Education: Name/Location | Years Completed | Did you graduate? | Course of Study |
|---|---|---|---|
| High School | 1 2 3 (4) | (Yes) No | General required |
| College | 1 (2) 3 4 | Yes (No) | Small business mgt. |
| Other | 1 2 3 4 | Yes No | |

If you speak, read or write a foreign language(s), please indicate on the line below:

_____

# 4576
Division 7

50000
$ 13.00/hr

**Checklist for New Hire**

Date: 9-18-18

Office: Summersville

Name: Dawn M Sims    Position: Mgt/maintence

Address: 25765 State Highway 19 Eminence 65466

Social Security Number: ███████████

Emergency Contact Info: Steve Conner ███████████

Weekly Schedule and Pay Rate: M-F 13⁰⁰ an hour

**Application Package:**

Application ✓

Background Release ✓

Copy of SS Card/ Driver's License ✓

MACO Authorization ✓

Employment Report Discloser ✓

**New Hire Package:**

W4 ✓

State W4 ✓

I-9 ✓

Post-Accident Policy ✓

401K ✓

Direct Deposit Form & Copy of Check ✓

Handbook Receipt ✓

Harassment Receipt ✓

Duties & Responsibility Receipt ✓

Insurance Accept/Decline ✓

WP

MACO305

Electronically Filed - Texas - June 10, 2022 - 11:13 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                        )
and ERIC MEIER,                          )
                                         )
          Plaintiffs,                    )
                                         )
v.                                       )     Cause No.     21TE-CC00360
                                         )
MACO MANAGEMENT CO., INC.,               )
and SUMMERSVILLE ESTATES, L.P.,          )
                                         )
          Defendants.                    )

## NOTICE OF CANCELLATION OF DEPOSITION

PLEASE TAKE NOTICE that the depositions of Eric Meier and Jennifer Bumeter, scheduled

for June 13, 2022 have been cancelled and will be rescheduled at a later date once pleadings are

finalized.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the June 10, 2022, the foregoing was filed
electronically with the Clerk of the Court to be served by operation of the Court's electronic filing
system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

1

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| | ) | |
| and | ) | |
| | ) | Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MACO MANAGEMENT CO., INC., and | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF DEPOSITION**

TO:          Counsel of Record

DATE & TIME:          June 29, 2022, at 10:30 A.M.

DEPONENT(S):          Susan Austin

LOCATION:          Doniphan-Ripley County Library
                           (Genealogy Room)
                           207 Locust Street
                           Doniphan, MO 63935
                           (573) 996-2616

REPORTER:          Kelly Daniels, CCR

PLEASE TAKE NOTICE that the attorney for Plaintiffs will at the above date, hour and place, take the deposition of the above person before a certified court reported and notary public duly authorized to administer oaths and said person shall at that time and date produce for review and inspection the documents identified in the Subpoena attached hereto.

Dated this 13th day of June 2022.

EXHIBIT A - STATE COURT FILE

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.


By:    /s/ Brandon J. Klar        
       BRANDON J. KLAR, #72884
       Attorney for Plaintiffs
       1125 Olivette Executive Parkway
       St. Louis, Missouri 63132
       Tel: (314) 863-1117
       Fax: (314) 863-1118
       Email: bjklar@lawsaintlouis.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 13th day of June 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.


**CC:**     **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
        Kelly J. Daniels, CCR
        49 W. Glenwood Ln.
        St. Louis, MO 63122-5142

                           /s/ Brandon J. Klar

Electronically Filed - Texas - June 13, 2022 - 01:57 PM

0IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER, )
and ERIC MEIER, )
 )
    Plaintiffs, )
 )
v. )    Cause No.    21TE-CC00360
 )
MACO MANAGEMENT CO., INC., )
and SUMMERSVILLE ESTATES, L.P., )
 )
    Defendants. )

### NOTICE OF CANCELLATION OF VIDEOTAPED DEPOSITION

TO:                   COUNSEL OF RECORD

DATE & HOUR:         June 29, 2022 at 10:30 a.m.

PLACE OF DEPOSITION:     Doniphan-Ripley County Library
                              (Genealogy Room)
                              207 Locust Street
                              Doniphan, MO 63935
                              (573) 996-2616

PERSON TO BE DEPOSED:     Susan Austin

PLEASE TAKE NOTICE that the above deposition has been cancelled.

                              CHILDRESS AHLHEIM CARY LLC

                              BY:/s/ MARIE F. PUDLOWSKI
                              David T. Ahlheim     #50853
                              Marie F. Pudlowski   #64228
                              1010 Market Street, Suite 500
                              St. Louis, Missouri 63101
                              314-621-9800
                              314-621-9802 (fax)
                              dahlheim@jchildresslaw.com
                              mpudlowski@jchildresslaw.com
                              *Attorneys for Defendants*

46.2444

Electronically Filed - Texas - June 13, 2022 - 01:57 PM

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 13th day of June 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

2

FILED
6/13/2022
MARCI MOSLEY
CIRCUIT CLERK
TEXAS COUNTY, MO

IN THE CIRCUIT COURT OF *Texas* COUNTY MISSOURI

*Jennifer Bumister v Maco Management, et al*

Case # *21TE-CC00360*      Date: *6·13·2022*

## MEMORANDUM

On June 10, 2022 the parties appeared by counsel via Webex on Defendant's Motion to Dismiss Ct III of Plaintiffs' Petition. Argument was had and the Motion taken under advisement.

Having reviewed the Plaintiffs First Amended Petition, the parties suggestions and the argument of counsel, although the Court feels the Petition is inartfully drawn, given the allegations their broadest intendment, it does state a cause of action.

The Defendants arguments will likely be reconsidered in a Motion For Summary Judgment.

The Motion To Dismiss is denied.

SO ORDERED

JUDGE

EXHIBIT A - STATE COURT FILE

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER, )
and ERIC MEIER, )
)
    Plaintiffs, )
)
v. )   Cause No.    21TE-CC00360
)
MACO MANAGEMENT CO., INC., )
and SUMMERSVILLE ESTATES, L.P., )
)
    Defendants. )

### DEFENDANTS MACO MANAGEMENT CO., INC. AND SUMMERSVILLE ESTATES, L.P.'S ANSWER TO PLAINTIFF'S FIRST AMENDED PETITION (WRONGFUL DEATH)

COME NOW Defendants Maco Management Co., Inc. and Summersville Estates, L.P., by and through their attorneys, and for their Answer to First Amended Petition states as follows:

1. Defendants have insufficient information in which to admit or deny the assertions contained in Paragraph 1 and therefore deny same.

2. Defendants have insufficient information in which to admit or deny the assertions contained in Paragraph 2 and therefore deny same.

3. Defendants have insufficient information in which to admit or deny the assertions contained in Paragraph 3 and therefore deny same.

4. Admit.

5. Admit.

6. Admit.

7. Defendants deny the allegations in paragraph 7 as written.

8. Defendants deny the allegations in paragraph 8.

1

9.  Admit.

10.  Defendants deny the allegations in paragraph 10.

11. Defendant makes no answer to allegations in paragraph 11 as it states a legal conclusion as to proper venue under Missouri statutes.  To the extent it states a factual assertion, Defendants deny the same.

12.  Defendants have insufficient information in which to admit or deny the assertions contained in Paragraph 12 and therefore deny same.

13.  Defendants deny the allegations in paragraph 13.  Further, Plaintiff's "fact" contained in paragraph 13 is contraindicated by paragraph 15.

14.  Defendants deny the allegations in paragraph 14.

15.  Defendants generally admit the origin of the fire appears to have been in Decedent's apartment.  Defendant denies any assertion or allegation as to the cause or exact origin of the fire.

16.  Defendants deny the allegations in paragraph 16.

17.  Defendants deny the allegations in paragraph 17 and move to strike the allegation as it is not a statement of fact but a purported expert conclusion of the Texas County Coroner without legal foundation for this opinion.

18.  Defendants move to strike the allegations in paragraph 18 as they are not a "simple plain statement of fact" but argumentative. Defendants admit conducting inspections of Decedent's apartment.  Defendant refers to the inspection report, attested and signed by Decedent, for a complete assessment of the inspections and timing thereof.  To the extent not specifically admitted, Defendants deny the same.

2

19. Defendants deny the allegations in paragraph 19 as written. Upon investigation of the fire scene, smoke detectors were found on Decedent's microwave. To the extent not specifically admitted herein, Defendant denies the same.

20. Defendants deny the allegations in paragraph 20.

21. Defendants deny the allegations in paragraph 21.

22. Defendants deny the allegations in paragraph 22.

## Count I – WRONGFUL DEATH (Maco)

23. Defendants re-state and re-assert their answers to all allegations in paragraphs 1 – 22 as if more fully set out herein.

24. Defendants have insufficient information in which to admit or deny the assertions contained in Paragraph 24 and therefore deny same.

25. Defendants deny the allegations in paragraph 25.

26. Defendants deny all allegations contained within paragraph 26, including subparagraphs a-i.

27. Defendants admit Dawn Sims was an employee of Maco. Defendant denies remaining allegations in paragraph 27 as it states a misstatement of law and legal conclusion as to applicability of the *respondeat superior law*.

28. Defendants deny the allegations in paragraph 28.

29. Defendants deny the allegations in paragraph 29.

WHEREFORE having fully answered the allegations of Count I of Plaintiffs' First Amended Petition, Defendants pray this cause of action be dismissed, with costs assessed to Plaintiffs and for any and all further relief this Court deems just and proper.

3

## COUNT II – WRONGFUL DEATH (Summersville)

30. Defendants re-state and re-assert their answers to all allegations in paragraphs 1 – 29 as if more fully set out herein.

31. Defendants have insufficient information in which to admit or deny the assertions contained in Paragraph 24 and therefore deny same.

32. Defendants admit Dawn Sims was an employee of Maco. Defendant denies remaining allegations in paragraph 32 as it states a misstatement of law and legal conclusion as to applicability of the *respondeat superior* law.

33. Defendants deny the allegations in paragraph 33.

34. Defendants deny the allegations in paragraph 24.

WHEREFORE having fully answered the allegations in Count II of Plaintiffs' First Amended Petition, Defendants pray this case of action be dismissed, with costs assessed to Plaintiff and for any and all further relief this Court deems just and proper.

## COUNT III – NEGLIGENT HIRING AND SUPERVISION

35. Defendants re-state and re-assert their answers to all allegations in paragraphs 1 – 34 as if more fully set out herein.

36. Defendants deny the allegations in paragraph 36 as written.

37. Defendants deny the allegations in paragraph 37.

38. Defendants deny the allegations in paragraph 38.

39. Defendants deny all allegations contained within paragraph 39, including subparagraphs a-d.

40. Defendants deny the allegations in paragraph 40.

41. Defendants deny the allegations in paragraph 41.

4

EXHIBIT A – STATE COURT FILE

42. Defendants deny the allegations in paragraph 42.

WHEREFORE having fully answered the allegations in Count III of Plaintiffs' First Amended Petition, Defendants pray this case of action be dismissed, with costs assessed to Plaintiff and for any and all further relief this Court deems just and proper.

## AFFIRMATIVE DEFENSES

1. In further answer and affirmative defense, Defendants state that Plaintiffs' Petition fails to state a claim upon which relief may be granted as more specifically set forth in Defendants' Motion to Dismiss the Petition and Motion to Dismiss 1st Amended Petition.

2. In further answer and affirmative defense, Defendants state that whatever injuries and/or damages the Plaintiffs may have sustained on the occasion referred to in Plaintiffs' Petition were caused, or in the alternative, contributed to be caused, by the carelessness, negligence, and/or contributory fault of Plaintiffs' decedent in failing to exercise the requisite degree of care at the time and place referred to therein and any judgment for Plaintiff must be reduced by the percentage of negligence assessed to Plaintiffs / Plaintiff's decedent.

These actions include but are not limited to:

a. Decedent negligently and/or recklessly and/or intentionally removed functional smoke detectors in her apartment;

b. Decedent negligently and/or recklessly and/or intentionally failed to notify management that she disabled or caused smoke alarms to be disabled;

c. Decedent negligently and/or recklessly and/or intentionally failed to notify management that her smoke alarms were disabled or nonfunctional;

d. Decedent negligently and/or recklessly and/or intentionally caused the fire by improper use and/or disposal of cigarettes or other sources of ignition;

5

e. Decedent negligently and/or recklessly and/or intentionally caused the fire to spread by failing to maintain her apartment condition;

f. Decedent negligently and/or recklessly and/or intentionally failed to notify authorities and/or others who could assistant of the fire upon discovery of the fire; and

g. Decedent negligently and/or recklessly and/or intentionally failed to extricate herself from the location of the fire upon discovery of the fire.

3. In further answer and affirmative defense, Defendants state that if Plaintiffs sustained any damages, which Defendants specifically deny, then any alleged damages were caused by subsequent intervening events or occurrences.

4. In further answer and affirmative defense, Defendants state that Decedent released and/or waived Defendants from liability for the subject conduct and damages being claimed pursuant to the clear, precise, and unequivocal language set forth in the executed Smoke Alarm Agreement attached as Exhibit A and contained in Decedent's Lease Agreement with Defendants.

5. In further answer and affirmative defense, Defendants state that Decedent waived and/or should be estopped from seeking the damages being claimed pursuant to the clear, precise, and unequivocal language set forth in the executed Smoke Alarm Agreement attached as Exhibit A and contained in Decedent's Lease Agreement with Defendants.

WHEREFORE having fully answered the allegations of Plaintiffs' First Amended Petition and in light of these affirmative defenses, Defendants pray this cause of action be dismissed, with costs assessed to Plaintiffs and for any and all further relief this Court deems just and proper.

6

Electronically Filed - Texas - June 14, 2022 - 02:30 PM

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim     #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of June 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

7



# MACO Management Co., Inc.

## Smoke Alarm Policy

I acknowledge that:

As of this date: _7-1-16_ , the smoke alarm(s) in this apartment # _D1_ in the

_Summersville Estates_ Apartments is/are in place and functional.

It is my responsibility to:

- Ensure that the red light on the smoke alarm is on at all times.
- Clean, dust and test the alarm(s) on a regular basis as needed. (Management recommends that this be done at least once a week. To test it, press the button to sound the alarm.)
- Report to management if the unit(s) is/are not

I understand that:

If the smoke alarm(s) is/are disconnected or tampered with by the resident, their family or guests, the resident may be responsible for damages caused by fire. The property owner, landlord, or their representatives are not responsible for the resident's loss by fire associated with a disabled smoke alarm(s).

I also understand:

My own personal possessions are not covered from loss or damage by fire, theft or other hazard by the landlord's insurance policy.

The landlord recommends that residents consider purchasing renter's insurance to cover their own personal possessions from loss or damage by fire, theft or other hazard.

_Robin B. Fischer_
Tenant Signature

_Ben Cochran_
Manager Signature

_Summersville Estates_
Complex Name

_____
Co-Tenant Signature

MM 10-2013

Electronically Filed - Texas - June 14, 2022 - 02:30 PM

Electronically Filed - Texas - June 14, 2022 - 09:29 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.      21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## RE-NOTICE OF VIDEOTAPED DEPOSITION

TO:                                    COUNSEL OF RECORD

DATE & HOUR:                 June 29, 2022 at 10:30 a.m.

PLACE OF DEPOSITION:    Doniphan-Ripley County Library
(Genealogy Room)
207 Locust Street
Doniphan, MO 63935
(573) 996-2616

PERSON TO BE DEPOSED:    Susan Austin

COURT REPORTER:            Veritext
800-567-8658

PLEASE TAKE NOTICE that at the above date, hour and place we shall cause the

deposition of the above person to be taken upon oral examination and pursuant to Rule 57.03 of

the Missouri Rules of Civil procedure before a shorthand reporter and suitable notary public. The

deposition shall be recorded by videotape. Any party or their attorney may appear and participate

as they see fit.

1

2

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim       #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of June 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

2

# AFFIDAVIT OF SERVICE

| Case:<br>21TE-CC00360 | Court:<br>25th Judicial Circuit Court, Texas County, Missouri | County:<br>Texas, MO | Job:<br>7271270 (Bumeter & Meier) |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Jennifer Bumeter and Eric Meier | | Defendant / Respondent:<br>Maco Management Co., Inc. and Summersville Estates, L.P. | |
| Received by:<br>Wheeler Services LLC. | | For:<br>Klar, Izsak & Stenger, LLC | |
| To be served upon:<br>Rebecca Ann Johnson | | | |

I, Andrew Wheeler, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   Rebecca Ann Johnson, Home: 647 W Lynn St, Springfield, MO 65802

**Manner of Service:**   Personal/Individual, Jun 24, 2022, 3:15 pm CDT

**Documents:**   Subponea Order to Appear/Produce Documents/Give Depositions (Received Jun 23, 2022 at 12:21pm CDT)

**Additional Comments:**
1) Successful Attempt: Jun 24, 2022, 3:15 pm CDT at Home: 647 W Lynn St, Springfield, MO 65802 received by Rebecca Ann Johnson. Other: Serve the lady identifying herself as Rebecca Johnson;

_Andrew Wheeler_   Date 6-27-22
Andrew Wheeler

Wheeler Services LLC.
2131 W Republic Rd #512
Springfield, MO 65807
417-840-2396

Subscribed and sworn to before me by the affiant who is personally known to me.

_Kanina Cox_
Notary Public
06-27-2022    02-17-2023
Date    Commission Expires

KANINA V. COX
My Commission Expires
February 17, 2023
Greene County
Commission #15633375

Electronically Filed - Texas - June 27, 2022 - 03:16 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,            )
and ERIC MEIER,              )
                                  )
     Plaintiffs,             )
                                  )
v.                            )     Cause No.    21TE-CC00360
                                  )
MACO MANAGEMENT CO., INC.,   )
and SUMMERSVILLE ESTATES, L.P.,  )
                                  )
     Defendants.          )

## NOTICE OF DEPOSITION

TO:                      COUNSEL OF RECORD

DATE & HOUR:          July 15, 2022 at 10:00 a.m.

PLACE OF DEPOSITION:    Alpha Reporting Service
                      1911 S National Ave, Suite 405
                      Springfield, MO 65804
                      417-887-4110

PERSON TO BE DEPOSED:   Rebecca Johnson

COURT REPORTER:       Veritext
                      800-567-8658

PLEASE TAKE NOTICE that at the above date, hour and place we shall cause the deposition of the above person to be taken upon oral examination and pursuant to Rule 57.03 of the Missouri Rules of Civil procedure before a shorthand reporter and suitable notary public. Any party or their attorney may appear and participate as they see fit.

1

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29th day of June 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER,           )
                                     )
and                            )
                                     )   Cause No.: 21TE-CC00360
ERIC MEIER,               )
                                     )
       Plaintiffs,          )
v.                      )
                                     )
MACO MANAGEMENT CO., INC., and   )
                                     )
SUMMERSVILLE ESTATES, L.P.     )
                                     )
       Defendants.         )

## NOTICE OF DEPOSITION

TO:                  Counsel of Record

DATE & TIME:      July 11, 2022, at 10:00 A.M.

DEPONENT(S):     Dawn Sims

LOCATION:        Zoom link to be provided

REPORTER:        Kelly Daniels, CCR

PLEASE TAKE NOTICE that the attorney for Plaintiffs will at the above date, hour and place, take the deposition of the above person before a certified court reported and notary public duly authorized to administer oaths and said person shall at that time and date produce for review and inspection the documents identified in the Subpoena attached hereto.

Dated this 1st day of July 2022.

EXHIBIT A - STATE COURT FILE

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By:    /s/ Brandon J. Klar       
BRANDON J. KLAR, #72884
Attorney for Plaintiffs
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1st day of July 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.

CC:    **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
Kelly J. Daniels, CCR
49 W. Glenwood Ln.
St. Louis, MO 63122-5142

/s/ Brandon J. Klar

EXHIBIT A - STATE COURT FILE

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| | ) | |
| and | ) | |
| | ) | Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MACO MANAGEMENT CO., INC., and | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS JENNIFER BUMETER AND ERIC MEIER'S MOTION FOR RELIEF**

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Motion for Relief, state as follows:

1. On Wednesday, June 29, 2022, Defendants, through counsel, took the deposition of Susan Austin, a former Texas County resident who now resides in Ripley County, Missouri ("Deposition").

2. Ms. Austin is a potential fact witness identified by Plaintiffs as possessing relevant information related to this lawsuit.

3. The Deposition began at 10:30am in the Doniphan County Public Library.

4. Apart from two (2) minor breaks, the Deposition lasted **five (5) hours in length and sole examination was conducted by Defendants' counsel.**

5. The Deposition was cut short when Ms. Austin chose to leave the public library due to the harassing nature of Defendants' counsel's examination.

Electronically Filed - Texas - July 05, 2022 - 01:07 PM

6. The harassing nature of such examination is underscored by the following:

   a. Repeated mischaracterizations of prior testimony and attempts to "place words in" in Ms. Austin's mouth;

   b. Extended argumentative examination related to areas of inquiry previously asked and answered;

   c. Use of **several exhibits which were not produced to Plaintiffs in discovery ("Undisclosed Documents")**; and

   d. Repeated use of the Undisclosed Documents as a means of intimidating the potential fact witness.

7. The actions of Defendants' counsel were calculated and targeted, and the same were meant to deter the truthful testimony of Plaintiffs' potential fact witness.

8. As a result of Defendants' harassing line of questioning during the Deposition, including her use of the Undisclosed Documents, Plaintiffs are required to produce Ms. Austin for a second deposition.

9. Defendants' counsel did not apprise Plaintiffs of the existence of the Undisclosed Documents, let alone produce them.

10. The Undisclosed Documents, which are relevant to this case and were intentionally withheld by Defendants, were requested by Plaintiffs under Rule 58.01, and Defendants' failure to produce the same requires this Court prohibit any further use or introduction of such matters into evidence (at deposition or in trial). Sup. Ct. Mo. 61.01(d)(1).

11. Specifically, the Undisclosed Documents are responsive to, among other discovery requests, Plaintiffs' Request for Production Number 4[1]. A copy of such Request for Production and Defendants' Response thereto is attached hereto and incorporated herein by reference as **Exhibit A**.

12. By issuing a "conditional discovery response" to Plaintiffs in response to Request for Production Number 4, Defendants acted evasively and untruthfully—purposefully leading counsel for Plaintiffs to believe the responsive documents identified therewith were the sole such documents in possession of Defendants.

13. To date, Defendants still have not produced the Undisclosed Documents.

14. The rules of discovery are intended to guard against **exactly** this form of gamesmanship. *Morphis v. Bass Pro Group, LLC,* 622 S.W.3d 188 (Mo. App. 2021).

15. "The discovery process was not designed to be a scorched earth battlefield upon which the rights of the litigants and the efficiency of the justice system should be sacrificed to mindless overzealous representation of plaintiffs and defendants." *State ex rel. Madlock v. O'Malley*, 8 S.W.3d 890, 891 (1999), *State ex rel. Ford Motor Co. v. Westbrooke*, 151 S.W.3d 364, 369 (Mo. banc 2004), and *State ex rel. BNSF Ry. Co. v. Neill*, 356 S.W.3d 169, 178 (Mo. Banc 2011). Defendants and their attorney exhibited a clear and intentional pattern of engaging in conduct that is prejudicial to the administration of justice. They have intentionally abused rules of discovery, and in so doing they have attempted to mislead and intimidate innocent non-parties.

16. The trial court is vested with wide discretion to administer rules of discovery.

---

[1] Defendants responded to Plaintiffs' discovery request with an objection but then stated "subject to and without waiving the same". Such "conditional discovery responses" are disfavored and some courts have held such responses to result in a waiver of discovery objections.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for an Order and/or sanctions prohibiting Defendants from any further use during deposition of documents and/or tangible things not properly disclosed during discovery, striking the exhibits previously and improperly used by Defendants during the deposition of Ms. Susan Austin, compelling Defendants to pay the attorneys' fees and costs (including driving time) related to Ms. Austin's initial deposition and any further deposition thereof, and for any such other relief as this Court deems just and proper under the circumstances

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
*Attorney for Plaintiffs*
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 5th day of July 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar



Electronically Filed - Texas - July 05, 2022 - 01:07 PM

Incident.

**RESPONSE:** Objection. Maco objects to said request because the documents sought are overly broad as drafted without sufficient limitations. It seeks documents protected as intangible attorney work product and/or impermissibly seeks documents obtained in anticipation of litigation and/or in preparation for trial by defendants, its counsel, its insured, or its consultants. It calls for documents protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, and the insurer-insured privilege. Further, it is objectionable under *State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley,* 898 S.W.2d 550, 553 (Mo.banc 1995) and *State ex rd. Hackler v. Dierker,* 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).

4.      All correspondence, emails, notes, memoranda or other communications between you and either Plaintiff, or anyone else (other than your attorney) related to the Incident, or the damages and injuries resulting from the same.

**RESPONSE:** Objection. Maco objects to said request because the documents sought are overly broad as drafted without sufficient limitations, specifically as it calls for all such documents from "anyone else." It seeks documents protected as intangible attorney work product and/or impermissibly seeks documents obtained in anticipation of litigation and/or in preparation for trial by defendants, its counsel, its insured, or its consultants. It calls for documents protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, and the insurer-insured privilege. Further, it is objectionable under *State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley,* 898 S.W.2d 550, 553 (Mo.banc 1995) and *State ex rd. Hackler v. Dierker,* 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).

**Subject to and without waiving the same: See MACO0187-226 for documents from Plaintiff.**

5.      All correspondence, including but not limited to, emails, notes, memoranda or other communications between you and Defendant Summersville Estates, L.P. related to the Incident, or the damages and injuries resulting from the same.

**RESPONSE:** Objection. Said Request is beyond the scope of discovery as provided by the Missouri Rules of Civil Procedure. Maco objects to said request given the relationship between these entities and shared insurer. Such request seeks documents protected as intangible attorney work product and/or impermissibly seeks documents obtained in anticipation of litigation and/or in preparation for trial by defendants, its counsel, its insured, or its consultants. It calls for documents protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, and the insurer-insured privilege.

6.      All documents, including but not limited to training manuals, employee handbooks,

Electronically Filed - Texas - July 06, 2022 - 05:31 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, ) | |
| ) | |
| and ) | |
| ) | Cause No.: 21TE-CC00360 |
| ERIC MEIER, ) | |
| ) | |
|     Plaintiffs, ) | |
| v. ) | |
| ) | |
| MACO MANAGEMENT CO., INC., and ) | |
| ) | |
| SUMMERSVILLE ESTATES, L.P. ) | |
| ) | |
|     Defendants. ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF AND IN
OPPOSITION TO DEFENDANTS' MOTION TO QUASH**

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Memorandum in Support of Motion for Relief and in Opposition to Defendants' Motion to Quash, state as follows:

**I.    Opposition to Motion to Quash**

Defendants are obstructing discovery and making up their own rules without any legal basis. More than mere argle-bargle, Defendants' Motion to Quash and Memorandum in Opposition ("Defendants' Motions") are improper and fly in the face of Missouri Supreme Court Rules. Indeed, Rule 56.01 states:

> **Sequence and Timing of Discovery.** Unless the court, upon motion, for the convenience of parties and witnesses and in the interests of justice orders otherwise, <u>methods of discovery may be used in any sequence</u> and <u>the fact that a party is conducting discovery, whether by deposition or otherwise,</u> **shall not operate to delay any other party's discovery**.

EXHIBIT A - STATE COURT FILE

Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 138 of 786

This case was brought in front of this Court weeks ago on Defendants' Motion to Dismiss for nothing more than motion practice, and we are once again faced with Defendants' dilatoriness in allowing this case to proceed. Instead of operating within the bounds of Rule 56.01, Defendants are making up rules to delay discovery. Citing absolutely no authority for its position, Defendants continually refuse to produce their client—**who is a party to this action**—for deposition for no reason other than they insist all of Plaintiffs' depositions (including witnesses and parties) must occur first. Defendants resorted to filing the instant Motion to Quash (or, alternatively, for a Protective Order) when Plaintiffs refused to capitulate to their inane rulemaking.

After back and forth regarding the issue (*see* Defendants' Exhibit A), including a recitation of the rules and Missouri case law, Plaintiffs' counsel filed a Notice of Deposition for Defendants' employee Dawn Sims—who, again, is a **party to this action**. Defendants' Motions followed. For the reasons stated herein, this Court should deny Defendants' Motions and allow this case to proceed according to Missouri's Rules of Civil Procedure.

By way of background, Plaintiffs first sought to depose Ms. Dawn Sims in **May 2022** and corresponded with Defendants' counsel regarding the same in April. Defendants' counsel advised Ms. Sims could not be deposed until Defendants' Motion to Dismiss was heard. Such Motion was **heard and denied**, but instead of apprising Plaintiffs of dates to depose Ms. Sims, Defendants now assert new rules of discovery which they unilaterally determine. As a result of Defendants re-asserting their obstructionist position, Plaintiffs filed a Notice of Deposition for Ms. Sims setting the date of the deposition for July 11, 2022[1]. Defendants' Motions were subsequently filed, and,

---

[1] Ms. Sims' deposition was properly noticed per Missouri law. 57.01(b)(1).

on information and belief, Defendants believe simply filing a Motion to Quash has the effect of quashing the deposition[2].

Defendants, in a multitude of emails and in Defendants' Motions, insist that **all** of Plaintiffs' witnesses must be deposed before Ms. Sims. These are not rules of civil procedure, nor are they codified anywhere in Missouri law. The Defendants simply wish to control the exact manner in which this litigation shall proceed. As this Court is aware, a plaintiff is the master of their complaints—not the defense.

As identified above, the controlling Missouri Rule in this instance is Rule 56.01(d). Clearly, the plain text of the Rule says that discovery by deposition or otherwise may occur in "<u>any sequence</u>" – and "<u>shall not</u>" delay the other party's discovery, which is **exactly** what Defendants are doing here. Nothing in this Rule—or any other rule for that matter—states that all of Plaintiffs' witnesses must be deposed before **a party to litigation may be deposed**.

Missouri's Rule 56.01(d) is nearly identical to Federal Rule of Civil Procedure 26(d)(3)[3]. As such, interpretation of the wording of Fed. R. 26(d)(3) is instructive here. **"The use of the word 'sequence' [in Rule 26(d)(3)] was intended only to make it clear that defendant is not to be given any inherent preference."** 8A Charles Alan Wright & Arthur Miller, <u>Fed. Prac. & Proc.</u> § 2046 Priority Abolished by 1970 Amendment (3d ed.) (emphasis added).

---

[2] Defendants are wrong. *See Kingsley v. Kingsley,* 716 S.W.2d 257, 260 (Mo. 1986) ("Upon adequate notice, a party deponent must appear at the specified time and place or be subject to sanction by the court. Rule 61.01(f).") ("Although Plaintiff had filed a motion to quash the deposition, the Court had not ruled on the motion, and if properly noticed, Plaintiff was obligated to sit for deposition, despite her pending motion.").

[3] **"Sequence.** Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery." Fed. R. Civ. P. 26(d)(3). *See Giddens v. Kansas City S. Ry. Co.,* 29 S.W.3d 813, 827 fn 3 (Mo. 2000) ("Our Rule 56.01(d) is similar to federal Rule 26(d).")

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 06, 2022 - 05:31 PM

Tellingly, Defendants cannot conjure a single authority to support their argument that Plaintiffs' witnesses must be deposed before their client. Instead, Defendants rely on a number of incorrect characterizations about Plaintiffs' case and the scope of relevant testimony.

Defendants again claim to be in the dark as to the specifics of Plaintiffs' claims. Not only are Defendants in possession of Plaintiffs' Petition, but they are also in possession of lengthy discovery responses—which **include multiple witness affidavits specifically detailing their client's wrongdoing**. This Court should rightly reject Defendants' continued insistence that they "do not understand the allegations against them" and deny Defendants' Motion to Quash (*see* Defendants' Motion to Quash, ¶ 15).

## II. Support for Relief and Sanctions

Plaintiffs incorporate each of the above arguments herewith, for the reason that such arguments are relevant to Defendants' continuous efforts to undermine the discovery process. In Defendants' Motions, Defendants mischaracterize several facts related to the deposition of Susan Austin ("Austin Deposition"). First. they attempt to paint a picture of a thoughtful deposition meant to uncover information; Defendants are entirely aware of the gamesmanship with which they entered the Austin Deposition. Purposeful nondisclosure of documents and tangible things intended to be used at deposition amounts to a **willful and deliberate attempt to subvert Missouri's discovery rules.** Though Defendants articulate in their pleadings the same were sent to Plaintiffs' counsel shortly after the Austin Deposition, they neglect to mention the same were only sent **in response to, and after receiving the e-filing for, Plaintiffs' Motion for Relief**. In regard to the undisclosed documents, Defendants claim the same were "not responsive to Plaintiffs' written discovery requests **as phrased**" (*see* Defendants' Response in Opposition, ¶ 18) and "Plaintiff at no point provided **more specific requests**" (*see* Defendants' Response in

EXHIBIT A - STATE COURT FILE

Opposition, ¶ 20); not only are the undisclosed documents responsive to Plaintiffs' discovery, but Defendants' pleadings make clear that they knew such undisclosed documents were likely responsive but instead chose to play a game based in semantics.

Lastly, despite the assertions in Defendants' Motions, Plaintiffs (and the deponent, for that matter) repeatedly objected to Defendants' counsel's commonplace mischaracterization of prior testimony and attempts to harass Ms. Austin. For all the reasons stated above, this Court should grant Plaintiffs' Motion for Relief filed July 5, 2022.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for an Order denying Defendants' Motion to Quash, an Order and/or sanctions prohibiting Defendants from any further use during deposition of documents and/or tangible things not properly disclosed during discovery, striking the exhibits previously and improperly used by Defendants during the deposition of Ms. Susan Austin, compelling Defendants to pay the attorneys' fees and costs (including driving time) related to Ms. Austin's initial deposition and any further deposition thereof, and for any such other relief as this Court deems just and proper under the circumstances

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
    BRANDON J. KLAR, #72884
    *Attorney for Plaintiffs*
    1125 Olivette Executive Parkway
    St. Louis, Missouri 63132
    Tel: (314) 863-1117
    Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 06, 2022 - 05:31 PM

The undersigned hereby certifies that on this 6th day of July 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 06, 2022 - 04:11 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                          )
and ERIC MEIER,                            )
                                           )
            Plaintiffs,                    )
                                           )
v.                                         )        Cause No.        21TE-CC00360
                                           )
MACO MANAGEMENT CO., INC.,                 )
and SUMMERSVILLE ESTATES, L.P.,            )
                                           )
            Defendants.                    )

### DEFENDANTS' MOTION TO QUASH THE NOTICE OF DEPOSITION
### FOR DAWN SIMS, OR ALTERNATIVELY,
### MOTION FOR PROTECTICE ORDER

COME NOW, Defendants Maco Management Co. Inc., and Summersville Estates, L.P., by

and through undersigned counsel, and for Defendants' Motion to Quash the Notice of Deposition

for Dawn Sims, or alternatively, Motion for Protective Order state as follows:

1. Plaintiffs filed a Petition for Damages (Wrongful Death) on November 9, 2021 and later

First Amended Petition for Damages on May 23, 2022, alleging Decedent passed away because of

a fire within Decedent's apartment unit, owned and managed by Defendants.

2. Defendants responded to both pleadings with a Motion to Dismiss, essentially arguing

Plaintiff's failure to state a legal claim and failure to provide sufficient factual support for each

element of the claims, which in turn hinders Defendants' ability to prepare a proper defense.  See

arguments contained in Defendant's Motion to Dismiss pleadings filed January 4, 2022, April 18,

2022, and May 23, 2022, and incorporated herein.

3. After oral argument, the Court denied Defendant's Motion to Dismiss the First Amended

Petition stating, "the Petition is artfully drawn given the allegations their broadest intendment."

4.  Defendants proceeded with asking for depositions of Plaintiffs Bumeter and Meier as well as the three former tenants listed in discovery (Susan Austin, Rebecca Johnson, Bridgette Kittner) who allegedly hold the information about the alleged wrongdoing of Maco's employee Dawn Sims.

5.  Defendants are awaiting deposition dates for Kittner, Bumeter, and Meier.

6.  Plaintiffs agreed to produce Rebecca Johnson for deposition on July 15, 2022.

7.  Plaintiffs produced Susan Austin for deposition on June 29, 2022.  Ms. Austin left the deposition before the completion of questioning.

8.  On July 1, 2022, Plaintiffs' counsel requested dates in July for the deposition of the Maco employee Dawn Sims who is the subject of Plaintiffs' plead claims though not a named party.  *See* Exhibit A attached.

9.  Defense counsel relayed they are more than willing to provide dates, but need to complete the deposition of Austin, Kittner, Bumeter, and Meier first.  Defense counsel again asked for dates for those depositions.  *See* Exhibit A attached.

10. Plaintiff did not respond but rather proceeded to file a Notice of Deposition for Dawn Sims to take place eleven days later on July 11, 2022.

11. Along with filing this Motion, Defense counsel again relayed to Plaintiffs' counsel opposition to the proposed order of discovery, opposition to the deposition of Sims occurring on July 11 as noticed, and a conflict with the July 11 date chosen by Plaintiff without input from Defense counsel.  *See* Exhibit A attached.

12. Plaintiff at that point explained he will be moving to compel Dawn Sims deposition before providing any further dates for his witnesses. *See* Exhibit A attached.

2

13. Though the Missouri discovery rules do not provide a set sequence or timing for conducting discovery, Missouri Civil Rule 56.01(c) and Rule 57.09(d) allows the Court to issue an order that discovery (including depositions) may be had only on specified terms and conditions, including a designation of the time or place, when justice requires, and good cause is shown.

14. Defendants are willing to produce Maco employee Dawn Sims for deposition on a date agreed upon by both parties. Defendants are requesting such date be set at the conclusion of Plaintiffs' witnesses listed above.

15. As the Court appeared to acknowledge during the Motion to Dismiss argument and order, the pleadings in this case are broad with minimal factual details as to the basis of the claims. The witnesses who hold the majority, and possibly all, the information are non-parties. Though such witnesses are cooperating and available to Plaintiffs' counsel for informal interviews to discover testimony, such is not the case for Defendants. For Defendants, depositions of these witnesses are the discovery mechanism available to understand the allegations against them.

16. The partial deposition of Susan Austin revealed an array of speculative accusations related to Maco and employee witness Dawn Sims nowhere listed in the pleadings or written discovery.

17. Prior to being subjected to depositions and surprise accusations, Defendants are seeking a better understanding of the allegations against them through depositions of the witnesses above who purportedly will testify to Defendants' wrongdoings. Defendants have a substantial need for this information and no other means to obtain it. Absent such an order regarding the sequence of discovery, Defendants will be prejudiced in their ability to prepare witnesses and prepare a proper defense. Such oppression and undue burden can be prevented via the Court's order.

3

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 06, 2022 - 04:11 PM

18. Moreover, Plaintiff will suffer no prejudice by a court order that requires a typical sequence of discovery wherein a defendant witnesses are deposed after the conclusion of the Plaintiff witnesses.

19. Therefore, pursuant to Missouri Civil Rule 56.01(c) and Rule 57.09(d), and for the reasons stated herein, Defendants requests this Court quash the deposition notice for Dawn Sims, or in the alternative, enter a protective order prohibiting Plaintiffs from taking the Defendant employee deposition until Defendants are given the opportunity to conduct the depositions of Plaintiffs' witnesses and discover the accusations being alleged against them by Plaintiffs.

WHEREFORE, Defendants pray this Court provide the relief requested above, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 6th day of July 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*                      /s/      MARIE F. PUDLOWSKI

4

Electronically Filed - Texas - July 06, 2022 - 04:11 PM

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Tuesday, July 5, 2022 4:26 PM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Marie:

While I understand the position you are taking, I disagree with it. As Ms. Sims is a party to this action, the Plaintiffs have every right to take her deposition prior to the depositions of witnesses. Moreover, Rule 56.01(d) specifically permits Plaintiffs to conduct Ms. Sims' deposition prior to the depositions you seek. As such, please be advised that I will move to compel Ms. Sims' deposition prior to providing any further dates.

Thank you.

Brandon

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Tuesday, July 5, 2022 3:12 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

I received through eFiling a notice of deposition for my client's employee Dawn Sims to take place on July 11.  Please note we will not be appearing or producing Ms. Sims on that day.  I will get a motion to quash on file, but I wanted to give you a heads up.

First, I am not available on July 11, having two other depositions previously scheduled on that date and time.

Second, as relayed below, I cannot agree to the order of depositions you have proposed.  Defendants are entitled to understand the claims to prepare their witnesses and their defense.  Given the broad pleadings and the inability to serve written interrogatories on the non-parties who purportedly will testify to wrongdoing by my client, depositions are my only mechanism for discovering the allegations against my client.  My intent is not to delay the discovery process or prevent you from obtaining Sim's testimony.  My intent is to ensure I understand the claims so I can properly advise and prepare my clients accordingly.

In a continued effort of cooperation, please note that I would be happy to provide you dates and produce Ms. Sims for a deposition once we get the below requested depositions finalized and completed.  My July is rather full, but I may be able to squeeze in some additional depositions (if your people are available) to allow us to get to Sims' deposition in early August.

Let me know your position and dates for you people.

EXHIBIT A - STATE COURT FILE                    EXHIBIT A

Best,



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax:**
**314.621.9802 |Direct: 314.584.4568**
**www.jchildresslaw.com| mpudlowski@jchildresslaw.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Marie Pudlowski
**Sent:** Friday, July 1, 2022 10:07 AM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

I am more than willing to get you dates, but I need to complete the depositions of your witnesses first. Once we have dates for your plaintiffs, Kittner, and Austin part II, I will supply dates for my people. Obviously, you are welcome to file something with the Court, but I will move to quash any notice for those reasons.

Please advise as to dates for your people.

Thanks,



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax:**
**314.621.9802 |Direct: 314.584.4568**
**www.jchildresslaw.com| mpudlowski@jchildresslaw.com**

EXHIBIT A - STATE COURT FILE

EXHIBIT A

Electronically Filed - Texas - July 06, 2022 - 04:11 PM

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Thursday, June 30, 2022 9:37 AM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Subject:** Bumeter et al. v. Maco et al.

Marie:

Could you please provide available/exclusionary dates for the depositions of Dawn Sims and Lance Alton in the month of July? Thank you.

Sincerely,

Brandon J. Klar
Attorney at Law
Klar, Izsak & Stenger, LLC
***PLEASE NOTE OUR NEW ADDRESS***
1125 Olivette Executive Parkway
Suite 120
St. Louis, MO 63132
Phone: (314) 863-1117
Extension. 106
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

EXHIBIT A - STATE COURT FILE

EXHIBIT A

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )       Cause No.    21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

## DEFENDANTS' RESPONSE IN OPPOSITION
## TO PLAINTIFFS' MOTION FOR RELIEF

COMES NOW, Defendants Maco Management Co. Inc., and Summersville Estates, L.P., by and through undersigned counsel, and for Defendants' Response in Opposition to Plaintiffs' Motion for Relief states as follows:

### Factual Background

1.  Plaintiffs filed a Petition for Damages (Wrongful Death) on November 9, 2021 and later First Amended Petition for Damages on May 23, 2022, alleging Decedent passed away because of a fire within Decedent's apartment unit, owned and managed by Defendants.

2.  Defendants responded to both pleadings with a Motion to Dismiss, essentially arguing Plaintiff's failure to state a legal claim and failure to provide sufficient factual support for each element of the claims, which in turn hinders Defendants' ability to prepare a proper defense.  See arguments contained in Defendant's Motion to Dismiss pleadings filed January 4, 2022, April 18, 2022, and May 23, 2022, and incorporated herein.

3.  After oral argument, the Court denied Defendant's Motion to Dismiss the First Amended Petition stating, "the Petition is artfully drawn given the allegations their broadest intendment."

4.    Defendants proceeded with asking for depositions of Plaintiffs Bumeter and Meier as well as the three former tenants listed in discovery (Susan Austin, Rebecca Johnson, Bridgette Kittner) who allegedly hold the information about the alleged wrongdoing of Defendants that supports the claims.

5.    Plaintiffs produced non-party Susan Austin for a video recorded deposition on June 29, 2022[1] in the county where the Ms. Austin resides (and in accordance with the rules of discovery). Even though a Zoom link was provided for a virtual appearance, both counsel chose to travel and appear in-person.

6.    Ms. Austin is a disgruntled, former Maco tenant evicted after the decedent's death.  Though cooperative, Ms. Austin provided lengthy nonresponsive answers that contained array of conflicting, speculative accusations about Defendants, often relating back to her eviction and not the subject incident.  Counsel attempted throughout the deposition to get to the underlying basis of Ms. Austin's numerous, generalized accusations, figure out the timeframe when such alleged events occurred, and clarify the inconsistent testimony, which proved difficult and at times elicited further inconsistencies.  This coupled with numerous technical difficulties involving the court reporter led to a lengthier deposition.

7.    At the end of the deposition, defense counsel presented Ms. Sims with numerous written complaints and voicemails sent to Maco from a Susan Austin.  Ms. Austin continuously asked whether such correspondences were illegal.  Defense counsel explained that she cannot give Ms. Sims legal advice and is not her attorney.  It is during this line of questioning that Ms. Austin left the deposition stating she is getting herself an attorney.

8.    Neither Plaintiff nor deponent objected to the deposition location.

---

[1] Such transcript and video recording are in the process of being finalized and can be provided to the Court as necessary.

9. Neither Plaintiff nor deponent objected to the length of the questioning during the deposition.

10. Neither Plaintiff nor deponent objected to the use of the exhibits during the questioning. Plaintiffs' counsel had access to the exhibits during the deposition and breaks.

11. Neither Plaintiff nor deponent requested the deposition be suspended to seek a court order over the scope or manner of the deposition as allowed under Mo. Sup. Ct. R. 53.07(e).

12. All and all Plaintiff voiced very few objections throughout the deposition.

13. Moreover, though not immediately sent out after the deposition, Defendants told Plaintiff they would provide copies of the exhibits and did provide copies of the exhibits within a week of the deposition taking place. Plaintiff at no point reached to counsel requesting such exhibits be sent immediately nor was counsel aware of their objection to the lack of immediacy until reading the Motion for Relief.

14. Ultimately, based on the above and the interaction with Plaintiffs' counsel throughout the deposition, Defense counsel was blindsided by this Motion for Relief and accusations within the motion.

**Applicable Legal Rules**

15. Regardless of how the Court views the disputed facts, Defense counsel complied with the Rules of Discovery and the law provides no basis for granting Plaintiffs the relief sought.

16. First, though longer examinations of a witnesses can occur via a court order, Missouri Civil Rules allow a one-day deposition of seven hours for witnesses. Mo. Sup. Ct. R. 53.03(b)(5). Defense counsel complied with this rule.

17. Second, errors and irregularities in the manner of taking the deposition, in the form of the questions, or in the conduct of parties and errors of any kind that might be cured if promptly

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 06, 2022 - 04:11 PM

presented are waived unless seasonable objection thereto is made during the deposition. Mo. Sup. Ct. R. 57.07(b)(4). Plaintiff waived such complaints given the lack of seasonable objections and notice to counsel during the deposition of the claimed "harassing" and "intimidating" questioning. Moreover, Plaintiff maintains the ability to argue exclusion of specific testimony for the purpose of relevancy, duplicity, and other things once testimony is designated for trial.

18. Third, the "undisclosed" exhibits include Casenet print outs pertaining to the witness, quarterly inspections of the witness' apartment unit, and a series of texts and written complaints believed to be from the witness to Maco made *after* the decedent's death. The exhibits are not responsive to Plaintiffs' written discovery requests as phrased; objectionable as statements of non-party witnesses are not discoverable and objectionable under *State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley*, 898 S.W.2d 550, 553 (Mo. banc 1995) and *State ex rd. Hackler v. Dierker*, 987 S.W.2d 337, 338 (Mo. App. E.D. 1998); and not discoverable as for purpose of impeachment. Plaintiff at no point reached out to defense counsel or the Court to dispute the completeness of the responses or objections.

19. Moreover, the exhibits pertain to a non-party witness within Plaintiffs' control as this witness has and continues to voluntarily communicate with counsel, making such information equally if not more accessible to Plaintiffs.

20. Defendants notified Plaintiffs in their discovery responses that "After the subject incident, former tenant Susan Austin made such accusations via numerous calls, texts, written complaints, Facebook posts, and verbal claims. See Austin's Affidavit obtained by Plaintiff's counsel and MACO360-370 for the general substance." Plaintiff at no point provided more specific requests.

4

21. Lastly, such information is now within Plaintiffs' possession and available for use to question witness Austin as deemed necessary informally or formally during her continued deposition, making an such disclosure at worst harmless.

22. For the reasons stated herein, Defendants requests this Court deny Plaintiffs' Motion for Relief.

WHEREFORE, Defendants pray this Court deny Plaintiffs' Motion for Relief, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim     #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 6th day of July 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*                    /s/      MARIE F. PUDLOWSKI

5

EXHIBIT A - STATE COURT FILE

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| | ) | |
| and | ) | |
| | ) | Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MACO MANAGEMENT CO., INC., and | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF DEPOSITION**

TO:     Counsel of Record

DATE & TIME:  July 15, 2022, at 1:00 P.M.

DEPONENT(S):  Corporate Representative of Maco Management Co., Inc.

LOCATION:   Zoom link to be provided

REPORTER:   Kelly Daniels, CCR

PLEASE TAKE NOTICE that at the above-stated date, time and place, the deposition of a Corporate Representative of Maco Management Co., Inc., will be taken on oral examination, via Zoom, before a court reporter, pursuant to Missouri Supreme Court Rule 57.03(a) Rule 57.03(b)(4), the topics upon which inquiry will be made are attached hereto as **Exhibit A**. Said deposition will continue on a day to day basis until the same is completed and is being taken for any and all purposes allowed by law, including use as evidence at trial. All parties and the court reporter will attend the deposition remotely.

The deposition will be conducted remotely using Kelly Daniels Court Reporter reporting services. In addition, such court reporter will provide a Zoom platform for the taking of the deposition which will be provided at a later date and time. A licensed and qualified court reporter will administer the oath to the witness remotely and will record the testimony by audio and stenographic means.

Dated this 8th day of July 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
Attorney for Plaintiffs
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 8th day of July 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.

CC: **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
Kelly J. Daniels, CCR
7405 Ray Avenue
St. Louis, MO 63116

/s/ Brandon J. Klar___

**Exhibit A**

TOPICS FOR MACO MANAGEMENT CO., INC. CORPORATE REPRESENTATIVE
DEPOSITION

1. All facts relating to the performance of property manager ("Property Manager") duties and responsibilities at Summersville Estates since September 2018.

2. All facts relating to the relationships between Summersville Estates' Property Manager and its tenants since September 2018.

3. Specific details regarding the performance of all inspections and the completion of all inspection reports at Summersville Estates since September 2018.

4. Specific details regarding the physical state and operative condition of all smoke detectors/alarms at Summersville Estates since September 2018.

5. All facts relating to the Property Manager of Summersville Estates' compliance with the Maco Management Employee Handbook since September 2018.

6. All facts relating to the Property Manager of Summersville Estates' compliance with the Maco Management Site Manager & Maintenance Personnel Duties and Responsibilities since September 2018.

7. Specific details regarding the tenancy of Ms. Robin Fischer since September 2018, including, but not limited to, all conversations Ms. Fischer had with the Property Manager at Summersville Estates.

8. All facts relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

9. All facts relating to the use of cigarettes in apartment units at Summersville Estates since September 2018.

10. Specific details regarding the relationship maintained between the Property Manager of Summersville Estates and members of the Summersville Police Department.

11. All facts supporting any affirmative defenses asserted by Defendants Maco Management Co., Inc. and Summersville Estates, L.P.

12. All facts relating to the resume and past employment history of the Property Manager hired by Summersville Estates in September 2018.

13. All facts relating to any prior legal action taken against the Property Manager hired by Summersville Estates in September 2018.

14. Any written or oral communications between Plaintiffs or their identified witnesses and Defendant or its agents/representatives regarding facts underlying the allegations contained in Plaintiffs' First Amended Petition or Defendant's Answer and Affirmative Defenses.

Electronically Filed - Texas - July 08, 2022 - 03:52 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                )
and ERIC MEIER,                  )
                                 )
        Plaintiffs,              )
                                 )
v.                               )       Cause No.      21TE-CC00360
                                 )
MACO MANAGEMENT CO., INC.,       )
and SUMMERSVILLE ESTATES, L.P.,  )
                                 )
        Defendants.              )

## NOTICE OF CANCELLATION OF DEPOSITION

TO:                         COUNSEL OF RECORD

DATE & HOUR:                July 15, 2022 at 10:00 a.m.

PLACE OF DEPOSITION:        Alpha Reporting Service
                            1911 S National Ave, Suite 405
                            Springfield, MO 65804
                            417-887-4110

PERSON TO BE DEPOSED:       Rebecca Johnson

COURT REPORTER:             Veritext
                            800-567-8658

PLEASE TAKE NOTICE that the above deposition has been cancelled.

1

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of July 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

2

Electronically Filed - Texas - July 08, 2022 - 02:49 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER,⁣ )
⁣ )
and⁣ )
⁣ )  Cause No.: 21TE-CC00360
ERIC MEIER,⁣ )
⁣ )
     Plaintiffs,⁣ )
v.⁣ )
⁣ )
MACO MANAGEMENT CO., INC., and⁣ )
⁣ )
SUMMERSVILLE ESTATES, L.P.⁣ )
⁣ )
     Defendants.⁣ )

**NOTICE OF CANCELLATION OF DEPOSITION OF DAWN SIMS**

PLEASE TAKE NOTICE that the deposition of Dawn Sims on July 11, 2022, is hereby cancelled. Such deposition to be rescheduled for another date and time.

Dated this 8th day of July, 2022.

        Respectfully Submitted,

        KLAR, IZSAK & STENGER, L.L.C.

By:   /s/ Brandon J. Klar
     BRANDON J. KLAR    #72884
     Attorney for Plaintiffs
     1125 Olivette Executive Parkway, Ste. 120
     St. Louis, Missouri 63132
     Tel:   (314) 863-1117
     Fax:  (314) 863-1118
     Email: bjklar@lawsaintlouis.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 8th day of July, 2022, a true and correct copy of the forgoing was served via the court's electronic filing system to all attorneys of record.

        /s/ Brandon J. Klar

EXHIBIT A – STATE COURT FILE

## IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

JENNIFER BUMETER, and )
ERIC MEIER, )
         )    Cause No.:    21TE-CC00360
      Plaintiffs, )
v. )
         )
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
         )
      Defendants. )

### NOTICE OF HEARING VIA WEBEX

PLEASE TAKE NOTICE that Plaintiffs Jennifer Bumeter and Eric Meier will call for hearing their **Motion for Relief** on **Tuesday, July 19, 2022, at 9:00 A.M.** in the Circuit Court of Texas County, via Webex.

Dated this 12th day of July, 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By:    /s/ Brandon J. Klar            
        BRANDON J. KLAR      #72884
        *Attorney for Plaintiffs*
        1125 Olivette Executive Parkway
        Suite 120
        St. Louis, Missouri 63132
        Tel:    (314) 863-1117
        Fax:    (314) 863-1118
        Email: bjklar@lawsaintlouis.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 12th day of July, 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

Electronically Filed - Texas - July 12, 2022 - 02:16 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )        Cause No.      21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Defendants Maco Management Co., Inc. and Summersville

Estates, LP, by and through undersigned counsel, will call up for hearing their Motion for

Protective Order on July 19, 2022, at 9:00 AM in Texas County Circuit Court before Judge Beger,

or as soon thereafter as counsel may be heard, via WebEx.

https://mocourts.webex.com/meet/john.beger

Join by phone
+1-408-418-9388 United States Toll

Access code: 960 524 065

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim       #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 12th day of July 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

2

46.2444

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 14, 2022 - 12:19 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER,<br>and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC.,<br>and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT'S OBJECTIONS TO TOPICS TO MACO MANAGEMENT CO., INC. <u>CORPORATE REPRESENTATIVE</u>

COME NOW, Defendant Maco Management Co. Inc., by and through counsel, Childress

Ahlheim Cary LLC and provides its Objections as follows:

**Please see Defendants Motion for Protective Order filed 7/14/22 for further objections and incorporated herein.** *See State ex rel. Plank v. Koehr*, **831 S.W.2d 926, 928 (Mo. 1992)** (**"If the corporation believes the deposition should not go forth, its remedy is to file a motion for a protective order");** *see also State ex rel. Ford Motor Co. v. Messina*, **71 S.W.3d 602, 609 (Mo. 2002) (holding the circuit court abused its discretion in not issuing a protective order over last-minute corporate representative depositions set by plaintiff's counsel).**

1.   All facts relating to the performance of property manager ("Property Manager") duties and responsibilities at Summersville Estates since September 2018.

**Objection.  Defendant objects to this topic as vague and overly broad to the extent it refers to "all facts" relating to the performance of property manager since 2018.  Such topic covers over three years' worth of daily events and duties, including years, events, and duties that are not relevant to the subject case.  Such topic calls for facts well beyond that known or reasonably available to an organization absent obtaining all personal knowledge within the recollection of the property manager.  This topic was developed to force Defendants to designate property manager Dawn Sims as the corporate representative and strategically get around the previous motion to quash filed by Defense counsel related to individually noticed deposition of Dawn Sims.[1]**

---

[1] In a phone call with Plaintiffs' counsel on July 12, 2022, he explained he designed the topics for the purpose of ensuring no one beyond Dawn Sims would be able to be designated as the corporate representative with knowledge of such topics.

EXHIBIT A - STATE COURT FILE

**Electronically Filed - Texas - July 14, 2022 - 12:19 PM**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

2. All facts relating to the relationships between Summersville Estates' Property Manager and its tenants since September 2018.

**Objection. Defendant objects to this topic as vague and overly broad to the extent it refers to "all facts" relating to relationships between Summersville Estates' Property Manager and its tenants since 2018. Such topic covers over three years' worth of daily events and relationships, including years, events, and relationships that are not relevant to the subject case. Such topic calls for facts well beyond that known or reasonably available to an organization absent obtaining all personal knowledge within the recollection of the property manager. This topic was developed to force Defendants to designate property manager Dawn Sims as the corporate representative and strategically get around the previous motion to quash filed by Defense counsel related to individually noticed deposition of Dawn Sims.**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

3. Specific details regarding the performance of all inspections and the completion of all inspection reports at Summersville Estates since September 2018.

**Objection. Defendant objects to this topic as vague and overly broad to the extent it refers to "specific details" regarding the performance of all inspections at Summersville since 2018. Such topic covers over three years' worth of inspections for numerous units, including years and inspections that are not relevant to the subject case. Such topic calls for details well beyond that known or reasonably available to an organization absent obtaining all personal knowledge within the recollection of the property manager. This topic was developed to force Defendants to designate property manager Dawn Sims as the corporate representative and strategically get around the previous motion to quash filed by Defense counsel related to individually noticed deposition of Dawn Sims.**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

4. Specific details regarding the physical state and operative condition of all smoke detectors/alarms at Summersville Estates since September 2018.

**Objection. Defendant objects to this topic as vague and overly broad to the extent it refers to "specific details" regarding the physical state and operative condition of all smoke detectors/alarms at Summersville since September 2018. Such topic covers over three years' worth of smoke detector conditions for numerous units and buildings with more than one smoke detector, including years and smoke detectors that are not relevant to the subject case.**

**Such topic calls for details well beyond that known or reasonably available to an organization absent obtaining all personal knowledge within the recollection of the property manager. This topic was developed to force Defendants to designate property manager Dawn Sims as the corporate representative and strategically get around the previous motion to quash filed by Defense counsel related to individually noticed deposition of Dawn Sims.**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

5.   All facts relating to the Property Manager of Summersville Estates' compliance with the Maco Management Employee Handbook since September 2018.

**Objection.  Defendant objects to this topic as vague and overly broad to the extent it refers to "all facts" relating to the Property Manager's compliance with the handbook since September 2018.  Such topic covers over three years' worth of duties, including years and duties that are not relevant to the subject case.  Such topic calls for facts well beyond that known or reasonably available to an organization absent obtaining all personal knowledge within the recollection of the property manager.  This topic was developed to force Defendants to designate property manager Dawn Sims as the corporate representative and strategically get around the previous motion to quash filed by Defense counsel related to individually noticed deposition of Dawn Sims.**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

6.   All facts relating to the Property Manager of Summersville Estates' compliance with the Maco Management Site Manager & Maintenance Personnel Duties and Responsibilities since September 2018.

**Objection.  Defendant objects to this topic as vague and overly broad to the extent it refers to "all facts" relating to the Property Manager's compliance with her duties since September 2018.  Such topic covers over three years' worth of duties, including years and duties that are not relevant to the subject case.  Such topic calls for facts well beyond that known or reasonably available to an organization absent obtaining all personal knowledge within the recollection of the property manager.  This topic was developed to force Defendants to designate property manager Dawn Sims as the corporate representative and strategically get around the previous motion to quash filed by Defense counsel related to individually noticed deposition of Dawn Sims.**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

3

7. Specific details regarding the tenancy of Ms. Robin Fischer since September 2018, including, but not limited to, all conversations Ms. Fischer had with the Property Manager at Summersville Estates.

**Objection. Defendant objects to this topic as vague and overly broad to the extent it refers to "specific details" regarding the tenancy of Ms. Robin Fischer and all conversations between Fischer and the Property Manager. Such topic covers years' worth of events and conversations, much of which is not relevant to the subject case. Such topic calls for details well beyond that known or reasonably available to an organization absent obtaining all personal knowledge within the recollection of the property manager. This topic was developed to force Defendants to designate property manager Dawn Sims as the corporate representative and strategically get around the previous motion to quash filed by Defense counsel related to individually noticed deposition of Dawn Sims.**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

8. All facts relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

**Objection. Defendant objects to this topic as vague and overly broad to the extent it refers to "all facts" relating to the apartment fire at issue and to the extent it seeks information exchanged between counsel, client, insured, and consultants related to this case. Such information is protected by attorney-client privilege and the work product doctrine. Such information is objectionable under State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley, 898 S.W.2d 550, 553 (Mo.banc 1995) and State ex rd. Hackler v. Dierker, 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

9. All facts relating to the use of cigarettes in apartment units at Summersville Estates since September 2018.

**Objection. Defendant objects to this topic as vague and overly broad to the extent it refers to "all facts" relating to relating to the use of cigarettes in apartment units Summersville and to the extent it seeks information exchanged between counsel, client, insured, and consultants related to this case. Such information is protected by attorney-client privilege and the work product doctrine. Such information is objectionable under State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley, 898 S.W.2d 550, 553 (Mo.banc 1995) and State ex rd. Hackler v. Dierker, 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).**

4

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

10. Specific details regarding the relationship maintained between the Property Manager of Summersville Estates and members of the Summersville Police Department.

**Objection. Defendant objects to this topic as vague and overly broad to the extent it refers to "specific details" relating to relationships between Property Manager and Summersville Police. Such topic covers over years' worth of events and relationships, including years, events, and relationships that are not relevant to the subject case. Such topic calls for details well beyond that known or reasonably available to an organization absent obtaining all personal knowledge within the recollection of the property manager. This topic was developed to force Defendants to designate property manager Dawn Sims as the corporate representative and strategically get around the previous motion to quash filed by Defense counsel related to individually noticed deposition of Dawn Sims.**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

11. All facts supporting any affirmative defenses asserted by Defendants Maco Management Co., Inc. and Summersville Estates, L.P.

**Objection. Defendant objects to this topic as vague and overly broad to the extent it refers to "all facts" supporting any affirmative defenses and to the extent it seeks information exchanged between counsel, client, insured, and consultants related to this case. Such information is protected by attorney-client privilege and the work product doctrine. Such information is objectionable under State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley, 898 S.W.2d 550, 553 (Mo.banc 1995) and State ex rd. Hackler v. Dierker, 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

12. All facts relating to the resume and past employment history of the Property Manager hired by Summersville Estates in September 2018.

**Objection. Defendant objects to this topic as vague and overly broad to the extent it refers to "all facts" relating to the Property Manager's past employment history. Such topic covers over years' worth of employment history facts, much of which is not relevant to the subject case. Such topic calls for facts well beyond that known or reasonably available to an organization absent obtaining all personal knowledge within the recollection of the property manager. This topic was developed to force Defendants to designate property manager**

5

**Dawn Sims as the corporate representative and strategically get around the previous motion to quash filed by Defense counsel related to individually noticed deposition of Dawn Sims. In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

13. All facts relating to any prior legal action taken against the Property Manager hired by Summersville Estates in September 2018.

**Objection. Defendant objects to this topic as vague and overly broad to the extent it refers to "all facts" relating to prior legal action taken against Property Manager. Such topic covers some facts not relevant to the subject case. Such topic calls for facts well beyond that known or reasonably available to an organization absent obtaining all personal knowledge within the recollection of the property manager. This topic was developed to force Defendants to designate property manager Dawn Sims as the corporate representative and strategically get around the previous motion to quash filed by Defense counsel related to individually noticed deposition of Dawn Sims.**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

14. Any written or oral communications between Plaintiffs or their identified witnesses and Defendant or its agents/representatives regarding facts underlying the allegations contained in Plaintiffs' First Amended Petition or Defendant's Answer and Affirmative Defenses.

**Objection. Defendant objects to this topic to the extent it seeks information exchanged between counsel, client, insured, and consultants related to this case. Such information is protected by attorney-client privilege and the work product doctrine. Such information is objectionable under State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley, 898 S.W.2d 550, 553 (Mo.banc 1995) and State ex rd. Hackler v. Dierker, 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).**

**In further objection and to the extent this topic seeks production of facts within documents (including but not limited to written communications), Defendant objects given the procedure and time frame associated with Rule 58.01 have not been followed.**

6

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 14, 2022 - 12:19 PM

CHILDRESS AHLHEIM CARY LLC


BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of July 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*                    /s/       MARIE F. PUDLOWSKI


7

EXHIBIT A - STATE COURT FILE

**IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, | ) |
| | ) |
| and | ) |
| | ) Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) |
| | ) |
|     Plaintiffs, | ) |
| v. | ) |
| | ) |
| MACO MANAGEMENT CO., INC., and | ) |
| | ) |
| SUMMERSVILLE ESTATES, L.P. | ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF AND IN
OPPOSITION TO DEFENDANTS' MOTION TO QUASH**

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Memorandum in Support of Motion for Relief and in Opposition to Defendants' Motion to Quash, state as follows:

### I.    Opposition to Motion to Quash

Defendants are obstructing discovery and making up their own rules without any legal basis. More than mere argle-bargle, Defendants' Motion to Quash and Memorandum in Opposition to Plaintiffs' Motion for Relief ("Defendants' Motions") are improper and fly in the face of Missouri Supreme Court Rules. Indeed, Rule 56.01 states:

> **Sequence and Timing of Discovery.** Unless the court, upon motion, for the convenience of parties and witnesses and in the interests of justice orders otherwise, <u>methods of discovery may be used in any sequence</u> and <u>the fact that a party is conducting discovery, whether by deposition or otherwise,</u> **shall not operate to delay any other party's discovery**.

Electronically Filed - Texas - July 14, 2022 - 10:56 AM

This case was brought in front of this Court weeks ago on Defendants' Motion to Dismiss for nothing more than motion practice, and we are once again faced with Defendants' dilatoriness in allowing this case to proceed. Instead of operating within the bounds of Rule 56.01, Defendants are making up rules to delay discovery. Citing absolutely no authority for its position, Defendants continually refuse to produce their client or a corporate representative of their client—**who is a party to this action**—for deposition for no reason other than they insist all of Plaintiffs' depositions (including witnesses and parties) must occur first. Defendants resorted to filing the instant Motion to Quash (or, alternatively, for a Protective Order) when Plaintiffs refused to capitulate to their inane rulemaking.

After back and forth regarding the issue (*see* **Exhibit 1**), including a recitation of the rules and Missouri case law, Plaintiffs' counsel filed a Notice of Deposition for the Corporate Representative of Defendant(s)—who, again, is a **party to this action**. Defendants' Motions followed. For the reasons stated herein, this Court should deny Defendants' Motions and allow this case to proceed according to Missouri's Rules of Civil Procedure.

By way of background, Plaintiffs first sought to depose Ms. Dawn Sims—**who is employed by Defendants, is a corporate representative of Defendants, and is at all times within the control of Defendants and their counsel**—in **May 2022** and corresponded with Defendants' counsel regarding the same in April. Defendants' counsel advised Ms. Sims could not be deposed until Defendants' Motion to Dismiss was heard. Such Motion was **heard and denied**, but instead of apprising Plaintiffs of dates to depose Ms. Sims, Defendants now assert new rules of discovery which they unilaterally determine. As a result of Defendants re-asserting their obstructionist position, Plaintiffs filed a Notice of Deposition for Defendants' Corporate

Electronically Filed - Texas - July 14, 2022 - 10:56 AM

Representative setting the date of the deposition for July 15, 2022[1]. Defendants' Motions were subsequently filed, and, on information and belief, Defendants believe simply filing a Motion to Quash has the effect of quashing the deposition[2].

Defendants, in a multitude of emails and in Defendants' Motions, insist that **all** of Plaintiffs' witnesses must be deposed before Ms. Sims. These are not rules of civil procedure, nor are they codified anywhere in Missouri law. The Defendants simply wish to control the exact manner in which this litigation shall proceed. As this Court is aware, a plaintiff is the master of their complaints—not the defense.

As identified above, the controlling Missouri Rule in this instance is Rule 56.01(d). Clearly, the plain text of the Rule says that discovery by deposition or otherwise may occur in "<u>any sequence</u>" – and "<u>shall not</u>" delay the other party's discovery, which is **exactly** what Defendants are doing here. Nothing in this Rule—or any other rule for that matter—states that all of Plaintiffs' witnesses must be deposed before **a party to litigation may be deposed**.

Missouri's Rule 56.01(d) is nearly identical to Federal Rule of Civil Procedure 26(d)(3)[3]. As such, interpretation of the wording of Fed. R. 26(d)(3) is instructive here. **"The use of the word 'sequence' [in Rule 26(d)(3)] was intended only to make it clear that defendant is not to be**

---

[1] Ms. Sims' deposition was properly noticed per Missouri law. 57.01(b)(1).

[2] Defendants are wrong. *See Kingsley v. Kingsley,* 716 S.W.2d 257, 260 (Mo. 1986) ("Upon adequate notice, a party deponent must appear at the specified time and place or be subject to sanction by the court. Rule 61.01(f).") ("Although Plaintiff had filed a motion to quash the deposition, the Court had not ruled on the motion, and if properly noticed, Plaintiff was obligated to sit for deposition, despite her pending motion.").

[3] **"Sequence.** Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interests of justice: (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery." Fed. R. Civ. P. 26(d)(3). *See Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 827 fn 3 (Mo. 2000) ("Our Rule 56.01(d) is similar to federal Rule 26(d).")

Electronically Filed - Texas - July 14, 2022 - 10:56 AM

**given any inherent preference."** 8A Charles Alan Wright & Arthur Miller, <u>Fed. Prac. & Proc.</u> § 2046 Priority Abolished by 1970 Amendment (3d ed.) (emphasis added).

Tellingly, Defendants cannot conjure a single authority to support their argument that Plaintiffs' witnesses must be deposed before their client. Instead, Defendants rely on a number of incorrect characterizations about Plaintiffs' case and the scope of relevant testimony.

Defendants again claim to be in the dark as to the specifics of Plaintiffs' claims. Not only are Defendants in possession of Plaintiffs' Petition, but they are also in possession of lengthy discovery responses—which **include multiple witness affidavits specifically detailing their client's wrongdoing**. This Court should rightly reject Defendants' continued insistence that they "do not understand the allegations against them" and deny Defendants' Motion to Quash (*see* Defendants' Motion to Quash, ¶ 28).

## II. Support for Relief and Sanctions

Plaintiffs incorporate each of the above arguments herewith, for the reason that such arguments are relevant to Defendants' continuous efforts to undermine the discovery process. In Defendants' Motions, Defendants mischaracterize several facts related to the deposition of Susan Austin ("Austin Deposition"). First. they attempt to paint a picture of a thoughtful deposition meant to uncover information; Defendants are entirely aware of the gamesmanship with which they entered the Austin Deposition. Purposeful nondisclosure of documents and tangible things intended to be used at deposition amounts to a **willful and deliberate attempt to subvert Missouri's discovery rules.** Though Defendants articulate in their pleadings the same were sent to Plaintiffs' counsel shortly after the Austin Deposition, they neglect to mention the same were only sent **in response to, and after receiving the e-filing for, Plaintiffs' Motion for Relief**. In regard to the undisclosed documents, Defendants claim the same were "not responsive to

Plaintiffs' written discovery requests **as phrased**" (*see* Defendants' Response in Opposition, ¶ 18) and "Plaintiff at no point provided **more specific requests**" (*see* Defendants' Response in Opposition, ¶ 20); not only are the undisclosed documents responsive to Plaintiffs' discovery, but Defendants' pleadings make clear that they knew such undisclosed documents were likely responsive but instead chose to play a game based in semantics.

Further, despite the assertions in Defendants' Motions, Plaintiffs (and the deponent, for that matter) repeatedly objected to Defendants' counsel's commonplace mischaracterization of prior testimony and attempts to harass Ms. Austin. For all the reasons stated above, this Court should grant Plaintiffs' Motion for Relief filed July 5, 2022.

Lastly, as identified in Plaintiffs' **Exhibit 1**, and as stated in Defendants' Motions, Plaintiffs' counsel repeatedly advised Defendants' counsel of his intent to obtain a Certificate of Nonappearance should Defendants not produce a Corporate Representative for the properly noticed deposition taking place on July 15, 2022. As a result of Defendants' continued obstructionist position, their unnecessary and unreasonable delay, and their baseless, unjustified and **repeated** refusal to comply with Missouri's discovery rules, Plaintiffs fully intend to use— and have dutifully notified Defendants of such intention—the aforementioned Certificate of Nonappearance to obtain sanctions against Defendants as provided by Missouri Rule 61.01.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for an Order denying Defendants' Motion to Quash, an Order and/or sanctions prohibiting Defendants from any further use during deposition of documents and/or tangible things not properly disclosed during discovery, striking the exhibits previously and improperly used by Defendants during the deposition of Ms. Susan Austin, compelling Defendants to pay the attorneys' fees and costs (including driving time)

related to Ms. Austin's initial deposition and any further deposition thereof, and for any such other relief as this Court deems just and proper under the circumstances

<div style="text-align: right">

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: \_\_\_\_/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
*Attorney for Plaintiffs*
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Email: bjklar@lawsaintlouis.com

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 14th day of July 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

<div style="text-align: right">

/s/ Brandon J. Klar\_\_\_\_

</div>

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 14, 2022 - 10:56 AM

# Brandon J. Klar

| | |
|---|---|
| **From:** | Brandon J. Klar |
| **Sent:** | Tuesday, July 5, 2022 4:26 PM |
| **To:** | Marie Pudlowski |
| **Cc:** | Dave Ahlheim |
| **Subject:** | RE: Bumeter et al. v. Maco et al. |



Marie:

While I understand the position you are taking, I disagree with it. As Ms. Sims is a party to this action, the Plaintiffs have every right to take her deposition prior to the depositions of witnesses. Moreover, Rule 56.01(d) specifically permits Plaintiffs to conduct Ms. Sims' deposition prior to the depositions you seek. As such, please be advised that I will move to compel Ms. Sims' deposition prior to providing any further dates.

Thank you.

Brandon

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Tuesday, July 5, 2022 3:12 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

I received through eFiling a notice of deposition for my client's employee Dawn Sims to take place on July 11. Please note we will <u>not</u> be appearing or producing Ms. Sims on that day. I will get a motion to quash on file, but I wanted to give you a heads up.

First, I am not available on July 11, having two other depositions previously scheduled on that date and time.

Second, as relayed below, I cannot agree to the order of depositions you have proposed. Defendants are entitled to understand the claims to prepare their witnesses and their defense. Given the broad pleadings and the inability to serve written interrogatories on the non-parties who purportedly will testify to wrongdoing by my client, depositions are my only mechanism for discovering the allegations against my client. My intent is not to delay the discovery process or prevent you from obtaining Sim's testimony. My intent is to ensure I understand the claims so I can properly advise and prepare my clients accordingly.

In a continued effort of cooperation, please note that I would be happy to provide you dates and produce Ms. Sims for a deposition once we get the below requested depositions finalized and completed. My July is rather full, but I may be able to squeeze in some additional depositions (if your people are available) to allow us to get to Sims' deposition in early August.

Let me know your position and dates for you people.

Best,

Electronically Filed - Texas - July 14, 2022 - 10:56 AM

## Brandon J. Klar

| | |
|---|---|
| **From:** | Brandon J. Klar |
| **Sent:** | Tuesday, July 12, 2022 2:20 PM |
| **To:** | Marie Pudlowski |
| **Cc:** | Dave Ahlheim |
| **Subject:** | RE: Bumeter et al. v. Maco et al. |

Marie:

Thanks. Due to your continued refusal to produce your client until all depositions in this case are conducted (despite her being noticed first), and because there exists absolutely zero Missouri caselaw or statutes which authorize the same, you are correct that I will not produce my clients or witnesses until your client has been deposed. As advised, it is my intent to appear at the properly noticed deposition on Friday. Should you and your client not appear, I will obtain a Certificate of Nonappearance as we discussed.

Further to our conversation, I will notice my Motion for Relief at the same date and time as your Motions. That way we can hopefully knock everything out at once. Thank you again, and I hope you have a good rest of your day.

Best,
Brandon Klar

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Tuesday, July 12, 2022 2:12 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

Despite it not being productive, I appreciate you taking my call today to discuss our discovery disputes.

From our conversation, it is my understanding you are continuing to refuse to provide me dates for the two plaintiffs and three facts witnesses with alleged testimony of wrongdoing by my client. You will do nothing until we produce employee Dawn Sims for deposition. And, you tailored the corporate representative deposition set for July 11 in a fashion that you believe requires us to produce Sims as the corporate representative.

As indicated, I plan to get a motion to quash and motion for protective order on file. Neither I nor my client will be appearing for the deposition on Friday. The Judge is available for a hearing on my motions on July 19 at 9:00AM. You indicated availability for such hearing so I will notice up shortly. Once we obtain some Court guidance, I hope we can procced in a more cooperative fashion moving forward.



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct: 314.584.4568

Electronically Filed - Texas - July 14, 2022 - 09:31 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| JENNIFER BUMETER, | ) |
| and ERIC MEIER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Cause No. 21TE-CC00360 |
| | ) |
| MACO MANAGEMENT CO., INC., | ) |
| and SUMMERSVILLE ESTATES, L.P., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND MOTION TO QUASH CORPORATE REPRESENTATIVE DEPOSITION NOTICE**

COME NOW, Defendants Maco Management Co. Inc., and Summersville Estates, L.P., by

and through undersigned counsel, and for Defendants' Motion for Protective Order and Motion

to Quash Corporate Representative Deposition Notice state as follows:

**Discovery and Correspondence Timeline**

1. Plaintiffs filed a Petition for Damages (Wrongful Death) on November 9, 2021 and later

First Amended Petition for Damages on May 23, 2022, alleging Decedent passed away because of

a fire within Decedent's apartment unit, owned and managed by Defendants.

2. Defendants responded to both pleadings with a Motion to Dismiss, essentially arguing

Plaintiffs' failure to state a legal claim and failure to provide sufficient factual support for each

element of the claims, which in turn hinders Defendants' ability to prepare a proper defense. See

arguments contained in Defendant's Motion to Dismiss pleadings filed January 4, 2022, April 18,

2022, and May 23, 2022, and incorporated herein.

3. After oral argument, the Court denied Defendant's Motion to Dismiss the First Amended

Petition stating, "the Petition is artfully drawn given the allegations their broadest intendment."

4. Defendants proceeded with asking for depositions of Plaintiffs Bumeter and Meier as well as the three former tenants listed in discovery (Susan Austin, Rebecca Johnson, Bridgette Kittner) who allegedly hold the information about the alleged wrongdoing of Maco's employee Dawn Sims.

5. On May 11, 2022 via email, Plaintiffs' counsel agreed to produce Susan Austin for deposition on June 29, 2022 in her home county, Ripley County, Missouri.

6. On June 28, 2022 via email, Plaintiffs' counsel agreed to produce Rebecca Johnson for deposition on July 15, 2022 in her home county, Green County, Missouri.

7. Defendants had requested and were still awaiting deposition dates for Kittner, Bumeter, and Meier.

8. Then, on June 29, 2022, Susan Austin appeared for a video recorded deposition. Ms. Austin is a disgruntled, former Maco tenant evicted after the decedent's death. Though cooperative, Ms. Austin provided lengthy nonresponsive answers that contained array of conflicting, speculative accusations about Defendants, often relating back to her eviction and not the subject incident. Counsel attempted throughout the deposition to get to the underlying basis of Ms. Austin's numerous, generalized accusations, figure out the timeframe when such alleged events occurred, and clarify the inconsistent testimony, which proved difficult and at times elicited further inconsistencies. At the end of the deposition, defense counsel presented Ms. Sims with numerous written complaints and voicemails sent to Maco from a Susan Austin. Ms. Austin continuously asked whether such correspondences were illegal. Defense counsel explained that she cannot give Ms. Sims legal advice and is not her attorney. It is during this line of questioning that Ms. Austin left the deposition stating she is getting herself an attorney. Defense counsel gave Plaintiffs' counsel the opportunity to try to get the witness to come back to complete the deposition.

Plaintiffs' counsel was not successful, so the deposition was concluded. All of this coupled with numerous technical difficulties involving the court reporter (noted throughout the deposition record) led to a lengthier deposition, but still below the Missouri 7 hour-threshold that does not require court approval.[1]

9. On July 1, 2022, Plaintiffs' counsel via email requested dates for the deposition of the Maco employee Dawn Sims, who is the subject of Plaintiffs' plead claims though not a named party, for that same month, July. *See* Exhibit A July 1, 2022 entry attached.

10. Defense counsel relayed via email that they are more than willing to provide dates, but Defense counsel needs to complete the deposition of Austin, Kittner, Bumeter, and Meier first. Defense counsel again asked for dates for those depositions. *See* Exhibit A July 1, 2022 entry attached.

11. Plaintiffs' counsel did not respond to the email explaining their reasoning in objection. Plaintiffs' counsel did not reach out by phone. Rather, Plaintiffs' counsel chooses to unilaterally set and file a Notice of Deposition for Dawn Sims in the 4 o'clock hour on a Friday before a holiday weekend to take place six business days later on July 11, 2022.

12. On July 5, 2022, Plaintiffs' counsel then files an accusatory Motion for Relief related to the deposition of Susan Austin despite not having a transcript and despite not reaching out to Defense counsel *during or after* the deposition regarding the concerns noted within the motion.

13. That same day, Defense counsel reaches out to Plaintiffs' counsel via email to explain Defendants' objections to Dawn Sim's unilaterally set deposition and reasoning for not agreeing to the order of discovery being demanded by Plaintiffs' counsel. This explanation included

---

[1] Defendants possess the video recording. The written transcript is still in the process of being finalized. Defendants are more than willing to provide the recording and transcript as an exhibit for the Court's review. Defense counsel is more than confident the Court's view of this deposition will not align with Plaintiffs' counsel mischaracterized narrative.

3

Defense counsel having two depositions in another case set at the same day and time unilaterally set by Plaintiffs' counsel. *See* Exhibit A July 5, 2022 entry attached.

14. In response, Plaintiffs' counsel explained he will be moving to compel Dawn Sims deposition before providing any further dates for his witnesses. *See* Exhibit A July 5, 2022 entry attached.

15. On July 6, 2022, Plaintiffs' counsel further explained that he will not produce another witness, including Rebecca Johnson previously set per agreement, until Dawn Sims is deposed. He began discussing his plan for a certificate of noncompliance. *See* Exhibit A July 6, 2022 entry attached.

16. In conjunction with filing a Motion to Quash and Response to the Motion to Relief on July 6, 2022 (see both pleadings for further arguments in support and incorporated herein) Defense counsel continued to reach out to Plaintiffs' counsel in an attempt to resolve the discovery dispute. *See* Exhibit A July 8, 2022 entry attached.

17. In what appeared to be a sign of cooperation, Plaintiffs' counsel agreed and filed a notice canceling Sim's deposition. He also claimed that now Rebecca Johnson is not available for her deposition on July 15. *See* Exhibit A July 8, 2022 entry attached.

18. Based on his assertion of witness unavailability, Defense counsel responded in kind by filing a notice of cancellation of Rebecca Johnson's deposition on July 15.

19. Within minutes and again in the 4 o'clock hour on a Friday, Plaintiffs' counsel again unilaterally sets and files a notice of corporate representative deposition for the same date and time that Johnson's deposition was previously set (7 business days later). This notice includes a lengthy and detailed list of objectionable topics that appears to call for the witness with personal knowledge (Dawn Sims) not a corporate representative's knowledge. Prior to this filing, Plaintiffs' counsel

4

EXHIBIT A - STATE COURT FILE

never reached out indicating a desire to depose a corporate representative; never reached out to discuss availability of counsel or the corporate witness, and never provided the topics.

20. Defense counsel attempted via email and a phone call to resolve the objections related to Plaintiffs' continuing methods of discovery without success. *See* Exhibit A July 11-July 12, 2022 entries attached.

21. Despite Defense counsel's written, affirmative indication that her and her client will not appear on July 15 and Defense's counsel securing the next available a hearing date, July 19, to obtain Court guidance and relief, Plaintiffs' counsel continues to demand that he will proceed with the expense of a corporate representative deposition on July 15 and obtain a certificate of noncompliance. *See* Exhibit A July 11-July 12, 2022 entries attached.

22. Also of significant note, this case is not set for trial. There is no scheduling order or discovery deadlines. Pleadings disputes recently ended in June upon receiving the Court's order. There is no reason for the expedited and unreasonable, unilaterally set timeframes being demanded by Plaintiffs' counsel.

23. Based on the above continuing, discovery methods utilized by Plaintiffs' counsel and inability to resolve through communication with Plaintiffs' counsel, Defendants are now seeking relief from the Court pursuant to Missouri Civil Rules 56.01(c), 57.03(b)(2) and (e), and 57.09(d) to the extent applicable.

<p align="center">**Applicable Legal Rules and Analysis**</p>

24. "Missouri Rules require Cooperation in Discovery. All parties shall make reasonable efforts to cooperate for the purpose of minimizing the burden or expense of discovery." MO. CIV. R. 56.01(g). As relayed to Plaintiffs' counsel, Defendants cannot come up with a rationale

<p align="center">5</p>

EXHIBIT A - STATE COURT FILE

reasoning for the methods Plaintiffs' counsel is employing beyond gamesmanship to impose undue burden and expense.

25. Moreover, though the Missouri discovery rules do not provide a set sequence or timing for conducting discovery, Missouri Civil Rule 56.01(c) and Rule 57.03(b)(2) and (e) allows the Court to issue an order that discovery (including depositions) may be had only on specified terms and conditions, including a designation of the time or place, when justice requires, and good cause is shown.

26. Defendants are willing to produce Maco employee Dawn Sims and/or a corporate representative for deposition on a date agreed upon by both parties. Defendants are requesting such date be set at the conclusion of Plaintiffs' witnesses listed above who claim to hold testimony regarding the wrongdoing of Maco/Sims.

27. Plaintiff has the burden of proof in a civil case. Plaintiff is required to produce evidence of such claims first at trial with no obligation for Defendants to produce any evidence. As such, though not required, it is routine for Plaintiffs' witnesses to be deposed first and Defense witnesses to follow. This is the same with experts.

28. As the Court appeared to acknowledge during the Motion to Dismiss argument and order, the pleadings in this case are broad with minimal factual details as to the basis of the claims. The witnesses who hold the majority, and possibly all, the information are those whose depositions are requested by Defense counsel. Though such witnesses are cooperating and available to Plaintiffs' counsel for informal interviews to discover testimony, such is not the case for Defendants. For Defendants, depositions of these witnesses are the discovery mechanism available to understand the allegations against them.

6

29. The partial deposition of Susan Austin revealed an array of claimed wrongdoing and speculative accusations related to Maco and employee witness Dawn Sims nowhere listed in the pleadings or written discovery.

30. Prior to being subjected to depositions and surprise accusations, Defendants are seeking a better understanding of the allegations against them through depositions of the witnesses above who purportedly will testify to Defendants' wrongdoings. Defendants have a substantial need for this information and no other means to obtain it, especially considering several of the accusations by Austin have no factual basis beyond Austin claiming Sims told me.[2] Absent such an order regarding the sequence of discovery, Defendants will be prejudiced in their ability to prepare witnesses and prepare a proper defense. Defendants are left to defend the case blindly without an understanding of accusations being lodged against them. Such oppression and undue burden can be prevented via the Court's order.

31. Moreover, Plaintiffs will suffer no prejudice by a court order that requires a typical sequence of discovery wherein a Defendant witnesses are deposed after the conclusion of the Plaintiff witnesses.

32. Lastly, the unilateral setting of depositions with the minimum seven-day notice is not practical, reasonable, or necessary. Though Plaintiffs' counsel refuses to provide me dates, he claimed in a phone call that if I act in kind and unilaterally set a deposition with only seven days' notice to that he would produce his witnesses. This is an absurd and non-sustainable way to practice law. It leads to unneeded animosity. It is an annoyance that oppresses all involved (counsel, the parties, non-party witnesses, and court reporters); creates an undue hardship on all

---

[2] *See* deposition recording and transcript for examples that Defense counsel can specifically reference by page and line number upon receipt of the transcript and request of the Court.

7

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 14, 2022 - 09:31 AM

involved; and results in additional expense and time for all involved. The Court has the authority to prevent it from occurring.

33. Therefore, pursuant to Missouri Civil Rules 56.01(c) and Rule 57.03(b)(2) and (e), and for the reasons stated herein, Defendants request this Court enter a protective order:

- Quashing the deposition notice of Dawn Sims and Maco Corporate Representative;

- Requiring Plaintiffs to produce on an agreed upon date by both parties Austin, Johnson, Kittner, Bumeter, and Meier for deposition in the next 60 to 90 days;

- Ordering Defendants to produce requested Defendant employees and/or corporate representatives on an agreed upon date by both parties within 60 to 90 days of the completion of the above 5 Plaintiffs' witness depositions;

- Prohibiting Plaintiffs from unilaterally setting depositions; and

- Any other relief as this Court deems just and proper.

WHEREFORE, Defendants pray this Court provide the relief requested above, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

8

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 14th day of July 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*              /s/       MARIE F. PUDLOWSKI

9

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Tuesday, July 12, 2022 2:20 PM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Marie:

Thanks. Due to your continued refusal to produce your client until all depositions in this case are conducted (despite her being noticed first), and because there exists absolutely zero Missouri caselaw or statutes which authorize the same, you are correct that I will not produce my clients or witnesses until your client has been deposed. As advised, it is my intent to appear at the properly noticed deposition on Friday. Should you and your client not appear, I will obtain a Certificate of Nonappearance as we discussed.

Further to our conversation, I will notice my Motion for Relief at the same date and time as your Motions. That way we can hopefully knock everything out at once. Thank you again, and I hope you have a good rest of your day.

Best,
Brandon Klar

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Tuesday, July 12, 2022 2:12 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

Despite it not being productive, I appreciate you taking my call today to discuss our discovery disputes.

From our conversation, it is my understanding you are continuing to refuse to provide me dates for the two plaintiffs and three facts witnesses with alleged testimony of wrongdoing by my client. You will do nothing until we produce employee Dawn Sims for deposition. And, you tailored the corporate representative deposition set for July 11 in a fashion that you believe requires us to produce Sims as the corporate representative.

As indicated, I plan to get a motion to quash and motion for protective order on file. Neither I nor my client will be appearing for the deposition on Friday. The Judge is available for a hearing on my motions on July 19 at 9:00AM. You indicated availability for such hearing so I will notice up shortly. Once we obtain some Court guidance, I hope we can procced in a more cooperative fashion moving forward.



**MARIE F. PUDLOWSKI**

EXHIBIT A - STATE COURT FILE

EXHIBIT A

Electronically Filed - Texas - July 14, 2022 - 09:31 AM

**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 |Direct: 314.584.4568**
**www.jchildresslaw.com| mpudlowski@jchildresslaw.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Monday, July 11, 2022 10:28 AM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Marie:

I am available for a phone call if you wish to discuss this matter. Please feel free to call me whenever you are free and able. Just so you are aware, no documents are requested in the Notice of Corporate Representative Deposition or Exhibit A (topics of inquiry). Thanks.

Brandon

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Monday, July 11, 2022 9:08 AM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

Your pleadings personally accuse me of gamesmanship among other things.

Yet, on Friday, you email me saying we will work toward scheduling future depositions. You cancel the unilaterally set deposition of my client's employee set with only 7 days' notice over a holiday weekend after explaining to you that she is not a named party. You inform me that your witness (Johnson) is no longer available for her deposition on July 15, the date was provided by you and her, and agreed upon back in June. In effort of cooperation and efficiency, I file a cancellation of her deposition.

Then, minutes later in the 4 o'clock hour on a Friday, I receive yet another notice of a unilaterally set deposition of Maco's cooperate representative for the exact date and time of the deposition I just cancelled in an effort of cooperation. You have never reached out indicating a desire to depose a corporate representative. You never reached out to discuss availability of me or my witness. You never provided the topics in advance for us to determine our witness. And, I assume you are trying to provide

EXHIBIT A - STATE COURT FILE
EXHIBIT A

what you think is the least amount of notice required under the rules, 7 business days, for a deposition that covers numerous topics, and requires substantial review and possibly production of documents not previously requested in discovery.

Such a corporate representative deposition under the terms and conditions you are proposing would require my client and I to drop everything else already scheduled this week to appear and prepare for the topics and documents being requested. Many of your topics are objectionable, calling for personal knowledge beyond a corporate representative and confidential tenant information of non-parties. Moreover, your request for documents places this deposition within the confines of Rule 58.01 requiring notice beyond 7 days.

Though the discovery rules do not require a certain sequence of discovery, they do require reasonable cooperation among the parties to limit burden and expense. They also allow motions to terminate discovery to seek a protective order to prevent unreasonable oppression and annoyance.

I cannot come up with a rationale reasoning for the methods you continue employ beyond gamesmanship to impose undue burden and expense. I am open to your alternative reasoning that I may be missing.

Based on the above, I ask you to reconsider your corporate representative notice and file a cancellation today. If you choose to move forward with keeping the notice on file, I will proceed accordingly with motions to quash and protective orders.

I am in depositions the rest of today, but feel free to call me tomorrow to discuss further.

Best,



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 |Direct: 314.584.4568**
**www.jchildresslaw.com | mpudlowski@jchildresslaw.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Friday, July 8, 2022 12:43 PM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>

**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Marie:

I appreciate your email. In an effort to minimize this discovery dispute, I will cancel Ms. Sims' noticed deposition on the 11th. Ms. Johnson, however, is unavailable for her deposition presently scheduled for the 15th. I will get a Notice of Cancellation on file today for Ms. Sims, and we can work toward scheduling future depositions.

Thanks, and have a good weekend.

Brandon

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Friday, July 8, 2022 9:44 AM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

In a continued effort of cooperation and efficiency of resources, I wanted to make clear that despite the emails and motions filed neither I nor Ms. Sims will be appearing on Monday for your noticed deposition. Ms. Sims is not a named party in this case. Moreover, along with the reasoning set forth in Defendants' Motion to Quash, my two depositions previously scheduled in another case remain set on that date, making it a conflict as explained previously.

I understand your hold a different position and think you must move forward with a certificate of noncompliance. But, I figured I would provide this email for your use as you deem fit.

Best,



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct: 314.584.4568**
**www.jchildresslaw.com | mpudlowski@jchildresslaw.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication.  Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Wednesday, July 6, 2022 4:10 PM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Marie:

I do not intend to produce another witness until your client has been deposed. Ms. Sims is a party to this action. If Ms. Sims does not appear at deposition on the 11th, I will obtain a Certificate of Nonappearance.

If you would like to discuss this, I am available. Thank you.

Brandon

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Wednesday, July 6, 2022 3:52 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

Please advise whether you intend to produce Ms. Johnson for her deposition previously scheduled and noticed for July 15 in Springfield.

Also, let me know if your position changes upon reviewing my pleadings or if further discussion might be beneficial in resolving these discovery disputes outside of court involvement.

Thanks,



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct: 314.584.4568**
**www.jchildresslaw.com | mpudlowski@jchildresslaw.com**

EXHIBIT A - STATE COURT FILE

EXHIBIT A

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Tuesday, July 5, 2022 4:26 PM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Marie:

While I understand the position you are taking, I disagree with it. As Ms. Sims is a party to this action, the Plaintiffs have every right to take her deposition prior to the depositions of witnesses. Moreover, Rule 56.01(d) specifically permits Plaintiffs to conduct Ms. Sims' deposition prior to the depositions you seek. As such, please be advised that I will move to compel Ms. Sims' deposition prior to providing any further dates.

Thank you.

Brandon

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Tuesday, July 5, 2022 3:12 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

I received through eFiling a notice of deposition for my client's employee Dawn Sims to take place on July 11. Please note we will not be appearing or producing Ms. Sims on that day. I will get a motion to quash on file, but I wanted to give you a heads up.

First, I am not available on July 11, having two other depositions previously scheduled on that date and time.

Second, as relayed below, I cannot agree to the order of depositions you have proposed. Defendants are entitled to understand the claims to prepare their witnesses and their defense. Given the broad pleadings and the inability to serve written interrogatories on the non-parties who purportedly will testify to wrongdoing by my client, depositions are my only mechanism for discovering the allegations against my client. My intent is not to delay the discovery process or prevent you from obtaining Sim's testimony. My intent is to ensure I understand the claims so I can properly advise and prepare my clients accordingly.

EXHIBIT A - STATE COURT FILE

EXHIBIT A

In a continued effort of cooperation, please note that I would be happy to provide you dates and produce Ms. Sims for a deposition once we get the below requested depositions finalized and completed. My July is rather full, but I may be able to squeeze in some additional depositions (if your people are available) to allow us to get to Sims' deposition in early August.

Let me know your position and dates for you people.

Best,



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 |Direct: 314.584.4568**
**www.jchildresslaw.com | mpudlowski@jchildresslaw.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Marie Pudlowski
**Sent:** Friday, July 1, 2022 10:07 AM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

I am more than willing to get you dates, but I need to complete the depositions of your witnesses first. Once we have dates for your plaintiffs, Kittner, and Austin part II, I will supply dates for my people. Obviously, you are welcome to file something with the Court, but I will move to quash any notice for those reasons.

Please advise as to dates for your people.

Thanks,



**MARIE F. PUDLOWSKI**

EXHIBIT A - STATE COURT FILE

EXHIBIT A

**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax:**
**314.621.9802 |Direct: 314.584.4568**
www.jchildresslaw.com | mpudlowski@jchildresslaw.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication.  Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Thursday, June 30, 2022 9:37 AM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Subject:** Bumeter et al. v. Maco et al.

Marie:

Could you please provide available/exclusionary dates for the depositions of Dawn Sims and Lance Alton in the month of July? Thank you.

Sincerely,

Brandon J. Klar
Attorney at Law
Klar, Izsak & Stenger, LLC
*PLEASE NOTE OUR NEW ADDRESS*
1125 Olivette Executive Parkway
Suite 120
St. Louis, MO 63132
Phone: (314) 863-1117
Extension. 106
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

Electronically Filed - Texas - July 14, 2022 - 09:31 AM

EXHIBIT A - STATE COURT FILE

EXHIBIT A

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 1

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER, )CASE NO. 21TE-CC00360
)
and )
)
ERIC MEIER, )
)
       Plaintiffs, )
vs. )VIDEOTAPED
)VIDEOCONFERENCE
MACO MANAGEMENT CO., )DEPOSITION OF
INC., )SUSAN AUSTIN
)
and )
)
SUMMERSVILLE ESTATES, )
L.P., )
)
       Defendants. )
_____)VOLUME I

VOLUME I OF THE VIDEOTAPED
VIDEOCONFERENCE DEPOSITION OF SUSAN AUSTIN, taken
before Roxann Zuniga, Certified Shorthand
Reporter, and Notary Public for the State of
Iowa, commencing at  10:31 a.m., June 29, 2022,
at 505 Fifth Avenue, Fifth Floor, Des Moines,
Iowa.

Reported by:      Roxann Zuniga, CSR
Job No. CS5283655

Case 6:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 199 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Page 2

A P P E A R A N C E S

Plaintiffs by:    BRANDON KLAR
                  Klar, Izsak & Stenger, L.L.C.
                  1125 Olivette Executive
                  Parkway, Suite 120
                  St. Louis, Missouri 63132
                  bjklar@lawsaintlouis.com
                  (present via videoconference)

Defendants by:    MARIE PUDLOWSKI
                  Childress, Ahlheim Cary,
                  L.L.C.
                  1010 Marlet Street, Suite 500
                  St. Louis, Missouri 63101
                  mpudlowski@jchildresslaw.con
                  (present via videoconference)

Also present via videoconference: John Pierson,
                  videographer

Page 3

INDEX OF EXAMINATION

Examination by      Page
Ms. Pudlowski       4

INDEX OF EXHIBITS

| Exhibit | Referred to on page |
| --- | --- |
| A | 21 |
| B | 33 |
| C | 35 |
| D | 52, 56, 62, 139 |
| E | 115, 116, 118, 162 |
| F | 161, 162, 172, 178 |
| G | 215, 220, 266 |
| H | 256 |
| I | 265 |
| J | 266 |
| K | 267, 268 |
| L | 269, 270 |
| N | 270 |
| O | 271 |
| P | 271 |
| Q | 274 |
| R | 274 |
| S | 274 |
| T | 278 |

Page 4

P R O C E E D I N G S

VIDEOGRAPHER:  We're on the record at 10:31 a.m.  Today is June 29, 2022.  This is the video deposition of Susan Austin in the matter of Bumeter, et al. versus Maco Management Company, Incorporated, et al., Cause No. 21DE-CC00360 in the Circuit Court of Texas County, State of Missouri.  Will counsel please make a record of your appearance?

MR. KLAR:  Brandon Klar here on behalf of the plaintiff, Jennifer Bumeter, and Eric Meier.

MS. PUDLOWSKI:  Marie Pudlowski is here on behalf of Defendants, Maco Management and Summersville Estates.

VIDEOGRAPHER:  Thank you.  Would the reporter please swear in the witness?

SUSAN CAROL AUSTIN, called as a witness, having been first duly sworn, testified as follows:

DIRECT EXAMINATION
BY MS. PUDLOWSKI:

Q.  Good morning, Ms. Austin.  As I mentioned just briefly, my name is Marie Pudlowski, and I'm the attorney who represents Maco Management and Summersville Estates in the case that has been

Page 5

filed against them.  Also present in the room is Brandon Klar, and he's the attorney for Jennifer Bumeter and Eric Meier.  Do you understand today that you appear today without counsel?  Correct?

A.  Yes.

Q.  Okay.  And you understand that neither attorney in the room represents you here today --

A.  Yes.

Q.  -- correct?

A.  I understand.

Q.  Okay.  Can you please state your full name for the record.

A.  Susan Carol Austin.

Q.  Okay.  Ms. Austin, so my goal today is just to try to get as much information from you as possible, what you do know and also what you may not know about this case so I can better evaluate and report back to my clients.  All right?

I have quite a few questions for you today.  So if at any point in time you need a break, go to the bathroom, get a drink, just let me know, and we can go off the record and make that happen.

A.  Okay.

Q.  Does that make sense?

2 (Pages 2 - 5)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

A. Yes.

Q. All right. Have you ever been deposed before?

A. No.

Q. Okay. So I'm just going to go over a few ground rules. First off, as you noticed, you were your just sworn in by the court reporter. So even though we're sitting here and it seems like it's a somewhat informal process, it is as if you were in a court of law before a judge and before a jury. So do you understand that everything you say today must be the truth?

A. Yes.

Q. Okay. And do you swear to tell the truth today?

A. Yes.

Q. Okay. The other thing is is that the court reporter here is taking down everything that you and I are saying to preserve for the record which may be used later on. I have a bad time of doing this because it's just natural that we start having a conversation, sometimes we interrupt each other and talk over each other, sometimes we answer with phrases like uh-huh and huh-uh and we use our hands and things of that nature, so the

court reporter cannot take that down.

So I'm going to try my best to wait until you're done answering before I ask my next question if you can try your best to wait until I'm done talking before you give me your answer. Does that make sense?

A. Yes.

Q. And there may be at times I try to correct you or the court reporter may jump in and correct us. It is not to be rude or to try to criticize you. It is solely to ensure that we get a record of everything that's being said. Does that make sense?

A. Yes.

Q. Okay.

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. I will let you know that I am quite the fast talker, so please pipe up at any point in time if you need me to slow down.

The other thing is as though -- even though we are attorneys, we try to say that we make sense with our words, but there are sometimes that my questions are just bad and they don't make sense.

So if you do not understand or if you need me to repeat because it was too fast, please just let me know, and I will do that. Okay?

A. Okay.

Q. So if you answer my question, I assume that you understood the question. Does that make sense?

A. Yes.

Q. Okay. Let's start with you said -- what's your full name again?

A. Susan Carol Austin.

Q. Susan Carol Austin? And have you been known by any other names or nicknames in the past?

A. I was married twice.

Q. Okay.

A. Husband's last name was Zaritz. He died.

Q. And how do you spell that?

A. Z-a-r-i-t-z.

Q. And so then did you change your name in that marriage? Was it Susan Zaritz?

A. No. My maiden name is Dale, D-a-l-e.

Q. All right. So originally your maiden name was Susan Dale. Then did it become Susan Zaritz?

A. Yes.

Q. All right. And then Susan Austin?

A. Right.

Q. Any other names besides those?

A. No.

Q. Okay. So you mentioned you've been married twice; is that correct?

A. Uh-huh.

Q. All right. When were you first married?

A. 1981, I think, or '82.

Q. And that was to Mr. Zaritz?

A. Uh-huh.

Q. Okay. And when did that marriage end?

A. '88.

Q. Okay. Did you guys have any children of that marriage?

A. One.

Q. One? Boy? Girl?

A. Boy.

Q. And what is your son's name?

A. Robert Zebulon Zaritz.

Q. And are you still in contact with your ex-husband at all?

A. He's dead.

Q. He's dead? Okay. And your son, Robert Zaritz, where does -- does he live in the area or --

3 (Pages 6 - 9)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                                               973-410-4098

A. No.

Q. -- where does he live?

A. He doesn't live around here.

Q. Okay. Where does he live?

A. Licking.

Q. Licking?

A. Missouri.

Q. Okay. And when did you guys get married?

A. I'm having trouble remembering. '96.

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. Okay. And how long did that marriage last?

A. Nine years.

Q. Okay. So early 2000s?

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. So, Ms. Austin, as you can see, we are dealing with some technology glitches this morning, so I'm going to actually have to ask some of those questions again of you. Okay?

A. Okay.

Q. Or we're going to go back through. I think we ended when you said that marriage was nine years. You were talking about your marriage to Ronnie Austin; is that correct?

A. Right.

Q. All right. And so you married Ronnie Austin probably sometime in the mid 90s.

A. Yes.

Q. And you guys divorced early 2000s; is that correct?

A. Correct.

Q. Okay. And you had no children of that marriage; is that correct?

A. No.

Q. And does Ronnie Austin live in the area --

A. No.

Q. -- at all? Okay. Do you know where he lives right now?

A. Carroll County, Missouri.

Q. Do you have any other children beyond Robert?

A. Zachary James Dale.

Q. Okay. And about how old is Zachary?

A. Forty-five.

Q. And where does Zachary live?

A. Here.

Q. And here, where do you mean here?

A. Doniphan, Missouri.

Q. Okay. And is he married at all?

A. Yes.

Q. And what is his wife's name?

A. Sarah.

Q. And is her last name Dale?

A. Yes.

Q. And do they have any children of their marriage?

A. Yes.

Q. How many?

A. Two.

Q. And are their children adults yet?

A. One is 22.

Q. Okay.

A. And one is four.

Q. And the 22-year-old, what is his or her name?

A. Tyler James Dale.

Q. Okay. And your grandson, Tyler, does he live in the area?

A. Yes.

Q. Okay. Any other marriages or children that we haven't yet discussed?

A. No.

Q. Okay. And where do you currently live?

A. Here in town.

Q. Okay.

A. In Doniphan.

Q. And what's your exact address?

A. 720 Apricot, Doniphan, Missouri 53935.

Q. And is this a home? An apartment? A single --

A. It's an apartment.

Q. And is this a low-income housing apartment?

A. It's senior housing.

Q. Senior housing? Okay. And does anybody currently live with you at that address?

A. No.

Q. And how long have you lived at 720 Apricot?

A. Since December.

Q. Of what year?

A. '21.

Q. 2021? Prior to living at the 720 Apricot Missouri address in December of 2021, where did you live?

A. Summersville, Missouri.

Q. Okay. And was that when you were living at the Summersville apartment complex?

A. Yes.

Q. Okay. And when you lived at the Summersville apartment complex, did you live with

4 (Pages 10 - 13)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                973-410-4098

Case 6:23-cv-03015-BCW   Document 131-1 Filed 01/12/23   Page 202 of 786

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

anyone else?

A. No.

Q. Prior to living at the Summersville apartment complex, do you recall the location?

A. 160 West.

Q. Was that an apartment complex? A house?

A. It was a house.

Q. And did you own that house --

A. Yes.

Q. -- rent that house or --

A. I owned it.

Q. And how long did you live at that home from approximately?

A. Probably six or seven years.

Q. And what was the reason for you leaving that home and moving into the Summersville apartment complex?

A. I had to go to a domestic violence shelter.

Q. Okay. Did you live with anybody then at the 160 West address?

A. My husband and my youngest son, and some of his friends --

Q. Okay.

A. -- moved in with us.

Q. So you left that address to go to a DV

shelter. Did you take your son with you?

A. No.

Q. Okay.

A. No. He's an adult.

Q. Okay. And he was an adult then at that time --

A. Right.

Q. -- as well? Okay.

A. Right.

Q. And when you say you were living with your husband, that would have been Ronnie Austin at the time?

A. Right.

Q. Okay. So you left for the shelter. And then the shelter, how long were you at the shelter, do you think?

A. Six months.

Q. Okay. And did they assist you in getting into Summersville --

A. Yes.

Q. -- or did someone else?

A. Yes, they did.

Q. Okay. Prior to living at the 160 West house, had you lived anywhere else other than the Doniphan area?

A. I lived in Carroll County.

Q. Okay. And when did you live in Carroll County approximately?

A. From 1994 to 2000.

Q. And then in 2000 you moved back to the Doniphan area?

A. Correct.

Q. Okay. Other than the Summersville apartment complex, had you ever lived at another point in time in your life in any sort of low-income housing?

A. No. That was the first time.

Q. Okay. Other than your son and his family, do you have any other family or friends who live here in Texas County?

A. This is Ripley County.

Q. Or Ripley County? I'm sorry.

A. I have so many, there's no way I could list them.

Q. Okay. And let's limit this way. Of your friends and family, who have you spoken with about this case and the fire involving Robin Fisher?

A. My cousin, Sandra.

Q. Okay. And what's Sandra's last name?

A. Richmond.

Q. And does she live here in Doniphan, or where does she live?

A. She lives in the next town over, Grandin, Missouri.

Q. Okay. Anybody other than Sandra that you've discussed this case with?

A. Not really, no.

Q. Okay. And any other family names other than the ones that we have already discussed then; Dale, Zaritz, Austin?

A. No.

Q. Okay. Probably a variety of names for marriages and --

A. Yeah.

Q. Okay. Tell me a little bit about your educational background. Did you complete high school at all?

A. Yes.

Q. Okay. And where did you graduate high school from?

A. Richard Farms in St. Charles County.

Q. Did you grow up then in St. Charles County?

A. No. I only lived there for one year.

Q. Okay. Prior to going to Richard Farms,

5 (Pages 14 - 17)

EXHIBIT A - STATE COURT FILE

EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Case 6:23-cv-03015-BCW Document 137 Filed 01/12/23 Page 203 of 786

800-567-8658                                                      973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 18

where did you go then?

A. Here in Doniphan.

Q. Okay. And where did you go in Doniphan?

A. Doniphan High School. There's only one.

Q. Did you complete any sort of college at all?

A. I completed an associate degree in nursing.

Q. Okay. And where did you go to nursing school at?

A. Clark College.

Q. Other than your associate degree in nursing, did you do any other college?

A. No. Just specialty seminars that came up, specialty seminars and that kind of then.

Q. Okay. And when was it about that you went to nursing school? Do you know?

A. I started nursing in 1982 as an LPN, and then I went back in 1994 and finished.

Q. Okay. Any trade school at all?

A. An LPN was considered trade school, actually.

Q. Okay. Got it. Do you have any military history at all?

A. No.

Q. Okay. Back in June of 2021, were you employed at that time?

Page 19

A. No.

Q. Are you currently employed at all?

A. Yes.

Q. Okay. And where are you currently employed?

A. Preferred Home Care.

Q. And is that an agency out of Doniphan?

A. Yes.

Q. Okay. And what do you do at Preferred Home Care?

A. I'm a homemaker. I retired from nursing, but I need more money. Just can't retire anymore.

Q. And so --

A. And I had several jobs in Summersville, but at that particular time -- like last June, was I working? No.

Q. Okay. When did you start at this Preferred Home Care in Doniphan about?

A. Just recently about three weeks ago.

Q. Okay. And you said you're a homemaker. What does that mean?

A. I take care of a little man.

Q. Okay.

A. I cook for him and do his laundry and that kind of thing.

Page 20

Q. Okay.

A. Cut his hair.

Q. Prior to Preferred Home Care, did you have employment prior to that?

A. I worked for a very short time for a different agency, but it wasn't for me.

Q. Okay. And what agency was that?

A. American In-home.

Q. And what was your role at American In-home?

A. I was a homemaker.

Q. Okay. And was that out of Doniphan as well?

A. Yes.

Q. And about how long did you work there?

A. A month. I didn't work there very long.

Q. And did you quit? Get fired somehow?

A. I quit.

Q. And why did you quit?

A. They -- I didn't agree with their standard of care.

Q. Okay. Did you file any complaints in regard --

A. No.

Q. -- to that or --

A. No.

Q. No? Okay. Prior to working at American

Page 21

In-home, where did you work?

A. For another short time -- I was trying to find my niche after I moved back to town. I drove a bus for a shelter workshop.

Q. Okay. And about how long did you work there doing that?

A. About a month.

Q. And why did you leave that employment?

A. Because I had to get up at 4:30 in the morning and drive way out of town and pick up clients, you know.

Q. Okay.

A. And it was actually dangerous. And then I would go home and take a nap and do it again in the evening. It just wasn't fitting into what I wanted to do.

Q. Okay. And did you have other employment from June of 2021 to the present other than the three that we've talked about?

A. No.

Q. Okay. And you said that during your tenancy at Maco, you had various jobs; is that correct?

A. Uh-huh.

Q. Okay. Tell me about those jobs.

A. I worked at the senior center --

6 (Pages 18 - 21)

Case 6:23-cv-03015-BCW Document 131-1 Filed 01/12/23 Page 204 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                    973-410-4098

Q. Okay.

A. -- for four years as a cook. Or, you know, we just made lunch for the senior citizens there.

Q. Okay.

A. And then I worked at the local liquor store for a couple of weeks. But somebody ran into my car and just about demolished it, so I didn't want to work there anymore.

Q. And the local -- you said you worked at the senior center.

A. Uh-huh.

Q. What -- is that the name of it or is it --

A. Summersville Senior Center.

Q. Summersville Senior Center? Okay. And why did you leave that employment?

A. I quit.

Q. Okay.

A. I wanted something else.

Q. Any other employment you had during your tenancy at Summersville Estates?

A. No.

Q. Okay. Then you said you retired from nursing at some point. About when did you retire from nursing?

A. Right after I had to go into the shelter.

Q. Okay. And prior to you entering the shelter, how long had you worked in nursing? Did you --

A. Thirty-five years.

Q. Thirty-five years? Okay. And where were you working prior to going into the shelter?

A. I was working -- let me think. My life before that was in Poplar Bluff.

Q. Okay. Did your job as a nurse, were you working in an ER? An office? Did it vary throughout your career?

A. Mostly it varied.

Q. Okay.

A. It varied.

Q. Do you have any type of criminal history even if it means you pled guilty to one of those things called an SIS where it goes off your record eventually?

A. No.

Q. Do you have any civil litigation history? Meaning have you ever been involved in any sort of court case before whether it's you filing suit against somebody, somebody filing suit against you, or you being a witness in a case?

A. No.

Q. Any history of any order of protections being filed against you?

A. No. Not that I've ever seen.

Q. Okay. Any history with any housing cases at all, landlord tenant disputes?

A. I never had an issue with the manager. I lived there six years, never had any issues, never had a writeup.

Q. And when you say the manager, who are you referring to?

A. Well, there were four property managers in the six years I lived there. I didn't have problems with any of them until Dawn.

Q. And are you referring to Summersville Estates? You never had a problem with their property managers?

A. Right.

Q. Okay. Just because I know you're living at a senior center --

A. Oh, no.

Q. -- now. I just want to make sure for the record we know which place we're talking about.

A. Okay.

Q. Okay. So do you have, though, any history of any housing case or landlord tenant dispute

that you're aware of?

A. No.

Q. Did you have a dispute involving Maco?

A. No.

Q. Have you ever been evicted before?

A. Just Dawn evicted me just this time.

Q. Okay. So you are aware of the eviction case involving Maco that went to court?

A. Yes. But it -- I had to call the court and explain some things to them after I found out because I wasn't even allowed at the courtroom. And I found out later that was wrong of them.

I had the right to defend myself, you know, and state my problems. And the lawyer I had didn't -- he wasn't working for me. I don't know who he was working for actually.

Q. So you were aware that there was a petition filed for rent and for unlawful detainer against you by Maco; correct?

A. I don't really know what unlawful detainer is. What is that?

Q. Do you know that there was a case filed against you by Maco?

A. For eviction?

Q. Yes.

7 (Pages 22 - 25)

800-567-8658                                                            973-410-4098

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 26

A. Yes.

Q. Okay. And you went ahead and sought counsel for that case?

A. Yes.

Q. And who was your counsel?

A. He was from the Springfield legal aid office.

Q. Okay.

A. Antonio something. I wasn't fighting the eviction. I just needed more time because apartments were hard to find at that time because of Covid and I didn't get -- I got a little over two weeks.

Q. And are you aware of the outcome of that case?

A. I wasn't allowed in the courtroom. I don't know anything about it. That's why I called, and I'm supposed to present them with a paper with my ID on it and the explanation I have about what happened.

Q. And present who?

A. The circuit clerk.

Q. And when did you call the circuit clerk to talk to them about --

A. About a month ago.

Page 27

Q. Okay. When were you aware of the eviction case?

A. I was served papers.

Q. Okay. And when was that? Was that just a month ago?

A. I was --

Q. A year --

A. -- served papers --

Q. -- ago?

A. -- every day for a month, so I really don't know. They were taped to my door. They were in my mailbox. Some came certified.

Q. When did you get the attorney for this case?

A. When I got the eviction notice.

Q. And when about was that? What year?

A. It was 2021.

Q. Okay. And when you called the clerk about a month ago then, have you moved forward with doing whatever their instruction was?

A. I'm in the process.

Q. Okay. And do you have counsel right now for that at all?

A. No. I don't have to -- I don't need counsel for that.

Q. Did your attorney ever tell you what the

Page 28

outcome of that case was?

A. I never heard from him. When I tried to call him, he wouldn't take my call so I tried -- I said I didn't need his services anymore. And, no, I didn't receive anything from him.

Q. When did you fire him? Was that before or after the case?

A. It was after.

Q. Okay.

A. Because he guaranteed me he could get me more time. That's the only thing I wanted was more time. But he didn't bring up any of the retaliation issues or anything like that either.

Q. Okay. Other than this case involving Maco, are you aware of anyone else filing suit against you regarding a landlord tenant dispute?

A. No.

Q. Are you aware of a case filed in 2007 against you by Doyle and Barbara Fletcher?

A. No.

Q. Okay. Do you know who Doyle and Barbara Fletcher --

A. Yes.

Q. -- are? Okay. Who are Doyle and Barbara Fletcher?

Page 29

A. I rented a house from them years ago. I sold him -- or was going to sell him my house when I sold it, but it didn't work out. I didn't get papers or anything. I didn't get served about that case, so I really don't know what that was about.

Q. So you rented -- but you did rent a house from them back in 2007?

A. No. This was in the 80s. It was so long ago. My children were young.

Q. Okay. So you rented a house from Doyle and Barbara Fletcher in the 80s?

A. Yes.

Q. And how long did you live at that house?

A. Oh, several years. Five years maybe.

Q. Okay. Do you know the address?

A. It was on Pine Street. 804 Pine Street, I believe.

Q. Okay. And did you know Doyle and Barbara Fletcher personally or how did you --

A. He handles a lot of rental houses, or he did at that time.

Q. Okay. So you rented from them in the 1980s. And how did that rental agreement end or how --

A. It ended fine.

8 (Pages 26 - 29)

Case 6:23-cv-03015-BCW Document 13-1 Filed 01/12/23 Page 206 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                                   973-410-4098

Q. Okay.

A. He would take my son fishing. I mean he was a really nice guy.

Q. And so then did you eventually move somewhere else?

A. I moved two doors down.

Q. Okay. And were you kicked out of that location by --

A. No, no.

Q. And so do you have any idea why they would have filed suit against you in 2007 for a landlord tenant dispute?

A. The only --

MR. KLAR: I'm just going to object to relevancy. And we can do a running objection through regarding Ms. Austin's tenancy history.

A. It was over a stock tank, to the best of my knowledge. When I was selling my house, I was selling my stock tanks and things like that out of the barn. And he wanted it, but someone beat him to it and offered me more money, and I sold it to them. So it wasn't anything -- I don't know what that was about. I never knew.

BY MS. PUDLOWSKI:

Q. Do you know -- so you're saying there was an

issue with the Fletchers involving a stock tank?

A. That's the only thing I can remember.

Q. And when did the stock tank issue come up?

A. Well, when I sold my house.

Q. Okay. And when did you sell your house?

A. What did I say earlier? I'm trying to remember. It was 2000 something, yeah. Can we skip -- does this matter?

Q. This is discovery, so I'm allowed to ask --

A. Okay.

Q. -- any question that could lead to admissible evidence so --

MR. KLAR: I have a running objection, but you will answer the questions, yes.

BY MS. PUDLOWSKI:

Q. I am going to hand you what has been marked as Exhibit A. These are just some Case.net printouts involving the case that I'm discussing. Okay. So if you go ahead and take a look at this.

A. Randy May, he's my boss. Where does it say what it's about?

Q. If you go to the next page.

A. Oh, no.

Q. Taking a look at these documents, does this

help refresh your recollection at all --

A. Just about --

Q. -- in regards to --

A. -- one thing. I vacated the house. It was sold to somebody else. And my son had gone back in there and made sure it was cleared out. But, you know, I didn't own my house anymore. But I don't know what this is about. I never received any kind of paperwork or -- I was never served.

Q. That's something different. I'm sorry. That shouldn't be attached, but we'll get to these in a second. So were you living or not living -- where were you living in 2007, I guess?

A. I was living in this town somewhere.

Q. Okay. Would you have been living at a home owned by Doyle and Barbara Fletcher?

A. No. I -- no, no.

Q. So looking at that, though, you have no idea why they filed --

A. No. I didn't know then and I don't know now.

Q. Do you know that they had a default judgment against you for --

A. No.

Q. -- money that --

A. I don't know anything about it. I know nobody ever sent me any paperwork about that.

Q. Okay. And it's your position that you were never living at a home, apartment, or anything in 2007 owned by them?

A. No, I was not.

Q. Okay. Or managed by them?

A. No.

Q. Okay. Do you recall any litigation case involving unpaid taxes at all?

A. I don't remember any litigation. I did get behind on my state taxes.

Q. Okay. Do you recall in 2011 the Department of Revenue bringing a case against you and a tax lien against you?

A. For what?

Q. For unpaid taxes.

A. No. I didn't know anything about a tax lien.

Q. Okay. I am going to hand you what has been marked as Exhibit B. If you can go ahead and take a look at Exhibit B for me. This is a Department of Revenue tax lien.

MR. KLAR: Just because I had the objection running over tenancy history, I'll also object to

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
Case 6:23-cv-03015-BCW Document 137 Filed 01/12/23 Page 207 of 786
800-567-8658                                                 973-410-4098

Page 34

any history regarding her taxes.

MS. PUDLOWSKI: That's fine.

A. I've never seen these papers before.

BY MS. PUDLOWSKI:

Q. Okay. Have you ever been notified of an issue by the IRS of unpaid taxes?

A. I paid them. When I got behind, I paid them. I think I'm still behind on state taxes.

Q. Okay. My question is have you ever been notified by the IRS --

A. No. I --

Q. -- of an issue --

A. -- called them and made arrangements to pay the unpaid taxes.

Q. Okay. So my question is have you ever been notified by the IRS of an issue with unpaid --

A. Not that --

Q. -- taxes?

A. -- I recall, no.

Q. Okay. Do you recall ever receiving notice from the Department of Revenue on an issue of unpaid taxes?

A. Maybe many, many years ago, but I always called them and made payment arrangements.

Q. Okay. Looking at this document, which we're

Page 35

going to do Exhibit C, this is another Department of Revenue tax lien from 2012. Have you ever seen this document before, or are you aware of that tax lien?

A. No.

Q. Okay. Do you know if those tax liens are still pending at all?

A. I have no clue.

Q. Okay. Have you ever filed any sort of informal housing complaints at all over the years?

A. Not until after Robin died in a fire in her apartment.

Q. Okay. Prior to Robin's death, though, you have never filed any formal housing complaints --

A. Not that I -- I never lived in housing before.

Q. And prior to Robin's death, though, you had never filed any sort of complaint at Maco?

A. I knew nothing about Maco until I moved into those apartments at Summersville.

Q. Okay. And even -- you moved in there around 2016; is that correct?

A. Correct.

Q. Okay. So from 2016 up until Robin's death

Page 36

in June of 2021, had you ever filed a complaint against Maco or Summersville --

A. Filed with like who?

Q. Any sort of complaint.

A. No. Just about dogs barking, but that was not a formal complaint.

Q. Okay. Other than dogs barking, do you remember filing any sort of informal complaint to the Summersville Estates management prior to Robin's death?

A. Just work orders and things like that. No formal complaint. I mean I don't --

Q. And when you say work orders, what do you mean by that?

A. Well, my apartment flooded twice while I lived there, and I went seven days without a toilet. And, yeah, I was filing a complaint with anybody who would listen over that.

Q. And that was prior to Robin's death?

A. No. That was after Robin's death.

Q. After Robin's death? Prior to her death, do you recall filing any work orders or complaints to --

A. Well, work orders are just a normal thing.

Q. Okay.

Page 37

A. But I don't -- a formal complaint, no. I don't remember filing a formal complaint.

Q. Any informal complaint?

A. I don't know what a formal complaint entails actually.

Q. Well, let's just say, did you ever make a complaint to anybody at Maco or Summersville Estates prior --

A. Not until after Robin died.

Q. Okay. Have you ever had a history of where you have had to call the police on any sort of landlord or property manager?

A. I never had called the police on any landlord.

Q. Okay. Have you ever had the police called on you by any landlord for --

A. They called the police on me at least once a week, sometimes more. It was always the same policemen, and it was for things like I closed my door too loud and things like -- or just a totally fabricated issue.

Q. And when you say they called the police on you, who are you referring to?

A. Dawn and the people from Maco and the tenants that lived at Summersville Estates that

10 (Pages 34 - 37)

Page 38

were working on behalf of Ron -- or Dawn.

Q. Okay. And so the police getting called on you, had you ever had the police called on you prior to Robin's death?

A. Yes. My boyfriend parked his Harley in front of the door, and that was against the rules that we found out. But, you know --

Q. And when about was that?

A. Probably a year or so ago. No. Longer than that. Probably two years.

Q. But you do know that one was prior to her death?

A. Yes. I believe it was.

Q. Okay. Other than the time that the police got called on you because his Harley was parked in front of your door, any other time that you know prior to her death where the police got called on you at Summersville Estates?

A. Oh, they were always calling on someone. Well, we had an overdose. My neighbor overdosed, and the police came that time, I'm pretty sure, but I didn't call them. I don't -- I don't recall.

But they came -- they were sent to my door so often, it just -- it just stopped meaning

Page 39

anything. We just started having conversations about other things because he was there all the time.

Q. So prior to her death, though, do you recall the police coming out for you on any occasion other than this one involving the Harley?

A. Someone put up an illegal satellite outside my window.

Q. Okay.

A. And my TV was too loud. They couldn't get their signal, and they asked me to turn it down. And I said no, and they called the police on me that day.

Q. Okay. And who called the police on you?

A. Her name was Tracy something.

Q. Okay. And was she a tenant? A --

A. Yes.

Q. -- Maco employee?

A. A tenant.

Q. Okay. All right. Other than the Harley and the illegal satellite, can you think of any other time prior to Robin's death that the police were called on you at Summersville --

A. If they --

Q. -- Estates?

Page 40

A. -- were, it lost all significance because they were there all the time.

Q. Okay. Even before --

A. For some reason --

Q. -- her death, they were there all the time.

A. Not always for me but for something going on up there. It was -- it was trouble all the time.

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. And, again, I understand it's your position that they came all the time for different reasons at the apartment complex. My question, though, concerns the police coming to the complex for issues involving you.

A. If they did, I don't remember. Maybe they did and I just don't remember so I'm --

Q. Okay.

A. -- just going to say I can't remember.

Q. Okay. And the time with the Harley, do you know who called the police on that occasion?

A. A woman named Beverly Brooks.

Q. Okay. So, again, neither of those instances was actually Maco or Summersville calling on you. Those were other tenants?

A. I really don't want to say. I really can't

Page 41

remember all those times. I just can't remember.

Q. And that's fine. Again, as I told you at the beginning, my job is to try and get as much information on what you do and do not recall. It's perfectly acceptable if you don't know to let me know you don't know, but I need to know what you're going to remember and what not because I don't want surprises come trial. Okay?

A. I'm trying to get all the police reports that concerned me from Summersville Police, and I couldn't. They wouldn't let me have them. And since then, both of the policemen have resigned.

Q. Okay. And who were these two policemen that you're talking about?

A. Kevin Jotz, J-o-t-z, was the chief of police.

Q. Okay.

A. And the other one that was having a relationship with Dawn, his first name was Chris, but I can't recall his last name.

Q. Okay. And they both resigned to your knowledge?

A. Yes.

Q. And what's your basis of that information? Who told you that?

11 (Pages 38 - 41)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                                              973-410-4098

A. The Texas County Sheriff's Office told me.

Q. Okay. And who at the Texas County Sheriffs' Office?

A. The administrator, the office administrator.

Q. Do you know her name?

A. Her name is Heather.

Q. Okay. And tell me, what effort did you make to get all these police reports?

A. I first called the Summersville Police, and they're not online like a lot of places --

Q. Uh-huh.

A. -- do now. And at fist he was very nice about it and cooperative. And then I had to call again because I didn't hear from him again. And he said that I would have to come up there and get them which I could have done that. I still can, I guess.

Q. So they -- they were going to supply them to you. You just would have had to go out there and get them?

A. He wanted to hear from my lawyer which I didn't have a lawyer, so I couldn't do it that way. And I called the Texas County Sheriff's Office to see what I should do, and they said go to a town meeting or just, you know, come and get

the police reports. They didn't have them. The sheriff's office didn't have them.

Q. And tell me why --

A. They wouldn't give them to me.

Q. Sorry. I jumped in and interrupted you. I'm doing the bad thing now.

A. I do it a lot.

Q. So tell me, why were you trying to get all these police reports from --

A. Because they called on me so many times to tarnish my credibility, to make me look like some kind of a criminal, and it was just nothing important that they shouldn't have wasted their time with. I even asked him one time, I said I hope nobody is getting raped or robbed while you're up here telling me that I'm shutting my door too loud.

Q. Do you recall any times after Robin's death specifically of the police coming? Can you recall --

A. They came all the time.

Q. Okay. Can you recall --

A. They came all the time.

Q. -- any specific instance?

A. One was at -- Dawn was neglectful in her

duties, and she left a hot water heater and an old refrigerator in someone's yard where there were children. She left it there for four or five days. I took a picture because I took a picture of everything.

And one of the tenants thought I was taking pictures of her children which I didn't see her children. So Kevin came up, and I showed him all the pictures on my phone and the ones of the hot water heater and the refrigerator, and there were no children involved. So, you know, it was just harassment.

Q. And do you know who called on that instance?

A. No. I don't know that woman's name.

Q. Okay.

A. I don't know her.

Q. So it wasn't Maco who called? It was a tenant?

A. It was a tenant.

Q. Okay. And do you know if that tenant actually made a complaint to Maco about you regarding --

A. I don't know.

Q. -- you taking --

A. I don't know. Maco, at that point they

didn't talk to me at all.

Q. But you do recall there was a tenant who was concerned that you were taking pictures --

A. She was --

Q. -- of her children?

A. -- one of Dawn's friends. She was one of Dawn's friends.

Q. Okay. And do you know her name?

A. No. That -- no. It was the same one. I never did know her name. I didn't know her.

Q. Can you recall any other instance where the police came out after Robin's death --

A. Not without --

Q. -- and --

A. -- the police reports right in front of me.

Q. Okay.

A. There were some -- there's totally fabricated things that really angered me that weren't true. But, you know, they couldn't prove I'd done anything, so he just would come and talk to me about it and leave.

Q. Do you have any specific knowledge of Maco or anyone at Maco -- or Summersville actually calling the police on you?

A. I can't prove anything that Maco did because

12 (Pages 42 - 45)

Case 6:23-cv-03015-BCW Document 13-1 Filed 01/12/23 Page 210 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT C TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                    973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 46

they lie so much. There's no way to know what they've done. And they fabricate paperwork, so I don't know what they've done. I would be afraid to guess.

Q. But the one instance you do recall, you know it was a tenant calling, not somebody at Maco?

A. Right.

Q. Okay. And sitting here today, you can't recall any specific one, any specific time the police came out and it was somebody at Maco making the report?

A. Oh, Dawn.

Q. And what specifically do you recall Dawn --

A. When she --

Q. -- calling on?

A. -- does a certain inspection, she would bring a police officer to stand at the door and protect her. She did that to the woman that lived behind me, and the poor woman couldn't stand up for maybe two minutes at a time. I mean Dawn was never in any danger from all the people she evicted.

But when he came, I said do you have a warrant, and he said no. So I shut the door because all this was going on, and I was trying

Page 47

to maintain what little rights they left me.

Q. And when you say Dawn brought a police officer with her when she needed to do an inspection of your unit or somebody else's unit?

A. Mine.

Q. Okay.

A. After she fabricated the one before that.

Q. Okay. So this is -- the inspection that you're talking about is the one, the very next inspection that would have taken place after Robin's death?

A. The one in June she totally fabricated. This was the one in September. She's supposed to do them every three months.

Q. Okay. So September of 2021, Dawn was supposed to come out and do an inspection of your unit; correct?

A. Right.

Q. Okay. And she brought a police officer with her at that time; correct?

A. Yes.

Q. Okay. And tell me, what's your understanding of why she brought the officer with her?

A. She told me that as long as she had the

Page 48

officer with her, it was protection for her in case anything would happen. Plus, it made people feel sorry for her because some crazy tenant was going to, you know, try to do something to her.

Q. Did she tell you that it made people feel sorry for her or is that --

A. No. She told me that.

Q. Okay. So Dawn said she brought a police officer with her because --

A. It was --

Q. -- it was going to make people feel sorry --

A. It was --

Q. -- for her?

A. -- for looks.

Q. Okay.

A. It was a ploy that she used.

Q. And did she use those words; it was a ploy she used?

A. No. I'm using the words it was a ploy because it was a ploy.

Q. Okay.

A. She just said she did it for sympathy.

Q. Okay. So she did it for sympathy, and it was strictly for show? Is that --

A. Well, I'm saying that.

Page 49

Q. Okay. So I want to make sure. I need to understand. What did Dawn say?

A. She liked to take the officer with her because it made her look vulnerable, and people were going to feel sorry for her and think she was in danger which she wasn't.

Q. Can you think of any reason why Dawn may have felt in danger from her interactions with you --

A. She angered --

Q. -- prior to September --

A. -- so many people.

Q. -- of 2021?

A. Why she brought them to my apartment?

Q. Yes.

A. Because all of this was going on, and I had reported her to so many agencies because of no toilet, headlights being busted out of my car, the police being called for no reason. It was just on and on and on.

Q. Do you think Dawn had any reason from your interactions with her to have any sort of fear?

A. Yes.

MR. KLAR: Objection, argumentative.

BY MS. PUDLOWSKI:

13 (Pages 46 - 49)

800-567-8658                                                                   973-410-4098

Page 50

Q. You can answer.

THE WITNESS: Should I?

MR. KLAR: You can answer.

MS. PUDLOWSKI: He's not your attorney so --

A. Okay. Say that again, Ms. Pudlowski.

BY MS. PUDLOWSKI:

Q. You do realize that this --

A. Yes, I do.

Q. And so he can't instruct you on whether or not to answer, but you need to answer the question.

A. Well, I forgot the question already.

MS. PUDLOWSKI: Are you able to repeat it back?

(The requested portion of transcript was read back by the court reporter.)

MS. PUDLOWSKI: Ms. Austin, we'll try our best because I know it is just natural to kind of hop the conversation.

THE WITNESS: Yeah, yes.

MS. PUDLOWSKI: If you can really try to wait until I'm done --

THE WITNESS: Okay.

MS. PUDLOWSKI: -- talking.

BY MS. PUDLOWSKI:

Page 51

Q. So can you think of any reason based off your interactions with Dawn from after Robin's death up until that September 2021 why Dawn might fear having an interaction with you or being alone with you?

MR. KLAR: Objection, argumentative.

A. Dawn didn't like me because I knew the truth about what happened in Robin's apartment. Dawn told me what she did and what she didn't do, and she said I threw her under the bus because I wouldn't lie for her.

BY MS. PUDLOWSKI:

Q. Any other reason?

A. Gosh, I would think that would be enough. There was no way to predict what those people were thinking.

Q. All right. Moving on here. Prior to this case, had you had any prior involvement with plaintiffs' counsel, Brandon Klar, or his firm at all?

A. No.

Q. Okay. And since this matter have you had any involvement with plaintiffs' counsel or his firm beyond this case?

A. No.

Page 52

Q. Okay. Did they help you at all with your eviction by Maco?

A. No.

Q. Did they refer you to anybody for that?

A. No.

Q. Okay. And have they helped you at all with any police involvement you've had since this case?

A. No.

Q. Okay. All right. I'm going to hand you what has been marked as Exhibit -- I think we're on D. And this is the affidavit of Susan Austin that we received on this case. If you'd take a look at that, please.

If you go all the way through that. And my question to you is going to be have you ever seen that document before. And it's two pages, so take your time looking at it.

A. Yes. I've seen it before.

Q. Okay. And do you know who created that document?

A. Who created it?

Q. Yes.

A. The only name I see is the notary at Summersville. I wrote it. Is that what you

Page 53

mean?

Q. Yes.

A. Okay. No. I created it.

Q. Okay. So you wrote this?

A. Uh-huh.

Q. And when did you write it?

A. It looks like October 12 -- no. That's not right. October 12 -- nope. July 23, 2021.

Q. And did you have any help in writing that document?

A. No.

Q. Okay. You typed it up?

A. No. I didn't type it up.

Q. Okay. Who typed it up?

A. I don't know.

Q. Okay.

A. I wrote it. I'm trying to remember. I might have just done it on my phone. I don't remember what -- but I didn't type it up.

Q. Okay. So when you say you created this document, do you remember when you first created this document?

A. Right around July 23. It was soon after Robin died.

Q. And why did you create this document?

14 (Pages 50 - 53)

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                                                 973-410-4098

A. Because I knew they were lying. I knew the truth and I wanted to help -- I didn't want to see robin die for nothing, you know.

Q. Did anybody ask you to create this document?

A. I talked to Robin's family, and we discussed it. But I was more than happy -- I wanted to do it.

Q. Did Robin's family have any input into what went into this document?

A. No. This is all me.

Q. Okay. So when you wrote this document, it says affidavit of Susan Austin. You know what an affidavit is?

A. Yes.

Q. And you were the one who wrote these bullet points one through 10?

A. No. I did not type up the paper. I didn't type that paper up.

Q. Okay. So I understand, the substance within, did you -- what did you send somebody to -- who did you send this document to?

A. I don't know if I sent it to Brandon's office or if I just sent it to Jen.

Q. Okay. And what did you send them?

A. What I had written, that.

Q. Okay.

A. But it was on -- I think I did it -- well, I could probably dig around on my phone and find it. I think I did it on my phone.

Q. Okay. So you think that you sent --

A. I don't remember.

Q. You think you sent them a text message with this information?

A. I honestly just don't remember how I did it.

Q. Okay.

A. But I was distraught. I mean this was soon after I watched Robin's body laying in her front yard and I can't -- my thought processes are a little strange because of that. I mean it was traumatic.

Q. Okay. So your thought process is a little strange because of --

A. No.

Q. -- that?

A. I mean I can't remember every little detail about how I wrote that.

Q. Okay. So what I'm trying to figure out then, since you -- at some point in time, you wrote something.

A. I wrote that, but I didn't type it up.

Q. And you wrote all these exact words?

A. Yes. As far as I can remember. But this is the Summersville city clerk that notarized it.

Q. So you wrote the exact words contained in Exhibit D at some point in time in July -- around July of 2021; is that correct?

A. Yes.

Q. Okay. And then what did you do with this writing?

A. Apparently I had it notarized.

MR. KLAR: I'm just going to object to --

THE WITNESS: Yeah. I'm confused.

MR. KLAR: -- the extremely --

THE WITNESS: She's confusing me.

MR. KLAR: -- confusing line of questioning. It can be clarified much more simply. Do you want me to offer clarification?

MS. PUDLOWSKI: Nope. I would like to keep questioning her on this.

MR. KLAR: I will --

MS. PUDLOWSKI: And then --

MR. KLAR: -- have a running --

MS. PUDLOWSKI: -- I need some --

MR. KLAR: -- objection to the extreme vagueness and ambiguity of the line of

questioning.

MS. PUDLOWSKI: That's fine.

BY MS. PUDLOWSKI:

Q. Okay. So, Ms. Austin, you wrote on some separate piece of paper or text message --

A. I don't remember.

Q. Okay. If you -- would you still have that text message to this day?

A. I don't remember.

Q. Do you still have text messages from June of 2021 on your phone?

A. Yes. I have a lot of text messages on my phone.

Q. Okay. Would you be able to look on your phone now and see if you still have the document?

A. I think the only one would be the -- from someone that received it. I don't remember all these -- I just don't remember.

Q. Okay.

A. I know I wrote -- these are my thoughts. These are -- this is what happened. I know that.

Q. Okay. Would you be able to look on your phone to see if there still exists this writing being sent to someone?

A. No.

15 (Pages 54 - 57)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Q. Why can't you --

A. Because --

Q. -- look on your phone?

A. -- I just got a new phone, and I haven't transferred any of the old records from the old phone. I just keep the old phone.

MR. KLAR: I'm going to also object to relevancy and asked and answered. She stated repeatedly that those are her thoughts in there. The line of questioning is confusing and is trying to mislead Ms. Austin to elicit some sort of testimony, and I think it's improper.

So that will be a running objection as far as any more questions are related to the affidavit of Susan Austin.

MS. PUDLOWSKI: That's fine.

BY MS. PUDLOWSKI:

Q. If there is another document out there that clearly states what it is that you stated or wanted in this affidavit that was sent to somebody, that would be clearly relevant, especially if it --

A. Oh, no.

Q. -- has contradicting --

A. That didn't happen.

Q. -- information.

A. That did not happen.

Q. So that's where this line of questioning is going. And so you're saying that you -- what is your phone number right now?

A. I didn't put it on my phone. I would not have put this much information on my phone.

Q. Okay.

A. I wrote it. I guess I write it on paper. But, like I said, I honestly don't remember.

Q. Okay. You wrote it on paper. And who do you think you gave that piece of paper to?

A. I don't know.

Q. Okay. Would you have given it to either Robin's family or to the attorney or someone else?

A. I more than likely would have probably sent it to the attorneys.

Q. Okay. What is your phone number currently?

A. Why do you need my phone number?

Q. What is your phone number currently?

A. 417-247-8832.

Q. And what was your phone number back in June of 2021?

A. The same number.

Q. Who was your provider?

A. US Cellular.

Q. And is it still them --

A. Yes.

Q. -- today?

A. Yes.

Q. And you said just about a month ago you got a new phone?

A. Yes.

Q. And you didn't like change the SIM cards or anything?

A. No.

Q. Do you still have the SIM card for your old phone?

A. The old phone, the screen was just demolished.

Q. Okay.

A. I do have the SIM card somewhere.

Q. Okay. And so if we put that SIM card into another, we might be able to find --

A. Probably --

Q. -- text messages --

A. Probably not.

Q. -- and interactions from June of --

A. Maybe my personal text messages.

Q. If you can wait until I'm done.

A. Okay. I'm sorry.

Q. Okay. Why -- personal text messages, yeah. Did you text Robin's family and Maco at all during June and July of 2021?

A. I talked to Robin's family a lot.

Q. Okay. And so might there be text messages between the two of you --

A. I don't know.

Q. -- on that SIM card?

A. I don't know.

Q. Okay.

MR. KLAR: Susan, I'd like to please remind you to just wait.

THE WITNESS: Okay.

MR. KLAR: She is asking a question. And I might have a follow-up question, so please give yourself --

THE WITNESS: I thought I would be good at that, but I'm not obviously.

MR. KLAR: It's harder than you think.

THE WITNESS: Yeah, it is.

MR. KLAR: Because it will make our court reporter's life significantly easier if --

THE WITNESS: Oh, I'm so sorry.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                        973-410-4098

Case 6:23-cv-03015-BCW Document 154 Filed 01/12/23 Page 214 of 786

BY MS. PUDLOWSKI:

Q. Looking at that affidavit, if you can take a look, does the information contained in that affidavit -- or looking at Page 2 of Exhibit D, did you -- is that your signature?

A. Yes.

Q. Okay. And do you remember swearing under oath that the information contained in that affidavit is true and accurate to the best of your knowledge in July of 2021?

A. I'm sure they would have asked me that when they notarized it.

Q. Okay. And looking at the information in there, is everything in there, still sitting here today, do you claim that all the information in there is true and accurate to this day?

A. Yes.

Q. Okay.

A. But there's --

Q. Is there anything in there that is no longer accurate or needs changed?

A. No. I just need to add a lot to it.

Q. Okay. All right. Tell me a little bit about what all have you reviewed related to this case since Robin's death? Well, let me just ask

it this way: Have you ever reviewed the pleading that states the claim in this case? Have you ever been provided that or looked at it?

A. I'm not even sure what that is.

Q. Okay. Have you reviewed any sort of documents related to this case at any point in time?

A. I've read everything I could find about it.

Q. Okay. And what have you read about it?

A. Well, I read the articles in the newspaper and just everything. I've read the HUD and USDA handbooks, and I've read about my rights that have been violated.

Q. What rights have been violated? What's your understanding?

A. Well, when you go without a bathroom for seven days in Missouri, legally your apartment is not habitable. They should have moved me if they weren't going to fix it. They should have moved me to a different apartment.

Q. And how -- when you read about your rights being violated, did you go get an attorney?

A. No.

Q. Okay. What did you do in response?

A. I wrote letters to the USDA and HUD and the

Division of Aging and Senior Services.

Q. And do you have a copy of those letters?

A. No.

Q. Where -- you didn't keep a copy of any of them?

A. Some of them I do. Some of them I don't.

Q. Okay. And was this all post Robin's death that you wrote these letters?

A. Yes. Because that's when all the trouble started.

Q. Okay. And did you ever receive a response from any of those entities?

A. I finally did, but when I called USDA, they said this was unprecedented. They'd never heard of it before, and they gave me the number to the director of the USDA who lives in North Dakota or South Dakota, but Maco had beat me to it. They had already called her.

Q. Did you call her?

A. Yes, I did.

Q. And what was her name?

A. I can't remember her name, the one -- the name he gave me, that woman was no longer there. And this woman had just been hired, and she'd never even been to Missouri. So she really

didn't -- wasn't much help. She was very nice but she had no help for me.

Q. Okay. And so this person that you called, do you know what the number was that they gave you?

A. Oh, my gosh. No, no. I've lost that, no.

Q. Okay.

A. It would be the director at the USDA if it's the same person.

Q. And how do you know Maco got to them first?

A. Because she told me.

Q. Okay. So she said Maco got to me --

A. She's said --

Q. -- first?

A. Kari Murphy or Marie called her first.

Q. Okay. And what did Kari Murphy tell her?

A. That I was a bad tenant and I was harassing them. But they would also -- like when I would call USDA or HUD to complain about I needed a toilet, they would have to call Maco management and talk to them first.

Well, Maco would tell them this issue has been resolved, there's no more problem, and that simply wasn't true. And I finally have proof of that now.

17 (Pages 62 - 65)

EXHIBIT A - STATE COURT FILE

Case 6:23-cv-03015-BCW   Document 19-1   Filed 01/12/23   Page 215 of 786

EXHIBIT A TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                                973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 66

Q. And what proof is that?

A. The USDA, I called them and said what about the mold in my apartment, and she told me that Maco management said there was no mold, it had all been resolved. Then Maco came the very next day and banged on my window so hard the curtains fell off the wall to take care of the mold in my apartment. So she lied to them and said it was already taken care of, and obviously it never was.

Q. So what's the proof that you have?

A. I bought a mold test. Oh, the proof that they lied?

Q. Yes.

A. I have a letter from USDA saying they told them that this issue was resolved and taken care of, and they never heard form me anymore. And then they came to my apartment the next day to take care of it, so it had -- they told them it was taken care of, but it never was.

Q. And so do you still have that letter to this day?

A. Yes, I do.

Q. Okay. And so is it your understanding that the USDA just takes whatever Maco says, their

Page 67

word and doesn't ever --

A. They did in that case, yeah.

Q. Okay. Did you ever follow up with the USDA to give them your version?

A. Yes.

Q. Okay. And how did you do that?

A. I sent them another e-mail.

Q. Okay. And did you ever get a response?

A. Just the e-mail that said they said it was taken care of, and it wasn't. They sent me that back and said according to Maco, this issue has been resolved.

Q. Okay. And did you file a follow-up complaint after that or did you just --

A. I talked to them after that.

Q. Okay. Is that when you talked to the director?

A. No. I talked to the director the first thing.

Q. Okay. And so who did you talk to after that?

A. I don't -- I can't remember her name.

Q. Okay. And what did she say?

A. She said that they lied to her and told her the issue had been resolved, and it wasn't.

Page 68

Q. Okay. And so then what did they do? When they found out they had been lied to, what did the USDA do about it?

A. They didn't do anything. I hotlined them, and the Fair Housing Act is investigating.

Q. How do you know the Fair Housing Act is investigating?

A. Because I filed a hotline complaint with the Fair Housing Act.

Q. Okay. And when was that done?

A. Oh, gosh. I've been doing that ever since the retaliation problems started, and I wasn't safe in my own home. And I couldn't -- I didn't have any way to leave at that time.

Q. Okay. And when was that?

A. Right after Robin died.

Q. Okay.

A. It started then, right after.

Q. Okay. So you started filing complaints with the Fair Housing Act after Robin died?

A. I filed complaints with anybody that would listen.

Q. Okay. And has any of the people -- you filed with the Fair Housing Act; correct?

A. Uh-huh.

Page 69

Q. HUD; correct?

A. Uh-huh.

Q. USDA?

A. Uh-huh.

Q. Any other agency?

A. The Division of Aging.

Q. Division of Aging. Anybody else?

A. Not that I can think of because a lot of them were repeat letters.

Q. Okay. And you filed multiple complaints with all four of those entities?

A. I kept in touch with them.

Q. Okay. And do you have any record of your complaints with any four of those agencies?

A. Yes.

Q. Okay. So if I were to ask the attorney to subpoena you for those records, you could provide them?

A. Hopefully, yeah.

Q. Okay. And from all those complaints that you have filed with these four agencies, have any of those agencies ever responded to your complaints?

A. At the last -- yeah. Right before I was evicted, they started getting back to me, like

18 (Pages 66 - 69)

the hotline.

Q. And who got back with you specifically?

A. That was the USDA hotline, I believe.

Q. Okay. And how did they get back with you?

A. In the e-mail.

Q. And do you have that e-mail still?

A. Yes.

Q. And what did the e-mail say?

A. It said they were under investigation.

Q. Okay. And then how did that investigation turn out? What was --

A. Well, it --

Q. -- the outcome?

A. -- isn't finished. It isn't finished.

Q. And how do you know it isn't finished?

A. Because they haven't sent me a result yet.

Q. Okay. And when is the last time you've had any contact with the USDA about this investigation?

A. A couple weeks ago.

Q. And how -- what was that contact?

A. Apparently they dropped the ball. It was all e-mail. They dropped the ball after my first complaint. Because, like I said, Maco would say there is no issue or the issue is resolved.

So some of these things I had to go a second time and get it going again because they just now started the hotline investigation again.

Q. So the USDA sends you an e-mail saying they're under investigation. Then it's your understanding the USDA sends you an e-mail that they dropped the ball?

A. It was the hotline number that I called.

Q. Okay.

A. They didn't pursue the complaint until just when things started making more sense to everybody.

Q. When did they start pursuing a complaint?

A. I first sent it not long after the fire and then I talked to -- I asked for the results a few weeks ago, and there wasn't any but they -- apparently they dropped it, and they didn't do any investigating, but they are now.

Q. Who told you they dropped the ball and didn't do any investigation?

A. I said they dropped the ball because they couldn't give me results. And after almost a year, they probably should have had some results.

Q. Okay. Did the USDA ever tell you they didn't do any investigation?

A. No. They didn't say that.

Q. Okay.

A. They admitted to not finishing.

Q. Okay.

A. Or maybe it does take this long. I don't really know.

Q. And you contacted them by e-mail recently within the last couple weeks?

A. Yeah. I wondered about the results.

Q. Okay. And do you have that e-mail?

A. I'm pretty sure I do.

Q. Okay. And what is your e-mail address?

A. S-a-u-s-t-i-n 4853@gmail.com.

Q. Okay.

A. Now, nobody is going to hack into my phone or anything, are they?

Q. I'm certainly not going to. That's against the law so I'm not --

A. Okay.

Q. Other people might but not me. Okay. So if I asked for all your e-mails from that address to the Fair Housing or these different people, you could look through and provide those?

A. If there was a subpoena and a reason that you have to have them, I would, yeah.

Q. Okay. And is there any reason why those wouldn't be within your e-mail account?

A. Well, sometimes I accidently delete everything.

Q. Okay. All right. And so you're saying that you e-mailed them recently, within the last couple weeks, and did they provide a response to you?

A. Yes.

Q. Okay. And what was the response?

A. That the hotline investigation is currently being handled.

Q. Okay. And do you know what was the basis of the hotline that they are investigating? What's the complaint?

A. Well, let me see. The first thing was when my bathroom flooded, I called the emergency maintenance after-hours number, and nobody answered it.

Q. Okay.

A. So the next day -- 16 hours later, because I didn't have a toilet, I was getting nervous, Dawn knocked on my door and said that I had been blocked from the emergency maintenance number.

Q. And tell me your understanding of why you

19 (Pages 70 - 73)

Case 6:23-cv-03015-BCW Document 137-1 Filed 09/12/23 Page 217 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 74

had been blocked from the emergency --

A. It was --

Q. -- maintenance number.

A. -- just retaliation because I was not going to let them do these things to me. I mean they did. They're not going to get away with it.

Q. Okay. And your only understanding of why they blocked your number is because of retaliation?

A. Absolutely.

Q. Okay.

A. And she also -- I couldn't do laundry.

Q. And so the purpose of the most recent hotline was involving the bathroom incident?

A. And everything else.

Q. Okay. Going back -- we might get back to this later on. Have you talked about -- you've tried to review everything you can find on this case. So newspapers, right, all that kind of stuff? Have you ever seen the police report related to this incident?

A. No.

Q. Okay. Have you ever seen the fire marshal's report related to this incident?

A. No.

Page 75

Q. Have you ever seen the coroner's report related to this incident?

A. No. I heard the coroner. I was there, but I haven't seen any written paperwork.

Q. Okay. And have you ever reviewed Robin Fisher's tenant file with Maco at all?

A. No.

Q. Okay. Have you ever seen her lease or unit inspection reports before?

A. We all had the same lease, but everybody had different rules so --

Q. Okay. Have you ever seen Robin Fisher's lease?

A. No.

Q. Okay. Have you ever seen Robin Fisher's unit inspection reports?

A. No. You don't even get to see your own.

Q. Okay. And have you ever been provided any documents from Mr. Klar or his office related to this case?

A. No.

Q. Okay. Have you ever been provided any documents from Robin's family related to this case?

A. No.

Page 76

Q. Okay. So when you talk about you've read up and done investigation on this case, that is things that you have found out that are kind of public information based off your own research?

A. Some of them.

Q. And what would be the others?

A. I did a lot of research on all the lawsuits that Maco has to see if any --

Q. Okay.

A. -- compared to Robin's.

Q. Okay. And, again, those would be public records that you have found?

A. Correct.

Q. Okay. And where did you find those public records?

A. On the Internet.

Q. Okay. And where on the Internet?

A. Well, if you Google Maco management, the Better Business Bureau automatically pops up, and they have a lot of information about this.

Q. Okay. All right. In any event, tell me a little bit about your relationship with Robin Fisher in the years before her death.

A. We were friends. We did a lot -- we did everything together. She didn't have a car, and

Page 77

I did, and we would go on day trips. I took her to the doctor. I took her to the Pain Clinic in Springfield. She went with me to Rolla one time because I had to test out of something I was doing for work. And just, you know, we would eat out, go for rides. Neither one of us had much money, so we didn't, you know, take weekends anywhere so -- and Robin did not have cancer.

Q. Okay. So you and Robin -- how soon after Robin moved into Summersville Estates do you think you guys became friends?

A. She lived there before me.

Q. Okay.

A. She lived there when I got there.

Q. Okay. And so when did you guys first meet up and become friends?

A. Oh, right away, maybe a month or so.

Q. All right. And you said you had a car and she did not; correct?

A. Uh-huh.

Q. Okay. And so you said that you guys did everything together?

A. Uh-huh.

Q. Okay. How often do you think were you guys in contact with each other?

20 (Pages 74 - 77)

EXHIBIT A - STATE COURT FILE

EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

A. Every day.

Q. Every day?

A. Uh-huh.

Q. Did you guys ever talk on the phone to each other?

A. Oh, my gosh. Robin loved talking on the phone. I don't. So we compromised on that.

Q. And what do you mean by you compromised on that?

A. I like to message and she liked to talk.

Q. Okay. So when you --

A. Sometimes we'd do both.

Q. So when you say message, do you mean text message or --

A. Yes.

Q. -- something else?

A. Text message.

Q. Okay. So in the year prior to her death, how often do you think you guys talked on the phone?

A. After Covid came Robin had respiratory -- some respiratory issues and, Covid, she did not come out. She was afraid and I didn't blame her. So it slowed down unless, you know, Downton Abbey had a big crisis, and then we talked about that.

Q. You a Downton Abbey watcher?

A. Oh, yes.

Q. So then in the year, though, before her death, how often do you think you guys were talking on the phone?

A. Every day.

Q. Okay. Every day?

A. Uh-huh.

Q. And that would either be through phone calls or text messages?

A. Yes.

Q. Okay.

A. Or I would just go over there --

Q. Okay.

A. -- or she would come over to my apartment.

Q. Okay. And when you say you guys talked on the phone every day, was that then using the number that you gave us before?

A. Uh-huh.

Q. Okay. So if we have her phone records, we should see your number being called to her number almost every day?

A. Uh-huh.

Q. Okay.

A. If the weather was nice, we just got

together. We didn't bother with the phones.

Q. How often did she come over to your apartment in the year before her death?

A. I have no -- I have no idea. I can't tell you.

Q. Okay. Had she ever been inside your apartment?

A. Oh, yeah. Yeah.

Q. Was it a daily thing? Monthly?

A. No. She didn't get out that much.

Q. Okay.

A. If she would come and do laundry, my apartment was right next to the laundry facilities, and she would come over when all her clothes were washed.

Q. Okay. Did you ever go in her apartment in the year prior to her death?

A. A few times, yes.

Q. Okay. And tell me about -- when do you think was the last time you went in her apartment prior to her death?

A. There's no way I can remember that.

Q. Do you think it would have been in a month, two months before her death?

A. It wouldn't have been two months. Maybe a

month. I don't know. Nobody went in anybody's apartment when Covid was going so strong.

Q. Okay. And tell me, from -- did you note -- or describe the last time you were in her apartment. Tell me, how would you describe the apartment condition? What do you remember about it?

A. Well, I didn't, you know, do any kind of inspection or anything. It looked like it was one of the apartments.

Q. What do you mean it looked like one of --

A. They all --

Q. -- the apartments?

A. They all look the same.

Q. Okay. Did you notice or did you feel her apartment was at all in any sort of disarray the last time you went inside of it?

A. It wasn't perfect.

Q. Okay.

A. But nobody else's was either. I didn't dwell on things like that.

Q. Did you find anything in her apartment in this month or two that you were in before the fire that made you concerned that her apartment was unsafe?

21 (Pages 78 - 81)

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Case 6:23-cv-03015-BCW   Document 18-1 Filed 01/12/23   Page 219 of 786

800-567-8658                                           973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

A. Just the same with every apartment. None of us had -- or I didn't have smoke alarms. I didn't ask Robin if she did. But, you know, what was the point?

Q. All right. When you went in her apartment the month or two before, do you recall seeing the smoke alarms in her apartment?

A. I don't -- I didn't look for them.

Q. Okay. So sitting here today, do you know whether or not smoke alarms or do you have any personal knowledge -- can you say from personally seeing whether or not her smoke alarms were up prior to --

A. They were up, but that doesn't mean they were working.

Q. Okay. Do you recall them being up?

A. Yes. They were up because they all go up in about the same place in all the apartments. Mine -- I mean mine were up, but they didn't have any batteries in them.

Q. So you recall her smoke alarms being up in the month or two before, but you're not sure if they were working or not?

A. I'm not sure if anybody's was working.

Q. Other than the smoke alarms, though, did you

have any other reason to think or have concern that Robin's apartment unit was unsafe in the month or two before --

A. I can't answer that. It wasn't unsafe to me.

Q. All right.

A. I'm not -- I don't feel like I can judge anybody like that.

Q. Would you describe her apartment as clean?

A. It wasn't filthy, no. It was -- yeah. I would describe it as cluttered.

Q. Cluttered? Okay. Have you ever seen those Hoarder shows before?

A. Yes.

Q. Okay. Would you describe her unit in the month or two before the fire as being a hoarder unit?

A. It was a little bitty apartment, but nobody is perfect.

(Court reporter interruption.)

(Short recess was taken.)

VIDEOGRAPHER: Back on the record at 12:02.

BY MS. PUDLOWSKI:

Q. All right. Ms. Austin, we are back on the record after dealing with some fun technology

glitches again. So all the rules that I talked about before with you being under oath and trying to wait until my answers are done, all of that still applies. Okay?

A. Uh-huh.

Q. So I think we're going to try to start where we left off. And I think the question to you is I'd asked, have you ever seen any of those hoarding shows before?

A. Just flipping through. I never watched a whole one.

Q. Okay. Would you describe Ms. Fisher's apartment as a hoarder apartment when you last saw it in a month or two prior to her death?

A. If you're comparing it to the TV show, no, it was not like that.

Q. Okay. Was there anything about the condition of her apartment that gave you concern that you think maybe you needed to notify her family?

A. No.

Q. Okay. Anything about the condition of her apartment that caused you concern where you think maybe you needed to call adult or elderly services at all?

A. No. But I'm not -- I didn't go in her apartment to judge her on how she lived her lifestyle. I can't -- that's not me. I'm not going to do that.

Q. Okay. And I'm not asking for judgment. I'm just asking, was there anything based off your observations of the condition of her apartment that caused you concern where maybe you thought you needed to --

A. Not on the surface that I could see. I don't know what was underneath.

Q. Okay. And did you go into her bedroom at any point --

A. No.

Q. -- in time? Okay.

A. Not that day. I'd been in her bedroom before, but a long time ago.

Q. Okay. And when you went into her home, did she have clear pathways throughout the home?

A. Oh, yes.

Q. Okay. Do you recall whether Ms. Fisher smoked in her unit at all?

A. Yes, she did.

Q. Okay. And do you recall seeing any cigarette butts or cigarettes throughout her

22 (Pages 82 - 85)

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
Case 6:23-cv-03015-BCW Document 136-1 Filed 09/12/23 Page 220 of 786

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

apartment --

A. No.

Q. -- all the time?

A. She was careful.

Q. Okay. And what do you mean by she was careful?

A. She used ashtrays, and most of the time she smoked outside.

Q. After the fire did you ever go into her unit to see the condition of the apartment?

A. No. I saw pictures that Dawn took that she told me not to tell anyone she had them because she wasn't supposed to have them.

Q. Okay. And the pictures that you saw that Dawn took, describe -- what do you recall about those pictures? What did they show in the unit?

A. Total destruction.

Q. Okay?

A. Black. Everything was just black. The windows were busted out from the fire.

Q. Do you recall anything about the condition of her apartment being cluttered at all?

A. After the fire?

Q. Yes.

A. I didn't go in after the fire.

Q. From the photos.

A. I just saw the photos. No. I really actually -- I couldn't look at them.

Q. Okay. You couldn't look at them?

A. I didn't study them.

Q. And tell me, what was your understanding -- had you ever seen Robin smoke in her apartment?

A. Everybody smoked in their apartment. Dawn smoked in our apartment.

Q. Okay.

A. I mean it wasn't an issue for me.

Q. Did you ever see Robin smoke in her apartment?

A. I don't -- I don't remember if I did or not.

Q. So what is your basis of you knowing that she always used ashtrays and did it right?

A. Because there was a big one outside on her little patio full of cigarette butts.

Q. Okay. Anything else made you think that she -- or made you know that she did it right and always used an ashtray?

A. Well, every time we took a car trip, you know, she was very careful with her cigarettes. It wasn't an issue. I had never had a concern.

Q. So would you be surprised to learn that

there were cigarette butts all over her bedroom on the side of the bed without --

A. I don't know what happened after the fire.

Q. Okay.

A. She would never put a cigarette out on the floor if that's what you're -- if that's what that implied.

Q. Not implying anything. Just trying to get your information.

A. Okay. No. I never saw a cigarette butt on her floor.

Q. All right. And so in the month or two before you went into -- before her death, you never saw a cigarette butt on her floor --

A. No.

Q. -- at any time?

A. Never. Never.

Q. Okay. Would it surprise you if tenant John Alton(ph) testified that Ms. Fisher would not let people in her apartment --

A. I don't know.

Q. -- a year prior to her death?

A. There was a Carolyn Alton, and she had two sons. But John Alton?

Q. Uh-huh.

A. I don't know John Alton.

Q. Was there -- who are -- in these apartment complexes, did you live -- were they different buildings?

A. Yes.

Q. Okay. And in each building were there like four different tenants?

A. Right.

Q. Okay. Who were the tenants that shared the building with Robin Fisher? Do you know?

A. She had Lance nextdoor, Lance Alton next door to her, and then a girl named Tracy behind her, and the woman in the other apartment had recently died.

Q. Okay. And was that apartment then vacated at that time or empty, or do you know?

A. The one that died?

Q. Yeah.

A. At that time I believe it was.

Q. Okay. And how did that woman die?

A. I really don't know. I'm not sure. One of the other tenants was her power of attorney and made a will but I don't -- I knew she wasn't well, but I don't know her specific diagnosis.

Q. To your knowledge, it had nothing to do with

23 (Pages 86 - 89)

Case 6:23-cv-03015-BCW Document 13-1 Filed 01/12/23 Page 221 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 90

Maco or Summersville Estates of her death?

A. I don't know.

Q. Okay. Lance Alton then, would it surprise you if Lance Alton were to testify that Robin Fisher did not let people in her apartment in a year prior --

A. Nobody --

Q. -- to her death?

A. -- likes people coming in their apartment. That was an intrusion. I mean you wouldn't want someone coming in your house. It was a necessary evil. No. Of course not. I didn't want people in my apartment either, but there wasn't anything I could do it about it.

And Lance Alton, I lived there six years, I never spoke to him. He had PTSD really bad, and he was not friendly to me.

Q. Okay. Do you know if Robin and him were friends?

A. Yes, they were.

Q. Okay. Do you know if he were to testify not that she didn't like having Maco people in her apartment. She didn't like having anyone --

A. She didn't --

Q. If you could let me finish.

Page 91

A. I'm sorry. I'm sorry.

Q. Were you aware that Robin did not like letting anyone in her apartment the year prior to her death, even friends?

A. I had seen friends come and go out of her apartment many times.

Q. Okay. And what other friends did you see in a year prior to her death coming and going in and out of her apartment other than you?

A. I don't feel comfortable putting anybody's name on this, but these people didn't have anything to do with the fire. And I don't even know if I remember their names.

Q. Okay. Well, tell me what you --

A. Two Mexicans, but that's all I remember. They drove a red truck.

Q. Two Mexicans that drove a red truck. Do you recall if they ever went in and out of her apartment --

A. Yes, they did.

Q. -- in the month or two --

A. Oh.

Q. -- prior to her death?

A. I'm sorry. I didn't know in the month or two prior --

Page 92

Q. Okay.

A. -- because --

Q. Go ahead.

A. -- Robin had a problem pregnancy --

Q. What's that?

(Court reporter interruption.)

A. -- that consumed the whole family in the month prior to her giving birth, and the baby died. So I don't feel right speculating on it. When I talked to Robin about it, she just was very tearful and cried. We talked about it. We didn't talk -- I don't know who was in her apartment.

BY MS. PUDLOWSKI:

Q. You said, though, that you saw friends come and go from her apartment often in the year prior to her death; is that --

A. In the --

Q. -- correct?

A. -- years prior, yeah.

Q. In the years prior to her death? Okay. Do you recall seeing anybody coming and going in her apartment in the two months prior to her death?

A. No.

Q. Okay. But it's still your testimony that

Page 93

you were in her apartment in the month or two prior to her death?

A. I believe I was. I can't give you an exact time or date.

Q. All right. And then talking -- Lance Alton was a friend of Robin's; correct?

A. I believe so.

Q. Okay. But he had PTSD and never talked to you?

A. His mother explained his PTSD issues to me. And, no, he never talked to me.

Q. Okay.

A. He never had any friends over.

Q. Do you know if he ever took Robin to the grocery store or to doctors' appointments or anything --

A. I don't know.

Q. -- like that?

A. I don't know if he did or not.

Q. Okay. Tell me, did Ms. Fisher have any physical limitations to your knowledge?

A. She had sciatica, and she sometimes walked with a cane.

Q. So she had sciatica and she sometime walked with a cane?

24 (Pages 90 - 93)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                                                973-410-4098

A. And towards the end she used it a lot.

Q. What do you mean towards the end?

A. The end of her life.

Q. And how do you know she had sciatica?

A. She told me.

Q. Are you aware of any other physical limitations beyond the sciatica?

A. No.

Q. And when you say she sometimes walked with a cane, is that because you had seen her walk with a cane?

A. Uh-huh.

Q. Okay. And in the last couple months of her life, did you ever see her not use the cane?

A. Uh-huh. Her doctor suggested that she keep it close by.

Q. Do you know if she was on any medications at all?

A. She was on medication, but I don't know what they were.

Q. Did you ever take her to get her prescription medications at all?

A. Yes.

Q. Do you know if she ever ran out of her medication or was known to run out of her

medications before the end of the month?

A. If she did, we just went and got them.

Q. Was there any discussion with Robin that she would run out of her medications and take most of it in the beginning of the month?

A. No. I'm not aware of that.

Q. Okay. Did you notice any difference in her physical limitations as the month went on?

A. No.

Q. Okay. Do you know if the medications at all limited her physical limitations at all?

A. No.

Q. You don't know or --

A. No.

Q. -- no, they did not?

A. I didn't see that.

Q. Okay. Did Robin ever have a caretaker at any point in time in the year prior to her death?

A. Not in the six years I knew her.

Q. Okay. And so was it your understanding that she was able to live independently on her own in that unit?

A. Yes.

Q. Okay. Did you know her to be able to take care of her -- be able to cook meals for herself?

A. She was an excellent cook.

Q. Okay. And was it your understanding in the years and months prior to her death she was able to clean up after herself?

A. She had a young girl come in and help her sometimes, like help her with her stuff.

Q. She had a young girl? Do you know who that girl was?

A. No. I don't remember her name.

Q. And do you know what that girl did for her?

A. I think it was just mainly housework, maybe laundry. I'm not really sure.

Q. Okay. So was that a girl who lived in the apartment complex --

A. No.

Q. -- or -- okay. Do you know how Robin was connected to that girl?

A. She knew her mother.

Q. Okay. Did anybody else use this girl in the apartment complex?

A. No.

Q. Okay. And was it your understanding that Robin hired this girl because she wasn't able to do tasks herself, or what was your understanding?

A. We didn't discuss it.

Q. Okay. In the month or two before her death, was it your understanding that Robin was able to move around her house without any assistance?

A. She might have used her cane. I don't know.

Q. Do you know if in the year before her death Robin was ever able to change her own smoke alarm?

A. We weren't really supposed to do that.

Q. Okay. Do you know if Robin ever took down her smoke alarm?

A. No. I don't think she -- we never discussed it, but I don't think she could have. She couldn't have done it.

Q. Why couldn't she have done it? What was your understanding?

A. Well, for the same reason I couldn't. I had to climb on cabinets to get to mine, and it wasn't safe. And there's -- and I was more -- I had more mobility than she did. There's no way she could have climbed on anything.

Q. Okay.

A. And -- no.

Q. Did she have any steps going up and down to her unit at all?

A. No.

25 (Pages 94 - 97)

Case 6:23-cv-03015-BCW Document 131 Filed 01/12/23 Page 223 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                                    973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 98

Q. Okay. Do you know if -- well, you smoked inside your apartment; correct?

A. Correct.

Q. Okay. Did -- while you smoked inside your apartment, did the smoke alarms ever go off at any point in time over the years?

A. No.

Q. Okay.

A. When I cooked sometimes if they were working.

Q. Sitting here today, do you have any knowledge of whether Robin Fisher ever removed her smoke detectors in the month or two prior to the fire?

A. I can bet my life she never removed her smoke detector.

Q. And what's the basis that you can bet your life on that?

A. She couldn't physically do it. They were up high. She would have had to have a ladder. She wasn't -- she wasn't stupid enough to try to climb a ladder.

Q. Okay. Do you know if she could have taken a stick or a cane and jabbed up there to get it down?

Page 99

A. No. That wouldn't -- that wouldn't do it.

Q. And why do you know that wouldn't do it? Have you tried that before?

A. Because when I tried to fix my own, it -- they were a lot more harder than it used to be. They're not as simple as they seem.

Q. So you actually have gotten up and tried to --

A. I've tried to.

Q. -- fix your smoke alarm?

A. I'm sorry. It's not my job. That's what those inspections are for. They're supposed to check for smoke alarms, and I wasn't going to take a chance on falling off the cabinet and breaking a hip, so I just didn't worry about it. I told her that they weren't working. I told Dawn.

Q. But you said one time you got up there and were trying it, and it was hard to get down.

A. There is a part you attach to the wall and then a part you take off. But the batteries, it's not -- I took one look at it and thought I'm not going to worry about this. It's not my job and I don't -- I didn't really know how to fix it.

Page 100

Q. So there was one on the wall that's reachable?

A. No. You've got to climb. They're up towards the ceiling.

Q. So was there a time that you climbed and found out that it was too hard?

A. Yes.

Q. Okay. And when was that?

A. That was probably right after -- probably four years ago.

Q. If Dawn -- or Lance Alton were to testify that Fisher, Robin Fisher had reported to him that she removed the smoke detectors from her home so that she could smoke, would that surprise you?

A. That would be a lie.

Q. Okay. And why do you know that would be a lie?

A. Because she -- number one, she wouldn't have done it. And, number two, she's not -- she wasn't physically capable of doing it.

Q. And do you have any other basis for why she wouldn't have done it other than what we've already talked about?

A. I can't think of a reason. Well, they beep,

Page 101

beep, beep, constantly, and that's annoying. But she wouldn't have done anything to the smoke alarm, no.

Q. You say they beep, beep, beep constantly.

A. Well, when the battery is low --

Q. Uh-huh.

A. -- you know, they beep, and then a few minutes later they beep. It's just annoying or it annoyed me.

Q. And so when they beep constantly like that, what did you do?

A. That's when you tell the property manager that your smoke alarm needs to be looked at and some new batteries put in.

Q. And then would the property manager come, or would it just keep beeping?

A. She never came.

Q. Okay. So then what happened to the beeping?

A. You either discussed -- you either put up with it or you didn't. I don't -- I don't know what most people did.

Q. And so in your case, though, you said it kept beeping so you called the property manager; correct?

A. Right.

26 (Pages 98 - 101)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
Case 6:23-cv-03015-BCW Document 136 Filed 09/12/23 Page 224 of 786
800-567-8658                973-410-4098

Q. Okay. She never comes. So what --

A. Right.

Q. -- do you do?

A. I don't remember what I did. I guess I put up with it.

Q. So it's your --

A. It was fours years ago. I can't really remember. They didn't work for years.

Q. Okay. And so did the beeping ever eventually stop?

A. It -- yeah. Eventually, the battery will just completely go dead.

Q. And then you never followed up after that?

A. Well, I told Dawn.

Q. Okay. And what did Dawn do?

A. Nothing.

Q. And so did you just leave your home with the smoke detectors not working?

A. Did I leave my home?

Q. Leave your unit, leave -- did you just let the unit have unworking smoke detectors then?

A. It wasn't my responsibility to make them work.

Q. So my question is when Dawn didn't do anything, did you do anything in response?

A. No. There was -- I wasn't -- she told me not to. She told me to not climb up there and test the smoke alarms.

Q. Okay. So she -- it's your testimony that Dawn refused to change the batteries for the smoke detectors; correct?

A. Right.

Q. And it's your testimony that Dawn then told you you are not allowed to touch the smoke detectors --

A. She caught --

Q. -- correct?

A. -- me on the cabinet one time four years ago climbing on the cabinet. And if I fell and got hurt, then actually it would be her responsibility.

Q. And so she told you not to touch the smoke alarms?

A. Don't climb up there and replace the batteries, so I never did.

Q. So when she told you not to climb up there and touch the batteries, was that in response to watching you climb up there, or was that in response to when they weren't working? When did she tell you that?

A. I don't know. Like I said, it was right after she started four or so years ago. I can't remember the conversation.

Q. And the time she caught you on the cabinet, was that the same time we were talking about earlier when you got on the cabinet and tried to --

A. I don't remember. I don't remember.

Q. And so at some point Dawn tells you don't touch the smoke alarms. It's your testimony; correct?

A. At some point someone was with her. I don't know if she was training someone or if it was someone from Maco following her around. So that's all I remember about the whole thing.

Q. So you -- early on living at Maco -- okay. You're in a unit that has no working smoke detectors --

A. Uh-huh.

Q. -- correct?

A. Uh-huh.

Q. You have knowledge of that; is that correct?

A. Yes.

Q. And the property manager is telling you you are not allowed to touch the smoke detectors. Is

that your testimony?

A. That's the way I remember it.

Q. Okay. And the property manager is also telling you that she refuses to replace or get the smoke detectors fixed --

A. She --

Q. -- correct?

A. -- didn't say it like that. She would say I'll be back tomorrow or next week and then of course -- my baseboard heater didn't even work, so I don't think she was too concerned with the smoke alarm.

Q. So she never said she wouldn't. She just kept telling you she'd be back to do it?

A. Right.

Q. Okay. And years passed --

A. Right.

Q. -- and she never came back. Is that your testimony?

A. She came back for different reasons, but she never fixed them.

Q. Okay.

A. She never fixed the baseboard heater.

Q. So for years your smoke detector sat there not working; correct?

27 (Pages 102 - 105)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658          973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

A. Correct.

Q. And you never -- did you ever make a complaint then to somebody above Dawn or talk to somebody above Dawn?

A. Not about that, no.

Q. Okay. And tell me your reasoning on why you never made a complaint or talked to someone above Dawn about that?

A. Why didn't I?

Q. Uh-huh.

A. I just tried to follow the chain of command and do the right protocol. The property manager, surely she had enough brain to change the batteries in the smoke detectors. Because she didn't want to do it, I don't know why. That wasn't my problem. She didn't want to do anything actually.

Q. So it was your position you would prefer just not saying anything and living in a unit without working smoke detectors for years than --

A. I did tell her. I did tell her over and over. If she chose not to fix them, that's not my problem. That's her problem.

Q. Okay. But it's your testimony you never notified anybody else from Maco about this?

A. No.

Q. Did you notify anybody else from Summersville about this?

A. Like who?

Q. I don't know who.

A. I mean the neighbor or, you know, the lady that works at the grocery store about my smoke alarm. No, I didn't discuss it with anybody that I can remember.

Q. Okay. So did you know if anybody at Maco had any knowledge of what Dawn was doing or that this was an issue?

A. They had to.

Q. And how did they have to?

A. Because they had to come and watch her, what she does, like her supervisor. And according -- and they had knowledge that her type of work was not done correctly --

Q. All right.

A. -- or on time.

Q. All right. So there's two things there. Number one, you said they had to watch her.

A. No. I just mean occasionally.

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. And did a supervisor ever come or was a supervisor ever present during one of these encounters that you know of where the smoke detectors weren't working?

A. They were in there when they weren't working. But they didn't ask me about them, and I didn't say anything about it.

Q. And who was the supervisor you recall being present?

A. I don't remember her name. It was someone to come and inspect an apartment. So Dawn asked me if they could look at mine, and I said sure. But they never -- they came in and stood right inside the door, and they never looked at the apartment.

Q. And was this before or after Robin's death?

A. I think this was before.

Q. Okay. So you recall on at least one instance Dawn comes out to inspect the home, and a supervisor is with her?

A. Yeah. The supervisor is there to inspect an apartment, any apartment, just pick one, and they picked mine.

Q. Okay. And they picked your apartment?

A. Uh-huh.

Q. Okay. So a supervisor is there, but you don't know her name?

A. I could find out. Casey maybe. I don't really know. Basically people didn't work there very long. They changed hands so often, it was hard to keep track.

Q. So there's some supervisor out there with Dawn; correct?

A. Uh-huh.

Q. And it's your testimony that the supervisor never came in your apartment?

A. She came in the door.

Q. Okay. And did Dawn come in on that occasion?

A. Uh-huh.

Q. Did Dawn complete an inspection on that --

A. No.

Q. -- occasion?

A. No.

Q. Okay. Did Dawn look at the smoke alarms or detectors on that occasion?

A. No.

Q. Okay. And did Casey say anything about that?

A. No.

28 (Pages 106 - 109)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Case 6:23-cv-03015-BCW Document 136-1 Filed 01/12/23 Page 226 of 786

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 110

Q. Okay. And did anybody ask if your smoke alarms or smoke detectors were working on that occasion?

A. Not at that time.

Q. Did you at that point say anything to Casey or Dawn that my smoke alarms and smoke detectors aren't working?

A. I don't remember if I did or not, but Dawn knew. I had told her several times.

Q. But at that point -- so you're standing there with a manager of Maco; correct?

A. I really don't know what her title was.

Q. Supervisor --

A. I just know she was over Dawn.

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. So you're sitting at your apartment complex with somebody who was above Dawn; correct?

A. Yes.

Q. And this is before Robin's death; correct?

A. Yes.

Q. Okay. And at this point in time, your smoke detectors had not been working for years; is that correct?

A. Correct.

Page 111

Q. Okay. And you -- do you -- or tell me why you would not inform the supervisor at that point in time that your smoke detectors have not been working and she's refusing to change them?

A. You mean complain about Dawn to her supervisor --

Q. Yes.

A. -- at that point? It just didn't occur to me to do that. They came right back after the fire and inspected everyone's apartment. That's when I thought I'd get my baseboard heater fixed, which I didn't. And they didn't check the smoke alarms that day either, and it was all about fire safety.

Q. Okay. So you're saying even after the fire, they never checked smoke alarms?

A. No.

Q. Okay. So you said there was something, you had her -- you had her watch and then also there was paperwork of some kind.

A. She couldn't get her paperwork done on time.

Q. And you mean Dawn?

A. Yes.

Q. Do you remember any other time that anybody above Dawn ever came out to the Summersville

Page 112

apartment from Maco or Summersville prior to Robin's death other than this one time with Casey?

A. Rarely.

Q. Okay. And did you have any numbers for Maco or e-mail addresses for people above Dawn?

A. Just what's online.

Q. Okay. And did you ever make any complaints online about the issues that you had with your smoke detectors?

A. No.

Q. Okay.

A. I think -- I think I included it in things that I reported after the fire.

Q. Okay. But prior to the fire --

A. That's when the retaliation started.

Q. Prior to the fire, you never made those complaints?

A. No.

Q. Okay.

A. Just to Dawn.

Q. Tell me, did you have any contact with Robin on the day of her death?

A. No.

Q. Okay.

Page 113

A. A few days before.

Q. And what do you recall about your last contact with her?

A. It was all about Jen and the baby. And even though I was a nurse for so long, I wasn't familiar with the chromosome disease genetic issues that the baby had. And she -- Robin knew all about it, and she was explaining it to me. And we had made plans to try to do something to get away, you know, in the next few days.

MS. PUDLOWSKI: And you know what? I just remembered the court reporter needed a break. I started talking again. So I apologize, Roxann. We are going to go ahead and go off the record.

VIDEOGRAPHER: We're off the record at 12:29.

(Short recess was taken.)

VIDEOGRAPHER: We're back on the record at 12:44.

BY MS. PUDLOWSKI:

Q. Ms. Austin, we are back on the record. And, as I said before, all the rules still apply. You understand that you're still under oath?

A. Yes.

Q. Okay. And when we went off the record, we

29 (Pages 110 - 113)

were talking about your last contact with Ms. Fisher that you can remember, and you guys said that you were talking about her grandbaby that has passed away unfortunately.

A. Correct.

Q. Was this over the phone, in person, or something else?

A. In person.

Q. Okay. And was this outside the complex, in one of your units, or something else?

A. It was outside her door, outside her apartment in the lawn chairs.

Q. All right. Moving on, I want to kind of move to another topic here. We mentioned that you signed your lease with Maco -- would it have been around January of 2016?

A. I didn't bring a copy but it was -- it was -- yes, yes. It was January.

Q. And when you signed that lease with Maco, it was your understanding it was a low-income apartment complex; correct?

A. Correct.

Q. Okay. And so what did that -- what was your understanding of what that meant?

A. Well, I didn't have any money, so I had to

find a place that was cheap. And I qualified, so I moved in. At that time it was a nice place. At that time it was a good place to live.

Q. Okay. And when you signed this lease -- or let me scratch that, strike that for the record. Do you agree that Maco is not a nursing home?

A. No. It's not a nursing home.

Q. Okay. And do you agree that, I guess, Summersville Estates is not a nursing home?

A. It's a multifamily low-income housing property.

Q. Okay. And you agree that Summersville Estates was not an assisted living facility; correct?

A. Correct.

Q. Okay. And as part of your lease, do you remember agreeing to Maco's smoke alarm policy?

A. No. I don't remember.

Q. Okay. I am going to hand you what has been marked as Exhibit E. If you'd take a look at that for me, if you can read that over. This is Maco's smoke alarm policy.

A. Yes. But it doesn't always stay the same.

Q. Okay. So looking at Exhibit E here, okay, Maco's smoke alarm policy, is that your signature

at the bottom?

A. Yes.

Q. Okay. And can you -- do you see a date anywhere on this form?

A. January 15, 2016.

Q. Okay. Do you recall signing this smoke alarm policy back in 2016?

A. No.

Q. Okay.

A. And obviously I did, but I don't remember.

Q. Okay. And so is it -- looking at that, though, do you dispute at all that you agreed to the policy back in 2016 by signing that?

A. Not at all, but it's a different manager.

Q. All right. So do you agree that back in 2016 when you signed the lease, you agreed to abide by this smoke alarm policy that's set forth in Exhibit E?

A. Yes. When Ben Cochran was property manager, yes, I did.

Q. Okay. Now, you mentioned that this policy has not always been in place or that it's changed. Is that what you were saying?

A. Well, Dawn told me don't touch them.

Q. Okay.

A. But I signed this under -- when Ben was there so --

Q. And what is your understanding of that policy not being in effect anymore? When did it stop being in effect?

A. When Dawn took over.

Q. Okay. And so what was your understanding -- how did you know that the smoke alarm policy didn't go into effect or was no longer effective because Dawn took over?

A. When she said I will take care of the smoke alarms.

Q. Was there any other understanding or any other reasoning why you thought the smoke alarm policy never applied other than Dawn telling you she'll take care of the smoke alarms?

A. Correct.

Q. Anything else?

A. Not regarding smoke alarms, no.

Q. Okay. Did you ever sign a new document?

A. No.

Q. Did you ever get an e-mail or written communication about it changing?

A. No.

Q. Okay. So it's your testimony that the smoke

30 (Pages 114 - 117)

Case 6:23-cv-03015-BCW   Document 138-1   Filed 09/12/23   Page 228 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658          973-410-4098

alarm policy no longer applied because Dawn told you she would take care of the smoke alarms?

A. Yes.

Q. So I'm going to read the policy out loud to you. It says -- this is from Exhibit E. It is my responsibility to ensure that the red light on the smoke alarm is on at all times; clean, dust, and test the alarms on a regular basis as needed. Management recommends that this be done at least once a week to test it, press the button, and sound the alarm. Report to management if the units are not -- are not doing that. If the smoke alarms is or are disconnected or tampered by the resident, their family, or guests, the residents may be responsible for damages caused by a fire.

So anywhere in here does it say that you are responsible for changing the smoke alarms.

A. I didn't hear you say that.

Q. Okay. And so is it your understanding that this policy is more about you notifying them when the smoke alarms are not working?

A. I think it said to check the light --

Q. Okay.

A. -- if the light is working.

Q. Okay. But you don't think you had any obligation to notify Maco when the lights weren't working or the smoke alarm wasn't working?

A. No. Because --

Q. Because Dawn told you she would take care of it?

A. Yes.

Q. And when Dawn didn't take care of it, again, you do not think it was your responsibility to go any further to upper management?

A. Not for that. There was so many more serious issues to deal with.

Q. Okay. Do you have any personal knowledge as to whether Robin Fisher signed a smoke alarm policy with Maco?

A. I don't know.

Q. Okay. Do you have any -- do you have any personal knowledge as to whether Robin Fisher was ever told by Dawn that this policy no longer was in effect?

A. I don't know. I had never heard that before.

Q. Okay. I want to talk to you now a little bit about the quarterly inspections for your unit. Okay? I want to start with your unit

while living at Maco. You had mentioned, I think, that there were different property managers at times during your tenancy; is that correct?

A. There were four in six years.

Q. Four in six years is your recollection? Who are those four? Do you remember?

A. The first one when I first moved in -- it will take me a minute to think of his name. And then Ben Cochran, he was the best one. And then some girl named Michelle who didn't stay very long, and then Dawn.

Q. So there was somebody before Ben Cochran you think?

A. Just I got the apartment from him. He agreed to rent me an apartment, and then he was gone. I can't remember his name.

Q. Okay. And in looking at the Maco management smoke alarm policy that was signed in January of 2016 when your tenancy began, does that show the manager as being Ben Cochran at that time?

A. Yes.

Q. Okay. And so if there was somebody before Ben, would it have only been a couple weeks?

A. It was just like a matter of days.I rented

the apartment, and by the time I moved in, he was gone.

Q. Okay. So there was Ben, Michelle, and Dawn?

A. Right.

Q. Okay. Did the property managers prior to Dawn complete quarterly inspection?

A. Yes.

Q. And did those property managers check the smoke alarms as needed?

A. They checked everything.

Q. Okay. And did those property managers ensure that the smoke alarms were always working?

A. I didn't follow them around and watch them. But just by looking at stuff they're supposed to do, I think they were supposed to at least look at them.

Q. And during the time that those property managers were working at the complex, were your smoke alarms always working to your knowledge?

A. When Ben was there, they were.

Q. Okay. What about when Michelle was there?

A. I don't really remember. I don't know if she was even there long enough to do a three-month inspection.

Q. And did you -- did they ever provide you

31 (Pages 118 - 121)

Case 6:23-cv-03015-BCW Document 139 Filed 09/12/23 Page 229 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658 973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

copies of their inspection reports?

A. No.

Q. Okay. Do you have any reason to claim that they forged any inspection reports, these property managers --

A. No.

Q. -- prior to Dawn?

A. No.

Q. When do you think Dawn took over as the property manager?

A. Oh, God. I think she was there four -- I think she'd been there three or four years when I left. So it would have been -- I don't remember what it would have been. Let me see. I left in '21. The four years before that, '17. And 2017, but that doesn't seem right. I guess it was.

Q. Okay. And was there ever a time when Dawn first started that she was completing unit inspections? Was there ever a period of time of when she first started working, first six months, first year or any --

A. Well, everybody is different, you know. They just fall through months apart. So she would be doing them all the time. I don't know what she did outside of doing my apartment. I

don't know.

Q. So you were never present for any other tenant's inspection?

A. No.

Q. Okay. So all you can testify to is the inspections of your unit; correct?

A. Correct.

Q. Okay. Was there ever a time where she was completing quarterly inspections of your unit?

A. Yeah. She brought the paperwork in.

Q. So when she first starts, was there ever a period of time where she was doing the inspections to your satisfaction without --

A. She never did them. She was never thorough.

Q. Okay.

A. And she would have me backdate them because they were late.

Q. Okay.

A. And then the last one she did, she said she didn't have time to do mine, would I please sign it anyway because she had to finish Robin's.

Q. Okay. We're going to get to that one in a second. So it's your testimony, you're claiming that she would never do a thorough inspection and that she would have you backdate these inspection

reports because she was late; is that correct?

A. Correct.

Q. Okay. So when Dawn first starts, when she first starts doing unit inspections and starts coming out to your home, that first year that she's working, what made you think that they were not thorough inspections?

A. She didn't check anything.

Q. Okay. Did she actually come to the unit?

A. She came in.

Q. All right. And so she would come to the unit. She would come inside. Would she tell you I'm here for my quarterly inspection or --

A. Yes. And then she'd sit down and we would smoke.

Q. All right. Then you guys would sit down and smoke. She wouldn't check anything?

A. She would walk into every room, but she didn't like look at my toilet which I wish she would have. It might not have flooded.

Q. Do you know if as part of the quarterly inspections she was supposed to look at the toilet?

A. Well, she has to go in the bathroom and do things, so I mean I looked at it all the time. I

had the same toilet for six years. I never had any trouble. Then all of a sudden it was just -- it went crazy.

Q. Okay.

A. Two rooms flooded.

Q. So you recall her coming in, stating that she's doing a quarterly inspection; correct?

A. Uh-huh.

Q. You know that she did at least walk through the different rooms?

A. Yes.

Q. Okay. And do you ever recall a time where she actually looked at the smoke alarm?

A. I don't recall.

Q. Okay.

A. I just can't recall.

Q. Can you recall -- can you say for certain that she didn't look at them during the inspection?

A. I can't say one way or the other.

Q. Okay.

A. If she did look at them, she didn't spend much time looking at them.

Q. All right. So you can't say one way or the other what she did with the smoke alarms during

32 (Pages 122 - 125)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

these times she came into your apartment?

A. Correct.

Q. Okay. But then she would complete a written inspection report? Is that what would happen?

A. Yes.

Q. Okay. And then would you see the inspection report? Because she wanted you to backdate it; right?

A. Right.

Q. Okay. So every time that she came in, would she show you a piece of paper?

A. I had to sign it.

Q. Okay. And what do you recall seeing?

A. I never read them. I knew they weren't done right, so I wasn't going to waste my time. There was a checklist of things she was supposed to look at, and she documented that she did, but she never did. So why would I bother reading it?

Q. Okay. So you recall from the very start when Dawn starts in 2017, 2018, whenever it is, the very first time she comes to your apartment, she says I'm doing a quarterly inspection; correct?

A. Yes. She always -- they have to give us 24-hour notice before they enter our apartment.

Q. All right. So she comes in to do the quarterly inspection. You immediately know she's not doing it right; correct?

A. Correct.

Q. So you've only known her how long at this point in time?

A. I couldn't say. I don't know when she did her first one.

Q. Okay. And during that very first one, you weren't willing to sign the paperwork without looking at it knowing that it was done wrong?

A. Why would I bother to go through it when I know it wasn't done correctly.

Q. Okay. But you chose to sign off on that; correct?

A. Yes. I signed every one of them.

Q. Okay. And do you know that those reports went to Maco?

A. I don't know where they went.

Q. Okay.

A. I think she kept some in her drawer because immediately after the fire, they came and looked through every piece of paperwork that Dawn never filled out.

Q. Okay. And so was your first -- one of your

first encounters with Ms. Sims, you were signing off on an inspection report that you know is done inaccurately; correct?

A. Well, I wouldn't -- I couldn't swear to it. I just signed it. We didn't get a copy. You had to sign them or your life would be a living hell like she made mine. So you just learned to go along with them, with people like Dawn.

Q. Tell me, what do you mean? Why did you have -- how did you know you had to sign it or your life would be a living hell?

A. Because you'll get an eviction notice because you complained about the neighbor's dog or this or that or you parked crooked in the parking lot, you know. Just any little thing.

Q. Did anybody --

A. The power, the control she had.

Q. Did Dawn tell you that on this first encounter --

A. She didn't --

Q. -- that you --

A. -- have to. She displayed it all the time.

Q. So within the first couple months of her working there, you had already known that if you didn't sign this, she was going to do all of

these things such as get you evicted and --

A. No.

Q. -- call the police?

A. That's not what I meant. That's not what I meant.

Q. Well, tell me then. On that first encounter -- because that's what we're talking about.

A. I don't remember the first encounter. I don't remember.

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. But you do remember signing the inspection report knowing it was done incorrectly?

A. I signed anything she wanted me to sign to save myself because that's what I had to do.

Q. And during that first encounter with her, though, you already felt that you had to sign it or else there were going to be repercussions?

A. I believed that, yeah. I did believe that.

Q. And what was the basis of you thinking during that first encounter that there were going to be repercussions if you didn't sign it.

A. I don't remember the first encounter. I don't remember at all.

Case 6:23-cv-03015-BCW Document 131-1 Filed 01/12/23 Page 231 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                     973-410-4098

Q. Okay.

A. I knew the first day I talked to her, the first day I met her, I got an idea of her personality.

Q. So tell me about the first day you met her and how you knew of the first --

A. No. Because that's just my opinion. That's not -- that's just the way I thought.

Q. Well, I'm interested in your opinion. So tell me, the first day you met her, tell me about --

A. I used to --

Q. -- the first day --

A. -- hire people at the job I had. Of course, I'm older than her. She had on -- and, yeah, I shouldn't judge people by what they wear, but I do, especially because this was her first day on the job, and I thought she might want to impress people.

She had piercings in her face, you know, in her eyebrows and cleavage and mismatched tattoos all over. And I was just a little sceptical.

Q. And so the first day you met her, you knew that she wasn't going to be able to do --

A. No.

Q. -- her job?

A. I said I had an idea of what her personality would be like.

Q. And what was your idea of her personality from the first day you met her?

A. I really don't know how to put it in words. And my opinion, it's just my opinion. What does that mean?

Q. Well, I want to know your opinion of her the first day you met her.

A. I wouldn't have hired her. My opinion, I would not have hired her.

Q. Okay. And tell me, from that first encounter, why wouldn't you have hired her?

A. Because she had piercings all over her face, cleavage hanging out everywhere, tattoos all over her body. She's just not someone I would have hired for the job that I was hiring people for.

I don't know what their -- I don't know what Maco -- how Maco judges people but --

Q. And what job were you hiring for?

A. I was director of nursing, and I hired nurses aides --

Q. Okay.

A. -- and nurses.

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. Would you have hired her -- are you saying that you don't think Maco should have hired her as a property manager?

A. No. I don't -- I didn't say that. I don't know what her -- what she did previously. She may have had a lot of experience. I'm saying I wouldn't have hired her for a professional job --

Q. Okay.

A. -- that I hired people for.

Q. Anything other than her looks during that first encounter that made you know about her personality or wouldn't have hired her?

A. Just my opinion. I'm not a big tattoo fan, especially when it's just all over your body and they don't match. I've just got a thing about that.

Q. Okay.

A. And that's just so shallow. I can't help it.

Q. That's all right. You're entitled to your opinion.

A. Do you have any tattoos? I don't have anything against them.

Q. Anything else other than her appearance that gave you the opinion during that first encounter that she -- that you wouldn't hire her?

A. She was from Michigan with a man she barely knew and left her school-aged children behind, and I got a thing about that too.

Q. And when did you find that information out?

A. She told me.

Q. Okay. Did you hear that from anybody other than her?

A. No.

Q. Okay. And did she tell you that on the first encounter?

A. Close, close. Not the first day, I don't think, but soon after.

Q. Okay. Did she tell you anything else about her reason for leaving?

A. For leaving Michigan?

Q. Yes.

A. She talked about herself all the time. I can't remember everything she said.

Q. Okay. Anything else that gave you an indication during that first encounter that Maco shouldn't have hired her?

A. I don't know what Maco -- how -- what Maco

34 (Pages 130 - 133)

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                    973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 134

bases their hiring procedures on. I don't have any idea. I know that people don't work there very long but that -- I don't know. Like I said, that's jut my personal opinion, and it means nothing.

Q. Okay. And it's this encounter, though, that led you to think that there were going to be repercussions if you didn't sign the inspection --

A. No.

Q. -- report?

A. Not the first day I met her. Just as things went on and I saw what she did to other tenants.

Q. And what are you talking about? What did she do to other tenants?

A. She couldn't be friends with more than one tenant at a time. She had problems doing that. So if she was upset with a tenant that had like a lot of hanging bar baskets, she wrote a new rule that you cannot hang your baskets anymore, just things to irritate people.

Q. Okay. So she wrote a rule about hanging baskets?

A. Yes.

Q. What else do you recall her doing?

Page 135

A. I don't know because I just didn't really pay any attention to her. I really didn't. I didn't pay any attention to the issues she had with other tenants.

Q. You're telling me, though, that you knew that she had to sign this based off of her action --

A. No. I'm not going to say that at all because you keep pushing that issue and I don't think -- I think I should just say I don't know. I don't know.

Q. So my question is, though, why did you feel like there were going to be repercussions for you signing the inspection report?

A. Because there always were.

Q. And my question is what repercussion?

A. Well, for me or some of the other tenants?

Q. What do you know specifically about the repercussions for the other tenants other than this hanging basket rule?

A. She liked dogs. When I complained about the dogs barking, I got an eviction notice.

Q. And was that pre or post Robin's death?

A. That was way before Robin's death.

Q. Okay. And what else do you know?

Page 136

A. I can't remember anything else.

Q. Okay. And do you still have this eviction notice that you have in --

A. No. Because --

Q. Regards to dogs?

A. -- she didn't do anything with it. It was just a scare tactic.

Q. Okay. And did you have dogs at the time?

A. I never had a dog.

Q. So who were the dogs that were barking?

A. The lease says no pets except emotional support animals, but there's a very specific protocol you have to follow to have an emotional support animal.

Well, she didn't make anyone do that, so these people would move in with their dogs and then go to work for 10 hours, and the dogs went crazy. And, yeah, there was a lot of the dog barking.

Q. So you complained about the dogs barking?

A. Yes. Because I worked nights at the time, and I couldn't sleep during the day because it was my closest neighbor.

Q. So when you complained about the dog barking, that's when you received an eviction

Page 137

notice?

A. It was -- I don't know if it was that specific time, but it was soon. I really can't remember any of the details of that because I -- I just can't.

Q. Okay. And give me a second here. Anything else that you can recall specifically in regards to how Dawn Sims gave repercussions to tenants if they did something or spoke out against her?

A. She would just pass out a lot of eviction notices.

Q. Do you know specifically if you recall any person she passed an eviction notice to other than you?

A. Well, her name was Tracy, the one that lived behind Robin. She got one, and there were a lot of writeups, you know. There's like a progressive discipline. You get wrote up so many times, and you get evicted or something.

Q. Did Tracy ever get evicted?

A. She said she wasn't going. She wouldn't leave.

Q. Okay.

A. Dawn just dropped it.

Q. Anybody -- any tenant other than Tracy that

35 (Pages 134 - 137)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Dawn gave an eviction notice to?

A. Oh, she evicted many people. I can't remember all their names, or I don't know why they were evicted.

Q. Okay. And, again, when these people that you know that were evicted, do you actually know the reason they were evicted --

A. No.

Q. -- or you would --

A. I don't know the reason.

Q. Okay. So you're speculating that it's because Dawn was blaming them for something or --

A. I'm not speculating anything.

Q. All right. Moving on to talk about Dawn and these inspections. So from the beginning Dawn was not doing the inspections correctly?

A. Not according to the guidelines in the USDA and HUD manuals.

Q. Okay. And it's your understanding that you began signing these inspection reports as soon as Dawn started?

A. You always had to sign the inspection reports.

Q. Do you recall signing the inspection reports for the prior property manager?

A. Yes.

Q. Okay. All right. I want to take a look at the affidavit which is Exhibit D. Okay? Go ahead and put that in front of you. Looking at Exhibit D and I think -- I believe it is paragraph four is where it starts.

You talk about in June of 2021, you sign an inspection report despite Dawn Sims not inspecting the unit.

A. Right.

Q. Is that your testimony?

A. Yes.

Q. Okay. When is it that you think you signed that?

A. It was right after the fire, just a matter of days. Because she said she couldn't -- didn't have time to do mine because she had to finish Robin's which should have already been finished.

Q. So the time you signed that inspection report, it's your testimony that you signed it after the fire?

A. It was after the fire.

Q. Was it days after the fire or weeks? A couple weeks?

A. Just a matter of days.

Q. So one of your good friends dies in a fire at Maco, and days after you agree to sign an inspection report that didn't take place in your opinion?

A. That's right.

Q. Okay.

A. Johnson -- robin's family requested copies of the inspections which we all should have got, I think, but we never did. So she didn't have them finished, so she could not do mine because she had to finish Robin's.

Q. And so days after the fire, she told you that she needed you to sign this and that she hadn't finished Robin's?

A. Exactly.

Q. Okay. And so if she hadn't finished Robins's at this time -- days after the fire, correct --

A. Uh-huh.

Q. -- would there be any way that she could have given the inspection report for Robin's unit to the police officer on the date of the fire?

A. A fabricated one.

Q. Okay. If she gave the guy a fabricated one on the day of the fire, why was she fabricating a

second one days later?

A. Because she did -- she wasn't very bright.

Q. Okay. So it's your testimony that she might have fabricated more than one report?

A. She said she did Robin's on June 13 or something, and that is the total lie. She did not do it.

Q. Okay.

A. Because she -- and she told me she didn't do it.

Q. So this conversation you had with her days after the fire when you singed this, was this in person, on the phone, or something else?

A. In person.

Q. Okay. And where does it take place?

A. In my apartment.

Q. And what specifically do you recall Dawn saying?

A. I can't -- I don't have time to do your inspection because I have to finish Robin's inspection.

Q. And this is after Robin has already died in the fire?

A. Yes.

Q. Okay. And is anybody else present during

36 (Pages 138 - 141)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                                                973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

this encounter?

A. Not in my apartment.

Q. Okay. And do you recall seeing the inspection report that you signed and looking at it at all?

A. I looked at it but I don't think she had -- I don't know if she had actually written on it at that time. I don't know what --

Q. Was it a blank report?

A. I don't think it was totally blank. She might have put whatever it was. She just made it up.

Q. And when she asked you to do this days after the fire, did you report this to anybody?

A. No.

Q. Okay.

A. Oh, yes. I did later. Yes, I did.

Q. Who did you report it to?

A. Everybody that would listen.

Q. And who is everyone that would listen?

A. HUD and USDA and the Missouri state senator and the state representative and the Division of Aging and just people like that.

Q. Days after the fire when your friend had died, did you ever report it to anybody above

Dawn at Maco?

A. Oh, yeah. Yeah. They all knew. I mean they -- they already knew.

Q. And how did they know? What's your basis that they knew?

A. They came immediately after the fire, people that I had never seen before, and they stayed in Robin's office and fixed all of her glitches in her paperwork. And they knew, they knew that this paperwork, some of it was fabricated.

Q. And do you have any -- other than the fact that they came after the fire and were in her office, were you in her office with them during this time?

A. No. Dawn told me what they were doing.

Q. Okay. Other than what Dawn told you, did you ever see them fixing this, or how do you know that they were --

A. They were --

Q. -- fixing all her paperwork?

A. Because she told me they did.

Q. So it's your position -- and when did she tell you they did?

A. When they were in her office. She wasn't even in there with them most of the time.

Q. So Dawn told you in her office?

A. No. I wasn't in Dawn's office. I was walking to my car or something, and she said they're in my office going through all my paperwork.

Q. And did she tell you that they're fixing all of her paperwork?

A. Yes, yes. They were looking for mistakes and fixing any that they found.

Q. Okay. And this was days after the fire?

A. Yes.

Q. Okay. Was anybody else around when Dawn told you this?

A. No. But Dawn talked a lot. I'm sure there's other people she told, but I wasn't there. I wasn't present.

Q. Are you aware of Dawn making these, you know, confessions about forging paperwork and fixing it to anybody other than you?

A. I don't know who she told.

Q. Were you and Dawn pretty close prior to --

A. We were --

Q. The fire?

A. -- friends at that time. We didn't visit each other. Well, she was in my apartment a lot,

but I never went to her home or anything. I just tried my best to get along with her.

Q. So days after the fire, the property manager at Maco is asking you to sign a false report; correct?

A. Yes, uh-huh.

Q. And -- but it's your position that you never go and tell Maco directly about this during those --

A. Not --

Q. Days?

A. -- that day.

Q. Okay. When is the first time you say anything to anybody at Maco other than Dawn about this issue?

A. I don't remember.

Q. Was it days? Months? Years?

A. It was when all the retaliation started and I was making my list of things I needed to report.

Q. Okay.

A. But, you know, it didn't do any good.

Q. When did the retaliation start?

A. Right after the fire, not long after.

Q. And what do you mean by retaliation?

37 (Pages 142 - 145)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658
973-410-4098

Page 146

A. Well, like they blocked me from the emergency maintenance number which is totally illegal, but they did it anyway. And they wouldn't fix my toilet for seven days.

Q. So the first -- is it your recollection that the first retaliation was blocking you from the emergency maintenance number?

A. Yes.

Q. Can you think of any other retaliation prior to that?

A. Not at this moment I can't. That was the first big one.

Q. And do you think that was days, weeks, months after?

A. It was in July, the beginning of July, so it wasn't very long after the fire.

Q. Okay. And then the second form of retaliation was not fixing your toilet?

A. Yes.

Q. Okay. Any other forms of retaliation you recall?

A. Oh, gosh. There was so many. Like the headlight being broken out of my car, and I did report that. And dawn said it wasn't her problem, it was criminal. But I did -- I

Page 147

researched everything she told me, and she was totally wrong on that too. She is responsible. Anybody that signs a lease and lives there has a reasonable -- we can -- we're supposed to be safe, and I wasn't.

Q. So you mentioned blocking you from the emergency maintenance line, not fixing your toilet. And then is it your position that she broke your headlight or what --

A. I don't know who broke it. I don't know who broke it. She didn't, but I don't know who did.

Q. So then how is that retaliation by Maco?

A. Because I -- she's supposed to take care of it. And just like the laundry room, one of the tenants broke in it, broke in the machine, took all the money out, and she still lives there.

And I walked in my apartment one day and locked the door, walked in, and there were people in my apartment that I did not invite. She was letting in my apartment.

Q. So back to the retaliation. I want to focus on that. So the headlight, it's your position that she retaliated by not fixing your headlights; is that right?

A. No, no, no. That's not what I meant. It

Page 148

was just one of the minor things because I had to get my car inspected so I could get out of there. And I just fixed that headlight. And, you know, the next day, I couldn't stay up all night and guard my car. I tried. And it was -- there was no glass. Whoever broke it took -- every little crumb of glass was gone.

Q. So why do you list that -- why is that incorporated in a list of Maco retaliating against you?

A. It wasn't in my list. It was just an irritating thing that happened.

Q. So then back to the list of -- other than the fix -- or the blocking you from the emergency maintenance and not fixing your toilet, what else did Maco do to retaliate against you?

A. I wish I would have brought my list.

Q. Do you have a written list somewhere?

A. Oh, yes, I do.

Q. Okay. And so if I asked for a subpoena to get that list, is that something that you could produce to us --

A. Yes, yes.

Q. -- later on? Okay. Sitting here today, can you think of any other specific instances of

Page 149

retaliation by Maco other than the two discussed?

A. I had Covid twice. The first time it was very mild and I -- of course, I treated it myself, couldn't afford to go to the doctor. I just took medication, over-the-counter medication, and I got behind in the rent because the medication was expensive.

So Safir, S-a-f-i-r, is -- you probably already know about that.

Q. Yep.

A. So I applied. In fact, that's when I had that attorney, and he actually helped me apply for that and I got -- they wouldn't -- the manager had to sign a certain part, and they wouldn't. They don't have to accept it but they have to say they aren't going to accept it so, you know, people can move on and try to get help somewhere else, and they never did anything. They totally ignored it.

So, say, they were going to send me the money personally, but by then I'd been evicted, and I just wanted to get out of there. So I didn't even worry about it. But if they say I owe them money, I don't owe them a dime.

Q. Anything else that you can think of as

38 (Pages 146 - 149)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

sitting here today offhand as something that Maco did to retaliate against you?

A. I can -- I have the list.

Q. Anything that you can think of today, though --

A. No.

Q. -- without your list?

A. I don't want to go into that anymore right now.

Q. Can you think of anything else? This is my chance --

A. No.

Q. -- to talk to you. Once I get the list, then I'll have to come back and talk to you again.

A. I can't think of anything.

Q. I mean I love talking to you but --

A. We talk over each other too much. I can't think of anything right off the top of my head.

Q. Okay.

A. There were -- there were many more.

Q. So getting back to it, days after the fire then, you are asked by Dawn to sign this report, the inspection report that never took place. You're told by her that you're trying to do one,

she's trying to complete one or fabricate one for Robin --

A. Correct.

Q. -- correct? And at that point do you know that the police are involved investigating this fire?

A. No, I didn't.

Q. Okay.

A. That, I didn't know that.

Q. Do you at any point in time contact the police about this matter?

A. No.

Q. To this day have you ever contacted the police to let them know about --

A. The police were at my apartment all the time, but we never really talked about this. Dawn was in a relationship with one of the police officers, and that caused some problems for me.

My car was late getting inspected and, you know, I was wrong. But nobody had any money to do anything, and he said -- this is Dawn's boyfriend -- Susan, get it when you can, and he approached me. I didn't ask him. But I will not bother you or give you any tickets, but you can't leave town. Once you leave Summersville, I can't

help you.

So I thought that was really nice of him, and I only drove in emergencies so I could get food. And then immediately after the fire, I got pulled over from the other cop, and he was going to impound my car. He wrote me a handful of tickets.

And then before it was over, he said I've known you a long time, take your car home, just don't drive it anymore, and you've got to pay these tickets.

The mayor stepped in and destroyed the tickets. I didn't have to pay anything. And when I called him to get the police reports, I asked him, the chief of police, if that warning -- because he, when he stopped me, he said Chris gave you a warning. He never did other than you're okay. It was never in writing. There wasn't a warning, a written warning about my car.

Q. So the second officer who pulled you over said he's known you a long time --

A. Yeah.

Q. -- is that correct?

A. Uh-huh.

Q. Did you ever reach out to him to tell him hey --

A. Oh, yeah. He knew.

Q. -- Dawn Sims asked me to forge a report?

A. He would just say that's not his jurisdiction. He wouldn't have commented on that.

Q. Did you tell him, though?

A. No. Huh-uh.

Q. So how do you know that would be his response?

A. Well, I don't, but he was the chief of police. I mean he did come to my apartment for stupid reasons, but I wouldn't have told him that.

Q. Has Robin's family ever told you the police investigated this fire?

A. I hope they did. I think they have to, don't they?

Q. Okay. So you knew then that the police were at least investigating this fire.

A. No. I didn't until you just said it. I didn't even think about that. I didn't think straight after the fire. My best friend was dead. There really wasn't a whole lot of other

39 (Pages 150 - 153)

EXHIBIT A - STATE COURT FILE
EXHIBIT 1 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658

973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

things going through my mind.

Well, I do know one of the policemen, according to someone reliable, said that Robin -- they told the coroner that Robin had cancer. Robin did not have cancer.

Q. Okay. So here we are years later. Has your -- I assume that you've had a little bit of time to clear your head and think a little bit.

A. No. I don't think right from that moment on. I'm a different person.

Q. Okay.

A. I'm a different person.

Q. Sitting here today, though, you still have never contacted the police to let them know about this as part of their investigation?

A. About the inspection?

Q. Yeah.

A. No.

Q. You don't think that's something important that the --

A. Not to --

Q. -- police should know --

A. -- tell the chief of --

Q. -- about?

A. -- police, no. They knew that place wasn't

managed right. They knew that. Otherwise, they wouldn't have been up there all the time.

Q. Do you understand the police are investigating the fire?

A. No. I didn't know that until -- I didn't even think about that.

Q. Okay. You never thought --

A. I never saw them there after the day of the fire. They could have been there. I don't know.

Q. So you never thought to call the police and report this?

A. No. It wasn't a police matter.

Q. But -- and you never thought to call Maco and report this right after it happened; correct?

A. Anything I reported to Maco was just in one ear and out the other. I never got any satisfaction from Maco about anything.

Q. But you had testified earlier that you never reported anything to them prior to the fire --

A. When I made my --

Q. -- is that correct.

A. -- list, I started sending all these letters out. Yes. I told them because it was -- she should have been fired.

Q. So on the day that Dawn asks you to sign

this forged inspection report, at that point in time, though, you had never reported any issue to Maco; correct?

A. I don't remember. I don't recall. If I did, I don't recall.

Q. But it's your testimony that right then and there, you knew that they would not respond or do anything about it.

A. I didn't think they would. They didn't afterwards.

Q. What was the basis of you not thinking they would do anything about it?

A. Because they never did. They never did anything about anything.

Q. Looking at paragraph nine of the affidavit, you claim that these actions above were common and in no way limited to June of 2021; is that correct?

A. Correct.

Q. Okay. So I think we've talked about this at length, but you are referring to the fact that Dawn Sims, it's your testimony that she never inspected these apartments thoroughly.

A. She didn't mine.

Q. And on every occasion that Dawn Sims came

out to your place, she asked you to sign the inspection reports despite not inspecting the apartment.

A. The only day she absolutely did nothing was in June --

Q. Okay.

A. -- right after the fire.

Q. Prior to June, on all the other occasions that she came out to inspect your apartment, did she at least come in the apartment?

A. She came in.

Q. Okay. Did she walk around the apartment on all those occasions?

A. Well, like my apartment was so full of water, you went squish-squish when you walked through the living room. And I would think that she'd noticed that. I pointed it out to her several times because it happened two different times.

My furniture got water damaged because it soaked up the water. She wouldn't -- it never did get dried up.

Q. So my question is on all the other instances that Dawn came out for inspections prior to June of 2021, did she walk around the apartment unit?

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658
973-410-4098

A.  She might have walked in different rooms, yeah.  But I don't really recall.  I didn't pay much attention to what she was doing.

Q.  Okay.  You didn't pay much attention to what she did during these inspections?

A.  Because she didn't do the inspections.

Q.  Okay.  And -- but she was in the apartment quarterly, your unit quarterly?

A.  Oh, she was in there more than that.  She would come over crying because her job was too stressful, and she had a bad benzodiazepine problem.

Q.  Okay.  And how do you know she had a bad benzodiazepine problem?

A.  Because she told me.  I had to take two of my nerve pills today -- well, that's a lot so close together.

Q.  Do you know what her nerve pills are?

A.  It was Ativan.  I don't know the milligrams.

Q.  And how do you know it was Ativan?

A.  She told me.

Q.  Did you ever see them?

A.  No.

Q.  Did you ever see her take them?

A.  Yes, I did.  I did see them at one time, but

she took other pills.  I don't know what all she took.

Q.  And how do you know she took other pills?  Did you see her take these pills?

A.  Yes, I did.  And she told me.  She always had a problem, a physical problem, an arm in a cast or a brace or a knee in a brace.

And I think she took a lot of pain medicine because she said this is what the doctor gave her.

Q.  Do you know if it was what the doctor --

A.  I don't know.

Q.  -- gave her?

A.  I don't know.

Q.  Do you have any personal knowledge as to whether ever she wasn't taking medicine as prescribed?

A.  I don't know.  I didn't ask her.

Q.  Okay.

A.  That was her problem.

Q.  But prior to June of 2021, all the times that she came into your apartment, you didn't pay too much attention to what she did during those inspections?

A.  Not after the first one she did.

Q.  Okay.  And so you can't testify one way or the other whether she checked the smoke alarms prior to June of 2021?

A.  I don't know what she did or didn't do, but you can't do an inspection in five minutes.

Q.  Okay.  Now in June of 2021, did Dawn Sims ever come into your apartment unit?

A.  She came in, yes.

Q.  Okay.  And when was that?

A.  When she was supposed to be doing my inspection.

Q.  All right.  And when was that?

A.  I don't know the exact day.  It wasn't very many days after Robin died.

Q.  Okay.  So the only time Dawn Sims came into your apartment in June of 2021 was after Robin's death?

A.  I can't remember what she came over there for.  She came over sometimes just to sit down.  I don't know.  She came in -- she came over a lot.

Q.  Okay.  So sitting here today, do you have any idea if she came in your apartment in June of 2021?

A.  When she brought the fabricated inspections.

That's the only time I remember.  I don't know if she was in there anymore or not.

Q.  Okay.  So she may or may not have been in more times in June of 2021?

A.  But it wasn't very many, especially after the fire.  She was busy.

Q.  Okay.  But after the fire you recall one specific instance she came to your unit?

A.  Yes.

Q.  And that's when she was supposed to be doing the inspection?

A.  Yes.

Q.  And that's when she asked you to sign the report?

A.  Because she had to finish Robin's because she never did them.

Q.  During that encounter, did she walk around your unit?

A.  No.

Q.  Okay.  All right.  I am going to hand you what has been marked as Exhibit F.  And this is a copy of all your inspection reports.  Okay?  I'm actually going to put through here -- based off your testimony, I think we can shortcut this a little bit.  I have these in order.

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                          973-410-4098

Case 6:23-cv-03015-BCW   Document 137-1   Filed 01/12/23   Page 239 of 786

Page 162

A. Why didn't you just give us a copy? I wonder. Because I've never -- haven't seen those.

Q. All right. So it looked like -- all right. So I have an inspection report. I'm going to hand you Exhibit E. If you take a look at this.

MR. KLAR: Is this Exhibit F, Marie? I'm clarifying.

MS. PUDLOWSKI: Thank you.

BY MR. PUDLOWSKI:

Q. Exhibit F and on the top there is Maco's inspection report, and it lists a date. Can you tell me what date you see at the top of that?

A. September 4, 2018.

Q. Okay. And who is the person who completed that inspection?

A. M. McGuire. I guess that was Michelle. I don't know.

Q. Okay. And do you recall Michelle McGuire completing this inspection on that date?

A. No. I don't recall.

Q. Okay. So the next inspection report I have, turning a few pages here. Can you read the date that the next inspection report is?

A. November 13, 2018.

Page 163

Q. Okay. And who is listed as the person who completed that inspection?

A. Dawn Sims.

Q. Okay. Do you recall whether this might have been the first inspection that Dawn Sims did of your unit?

A. There's no way I could ever recall.

Q. Okay. Do you think that that makes sense to be about the time that Dawn would have started?

A. I don't remember.

Q. Okay. Do you recall ever seeing this inspection report?

A. No.

Q. Okay. Is this the type of form that you recall signing or Dawn asking you to sign?

A. It looks like could be similar, but I really don't know.

Q. Okay. Do you know if that's Dawn Sims's handwriting there?

A. I don't know.

Q. Okay. Do you see that there's different Xs and notations taken?

A. Uh-uh.

Q. Okay. Under the smoke alarm section, can you read what's written there?

Page 164

A. Replace battery, tested something, working.

Q. And it's your knowledge -- or it's your testimony that that is false --

A. No.

Q. -- correct?

A. I'm not saying that. I've never seen this before. I don't know anything about it.

Q. Okay. If Dawn Sims were to testify that she wrote out an inspection report of your unit on November 13 of 2018 and wrote that she replaced batteries, do you have any reason to dispute that?

A. I don't believe anything she says is the only reason I wouldn't because she's a liar. But she -- maybe she did do that. There's no way I can remember four years ago. Yeah.

Q. So she may or may not have actually replaced the batteries in the --

A. She may --

Q. -- unit?

A. -- or may not have even been in my apartment that day. I don't remember.

Q. Okay. Moving on. Do you see your signature on this inspection report anywhere?

A. My signature?

Page 165

Q. Correct.

A. No.

Q. Okay. Do you know if it was a requirement of Maco to get the tenant's signature?

A. We were supposed to sign them, yes.

Q. Okay. And you said that you recall signing inspection reports for Ben Cochran and Michelle McGuire at some --

A. Yes.

Q. -- point?

A. If they didn't have me sign it or something happened, I don't know.

Q. And in looking through all the inspection reports done prior by Ben Cochran and Michelle McGuire, if none of them contained your signature, would that surprise you?

A. Yes.

Q. Okay. Moving on. The next inspection report we have is 3/29/2018, inspected by Dawn Sims. Do you see that?

A. Uh-huh.

Q. Do you at all have any independent recollection of this inspection taking place?

A. I do not.

Q. Okay. And do you see the handwritten notes

42 (Pages 162 - 165)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658

973-410-4098

Page 166

taken on this inspection report?

A. Yes.

Q. Okay. Do you know if that's Dawn Sims's handwriting?

A. I don't know.

Q. Do you have any idea when she completed this report?

A. No.

Q. Do you have any reason to dispute whether or not she did the things listed in this report?

A. I don't know. Like I said, I've never seen this before so I -- I'd have to really study them to see what I've got. I don't know. I don't know anything about them.

Q. But you have no independent recollection as to whether or not she would have tested the smoke alarms and found them to be working in your unit on 3/29 of 2018?

A. I don't have any idea.

Q. Okay.

A. She could have -- there was a clause. I think they were allowed -- because she let anybody in my apartment -- to go in there like if I was at work and do the inspection. That would not have bothered me at all. I don't know if she

Page 167

ever did that or not.

Q. Moving on to the next one that's dated June 29, 2019. Do you see that in front of you?

A. Uh-huh.

Q. Okay. And do you see that this was inspected by Dawn Sims?

A. Uh-huh.

Q. Okay. And it's your unit; correct?

A. It says so.

Q. Okay. Do you have any independent recollection of an inspection taking place on this date?

A. No.

Q. Do you know if this is Dawn Sims's handwriting on --

A. I don't know.

Q. -- this form? Okay. Would you agree that the notes and the writings taken on each of these quarterly inspection reports are different?

A. What do you mean?

Q. Let's just compare the last one.

A. You mean the handwriting?

Q. Not the handwriting. I'm saying the words, the words on it. Do you see the details on it? Are they different or the same?

Page 168

A. She could have done this yesterday. I mean, this means nothing to me.

Q. Okay.

A. I don't know really what you're asking. I don't remember any --

Q. Do you agree --

A. -- of this.

Q. -- that the words in the blurb, the comments section written from 3/29/2019 is different than the comments provided on June 29 --

A. But it's going to --

Q. -- 2019?

A. -- look different to me. But, you know, I can't really -- you'd have to have a handwriting specialist come in.

Q. Okay. Looking at the next one that is dated September 26, 2019, inspected by Dawn Sims. The tenant is Susan Austin. Do you see that in front of you?

A. Yes.

Q. Do you have any independent recollection of this inspection taking place?

A. No.

Q. Okay.

A. Oh, that's funny. Did she write that?

Page 169

Claimed that tenant smoked in unit, smells like nicotine. She smoked in my unit all the time.

Q. Did your unit smell like --

A. Well --

Q. -- nicotine?

A. -- when you smoke, you really don't notice it.

Q. So is that an accurate statement?

A. I guess it is to her.

Q. Looking now at the December -- I can't quite read that. December something, 2019. The report in front of you by Dawn Sims of Susan Austin's unit. Do you have any independent recollection of this inspection taking place?

A. No.

Q. Okay. And do you agree that there's handwritten comments and notes throughout this written --

A. Yes.

Q. -- form?

A. But I don't know who wrote them or when they wrote them.

Q. Okay. And do you see under the smoke alarm section, it says changed battery for tenant?

A. Where? That doesn't mean she did it.

43 (Pages 166 - 169)

Q. Okay. So you have no recollection -- do you know whether or not she changed the batteries --

A. No.

Q. -- in the summer of 2019?

A. It just was not an issue anymore. After so many years without them, I wasn't gong to complain about it. She knew -- she wanted to be the one that took care of the smoke alarms.

Q. Okay.

A. So I let her.

Q. So could they have been working, or is it still your testimony --

A. No. They --

Q. -- they were never working?

A. -- weren't working. They weren't working.

Q. So it's your position that if she wrote change the battery for tenant, that that's a lie?

A. I'm not saying that at all. I don't know. And, like I said, I don't know when these were written. She fabricates so much.

So this, her handwriting, means nothing to me. I don't believe anything she says or writes.

Q. Okay. So if -- it's your testimony, though, that in 2019 your smoke alarms were not working, batteries were not working --

A. As far as I can recall --

Q. -- correct?

A. -- they were not working.

Q. So if Dawn wrote that she replaced them and they began working, that would have to be a lie; correct?

A. Sounds like it to me.

Q. Okay. Moving on to August 3 of 2020. Do you recall this inspection taking place?

A. I don't recall any of the inspections. I don't recall what we discussed. I don't recall any of it.

Q. And I appreciate that, and I know you are trying to fast-circuit, and I wish I could do that. But I never know quite how these things are going to turn out, so I need to make sure that each one you don't recall. Okay?

A. Okay.

Q. So looking now at the last -- not the last one. Looking now at the page that shows December 16 of 2020. Do you have any recollection of whether or not Dawn Sims completed an inspection on this date?

A. I don't recall.

Q. All right. And on this one do you see your

signature?

A. Yes.

Q. Okay. And that is your signature, Susan Austin, there?

A. Uh-huh.

Q. Okay. And so do you know on this instance whether or not you would have been there or seen this prior to signing?

A. I don't recall.

Q. Okay. And so sitting here today, you don't know if you signed a blank form or that you would have looked at these words prior to signing?

A. What was the date?

Q. This would have been in December of 2020.

A. I don't recall.

Q. Okay. Looking at the March 17 of 2021 inspection report by Dawn Sims in Exhibit F, do you know whether or not this inspection took place?

A. I don't recall.

Q. Okay. And do you see your signature on the last page of this inspection report?

A. Yes.

Q. Okay. And so sitting here today, do you know whether or not this report would have been

filled out at the time you signed it?

A. I don't know if she -- if it was already filled out or if she took it back to her office to finish and that's why she was always behind on her paperwork. I don't know.

Q. Okay. And but --

A. And to date --

Q. -- you do -- do you agree that you do recall signing these inspection reports --

A. No. I don't --

Q. -- prior to Robin's --

A. -- recall signing this specific thing. I don't recall any of that. Apparently I did.

Q. You can wait until my question is over.

A. Okay. Sorry.

Q. Do you recall signing inspection reports, though, prior to Robin's death?

A. Yes.

Q. Okay. And so those inspections, regardless of whenever they would have been filled out -- we don't know, you don't have any independent recollection, they would have been filled out prior to Robin's death; correct?

A. Well, if it was several years like if it was -- I don't know. I really don't know

44 (Pages 170 - 173)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                                    973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

anything about these.

Q. Okay. Moving on to the last one. This one is dated June 17 of 2021. Do you see that?

A. Uh-huh.

Q. Okay. So it's your position that -- and I'm going to move to the back page here. Okay. Do you see your signature on this June 17, 2021 inspection report?

A. Yes.

Q. Okay. Is this the report that you signed days after?

A. This was not done on June 17.

Q. Okay. My question is looking at this report here with your signature, is this the report that you signed days after Ms. Fisher's death?

A. I didn't sign it on June 17. It was after that. She -- she updated -- she changed dates all the time. I did not sign that on June 17. I know that for a fact.

Q. Okay. What do you recall signing on June 17?

A. Nothing. She didn't ask me to sign the paper until Robin was dead, and was on the 27th of June.

Q. What do you recall signing on the 27th of

June of 2021?

A. I don't recall anything on June 27. That's the day Robin died.

Q. Okay. What's the date that you just said that you signed?

A. It wasn't -- it was after Robin died on the 27th.

Q. Oh, after she died on the 27th?

A. Yeah.

Q. Now I'm understanding. I'm sorry. I was not following clearly what you were --

A. Sorry.

Q. Nope. So whatever date it was, the days after, when you sign something, what do you recall signing?

A. A blank inspection paper.

Q. Okay. So you recall days after, she asked you to sign a blank inspection paper?

A. Right.

Q. Okay. And so it's your position that this June 17, she was not in your apartment on June 17, 2021?

A. No. I don't think she was. And this one is typed instead of handwritten. I wonder why.

Q. Okay. And is it your position then, if this

was the form that was provided to police on June 27, where would she have gotten that? Do you know?

A. She made it up. She did it herself --

Q. Okay.

A. -- or her boss.

Q. Okay.

A. The 25th was a Sunday. The 17th would have been -- I don't do math -- 10 days before. No. She wasn't in my apartment on that day, and she didn't do it that day. She did it after, so that's a lie. So she had me sign this and then changed it. Okay. Isn't there laws against that?

Q. Well --

A. I signed the paper.

Q. -- you're saying you signed it and she changed it. I'm --

A. She did change it.

Q. -- not saying that's my position. Okay. And it's your position that she then -- she wrote on here tenant had to replace the batteries for smoke alarms in the bathroom.

So is it your position that in June of 2021, she did not replace the batteries in your smoke

alarms in the bathroom?

A. I don't have and never had a smoke alarm in my bathroom.

Q. Okay.

A. Actually, I may be reading that wrong. Not bathroom. Can you read that last one there?

Q. No. That's all right.

A. I'm really upset if she had me sign this paper and then change the dates and everything on it. That's not right. But she did it all the time so --

Q. Okay. But you knew that you were signing something that was undated; correct?

A. No. I didn't know it was undated. You mean the blank one?

Q. Yes.

A. No. I did not know it was undated.

Q. Did you see a blank form?

A. It might have had some writing on it, but I know that it wasn't the 17th, and I signed a blank form.

Q. Okay. And it was --

A. It may or may not --

Q. -- an undated --

A. No. I don't know. It might have been

45 (Pages 174 - 177)

EXHIBIT A - STATE COURT FILE
EXHIBIT 1 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                                 973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

dated.

Q. So you don't know if it was or was not dated when you signed this after Robin's death?

A. I know it wasn't June 17.

Q. Okay. So it is your position that all these inspection reports completed by Dawn Sims in Exhibit F were fraudulently done?

A. No. I didn't say that.

Q. Okay. Then tell me, what's your position?

A. We all know that she was capable of fabricating paperwork. I don't know if these are legal documents. Are they? I mean I don't know. But you can't change them. You can't backdate them. You aren't supposed to do any of that.

And I know she did it to me and to Robin. So why would I believe anything that she'd written on those papers?

Q. And your knowledge of her backdating and falsifying these reports comes from an incident of her asking you to sign after Robin's death --

A. No.

Q. -- correct?

A. She was always behind on her paperwork. She had me backdate some before the fire.

Q. Tell me a specific instance you recall

before the fire that she had you backdate one.

A. I don't know if I can -- well, you've got that. Didn't you get all the other paperwork? Every year they had to recertify it, and she never did those on time. But that would have been coming up in January.

I don't know. There was so many papers, and she's just say put this date on it, put this date on it or I'll get in trouble because she couldn't keep up with her paperwork. They finally designated her a day or two in the office through the week to do nothing but paperwork.

Q. Can you think of any specific instance prior to Robin's death where you know that she asked you to backdate paperwork?

A. There's so many, I don't know.

Q. But you --

A. I don't know which one you want. No. I can't tell you a specific incident because I didn't write it down anywhere, so I don't know.

Q. Can you recall looking at these inspection reports whether any of these were backdated or not?

A. I've never seen those before today, but I know she was not in my apartment on June 17.

Q. And all the ones that have your signature on it, it's your recollection that you would have signed blank forms?

A. No. That's not my recollection. I don't recollect anything. But she was not above changing dates or putting a date on it. I should have paid more attention because I knew what she was capable of by then.

Q. Other than the instance sitting here today, can you recall any other instance with any specificity other than this date, a few days after Robin's death, where she asked you to change a date or forge a document?

A. I can't remember the date right off the top of my head, but there were many instances.

Q. Can you recall any specific instance and what the document is? Tell me about it.

A. Most of them were inspection reports. Or they're supposed to keep up with your income, if I change jobs, she had to change some of the paperwork, things like that. Just any kind of paperwork.

Q. And do you have any record or proof?

A. No. I never got a copy of anything. I asked for copies of certain things, but I never

got it.

Q. All right. Do you know whether she did this with any other tenant other than you?

A. I can't say.

Q. You mentioned that she did it with Robin. What makes you think she did it with Robin?

A. Did what with Robin?

Q. Falsified inspection reports.

A. Robin was dead, so she couldn't have done the inspection. The fire was -- the apartment was destroyed.

Q. Okay. So your knowledge of her falsifying Robin's inspection reports comes from the same instance we've talking about in June --

A. It comes --

Q. -- after the death when she came to you?

A. No. After Robin died nobody really knew what happened, or I certainly didn't. And she said I did not do Robin's inspection because I wanted to give her more time to clean her apartment.

Then the next time, she told me I've called Robin's daughter, Jen, and made an appointment for her to come down. That was a total lie. And there was one other lie that she told, but they

46 (Pages 178 - 181)

800-567-8658 973-410-4098

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

all kind of ran into each other. She did not do that inspections that she said she did. She didn't do it. Why would she tell me she didn't do it if she did it?

Q. And your knowledge that she didn't do it is based off of what?

A. Off Dawn telling me I didn't do the inspection.

Q. Okay. Any other times?

A. What more would there be?

Q. But you would agree that you weren't in Robin's unit at all times during June of 2021; correct?

A. I don't know how many times I was in there. I know her fire stops were sitting in a Dollar Store bag by the front door. Dawn never replaced those.

Q. And how do you know that?

A. Because there's pictures of it.

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. And where did you get those pictures from?

A. I don't recall.

Q. Any other basis of those fire stops other than these pictures that you don't recall?

A. People found a bag of fire stops.

Q. Who's the people?

A. And her fire stops in her burned apartment had been expired.

Q. Who were these people?

A. I don't recall.

Q. Okay. Have you ever seen the inspection report written by Dawn related to Robin's apartment in June of 2021?

A. I never even saw my own inspection reports or anybody else's.

Q. Do you agree that Dawn could have gone into Robin's apartment at some point in June of 2021 and you not be aware of it?

A. No. It didn't happen.

Q. Okay. So it's your position that had Dawn gone in Robin's apartment at any point in time in 2020 -- June of 2021, you would have known about it?

A. Robin probably would have told me, but that's all I know.

Q. So Robin told you every time Dawn came to her apartment?

A. We talked about it, yes.

Q. Okay. So it's your testimony that every

time Dawn came to Robin's apartment, she told you about it?

A. No. Because sometimes Robin would just go sit in the lawn chair on the patio and smoke and talk. She wasn't there to do anything because she never did anything.

Q. You mentioned, though, that Dawn had said that she wanted to give Robin more time so she didn't do the inspection because she wanted to give her more time to clean up her apartment.

A. I didn't say clean up the apartment. I didn't say that.

Q. What did you say?

A. I said she wanted to give Robin more time.

Q. And tell me, what's your understanding or what do you --

A. I really didn't know what she was taking about. All I heard was I wanted to give -- I didn't do Robin's inspection because I wanted to give her more time.

Q. Okay. And, again, this is that same day after Robin's death that Dawn made all these statements --

A. Yes.

Q. -- to you?

A. Yes.

Q. Do you know if any other tenant ever contacted anyone at Maco prior to Robin's death about concerns with Dawn Sims?

A. Oh, yes.

Q. And who?

A. Who did the reporting?

Q. Yes.

A. The one that vandalized the washing machines all the time, and there were others. And they were -- well, we were all concerned. She would spend hours in her office with that policeman. I didn't care what she did, but some people thought it didn't look right, you know, that she didn't do anything she was supposed to do.

Q. Who was --

A. He was there all the time.

Q. Who's this person that vandalized the --

A. Her name is Beverly Brooks(ph).

Q. Okay.

A. She also called the police because there were elephants sitting on her car. She's got some substance abuse issues.

Q. Okay. So Beverly Brooks, who had substance abuse issues, you know made complaints about

Case 6:23-cv-03015-BCW Document 13-1 Filed 01/12/23 Page 245 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                                                973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Dawn?

A. Yes.

Q. Do you know what specific complaints she made?

A. One was that Dawn didn't do her job, and one was when Dawn passed out nasty letters to people -- I forget even what they were about -- she stuck them in the mailbox. And they reported her for that because apparently there's some law that you've got to put a stamp on it and mail it, and she didn't. She just stuck it in the mailbox, and then they reported her for that. I don't know who they reported her to, but it was reported.

Q. And did you see these complaints that Beverly Brooks made?

A. No. Dawn told me about them.

Q. Okay. Dawn told you about them?

A. Uh-huh. I didn't -- I really didn't spend any time with any of the other tenants. It just wasn't worth it.

Q. Are you aware of anybody -- any other tenant making complaints about Dawn prior to Robin's death?

A. I really didn't discuss Dawn with anybody up

there except Robin. Robin and I talked about her sometimes, but really not that much.

Q. Do you know if Robin made any complaints about Dawn prior to her death?

A. I don't know if she did or not.

Q. Do you know if anybody ever informed anybody at Maco that Dawn was forging inspection reports prior to Robin's death?

A. I don't know.

Q. Do you know of any person, any tenant or any person ever notified Maco that Dawn would not look at smoke alarms or not change and make sure smoke alarms were fixed prior to Robin's death?

A. There were tenants that notified Maco often, but I don't know exactly about what.

Q. Okay. And it's your position that when you smoked in your apartment complex, it never set off your smoke alarm; correct?

A. No. It never did.

Q. Do you know if it ever set off any other tenant's smoke alarm --

A. I don't know. They did go off when I cooked, like I said, but --

Q. Okay.

A. -- I didn't smoke near a smoke alarm.

Q. And when they went off when you cooked, was that prior to them being shut down altogether --

A. Yes.

Q. -- or within the first year?

A. Yes. It was Thanksgiving. I was trying to make dinner.

Q. Prior to Robin's death, did you ever have any contact with any person at Maco other than Dawn Sims or the other property managers?

A. I don't remember.

Q. So sitting here today, you can't recall any specific contact with anybody other than the property managers at Maco?

A. Oh, no, I did. I would call about -- when I had Covid, I called about what their policies were on that and things like that.

Q. And was that before or after Robin's death?

A. Let me see. When did I have Covid? Right before. Or was it after? Maybe once before and once after.

Q. Can you recall any other specific contacts you had with people at Maco other than about the Covid?

A. If I wanted to really get something done, I didn't call Maco. To get my toilet fixed, I

called the Texas County Health Department, and I got it the next day and was fixed.

Q. Are you aware of any fires at Summersville Estates prior to this incident?

A. No.

Q. Okay. And you were not present in Robin Fisher's unit when the fire started; correct?

A. No.

Q. Okay. And so you don't know the condition of her smoke alarms at the time the fire started; correct?

A. No. But everybody tells me the smoke alarm isn't all that. I mean they should have been working. It would have given a warning, but the fire stops to me would have been more important.

Because my lawyer tried to tell me the same thing; that the smoke alarms wouldn't have helped her but he can't -- I don't know how he can say that. They could have easily. But I really --

Q. It's your position --

A. -- don't know how the fire started. I don't know.

Q. It's your position that really the smoke alarms wouldn't have --

A. No. That's not my position. That's just

48 (Pages 186 - 189)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                                             973-410-4098

what someone else said.

Q. Okay. And who told you that?

A. The lawyer that I had.

Q. Okay. And where were the fire stops?

A. On their -- on the stove, on the hood of the stove.

Q. Okay. And what's your understanding of what these fire stops do?

A. If there's a fire, like when you're cooking, they automatically lay like a baking soda, you know, substance.

Q. Do you know where this fire was in her apartment?

A. No, I don't.

Q. Do you know if the fire stops would have done anything if --

A. I don't --

Q. -- they were in the back bedroom?

A. I don't know because the pictures Dawn showed me, it was just totally destroyed. I really don't know how it started.

Q. Do you know when it started?

A. It was Sunday afternoon, and the windows were shut because the air-conditioner was on. But I kept hearing a siren, and it got closer and

closer. So I went outside, and that's when I saw it.

Q. Do you have any idea how fast the fire spread?

A. No.

Q. But by the time -- do you have any idea how much smoke was inside the apartment from the fire?

A. It was rolling out.

Q. And was that based off your visual observation?

A. Yes.

Q. Okay. And how long -- when did you go out? When you went out first -- were you at home when you heard all of the --

A. Yes.

Q. -- emergency personnel coming?

A. Uh-huh.

Q. When you walk outside, are the emergency personnel already on scene?

A. There was one volunteer fire and first responder, Robby Pace, who I knew, and his wife, who was just a civilian, and she was also there, and his son also are first responders. He was the only one there that was fighting the fire.

Q. Okay.

A. Robin was already laying in the front yard.

Q. So when you came out, Robin was already laying in the front yard?

A. Yes.

Q. And so what did you do during that time?

A. I tried to go to her, and they wouldn't let me.

Q. Okay. And you said you never went inside the unit; correct?

A. No. We were not even supposed to -- according o Maco, we weren't supposed to be anywhere near it.

Q. Did you talk to any of the emergency personnel or investigators on scene?

A. Well, they asked me if anyone else was in there, and I said no, nobody else was staying there.

Q. Okay. And did you see police officers arrive on scene?

A. Yes. Later I did.

Q. Okay. So you know police officers were involved.

A. There was so many people there.

Q. Did you make any statements to any officers

or --

A. No.

Q. -- professionals on --

A. I did not.

Q. Who all do you recall being present at this time from Maco?

A. Nobody.

Q. So it's your position that on the day of the fire, nobody from Maco came?

A. Dawn came later but the people that discovered the apartment fire, instead of calling 911, they called Dawn. And I have --

Q. Who --

A. That should have been an issue -- of a tenant, the tenants that lived in the same quad, you know, building.

Q. Who do you think the tenants should have called?

A. 911.

Q. So you think other tenants discovered the fire, and they called Dawn, not 911?

A. Exactly. Dawn told me that herself.

Q. Okay. Did any of these other tenants tell you that?

A. No. I didn't talk to anybody else.

49 (Pages 190 - 193)

Case 6:23-cv-03015-BCW Document 13-1 Filed 01/12/23 Page 247 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Q. And which tenants did Dawn tell you called her rather than 911?

A. There were two of them and I don't -- I really don't recall which one it was. I don't want to say because I might be wrong.

Q. Okay. And when did Dawn tell you that these tenants saw a fire and decided to call her instead of 911.

A. It was the day after or two days after. It was right away soon after the fire.

Q. Did she seem concerned by that fact?

A. Yes, she did.

Q. Did she report that to anyone, do you think?

A. I doubt it, no. I don't know.

Q. Do you know who called 911?

A. No, I don't.

Q. Prior to the fire, had you had -- or prior to Robin's death, had you had any contact with her daughter, Jennifer Bumeter?

A. Not much. Just basic.

Q. Tell me what you mean by basic, not much?

A. Just hey, how are you kind of stuff.

Q. Do you specifically recall an instance meeting Jennifer prior to her mom's death?

A. I don't recall.

Q. Can you say for sure that you ever did meet her prior to --

A. I can't say --

Q. -- Robin's --

A. -- one way or the other.

Q. All right. So sitting here today, you have no idea whether or not you met Jennifer Bumeter or ever talked to her prior to Robin's death?

A. It wouldn't have seemed something that I should remember.

Q. Okay. Prior to Robin's death, do you know if you ever met Eric Meier, her son?

A. I don't remember -- I remember talking to Eric on the phone, and she talked about Eric a lot. But I don't remember -- I don't know if I did or not.

Q. Do you remember talking to Eric on the phone prior to Robin's death?

A. Isn't that her son?

Q. Yeah.

A. I think I did but I can't -- I don't remember. I really can't recall.

Q. And why would you have talked to Eric on the phone prior to her death?

A. Just talking. He was getting her a new

mattress, and, you know, we talked about that for a few minutes.

Q. Okay. Do you recall at all either of Robin's children coming down to visit her prior to her --

A. I don't --

Q. Death?

A. -- recall. I know they but I don't -- I didn't necessarily see them, and I did work a lot back then, so I can't really say.

Q. Did Robin ever tell you about them coming to visit her?

A. She talked about them all the time.

Q. Okay. Talking about them all the time -- did she ever tell you that they came to visit? Do you ever recall --

A. Yes, she did.

Q. -- her telling --

A. But I don't remember when they came. They wanted to come more but she -- we had this thing that we were going to be independent as long as we possibly could. And when our kids came around, which mine didn't come hardly ever either, we always didn't want them there because they would -- why don't you move, you know,

closer to us, Mom, and neither one of us were ready to do that.

Q. So she actually didn't like it when her children --

A. No.

Q. -- would come to visit?

A. I didn't say that. I'm sure she loved it.

Q. Do you know if she ever went and visited them?

A. Yes, she did.

Q. How often?

A. I don't recall. And her ex-husband, through a miracle of God or something, they got along great. And sometimes she would visit him when she was visiting the kids. They had a good family.

Q. Was there ever a period of time where her son lived with her at Summersville Estates?

A. Not that I recall and I'm not -- not that I recall.

Q. Was there ever a period of time that her ex-husband lived with her at Summersville --

A. I wouldn't --

Q. -- Estates?

A. Not that I recall.

50 (Pages 194 - 197)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                                                     973-410-4098

Case 6:23-cv-03015-BCW Document 151-1 Filed 01/12/23 Page 248 of 786

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Q. Do you recall there being a time ever that somebody lived with her at Summersville Estates?

A. Not specifically, no.

Q. Okay. Tell me what, if anything, do you recall Robin telling you about her relationship with her daughter?

A. It was mother/daughter. I never -- I haven't spoke to my mom -- well, my mother's dead. But I didn't speak to her the last 10 years of her life. They, you know, argued about little -- nothing major, just little things.

Q. Okay. What else do you remember her telling you about her daughter?

A. She was gorgeous, which she was, and she had two grandkids. And she told me when Jen got pregnant again and they found out about the genetic issue.

Q. And that hit her pretty hard?

A. Oh, terrible. Terrible.

Q. Did she go visit or stay with her daughter during that time?

A. Yes, she did.

Q. Okay. For how long?

A. I don't -- I don't know.

Q. Tell me what, if anything, that you can

recall about what Robin would say about her relationship with her son?

A. As far as I could tell, they had a really good relationship. He called a lot. Well, Jen did too.

Q. And were you present during these calls?

A. Sometimes.

Q. And what made you think she had a good relationship with her son?

A. I just never heard them argue and never heard her say, you know, that he -- accepted his girlfriend one time that she didn't like. But hey, all Moms -- nobody is ever good enough. I found that out.

Q. Would you hear her and Jen argue at times, though?

A. No. I never really heard them argue.

Q. Okay.

A. And it was just over little things.

Q. Did Robin ever tell you that she would give either of her children money at times?

A. I don't know if she did or not. We rarely talked about money because we never had any. I just don't remember her ever saying that. I don't know if they helped her out sometimes or

she helped them, but I know she lived on a very limited income.

Q. Do you know if Robin ever talked about helping them out with child care or any other issues that she would --

A. Robin would babysit anybody that would let her, and I never understood that about her. I mean, I said Robin, a three-year-old, see you later. Because, you know, I just wasn't into that at that point in my life. But she loves kids, and she babysat a lot of kids that lived in the complex.

Q. Do you know, though, had she ever babysat any of her grandchildren or not?

A. When she was there. I don't remember them like dropping them off and staying because it really wasn't a place you wanted to do that with kids.

Q. Okay. Do you know, did Robin ever mention her providing any other type of support to her son or daughter to you?

A. Moral support and, you know, motherly support she did. I don't know about the money. Robin and I really never talked about money because we didn't have any.

Q. Tell me about how did you come -- prior to her death, did you ever have contact information for either of Robin's children?

A. I knew where they lived.

Q. Okay. Did you have their phone numbers?

A. I had it probably somewhere, but I don't know where.

Q. So tell me, what led to you coming into contact with the family after the fire and after --

A. I wanted to talk to them about Robin, and it was such a horrible, horrible thing.

Q. And so how did you go about doing that?

A. They came down to get what was salvageable out of her apartment, and we made a date to meet.

Q. So did you -- so the first time you talked to them after the fire, is that by phone? E-mail?

A. No.

Q. In person or something else?

A. We would message and then they came down, and we talked in person.

Q. How would you have met them?

A. I don't recall.

Q. The very first time, how did you get their

51 (Pages 198 - 201)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                                                   973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

contact information?

A. I don't recall. I've always known who they were.

Q. So somehow you get their number, and you start texting them or calling --

A. They were trying --

Q. -- them?

A. They were trying to get Robin to move up to the city with them, and she wasn't ready to do that. That's why we talked about them a lot toward the end of her life.

Q. Would you have known --

A. I don't remember. I think I contacted Jen first but I don't -- like I said, that time was so -- it's just fuzzy.

Q. So you don't know how you got her contact information?

A. I probably already had it.

Q. Back to the date of the fire, before I forget, you said that the only Maco people you recall being present on the date of the fire was Dawn Sims; is that correct?

A. She came afterwards, yeah. I already stated that.

Q. Do you recall any other Maco employees

coming on the day of the fire?

A. I didn't see any more, but I left right away. I left as soon as I could. I had to get away from there.

Q. Okay. And do you know if Jen or Eric ever came down the day of the fire?

A. I don't think it was that day.

Q. Okay. So somehow you want -- tell me, why did you want to talk to them after the fire?

A. Because their mother was my best friend. We talked about her a lot. I just wanted her to reach out and say I'm sorry about your mom, she was a dear friend, and it's a terrible, terrible thing.

Q. And then in the days after when Dawn asked you to sign a report, at any point in time, did you want to talk to them about that?

A. What report?

Q. The inspection report.

A. Mine that she didn't do? I don't know. I'm sure I told them in time. I don't -- I didn't make it a specific call to say Dawn fabricated my inspection report.

Q. What about when Dawn told you that she wanted to give Robin more time on hers?

A. Yes. I did tell them that because that was -- that seems to be one of the bigger issues. Dawn lied about doing that inspection to cover herself to make her not look responsible for that fire, and she did not do that inspection.

Q. So when you told them that information, how was that conveyed to them?

A. They had already asked her for the inspection -- copies of her inspection reports which Maco was -- I don't know if Maco ever did get them -- I think maybe not too long ago. They knew that her apartment hadn't been inspected.

Q. Who knew?

A. I'm sure everybody knew.

Q. Who are you referring to?

A. Everybody in the world.

Q. Okay. Everyone in the world knew that her apartment hadn't been inspected?

A. I don't know who all she told. I didn't talk to anybody up there. I didn't talk to the other tenants.

Q. Okay.

A. I had no friends up there but Robin.

Q. Okay. So you had no friends up there but Robin?

A. Right.

Q. Do you think Robin would have considered you her best friend?

A. I don't know if she did or not. It was just kind of taken for granted. We did everything together. We were the same age. We each had two kids. We each had two grandkids. You know, we just had a lot in common. She was a fun person.

Q. Do you think Robin would have ever talked to -- about you to her -- about her daughter and son?

A. Oh, I don't know. I'm sure that she did because I took her to the doctor all the time. And then, you know, they would call and say did you make your appointment and what happened.

Q. So you and -- were you messaging her son and daughter after the fire or --

A. No.

Q. -- one or the other?

A. No. I only remember messaging Jen to find out when they would be there and that kind of thing.

Q. Okay. And then they ended up coming in person?

A. They had to get things out of her apartment.

52 (Pages 202 - 205)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Q. Okay. So tell me about that time that they came down. What contact did you have with them on that day?

A. We just talked.

Q. And what did you guys talk about?

A. I don't know. Everything. We talked about the fire, of course. And we talked about how dawn lied about the inspection and how it --

Q. What specifically did you tell them?

A. I don't remember. I told them what Dawn told me about not doing the inspection. A person is dead. Their mother is dead. Of course I told them that Dawn didn't do the inspection.

Q. Did they ask you to go to the police with this --

A. No.

Q. -- information?

A. It wasn't a police matter.

Q. Who told you it wasn't a police matter.

A. I know it wasn't a police matter. They were up there all the time. They would not discuss anything like that with us, or I would have called them when my toilet wouldn't be fixed.

Q. So you told them that Dawn forged the inspection reports?

A. I told them that Dawn told me she didn't do the inspection because she was giving her more time. And then I said Dawn said that she called you and made an appointment and that never happened. It never happened.

Q. Did you tell them that your smoke alarms had never worked during your --

A. My smoke -- yes. They knew that.

Q. Okay. And did you tell them that Dawn would ask you to backdate inspection --

A. I don't know --

Q. -- reports?

A. -- if I told them or not. There's a possibility I did.

Q. Did you guys look at or exchange any documents during your conversation?

A. I didn't have any documents.

Q. What did they ask you to do in response to this information that you told them?

A. I don't know if they told me to do anything. I don't recall.

Q. And then when was the next time that you talked to Jen or Eric?

A. I don't recall.

Q. Okay. How much contact have you had with

her son and daughter since the fire?

A. A lot.

Q. All right. Tell me what you mean by a lot.

A. Two times a month.

Q. So two times a month since the fire, you're in contact with both her son and daughter or --

A. No.

Q. -- just her daughter or --

A. Just her daughter. And there was a time there that I just needed to separate myself from all of it because it's been a -- it ruined my life, and I didn't want to talk to anybody about any of that, and I didn't talk to her for a while.

Q. So the times that you are having contact with her two times a month since the fire, what type of contact is that?

A. Well --

Q. Is it e-mail or something else?

A. Something else.

Q. What is the something else?

A. Two tin cans and a string. I'm sorry. I'm getting really tired of this.

Q. We can go ahead and take a break.

A. No. I want to get this over with.

Q. Okay.

A. Usually we messaged.

Q. Okay. And so do you think you would have records on your phone of that?

A. No. I deleted them all.

Q. Okay. Do you think she might have records on her phone?

A. I don't have any idea.

Q. Okay. And did you guys have any other in-person contact, or was it all through messaging?

A. No. I haven't seen her since that one time.

Q. Okay. So the only time that you can recall ever having contact with Jen in person was the time she came down a couple weeks after the fire?

A. That's all I recall. I can't say one way or the other.

Q. Has anybody from Robin's family ever offered to provide you any sort of assistance or compensation --

A. No.

Q. -- in any way?

A. No. I'm doing this because it's the right thing to do.

Q. Okay. Did they ever help you with any sort

Case 6:23-cv-03015-BCW Document 134 Filed 01/12/23 Page 251 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658

973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

of housing issues that you had?

A. No.

Q. Okay. Have you ever stayed in either of their homes for any reason?

A. No. I've never been to their homes.

Q. Okay. And have they ever offered to buy your groceries before?

A. No.

Q. Ever offered to give you any sort of gift cards or anything before?

A. A gift card? No. Now, there was a time, because my car wouldn't run, I was in the process of getting a new car, and Maco collected an over $3,000 debt on me that I had no idea what it was for. So I didn't get my car so I missed work until I could get my car fixed. And Jen said do you need me to send you some food, and I said no.

Q. So she offered to send you some food on that occasion?

A. Yes. And I said no.

Q. All right. And she didn't send you food?

A. No.

Q. Did she help get your car fixed at all?

A. No.

Q. Okay.

A. My car has no brakes, no air-conditioner, and no power steering. You want to drive it? Take it for a spin.

Q. Do you think if she -- are you aware of whether she talked to any other tenants, Jen has talked to any other tenants --

A. I have --

Q. -- about --

A. -- no idea.

Q. Do you know if she offered to buy any other tenants' groceries?

A. I have no idea.

Q. Tell me, do you recall any contact with her son, Eric, other than that in-person one encounter?

A. We talked about bands sometimes -- rarely messaged -- because he likes the same kind of music, but that's just been it at the time.

Q. Okay. So you'll text message with him every once in a while?

A. It's been a long, long time.

Q. Okay. Were Jen and Eric aware of your eviction from Maco?

A. Yes.

Q. Okay. Did they at any point in time offer

to help you with that eviction?

A. We didn't -- that wasn't going to happen. I didn't want them to help me. That wasn't their responsibility.

Q. Did they ever ask to help you or assist --

A. No.

Q. -- you with that?

A. Just Jen asked me about the groceries.

Q. What did you tell them about the eviction?

A. Just the truth.

Q. And what was the truth that you told them? What version of truth did you tell them?

A. They tried to get me out of there for the past year. And the things that they put on the eviction notice were false. But, like I said. I didn't get to go in the courtroom to defend myself and my lawyer wouldn't, so that's why I'm sending this paper this notarized paper to put in that file.

Q. My question is what did you tell, though, Jen about the eviction? What does she know about it?

A. I don't know. I can't tell you.

Q. You don't recall what you told her now?

A. I wouldn't have told her anything but the

truth.

Q. And what would you have told her is the truth?

A. Oh, on the eviction paper, it said I flushed nonflushable things down the toilet, and there was something else that I had never done. I don't really recall what it said. I've got it at home, a copy of it. I don't think -- I don't know if it said anything about back-run. I don't remember that.

Q. And so it's the truth that all of that is untrue?

A. All of it is untrue.

Q. Okay. Tell me, what contact, if any, have you had with Mr. Klar and his firm?

A. Very little.

Q. And tell me, what do you mean by very little?

A. Well, like he had to give me -- tried to tell me how to get on Zoom even though I still had to get help from the librarian. Where we've got to meet for these things and things like that.

Q. So did you have any contact with him in July of 2021?

54 (Pages 210 - 213)

Case 6:23-cv-03015-BCW Document 131 Filed 01/12/23 Page 252 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                                    973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

A. I don't remember.

Q. Do you know, has his firm played any role in creating that affidavit at all?

A. I don't recall. He told me from the beginning I am not your attorney. I've known that all along.

Q. That's a good attorney there. That means he's doing his job. Have you guys exchanged any e-mails at all?

A. You and her.

A. There's been some just about this kind of thing.

Q. Okay. Have there been any phone calls?

A. Once in a while, I would have to call him. Like when I thought he wasn't going to come today, I freaked out a little bit. I knew he had other cases but hey, this is me.

Q. And have you given him any sort of documents at all related to this case at all?

A. I don't recall ever giving him documents.

Q. Have you and him sat down and like had a call about what happened and your version of events for this case?

A. He knows what my -- what I think about what happened. I mean he knows all that.

Q. And how does he know?

A. Probably -- I don't know if Jen told him. I might have told him. I don't recall. This has been my whole life for a year. The 27th was just a few days ago. It's been a whole year. It's just consumed me. I'm emotionally broke. I'm bankrupt. I would just like to get this over with.

Q. All right. I am going to hand you what has been marked as -- I think we're on G. Okay. Exhibit G. And this is a copy of the first amended petition in this case. Have you ever seen this document before?

A. I don't know if I have or not. I could have.

Q. All right. I want you to go to paragraph number eight.

A. Okay.

Q. All right. I'll actually go ahead and read it into the record if you don't mind. So paragraph number eight says prior to her employment with defendant Maco, Ms. Sims had no experience as a property manager or in any similar field.

Do you have any personal knowledge as to

whether that is true or not?

A. You can't take Dawn worth anything. She told me she had a master's degree in something, and it was a correspondence course. I don't believe anything she says or anything she writes.

Q. Other than you not believing anything Dawn says, do you have any other personal knowledge as to whether or not the claim made in there is true or not?

A. I don't know.

Q. Okay. All right. I want to move on to paragraph number 18. Paragraph number 18 states Ms. Sims purportedly conducted an inspection of decedent's apartment, so Robin Fisher's apartment, on June 15, 2021, and she reported that such inspection revealed working smoke alarms and clean fire stops.

Do you have any personal knowledge about whether or not that is true that we haven't yet discussed?

A. It's not true.

Q. Okay. And is the basis of your knowledge anything more? Is there anything more to the basis of your knowledge other than what we've already discussed in detail today?

A. She told me three different lies about the inspection, so I don't know how to answer that. I don't know what she told to who.

Q. And what are the three different lies?

A. That she was giving Robin more time, that Jen was coming down to clean the apartment. And I'm trying to remember the third one. I can't remember the third. By then she had no credibility. I don't believe anything she says.

Q. And other than her not having any credibility and the stuff we already discussed, is there anything else that you know of personally to say that this claim is warranted and true?

A. She did not do it. She told me she didn't do it.

Q. Anything other than her saying that to you?

A. No. Other than the fire stops were still in the bag. She didn't replace those.

Q. And the fire stops in a bag, what is the base of your knowledge of the fire stops?

A. Pictures.

Q. But you don't know who took the pictures; correct?

A. Correct.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
Case 6:23-cv-03015-BCW Document 131 Filed 01/12/23 Page 253 of 786
800-567-8658                                              973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Q. And you don't know when the pictures were taken; correct?

A. Correct.

Q. Okay. And do you even know what the pictures were of?

A. They were of the new fire stops that should have been replaced because the old ones were still up. I've got -- I had pictures of them too, and they are expired.

Q. Okay. All right. Looking at paragraph 19, neither of the two smoke detectors in decedent's apartment were in place or in working condition at the time of this incident, and Ms. Sims was aware of the same.

Is there anything else that we haven't discussed today that you have personal knowledge of as to whether or not that is true?

A. What number is it?

Q. Nineteen.

A. They weren't -- I think I remember seeing in the pictures -- they weren't even on the wall. They were laying somewhere.

Q. What pictures are you talking about?

A. The ones that Dawn had of the burnt up apartment that she wasn't supposed to have.

Q. Okay. Any other basis for why you think that?

A. No.

Q. Okay. Twenty-one says the fire-suppression device in the decedent's apartment unit, which remained in place following the incident, expired in October of 2020.

Other than what we already talked about, which was of the pictures, do you have any other personal knowledge as to whether or not that's true?

A. I don't have any, no.

Q. Looking now at paragraph 26A. It states that basically Ms. Sims, by negligently and carelessly hiring Ms. Sims to manage a low-income housing complex when they were aware that she lacked experience in such field.

Do you have any personal knowledge as to Maco hiring Ms. Sims without any experience in such field?

A. Well, it said in that paper that she didn't have any prior experience, so I guess she didn't.

Q. What paper are you talking about?

A. That one right there.

Q. The -- Exhibit G?

A. The one that we read earlier that said they hired Dawn without any prior property manager experience.

Q. Which of the papers that we looked at earlier does it say that?

A. I don't know. It was one of the those -- the latest, whichever one -- it was that one, wasn't it? What number was it? I don't remember. G?

Q. Are you talking about the earlier paragraph that we read?

A. Yes.

Q. Okay.

A. Where it said they hired her without prior experience because she didn't have any.

Q. Well, this is not -- this is not fact. This is just claim. This means these are all the allegations. Okay? So we're trying to figure out what is the proof to see if any of these allegations are true.

A. Okay.

Q. Okay. So the allegation is that she didn't any. I'm asking what proof might you personally know of that that is true.

A. Other than just in a general conversation,

she said she'd never done that kind of work before.

Q. So Dawn told you that she never did that type of work before?

A. Right.

Q. When did that conversation take place?

A. Oh, not long after she's been there. I don't remember exactly when.

Q. Do you know anything else about her background?

A. Other than she deserted her children? She said she was in -- she did masking or mask for a movie or something. I don't know. She was a -- she said she was a security guard at a factory.

Q. Okay. Anything else that you know?

A. There -- she had a long list of jobs, but I don't remember anything other than those.

Q. And all that information came from Dawn personally?

A. Yes.

Q. Any other source of that information other than what you claim Dawn had said?

A. I don't know anyone else that knew her other than the tenants up there.

Q. And next one, 26B, talks about that they

56 (Pages 218 - 221)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658        973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

failed to train Ms. Sims who was responsible for the maintenance and supervision of Summersville Estates. What personal knowledge, if any, do you have about 26B?

A. She did nothing that she was supposed to -- that I -- she did no repairs. She didn't do anything. I'm sure she had a job description, so it was one of two things. She didn't know how to do that they wanted her to do or she just didn't want to do it because she did nothing.

Q. Can you name any specific time that you recall that she didn't do something --

A. Every day.

Q. -- that she was required to do.

A. Every day.

Q. Tell me something --

A. Well, she was locked in her --

Q. -- she was required to do --

A. -- office with her policeman boyfriend. There were plumbing issues. When my thing got clogged, she just handed me this stuff, and I would do it myself because she didn't do it. And it clogged a lot. I don't really know why.

Or if there was someone's carpeting that was destroyed, like mine, she could have, you know,

got some shampooers or something and dried out the carpeting.

Q. Okay. So you talked about the plumbing. What do you recall -- when did this plumbing issue take place?

A. My issue?

Q. Yeah.

A. After the fire.

Q. Okay. So after the fire. Do you recall any instances where she didn't do her work prior to the fire, any specific instance?

A. In my apartment --

Q. Yeah.

A. -- or anybody's?

Q. Involving you --

A. My apartment flooded --

Q. -- that you know about?

A. -- twice. Sorry.

Q. I don't want what you've heard or what you guess. What have you seen or experienced prior to the fire that Dawn was required to do in your mind that she didn't do as part of her job description?

A. She didn't drain the water out of my carpeting. She didn't fix my air-conditioner so

it wouldn't leak all over my carpeting, just general maintenance that people do in their own home that she's responsible for.

Q. Is it your position that she's responsible for general maintenance in your apartment unit?

A. She is. She is.

Q. And what's the basis of her being responsible for general maintenance in your apartment?

A. Because she said they put too much work on her and she needed her own maintenance man. And if anything came up, her boyfriend that she lived with would come to Summersville and do it for her.

Q. But what's your understanding of that being -- is it in your lease somewhere that she's supposed to do your general --

A. No.

Q. -- maintenance?

A. I think that if you look at the website, I think they're supposed to supply a maintenance man. I don't know. But there's not ever really been one there. When Michelle was there, she brought one with her, but neither one of them stayed very long.

Q. So this is you more assuming that you think it's the property manager's job to complete general maintenance on your unit?

A. She told me that it was. That's why she -- we went to fill out the work orders of things we needed fixed. And they hid them from me so I couldn't report all the mold in my apartment.

And I had to -- I did have to call Maco like three times for them to tell Dawn to let me have the work order.

Q. Do you know if it was anywhere in your lease that she had to do general maintenance --

A. I don't remember --

Q. -- on your unit?

A. I don't remember if the lease said anything about it or not.

Q. Okay. But when Dawn said she had to do general maintenance, that means that it was her responsibility to do general maintenance of your unit?

A. Yes.

Q. Thanks.

A. Legally, yes.

Q. Okay. All right. So the water on the carpet, not draining the water from your carpet,

57 (Pages 222 - 225)

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658          973-410-4098
Case 6:23-cv-03015-BCW Document 13-1 Filed 01/12/23 Page 255 of 786

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

when did that take place?

A. Oh, gosh. The first time it flooded, I can't really remember how many years ago it's been. And then the second time was when the toilet broke.

Q. Okay. So one was after Robin's death?

A. Uh-huh.

Q. Okay. The toilet breaking; correct?

A. Uh-huh.

Q. What about before her death?

A. The air-conditioner leaked and she never fixed it.

Q. That was before her death. And what -- how did you make a report of that?

A. I took pictures of my water-damaged furniture and sent them to Dawn. And she said she didn't realize it was that bad, but it was.

Q. And then she just never did anything?

A. She never did anything.

Q. And so from the day -- from that point forward, was your water(sic) just wet, or did you do anything about it?

A. I wasn't going to spend another dime on only that apartment, not a dime. That was her responsibility to fix -- to fix my carpeting, at

least shampoo it --

Q. Did it eventually --

A. -- and get the water out.

Q. -- dry up?

A. It really never dried up. That's why it got all -- that's where all the mold came from, I guess. Because it wasn't really 100 percent dry before it flooded.

Q. And so you're sitting in an apartment unit that has wet carpet and no smoke alarm and, again, you make the decision not to take that to anybody above Dawn; correct?

A. No. I think -- I think I did complain about the carpeting because I couldn't live in there. It was really bad.

Q. And how did you complain about the carpeting?

A. I don't really recall. I put it in writing or talked to somebody from Maco.

Q. And did they do anything?

A. No.

Q. Okay. And do you have any proof that you made the claim?

A. I would have to look at mine because they destroyed the work orders that I gave them. It's

like they never happened.

Q. And how do you know that they destroyed work orders?

A. Because I asked for copies of them, and they didn't have them.

Q. Okay. Other than the carpet at that time, any other time that you can think of prior to her death that she did not perform her duty that you personally are aware of?

A. I really -- like I said, maybe she just didn't know what she was supposed to do. I don't know how much training they gave her. I don't know.

Q. And what's your understanding of what she was supposed to do?

A. Just general maintenance, nothing major.

Q. What's general maintenance to you?

A. Definitely bringing in some kind of company to get the water out of my apartment. That is not hard and not letting her boyfriend in there to do it.

Q. But you keep saying her doing the general maintenance. I'm trying to figure out what does that mean.

A. What do you think it means?

Q. It's not a matter of what -- you're the one who has --

A. Clogged up toilets or clogged sinks or flooded carpeting, things like that. Clogged up toilet, drains that don't work right, put the doors back on right, just general maintenance.

Q. And it's your understanding all of those things were her responsibility based off of one fact; that she told you --

A. No.

Q. -- she was responsible?

A. I didn't ask her to do anything because I knew she wouldn't. I did everything myself or had somebody else do it if I needed help.

Q. All right. Moving on. 26B, that she failed to supervise -- that Maco failed to supervise Ms. Sims's actions or inactions in any way.

What knowledge, personal knowledge do you have that Maco failed to supervise Ms. Sims?

A. They never checked on her. Rarely did they ever come over. And like that's why after the fire they had two -- there were two or three of them that went in there and just tore the office apart looking at the paperwork. If they stayed on top of it or checked on her a little more

58 (Pages 226 - 229)

Case 6:23-cv-03015-BCW Document 131-1 Filed 09/12/23 Page 256 of 786

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

often, maybe they could have caught something sooner. I don't know.

Q. And do you have any other reason why you think they didn't supervise her other than your position that they never checked on her?

A. She didn't have any answers to anything. And the thing about the dogs, that place is just overrun with animals.

Q. So it's your position they didn't supervise her because they never checked on her and that she didn't have any answers. Anything else?

A. No.

Q. All right. And do you have any personal knowledge about -- I assume you're not with Dawn Sims at all times; correct?

A. No.

Q. You have no idea what contact on a day-to-day basis she has with Maco; correct?

A. No, I don't.

Q. You don't know what e-mails they may have; correct?

A. No. They weren't there in person. They didn't know what she wasn't doing.

Q. Okay. And were you there with her at all times to know whether they ever came out in

person?

A. No.

Q. So can you really say whether or not they ever came out to the apartments or not?

A. One drove a yellow car. Everybody knew that she was there. It was a different car. And Dawn would also -- like I think I said earlier, broken appliances, like refrigerators and hot water heaters, she would just throw them in the front yard and keep the grime all over them, and that is so wrong.

Q. Okay.

A. I mean that should have been property manager 101.

Q. So you actually do recall seeing some people from Maco with her?

A. Yeah. But I don't know how often or exactly what for.

Q. So you don't know how often, you don't know what for, or what they did?

A. Well, before the fire I don't really know.

Q. Okay.

(Court reporter interruption.)

A. That's probably how they knew the paperwork was not done.

BY MS. PUDLOWSKI:

Q. And what's your position that they knew the paperwork was not done? Did anybody other than Dawn tell you that?

A. No. Dawn told me --

Q. All right.

A. -- herself.

Q. All right. So in 2016 they talk about that Maco negligently and carelessly failed to implement appropriate supervisory measures which would have ensured Ms. Sims's performance of her duties for which she was hired.

Do you have any personal knowledge as to whether or not that is true beyond what we've already discussed?

A. Could you read that again?

Q. Yes. That Maco negligently and carelessly failed to implement appropriate supervisory measures which would have ensured Ms. Sims's performance of her duties for which she was hired.

A. I think that's true. They should have been there more.

Q. Okay. And do you have any basis for that they should have been there more, any personal

knowledge that they should have been there more or didn't do anything other than what we've already discussed?

A. I didn't say the company was -- that they did -- I don't know. And if they were there, I didn't -- I didn't make it a point to say hello to them because I just didn't.

Q. All right. Looking at 26F, they claim that Maco negligently and carelessly allowed Ms. Sims to forge inspection reports which purportedly memorialized the performance of her job duties.

Do you have any personal knowledge as to whether or not that is true beyond everything that we've already discussed?

A. I don't know what they did behind closed doors, no. I wasn't in there.

Q. Moving on to 26G, it says Maco negligently and carelessly relied on Ms. Sims purported apartment inspections and failed to take any additional efforts to ensure the safety of its tenants.

Do you have any personal knowledge as to whether or not that's true beyond that we've already discussed here today.

A. I don't know. All I know is any time I

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                          973-410-4098

Case 6:23-cv-03015-BCW Document 13-1 Filed 01/12/23 Page 257 of 786

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

called Maco, which was mainly after the fire, they just -- they were not cooperative at all. They were hostile. It's a hostile environment.

Q. Okay. Moving on to 26H, that Maco negligently and carelessly failed to provide adequate personnel and/or staff to ensure Ms. Sims's oversight and supervision.

Do you have any personal knowledge as to whether or not that's true beyond what we've already discussed?

A. She was not an on-time type of person. She was not capable of doing that job.

Q. And do you have any personal knowledge as to why that is or what's your basis other than all the complaints we've already discussed here today?

A. I saw her. I mean I could see her locked in the office with her boyfriend instead of doing her job.

Q. Okay. Anything else?

A. Changing -- she treated everyone different, and you just don't do that. I mean that's called discrimination.

Q. So tell me what you mean she treated everyone different?

A. Well, the first apartment, there were three adults and three children living in a two-bedroom apartment which is totally against the lease. The next apartment was one single woman in a two-bedroom apartment because she lied and said she had a child but she didn't, and that's against the lease. I mean there was just -- it was just unorganized chaos all the time.

Q. Okay. Anything else?

A. Well, there was the drug overdose of my friend, and she did let him sign the lease so she was responsible, and I told her not to ever leave him alone because he would do it again. And he did and he's dead now.

Q. And who is that?

A. Beau(ph) Martin.

Q. Okay. And when did she have him sign a lease?

A. Well, he moved in there with his girlfriend and her children and I didn't think it was -- I didn't think that you could do that. But, you know, I don't care. I liked Beau. Beau was okay. But I don't know when she had him -- he lived there a while before she told him to sign the lease.

Q. Okay. And you're saying that he overdosed and died at the apartment or --

A. Yes.

Q. Okay. And when did that take place?

A. Four months before -- I'm trying to think. Him and Robin died four months apart.

Q. Okay. And is it your position that it's Dawn's fault for his death?

A. No. I'm saying she's obligated to provide a safe environment for all of the tenants that sign a lease and pay rent, and she didn't do that.

Q. Because she let Beau sign a lease?

A. No. That's not what I said.

Q. So explain to me how she -- what is the point of bringing Beau up? How does that --

A. I'm just saying two preventable deaths in four months is a little too much.

Q. And how could Dawn have prevented the death of Beau?

A. She could have evicted him or sent him -- encouraged him to go to rehab or made his girlfriend stay home with him. Because I had helped him -- because the fireman that wasn't Robin's friend, he and I recovered Beau from an overdose that he survived that day.

And I told Dawn and the girlfriend, he's going to be dead in no time if you don't do something. Yes, I do believe she was required to do something. She did nothing.

Q. And do you think it was within her job duties that she was required to send him to rehab?

A. No. I didn't say that. Don't -- you put words in my mouth, and I don't like that.

Q. I'm trying to figure out what you're saying.

A. This man was an addict with fentanyl that he did not have a prescription for. He ended up dying. There was no investigation and there should have been. And she -- she should have done something. I don't know. If you get on Vine and read the USDA handbook, there is a clause in there.

Q. And what did Dawn know about his drug use?

A. Everything.

Q. And how did she know everything?

A. Well, her boyfriend cop told her when the people moved in that they said Beau is a problem and not the girlfriend, but the girlfriend ended up being the problem.

Q. Were you present when her boyfriend

60 (Pages 234 - 237)

Case 6:23-cv-03015-BCW Document 131-1 Filed 01/12/23 Page 258 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                               973-410-4098

overdosed?

A. No. She told me.

Q. Okay. So this is another thing that you claim Dawn told you?

A. Dawn did tell me.

Q. Okay.

A. You could ask the policeman too, but he just mysteriously quit and left town.

Q. So Dawn, you claim that Dawn told you that she knew that Beau has a drug problem?

A. No.

Q. Or what did she say? I don't know. I'm trying to figure out. What did she --

A. When a new tenant moved in, she would -- well, she's required to do background checks. But she would ask her little cop boyfriend what the scoop was on these people. It's a town of 500. Everybody knew everything about everybody else.

Q. Okay.

A. And he would tell her things about them, about anybody that moved in. Like watch this one, he's a thief or this one is an addict, you know, just things like that.

Q. And what specifically did Dawn tell you that

her police boyfriend told her about Beau?

A. That the girl would be okay to move in, but he would not trust the man to move in, but he did.

Q. Do you recall her police boyfriend telling her anything else?

A. If he did, she didn't tell me.

Q. Okay. And from that statement, though, you think that Dawn should have done more?

A. According to the guidelines in the handbook, she had a certain responsibility to every one of us that lived there. I don't know how far they want you to take it, but she should have done something.

Q. And what specifically do you think that she was obligated to do in that --

A. I'm not --

Q. -- situation?

A. -- sure. It's her job, not mine.

Q. Okay.

A. If I would have been the property manager, I definitely would have done something.

Q. Any other personal knowledge that you have about her not -- failing to do her job prior to Robin's death?

A. I never saw Dawn do anything.

Q. Okay?

A. I'll just make that my statement about Dawn's job performance. It was not good.

Q. Moving on to 26I. They say that Maco negligently and carelessly failed to perform and measure up the required standards of care required and observed by members of the same profession and in further particular is presently unknown to plaintiff but which are exceedingly likely to be disclosed or found from proper discovery.

Okay. So basically is there anything else that you can think of that you personally know of that she failed to do and failed to live up to the standards in someone in her profession that we haven't already discussed?

A. Yes. Well, I think I mentioned all the vandalism to our laundry room. It's supposed to be open 24/7 because people work different hours, you know, and have to do their laundry at night.

After the vandalism, instead of evicting the person that vandalized -- did the vandalism, she started locking the laundry room, so we couldn't get in there unless Dawn was there. And there's

also a clause in the manuals that you're not supposed to do that.

Q. What manual?

A. The HUD manual or USDA. I've read them all. I get them mixed up because there's so many of them.

Q. Okay.

A. They have guidelines, what the landlord can and cannot do. They cannot let somebody in your apartment, but she did. They cannot forge your inspections which she did. And they cannot change the hours of the laundry room without way prior notice, and she did that too.

Q. And her changing the hours of the laundry room, was that before or after Robin's death?

A. It was before.

Q. And her letting people in your apartment, tell me a little bit more about that. When did you --

A. I don't know --

Q. -- first learn --

A. -- how many people she let in my apartment. I just caught them one time. But if she did it once, she'd done it prior. And then I couldn't leave because I was afraid she'd let someone else

61 (Pages 238 - 241)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                                            973-410-4098

in there.

Q. And when was the time that she let somebody in your apartment that you caught her?

A. I don't remember exactly, the exact date.

Q. Before or after Robin's death?

A. I think it was after.

Q. Okay. Who did she let in your apartment?

A. Her policeman boyfriend and among others. I don't know who else she let in there.

Q. And what happened? You come home and you see her with the police officer in there or what?

A. She wasn't in there. It was just him.

Q. Okay. So how do you know she let him in?

A. He didn't have a key to my apartment, and I certainly didn't give him mine. She was the only other one that had a key.

Q. And what was your understanding of why they were in there?

A. I have no idea.

Q. Did you ask the officer?

A. I asked him something, but he just left. He immediately walked out the door and didn't say anything to me.

Q. And who's this officer again? What's his name?

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. And what was this officer's name?

A. Chris. I don't --

Q. Do you know his last name?

A. I don't know his last name. It's a long name that I don't remember.

Q. All right. Looking at paragraph 39A -- or, sorry, 37 that Ms. Sims had dangerous proclivity which included, without limitation, recusal and inability to perform the duties and obligations required of her in the performance of employment-related tasks.

Do you have any personal knowledge in regard to whether or not this claim is true other than what we've already discussed here today?

A. I never felt safe there. I was not safe there.

Q. Do you have any other personal knowledge about whether or not that's true other than what we've discussed here today? Anything else?

A. I don't know but -- I don't know who she -- what she told to people, but she was not honest, so I don't know what she said to anybody except me.

Q. Looking at paragraph 38, it says that the defendants, meaning Maco, knew or should have known of Ms. Sims's dangerous proclivity. What do you -- what is your position? Do you have any personal knowledge as to whether Ms. Sims had any dangerous proclivity?

A. Well, she was strung out on drugs a lot and she it would always -- I don't know how many times she said I had to double up again today. And you just can't make conscious decisions about anything, you know, when your brain is scrambled.

Q. So what is -- how do you know she was strung out on drug?

A. She acted like it. I'm a nurse. I've been a nurse for over 30 years. I worked in rehab. She took a lot of benzodiazepines, and it was obvious.

Q. Okay. And how did she act like it? Tell me, what do you --

A. Kind of in a daze. You kind of -- you'd ask her a question, and you'd get this answer that makes no sense at all, and it isn't even related to your question, so I just learned not to be around her.

Q. Okay. Did you ever see her take bad drugs?

A. I did see her take an Ativan. And then I don't know why she would come and tell me if it wasn't true, but she doubled up on them all the time.

Q. Okay. And when did she tell you that?

A. All the time. I came home -- I can't even tell you. She wanted to -- her point was she smokes drugs, she can't do her job.

Q. So Dawn is just walking around the complex telling you that she doubled up on benzos all the time?

A. Yes, she did.

Q. Okay.

A. And she was always going to the doctor for some kind of something.

Q. Okay. And -- but you've never seen her prescriptions; correct?

A. No.

Q. And the only time you've ever seen her take a pill is the one Ativan that you saw her take?

A. I could have seen more. I really didn't pay that much attention. I knew she took them a lot and --

Q. You knew that. But sitting here today, can you personally recall seeing her ever take a pill

Case 6:23-cv-03015-BCW Document 137 Filed 01/12/23 Page 260 of 786
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
EXHIBIT A - STATE COURT FILE
800-567-8658                                                    973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

other than this one time that she took an Ativan?

A. Yeah. I think I did, but I can't give you the specific date.

Q. What do you recall?

A. That the last time she was at the emergency room, the doctor, all he did was give her more pain pills.

Q. So that's something she told you. Were you at the emergency room?

A. No. But why would she tell me?

Q. Okay. So have you ever seen her take them?

A. I have seen her take the Ativan.

Q. Have you seen her take anything else?

A. No.

Q. Okay.

A. I'm going to say no because I don't recall.

Q. When you say she walked around in a daze, did she walk around in a daze from the point she started to the point she ended, or did it ever change during her time at --

A. If it was --

MR. KLAR: Objection, incredibly vague.

(Court reporter interruption.)

MS. PUDLOWSKI:

Q. The daze that you describe her in that makes

you think she was strung out on drugs, was there ever a point during her time as property manager that you didn't feel she was strung out on drugs?

A. I didn't know sometimes if it was the drugs or if it was just her -- I have to be careful about what I say here. She just didn't seem to get with the program.

She just didn't know things she should have known. And a lot of times she would just go in her office and shut the door and go to sleep.

Q. Could it have been her personality? Is that what you were trying to get to?

A. No. Because she had a different kind of personality. But I could tell when someone has taken too many benzos.

Q. Could it have been anything else other than benzos? Sounds like you were trying to describe something else.

A. Well, I said benzos because she told me she took benzos. I don't know. She could have been on heroin for all I know. I don't know.

Q. Sorry. I meant the daze. It was a bad question. You mentioned that she was in a daze. Maybe it was something in drugs or maybe it was something else. What were you going after with

the something else?

A. I don't remember.

Q. Okay. And so from the very point you met her, that first couple of months that she started working, you immediately thought she was strung out on drugs?

A. No. I didn't say that.

Q. When did you first start thinking that she was strung out on drugs?

A. It was after a couple of months. I didn't follow her around and see what she was doing and talk to her every minute of every day. I had a job too. I wasn't around her that much, but when I was around her and she was on drugs, I could tell.

Q. And you could tell because she acted like she was in a daze?

A. You can tell by the eyes and -- well, if you've never been around someone that's been a benzo addict, you might not pick up on it.

Q. Well, tell me, what are those specific things that you think describe a benzo addict.

A. Well, people might be off a little bit. She can't answer a question. She has no energy and you can't find her.

Q. Did anybody -- did any of the other tenants, did you discuss with any of them that they thought that she was strung out on drugs?

A. I didn't discuss it with any of the other tenants, no.

Q. Did you ever make a complaint to Maco that you thought she was strung out on drugs?

A. I did later. I didn't at first, but they know now that I knew that she was on too many.

Q. Okay. And you reported that to Maco after Robin's death?

A. Yes.

Q. Okay. And so that -- how did you report it to them?

A. Just along with everything else.

Q. What do you mean just along with everything else?

A. All the retaliation issues that I was having with them.

Q. Okay. Did you ever see Dawn take any drug other than that one Ativan on that one occasion?

A. No. But that doesn't mean she didn't.

MS. PUDLOWSKI: Okay. All right. Let's go ahead and take a break now.

VIDEOGRAPHER: We're off the record at 2:50.

63 (Pages 246 - 249)

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
Case 6:23-cv-03015-BCW Document 136 Filed 01/12/23 Page 261 of 786
800-567-8658                                                                     973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

(Short recess was taken.)

VIDEOGRAPHER: We're back on the record at 3 -- I'm sorry, 3:02.

BY MS. PUDLOWSKI:

Q. All right. Ms. Austin, as I said before, everything that was on the record, all the rules still apply. You are still under oath. Do you understand that; that you are still under oath and are sworn to tell the truth today?

A. Yes.

Q. Okay. Moving on, there's another witness in this case that has been named by the name Rebecca Johnson. Do you know who Rebecca Johnson is?

A. Yes.

Q. Okay. Who is Rebecca Johnson?

A. She was a tenant that lived there with her husband and her kids. She home-schooled her kids there.

Q. Okay. And were you friends with Ms. Johnson?

A. We were acquaintances.

Q. Okay. Tell me, what is your understanding -- have you had any contact with Ms. Johnson since she left Maco?

A. She left way before I did. Maybe once or

twice.

Q. Okay. Have you had any contact with Ms. Johnson about this case in particular?

A. Very -- right in the beginning, very vague, just, you know, I'm going to do all I can for Robin, and she said she would too, and basically that was it.

Q. And is that something that you reached out to her, or did she reach out to you or --

A. I think I reached out to her. We were never really good friends. Her and Robin were better friends.

Q. And how did you reach out to her?

A. Through my phone.

Q. Social media message?

A. Social media.

Q. Okay. And what did Rebecca tell you that she could do to help Robin in this case?

A. She was definitely on Robin's side. She told me during an ice storm -- Dawn always went home early any chance of bad weather. So Becky was the one that spread the salt, you know, so we old people wouldn't fall and break our hips, and she kind of resented that, I think.

Q. Do you know if she had any -- was she there

when Dawn was property manager? Do you know?

A. Yes.

Q. Okay. Do you know if she had any complaints regarding Dawn?

A. At first she didn't, but in the end she did.

Q. What do you mean at first she didn't --

A. When --

Q. -- but then in the end --

A. When they first moved in, when Dawn first became property manager.

Q. Okay. And what were her complaints by the end, if you know?

A. I don't know.

Q. Did Rebecca tell you anything about how she could help in this case in particular?

A. No. We didn't discuss that.

Q. Okay. Do you know somebody by the name of Bridgette Tittner(ph)?

A. Bridgette Tittner? I remember her. She was a single mother and had a lot of children, and their names all started with P. That's about all I remember about it. I think she worked at Sonic.

Q. Have you had any contact with her since Robin's death?

A. No.

Q. Okay. All right. I want to talk a little bit now more about your contact with Maco and things after the fire. Okay? After the fire you mentioned that you made complains to Maco in regard to Dawn Sims's inspection; correct?

A. I did report that.

Q. Okay. And what is -- when you say you reported it, tell me specifically how you recall reporting it?

A. I don't recall. I either put it in writing or I called one of the supervisors or whoever would talk to me.

Q. So it was either in writing or calls. When you say in writing, was this like a handwritten note that you mailed them or e-mail --

A. No.

Q. -- or --

A. It would have been an e-mail.

Q. Okay. And the calls, did you ever actually speak with anybody, or were these just voice mails or something else?

A. Sometimes I spoke with people. Sometimes the people that I needed to speak with were not there --

64 (Pages 250 - 253)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Case 6:23-cv-03015-BCW Document 131-1 Filed 01/12/23 Page 262 of 786

Q. Okay.

A. -- or said they weren't there.

Q. Do you recall who specifically you spoke with?

A. I think I talked to Casey a couple of times.

Q. Okay. Anybody else other than Casey that you recall?

A. Karen Murphy.

Q. Okay. Anybody else?

A. But I avoided her as much as possible. I can't think of anyone else, or I didn't really get their name.

Q. Okay. So you talked to Casey, Karen on the phone, and possibly some other people who you don't recall their names?

A. Right.

Q. Okay. And do you have any -- were any of those calls recorded?

A. I don't -- I didn't record them. I don't know if they did or not.

Q. And then you also said that you would have written some e-mails or --

A. Yes.

Q. -- sent some e-mails.

A. Yes.

Q. Any other ways that you made complaints other than the phone calls or e-mails?

A. No.

Q. What do you recall, if anything, that Casey told you about this incident?

A. I really don't recall anything she told me. Because when I first had the mold problem and reported it, she came in, she didn't test it. She came with some young kid, and they looked at it and said it wasn't mold and left.

Q. Okay. What about Karen Murphy? Do you recall any specific conversations with Karen Murphy about this case?

A. They weren't conversations. They were hostile exchanges.

Q. Okay. And what do you remember about those?

A. She accused me of harassing and just different things.

Q. Harassing who?

A. Everybody, her, Dawn. Because I insisted on my toilet being fixed. That was harassment.

Q. Okay. Any other reason she told you or that she said that you were harassing them.

A. No. Because I wasn't harassing them.

Q. Okay.

A. After my apartment flooded because of the toilet, they wanted me to sign a work order that said leaky toilet. That way that would get them off the hook from blocking me from the emergency number.

But the first thing on the emergency call list is flood. My apartment was flooded. It was an emergency, and they wanted to say that it wasn't. And I wouldn't sign it because it was an emergency.

Q. And who are you talking about? Who wanted you to sign this specific --

A. Dawn and Karen.

Q. Anybody else?

A. No.

Q. I'm going to hand you what has been marked as Exhibit H, and these are some text messages I have that are reportedly between you and Dawn Sims. If you'd take a look at this exhibit --

A. I seen these a million times where they accused me of harassment. But back here somewhere, Dawn kept wanting me to call her and I refused, and she saw that as harassment.

Then I wasn't because I wasn't -- I messaged her, but I did not want to call her and talk to

her.

Q. These text messages -- number one, did you ever text Dawn Sims after the fire?

A. I think this -- well, this is July 20, so it would have been after the fire. But we texted all the time before the fire when we were basically friends, but I never texted her as a friend after that.

Q. My question -- take a look at these text messages. Do you recall, are those text messages that you sent to Dawn Sims?

A. Could very well be.

Q. Read through and look, please.

A. It says B2, Susan. I didn't put that on there. I did ask my kids to help me get away from there because I couldn't take it anymore. And I didn't sleep well. It was very noisy, yeah. I'm sure I'm very capable of sending these.

Q. Any of it -- so any of those text messages, do they fairly and accurately depict text messages that you would have sent Dawn Sims in July of 2021?

A. When I made these text messages, it was a private conversation like I had with her so many

65 (Pages 254 - 257)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Case 6:23-cv-03015-BCW Document 134 Filed 01/12/23 Page 263 of 786

800-567-8658                                                                973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

times before. So this is just a simple conversation. I didn't like being there. I was afraid for my life. It was like a prison. I did want to get out.

And I didn't see any point in wasting money on painting the stripes in the parking lot when we didn't -- we needed a surveillance camera. We needed safety things. We needed our smoke detectors fixed.

Q. Is there anything in there that you think is inaccurate or has been changed or --

A. I don't know what my time -- I probably had a glass of wine before I did that one. I don't know. I don't remember.

Q. Okay. So is there -- would you dispute that you sent her a message around July 19 of 2021 that said Beth, your drug dealers are here. I need to go to the store but can't do it when they're watching everybody. Living here is like being in a prison. I want out.

A. There were drug dealers there all the time. It wasn't a safe environment. There were drive-bys after the fire that -- for me, they called -- that man called me horrible names, but that really didn't bother me. I just had to go

in and shut the door. It was something constantly. It wasn't a safe place. It was definitely not for children.

Q. So do you recall sending these text messages to --

A. I don't recall the day or the time or anything like that.

Q. Would you have any reason to dispute that these text messages were sent by you?

A. No.

Q. Okay. Do you recall ever telling Dawn in July of 2020 that if she had any sense she would get out and look for another job, the thing with Robin will stick with her forever, she better get out while she can because they are blaming her for her -- Robin's death?

A. She was looking for another job. She was smart enough to do that. And everybody blamed her for Robin's death. We all -- everybody thought she would be fired immediately, but she wasn't. So we figured if they fired her, that would make them look more guilty. And what was the date you said?

Q. July 19 of 2021(sic).

A. Okay.

Q. So you write in here they are blaming you for her death. Were you --

A. Everybody blamed --

Q. -- blaming her?

A. -- her. Everybody did that knew the situation.

Q. Who were you replying to the text messages --

A. I have no idea. Other tenants had said they were surprised that she was still there or at least not put on suspension until it was finished, you know.

Q. Do you recall telling Dawn in July of 2021 that they will give me money to relocate or I will go to Robin's kids?

A. No. I don't remember that.

Q. Okay. So it's a text message sent from your number on this date. That wouldn't have been you?

A. No. I'm not saying it wouldn't have been me. Apparently it was me. I just don't remember saying that.

Q. Okay. So was there a time when you were telling Dawn Sims that Maco needs to give you money or else you're going to go --

A. No.

Q. -- do something with Robin's kids? What did you --

A. Karen Murphy would scream at me outside where everybody could hear that I needed to get my crap and get out of there. She didn't want me there. I was a problem for her at that time.

So I said Karen, you pay for my relocation, I will move right now. If she wanted me out that bad, she would have done it.

Q. Why did you send a message to Dawn Sims in July of 2021 saying they will give me money to relocate or I will go to Robin's kids?

A. I don't know why I would say that.

Q. What do you --

A. I have no idea.

Q. How do you think Dawn would have taken that message?

A. I don't care how Dawn took the message. I don't care.

Q. But you don't know your purpose in sending that --

A. No. I don't know why I'd say that about Dawn's(sic) kids. Dawn's(sic) kids already knew everything about the whole deal. I don't know

66 (Pages 258 - 261)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658          973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

why I would say that.

Q. Why did you tell Dawn in July of 2021 Dawn, don't walk, run away.

A. Because she's not going to come out of this well. If I was her, I would have either told the truth and took the high road and what may be, may be. But she chose to stay and lie about it, so I don't care what happens to her. I hope she gets what she deserves.

Q. What do you think she deserves?

A. I think she deserves manslaughter, but it's not up to me.

Q. Okay. If you wrote to her in July of 2021, just counting the people that have died since I've been here. Robin died in vain. Maco killed Robin. Live with it. I'm going to --

A. That's what I wrote, wasn't it?

Q. I'm going to do something about it because we are poor and have to live in a place like this. No sleep from Friday until Monday because of Bev's and Amber's drug runners. Do you recall sending those messages?

A. No. But I recall their drug runners.

Q. Okay. What did you mean by Maco killed Robin?

A. They did. Well, if you wanted to look at it that way. Dawn is Maco. Dawn lied about the inspection. Dawn didn't do the inspection to Robin's apartment, and then she lied about it. Now, to me that's guilt.

Q. So you sent these to Dawn, though, saying Maco killed Robin; correct?

A. I guess if it's on there.

Q. Why wouldn't you --

A. I was thinking --

Q. -- just send the message --

A. -- of her --

Q. -- blaming her for Robin?

A. Well, that would have been a little harsh, wouldn't it?

Q. I don't know. We'll see --

A. She did kill Robin basically, I mean if you want to look at it that way. Robin would still be alive if Dawn had done her job. That's the bottom line.

Q. Okay. Did you send a message in July of 2021 to Dawn that said next time Maco knocks on my door, they better have a check for me to relocate?

A. Oh, I probably did.

Q. And you can make more drawing unemployment?

A. Well, she talked about that too. She at one point was looking for another job because this job was too stressful. She couldn't handle it.

Q. Did you make statements to Dawn in July of 2021 that Maco better have a check or pay her -- pay you to relocate?

A. I don't remember saying that.

Q. Okay.

A. I might have, but I don't remember.

Q. What would be the purpose of telling Dawn in July of 2021 that Maco needs to send you a check to relocate?

A. Because I'm sick of the harassment and retaliation. I was sick to death of it.

Q. And what harassment and retaliation has taken place in July of 2021 by Maco at that point in time?

A. Go home and pick up your toilet and not use it for seven days.

Q. And it's your position --

A. And see how you feel.

Q. -- that this had taken place prior to these text messages?

A. It happened the first week of July.

Q. Okay. All right. And how did you report the toilet issue? What's your testimony?

A. I called the emergency after-hours maintenance number, but I had been blocked, so I couldn't report it.

Q. I'm going to hand you what has been marked as Exhibit I, and this portrays what looks to be an e-mail that was sent on Tuesday, July 20 of 2021 from Susan Austin to Maco management. And it states don't move into Summersville Estates, Summersville, Missouri, without lots of life insurance. Do you recall sending this complaint?

A. No, I do not.

Q. Could you have sent that complaint?

A. I don't know. I didn't -- I don't know.

Q. Do you know why the complaint submission would have had your name on it?

A. I don't know.

Q. Do you know if anybody is making complaints on your behalf?

A. Dawn's name was -- or Robin's name was on her inspection, and she was dead. So how did that happen?

Q. All right. So is it your position -- did you ever make this complaint?

67 (Pages 262 - 265)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658
973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

A. I don't remember making it, no. I don't remember.

Q. Could you have made this complaint?

A. I could have gone to the moon, but I wasn't invited. I mean I could have, would have, should have. And, like I said, they fabricate so many things. I don't trust anything from them.

Q. All right. This next one is Exhibit J, and this is an e-mail that is dated Tuesday, July 27. Shows that -- again, this is a complaint, and it has an e-mail listed as Saustin4853@gmail.com. And it states I live at Summersville Estates where a resident recently died when her apartment caught fire and did not have working smoke alarms. Now they are wasting money on cosmetics to the property which makes no sense. Do you know if you ever filed this complaint with Maco?

A. It doesn't make sense, so I could have done that one. But I'm not on trial here. Are any of these e-mails illegal that I sent?

Q. I can't advise you on that --

A. Well --

Q. -- ma'am, I'm not your attorney -- as to what or what isn't illegal.

A. I mean it's all true. She did die in her

apartment when it caught fire, and she couldn't get out, and nothing worked so I --

Q. Do you recall sending that e-mail to Maco or something similar?

A. I can't recall what happened several years ago. I just can't recall.

Q. Do you know if anybody would have used your e-mail or name to make this complaint other than --

A. They --

Q. -- you?

A. -- could have, but I don't know if they did.

Q. Okay. Were you making complaints or similar complaints to Maco in July of 2021?

A. I made that complaint to everybody that I could think of, every agency, every committee, every senator, every state representative.

Q. I'm going to hand you what has been marked as Exhibit K which shows an e-mail from Susan Austin at Saustin4853 from Tuesday, July 27, 2021, that states I live at Summersville Estates. I don't understand why Maco is spending time and money on cosmetics for this property. It isn't going to change the fact that there was a recent preventable death when an apartment caught fire

and had no working smoke alarms or an accurate inspection. Is this a report that you recall making?

A. The one coming out of the handbook says as tenants we are in our rights to complaint about safety issues. That's in writing.

Q. My question is is Exhibit K one of the complaints that you made?

A. I don't remember.

Q. Okay. Do you have any reason to dispute this being from your e-mail --

A. All --

Q. -- account?

A. -- the facts seem to be true.

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. Are these the type of complaints that you recall making to Maco after the fire?

A. Nobody was coming to our rescue. Nobody was doing anything to help those of us that were left there to help us try to figure out what we needed to do to make that place -- that was our home. Nobody wants to live there. It's just a place you end up when you have unforeseen issues in your life. I mean I didn't aspire to retire

in poverty and move into low-income housing. Farthest thing from my mind. Somebody had to make a stand. If I can go to Jeff City, which I plan on doing right away, I'll go because this cannot happen again.

Q. Okay. And so was this -- these e-mails were part of you making a stance?

A. I don't know who I sent that to --

Q. Okay.

A. -- or if I sent it.

Q. Do you know if Exhibit L was sent by you? It's another complaint shown to be from Susan Austin it states. I would like an apartment with a regional manager who doesn't block me from the emergency maintenance number so the next time my bathroom floods and toilet is unusable I can receive help. She has violated Fair Housing Act. This has not met HUD standards. I have concerns for my safety. So the apartment here caught fire and my friend did not survive. She had no working smoke alarms or inspections. Are these the reports you're talking about making?

A. I'm -- yeah. That sounds like something I would send to anybody that would read it.

68 (Pages 266 - 269)

Q. Do you know if you made this report or not?

A. I can't say 100 percent because I don't remember back that far.

Q. Okay.

A. I don't know who Maci Earnheart is. Who is Maci Earnheart?

Q. So the next exhibit -- that was L. This is a job work order that has your signature on it. Is this the work order that you've been discussing related to the mold?

A. Yes. The first time they checked when they said there wasn't any, so I added they stated there was no mold but there was because I had to buy the test myself.

Q. Okay.

A. That's a big issue, mold.

Q. Handing you what has been marked as Exhibit N, and this is another complaint dated November 24 from someone by name of Susan Austin using the email Saustin4853@gmail.com. It states this property is being investigated by the Fair Housing Act. It's not a safe place to live. Do you know if this is a complaint or anything that you sent to Maco?

A. Well, it's all true. They're being

investigated, and I did make a complaint to the Fair Housing Act.

Q. Did you make this complaint to Maco directly?

A. The same one? I don't -- because I don't know whose name is on there that I sent it to. I don't recognize that name at all.

Q. Okay. Looking at Exhibit O, which is dated November 26, I have a message again from a Susan Austin4853@gmail.com. It states I am a witness in a wrongful death lawsuit when a death occurred at Summersville Estates. I've been evicted. The property manager put false information in my file. I have no heat. There's mold in my apartment. I went seven days without a working toilet. I had to call the health department. Maco employees have made my life a living hell. I have been evicted. I have no heat. My apartment has mold. I have information about a fire and death of my friend who died in her apartment who caught fire. She could not get out. Do you recall making this report to --

A. No. But all those facts are true.

Q. Okay. I am going to hand you what has been marked as Exhibit P which is another complaint

from a Susan Austin4583@gmail.com that states on November 27, 2021, you and your lying employees are responsible for an innocent person's death. What are you going to do about it. Dawn Sims is a killer. Do you recall writing that?

A. No. I don't recall writing that.

Q. Have you ever told Maco that Dawn Sims was a killer?

A. No. I never did tell Maco that. And I don't know who Maci Earnheart is.

Q. Okay. Did you ever tell Dawn Sims that you think she's a killer?

A. Sheila Calvert, I don't know who that is either.

Q. My question is did you ever tell Dawn Sims that you think she is a killer?

A. No. I never did.

Q. Did you write on any social media post that you think she is a killer?

A. Not that I recall, no.

Q. Did you create a Facebook social media page in regards to Maco and blasting complaints about them?

A. Yes, I did. And several people joined.

Q. And on that social media account, did you

ever write that Dawn Sims is a killer?

A. Not that I recall.

Q. Have you ever been going around telling people that you think Dawn Sims is a killer?

A. I don't mention Dawn Sims's name to anybody here because they don't know her. And I'm just glad to be away from all those people.

Q. Have you ever left voices(sic) on Dawn Sims's or one of Maco's Summersville Estate's voice mail line in regard to her being a killer or anything --

A. I don't recall.

Q. I'm going to give you what's been marked as Exhibit Q. This is dated November 28, 2021, another complaint that shows an e-mail of Susan Austin@gmail.com. It says you hire these idiots and call them property managers. See you in court. And your idiot Dawn Sims's negligence caused the death of my friend on one of your properties. Did you ever write something to this effect?

A. I don't recall. I don't recall.

Q. Did you ever write anything or tell Maco that you thought their property managers were idiots?

Case 6:23-cv-03015-BCW Document 137 Filed 01/12/23 Page 267 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT 10 DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658                                                  973-410-4098

Page 274

A. I don't recall ever doing that.

Q. Okay.

A. And if they would have come and fixed something, maybe people wouldn't have to send those e-mails.

Q. And I'm going to show you what's been marked as Exhibit R which is another complaint dated December 3 of 2021 from somebody by the name of Susan Austin. It states Dawn Sims, the property manager, at Summersville Estates lied to the court to protect herself. It doesn't affect me because I'm moving to a better place despite her lies about me. But she is in very deep trouble. She's being investigated for violating Fair Housing. She lied to the USDA among other things. The information has been sent to the OIG. Did you ever send these complaints to Maco?

A. I don't recall that, but all the facts are true.

Q. I'm going to hand you what's been marked as Exhibit S. And this is an e-mail dated December 5, 2021 -- or sorry, December 4, 2021, from Susan Austin. It states I've lived in a Maco managed apartment for the past six years. it was a nice place to live until three years ago

Page 275

when they hired property manager, Dawn Sims. Do you think that is an e-mail that you sent?

A. There, again, I don't know who Maci Earnheart is or Sheila Calvert.

Q. Okay.

A. I guess they're from Maco. And, like I said, if they're not illegal, I'm not worried about it because --

Q. I'm not here to advise what is or isn't.

A. If it is wrong, tell me. I will get a lawyer and he can tell me because those -- all the facts are true. And they would post things about me that weren't true on social media and the Apartment Review, like Apartments.com, and I reported them to Google. And they took it off five minutes later because it was defamation.

Q. How many complaints do you think, written complaints do you think you've filed --

A. With who?

Q. -- against Maco in July of 2021?

A. I probably didn't waste much time with Maco because I knew they weren't going to respond or do anything. So why waste my time? I went for people that might really be able to help.

Q. And who was that?

Page 276

A. Like the USDA, the HUD, state representatives that Maco lied to every single letter that I sent out. And they -- we have to talk to management before we address this, and they would say there was no issue, and it's all been resolved. So there was no way I could get anything done.

Q. Did you ever call Dawn Sims at the Summersville line and leave voice mails on her message?

A. I don't recall.

Q. Okay. Have you recently sent any e-mails or voice mails to Dawn Sims about this matter?

A. Recently?

Q. Uh-huh.

A. I don't even know where she is.

Q. Okay. I have an e-mail that is dated May 20, 2022, from a Susanaustin4853@gmail.com to Summersville at Maco apartments. It says why did the manager, Dawn Sims, let people into my apartment without my knowledge or consent. Imagine when I came home after work to find people in my apartment. And why does she close herself in the office with a man for hours at a time instead of doing her job. Did you send this

Page 277

e-mail --

A. I could have.

Q. -- to Dawn?

A. Because she did let people into my apartment.

Q. This was just a month ago. Did you or did you not --

A. I don't remember --

Q. -- send this e-mail --

A. -- sending it. I don't remember.

Q. Hold on. Let me ask the question. Do you know if you sent an e-mail to Summersville apartment complex in May of 2021(sic)?

A. I don't know.

Q. Could you have?

A. I could have done a lot of things. I'm not going to say I could have. I don't know if I did that or not. I don't recall.

Q. Do you know if you sent an e-mail to the Maco Summersville e-mail address in June of --

A. I don't recall.

Q. -- 2022?

A. I don't recall.

Q. What about last week?

A. I don't recall.

70 (Pages 274 - 277)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF
800-567-8658                                          973-410-4098

Q. Okay. Do you recall -- I'm going to show what's been marked as Exhibit T which is another e-mail dated June 17, 2022. It says Dawn Sims --

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. This is dated Friday, June 17, 2022, from Susan Austin4853@gmail.com. Dawn Sims is the most incompetent individual I have ever had the misfortune to meet. She opened my apartment for people to enter without my permission or knowledge. She forged my inspection. She spent hours locked in her office with men. See you in court.

A. All the things she did were illegal, and that's why I put them in there. They're facts. They're fact.

Q. Did you send an e-mail in June -- did you send this e-mail on June 17, 2022, to Dawn Sims?

A. I don't recall.

Q. Okay. Are you -- do you recall any contact that you have reached out to Dawn Sims or Maco either through e-mail or phone in the last six months?

A. I don't recall.

Q. How do you think Maco or Dawn Sims would

receive all of these reports that are purportedly from Susan Austin?

A. The same way I had three letters a day taped on my front door and in my mailbox. Some would be certified and be in my mailbox anyway. I don't know.

Q. And how is that? How did --

A. I didn't want them to think I was going to back down because I'm not going to back down.

Q. So you said you would -- you think they would take it the way you took it.

A. I don't care --

Q. How did --

A. -- how they took it. Took what?

Q. How do you think they would take all these e-mails and calls from somebody by the name of Susan Austin?

A. I don't know.

Q. Okay. I am going to play a recording. Okay. And this is -- it's my understanding this is a recording dated from April 9 of 2022. Do you recall leaving a voice mail on April 29, 2022, at the Maco apartment complex?

A. I don't recall.

Q. Okay. I'm going to go ahead and play it.

And let me know if this is your voice. Hold on.

(Off-the-record discussion took place.)

MS. PUDLOWSKI: I'm going to try to play this, and hopefully you can hear.

(Off-the-record discussion took place.)

(Beginning of audio recording.)

(Sunday, 1:31 p.m. -- Sunday, 1:33 p.m., you lying, fucking whore. I had a maintenance emergency, and because of that, I went without a toilet for seven days. I'm suing your ass, you fucking old bitch.

(End of audio recording.)

A. That doesn't sound like me.

(Court reporter interruption.)

BY MS. PUDLOWSKI:

Q. Is it your testimony that you've never called Maco and cussed out Dawn Sims or anyone at Maco?

A. I don't recall anything like that. I don't know if I did it or not. I'm not saying yes or no.

Q. I'm going to play another recording, and let me know if this is you.

(Beginning of audio recording.)

(1:31 p.m. --)

(End of audio recording.)

THE WITNESS: I'm going to go get a lawyer. I'm sorry. I'm going to get a lawyer. I'm not on trial. I did not break the law, and I don't like being treated like I did.

MS. PUDLOWSKI: Did you get all of that, Roxann?

COURT REPORTER: Yes, ma'am.

MS. PUDLOWSKI: All right. I guess then at this point in time, we can go off the record for a minute. Are we off the record?

VIDEOGRAPHER: We're off the record at 3:34.

(Short recess was taken.)

VIDEOGRAPHER: We're back on the record at 3:42.

MR. KLAR: This is plaintiff's attorney, Brandon Klar. I just want to clarify that the witness, Susan Austin, has left the deposition and has no intent to return today. Therefore, the plaintiffs will subpoena Ms. Austin for a deposition to continue this one from its current place beginning with the defendants' attorney, Marie Pudlowski, asking questions of Ms. Austin, and then culminating in the plaintiff's attorney's questioning and then any redirect.

71 (Pages 278 - 281)

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Page 282

MS. PUDLOWSKI: That is fine. We can go ahead and go off the record unless you need something else from us at this point, Roxann.

COURT REPORTER: Nope. I'm good.

VIDEOGRAPHER: We are off the record at 3:43.

(Off-the-record discussion took place.)

MS. PUDLOWSKI: I'll take an e-tran of this one.

COURT REPORTER: Did you want a copy?

MR. KLAR: Yes, please. Can I get a PDF?

(Deposition recessed at 3:43 p.m.)

Page 283

CERTIFICATE

I, Roxann Zuniga, a Certified Shorthand Reporter of the State of Iowa, do hereby certify that there came before me at the time, date, and place hereinbefore indicated, the witness named on the caption sheet hereof, who was by me duly sworn to testify to the truth of said witness's knowledge, touching and concerning the matters in controversy in this cause; that the witness was thereupon examined under oath, the examination taken down by me in shorthand, and later reduced to printed form under my supervision and direction, and that the deposition is a true record of the testimony given and of all objections interposed.

I further certify that I am neither attorney or counsel for, or related to or employed by any of the parties to the action in which this deposition is taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

Dated at Des Moines, Iowa, this 18th day of July, 2022.

_____
CERTIFIED SHORTHAND REPORTER
AND NOTARY PUBLIC

Page 284

COURT MEMO

Bumeter, Jennifer Et Al

   Plaintiffs,

          Cause No.
vs.       21TECC00360
Maco Management Co, Inc Et Al
   Defendant.
     CERTIFICATE OF OFFICER AND
     STATEMENT OF DEPOSITION CHARGES
  (Rule 57.03 (g) (2) (a) & Sec., 492.590 RsMO 1985.)
     DEPOSITION OF Susan Austin
          ON
          6/29/2022

Name and address of person or firm having custody of the original transcript: Marie Pudlowski

TAXED IN FAVOR OF: Marie Pudlowski
       TOTAL................ $_____

   TAXED IN FAVOR OF: Other Attorneys
       TOTAL................ $_____*

Upon delivery of transcript, the above charges had not yet been paid. It is required that all charges will be paid in the normal course of business.

IN WITNESS WHEREOF, I have hereunto set my hand and seal on this   day of     ,  .

     _____
       Notary Public

* A completed signed Certificate of Officer and Statement of Deposition Charges pursuant to Rule 57.03(g)(2)(a) shall be provided upon request.

72 (Pages 282 - 284)

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

800-567-8658          973-410-4098

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

C E R T I F I C A T E

I, Roxann Zuniga, a Certified Shorthand Reporter of the State of Iowa, do hereby certify that there came before me at the time, date, and place hereinbefore indicated, the witness named on the caption sheet hereof, who was by me duly sworn to testify to the truth of said witness's knowledge, touching and concerning the matters in controversy in this cause; that the witness was thereupon examined under oath, the examination taken down by me in shorthand, and later reduced to printed form under my supervision and direction, and that the deposition is a true record of the testimony given and of all objections interposed.

I further certify that I am neither attorney or counsel for, or related to or employed by any of the parties to the action in which this deposition is taken, and further that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in the action.

Dated at Des Moines, Iowa, this 18th day of July, 2022.

_____
CERTIFIED SHORTHAND REPORTER
AND NOTARY PUBLIC

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

| & |
| --- |
| **&** 2:2 284:10 |

| 1 |
| --- |

**10** 54:16 136:17 176:9 198:9
**100** 227:7 270:2
**101** 231:14
**1010** 2:7
**10:31** 1:17 4:3
**1125** 2:3
**115** 3:10
**116** 3:10
**118** 3:10
**12** 53:7,8
**120** 2:3
**12:02** 83:22
**12:29** 113:16
**12:44** 113:19
**13** 141:5 162:25 164:10
**139** 3:9
**15** 116:5 216:15
**16** 73:21 171:21
**160** 14:5,20 15:23
**161** 3:11
**162** 3:10,11
**17** 122:15 172:16 174:3,7,12,16,18 174:21 175:21,22 178:4 179:25 278:3,6,18
**172** 3:11
**178** 3:11
**17th** 176:8 177:20
**18** 216:12,12
**18th** 283:15
**19** 218:10 258:16 259:24
**1980s** 29:23

**1981** 9:8
**1982** 18:16
**1985** 284:10
**1994** 16:4 18:17
**1:31** 280:7,25
**1:33** 280:8

| 2 |
| --- |

**2** 62:4 284:10,24
**20** 257:4 265:8 276:18
**2000** 16:4,5 31:7
**2000s** 10:14 11:5
**2007** 28:18 29:8 30:11 32:13 33:5
**2011** 33:13
**2012** 35:2
**2016** 35:23,25 114:16 116:5,7,13 116:16 120:20 232:8
**2017** 122:15 126:20
**2018** 126:20 162:14,25 164:10 166:18
**2019** 167:3 168:12 168:17 169:11 170:4,24
**2020** 171:8,21 172:14 183:18 219:7 259:12
**2021** 13:17,18 18:24 21:18 27:16 36:1 47:15 49:13 51:3 53:8 56:6 57:11 59:24 61:5 62:10 139:7 156:17 157:25 159:21 160:3,6,16 160:24 161:4 172:16 174:3,7

175:1,22 176:24
182:12 183:9,13
183:18 213:25
216:15 257:23
258:16 259:24
260:13 261:12
262:2,13 263:22
264:6,12,17 265:9
267:14,21 272:2
273:14 274:8,22
274:22 275:20
277:13
**2022** 1:17 4:3 276:18 277:22 278:3,6,18 279:21 279:23 283:16
**21** 3:6 13:16 122:15
**215** 3:12
**21de** 4:6
**21te** 1:2
**21tecc00360** 284:6
**22** 12:12,15
**220** 3:12
**23** 53:8,23
**24** 126:25 270:19
**24/7** 240:20
**256** 3:13
**25th** 176:8
**26** 168:17 271:9
**265** 3:14
**266** 3:12,15
**267** 3:16
**268** 3:16
**269** 3:17
**26a** 219:13
**26b** 221:25 222:4 229:15
**26f** 233:8
**26g** 233:17

**26h** 234:4
**26i** 240:5
**27** 175:2 176:2 266:9 267:20 272:2
**270** 3:17,18
**271** 3:19,20
**274** 3:21,22,23
**278** 3:24
**27th** 174:23,25 175:7,8 215:4
**28** 273:14
**29** 1:17 4:3 167:3 168:10 279:22
**2:50** 249:25

| 3 |
| --- |

**3** 171:8 250:3 274:8
**3,000** 210:14
**3/29** 166:18
**3/29/2018** 165:19
**3/29/2019** 168:9
**30** 244:15
**33** 3:7
**35** 3:8
**37** 243:9
**38** 244:1
**39a** 243:8
**3:02** 250:3
**3:34** 281:12
**3:42** 281:15
**3:43** 282:6,12

| 4 |
| --- |

**4** 3:3 162:14 274:22
**417-247-8832** 59:22
**4853** 72:13
**492.590** 284:10

Veritext Legal Solutions

800-562-8658 973-410-4098

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**4:30**  21:9

**5**

**5**  274:22
**500**  2:7 238:18
**505**  1:18
**52**  3:9
**53935**  13:4
**56**  3:9
**57.03**  284:10,24

**6**

**6/29/2022**  284:12
**62**  3:9
**63101**  2:8
**63132**  2:4

**7**

**720**  13:4,13,17

**8**

**804**  29:17
**80s**  29:9,12
**82**  9:8
**88**  9:12

**9**

**9**  279:21
**90s**  11:3
**911**  193:12,19,21
  194:2,8,15
**96**  10:9

**a**

**a.m.**  1:17 4:3
**abbey**  78:24 79:1
**abide**  116:17
**able**  50:13 57:14
  57:22 60:20 95:21
  95:24,25 96:3,23
  97:2,6 130:24
  275:24
**absolutely**  74:10
  157:4

**abuse**  185:23,25
**accept**  149:15,16
**acceptable**  41:5
**accepted**  199:11
**accidently**  73:3
**account**  73:2
  268:13 272:25
**accurate**  62:9,16
  62:21 169:8 268:1
**accurately**  257:21
**accused**  255:17
  256:21
**acquaintances**
  250:21
**act**  68:5,6,9,20,24
  244:18 269:18
  270:22 271:2
**acted**  244:14
  248:16
**action**  135:7
  283:11,13
**actions**  156:16
  229:17
**add**  62:22
**added**  270:12
**addict**  237:11
  238:23 248:20,22
**additional**  233:20
**address**  13:3,11,18
  14:20,25 29:16
  72:12,21 276:4
  277:20 284:13
**addresses**  112:6
**adequate**  234:6
**administrator**
  42:4,4
**admissible**  31:12
**admitted**  72:3
**adult**  15:4,5 84:24
**adults**  12:11 235:2

**advise**  266:21
  275:9
**affect**  274:11
**affidavit**  52:12
  54:12,13 58:15,20
  62:2,4,9 139:3
  156:15 214:3
**afford**  149:4
**afraid**  46:3 78:23
  241:25 258:3
**afternoon**  190:23
**age**  205:6
**aged**  133:5
**agencies**  49:17
  69:14,21,22
**agency**  19:6 20:6,7
  69:5 267:16
**aging**  64:1 69:6,7
  142:23
**ago**  19:19 26:25
  27:5,9,18 29:1,10
  34:23 38:9 60:7
  70:20 71:16 85:17
  100:10 102:7
  103:13 104:2
  164:16 204:11
  215:5 226:3 267:6
  274:25 277:6
**agree**  20:18 115:6
  115:8,12 116:15
  140:2 167:17
  168:6 169:16
  173:8 182:11
  183:12
**agreed**  116:12,16
  120:16
**agreeing**  115:17
**agreement**  29:24
**ahead**  26:2 31:19
  33:21 92:3 113:14
  139:4 208:24

215:19 249:24
  279:25 282:2
**ahlheim**  2:6
**aid**  26:6
**aides**  131:23
**air**  190:24 211:1
  223:25 226:11
**al**  4:5,6 284:3,7
**alarm**  97:7,10
  99:10 101:3,13
  105:12 107:8
  115:17,22,25
  116:7,17 117:8,14
  118:1,7,11 119:3
  119:14 120:19
  125:13 163:24
  169:23 177:2
  187:18,21,25
  189:12 227:10
**alarms**  82:2,7,10
  82:12,21,25 98:5
  99:13 103:3,18
  104:10 109:20
  110:2,6 111:13,16
  117:12,16,19
  118:2,8,13,18,22
  121:9,12,19
  125:25 160:2
  166:17 170:8,24
  176:23 177:1
  187:12,13 189:10
  189:17,24 207:6
  216:17 266:15
  268:1 269:22
**alive**  263:19
**allegation**  220:22
**allegations**  220:18
  220:20
**allowed**  25:11
  26:16 31:9 103:9
  104:25 166:22

Case 6:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 273 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

233:9

**alter** 180:12

**altogether** 188:2

**alton** 88:19,23,24
 89:1,11 90:3,4,15
 93:5 100:11

**amber's** 262:21

**ambiguity** 56:25

**amended** 215:12

**american** 20:8,9
 20:25

**angered** 45:18
 49:10

**animal** 136:14

**animals** 136:12
 230:8

**annoyed** 101:9

**annoying** 101:1,8

**answer** 6:24 7:5
 8:5 31:14 50:1,3
 50:10,10 83:4
 217:2 244:21
 248:24

**answered** 58:8
 73:19

**answering** 7:3

**answers** 84:3
 230:6,11

**antonio** 26:9

**anybody** 13:10
 14:19 17:6 36:18
 37:7 52:4 54:4
 68:21 69:7 83:8
 92:22 96:19
 106:25 107:2,8,10
 110:1 111:24
 128:16 133:9
 137:25 141:25
 142:14,25 144:12
 144:19 145:14
 147:3 166:23

183:11 186:22,25
187:6,6 188:12
193:25 200:6
204:20 208:12
209:18 227:12
232:3 238:22
243:24 249:1
253:21 254:6,9
256:14 265:19
267:7 269:25
273:5

**anybody's** 81:1
 82:24 91:10
 223:14

**anymore** 19:12
 22:8 28:4 32:7
 66:17 117:4
 134:20 150:8
 152:10 161:2
 170:5 257:16

**anyway** 123:21
 146:3 279:5

**apart** 122:23
 229:24 236:6

**apartment** 13:5,7
 13:8,22,25 14:4,6
 14:16 16:8 33:4
 35:13 36:15 40:12
 49:14 51:8 63:17
 63:20 66:3,8,18
 79:15 80:3,7,13,16
 80:20 81:2,5,6,16
 81:22,24 82:1,5,7
 83:2,9,18 84:13,13
 84:18,23 85:2,7
 86:1,10,22 87:7,8
 87:9,13 88:20
 89:2,13,15 90:5,9
 90:13,23 91:3,6,9
 91:19 92:13,16,23
 93:1 96:14,20

98:2,5 108:11,15
108:22,22,24
109:11 110:17
111:10 112:1
114:12,21 120:15
120:16 121:1
122:25 126:1,21
126:25 141:16
142:2 144:25
147:17,19,20
151:15 153:13
157:3,9,10,12,14
157:25 158:7
159:22 160:7,16
160:23 164:21
166:23 175:21
176:10 179:25
181:10,21 183:3,9
183:13,17,23
184:1,10,11
187:17 190:13
191:7 193:11
201:15 204:12,18
205:25 216:14,15
217:6 218:12,25
219:5 223:12,16
224:5,9 225:7
226:24 227:9
228:19 233:19
235:1,3,4,5 236:2
241:10,17,22
242:3,7,14 256:1,7
263:4 266:13
267:1,25 269:14
269:20 271:15,19
271:21 274:24
275:14 276:21,23
277:5,13 278:9
279:23

**apartments** 26:11
 35:21 81:10,13

82:18 156:23
 231:4 276:19

**apartments.com**
 275:14

**apologize** 113:13

**apparently** 56:10
 70:22 71:17
 173:13 186:9
 260:21

**appear** 5:4

**appearance** 4:9
 133:1

**appliances** 231:8

**applied** 117:15
 118:1 149:11

**applies** 84:4

**apply** 113:22
 149:12 250:7

**appointment**
 181:23 205:15
 207:4

**appointments**
 93:15

**appreciate** 171:13

**approached**
 151:23

**appropriate**
 232:10,18

**approximately**
 14:13 16:3

**apricot** 13:4,13,17

**april** 279:21,22

**area** 9:24 11:11
 12:19 15:25 16:6

**argue** 199:10,15
 199:17

**argued** 198:10

**argumentative**
 49:24 51:6

**arm** 159:6

Case 5:23-cv-03015-BGW Document 15 Filed 01/12/23 Page 274 of 786

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**arrangements** 34:13,24
**arrive** 192:20
**articles** 63:10
**ashtray** 87:21
**ashtrays** 86:7 87:16
**asked** 39:11 43:14 58:8 62:11 71:15 72:21 84:8 108:11 142:13 148:20 150:23 152:15 153:4 157:1 161:13 175:17 179:14 180:12,25 192:16 203:15 204:8 212:8 228:4 242:21
**asking** 61:16 85:5 85:6 145:4 163:15 168:4 178:20 220:23 281:23
**asks** 155:25
**aspire** 268:25
**ass** 280:11
**assist** 15:18 212:5
**assistance** 97:3 209:19
**assisted** 115:13
**associate** 18:6,10
**assume** 8:5 154:7 230:14
**assuming** 225:1
**ativan** 158:19,20 245:1,20 246:1,12 249:21
**attach** 99:20
**attached** 32:11
**attention** 135:2,3 158:3,4 159:23 180:7 245:22

**attorney** 4:24 5:2 5:7 27:13,25 50:4 59:15 63:22 69:16 89:22 149:12 214:5,7 266:23 281:16,22 283:11 283:12
**attorney's** 281:25
**attorneys** 7:22 59:18 284:16
**audio** 280:6,12,24 281:1
**august** 171:8
**austin** 1:7,14 4:4 4:17,22 5:13,14 8:11,12,25 10:17 10:25 11:2,11 15:11 17:11 50:17 52:12 54:12 57:4 58:11,15 83:24 113:21 168:18 172:4 250:5 265:9 267:20 269:14 270:19 273:16 274:9,23 279:2,17 281:18,20,23 284:11
**austin's** 30:16 169:12
**austin4583** 272:1
**austin4853** 271:10 278:7
**automatically** 76:19 190:10
**avenue** 1:18
**avoided** 254:10
**aware** 25:1,7,17 26:14 27:1 28:15 28:18 35:3 91:2 94:6 95:6 144:17 183:14 186:22

189:3 211:4,22 218:14 219:16 228:9

## b

**b** 3:7 33:21,22
**b2** 257:14
**baby** 92:8 113:4,7
**babysat** 200:11,13
**babysit** 200:6
**back** 5:18 10:22 16:5 18:17,24 21:3 29:8 32:5 50:14,16 59:23 67:11 69:25 70:2 70:4 74:16,16 83:22,24 105:9,14 105:18,20 111:9 113:18,21 116:7 116:13,15 147:21 148:13 150:14,22 173:3 174:6 190:18 196:10 202:19 213:9 229:6 250:2 256:21 270:3 279:9,9 281:14
**backdate** 123:16 123:25 126:7 178:13,24 179:1 179:15 207:10
**backdated** 179:22
**backdating** 178:18
**background** 17:17 221:10 238:15
**bad** 6:20 7:24 43:6 65:17 90:16 158:11,13 226:17 227:15 244:25 247:22 251:21 261:10

**bag** 182:16 183:1 217:19,20
**baking** 190:10
**ball** 70:22,23 71:7 71:19,21
**bands** 211:16
**banged** 66:6
**bankrupt** 215:7
**bar** 134:19
**barbara** 28:19,21 28:24 29:12,19 32:16
**barely** 133:4
**barking** 36:5,7 135:22 136:10,19 136:20,25
**barn** 30:20
**base** 217:21
**baseboard** 105:10 105:23 111:11
**based** 51:1 76:4 85:6 135:6 161:23 182:6 191:10 229:8
**bases** 134:1
**basic** 194:20,21
**basically** 109:4 219:14 240:13 251:6 257:7 263:17
**basis** 41:24 73:13 87:15 98:17 100:22 118:8 129:21 143:4 156:11 182:24 216:22,24 219:1 224:7 230:18 232:24 234:14
**basket** 135:20
**baskets** 134:19,20 134:23

Case 1:23-cv-03015-BCM   Document 15   Filed 01/12/23   Page 275 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

bathroom 5:21 63:16 73:17 74:14 124:24 176:23 177:1,3,6 269:17
batteries 82:20 99:21 101:14 103:5,20,22 106:14 164:11,18 170:2,25 176:22 176:25
battery 101:5 102:11 164:1 169:24 170:17
beat 30:20 64:17
beau 235:16,22,22 236:12,15,19,24 237:22 238:10 239:1
becky 251:21
bed 88:2
bedroom 85:12,16 88:1 190:18 235:2 235:5
beep 100:25 101:1 101:1,4,4,4,7,8,10
beeping 101:16,18 101:23 102:9
began 120:20 138:20 171:5
beginning 41:3 95:5 138:15 146:15 214:5 251:4 280:6,24 281:22
behalf 4:10,13 38:1 265:20
believe 29:18 38:13 70:3 89:19 93:3,7 129:20 139:5 164:13 170:22 178:16

216:5 217:9 237:3
believed 129:20
believing 216:6
ben 116:19 117:1 120:10,13,21,24 121:3,20 165:7,14
benzo 248:20,22
benzodiazepine 158:11,14
benzodiazepines 244:16
benzos 245:10 247:15,17,19,20
best 7:2,4 30:17 50:18 62:9 120:10 145:2 153:24 203:10 205:3
bet 98:15,17
beth 258:17
better 5:17 76:19 251:11 259:14 263:23 264:6 274:12
bev's 262:21
beverly 40:21 185:19,24 186:16
beyond 11:16 51:24 94:7 232:14 233:13,23 234:9
big 78:25 87:17 132:15 146:12 270:16
bigger 204:2
birth 92:8
bit 17:16 62:23 76:22 119:24 154:7,8 161:25 214:16 241:18 248:23 253:3
bitch 280:11

bitty 83:18
bjklar 2:4
black 86:19,19
blame 78:23
blamed 259:18 260:3
blaming 138:12 259:15 260:1,4 263:13
blank 142:9,10 172:11 175:16,18 177:15,18,21 180:3
blasting 272:22
block 269:15
blocked 73:24 74:1,8 146:1 265:4
blocking 146:6 147:6 148:14 256:4
bluff 23:8
blurb 168:8
body 55:12 131:17 132:16
boss 31:21 176:6
bother 80:1 126:18 127:12 151:24 258:25
bothered 166:25
bottom 116:1 263:20
bought 66:12
boy 9:16,17
boyfriend 38:5 151:22 222:19 224:12 228:20 234:18 237:21,25 238:16 239:1,5 242:8

brace 159:7,7
brain 106:13 244:11
brakes 211:1
brandon 2:2 4:10 5:2 51:19 281:17
brandon's 54:22
break 5:20 113:12 208:24 249:24 251:23 281:4
breaking 99:15 226:8
bridgette 252:18 252:19
briefly 4:23
bright 141:2
bring 28:12 46:17 114:17
bringing 33:14 228:18 236:15
broke 147:9,10,11 147:15,15 148:6 215:6 226:5
broken 146:23 231:7
brooks 40:21 185:19,24 186:16
brought 47:2,19 47:23 48:8 49:14 123:10 148:17 160:25 224:24
building 89:6,10 193:16
buildings 89:4
bullet 54:15
bumeter 1:2 4:5 4:11 5:3 194:19 195:7 284:3
bureau 76:19
burned 183:3

Case 3:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 276 of 786

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**burnt** 218:24
**bus** 21:4 51:10
**business** 76:19
284:19
**busted** 49:18
86:20
**busy** 161:6
**butt** 88:10,14
**button** 118:10
**butts** 85:25 87:18
88:1
**buy** 210:6 211:10
270:14
**bys** 258:23

**c**

**c** 2:1 3:8 4:1 35:1
283:1,1
**cabinet** 99:14
103:13,14 104:4,6
**cabinets** 97:17
**call** 25:9 26:23
28:3,3 37:11
38:22 42:13 64:19
65:19,20 84:24
129:3 155:10,13
188:14,25 194:7
203:22 205:14
214:14,22 225:8
256:6,22,25
271:16 273:17
276:8
**called** 4:18 23:17
26:17 27:17 34:13
34:24 37:13,15,17
37:22 38:2,3,15,18
39:12,14,23 40:20
42:9,23 43:10
44:13,17 49:19
64:13,18 65:3,15
66:2 71:8 73:17
79:21 101:23

152:14 181:22
185:21 188:15
189:1 193:12,18
193:21 194:1,15
199:4 206:23
207:3 234:1,22
253:12 258:24,24
265:3 280:17
**calling** 38:19
40:23 45:24 46:6
46:15 193:12
202:5
**calls** 79:9 199:6
214:13 253:14,20
254:18 255:2
279:16
**calvert** 272:13
275:4
**camera** 258:7
**cancer** 77:8 154:4
154:5
**cane** 93:23,25
94:10,11,14 97:4
98:24
**cans** 208:22
**capable** 100:21
178:10 180:8
234:12 257:18
**caption** 283:5
**car** 22:7 49:18
76:25 77:18 87:22
144:3 146:23
148:2,5 151:19
152:6,9,20 185:22
210:12,13,15,16
210:23 211:1
231:5,6
**card** 60:13,18,19
61:10 210:11
**cards** 60:10
210:10

**care** 19:5,9,18,22
20:3,19 66:7,9,16
66:19,20 67:10
95:25 117:11,16
118:2 119:5,8
147:13 170:8
185:13 200:4
235:22 240:7
261:19,20 262:8
279:12
**career** 23:11
**careful** 86:4,6
87:23 247:5
**carelessly** 219:15
232:9,17 233:9,18
234:5 240:6
**caretaker** 95:17
**carol** 4:17 5:13
8:11,12
**carolyn** 88:23
**carpet** 225:25,25
227:10 228:6
**carpeting** 222:24
223:2,25 224:1
226:25 227:14,17
229:4
**carroll** 11:15 16:1
16:2
**cary** 2:6
**case** 1:2 4:25 5:17
16:22 17:7 23:22
23:24 24:25 25:7
25:22 26:3,15
27:2,13 28:1,7,14
28:18 29:5 31:18
33:9,14 48:2
51:18,24 52:8,13
62:25 63:2,6 67:2
74:19 75:20,24
76:2 101:22
214:19,23 215:12

250:12 251:3,18
252:15 255:13
**case.net** 31:17
**cases** 24:4 214:17
**casey** 109:3,23
110:5 112:3 254:5
254:6,13 255:4
**cast** 159:7
**caught** 103:11
104:4 230:1
241:23 242:3
266:14 267:1,25
269:20 271:21
**cause** 4:6 283:6
284:5
**caused** 84:23 85:8
118:15 151:18
273:19
**cc00360** 1:2 4:6
**ceiling** 100:4
**cellular** 60:2
**center** 21:25 22:10
22:13,14 24:19
**certain** 46:16
125:17 149:14
180:25 239:11
**certainly** 72:17
181:18 242:15
**certificate** 284:9
284:24
**certified** 1:15
27:12 279:5 283:3
283:21
**certify** 283:3,10
**chain** 106:11
**chair** 184:4
**chairs** 114:12
**chance** 99:14
150:11 251:21
**change** 8:19 60:10
97:6 103:5 106:13

Case 1:23-cv-03015-BCM Document 15 Filed 01/12/23 Page 277 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

111:4 170:17 176:19 177:9 178:13 180:13,20 180:20 187:12 241:12 246:20 267:24

**changed** 62:21 109:5 116:23 169:24 170:2 174:17 176:13,18 258:11

**changing** 117:23 118:18 180:6 234:21 241:14

**chaos** 235:8

**charges** 284:9,18 284:18,24

**charles** 17:22,23

**cheap** 115:1

**check** 99:13 111:12 118:23 121:8 124:8,17 263:23 264:6,12

**checked** 111:16 121:10 160:2 229:20,25 230:5 230:10 270:11

**checklist** 126:16

**checks** 238:15

**chief** 41:15 152:15 153:12 154:23

**child** 200:4 235:6

**children** 9:13 11:8 11:16 12:6,11,21 29:10 44:3,7,8,11 45:5 133:5 196:4 197:4 199:21 201:3 221:11 235:2,20 252:20 259:3

**childress** 2:6

**chose** 106:22 127:14 262:7

**chris** 41:19 152:17 243:4

**chromosome** 113:6

**cigarette** 85:25 87:18 88:1,5,10,14

**cigarettes** 85:25 87:23

**circuit** 1:1 4:7 26:22,23 171:14

**citizens** 22:3

**city** 56:3 202:9 269:4

**civil** 23:20

**civilian** 191:23

**claim** 62:15 63:2 122:3 156:16 216:8 217:13 220:17 221:22 227:23 233:8 238:4,9 243:15

**claimed** 169:1

**claiming** 123:23

**clarification** 56:17

**clarified** 56:16

**clarify** 281:17

**clarifying** 162:8

**clark** 18:9

**clause** 166:21 237:17 241:1

**clean** 83:9 96:4 118:7 181:20 184:10,11 216:17 217:6

**clear** 85:19 154:8

**cleared** 32:6

**clearly** 58:19,21 175:11

**cleavage** 130:21 131:16

**clerk** 26:22,23 27:17 56:3

**clients** 5:18 21:11

**climb** 97:17 98:22 100:3 103:2,19,21 103:23

**climbed** 97:20 100:5

**climbing** 103:14

**clinic** 77:2

**clogged** 222:21,23 229:3,3,4

**close** 94:16 133:14 133:14 144:21 158:17 276:23

**closed** 37:19 233:15

**closer** 190:25 191:1 197:1

**closest** 136:23

**clothes** 80:15

**clue** 35:8

**cluttered** 83:11,12 86:22

**cochran** 116:19 120:10,13,21 165:7,14

**collected** 210:13

**college** 18:5,9,11

**come** 31:3 41:8 42:15,25 45:20 47:16 78:23 79:15 80:2,12,14 91:5 92:15 96:5 101:15 107:15 108:1,11 109:13 124:9,11 124:12 150:14 153:13 157:10 158:10 160:7

168:15 181:24 196:20,23 197:6 201:1 214:15 224:13 229:21 242:10 245:2 262:4 274:3

**comes** 102:1 108:19 126:21 127:1 178:19 181:13,15

**comfortable** 91:10

**coming** 39:5 40:13 43:19 90:9,11 91:8 92:22 124:5 125:6 179:6 191:17 196:4,11 201:8 203:1 205:23 217:6 268:4,19

**command** 106:11

**commencing** 1:17

**commented** 153:6

**comments** 168:8 168:10 169:17

**committee** 267:16

**common** 156:16 205:8

**communication** 117:23

**company** 4:5 228:18 233:4

**compare** 167:21

**compared** 76:10

**comparing** 84:15

**compensation** 209:20

**complain** 65:19 111:5 170:7 227:13,16

**complained** 128:13 135:21

Case 1:23-cv-03015-BCM Document 15 Filed 01/12/23 Page 278 of 786

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

136:20,24
**complains** 253:5
**complaint** 35:19
36:1,4,6,8,12,17
37:1,2,3,4,7 44:21
67:14 68:8 70:24
71:10,13 73:15
106:3,7 249:6
265:12,14,16,25
266:3,10,17 267:8
267:15 268:5
269:13 270:18,23
271:1,3,25 273:15
274:7
**complaints** 20:20
35:10,15 36:22
68:19,21 69:10,14
69:20,23 112:8,18
185:25 186:3,15
186:23 187:3
234:15 252:3,11
255:1 265:19
267:13,14 268:8
268:17 272:22
274:17 275:17,18
**complete** 17:17
18:5 109:16 121:6
126:3 151:1 225:2
**completed** 18:6
162:15 163:2
166:6 171:23
178:6 284:24
**completely** 102:12
**completing** 122:18
123:9 162:20
**complex** 13:22,25
14:4,6,17 16:9
40:12,13 96:14,20
110:17 114:9,21
121:18 187:17
200:12 219:16

245:9 277:13
279:23
**complexes** 89:3
**compromised** 78:7
78:8
**concern** 83:1
84:18,23 85:8
87:24
**concerned** 41:10
45:3 81:24 105:11
185:11 194:11
**concerning** 283:6
**concerns** 40:13
185:4 269:19
**condition** 81:6
84:18,22 85:7
86:10,21 189:9
218:12
**conditioner**
190:24 211:1
223:25 226:11
**conducted** 216:13
**confessions** 144:18
**confused** 56:12
**confusing** 56:14
56:15 58:10
**connected** 96:17
**conscious** 244:10
**consent** 276:21
**considered** 18:19
205:2
**constantly** 101:1,4
101:10 259:2
**consumed** 92:7
215:6
**contact** 9:20 70:18
70:21 77:25
112:22 113:3
114:1 151:10
188:8,12 194:18
201:2,9 202:1,16

206:2 207:25
208:6,15,17
209:10,14 211:13
213:14,24 230:17
250:23 251:2
252:24 253:3
278:20
**contacted** 72:7
151:13 154:14
185:3 202:13
**contacts** 188:21
**contained** 56:4
62:3,8 165:15
**continue** 281:21
**contradicting**
58:24
**control** 128:17
**controversy** 283:6
**conversation** 6:22
50:19 104:3
141:11 207:16
220:25 221:6
257:25 258:2
**conversations**
39:1 255:12,14
**conveyed** 204:7
**cook** 19:24 22:2
95:25 96:1
**cooked** 98:9
187:23 188:1
**cooking** 190:9
**cooperative** 42:13
234:2
**cop** 152:5 237:21
238:16
**copies** 122:1 140:7
180:25 204:9
228:4
**copy** 64:2,4
114:17 128:5
161:22 162:1

180:24 213:8
215:11 282:10
**coroner** 75:3
154:4
**coroner's** 75:1
**correct** 5:4,9 7:8,9
9:5 10:25 11:6,7,9
16:7 21:22 25:19
35:23,24 47:17,20
56:6 68:24 69:1
76:13 77:19 92:19
93:6 98:2,3
101:24 103:6,12
104:11,20,22
105:7,25 106:1
109:8 110:11,18
110:20,24,25
114:5,21,22
115:14,15 117:17
120:4 123:6,7
124:1,2 125:7
126:2,23 127:3,4
127:15 128:3
140:18 145:5
151:3,4 152:24
155:14,21 156:3
156:18,19 164:5
165:1 167:8 171:2
171:6 173:23
177:13 178:22
182:13 187:18
189:7,11 192:10
202:22 217:24,25
218:2,3 226:8
227:12 230:15,18
230:21 245:17
253:6 263:7
**correctly** 107:18
127:13 138:16
**correspondence**
216:4

800-567-8658                    EXHIBIT A - STATE COURT FILE                    973-410-4098
Case 4:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 279 of 786
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**cosmetics** 266:15 267:23

**counsel** 4:8 5:4 26:2,5 27:21,23 51:19,23 283:11 283:13

**counter** 149:5

**counting** 262:14

**county** 1:1 4:7 11:15 16:1,3,15,16 16:17 17:22,23 42:1,2,23 189:1

**couple** 22:6 70:20 72:8 73:7 94:13 120:24 128:23 139:24 209:15 248:4,10 254:5

**course** 90:12 105:10 130:14 149:3 206:7,12 216:4 284:19

**court** 1:1 4:7 6:7 6:10,17 7:1,9,16 10:10,15 23:22 25:8,9 40:8 50:16 61:23 83:20 92:6 107:24 110:15 113:12 129:11 132:1 182:20 231:23 243:1 246:23 268:15 273:18 274:11 278:4,13 280:14 281:8 282:4,10 284:1

**courtroom** 25:11 26:16 212:16

**cousin** 16:24

**cover** 204:3

**covid** 26:12 78:21 78:22 81:2 149:2

188:15,18,23

**crap** 261:6

**crazy** 48:3 125:3 136:18

**create** 53:25 54:4 272:21

**created** 52:20,22 53:3,20,21

**creating** 214:3

**credibility** 43:11 217:9,11

**cried** 92:11

**criminal** 23:15 43:12 146:25

**crisis** 78:25

**criticize** 7:10

**crooked** 128:14

**crumb** 148:7

**crying** 158:10

**cs5283655** 1:25

**csr** 1:24

**culminating** 281:24

**current** 281:21

**currently** 12:24 13:11 19:2,4 59:19,21 73:11

**curtains** 66:6

**cussed** 280:17

**custody** 284:13

**cut** 20:2

**d**

**d** 3:9 4:1 8:21 52:12 56:5 62:4 139:3,5

**daily** 80:9

**dakota** 64:16,17

**dale** 8:21,23 11:18 12:4,17 17:11

**damaged** 157:20 226:15

**damages** 118:15

**danger** 46:21 49:6 49:8

**dangerous** 21:13 243:9 244:3,6

**date** 93:4 116:3 140:22 162:12,13 162:20,23 167:12 171:23 172:13 173:7 175:4,13 179:8,8 180:6,11 180:13,14 201:15 202:19,21 242:4 246:3 259:23 260:18 283:4

**dated** 167:2 168:16 174:3 178:1,2 266:9 270:18 271:8 273:14 274:7,21 276:17 278:3,6 279:21 283:15

**dates** 174:17 177:9 180:6

**daughter** 181:23 194:19 198:6,7,13 198:20 200:21 205:10,17 208:1,6 208:8,9

**dawn** 24:13 25:6 37:24 38:1 41:19 43:25 46:12,13,21 47:2,15 48:8 49:2 49:7,21 51:2,3,7,8 73:22 86:11,15 87:8 99:17 100:11 102:14,15,24 103:5,8 104:9 106:3,4,8 107:11 108:11,19 109:8 109:13,16,20

110:6,8,14,18 111:5,22,25 112:6 112:21 116:24 117:6,10,15 118:1 119:5,8,19 120:12 121:3,6 122:7,9,17 124:3 126:20 127:23 128:8,18 137:8,24 138:1,12 138:14,15,21 139:8 141:17 143:1,15,16 144:1 144:12,14,17,21 145:14 146:24 150:23 151:17 153:4 155:25 156:22,25 157:24 160:6,15 163:3,5,9 163:15,18 164:8 165:19 166:3 167:6,14 168:17 169:12 171:4,22 172:17 178:6 182:7,16 183:8,12 183:16,22 184:1,7 184:22 185:4 186:1,5,6,17,18,23 186:25 187:4,7,11 188:9 190:19 193:10,12,21,22 194:1,6 202:22 203:15,22,24 204:3 206:8,10,13 206:24 207:1,3,9 216:2,6 218:24 220:2 221:3,18,22 223:21 225:9,17 226:16 227:12 230:14 231:6 232:4,5 236:18 237:1,18 238:4,5,9

Case 23-cv-03015-BCW Document 15 Filed 01/12/23 Page 280 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

238:9,25 239:9 240:1,25 245:9 249:20 251:20 252:1,4,9 253:6 255:20 256:13,18 256:22 257:3,11 257:22 259:11 260:13,24 261:11 261:17,19 262:2,2 263:2,2,3,6,19,22 264:5,11 272:4,7 272:11,15 273:1,4 273:5,8,18 274:9 275:1 276:8,13,20 277:3 278:3,7,18 278:21,25 280:17

**dawn's** 45:6,7 144:2 151:21 236:8 240:4 261:24,24 265:21

**day** 27:10 39:13 57:8 62:16 66:6 66:18,22 73:21 77:1 78:1,2 79:6,7 79:17,22 85:16 111:13 112:23 130:2,3,5,10,13,17 130:23 131:5,10 133:14 134:12 136:22 140:25 145:12 147:17 148:4 151:13 155:8,25 157:4 160:13 164:22 175:3 176:10,11 179:11 184:21 189:2 193:8 194:9 203:1,6,7 206:3 222:13,15 226:20 230:18,18 236:25 248:12 259:6

279:3 283:16 284:20

**days** 36:16 44:4 63:17 113:1,10 139:16,23,25 140:2,12,17 141:1 141:11 142:13,24 144:10 145:3,11 145:17 146:4,13 150:22 160:14 174:11,15 175:13 175:17 176:9 180:11 194:9 203:15 215:5 264:20 271:15 280:10

**days.i** 120:25

**daze** 244:20 246:17,18,25 247:22,23 248:17

**dead** 9:22,23 102:12 153:25 174:23 181:9 198:9 206:12,12 235:14 237:2 265:22

**deal** 119:12 261:25

**dealers** 258:17,21

**dealing** 10:18 83:25

**dear** 203:13

**death** 35:14,18,25 36:10,19,20,21,21 38:4,12,17 39:4,22 40:5 43:18 45:12 47:11 51:3 62:25 64:7 76:23 78:18 79:4 80:3,17,21,24 84:14 88:13,22 90:1,8 91:4,8,23

92:17,21,23 93:2 95:18 96:3 97:1,5 108:16 110:20 112:2,23 135:23 135:24 160:17 173:17,23 174:15 178:3,20 179:14 180:12 181:16 184:22 185:3 186:24 187:4,8,13 188:7,17 194:18 194:24 195:8,11 195:18,24 196:7 201:2 226:6,10,13 228:8 236:8,18 239:25 241:15 242:5 249:11 252:25 259:16,19 260:2 264:15 267:25 271:11,11 271:20 272:3 273:19

**deaths** 236:16

**debt** 210:14

**decedent's** 216:14 218:11 219:5

**december** 13:14 13:18 169:10,11 171:21 172:14 274:8,22,22

**decided** 194:7

**decision** 227:11

**decisions** 244:10

**deep** 274:13

**defamation** 275:16

**default** 32:22

**defend** 25:13 212:16

**defendant** 215:22 284:8

**defendants** 1:11 2:6 4:13 244:2 281:22

**definitely** 228:18 239:22 251:19 259:3

**degree** 18:6,10 216:3

**delete** 73:3

**deleted** 209:5

**delivery** 284:18

**demolished** 22:7 60:16

**department** 33:13 33:23 34:21 35:1 189:1 271:16

**depict** 257:21

**deposed** 6:2

**deposition** 1:7,14 4:4 281:18,21 282:12 283:8,12 284:9,11,24

**des** 1:18 283:15

**describe** 81:4,5 83:9,11,15 84:12 86:15 246:25 247:17 248:22

**description** 222:7 223:23

**deserted** 221:11

**deserves** 262:9,10 262:11

**designated** 179:11

**despite** 139:8 157:2 274:12

**destroyed** 152:12 181:11 190:20 222:25 227:25 228:2

**destruction** 86:17

Case 6:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 281 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**detail** 55:20 216:25
**details** 137:4 167:24
**detainer** 25:18,20
**detecters** 111:3
**detector** 98:16 105:24
**detectors** 98:13 100:13 102:18,21 103:6,10 104:18 104:25 105:5 106:14,20 108:4 109:21 110:2,6,23 112:10 218:11 258:9
**device** 219:5
**diagnosis** 89:24
**die** 54:3 89:20 266:25
**died** 8:16 35:12 37:9 53:24 68:16 68:20 89:14,17 92:9 141:22 142:25 160:14 175:3,6,8 181:17 236:2,6 262:14,15 266:13 271:20
**dies** 140:1
**difference** 95:7
**different** 20:6 32:10 40:11 63:20 72:22 75:11 89:3 89:7 105:20 116:14 120:2 122:22 125:10 154:10,12 157:18 158:1 163:21 167:19,25 168:9 168:13 217:1,4 231:6 234:21,25

240:20 247:13 255:18
**dig** 55:3
**dime** 149:24 226:23,24
**dinner** 188:6
**direct** 4:20
**direction** 283:8
**directly** 145:8 271:4
**director** 64:16 65:8 67:17,18 131:22
**disarray** 81:16
**discipline** 137:18
**disclosed** 240:11
**disconnected** 118:13
**discovered** 193:11 193:20
**discovery** 31:9 240:12
**discrimination** 234:23
**discuss** 96:25 107:8 186:25 206:21 249:2,4 252:16
**discussed** 12:22 17:7,10 54:5 97:11 101:19 149:1 171:11 216:20,25 217:11 218:16 232:15 233:3,14,24 234:10,15 240:17 243:16,21
**discussing** 31:18 270:10
**discussion** 95:3 280:2,5 282:7

**disease** 113:6
**displayed** 128:22
**dispute** 24:25 25:3 28:16 30:12 116:12 164:11 166:9 258:15 259:8 268:10
**disputes** 24:5
**distraught** 55:11
**division** 64:1 69:6 69:7 142:22
**divorced** 11:5
**doctor** 77:2 94:15 149:4 159:9,11 205:13 245:14 246:6
**doctors** 93:15
**document** 34:25 35:3 52:17,21 53:10,21,22,25 54:4,9,11,21 57:15 58:18 117:20 180:13,17 215:13
**documented** 126:17
**documents** 31:25 63:6 75:19,23 178:12 207:16,17 214:18,20
**dog** 128:13 136:9 136:18,24
**dogs** 36:5,7 135:21 135:22 136:5,8,10 136:16,17,20 230:7
**doing** 6:20 21:6 27:18 43:6 68:11 77:5 100:21 107:11 118:12 122:24,25 123:12 124:4 125:7

126:22 127:3 134:17,25 138:16 143:15 158:3 160:10 161:10 201:13 204:3 206:11 209:23 214:8 228:22 230:23 234:12,18 248:11 268:20 269:5 274:1 276:25
**dollar** 182:15
**domestic** 14:18
**doniphan** 11:24 13:2,4 15:25 16:6 17:2 18:2,3,4 19:6 19:18 20:11
**door** 27:11 37:20 38:6,16,24 43:17 46:17,24 73:23 89:12 108:14 109:12 114:11 147:18 182:16 242:22 247:10 259:1 263:23 279:4
**doors** 30:6 229:6 233:16
**double** 244:9
**doubled** 245:3,10
**doubt** 194:14
**downton** 78:24 79:1
**doyle** 28:19,21,24 29:11,19 32:16
**drain** 223:24
**draining** 225:25
**drains** 229:5
**drawer** 127:21
**drawing** 264:1

Case 3:23-cv-03015-RAL   Document 15   Filed 01/12/23   Page 282 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| dried 157:22 | 265:8 266:9,11,20 | emergencies 152:3 | enter 126:25 |
|---|---|---|---|
| 223:1 227:5 | 267:3,8,19 268:11 | emergency 73:17 | 278:10 |
| drink 5:21 | 269:7 273:15 | 73:24 74:1 146:2 | entering 23:1 |
| drive 21:10 152:10 | 274:5,21 275:2 | 146:7 147:7 | entities 64:12 |
| 211:2 258:23 | 276:12,17 277:1,9 | 148:14 191:17,19 | 69:11 |
| dropped 70:22,23 | 277:12,19,20 | 192:14 246:5,9 | entitled 132:22 |
| 71:7,17,19,21 | 278:3,17,18,22 | 256:4,6,8,10 265:3 | environment |
| 137:24 | 279:16 282:8 | 269:16 280:9 | 234:3 236:10 |
| dropping 200:16 | 283:1,1 | emotional 136:11 | 258:22 |
| drove 21:4 91:16 | ear 155:16 | 136:13 | er 23:10 |
| 91:17 152:3 231:5 | earlier 31:6 104:6 | emotionally 215:6 | eric 1:4 4:11 5:3 |
| drug 235:10 | 155:18 220:1,5,10 | employed 18:25 | 195:12,14,14,17 |
| 237:18 238:10 | 231:7 | 19:2,4 283:11,13 | 195:23 203:5 |
| 244:13 249:20 | early 10:14 11:5 | employee 39:18 | 207:23 211:14,22 |
| 258:17,21 262:21 | 104:16 251:21 | 283:12 | especially 58:22 |
| 262:23 | earnheart 270:5,6 | employees 202:25 | 130:17 132:16 |
| drugs 244:7,25 | 272:10 275:4 | 271:17 272:2 | 161:5 |
| 245:8 247:1,3,4,24 | easier 61:24 | employment 20:4 | estate's 273:9 |
| 248:6,9,14 249:3,7 | easily 189:19 | 21:8,17 22:15,19 | estates 1:9 4:14,25 |
| dry 227:4,7 | eat 77:5 | 215:22 243:13 | 22:20 24:15 36:9 |
| duly 4:18 283:5 | educational 17:17 | empty 89:16 | 37:8,25 38:18 |
| dust 118:7 | effect 117:4,5,9 | encounter 128:19 | 39:25 77:10 90:1 |
| duties 44:1 232:12 | 119:20 273:21 | 129:7,9,17,22,24 | 115:9,13 189:4 |
| 232:20 233:11 | effective 117:9 | 131:14 132:13 | 197:18,24 198:2 |
| 237:6 243:11 | effort 42:7 | 133:2,13,23 134:6 | 222:3 265:10 |
| duty 228:8 | efforts 233:20 | 142:1 161:17 | 266:12 267:21 |
| dv 14:25 | eight 215:17,21 | 211:15 | 271:12 274:10 |
| dwell 81:21 | either 28:13 59:14 | encounters 108:3 | et 4:5,6 284:3,7 |
| dying 237:13 | 79:9 81:20 90:13 | 128:1 | evaluate 5:17 |
| **e** | 101:19,19 111:13 | encouraged | evening 21:15 |
| e 2:1,1 3:10 4:1,1 | 196:3,24 199:21 | 236:21 | event 76:21 |
| 8:21 67:7,9 70:5,6 | 201:3 210:3 | ended 10:23 29:25 | events 214:23 |
| 70:8,23 71:4,6 | 253:11,14 262:5 | 205:23 237:12,23 | eventually 23:18 |
| 72:7,10,12,21 73:2 | 272:14 278:22 | 246:19 | 30:4 102:10,11 |
| 73:6 112:6 115:20 | elderly 84:24 | energy 248:24 | 227:2 |
| 115:24 116:18 | elephants 185:22 | ensure 7:11 118:6 | everybody 71:12 |
| 117:22 118:5 | elicit 58:11 | 121:12 233:20 | 75:10 87:8 122:22 |
| 162:6 201:18 | else's 47:4 81:20 | 234:6 | 142:19 189:12 |
| 208:19 214:9 | 183:11 | ensured 232:11,19 | 204:14,16 231:5 |
| 230:20 253:16,19 | email 270:20 | entails 37:4 | 238:18,18 255:20 |
| 254:22,24 255:2 | | | 258:19 259:18,19 |

Case 4:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 283 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

260:3,5 261:5 267:15

**everyone's** 111:10

**evicted** 25:5,6 46:22 69:25 129:1 137:19,20 138:2,4 138:6,7 149:21 236:20 271:12,18

**evicting** 240:22

**eviction** 25:7,24 26:10 27:1,14 52:2 128:12 135:22 136:2,25 137:10,13 138:1 211:23 212:1,9,15 212:21 213:4

**evidence** 31:12

**evil** 90:12

**ex** 9:21 197:12,22

**exact** 13:3 56:1,4 93:3 160:13 242:4

**exactly** 140:15 187:15 193:22 221:8 231:17 242:4

**examination** 3:1,2 4:20 283:7

**examined** 283:7

**exceedingly** 240:10

**excellent** 96:1

**exchange** 207:15

**exchanged** 214:8

**exchanges** 255:15

**executive** 2:3

**exhibit** 3:5 31:17 33:21,22 35:1 52:11 56:5 62:4 115:20,24 116:18 118:5 139:3,5 161:21 162:6,7,11

172:17 178:7 215:11 219:25 256:17,19 265:7 266:8 267:19 268:7 269:12 270:7,18 271:8,25 273:14 274:7,21 278:2

**exhibits** 3:4

**exists** 57:23

**expensive** 149:7

**experience** 132:8 215:23 219:17,19 219:22 220:3,15

**experienced** 223:20

**expired** 183:4 218:9 219:6

**explain** 25:10 236:14

**explained** 93:10

**explaining** 113:8

**explanation** 26:19

**extreme** 56:24

**extremely** 56:13

**eyebrows** 130:21

**eyes** 248:18

**f**

**f** 3:11 149:8 161:21 162:7,11 172:17 178:7 283:1

**fabricate** 46:2 151:1 266:6

**fabricated** 37:21 45:18 47:7,12 140:23,24 141:4 143:10 160:25 203:22

**fabricates** 170:20

**fabricating** 140:25 178:11

**face** 130:20 131:15

**facebook** 272:21

**facilities** 80:14

**facility** 115:13

**fact** 143:11 149:11 156:21 174:19 194:11 220:16 229:9 267:24 278:16

**factory** 221:14

**facts** 268:14 271:23 274:18 275:12 278:15

**failed** 222:1 229:15,16,19 232:9,18 233:19 234:5 240:6,15,15

**failing** 239:24

**fair** 68:5,6,9,20,24 72:22 269:18 270:21 271:2 274:14

**fairly** 257:21

**fall** 122:23 251:23

**falling** 99:14

**false** 145:4 164:3 212:15 271:13

**falsified** 181:8

**falsifying** 178:19 181:12

**familiar** 113:6

**family** 16:13,14,21 17:9 54:5,8 59:15 61:4,6 75:23 84:20 92:7 118:14 140:7 153:16 197:16 201:9 209:18

**fan** 132:15

**far** 56:2 58:13 171:1 199:3 239:12 270:3

**farms** 17:22,25

**farthest** 269:2

**fast** 7:18 8:2 171:14 191:3

**fault** 236:8

**favor** 284:15,16

**fear** 49:22 51:4

**feel** 48:3,5,11 49:5 81:15 83:7 91:10 92:9 135:12 247:3 264:22

**fell** 66:7 103:14

**felt** 49:8 129:18 243:17

**fentanyl** 237:11

**field** 215:24 219:17,20

**fifth** 1:18,18

**fighting** 26:9 191:25

**figure** 55:22 220:18 228:23 237:10 238:13 268:21

**figured** 259:21

**file** 20:20 67:13 75:6 212:19 271:14

**filed** 5:1 24:2 25:18,22 28:18 30:11 32:19 35:9 35:15,19 36:1,3 68:8,21,24 69:10 69:21 266:17 275:18

**filing** 23:22,23 28:15 36:8,17,22

800-567-8658 973-410-4098

Case 1:23-cv-03015-RCW Document 15 Filed 01/12/23 Page 284 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

37:2 68:19
**fill** 225:5
**filled** 127:24 173:1
173:3,20,22
**filthy** 83:10
**finally** 64:13 65:24
179:10
**financially** 283:13
**find** 21:3 26:11
55:3 60:20 63:8
74:18 76:14 81:22
109:3 115:1 133:7
205:20 248:25
276:22
**fine** 29:25 34:2
41:2 57:2 58:16
282:1
**finish** 90:25
123:21 139:17
140:11 141:20
161:15 173:4
**finished** 18:17
70:14,14,15
139:18 140:10,14
140:16 260:12
**finishing** 72:3
**fire** 16:22 28:6
35:12 71:14 74:23
81:24 83:16 86:9
86:20,23,25 88:3
91:12 98:14
111:10,13,15
112:14,15,17
118:16 127:22
139:15,21,22,23
140:1,12,17,22,25
141:12,23 142:14
142:24 143:6,12
144:10,23 145:3
145:24 146:16
150:22 151:6

152:4 153:17,21
153:24 155:4,9,19
157:7 161:6,7
178:24 179:1
181:10 182:15,24
183:1,3 189:7,10
189:15,21 190:4,8
190:9,12,15 191:3
191:8,21,25 193:9
193:11,21 194:7
194:10,17 201:9
201:17 202:19,21
203:1,6,9 204:5
205:17 206:7
208:1,5,16 209:15
216:17 217:18,20
217:21 218:6
219:4 223:8,9,11
223:21 229:22
231:21 234:1
253:4,4 257:3,5,6
258:23 266:14
267:1,25 268:18
269:20 271:20,21
**fired** 20:15 155:24
259:20,21
**fireman** 236:23
**fires** 189:3
**firm** 51:19,24
213:15 214:2
284:13
**first** 4:18 6:6 9:7
16:12 41:19 42:9
53:21 65:10,14,15
65:21 67:18 70:23
71:14 73:16 77:15
120:8,8 122:18,20
122:20,21 123:11
124:3,4,5 126:21
127:8,9,25 128:1
128:18,23 129:6,9

129:17,22,24
130:2,3,5,6,10,13
130:17,23 131:5
131:10,13 132:13
133:2,13,14,23
134:12 145:13
146:5,6,12 149:2
159:25 163:5
188:4 191:14,21
191:24 201:16,25
202:14 215:11
226:2 235:1
241:21 248:4,8
249:8 252:5,6,9,9
255:7 256:6
264:25 270:11
**fisher** 16:23 76:23
85:21 88:19 89:10
90:5 93:20 98:12
100:12,12 114:2
119:14,18
**fisher's** 75:6,12,15
84:12 174:15
189:7 216:14
**fishing** 30:2
**fist** 42:12
**fitting** 21:15
**five** 11:20 23:4,5
29:15 44:4 160:5
275:16
**fix** 63:19 99:4,10
99:24 106:22
146:4 148:14
223:25 226:25,25
**fixed** 105:5,21,23
111:11 143:8
148:3 187:13
188:25 189:2
206:23 210:16,23
225:6 226:12
255:21 258:9

274:3
**fixing** 143:17,20
144:6,9,19 146:18
147:7,23 148:15
**fletcher** 28:19,22
28:25 29:12,20
32:16
**fletchers** 31:1
**flipping** 84:10
**flood** 256:7
**flooded** 36:15
73:17 124:20
125:5 223:16
226:2 227:8 229:4
256:1,7
**floods** 269:17
**floor** 1:18 88:6,11
88:14
**flushed** 213:4
**focus** 147:21
**follow** 61:17 67:3
67:13 106:11
121:13 136:13
248:11
**followed** 102:13
**following** 104:14
175:11 219:6
**follows** 4:19
**food** 152:4 210:17
210:18,21
**forever** 259:14
**forge** 153:4 180:13
233:10 241:10
**forged** 122:4
156:1 206:24
278:11
**forget** 186:7
202:20
**forging** 144:18
187:7

Case 3:18-cv-03015-BGM Document 15 Filed 01/12/23 Page 285 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**forgot** 50:12
**form** 66:17 116:4
  146:17 163:14
  167:17 169:20
  172:11 176:1
  177:18,21 283:8
**formal** 35:15 36:6
  36:12 37:1,2,4
**forms** 146:20
  180:3
**forth** 116:17
**forty** 11:20
**forward** 27:18
  226:21
**found** 25:10,12
  38:7 68:2 76:3,12
  100:6 144:9
  166:17 183:1
  198:16 199:14
  240:11
**four** 12:14 22:2
  24:11 44:3 69:11
  69:14,21 89:7
  100:10 103:13
  104:2 120:5,6,7
  122:11,12,15
  139:6 164:16
  236:5,6,17
**fours** 102:7
**fraudulently**
  178:7
**freaked** 214:16
**friday** 262:20
  278:6
**friend** 93:6 142:24
  153:24 203:10,13
  205:3 235:11
  236:24 257:8
  269:21 271:20
  273:19

**friendly** 90:17
**friends** 14:22
  16:14,21 45:6,7
  76:24 77:11,16
  90:19 91:4,5,7
  92:15 93:13
  134:16 140:1
  144:24 204:23,24
  250:19 251:11,12
  257:7
**front** 38:6,16
  45:15 55:12 139:4
  167:3 168:18
  169:12 182:16
  192:2,4 231:9
  279:4
**fucking** 280:8,11
**full** 5:11 8:10
  87:18 157:14
**fun** 83:25 205:8
**funny** 168:25
**furniture** 157:20
  226:16
**further** 119:10
  240:9 283:10,12
**fuzzy** 202:15

**g**

**g** 3:12 4:1 215:10
  215:11 219:25
  220:9 284:10,24
**general** 220:25
  224:2,5,8,17 225:3
  225:12,18,19
  228:16,17,22
  229:6
**genetic** 113:6
  198:17
**getting** 15:18 38:2
  43:15 69:25 73:22
  150:22 151:19
  195:25 208:23

  210:13
**gift** 210:9,11
**girl** 9:16 89:12
  96:5,7,8,10,13,17
  96:19,23 120:11
  239:2
**girlfriend** 199:12
  235:19 236:22
  237:1,23,23
**give** 7:5 43:4 61:17
  67:4 71:22 93:3
  126:24 137:6
  151:24 162:1
  181:20 184:8,10
  184:14,18,20
  199:20 203:25
  210:9 213:19
  242:15 246:2,6
  260:14,24 261:12
  273:13
**given** 59:14
  140:21 189:14
  214:18 283:9
**giving** 92:8 207:2
  214:20 217:5
**glad** 273:7
**glass** 148:6,7
  258:13
**glitches** 10:18 84:1
  143:8
**gmail.com** 272:1
  276:18
**gmail.com.** 72:13
  266:11 270:20
  271:10 273:16
  278:7
**go** 5:20,22 6:5
  10:22 14:18,25
  18:1,3,7 21:14
  22:25 31:19,23
  33:21 42:19,24

  52:15 63:16,22
  71:1 77:1,6 79:13
  80:16 82:17 85:1
  85:12 86:9,25
  91:5 92:3,16 98:5
  102:12 113:14,14
  117:9 119:9
  124:24 127:12
  128:7 136:17
  139:3 145:8 149:4
  150:8 166:23
  184:3 187:22
  191:13 192:7
  198:20 201:13
  206:14 208:24
  212:16 215:16,19
  236:21 247:9,10
  249:23 258:18,25
  260:15,25 261:13
  264:19 269:4,5
  279:25 281:2,10
  282:1,2
**goal** 5:14
**god** 122:11 197:13
**goes** 23:17
**going** 6:5 7:2
  10:19,22 17:25
  23:6 29:2 30:14
  31:16 33:20 35:1
  40:6,18 41:7
  42:18 46:25 48:4
  48:11 49:5,16
  52:10,16 56:11
  58:7 59:4 63:19
  71:2 72:15,17
  74:4,6,16 81:2
  84:6 85:4 91:8
  92:22 97:23 99:13
  99:23 113:14
  115:19 118:4
  123:22 126:15

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Case 6:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 286 of 786   EXHIBIT A - STATE COURT FILE

128:25 129:19,22 130:24 134:7 135:8,13 137:21 144:4 149:16,20 152:5 154:1 161:20,23 162:5 168:11 171:16 174:6 196:21 212:2 214:15 215:9 226:23 237:2 245:14 246:16 247:25 251:5 256:16 260:25 262:4,16 262:18 265:6 267:18,24 271:24 272:4 273:3,13 274:6,20 275:22 277:17 278:1 279:8,9,19,25 280:3,22 281:2,3

**gong** 170:6

**good** 4:22 61:19 115:3 140:1 145:22 197:15 199:4,8,13 214:7 240:4 251:11 282:4

**google** 76:18 275:15

**gorgeous** 198:14

**gosh** 51:14 65:6 68:11 78:6 146:22 226:2

**gotten** 99:7 176:2

**graduate** 17:20

**grandbaby** 114:3

**grandchildren** 200:14

**grandin** 17:4

**grandkids** 198:15 205:7

**grandson** 12:18

**granted** 205:5

**great** 197:14

**grime** 231:10

**groceries** 210:7 211:11 212:8

**grocery** 93:15 107:7

**ground** 6:6

**grow** 17:23

**guaranteed** 28:10

**guard** 148:5 221:14

**guess** 32:13 42:17 46:4 59:9 102:4 115:8 122:16 162:17 169:9 219:22 223:20 227:7 263:8 275:6 281:9

**guests** 118:14

**guidelines** 138:17 239:10 241:8

**guilt** 263:5

**guilty** 23:16 259:22

**guy** 30:3 140:24

**guys** 9:13 10:8 11:5 77:11,15,21 77:24 78:4,19 79:4,16 114:2 124:16 206:5 207:15 209:9 214:8

### h

**h** 3:13 256:17

**habitable** 63:18

**hack** 72:15

**hair** 20:2

**hand** 31:16 33:20 52:10 115:19 161:20 162:6 215:9 256:16 265:6 267:18 271:24 274:20 284:20

**handbook** 237:16 239:10 268:4

**handbooks** 63:12

**handed** 222:21

**handful** 152:6

**handing** 270:17

**handle** 264:4

**handled** 73:12

**handles** 29:21

**hands** 6:25 109:5

**handwriting** 163:19 166:4 167:15,22,23 168:14 170:21

**handwritten** 165:25 169:17 175:24 253:15

**hang** 134:20

**hanging** 131:16 134:19,22 135:20

**happen** 5:23 48:2 58:25 59:2 126:4 183:15 212:2 265:23 269:6

**happened** 26:20 51:8 57:21 88:3 101:18 148:12 155:14 157:18 165:12 181:18 205:15 207:5,5 214:22,25 228:1 242:10 264:25 267:5

**happens** 262:8

**happy** 54:6

**harassing** 65:17 255:17,19,23,24

**harassment** 44:12 255:21 256:21,23 264:14,16

**hard** 26:11 66:6 99:19 100:6 109:6 198:18 228:20

**harder** 61:21 99:5

**harley** 38:5,15 39:6,20 40:19

**harsh** 263:14

**head** 150:19 154:8 180:15

**headlight** 146:23 147:9,22 148:3

**headlights** 49:18 147:24

**health** 189:1 271:16

**hear** 42:14,21 118:19 133:9 199:15 261:5 280:4

**heard** 28:2 64:14 66:17 75:3 119:21 184:18 191:15 199:10,11,17 223:19

**hearing** 190:25

**heat** 271:14,18

**heater** 44:1,10 105:10,23 111:11

**heaters** 231:9

**heather** 42:6

**hell** 128:6,11 271:17

**hello** 233:6

Case 23-cv-03015-BCW Document 15 Filed 01/42/23 Page 287 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**help** 32:1 52:1 53:9 54:2 65:1,2 96:5,6 132:20 149:17 152:1 209:25 210:23 212:1,3,5 213:21 229:14 251:18 252:15 257:15 268:20,21 269:18 275:24

**helped** 52:6 149:12 189:17 199:25 200:1 236:23

**helping** 200:4

**hereinbefore** 283:4

**hereof** 283:5

**hereto** 283:13

**hereunto** 284:20

**heroin** 247:21

**hey** 153:2 194:22 199:13 214:17

**hid** 225:6

**high** 17:17,20 18:4 98:20 262:6

**hip** 99:15

**hips** 251:23

**hire** 130:14 133:3 273:16

**hired** 64:24 96:23 131:11,12,14,18 131:22 132:3,4,9 132:11,14 133:24 220:2,14 232:12 232:21 275:1

**hiring** 131:18,21 134:1 219:15,19

**history** 18:22 23:15,20 24:1,4,24 30:16 33:25 34:1

37:10

**hit** 198:18

**hoarder** 83:13,16 84:13

**hoarding** 84:9

**hold** 277:11 280:1

**home** 13:5 14:12 14:16 19:5,8,18 20:3,8,9 21:1,14 32:15 33:4 68:13 85:18,19 100:14 102:17,19 108:19 115:6,7,9 124:5 145:1 152:9 191:14 213:8 224:3 236:22 242:10 245:6 250:17 251:21 264:19 268:22 276:22

**homemaker** 19:10 19:20 20:10

**homes** 210:4,5

**honest** 243:23

**honestly** 55:9 59:10

**hood** 190:5

**hook** 256:4

**hop** 50:19

**hope** 43:15 153:18 262:8

**hopefully** 69:19 280:4

**horrible** 201:12,12 258:24

**hostile** 234:3,3 255:15

**hot** 44:1,9 231:8

**hotline** 68:8 70:1,3 71:3,8 73:11,14 74:14

**hotlined** 68:4

**hour** 126:25

**hours** 73:18,21 136:17 185:12 240:20 241:12,14 265:3 276:24 278:12

**house** 14:6,7,8,10 15:24 29:1,2,7,11 29:14 30:18 31:4 31:5 32:4,7 90:11 97:3

**houses** 29:21

**housework** 96:11

**housing** 13:8,9,10 16:11 24:4,25 35:10,15,16 68:5,6 68:9,20,24 72:22 115:10 210:1 219:16 269:1,18 270:22 271:2 274:15

**hud** 63:11,25 65:19 69:1 138:18 142:21 241:4 269:19 276:1

**huh** 6:24,24 9:6,10 21:23 22:11 42:11 53:5 68:25 69:2,4 77:20,23 78:3 79:8,19,23 84:5 88:25 94:12,15 101:6 104:19,21 106:10 108:25 109:9,15 125:8 140:19 145:6 152:25 153:9 165:21 167:4,7 172:5 174:4 186:19 191:18 226:7,9 276:15

**hurt** 103:15

**husband** 9:21 14:21 15:11 197:12,22 250:17

**husband's** 8:16

**i**

**ice** 251:20

**idea** 30:10 32:18 80:4 130:3 131:2 131:4 134:2 160:23 166:6,19 191:3,6 195:7 209:8 210:14 211:9,12 230:17 242:19 260:9 261:16

**idiot** 273:18

**idiots** 273:16,25

**ignored** 149:19

**illegal** 39:7,21 146:3 266:20,24 275:7 278:14

**imagine** 276:22

**immediately** 127:2 127:22 143:6 152:4 242:22 248:5 259:20

**implement** 232:10 232:18

**implied** 88:7

**implying** 88:8

**important** 43:13 154:19 189:15

**impound** 152:6

**impress** 130:18

**improper** 58:12

**inability** 243:11

**inaccurate** 258:11

**inaccurately** 128:3

Case 1:23-cv-03015-BCM Document 15 Filed 01/12/23 Page 288 of 786

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**inactions** 229:17
**incident** 74:14,21
74:24 75:2 178:19
179:19 189:4
218:13 219:6
255:5
**included** 112:13
243:10
**income** 13:8 16:10
114:20 115:10
180:19 200:2
219:15 269:1
**incompetent** 278:8
**incorporated** 4:6
148:9
**incorrectly** 129:14
**incredibly** 246:22
**independent**
165:22 166:15
167:10 168:21
169:13 173:21
196:21
**independently**
95:21
**index** 3:1,4
**indicated** 283:4
**indication** 133:23
**individual** 278:8
**inform** 111:2
**informal** 6:9 35:10
36:8 37:3
**information** 5:15
41:4,24 55:8 59:1
59:7 62:3,8,13,15
76:4,20 88:9
133:7 201:2 202:1
202:17 204:6
206:17 207:19
221:18,21 271:13
271:19 274:16

**informed** 187:6
**innocent** 272:3
**input** 54:8
**inside** 80:6 81:17
98:2,4 108:14
124:12 191:7
192:9
**insisted** 255:20
**inspect** 108:11,19
108:21 157:9
**inspected** 111:10
148:2 151:19
156:23 165:19
167:6 168:17
204:12,18
**inspecting** 139:9
157:2
**inspection** 46:16
47:4,8,10,16 75:9
75:16 81:9 109:16
121:6,24 122:1,4
123:3,24,25
124:13 125:7,19
126:4,6,22 127:2
128:2 129:13
134:9 135:14
138:20,22,24
139:8,19 140:3,21
141:20,21 142:4
150:24 154:16
156:1 157:2 160:5
160:11 161:11,22
162:5,12,16,20,22
162:24 163:2,5,12
164:9,24 165:7,13
165:18,23 166:1
166:24 167:11,19
168:22 169:14
171:9,23 172:17
172:18,22 173:9
173:16 174:8

175:16,18 178:6
179:21 180:18
181:8,10,13,19
182:8 183:7,10
184:9,19 187:7
203:19,23 204:3,5
204:9,9 206:8,11
206:13,25 207:2
207:10 216:13,16
217:2 233:10
253:6 263:3,3
265:22 268:2
278:11
**inspections** 99:12
119:24 122:19
123:6,9,13 124:4,7
124:22 138:15,16
140:8 157:24
158:5,6 159:24
160:25 171:10
173:19 182:2
233:19 241:11
269:22
**instance** 43:24
44:13 45:11 46:5
108:19 161:8
172:6 178:25
179:13 180:9,10
180:16 181:14
194:23 223:11
**instances** 40:22
148:25 157:23
180:15 223:10
**instruct** 50:9
**instruction** 27:19
**insurance** 265:12
**intent** 281:19
**interaction** 51:4
**interactions** 49:8
49:22 51:2 60:24

**interested** 130:9
283:13
**internet** 76:16,17
**interposed** 283:9
**interrupt** 6:22
**interrupted** 43:5
**interruption** 7:16
10:10,15 40:8
83:20 92:6 107:24
110:15 129:11
132:1 182:20
231:23 243:1
246:23 268:15
278:4 280:14
**intrusion** 90:10
**investigated**
153:17 270:21
271:1 274:14
**investigating** 68:5
68:7 71:18 73:14
151:5 153:21
155:4
**investigation** 70:9
70:10,19 71:3,5,20
71:25 73:11 76:2
154:15 237:13
**investigators**
192:15
**invite** 147:19
**invited** 266:5
**involved** 23:21
44:11 151:5
192:23
**involvement** 51:18
51:23 52:7
**involving** 16:22
25:3,8 28:14 31:1
31:18 33:10 39:6
40:14 74:14
223:15

Case 5:23-cv-03015-DDC   Document 15   Filed 01/12/23   Page 289 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT 10 DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**iowa** 1:17,19 283:3,15
**irritate** 134:21
**irritating** 148:12
**irs** 34:6,10,16
**issue** 24:6 31:1,3 34:6,12,16,21 37:21 65:22 66:16 67:11,25 70:25,25 87:11,24 107:12 135:9 145:15 156:2 170:5 193:14 198:17 223:5,6 265:2 270:16 276:5
**issues** 24:7 28:13 40:14 78:22 93:10 112:9 113:7 119:12 135:3 185:23,25 200:5 204:2 210:1 222:20 249:18 268:6,24
**izsak** 2:2

**j**

**j** 3:15 41:15 266:8
**jabbed** 98:24
**james** 11:18 12:17
**january** 114:16,18 116:5 120:19 179:6
**jchildresslaw.con** 2:8
**jeff** 269:4
**jen** 54:23 113:4 181:23 198:15 199:4,15 202:13 203:5 205:20 207:23 209:14 210:16 211:5,22 212:8,21 215:2

217:6
**jennifer** 1:2 4:11 5:2 194:19,24 195:7 284:3
**job** 1:25 23:9 41:3 99:11,23 130:14 130:18 131:1,18 131:21 132:9 158:10 186:5 214:8 222:7 223:22 225:2 233:11 234:12,19 237:5 239:19,24 240:4 245:8 248:13 259:13,17 263:19 264:3,4 270:8 276:25
**jobs** 19:14 21:22 21:24 180:20 221:16
**john** 2:10 88:18,24 89:1
**johnson** 140:7 250:13,13,15,20 250:24 251:3
**joined** 272:24
**jotz** 41:15
**judge** 6:10 83:7 85:2 130:16
**judges** 131:20
**judgment** 32:22 85:5
**july** 53:8,23 56:5,6 61:5 62:10 146:15 146:15 213:24 257:4,23 258:16 259:12,24 260:13 261:12 262:2,13 263:21 264:5,12 264:17,25 265:8 266:9 267:14,20

275:20 283:16
**jump** 7:9
**jumped** 43:5
**june** 1:17 4:3 18:24 19:15 21:18 36:1 47:12 57:10 59:23 60:24 61:5 139:7 141:5 156:17 157:5,8,24 159:21 160:3,6,16 160:23 161:4 167:3 168:10 174:3,7,12,16,18 174:21,24 175:1,2 175:21,22 176:2 176:24 178:4 179:25 181:14 182:12 183:9,13 183:18 216:15 277:20 278:3,6,17 278:18
**jurisdiction** 153:6
**jury** 6:11
**jut** 134:4

**k**

**k** 3:16 267:19 268:7
**karen** 254:8,13 255:11,12 256:13 261:4,8
**kari** 65:15,16
**keep** 56:18 58:6 64:4 94:15 101:16 109:6 135:9 179:10 180:19 228:22 231:10
**kept** 69:12 101:23 105:14 127:21 190:25 256:22
**kevin** 41:15 44:8

**key** 242:14,16
**kicked** 30:7
**kid** 255:9
**kids** 196:22 197:15 200:11,11 200:18 205:7 250:17,17 257:15 260:15 261:2,13 261:24,24
**kill** 263:17
**killed** 262:15,24 263:7
**killer** 272:5,8,12 272:16,19 273:1,4 273:10
**kind** 18:13 19:25 32:9 43:12 50:18 74:19 76:3 81:8 111:20 114:13 180:21 182:1 194:22 205:5,21 211:17 214:11 221:1 228:18 244:20,20 245:15 247:13 251:24
**klar** 2:2,2 4:10,10 5:2 30:14 31:13 33:24 49:24 50:3 51:6,19 56:11,13 56:15,20,22,24 58:7 61:13,16,21 61:23 75:19 162:7 213:15 246:22 281:16,17 282:11
**knee** 159:7
**knew** 30:23 35:20 51:7 54:1,1 89:23 95:19 96:18 110:9 113:7 126:14 130:2,6,23 133:5 135:5 143:2,3,5,9

Case 3:23-cv-03015-RAL Document 15 Filed 04/12/23 Page 290 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

143:9 153:3,20
154:25 155:1
156:7 170:7
177:12 180:7
181:17 191:22
201:4 204:12,13
204:14,17 207:8
214:16 221:23
229:13 231:5,24
232:2 238:10,18
244:2 245:22,24
249:9 260:5
261:24 275:22

**knocked** 73:23

**knocks** 263:22

**know** 5:16,17,21
7:18 8:3 11:13
18:15 21:11 22:2
24:18,22 25:13,15
25:20,22 26:17
27:11 28:21 29:5
29:16,19 30:23,25
32:7,8,20,20,22
33:1,1,18 35:6
37:4 38:7,11,17
40:20 41:5,6,6,6
42:5,25 44:11,13
44:14,16,20,23,25
45:8,10,10,19 46:1
46:3,5 48:4 50:18
52:20 53:15 54:3
54:12,22 57:20,21
59:13 61:9,11
65:4,10 68:6
70:15 72:6 73:13
77:5,7 78:24 81:1
81:8 82:3,9 85:11
87:20,23 88:3,21
89:1,10,16,21,24
90:2,18,21 91:13
91:24 92:12 93:14

93:17,19 94:4,17
94:19,24 95:10,13
95:24 96:7,10,16
97:4,5,9 98:1,23
99:2,24 100:17
101:7,20 104:1,13
106:15 107:5,6,10
108:3 109:2,4
110:12,14 113:10
113:11 117:8
119:16,21 121:22
122:22,24 123:1
124:21 125:9
127:2,7,13,17,19
128:2,10,15
130:20 131:6,9,19
131:19 132:7,13
133:25 134:2,3
135:1,10,11,18,25
137:2,12,17 138:3
138:6,6,10 142:7,8
143:4,17 144:18
144:20 145:22
147:10,10,11
148:3 149:9,17
151:4,9,14,20
153:10 154:2,14
154:22 155:5,9
158:13,18,19,20
159:1,3,11,12,14
159:18 160:4,13
160:20 161:1
162:18 163:17,18
163:20 164:7
165:3,12 166:3,5
166:11,13,14,25
167:14,16 168:4
168:13 169:21
170:2,18,19
171:13,15 172:6
172:11,18,25

173:2,5,21,25,25
174:19 176:3
177:14,17,20,25
178:2,4,10,11,12
178:15 179:2,7,14
179:16,18,20,25
181:2 182:14,15
182:18 183:21
184:17 185:2,14
185:25 186:3,13
187:3,5,6,9,10,15
187:20,22 189:9
189:18,21,22
190:11,12,15,19
190:21,22 192:22
193:16 194:14,15
195:11,15 196:1,8
196:25 197:8
198:10,24 199:11
199:22,25 200:1,3
200:9,13,19,22,23
201:7 202:16
203:5,20 204:10
204:19 205:4,7,12
205:14 206:6,20
207:11,20 211:10
212:21,23 213:9
214:2 215:1,2,14
216:10 217:2,3,12
217:23 218:1,4
220:6,24 221:9,13
221:15,23 222:8
222:23,25 223:17
224:22 225:11
228:2,11,12,13
230:2,20,23,25
231:17,19,19,21
233:5,15,25,25
235:22,23 237:15
237:18,20 238:12
238:24 239:12

240:14,21 241:20
242:9,13 243:5,6
243:22,22,24
244:8,11,12 245:2
247:4,8,20,21,21
249:9 250:13
251:5,22,25 252:1
252:3,12,13,17
254:20 258:12,14
260:12 261:14,21
261:23,25 263:16
265:15,15,16,18
265:19 266:17
267:7,12 269:9,12
270:1,5,23 271:6
272:10,13 273:6
275:3 276:16
277:12,14,17,19
279:6,18 280:1,20
280:23

**knowing** 87:15
127:11 129:14

**knowledge** 30:18
41:22 45:22 62:10
82:11 89:25 93:21
98:12 104:22
107:11,17 119:13
119:18 121:19
159:15 164:2
178:18 181:12
182:5 215:25
216:7,18,22,24
217:21 218:16
219:10,18 222:3
229:18,18 230:14
232:13 233:1,12
233:22 234:8,13
239:23 243:14,19
244:5 276:21
278:11 283:6

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Case 4:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 291 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

**known** 8:12 94:25 127:5 128:24 152:9,22 183:18 202:2,12 214:5 244:3 247:9
**knows** 214:24,25

**l**

**l** 3:17 8:21 269:12 270:7
**l.l.c.** 2:2,7
**l.p.** 1:10
**lacked** 219:17
**ladder** 98:20,22
**lady** 107:6
**lance** 89:11,11 90:3,4,15 93:5 100:11
**landlord** 24:5,25 28:16 30:12 37:12 37:14,16 241:8
**late** 123:17 124:1 151:19
**latest** 220:7
**laundry** 19:24 74:12 80:12,13 96:12 147:14 240:19,21,24 241:12,14
**law** 6:10 72:18 186:9 281:4
**lawn** 114:12 184:4
**laws** 176:13
**lawsaintlouis.com** 2:4
**lawsuit** 271:11
**lawsuits** 76:7
**lawyer** 25:14 42:21,22 189:16 190:3 212:17 275:11 281:2,3

**lay** 190:10
**laying** 55:12 192:2 192:4 218:22
**lead** 31:11
**leak** 224:1
**leaked** 226:11
**leaky** 256:3
**learn** 87:25 241:21
**learned** 128:7 244:23
**lease** 75:8,10,13 114:15,19 115:4 115:16 116:16 136:11 147:3 224:16 225:11,15 235:3,7,11,18,25 236:11,12
**leave** 21:8 22:15 45:21 68:14 102:17,19,20,20 137:22 151:25,25 235:12 241:25 276:9
**leaving** 14:15 133:17,18 279:22
**led** 134:7 201:8
**left** 14:25 15:14 44:1,3 47:1 84:7 122:13,14 133:5 203:2,3 238:8 242:21 250:24,25 255:10 268:20 273:8 281:18
**legal** 26:6 178:12
**legally** 63:17 225:23
**length** 156:21
**letter** 66:15,21 276:3
**letters** 63:25 64:2 64:8 69:9 155:22

186:6 279:3
**letting** 91:3 147:20 228:20 241:17
**liar** 164:14
**librarian** 213:21
**licking** 10:5,6
**lie** 46:1 51:11 100:16,18 141:6 170:17 171:5 176:12 181:24,25 262:7
**lied** 66:8,13 67:24 68:2 204:3 206:8 235:5 263:2,4 274:10,15 276:2
**lien** 33:15,19,23 35:2,4
**liens** 35:6
**lies** 217:1,4 274:13
**life** 16:10 23:7 61:24 94:3,14 98:15,18 128:6,11 198:10 200:10 202:11 208:12 215:4 258:3 265:11 268:25 271:17
**lifestyle** 85:3
**light** 118:6,23,25
**lights** 119:2
**liked** 49:3 78:10 135:21 235:22
**likes** 90:9 211:17
**limit** 16:20
**limitation** 243:10
**limitations** 93:21 94:7 95:8,11
**limited** 95:11 156:17 200:2
**line** 56:15,25 58:10 59:3 147:7

263:20 273:10 276:9
**liquor** 22:5
**list** 16:18 145:19 148:8,9,11,13,17 148:18,21 150:3,7 150:13 155:22 221:16 256:7
**listed** 163:1 166:10 266:11
**listen** 36:18 68:22 142:19,20
**lists** 162:12
**litigation** 23:20 33:9,11
**little** 17:16 19:22 26:12 47:1 55:14 55:16,20 62:23 76:22 83:18 87:18 119:23 128:15 130:22 148:6 154:7,8 161:25 198:11,11 199:19 213:16,18 214:16 229:25 236:17 238:16 241:18 248:23 253:2 263:14
**live** 9:24 10:2,3,4 11:11,21 12:19,24 13:11,19,25 14:12 14:19 16:2,14 17:2,3 29:14 89:3 95:21 115:3 227:14 240:15 262:16,19 266:12 267:21 268:23 270:22 274:25
**lived** 13:13,24 15:24 16:1,9 17:24 24:7,12

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Case 4:23-cv-03015-BCW Document 15-1 Filed 01/12/23 Page 292 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

35:16 36:16 37:25 46:19 77:12,14 85:2 90:15 96:13 137:15 193:15 197:18,22 198:2 200:1,11 201:4 224:12 235:24 239:12 250:16 274:23

**lives** 11:14 17:4 64:16 147:3,16

**living** 13:17,21 14:3 15:10,23 24:18 32:12,13,13 32:14,15 33:4 104:16 106:19 115:13 120:1 128:6,11 157:16 235:2 258:19 271:17

**local** 22:5,9

**location** 14:4 30:8

**locked** 147:18 222:17 234:17 278:12

**locking** 240:24

**long** 10:12 13:13 14:12 15:15 20:13 20:14 21:5 23:2 29:9,14 47:25 71:14 72:5 85:17 109:5 113:5 120:12 121:23 127:5 134:3 145:24 146:16 152:9,22 191:13 196:21 198:23 204:11 211:21,21 221:7,16 224:25 243:6

**longer** 38:9 62:20 64:23 117:9 118:1 119:19

**look** 31:19,25 33:22 43:11 49:4 52:14 57:14,22 58:3 62:3 72:23 81:14 82:8 87:3,4 99:22 108:12 109:20 115:20 121:15 124:19,22 125:18,22 126:17 139:2 162:6 168:13 185:14 187:12 204:4 207:15 224:20 227:24 256:19 257:9,13 259:13 259:22 263:1,18

**looked** 63:3 81:9 81:11 101:13 108:14 124:25 125:13 127:22 142:6 162:4 172:12 220:4 255:9

**looking** 32:18 34:25 52:18 62:2 62:4,13 115:24 116:11 120:18 121:14 125:23 127:11 139:4 142:4 144:8 156:15 165:13 168:16 169:10 171:19,20 172:16 174:13 179:21 218:10 219:13 229:24 233:8 243:8 244:1 259:17 264:3

271:8

**looks** 48:14 53:7 132:12 163:16 265:7

**lost** 40:1 65:6

**lot** 29:21 42:10 43:7 57:12 61:6 62:22 69:8 76:7 76:20,24 94:1 99:5 128:15 132:8 134:19 136:18 137:10,16 144:14 144:25 153:25 158:16 159:8 160:21 195:15 196:9 199:4 200:11 202:10 203:11 205:8 208:2,3 222:23 244:7,16 245:22 247:9 252:20 258:6 277:16

**lots** 265:11

**loud** 37:20 39:10 43:17 118:4

**louis** 2:4,8

**love** 150:17

**loved** 78:6 197:7

**loves** 200:10

**low** 13:8 16:10 101:5 114:20 115:10 219:15 269:1

**lpn** 18:16,19

**lunch** 22:3

**lying** 54:1 272:2 280:8

**m**

**m** 162:17

**ma'am** 266:23 281:8

**machine** 147:15

**machines** 185:9

**maci** 270:5,6 272:10 275:3

**maco** 1:7 4:5,13 4:24 21:22 25:3,8 25:19,23 28:14 35:19,20 36:2 37:7,24 39:18 40:23 44:17,21,25 45:22,23,25 46:6 46:10 52:2 61:4 64:17 65:10,12,20 65:22 66:4,5,25 67:11 70:24 75:6 76:8,18 90:1,22 104:14,16 106:25 107:10 110:11 112:1,5 114:15,19 115:6 119:2,15 120:1,18 127:18 131:20,20 132:4 133:23,25,25 140:2 143:1 145:4 145:8,14 147:12 148:9,16 149:1 150:1 155:13,15 155:17 156:3 165:4 185:3 187:7 187:11,14 188:8 188:13,22,25 192:12 193:6,9 202:20,25 204:10 204:10 210:13 211:23 215:22 219:19 225:8 227:19 229:16,19 230:18 231:16 232:9,17 233:9,17 234:1,4 240:5 244:2 249:6,10

Case 4:23-cv-03015 Document 15 Filed 01/11/23 Page 293 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

250:24 253:3,5 260:24 262:15,24 263:2,7,22 264:6 264:12,17 265:9 266:17 267:3,14 267:22 268:18 270:24 271:3,17 272:7,9,22 273:23 274:17,24 275:6 275:20,21 276:2 276:19 277:20 278:21,25 279:23 280:17,18 284:7

**maco's** 115:17,22 115:25 162:11 273:9

**maiden** 8:21,22

**mail** 67:7,9 70:5,6 70:8,23 71:4,6 72:7,10,12 73:2 112:6 117:22 186:10 201:18 208:19 253:16,19 265:8 266:9,11 267:3,8,19 268:11 273:10,15 274:21 275:2 276:17 277:1,9,12,19,20 278:3,17,18,22 279:22

**mailbox** 27:12 186:8,12 279:4,5

**mailed** 73:6 253:16

**mails** 72:21 214:9 230:20 253:22 254:22,24 255:2 266:20 269:7 274:5 276:9,12,13 279:16

**maintain** 47:1

**maintenance** 73:18,24 74:3 146:2,7 147:7 148:15 222:2 224:2,5,8,11,19,21 225:3,12,18,19 228:16,17,23 229:6 265:4 269:16 280:9

**major** 198:11 228:16

**making** 46:11 71:11 144:17 145:19 186:23 265:19 266:1 267:13 268:3,18 269:8,23 271:22

**man** 19:22 133:4 224:11,22 237:11 239:3 258:24 276:24

**manage** 219:15

**managed** 33:7 155:1 274:24

**management** 1:7 4:5,13,24 36:9 65:20 66:4 76:18 118:9,11 119:10 120:18 265:9 276:4 284:7

**manager** 24:6,9 37:12 101:12,15 101:23 104:24 105:3 106:12 110:11 116:14,19 120:21 122:10 132:5 138:25 145:3 149:14 215:23 220:2 231:14 239:21

247:2 252:1,10 269:15 271:13 274:10 275:1 276:20

**manager's** 225:2

**managers** 24:11 24:16 120:3 121:5 121:8,11,18 122:5 188:9,13 273:17 273:24

**manslaughter** 262:11

**manual** 241:3,4

**manuals** 138:18 241:1

**march** 172:16

**marie** 2:6 4:12,23 65:15 162:7 281:23 284:13,15

**marked** 31:16 33:21 52:11 115:20 161:21 215:10 256:16 265:6 267:18 270:17 271:25 273:13 274:6,20 278:2

**marlet** 2:7

**marriage** 8:20 9:11,14 10:12,23 10:24 11:9 12:7

**marriages** 12:21 17:14

**married** 8:14 9:4,7 10:8 11:2,25

**marshal's** 74:23

**martin** 235:16

**mask** 221:12

**masking** 221:12

**master's** 216:3

**match** 132:17

**math** 176:9

**matter** 4:4 31:8 51:22 120:25 139:15,25 151:11 155:12 206:18,19 206:20 229:1 276:13

**matters** 283:6

**mattress** 196:1

**mayor** 152:12

**mcguire** 162:17,19 165:8,15

**meals** 95:25

**mean** 11:23 19:21 30:2 36:12,14 46:20 53:1 55:11 55:14,20 74:5 78:8,13 81:11 82:14,19 86:5 87:11 90:10 94:2 107:6,23 111:5,22 124:25 128:9 131:8 143:2 145:25 150:17 153:13 167:20,22 168:1 169:25 177:14 178:12 189:13 194:21 200:8 208:3 213:17 214:25 228:24 231:13 234:17,22,24 235:7 249:16,22 252:6 262:24 263:17 266:5,25 268:25

**meaning** 23:21 38:25 244:2

**means** 23:16 134:4 168:2 170:21

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

214:7 220:17 225:18 228:25

**meant** 114:24 129:4,5 147:25 247:22

**measure** 240:7

**measures** 232:10 232:19

**media** 251:15,16 272:18,21,25 275:13

**medication** 94:19 94:25 149:5,6,7

**medications** 94:17 94:22 95:1,4,10

**medicine** 159:8,16

**meet** 77:15 195:1 201:15 213:22 278:9

**meeting** 42:25 194:24

**meier** 1:4 4:11 5:3 195:12

**members** 240:8

**memo** 284:1

**memorialized** 233:11

**men** 278:12

**mention** 200:19 273:5

**mentioned** 4:22 9:4 114:14 116:21 120:1 147:6 181:5 184:7 240:18 247:23 253:5

**message** 55:7 57:5 57:8 78:10,13,14 78:17 201:21 211:19 251:15 258:16 260:17 261:11,18,19

263:11,21 271:9 276:10

**messaged** 209:2 211:17 256:24

**messages** 57:10,12 60:22,25 61:3,7 79:10 256:17 257:2,10,10,20,22 257:24 259:4,9 260:8 262:22 264:24

**messaging** 205:16 205:20 209:11

**met** 130:3,5,10,23 131:5,10 134:12 195:7,12 201:23 248:3 269:19

**mexicans** 91:15,17

**michelle** 120:11 121:3,21 162:17 162:19 165:7,14 224:23

**michigan** 133:4,18

**mid** 11:3

**mild** 149:3

**military** 18:21

**milligrams** 158:19

**million** 256:20

**mind** 154:1 215:20 223:22 269:2

**mine** 47:5 82:19 82:19 97:17 108:12,23 123:20 128:7 139:17 140:10 156:24 196:23 203:20 222:25 227:24 239:19 242:15

**minor** 148:1

**minute** 120:9 248:12 281:11

**minutes** 46:20 101:8 160:5 196:2 275:16

**miracle** 197:13

**misfortune** 278:9

**mislead** 58:11

**mismatched** 130:21

**missed** 210:15

**missouri** 1:1 2:4,8 4:8 10:7 11:15,24 13:4,18,20 17:5 63:17 64:25 142:21 265:11

**mistakes** 144:8

**mixed** 241:5

**mobility** 97:19

**moines** 1:18 283:15

**mold** 66:3,4,7,12 225:7 227:6 255:7 255:10 270:10,13 270:16 271:14,19

**mom** 197:1 198:8 203:12

**mom's** 194:24

**moment** 146:11 154:9

**moms** 199:13

**monday** 262:20

**money** 19:11 30:21 32:25 77:7 114:25 147:16 149:21,24 151:20 199:21,23 200:23 200:24 258:5 260:14,25 261:12 266:15 267:23

**month** 20:14 21:7 26:25 27:5,10,18 60:7 77:17 80:23

81:1,23 82:6,22 83:3,16 84:14 88:12 91:21,24 92:8 93:1 95:1,5,8 97:1 98:13 121:24 208:4,5,16 277:6

**monthly** 80:9

**months** 15:17 47:14 80:24,25 92:23 94:13 96:3 122:20,23 128:23 145:17 146:14 236:5,6,17 248:4 248:10 278:23

**moon** 266:4

**moral** 200:22

**morning** 4:22 10:19 21:10

**mother** 93:10 96:18 198:7 203:10 206:12 252:20

**mother's** 198:8

**motherly** 200:22

**mouth** 237:9

**move** 30:4 97:3 114:14 136:16 149:17 174:6 196:25 202:8 216:11 239:2,3 261:9 265:10 269:1

**moved** 14:24 16:5 21:3 27:18 30:6 35:20,22 63:18,19 77:10 115:2 120:8 121:1 235:19 237:22 238:14,22 252:9

**movie** 221:13

Case 4:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 295 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**moving** 14:16 51:17 114:13 138:14 164:23 165:18 167:2 171:8 174:2 229:15 233:17 234:4 240:5 250:11 274:12
**mpudlowski** 2:8
**multifamily** 115:10
**multiple** 69:10
**murphy** 65:15,16 254:8 255:11,13 261:4
**music** 211:18
**mysteriously** 238:8

**n**

**n** 2:1 3:18 4:1 72:13 270:18
**name** 4:23 5:11 8:10,16,19,21,22 9:18 12:2,4,16 16:25 22:12 39:15 41:19,20 42:5,6 44:14 45:8,10 52:24 64:21,22,23 67:22 91:11 96:9 108:10 109:2 120:9,17 137:15 185:19 222:11 242:25 243:3,5,6,7 250:12 252:17 254:12 265:17,21 265:21 267:8 270:19 271:6,7 273:5 274:8 279:16 284:13
**named** 40:21 89:12 120:11

250:12 283:4
**names** 8:13 9:2 17:9,13 91:13 138:3 252:21 254:15 258:24
**nap** 21:14
**nasty** 186:6
**natural** 6:21 50:18
**nature** 6:25
**near** 187:25 192:13
**necessarily** 196:9
**necessary** 90:11
**need** 5:20 7:20 8:1 19:11 27:23 28:4 41:6 49:1 50:10 56:23 59:20 62:22 171:16 210:17 258:18 282:2
**needed** 26:10 47:3 65:19 84:19,24 85:9 113:12 118:8 121:9 140:13 145:19 208:10 224:11 225:6 229:14 253:24 258:7,8,8 261:5 268:21
**needs** 62:21 101:13 260:24 264:12
**neglectful** 43:25
**negligence** 273:18
**negligently** 219:14 232:9,17 233:9,17 234:5 240:6
**neighbor** 38:20 107:6 136:23
**neighbor's** 128:13
**neither** 5:6 40:22 77:6 197:1 218:11

224:24 283:10
**nerve** 158:16,18
**nervous** 73:22
**never** 24:6,7,8,15 28:2 30:23 32:8,9 33:4 34:3 35:15 35:16,19 37:13 45:10 46:21 64:14 64:25 66:9,17,20 84:10 87:24 88:5 88:10,14,17,17 90:16 93:8,11,13 97:11 98:15 101:17 102:1,13 103:20 105:13,18 105:21,23 106:2,7 106:24 108:13,14 109:11 111:16 112:17 117:15 119:21 123:2,14 123:14,24 125:1 126:14,18 127:23 136:9 140:9 143:7 145:1,7 149:18 150:24 151:16 152:17,18 154:14 155:7,8,10,13,16 155:18 156:2,13 156:13,22 157:21 161:16 162:2 164:6 166:11 170:14 171:15 177:2 179:5,24 180:24,25 182:16 183:10 184:6 187:17,19 192:9 198:7 199:10,10 199:17,23 200:7 200:24 207:4,5,7 210:5 213:6 221:1 221:3 226:11,18

226:19 227:5 228:1 229:20 230:5,10 240:1 243:17 245:16 248:19 251:10 257:7 272:9,17 280:16
**new** 58:4 60:8 101:14 117:20 134:19 195:25 210:13 218:6 238:14
**newspaper** 63:10
**newspapers** 74:19
**nextdoor** 89:11
**nice** 30:3 42:12 65:1 79:25 115:2 152:2 274:25
**niche** 21:3
**nicknames** 8:13
**nicotine** 169:2,5
**night** 148:4 240:21
**nights** 136:21
**nine** 10:13,23 156:15
**nineteen** 218:19
**noisy** 257:17
**nonflushable** 213:5
**nope** 53:8 56:18 175:13 282:4
**normal** 36:24 284:19
**north** 64:16
**notarized** 56:3,10 62:12 212:18
**notary** 1:16 52:24 283:21 284:22
**notations** 163:22
**note** 81:3 253:16

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 296 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**notes** 165:25 167:18 169:17
**notice** 27:14 34:20 81:15 95:7 126:25 128:12 135:22 136:3 137:1,13 138:1 169:6 212:15 241:13
**noticed** 6:6 157:17
**notices** 137:11
**notified** 34:5,10,16 106:25 187:11,14
**notify** 84:19 107:2 119:2
**notifying** 118:21
**november** 162:25 164:10 270:19 271:9 272:2 273:14
**number** 59:5,19 59:20,21,23,25 64:15 65:4 71:8 73:18,24 74:3,8 79:18,21,21 100:19,20 107:22 146:2,7 202:4 215:17,21 216:12 216:12 218:18 220:8 256:5 257:2 260:18 265:4 269:16
**numbers** 112:5 201:5
**nurse** 23:9 113:5 244:14,15
**nurses** 131:23,25
**nursing** 18:6,7,10 18:15,16 19:10 22:23,24 23:2 115:6,7,9 131:22

**o**

**o** 3:19 4:1 41:15 192:12 271:8
**oath** 62:8 84:2 113:23 250:7,8 283:7
**object** 30:14 33:25 56:11 58:7
**objection** 30:15 31:13 33:24 49:24 51:6 56:24 58:13 246:22
**objections** 283:9
**obligated** 236:9 239:16
**obligation** 119:2
**obligations** 243:11
**observation** 191:11
**observations** 85:7
**observed** 240:8
**obvious** 244:17
**obviously** 61:20 66:9 116:10
**occasion** 39:5 40:20 109:14,18 109:21 110:3 156:25 210:19 249:21
**occasionally** 107:23
**occasions** 157:8,13
**occur** 111:8
**occurred** 271:11
**october** 53:7,8 219:7
**offer** 56:17 211:25
**offered** 30:21 209:18 210:6,9,18 211:10

**offhand** 150:1
**office** 23:10 26:7 42:1,3,4,24 43:2 54:23 75:19 143:8 143:13,13,24 144:1,2,4 173:3 179:11 185:12 222:19 229:23 234:18 247:10 276:24 278:12
**officer** 46:17 47:3 47:19,23 48:1,9 49:3 140:22 152:21 242:11,20 242:24 284:9,24
**officer's** 243:3
**officers** 151:18 192:19,22,25
**oh** 24:20 29:15 31:24 38:19 46:12 58:23 61:25 65:6 66:12 68:11 77:17 78:6 79:2 80:8 85:20 91:22 122:11 138:2 142:17 143:2 146:22 148:19 153:3 158:9 168:25 175:8 185:5 188:14 198:19 205:12 213:4 221:7 226:2 263:25
**oig** 274:17
**okay** 5:6,11,14,24 6:5,14,17 7:15 8:3 8:4,9,15 9:4,11,13 9:23 10:4,8,12,14 10:20,21 11:8,13 11:19,25 12:13,18 12:21,24 13:1,10

13:21,24 14:19,23 15:3,5,8,14,18,23 16:2,8,13,20,25 17:6,9,13,16,20,25 18:3,7,14,18,21,24 19:4,8,17,20,23 20:1,7,11,20,25 21:5,12,17,21,24 22:1,4,14,17,22 23:1,5,9,13 24:4 24:18,23,24 25:7 26:2,8 27:1,4,17 27:21 28:9,14,21 28:24 29:11,16,19 29:23 30:1,7 31:5 31:10,19 32:15 33:3,7,9,13,20 34:5,9,15,20,25 35:6,9,14,22,25 36:7,25 37:10,15 38:2,14 39:9,14,16 39:20 40:3,17,19 40:22 41:8,13,17 41:21 42:2,7 43:22 44:15,20 45:8,16 46:8 47:6 47:8,15,19,22 48:8 48:15,21,23 49:1 50:5,23 51:22 52:1,6,10,20 53:3 53:4,12,14,16,20 54:11,19,24 55:1,5 55:10,16,22 56:8 57:4,7,14,19,22 59:8,11,14,19 60:17,19 61:2,3,7 61:12,15 62:7,13 62:18,23 63:5,9,24 64:7,11 65:3,7,12 65:16 66:24 67:3 67:6,8,13,16,20,23

Veritext Legal Solutions

Case 4:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 297 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

68:1,10,15,17,19
68:23 69:10,13,16
69:20 70:4,10,17
71:9,24 72:2,4,10
72:12,14,19,20
73:1,5,10,13,20
74:7,11,16,23 75:5
75:8,12,15,18,22
76:1,9,11,14,17,21
77:9,13,15,21,24
78:11,18 79:7,12
79:14,16,20,24
80:6,11,16,19 81:3
81:15,19 82:9,16
83:12,15 84:4,12
84:17,22 85:5,12
85:15,18,21,24
86:5,14,18 87:4,10
87:19 88:4,10,18
89:6,9,15,20 90:3
90:18,21 91:7,14
92:1,21,25 93:8,12
93:20 94:13 95:7
95:10,17,20,24
96:2,13,16,19,22
97:1,9,21 98:1,4,8
98:23 100:8,17
101:18 102:1,9,15
103:4 104:16
105:3,16,22 106:6
106:24 107:10
108:18,24 109:1
109:13,20,23
110:1,22 111:1,15
111:18 112:5,8,12
112:15,20,25
113:25 114:9,23
115:4,8,12,16,19
115:24,24 116:3,6
116:9,11,21,25
117:7,20,25

118:20,24 119:1
119:13,17,23,25
120:18,23 121:3,5
121:11,21 122:3
122:17 123:5,8,15
123:18,22 124:3,9
125:4,12,15,21
126:3,6,10,13,19
127:9,14,17,20,25
130:1 131:13,24
132:10,19 133:9
133:12,16,22
134:6,22 135:25
136:2,8 137:6,23
138:5,11,19 139:2
139:3,13 140:6,16
140:24 141:3,8,15
141:25 142:3,16
143:16 144:10,12
145:13,21 146:17
146:20 148:20,24
150:20 151:8
152:18 153:20
154:6,11 155:7
156:20 157:6,12
158:4,7,13 159:19
160:1,6,9,15,22
161:3,7,20,22
162:15,19,22
163:1,4,8,11,14,18
163:21,24 164:8
164:23 165:3,6,18
165:25 166:3,20
167:5,8,10,17
168:3,16,24
169:16,23 170:1,9
170:23 171:8,17
171:18 172:3,6,10
172:16,21,24
173:6,15,19 174:2
174:5,6,10,13,20

175:4,17,20,25
176:5,7,13,20
177:4,12,22 178:5
178:9 181:12
182:9 183:7,16,25
184:21 185:20,24
186:18 187:16,24
189:6,9 190:2,4,7
191:13 192:1,9,19
192:22 193:23
194:6 195:11
196:3,14 198:4,12
198:23 199:18
200:19 201:5
203:5,8 204:17,22
204:24 205:23
206:1 207:9,25
209:1,3,6,9,13,25
210:3,6,25 211:19
211:22,25 213:14
214:13 215:10,18
216:11,22 218:4
218:10 219:1,4
220:13,18,21,22
221:15 223:3,9
225:17,24 226:6,8
227:22 228:6
230:24 231:12,22
232:24 234:4,20
235:9,17,23 236:1
236:4,7 238:3,6,20
239:2,8,20 240:2
240:13 241:7
242:7,13 244:18
244:25 245:5,13
245:16 246:11,15
248:3 249:10,13
249:20,23 250:11
250:15,19,22
251:2,17 252:3,11
252:17 253:2,4,8

253:20 254:1,6,9
254:13,17 255:11
255:16,22,25
258:15 259:11,25
260:17,23 262:13
262:24 263:21
264:9 265:1
267:13 268:10
269:7,10 270:4,15
271:8,24 272:11
274:2 275:5
276:12,17 278:1
278:20 279:19,20
279:25

**old** 11:19 12:15
44:2 58:5,5,6
60:13,15 200:8
218:7 251:23
280:11

**older** 130:15

**olivette** 2:3

**once** 37:17 118:10
150:13 151:25
188:19,20 211:20
214:14 241:24
250:25

**ones** 17:10 44:9
180:1 218:7,24

**online** 42:10 112:7
112:9

**open** 240:20

**opened** 278:9

**opinion** 130:7,9
131:7,7,9,11
132:15,23 133:2
134:4 140:4

**order** 24:1 161:25
225:10 256:2
270:8,9

**orders** 36:11,13,22
36:24 225:5

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 298 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

227:25 228:3
**original** 284:13
**originally** 8:22
**outcome** 26:14
28:1 70:13
**outside** 39:7 86:8
87:17 114:9,11,11
122:25 191:1,19
261:4
**overdose** 38:20
235:10 236:25
**overdosed** 38:20
236:1 238:1
**overrun** 230:8
**oversight** 234:7
**owe** 149:24,24
**owned** 14:11
32:16 33:5

**p**

**p** 2:1,1 3:20 4:1
252:21 271:25
**p.m.** 280:7,8,25
282:12
**pace** 191:22
**page** 3:2,5 31:23
62:4 171:20
172:22 174:6
272:21
**pages** 52:17
162:23
**paid** 34:7,7 180:7
284:18,18
**pain** 77:2 159:8
246:7
**painting** 258:6
**paper** 26:18 54:17
54:18 57:5 59:9
59:11,12 126:11
174:23 175:16,18
176:16 177:9
212:18,18 213:4

219:21,23
**papers** 27:3,8 29:4
34:3 178:17 179:7
220:4
**paperwork** 32:9
33:2 46:2 75:4
111:20,21 123:10
127:10,23 143:9
143:10,20 144:5,7
144:18 173:5
178:11,23 179:3
179:10,12,15
180:21,22 229:24
231:24 232:3
**paragraph** 139:6
156:15 215:16,21
216:12,12 218:10
219:13 220:10
243:8 244:1
**parked** 38:5,15
128:14
**parking** 128:15
258:6
**parkway** 2:3
**part** 99:20,21
115:16 124:21
149:14 154:15
223:22 269:8
**particular** 19:15
240:9 251:3
252:15
**parties** 283:11,13
**pass** 137:10
**passed** 105:16
114:4 137:13
186:6
**pathways** 85:19
**patio** 87:18 184:4
**pay** 34:13 135:2,3
152:10,13 158:2,4
159:22 236:11

245:21 261:8
264:6,7
**payment** 34:24
**pdf** 282:11
**pending** 35:7
**people** 37:24
46:21 48:2,5,11
49:4,12 51:15
68:23 72:20,22
88:20 90:5,9,12,22
91:11 101:21
109:4 112:6 128:8
130:14,16,19
131:18,20 132:11
134:2,21 136:16
138:2,5 142:23
143:6 144:15
147:18 149:17
183:1,2,5 185:13
186:7 188:22
192:24 193:10
202:20 224:2
231:15 237:22
238:17 240:20
241:17,22 243:23
248:23 251:23
253:23,24 254:14
262:14 272:24
273:4,7 274:4
275:24 276:20,23
277:4 278:10
**percent** 227:7
270:2
**perfect** 81:18
83:19
**perfectly** 41:5
**perform** 228:8
240:6 243:11
**performance**
232:11,20 233:11
240:4 243:12

**period** 122:19
123:12 197:17,21
**permission** 278:10
**person** 65:3,9
114:6,8 137:13
141:13,14 154:10
154:12 162:15
163:1 185:18
187:10,11 188:8
201:20,22 205:8
205:24 206:11
209:10,14 211:14
230:22 231:1
234:11 240:23
284:13
**person's** 272:3
**personal** 60:25
61:3 82:11 119:13
119:18 134:4
159:15 215:25
216:7,18 218:16
219:10,18 222:3
229:18 230:13
232:13,25 233:12
233:22 234:8,13
239:23 243:14,19
244:5
**personality** 130:4
131:2,4 132:14
247:11,14
**personally** 29:20
82:11 149:21
217:13 220:23
221:19 228:9
240:14 245:25
**personnel** 191:17
191:20 192:15
234:6
**petition** 25:17
215:12

Case 1:23-cv-03015-BAH Document 15 Filed 01/12/23 Page 299 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**pets** 136:11
**ph** 88:19 185:19
  235:16 252:18
**phone** 44:9 53:18
  55:3,4 57:11,13,15
  57:23 58:3,4,6,6
  59:5,6,7,19,20,21
  59:23 60:8,14,15
  72:15 78:4,7,20
  79:5,9,17,20 114:6
  141:13 195:14,17
  195:24 201:5,17
  209:4,7 214:13
  251:14 254:14
  255:2 278:22
**phones** 80:1
**photos** 87:1,2
**phrases** 6:24
**physical** 93:21
  94:6 95:8,11
  159:6
**physically** 98:19
  100:21
**pick** 21:10 108:22
  248:20 264:19
**picked** 108:23,24
**picture** 44:4,5
**pictures** 44:7,9
  45:3 86:11,14,16
  182:19,22,25
  190:19 217:22,23
  218:1,5,8,21,23
  219:9 226:15
**piece** 57:5 59:12
  126:11 127:23
**piercings** 130:20
  131:15
**pierson** 2:10
**pill** 245:20,25
**pills** 158:16,18
  159:1,3,4 246:7

**pine** 29:17,17
**pipe** 7:19
**place** 24:22 47:10
  82:18 115:1,2,3
  116:22 140:3
  141:15 150:24
  154:25 157:1
  165:23 167:11
  168:22 169:14
  171:9 172:19
  200:17 218:12
  219:6 221:6 223:5
  226:1 230:7 236:4
  259:2 262:19
  264:17,23 268:22
  268:24 270:22
  274:12,25 280:2,5
  281:22 282:7
  283:4
**places** 42:10
**plaintiff** 4:11
  240:10
**plaintiff's** 281:16
  281:24
**plaintiffs** 1:5 2:2
  51:19,23 281:20
  284:5
**plan** 269:4
**plans** 113:9
**play** 279:19,25
  280:3,22
**played** 214:2
**pleading** 63:1
**please** 4:8,16 5:11
  7:19 8:2 52:14
  61:13,17 123:20
  257:13 282:11
**pled** 23:16
**ploy** 48:16,17,19
  48:20

**plumbing** 222:20
  223:3,4
**plus** 48:2
**point** 5:20 7:19
  16:9 22:23 44:25
  55:23 56:5 63:6
  82:4 85:13 95:18
  98:6 104:9,12
  110:5,10,22 111:2
  111:8 127:6 151:4
  151:10 156:1
  165:10 183:13,17
  200:10 203:16
  211:25 226:20
  233:6 236:15
  245:7 246:18,19
  247:2 248:3 258:5
  264:3,17 281:10
  282:3
**pointed** 157:17
**points** 54:16
**police** 37:11,13,15
  37:17,22 38:2,3,14
  38:17,21 39:5,12
  39:14,22 40:13,20
  41:9,10,16 42:8,9
  43:1,9,19 45:12,15
  45:24 46:10,17
  47:2,19 48:8
  49:19 52:7 74:20
  129:3 140:22
  151:5,11,14,15,17
  152:14,15 153:13
  153:16,20 154:14
  154:22,25 155:3
  155:10,12 176:1
  185:21 192:19,22
  206:14,18,19,20
  239:1,5 242:11
**policeman** 185:12
  222:19 238:7

  242:8
**policemen** 37:19
  41:12,13 154:2
**policies** 188:15
**policy** 115:17,22
  115:25 116:7,13
  116:17,21 117:4,8
  117:15 118:1,4,21
  119:15,19 120:19
**poor** 46:19 262:19
**poplar** 23:8
**pops** 76:19
**portion** 50:15
**portrays** 265:7
**position** 33:3
  40:10 106:18
  143:22 145:7
  147:8,22 170:16
  174:5 175:20,25
  176:20,21,24
  178:5,9 183:16
  187:16 189:20,23
  189:25 193:8
  224:4 230:5,9
  232:2 236:7 244:4
  264:21 265:24
**possibility** 207:14
**possible** 5:16
  254:10
**possibly** 196:22
  254:14
**post** 64:7 135:23
  272:18 275:12
**poverty** 269:1
**power** 89:22
  128:17 211:2
**pre** 135:23
**predict** 51:15
**prefer** 106:18
**preferred** 19:5,8
  19:17 20:3

Case 4:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 300 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**pregnancy** 92:4
**pregnant** 198:16
**prescribed** 159:17
**prescription** 94:22
237:12
**prescriptions**
245:17
**present** 2:5,9,10
5:1 21:18 26:18
26:21 108:2,9
123:2 141:25
144:16 189:6
193:5 199:6
202:21 237:25
**presently** 240:9
**preserve** 6:19
**press** 118:10
**pretty** 38:21 72:11
144:21 198:18
**preventable**
236:16 267:25
**prevented** 236:18
**previously** 132:7
**printed** 283:8
**printouts** 31:18
**prior** 13:17 14:3
15:23 17:25 20:3
20:4,25 23:1,6
35:14,18 36:9,19
36:21 37:8 38:4
38:11,17 39:4,22
49:11 51:17,18
78:18 80:17,21
82:13 84:14 88:22
90:6 91:3,8,23,25
92:8,16,20,21,23
93:2 95:18 96:3
98:13 112:1,15,17
121:5 122:7
138:25 144:21
146:9 155:19

157:8,24 159:21
160:3 165:14
172:8,12 173:11
173:17,23 179:13
185:3 186:23
187:4,8,13 188:2,7
189:4 194:17,17
194:24 195:2,8,11
195:18,24 196:4
201:1 215:21
219:22 220:2,14
223:10,20 228:7
239:24 241:13,24
264:23
**prison** 258:3,20
**private** 257:25
**probably** 11:3
14:14 17:13 38:9
38:10 55:3 59:17
60:21,23 71:23
100:9,9 149:8
183:20 201:6
202:18 215:2
231:24 258:12
263:25 275:21
**problem** 24:15
65:23 92:4 106:16
106:23,23 146:25
158:12,14 159:6,6
159:20 237:22,24
238:10 255:7
261:7
**problems** 24:13
25:14 68:12
134:17 151:18
**procedures** 134:1
**process** 6:9 27:20
55:16 210:12
**processes** 55:13
**proclivity** 243:9
244:3,6

**produce** 148:22
**profession** 240:9
240:16
**professional** 132:9
**professionals**
193:3
**program** 247:7
**progressive**
137:18
**proof** 65:24 66:1
66:11,12 180:23
220:19,23 227:22
**proper** 240:11
**properties** 273:20
**property** 24:11,16
37:12 101:12,15
101:23 104:24
105:3 106:12
115:11 116:19
120:2 121:5,8,11
121:17 122:5,10
132:5 138:25
145:3 188:9,13
215:23 220:2
225:2 231:13
239:21 247:2
252:1,10 266:16
267:23 270:21
271:13 273:17,24
274:9 275:1
**protect** 46:18
274:11
**protection** 48:1
**protections** 24:1
**protocol** 106:12
136:13
**prove** 45:19,25
**provide** 69:17
72:23 73:7 121:25
209:19 234:5
236:9

**provided** 63:3
75:18,22 168:10
176:1 284:25
**provider** 60:1
**providing** 200:20
**ptsd** 90:16 93:8,10
**public** 1:16 76:4
76:11,14 283:21
284:22
**pudlowski** 2:6 3:3
4:12,12,21,23 7:17
10:11,16 30:24
31:15 34:2,4 40:9
49:25 50:4,5,6,13
50:17,21,24,25
51:12 56:18,21,23
57:2,3 58:16,17
62:1 83:23 92:14
107:25 110:16
113:11,20 129:12
132:2 162:9,10
182:21 232:1
243:2 246:24
249:23 250:4
268:16 278:5
280:3,15 281:6,9
281:23 282:1,8
284:13,15
**pulled** 152:5,21
**purported** 233:18
**purportedly**
216:13 233:10
279:1
**purpose** 74:13
261:21 264:11
**pursuant** 284:24
**pursue** 71:10
**pursuing** 71:13
**pushing** 135:9
**put** 39:7 59:6,7
60:19 88:5 101:14

Case 1:23-cv-03015-BCM Document 13 Filed 01/13/23 Page 301 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

101:19 102:4
131:6 139:4
142:11 161:23
179:8,8 186:10
212:14,18 224:10
227:18 229:5
237:8 253:11
257:14 260:11
271:13 278:15
**putting** 91:10
180:6

**q**

**quad** 193:15
**qualified** 115:1
**quarterly** 119:24
121:6 123:9
124:13,21 125:7
126:22 127:2
158:8,8 167:19
**question** 7:4 8:5,6
31:11 34:9,15
40:12 50:11,12
52:16 61:16,17
84:7 102:24
135:12,16 157:23
173:14 174:13
212:20 244:21,23
247:23 248:24
257:9 268:7
272:15 277:11
**questioning** 56:15
56:19 57:1 58:10
59:3 281:25
**questions** 5:19
7:24 10:20 31:14
58:14 281:23
**quit** 20:15,16,17
22:16 238:8
**quite** 5:19 7:18
169:10 171:15

**r**

**r** 2:1 3:22 4:1 8:18
149:8 274:7 283:1
**ran** 22:6 94:24
182:1
**randy** 31:21
**raped** 43:15
**rarely** 112:4
199:22 211:16
229:20
**reach** 153:1
203:12 251:9,13
**reachable** 100:2
**reached** 251:8,10
278:21
**read** 50:16 63:8,9
63:10,11,12,21
76:1 115:21 118:4
126:14 162:23
163:25 169:11
177:6 215:19
220:1,11 232:16
237:16 241:4
257:13 269:25
**reading** 126:18
177:5
**ready** 197:2 202:9
**realize** 50:7
226:17
**really** 17:8 25:20
27:10 29:5 30:3
40:25,25 45:18
50:21 64:25 72:6
87:2 89:21 90:16
96:12 97:8 99:24
102:7 109:4
110:12 121:22
131:6 135:1,2
137:3 151:16
152:2 153:25
158:2 163:16

166:12 168:4,14
169:6 173:25
177:8 181:17
184:17 186:19,25
187:2 188:24
189:19,23 190:21
194:4 195:22
196:10 199:3,17
200:17,24 208:23
213:7 222:23
224:22 226:3
227:5,7,15,18
228:10 231:3,21
245:21 251:11
254:11 255:6
258:25 275:24
**reason** 14:15 40:4
49:7,19,21 51:1,13
72:24 73:1 83:1
97:16 100:25
122:3 133:17
138:7,10 164:11
164:14 166:9
210:4 230:3
255:22 259:8
268:10
**reasonable** 147:4
**reasoning** 106:6
117:14
**reasons** 40:11
105:20 153:14
**rebecca** 250:12,13
250:15 251:17
252:14
**recall** 14:4 33:9,13
34:19,20 36:22
38:23 39:4 41:4
41:20 43:18,20,22
45:2,11 46:5,9,13
82:6,16,21 85:21
85:24 86:15,21

91:18 92:22 108:8
108:18 113:2
116:6 125:6,12,14
125:16,17 126:13
126:19 134:25
137:7,12 138:24
141:17 142:3
146:21 156:4,5
158:2 161:7
162:19,21 163:4,7
163:11,15 165:6
171:1,9,10,11,11
171:17,24 172:9
172:15,20 173:8
173:12,13,16
174:20,25 175:2
175:15,17 178:25
179:21 180:10,16
182:23,25 183:6
188:11,21 193:5
194:4,23,25
195:22 196:3,8,16
197:12,19,20,25
198:1,5 199:1
201:24 202:2,21
202:25 207:21,24
209:13,16 211:13
212:24 213:7
214:4,20 215:3
222:12 223:4,9
227:18 231:15
239:5 245:25
246:4,16 253:9,11
254:3,7,15 255:4,6
255:12 257:10
259:4,6,11 260:13
262:21,23 265:12
267:3,5,6 268:2,18
271:22 272:5,6,20
273:2,12,22,22
274:1,18 276:11

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 302 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

277:18,21,23,25 278:1,19,20,24 279:22,24 280:19
**receive** 28:5 64:11 269:18 279:1
**received** 32:8 52:13 57:17 136:25
**receiving** 34:20
**recertify** 179:4
**recess** 83:21 113:17 250:1 281:13
**recessed** 282:12
**recognize** 271:7
**recollect** 180:5
**recollection** 32:1 120:6 146:5 165:23 166:15 167:11 168:21 169:13 170:1 171:22 173:22 180:2,4
**recommends** 118:9
**record** 4:2,8 5:12 5:22 6:19 7:11 23:18 24:22 69:13 83:22,25 113:14 113:15,18,21,25 115:5 180:23 215:20 249:25 250:2,6 254:19 280:2,5 281:10,11 281:12,14 282:2,5 282:7 283:9
**recorded** 254:18
**recording** 279:19 279:21 280:6,12 280:22,24 281:1

**records** 58:5 69:17 76:12,15 79:20 209:4,6
**recovered** 236:24
**recusal** 243:10
**red** 91:16,17 118:6
**redirect** 281:25
**reduced** 283:7
**refer** 52:4
**referred** 3:5
**referring** 24:10,14 37:23 156:21 204:15
**refresh** 32:1
**refrigerator** 44:2 44:10
**refrigerators** 231:8
**refused** 103:5 256:23
**refuses** 105:4
**refusing** 111:4
**regard** 20:21 243:14 253:6 273:10
**regarding** 28:16 30:16 34:1 44:22 117:19 252:4
**regardless** 173:19
**regards** 32:3 136:5 137:7 272:22
**regional** 269:15
**regular** 118:8
**rehab** 236:21 237:7 244:15
**related** 58:14 62:24 63:6 74:21 74:24 75:2,19,23 183:8 214:19 243:13 244:22

270:10 283:11
**relationship** 41:19 76:22 151:17 198:5 199:2,4,9
**relative** 283:12
**relevancy** 30:15 58:8
**relevant** 58:21
**reliable** 154:3
**relied** 233:18
**relocate** 260:14 261:13 263:24 264:7,13
**relocation** 261:8
**remained** 219:6
**remember** 31:2,7 33:11 36:8 37:2 40:15,16,18 41:1,1 41:7 53:17,19,21 55:6,9,20 56:2 57:6,9,17,18 59:10 62:7 64:22 67:22 80:22 81:6 87:14 91:13,15 96:9 102:4,8 104:3,8,8 104:15 105:2 107:9 108:10 110:8 111:24 114:2 115:17,18 116:10 120:7,17 121:22 122:13 129:9,10,13,24,25 133:21 136:1 137:4 138:3 145:16 156:4 160:18 161:1 163:10 164:16,22 168:5 180:14 188:10 195:10,13 195:13,15,17,22 196:19 198:12

199:24 200:15 202:13 205:20 206:10 213:10 214:1 217:7,8 218:20 220:9 221:8,17 225:13 225:15 226:3 242:4 243:7 248:2 252:19,22 255:16 258:14 260:16,21 264:8,10 266:1,2 268:9 270:3 277:8 277:10
**remembered** 113:12
**remembering** 10:9
**remind** 61:13
**removed** 98:12,15 100:13
**rent** 14:10 25:18 29:7 120:16 149:6 236:11
**rental** 29:21,24
**rented** 29:1,7,11 29:23 120:25
**repairs** 222:6
**repeat** 8:2 50:13 69:9
**repeatedly** 58:9
**repercussion** 135:16
**repercussions** 129:19,23 134:8 135:13,19 137:8
**replace** 103:19 105:4 164:1 176:22,25 217:19
**replaced** 164:10 164:17 171:4 182:16 218:7

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 303 of 786

EXHIBIT A - STATE COURT FILE - EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**replying** 260:7
**report** 5:18 46:11
  74:20,24 75:1
  118:11 126:4,7
  128:2 129:14
  134:11 135:14
  139:8,20 140:3,21
  141:4 142:4,9,14
  142:18,25 145:4
  145:20 146:24
  150:23,24 153:4
  155:11,14 156:1
  161:14 162:5,12
  162:22,24 163:12
  164:9,24 165:19
  166:1,7,10 169:11
  172:17,22,25
  174:8,10,13,14
  183:8 194:13
  203:16,18,19,23
  225:7 226:14
  249:13 253:7
  265:1,5 268:2
  270:1 271:22
**reported** 1:24
  49:17 100:12
  112:14 155:15,19
  156:2 186:8,12,13
  186:14 216:15
  249:10 253:9
  255:8 275:15
**reportedly** 256:18
**reporter** 1:16 4:16
  6:7,18 7:1,9,16
  10:10,15 40:8
  50:16 83:20 92:6
  107:24 110:15
  113:12 129:11
  132:1 182:20
  231:23 243:1
  246:23 268:15

  278:4 280:14
  281:8 282:4,10
  283:3,21
**reporter's** 61:24
**reporting** 185:7
  253:10
**reports** 41:9 42:8
  43:1,9 45:15 75:9
  75:16 122:1,4
  124:1 127:17
  138:20,23,24
  152:14 157:2
  161:22 165:7,14
  167:19 173:9,16
  178:6,19 179:22
  180:18 181:8,13
  183:10 187:7
  204:9 206:25
  207:12 233:10
  269:23 279:1
**representative**
  142:22 267:17
**representatives**
  276:2
**represents** 4:24
  5:7
**request** 284:25
**requested** 50:15
  140:7
**required** 222:14
  222:18 223:21
  237:3,6 238:15
  240:7,8 243:12
  284:18
**requirement**
  165:3
**rescue** 268:19
**research** 76:4,7
**researched** 147:1
**resented** 251:24

**resident** 118:14
  266:13
**residents** 118:15
**resigned** 41:12,21
**resolved** 65:23
  66:5,16 67:12,25
  70:25 276:6
**respiratory** 78:21
  78:22
**respond** 156:7
  275:22
**responded** 69:22
**responder** 191:22
**responders** 191:24
**response** 63:24
  64:11 67:8 73:7
  73:10 102:25
  103:22,24 153:11
  207:18
**responsibility**
  102:22 103:16
  118:6 119:9 212:4
  225:19 226:25
  229:8 239:11
**responsible**
  118:15,18 147:2
  204:4 222:1 224:3
  224:4,8 229:11
  235:12 272:3
**result** 70:16
**results** 71:15,22
  71:23 72:9
**retaliate** 148:16
  150:2
**retaliated** 147:23
**retaliating** 148:9
**retaliation** 28:13
  68:12 74:4,9
  112:16 145:18,23
  145:25 146:6,9,18
  146:20 147:12,21

  149:1 249:18
  264:15,16
**retire** 19:11 22:23
  268:25
**retired** 19:10
  22:22
**return** 281:19
**revealed** 216:16
**revenue** 33:14,23
  34:21 35:2
**review** 74:18
  275:14
**reviewed** 62:24
  63:1,5 75:5
**richard** 17:22,25
**richmond** 17:1
**rides** 77:6
**right** 5:18 6:2 8:22
  8:25 9:1,7 11:1,2
  11:14 15:7,9,13
  22:25 24:17 25:13
  27:21 39:20 45:15
  46:7 47:18 51:17
  52:10 53:8,23
  59:5 62:23 68:16
  68:18 69:24 73:5
  74:19 76:21 77:17
  77:18 80:13 82:5
  83:6,24 87:16,20
  88:12 89:8 92:9
  93:5 100:9 101:25
  102:2 103:7 104:1
  105:15,17 106:12
  107:19,21 108:13
  111:9 114:13
  116:15 121:4
  122:16 124:11,16
  125:24 126:8,9,15
  127:1,3 132:22
  138:14 139:2,10
  139:15 140:5

Case 6:23-cv-03015-BCW   Document 15   Filed 01/13/23   Page 304 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

145:24 147:24 150:8,19 154:9 155:1,14 156:6 157:7 160:12 161:20 162:4,4 171:25 175:19 177:7,10 180:14 181:2 185:14 188:18 194:10 195:6 203:2 205:1 208:3 209:23 210:21 215:9,16 215:19 216:11 218:10 219:24 221:5 225:24 229:5,6,15 230:13 232:6,8 233:8 243:8 249:23 250:5 251:4 253:2 254:16 261:9 265:1,24 266:8 269:5 281:9

**rights** 47:1 63:12 63:14,21 268:5

**ripley** 16:16,17

**road** 262:6

**robbed** 43:15

**robby** 191:22

**robert** 9:19,23 11:17

**robin** 16:22 35:12 37:9 53:24 54:3 68:16,20 75:5,12 75:15 76:22 77:8 77:9,10 78:6,21 82:3 87:7,12 89:10 90:4,18 91:2 92:4,10 93:14 95:3,17 96:16,23 97:2,6,9 98:12 100:12

112:22 113:7 119:14,18 137:16 141:22 151:2 154:3,4,5 160:14 174:23 175:3,6 178:15 181:5,6,7,9 181:17 183:20,22 184:3,8,14 187:1,1 187:3 189:6 192:2 192:3 196:11 198:5 199:1,20 200:3,6,8,19,24 201:11 202:8 203:25 204:23,25 205:2,9 216:14 217:5 236:6 251:6 251:11,18 259:14 262:15,16,25 263:7,13,17,18

**robin's** 35:14,18 35:25 36:10,19,20 36:21 38:4 39:22 43:18 45:12 47:11 51:2,8 54:5,8 55:12 59:15 61:4 61:6 62:25 64:7 75:23 76:10 83:2 93:6 108:16 110:20 112:2 123:21 135:23,24 139:18 140:7,11 140:14,21 141:5 141:20 143:8 153:16 160:16 161:15 173:11,17 173:23 178:3,20 179:14 180:12 181:13,19,23 182:12 183:8,13 183:17 184:1,19 184:22 185:3

186:23 187:8,13 188:7,17 194:18 195:4,8,11,18 196:4 201:3 209:18 226:6 236:24 239:25 241:15 242:5 249:11 251:19 252:25 259:16,19 260:15 261:2,13 263:4 265:21

**robins's** 140:17

**role** 20:9 214:2

**rolla** 77:3

**rolling** 191:9

**ron** 38:1

**ronnie** 10:25 11:2 11:11 15:11

**room** 5:1,7 124:18 147:14 157:16 240:19,24 241:12 241:15 246:6,9

**rooms** 125:5,10 158:1

**roxann** 1:15,24 113:13 281:7 282:3 283:3

**rsmo** 284:10

**rude** 7:10

**ruined** 208:11

**rule** 134:19,22 135:20 284:10,24

**rules** 6:6 38:6 75:11 84:1 113:22 250:6

**run** 94:25 95:4 210:12 213:9 262:3

**runners** 262:21,23

**running** 30:15 31:13 33:25 56:22

58:13

**s**

**s** 2:1 3:23 4:1 72:13,13 149:8 274:21

**safe** 68:13 97:18 147:5 236:10 243:17,17 258:22 259:2 270:22

**safety** 111:14 233:20 258:8 268:6 269:20

**safir** 149:8

**salt** 251:22

**salvageable** 201:14

**sandra** 16:24 17:6

**sandra's** 16:25

**sarah** 12:3

**sat** 105:24 214:21

**satellite** 39:7,21

**satisfaction** 123:13 155:17

**saustin4853** 266:11 267:20 270:20

**save** 129:16

**saw** 84:14 86:11 86:14 87:2 88:10 88:14 92:15 134:13 155:8 183:10 191:1 194:7 234:17 240:1 245:20 256:23

**saying** 6:19 30:25 48:25 59:4 66:15 71:4 73:5 106:19 111:15 116:23 132:3,8 141:18 164:6 167:23

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 305 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

170:18 176:17,20
199:24 217:17
228:22 236:1,9,16
237:10 260:20,22
261:12 263:6
264:8 280:20
**says** 54:12 66:25
118:5 126:22
136:11 164:13
167:9 169:24
170:22 215:21
216:5,7 217:9
219:4 233:17
244:1 257:14
268:4 273:16
276:19 278:3
**scare** 136:7
**scene** 191:20
192:15,20
**sceptical** 130:22
**school** 17:18,21
18:4,8,15,18,19
133:5
**schooled** 250:17
**sciatica** 93:22,24
94:4,7
**scoop** 238:17
**scrambled** 244:11
**scratch** 115:5
**scream** 261:4
**screen** 60:15
**seal** 284:20
**sec** 284:10
**second** 32:12 71:1
123:23 137:6
141:1 146:17
152:21 226:4
**section** 163:24
168:9 169:24
**security** 221:14

**see** 10:17 42:24
44:7 52:24 54:3
57:15,23 73:16
75:17 76:8 79:21
85:10 86:10 87:12
91:7 94:14 95:16
116:3 122:14
126:6 143:17
158:22,24,25
159:4 162:13
163:21 164:23
165:20,25 166:13
167:3,5,24 168:18
169:23 171:25
172:21 174:3,7
177:18 186:15
188:18 192:19
196:9 200:8 203:2
220:19 234:17
242:11 244:25
245:1 248:11
249:20 258:5
263:16 264:22
273:17 278:12
**seeing** 82:6,12
85:24 92:22
126:13 142:3
163:11 218:20
231:15 245:25
**seen** 24:3 34:3
35:3 52:16,19
74:20,23 75:1,4,8
75:12,15 83:12
84:8 87:7 91:5
94:10 143:7 162:2
164:6 166:11
172:7 179:24
183:7 209:12
215:13 223:20
245:16,19,21
246:11,12,13

256:20
**sell** 29:2 31:5
**selling** 30:18,19
**seminars** 18:12,13
**senator** 142:21
267:17
**send** 54:20,21,24
149:20 210:17,18
210:21 237:6
261:11 263:11,21
264:12 269:25
274:4,17 276:25
277:9 278:17,18
**sending** 155:22
212:18 257:18
259:4 261:21
262:22 265:12
267:3 277:10
**sends** 71:4,6
**senior** 13:9,10
21:25 22:3,10,13
22:14 24:19 64:1
**sense** 5:25 7:6,13
7:23,25 8:7 71:11
163:8 244:22
259:12 266:16,18
**sent** 33:2 38:24
54:22,23 55:5,7
57:24 58:20 59:17
67:7,10 70:16
71:14 226:16
236:20 254:24
257:11,22 258:16
259:9 260:17
263:6 265:8,14
266:20 269:9,11
269:12 270:24
271:6 274:16
275:2 276:3,12
277:12,19

**separate** 57:5
208:10
**september** 47:13
47:15 49:11 51:3
162:14 168:17
**serious** 119:12
**served** 27:3,8 29:4
32:9
**services** 28:4 64:1
84:25
**set** 116:17 187:17
187:20 284:20
**seven** 14:14 36:16
63:17 146:4
264:20 271:15
280:10
**shallow** 132:20
**shampoo** 227:1
**shampooers** 223:1
**shared** 89:9
**she'd** 64:24 105:14
122:12 124:14
157:17 178:16
221:1 241:24,25
**she'll** 117:16
**sheet** 283:5
**sheila** 272:13
275:4
**shelter** 14:18 15:1
15:14,15,16 21:4
22:25 23:2,6
**sheriff's** 42:1,23
43:2
**sheriffs** 42:2
**short** 20:5 21:2
83:21 113:17
250:1 281:13
**shortcut** 161:24
**shorthand** 1:15
283:3,7,21

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 306 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

**show** 48:24 84:15 86:16 120:20 126:11 274:6 278:1
**showed** 44:8 190:20
**shown** 269:13
**shows** 83:13 84:9 171:20 266:10 267:19 273:15
**shut** 46:24 188:2 190:24 247:10 259:1
**shutting** 43:16
**sic** 226:21 259:24 261:24,24 273:8 277:13
**sick** 264:14,15
**side** 88:2 251:19
**sign** 117:20 123:20 126:12 127:10,14 128:6,10,25 129:15,18,23 134:8 135:6 138:22 139:7 140:2,13 145:4 149:14 150:23 155:25 157:1 161:13 163:15 165:5,11 174:16 174:18,22 175:14 175:18 176:12 177:8 178:20 203:16 235:11,17 235:24 236:10,12 256:2,9,12
**signal** 39:11
**signature** 62:5 115:25 164:23,25 165:4,16 172:1,3 172:21 174:7,14

180:1 270:8
**signed** 114:15,19 115:4 116:16 117:1 119:14 120:19 127:16 128:5 129:15 139:13,19,20 142:4 172:11 173:1 174:10,15 175:5 176:16,17 177:20 178:3 180:3 284:24
**significance** 40:1
**significantly** 61:24
**signing** 116:6,13 128:1 129:13 135:14 138:20,24 163:15 165:6 172:8,12 173:9,12 173:16 174:20,25 175:15 177:12
**signs** 147:3
**sim** 60:10,13,18,19 61:10
**similar** 163:16 215:24 267:4,13
**simple** 99:6 258:1
**simply** 56:16 65:24
**sims** 128:1 137:8 139:8 153:4 156:22,25 160:6 160:15 163:3,5 164:8 165:20 167:6 168:17 169:12 171:22 172:17 178:6 185:4 188:9 202:22 215:22 216:13 218:13 219:14,15,19

222:1 229:19 230:15 233:9,18 243:9 244:5 256:19 257:3,11 257:22 260:24 261:11 272:4,7,11 272:15 273:1,4 274:9 275:1 276:8 276:13,20 278:3,7 278:18,21,25 280:17
**sims's** 163:18 166:3 167:14 229:17 232:11,19 234:7 244:3 253:6 273:5,9,18
**singed** 141:12
**single** 13:6 235:4 252:20 276:2
**sinks** 229:3
**siren** 190:25
**sis** 23:17
**sit** 124:14,16 160:19 184:4
**sitting** 6:8 46:8 62:14 82:9 98:11 110:17 148:24 150:1 154:13 160:22 172:10,24 180:9 182:15 185:22 188:11 195:6 227:9 245:24
**situation** 239:18 260:6
**six** 14:14 15:17 24:7,12 90:15 95:19 120:5,6 122:20 125:1 274:24 278:22

**skip** 31:8
**sleep** 136:22 247:10 257:17 262:20
**slow** 7:20
**slowed** 78:24
**smart** 259:18
**smell** 169:3
**smells** 169:1
**smoke** 82:2,7,10 82:12,21,25 87:7 87:12 97:6,10 98:5,13,16 99:10 99:13 100:13,14 101:2,13 102:18 102:21 103:3,6,9 103:17 104:10,17 104:25 105:5,12 105:24 106:14,20 107:7 108:3 109:20 110:1,2,6,6 110:22 111:3,12 111:16 112:10 115:17,22,25 116:6,17 117:8,11 117:14,16,19,25 118:2,7,13,18,22 119:3,14 120:19 121:9,12,19 124:15,17 125:13 125:25 160:2 163:24 166:16 169:6,23 170:8,24 176:23,25 177:2 184:4 187:12,13 187:18,21,25,25 189:10,12,17,23 191:7 207:6,8 216:16 218:11 227:10 258:8 266:14 268:1

Case 6:23-cv-03015-RSWH Document 15 Filed 01/13/23 Page 307 of 786

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

269:22

**smoked** 85:22 86:8 87:8,9 98:1,4 169:1,2 187:17

**smokes** 245:8

**soaked** 157:21

**social** 251:15,16 272:18,21,25 275:13

**soda** 190:10

**sold** 29:2,3 30:21 31:4 32:5

**solely** 7:11

**somebody** 22:6 23:23,23 32:5 46:6,10 47:4 54:20 58:21 106:3 106:4 110:18 120:13,23 198:2 227:19 229:14 241:9 242:2 252:17 269:2 274:8 279:16

**someone's** 44:2 222:24

**somewhat** 6:9

**son** 9:23 14:21 15:1 16:13 30:2 32:5 191:24 195:12,19 197:18 199:2,9 200:21 205:11,16 208:1,6 211:14

**son's** 9:18

**sonic** 252:23

**sons** 88:24

**soon** 53:23 55:11 77:9 133:15 137:3 138:20 194:10 203:3

**sooner** 230:2

**sorry** 16:17 32:10 43:5 48:3,6,11 49:5 61:2,25 91:1 91:1,24 99:11 173:15 175:10,12 203:12 208:22 223:18 243:9 247:22 250:3 274:22 281:3

**sort** 16:10 18:5 23:21 35:9,19 36:4,8 37:11 49:22 58:11 63:5 81:16 209:19,25 210:9 214:18

**sought** 26:2

**sound** 118:11 280:13

**sounds** 171:7 247:17 269:24

**source** 221:21

**south** 64:17

**speak** 198:9 253:21,24

**specialist** 168:15

**specialty** 18:12,13

**specific** 43:24 45:22 46:9,9 89:24 136:12 137:3 148:25 161:8 173:12 178:25 179:13,19 180:16 186:3 188:12,21 203:22 222:11 223:11 246:3 248:21 255:12 256:12

**specifically** 43:19 46:13 70:2 135:18 137:7,12 141:17

194:23 198:3 206:9 238:25 239:15 253:9 254:3

**specificity** 180:11

**speculating** 92:9 138:11,13

**spell** 8:17

**spend** 125:22 185:12 186:19 226:23

**spending** 267:22

**spent** 278:11

**spin** 211:3

**spoke** 90:16 137:9 198:8 253:23 254:3

**spoken** 16:21

**spread** 191:4 251:22

**springfield** 26:6 77:3

**squish** 157:15,15

**st** 2:4,8 17:22,23

**staff** 234:6

**stamp** 186:10

**stance** 269:8

**stand** 46:17,20 269:3

**standard** 20:18

**standards** 240:7 240:16 269:19

**standing** 110:10

**start** 6:21 8:9 19:17 71:13 84:6 119:25 126:19 145:23 202:5 248:8

**started** 18:16 39:1 64:10 68:12,18,19 69:25 71:3,11

104:2 112:16 113:13 122:18,20 138:21 145:18 155:22 163:9 189:7,10,21 190:21,22 240:24 246:19 248:4 252:21

**starts** 123:11 124:3,4,4 126:20 139:6

**state** 1:1,16 4:7 5:11 25:14 33:12 34:8 142:21,22 267:17 276:1 283:3

**stated** 58:8,19 202:23 270:12

**statement** 169:8 239:8 240:3 284:9 284:24

**statements** 184:23 192:25 264:5

**states** 58:19 63:2 216:12 219:13 265:10 266:12 267:21 269:14 270:20 271:10 272:1 274:9,23

**stating** 125:6

**stay** 115:23 120:11 148:4 198:20 236:22 262:7

**stayed** 143:7 210:3 224:25 229:24

**staying** 192:17 200:16

**steering** 211:2

**stenger** 2:2

**stepped** 152:12

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 308 of 786

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

steps 97:23
stick 98:24 259:14
stock 30:17,19
    31:1,3
stood 108:13
stop 102:10 117:5
stopped 38:25
    152:16
stops 182:15,24
    183:1,3 189:15
    190:4,8,15 216:17
    217:18,20,21
    218:6
store 22:5 93:15
    107:7 182:16
    258:18
storm 251:20
stove 190:5,6
straight 153:24
strange 55:14,17
street 2:7 29:17,17
stressful 158:11
    264:4
strictly 48:24
strike 115:5
string 208:22
stripes 258:6
strong 81:2
strung 244:7,12
    247:1,3 248:5,9
    249:3,7
stuck 186:8,11
study 87:5 166:12
stuff 74:20 96:6
    121:14 194:22
    217:11 222:21
stupid 98:21
    153:14
submission 265:16
subpoena 69:17
    72:24 148:20

281:20
substance 54:19
    185:23,24 190:11
sudden 125:2
suggested 94:15
suing 280:10
suit 23:22,23
    28:15 30:11
suite 2:3,7
summer 170:4
summersville 1:9
    4:14,25 13:20,22
    13:25 14:3,16
    15:19 16:8 19:14
    22:13,14,20 24:14
    35:21 36:2,9 37:7
    37:25 38:18 39:23
    40:23 41:10 42:9
    45:23 52:25 56:3
    77:10 90:1 107:3
    111:25 112:1
    115:9,12 151:25
    189:3 197:18,22
    198:2 222:2
    224:13 265:10,11
    266:12 267:21
    271:12 273:9
    274:10 276:9,19
    277:12,20
sunday 176:8
    190:23 280:7,7
supervise 229:16
    229:16,19 230:4,9
supervision 222:2
    234:7 283:8
supervisor 107:16
    108:1,2,8,20,21
    109:1,7,10 110:13
    111:2,6
supervisors
    253:12

supervisory
    232:10,18
supply 42:18
    224:21
support 136:12,14
    200:20,22,23
supposed 26:18
    47:13,16 86:13
    97:8 99:12 121:14
    121:15 124:22
    126:16 147:4,13
    160:10 161:10
    165:5 178:14
    180:19 185:15
    192:11,12 218:25
    222:5 224:17,21
    228:11,15 240:19
    241:2
suppression 219:4
sure 24:21 32:6
    38:21 49:1 62:11
    63:4 72:11 82:22
    82:24 89:21 96:12
    108:12 144:14
    171:16 187:12
    195:1 197:7
    203:21 204:14
    205:12 222:7
    239:19 257:18
surely 106:13
surface 85:10
surprise 88:18
    90:3 100:14
    165:16
surprised 87:25
    260:10
surprises 41:8
surveillance 258:7
survive 269:21
survived 236:25

susan 1:7,14 4:4
    4:17 5:13 8:11,12
    8:20,23,23,25
    52:12 54:12 58:15
    61:13 151:22
    168:18 169:12
    172:3 257:14
    265:9 267:19
    269:13 270:19
    271:9 272:1
    273:15 274:9,23
    278:7 279:2,17
    281:18 284:11
susanaustin4853
    276:18
suspension 260:11
swear 4:16 6:14
    128:4
swearing 62:7
sworn 4:19 6:7
    250:9 283:5
sympathy 48:22
    48:23

---

t

t 3:24 8:18 41:15
    72:13 278:2 283:1
    283:1
tactic 136:7
take 7:1 15:1
    19:22 21:14 28:3
    30:2 31:19 33:22
    49:3 52:13,18
    62:2 66:7,19 72:5
    77:7 94:21 95:4
    95:24 99:14,21
    115:20 117:11,16
    118:2 119:5,8
    120:9 139:2 140:3
    141:15 147:13
    152:9 158:15,24
    159:4 162:6

Case 6:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 309 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

208:24 211:3 216:2 221:6 223:5 226:1 227:11 233:19 236:4 239:13 244:25 245:1,19,20,25 246:11,12,13 249:20,24 256:19 257:9,16 279:11 279:15 282:8

**taken** 1:14 47:10 66:9,16,20 67:10 83:21 98:23 113:17 163:22 166:1 167:18 205:5 218:2 247:15 250:1 261:17 264:17,23 281:13 283:7,12

**takes** 66:25

**talk** 6:23 26:24 45:1,20 65:21 67:20 76:1 78:4 78:10 92:12 106:3 119:23 138:14 139:7 150:13,14 150:18 184:5 192:14 193:25 201:11 203:9,17 204:20,20 206:5 208:12,13 232:8 248:12 253:2,13 256:25 276:4

**talked** 21:19 54:5 61:6 67:15,16,18 71:15 74:17 78:19 78:25 79:16 84:1 92:10,11 93:8,11 100:24 106:7 130:2 133:20 144:14 151:16

156:20 183:24 187:1 195:8,14,23 196:1,13 199:23 200:3,24 201:16 201:22 202:10 203:11 205:9 206:4,6,7 207:23 211:5,6,16 219:8 223:3 227:19 254:5,13 264:2

**talker** 7:19

**talking** 7:5 10:24 24:22 41:14 47:9 50:24 78:6 79:5 93:5 104:5 113:13 114:1,3 129:7 134:14 150:17 181:14 195:13,17 195:25 196:14 218:23 219:23 220:10 256:11 269:23

**talks** 221:25

**tampered** 118:13

**tank** 30:17 31:1,3

**tanks** 30:19

**taped** 27:11 279:3

**tarnish** 43:11

**tasks** 96:24 243:13

**tattoo** 132:15

**tattoos** 130:21 131:16 132:24

**tax** 33:14,18,23 35:2,4,6

**taxed** 284:15,16

**taxes** 33:10,12,17 34:1,6,8,14,18,22

**tearful** 92:11

**technology** 10:18 83:25

**tell** 6:14 17:16 21:24 27:25 42:7 43:3,8 47:22 48:5 62:23 65:16,22 71:24 73:25 76:21 80:4,19 81:3,5 86:12 87:6 91:14 93:20 101:12 103:25 106:6,21 106:21 111:1 112:22 124:12 128:9,18 129:6 130:5,10,10 131:13 133:12,16 143:23 144:6 145:8 153:1,8 154:23 162:13 178:9,25 179:19 180:17 182:3 184:15 189:16 193:23 194:1,6,21 196:11,15 198:4 198:25 199:3,20 201:1,8 203:8 204:1 206:1,9 207:6,9 208:3 211:13 212:9,12 212:20,23 213:14 213:17,20 222:16 225:9 232:4 234:24 238:5,21 238:25 239:7 241:18 244:18 245:2,5,7 246:10 247:14 248:15,16 248:18,21 250:9 250:22 251:17 252:14 253:9 262:2 272:9,11,15 273:23 275:10,11

**telling** 43:16 104:24 105:4,14 117:15 135:5 182:7 196:18 198:5,12 239:5 245:10 259:11 260:13,24 264:11 273:3

**tells** 104:9 189:12

**tenancy** 21:21 22:20 30:16 33:25 120:3,20

**tenant** 24:5,25 28:16 30:12 39:16 39:19 44:18,19,20 45:2 46:6 48:3 65:17 75:6 88:18 134:17,18 137:25 168:18 169:1,24 170:17 176:22 181:3 185:2 186:22 187:10 193:15 238:14 250:16

**tenant's** 123:3 165:4 187:21

**tenants** 37:25 40:24 44:6 89:7,9 89:22 134:13,15 135:4,17,19 137:8 147:15 186:20 187:14 193:15,17 193:20,23 194:1,7 204:21 211:5,6,11 221:24 233:21 236:10 249:1,5 260:9 268:5

**terrible** 198:19,19 203:13,13

**test** 66:12 77:4 103:3 118:8,10

Case 4:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 310 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

255:8 270:14
**tested** 164:1 166:16
**testified** 4:19 88:19 155:18
**testify** 90:4,21 100:11 123:5 160:1 164:8 283:5
**testimony** 58:12 92:25 103:4,8 104:10 105:1,19 106:24 109:10 117:25 123:23 139:11,20 141:3 156:6,22 161:24 164:3 170:12,23 183:25 265:2 280:16 283:9
**texas** 1:1 4:7 16:15 42:1,2,23 189:1
**text** 55:7 57:5,8,10 57:12 60:22,25 61:3,4,7 78:13,17 79:10 211:19 256:17 257:2,3,9 257:10,20,21,24 259:4,9 260:7,17 264:24
**texted** 257:5,7
**texting** 202:5
**thank** 4:15 162:9
**thanks** 225:22
**thanksgiving** 188:5
**thief** 238:23
**thing** 6:17 7:21 19:25 28:11 31:2 32:4 36:24 43:6 67:19 73:16 80:9 104:15 128:15 132:17 133:6

148:12 173:12 189:17 196:20 201:12 203:14 205:22 209:24 214:12 222:20 230:7 238:3 256:6 259:13 269:2
**things** 6:25 23:17 25:10 30:19 36:11 37:19,20 39:2 45:18 71:1,11 74:5 76:3 81:21 107:21 112:13 124:25 126:16 129:1 134:12,21 145:19 148:1 154:1 166:10 171:15 180:21,25 188:16 198:11 199:19 205:25 212:14 213:5,22 213:22 222:8 225:5 229:4,8 238:21,24 247:8 248:22 253:4 255:18 258:8 266:7 274:16 275:12 277:16 278:14
**think** 9:8 10:22 15:16 23:7 34:8 39:21 49:5,7,21 51:1,14 52:11 55:2,4,5,7 57:16 58:12 59:12 61:21 69:8 77:11,24 78:19 79:4 80:20 80:23 83:1 84:6,7 84:19,23 87:19 96:11 97:11,12 100:25 105:11

108:17 112:13,13 118:23 119:1,9 120:2,9,14 121:15 122:9,11,12 124:6 127:21 132:4 133:15 134:7 135:10,10 139:5 139:13 140:9 142:6,10 146:9,13 148:25 149:25 150:4,10,16,19 153:18,23,23 154:8,9,19 155:6 156:9,20 157:16 159:8 161:24 163:8 166:22 175:23 179:13 181:6 193:17,20 194:13 195:21 199:8 202:13 203:7 204:11 205:2,9 209:3,6 211:4 213:8 214:24 215:10 218:20 219:1 224:20,21 225:1 227:13,13 228:7 228:25 230:4 231:7 232:22 235:20,21 236:5 237:5 239:9,15 240:14,18 242:6 246:2 247:1 248:22 251:10,24 252:22 254:5,11 257:4 258:10 261:17 262:10,11 267:16 272:12,16 272:19 273:4 275:2,17,18 278:25 279:8,10

279:15
**thinking** 51:16 129:21 156:11 248:8 263:10
**third** 217:7,8
**thirty** 23:4,5
**thorough** 123:14 123:24 124:7
**thoroughly** 156:23
**thought** 44:6 55:13,16 61:19 85:8 99:22 111:11 117:14 130:8,18 152:2 155:7,10,13 185:13 214:15 248:5 249:3,7 259:20 273:24
**thoughts** 57:20 58:9
**three** 19:19 21:19 47:14 121:24 122:12 200:8 217:1,4 225:9 229:22 235:1,2 274:25 279:3
**threw** 51:10
**throw** 231:9
**tickets** 151:24 152:7,11,13
**time** 5:20 6:20 7:19 15:5,12 16:10,12 18:25 19:15 20:5 21:2 25:6 26:10,11 28:11,12 29:22 38:14,16,21 39:3 39:22 40:2,5,7,11 40:19 43:14,14,21 43:23 46:9,20 47:20 52:18 55:23 56:5 63:7 68:14

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 311 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

70:17 71:2 77:3 80:20 81:4,17 85:15,17 86:3,7 87:22 88:16 89:16 89:19 93:4 95:18 98:6 99:18 100:5 103:13 104:4,5 107:20 110:4,22 111:3,21,24 112:2 115:2,3 120:21 121:1,17 122:17 122:19,24 123:8 123:12,20 124:25 125:12,23 126:10 126:15,21 127:6 128:22 133:20 134:17 136:8,21 137:3 139:17,19 140:17 141:19 142:8 143:14,25 144:24 145:13 149:2 151:10,16 152:9,22 154:8 155:2 156:2 158:25 160:15 161:1 163:9 169:2 173:1 174:18 177:11 179:5 181:20,22 183:17 183:22 184:1,8,10 184:14,20 185:10 185:17 186:20 189:10 191:6 192:6 193:6 196:13,14 197:17 197:21 198:1,21 199:12 201:16,25 202:14 203:16,21 203:25 205:13 206:1,21 207:3,22 208:9 209:12,13

209:15 210:11 211:18,21,25 217:5 218:13 222:11 226:2,4 228:6,7 233:25 234:11 235:8 237:2 241:23 242:2 245:4,6,11 245:19 246:1,5,20 247:2 257:6 258:12,21 259:6 260:23 261:7 263:22 264:18 267:22 269:16 270:11 275:21,23 276:25 281:10 283:4

**times** 7:8 41:1 43:10,18 80:18 91:6 110:9 118:7 120:3 126:1 137:19 157:18,19 159:21 161:4 182:9,12,14 199:15,21 208:4,5 208:15,16 225:9 230:15,25 244:9 247:9 254:5 256:20 258:1

**tin** 208:22

**tired** 208:23

**title** 110:12

**tittner** 252:18,19

**today** 4:3 5:3,4,7 5:14,19 6:12,15 46:8 60:5 62:15 82:9 98:11 148:24 150:1,4 154:13 158:16 160:22 172:10,24 179:24 180:9 188:11

195:6 214:16 216:25 218:16 233:24 234:16 243:16,21 244:9 245:24 250:9 281:19

**toilet** 36:17 49:18 65:20 73:22 124:19,23 125:1 146:4,18 147:8 148:15 188:25 206:23 213:5 226:5,8 229:5 255:21 256:2,3 264:19 265:2 269:17 271:16 280:10

**toilets** 229:3

**told** 41:2,25 42:1 47:25 48:7 51:9 65:11 66:3,15,19 67:24 71:19 86:12 94:5 99:16,16 102:14 103:1,2,8 103:17,21 110:9 116:24 118:1 119:5,19 133:8 140:12 141:9 143:15,16,21 144:1,13,15,20 147:1 150:25 153:14,16 154:4 155:23 158:15,21 159:5 181:22,25 183:20,22 184:1 186:17,18 190:2 193:22 198:15 203:21,24 204:6 204:19 206:10,11 206:12,19,24 207:1,1,13,19,20

212:11,24,25 213:2 214:4 215:2 215:3 216:3 217:1 217:3,15 221:3 225:4 229:9 232:5 235:12,24 237:1 237:21 238:2,4,9 239:1 243:23 246:8 247:19 251:20 255:5,6,22 262:5 272:7

**tomorrow** 105:9

**top** 150:19 162:11 162:13 180:14 229:25

**topic** 114:14

**tore** 229:23

**total** 86:17 141:6 181:24 284:15,17

**totally** 37:21 45:17 47:12 142:10 146:2 147:2 149:19 190:20 235:3

**touch** 69:12 103:9 103:17,22 104:10 104:25 116:24

**touching** 283:6

**town** 12:25 17:4 21:3,10 32:14 42:25 151:25 238:8,17

**track** 109:6

**tracy** 39:15 89:12 137:15,20,25

**trade** 18:18,19

**train** 222:1

**training** 104:13 228:12

**tran** 282:8

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 312 of 786

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

EXHIBIT A - STATE COURT FILE

AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**transcript** 50:15 284:13,18
**transferred** 58:5
**traumatic** 55:15
**treated** 149:3 234:21,24 281:5
**trial** 41:8 266:19 281:4
**tried** 28:2,3 74:18 99:3,4,7,9 104:6 106:11 145:2 148:5 189:16 192:7 212:13 213:19
**trip** 87:22
**trips** 77:1
**trouble** 10:9 40:7 64:9 125:2 179:9 274:13
**truck** 91:16,17
**true** 45:19 62:9,16 65:24 216:1,8,19 216:21 217:14 218:17 219:11 220:20,24 232:14 232:22 233:13,23 234:9 243:15,20 245:3 266:25 268:14 270:25 271:23 274:19 275:12,13 283:8
**trust** 239:3 266:7
**truth** 6:12,14 51:7 54:2 212:10,11,12 213:1,3,11 250:9 262:6 283:5
**try** 5:15 7:2,4,8,10 7:22 41:3 48:4 50:17,21 84:6 98:21 113:9 149:17 268:21

**trying** 21:2 31:6 41:9 43:8 46:25 53:17 55:22 58:11 84:2 88:8 99:19 150:25 151:1 171:14 188:5 202:6,8 217:7 220:18 228:23 236:5 237:10 238:13 247:12,17
**tuesday** 265:8 266:9 267:20
**turn** 39:11 70:11 171:16
**turning** 162:23
**tv** 39:10 84:15
**twenty** 219:4
**twice** 8:14 9:5 36:15 149:2 223:18 251:1
**two** 12:10 26:13 30:6 38:10 41:13 46:20 52:17 61:8 80:24,25 81:23 82:6,22 83:3,16 84:14 88:12,23 91:15,17,21,25 92:23 93:1 97:1 98:13 100:20 107:21 125:5 149:1 157:18 158:15 179:11 194:3,9 198:15 205:6,7 208:4,5,16 208:22 218:11 222:8 229:22,22 235:2,5 236:16
**tyler** 12:17,18
**type** 23:15 53:13 53:19 54:17,18

55:25 107:17 163:14 200:20 208:17 221:4 234:11 268:17
**typed** 53:12,14 175:24

**u**

**u** 72:13
**uh** 6:24,24 9:6,10 21:23 22:11 42:11 53:5 68:25 69:2,4 77:20,23 78:3 79:8,19,23 84:5 88:25 94:12,15 101:6 104:19,21 106:10 108:25 109:9,15 125:8 140:19 145:6 152:25 153:9 163:23,23 165:21 167:4,7 172:5 174:4 186:19 191:18 226:7,9 276:15
**undated** 177:13,14 177:17,24
**underneath** 85:11
**understand** 5:3,6 5:10 6:11 8:1 40:10 49:2 54:19 113:23 155:3 250:8 267:22
**understanding** 47:23 63:15 66:24 71:6 73:25 74:7 87:6 95:20 96:2 96:22,24 97:2,15 114:20,24 117:3,7 117:13 118:20 138:19 175:10 184:15 190:7

224:15 228:14 229:7 242:17 250:23 279:20
**understood** 8:6 200:7
**unemployment** 264:1
**unforeseen** 268:24
**unfortunately** 114:4
**unit** 47:4,4,17 75:8 75:16 83:2,15,17 85:22 86:9,16 95:22 97:24 102:20,21 104:17 106:19 119:25,25 122:18 123:6,9 124:4,9,12 139:9 140:21 157:25 158:8 160:7 161:8 161:18 163:6 164:9,20 166:17 167:8 169:1,2,3,13 182:12 189:7 192:10 219:5 224:5 225:3,14,20 227:9
**units** 114:10 118:12
**unknown** 240:10
**unlawful** 25:18,20
**unorganized** 235:8
**unpaid** 33:10,17 34:6,14,16,22
**unprecedented** 64:14
**unsafe** 81:25 83:2 83:4
**untrue** 213:12,13

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

unusable 269:17
unworking 102:21
updated 174:17
upper 119:10
upset 134:18
  177:8
usda 63:11,25
  64:13,16 65:8,19
  66:2,15,25 67:3
  68:3 69:3 70:3,18
  71:4,6,24 138:17
  142:21 237:16
  241:4 274:15
  276:1
use 6:25 48:17
  94:14 96:19
  237:18 264:19
usually 209:2

**v**

vacated 32:4
  89:15
vague 246:22
  251:4
vagueness 56:25
vain 262:15
vandalism 240:19
  240:22,23
vandalized 185:9
  185:18 240:23
varied 23:12,14
variety 17:13
various 21:22
vary 23:10
version 67:4
  212:12 214:22
versus 4:5
video 4:4
videoconference
  1:6,14 2:5,9,10
videographer 2:10
  4:2,15 83:22

113:15,18 249:25
  250:2 281:12,14
  282:5
videotaped 1:6,13
vine 237:16
violated 63:13,14
  63:22 269:18
violating 274:14
violence 14:18
visit 144:24 196:4
  196:12,15 197:6
  197:14 198:20
visited 197:8
visiting 197:15
visual 191:10
voice 253:21
  273:10 276:9,13
  279:22 280:1
voices 273:8
volume 1:11,13
volunteer 191:21
vs 1:6 284:6
vulnerable 49:4

**w**

wait 7:2,4 50:22
  61:1,14 84:3
  173:14
walk 94:10 124:18
  125:9 157:12,25
  161:17 191:19
  246:18 262:3
walked 93:22,24
  94:9 147:17,18
  157:15 158:1
  242:22 246:17
walking 144:3
  245:9
wall 66:7 99:20
  100:1 218:21
want 22:8 24:21
  40:25 41:8 49:1

54:2 56:17 90:10
  90:12 106:15,16
  114:13 119:23,25
  130:18 131:9
  139:2 147:21
  150:8 179:18
  194:5 196:24
  203:8,9,17 208:12
  208:25 211:2
  212:3 215:16
  216:11 222:10
  223:19 239:13
  253:2 256:25
  258:4,20 261:6
  263:18 279:8
  281:17 282:10
wanted 21:16
  22:18 28:11 30:20
  42:21 54:2,6
  58:20 126:7
  129:15 149:22
  170:7 181:20
  184:8,9,14,18,19
  188:24 196:20
  200:17 201:11
  203:11,25 222:9
  245:7 256:2,8,11
  261:9 263:1
wanting 256:22
wants 268:23
warning 152:16
  152:17,19,19
  189:14
warrant 46:24
warranted 217:13
washed 80:15
washing 185:9
waste 126:15
  275:21,23
wasted 43:13

wasting 258:5
  266:15
watch 107:15,22
  111:19 121:13
  238:22
watched 55:12
  84:10
watcher 79:1
watching 103:23
  258:19
water 44:1,10
  157:15,20,21
  223:24 225:24,25
  226:15,21 227:3
  228:19 231:8
way 16:18,20
  21:10 42:23 46:1
  51:15 52:15 63:1
  68:14 80:22 97:19
  105:2 125:20,24
  130:8 135:24
  140:20 156:17
  160:1 163:7
  164:15 195:5
  209:16,22 229:17
  241:12 250:25
  256:3 263:2,18
  276:6 279:3,11
ways 255:1
we've 21:19
  100:23 156:20
  181:14 213:21
  216:24 232:14
  233:2,14,23 234:9
  234:15 243:16,21
wear 130:16
weather 79:25
  251:21
website 224:20
week 37:18 105:9
  118:10 179:12

Case 6:23-cv-03015-BCW Document 15-1 Filed 01/12/23 Page 314 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

264:25 277:24
**weekends** 77:7
**weeks** 19:19 22:6
26:13 70:20 71:16
72:8 73:7 120:24
139:23,24 146:13
209:15
**went** 18:14,17
25:8 26:2 36:16
54:9 77:3 80:20
81:1,17 82:5
85:18 88:13 91:18
95:2,8 113:25
125:3 127:18,19
134:13 136:17
145:1 157:15
188:1 191:1,14
192:9 197:8 225:5
229:23 251:20
271:15 275:23
280:10
**west** 14:5,20 15:23
**wet** 226:21 227:10
**whereof** 284:20
**whichever** 220:7
**whore** 280:8
**wife** 191:22
**wife's** 12:2
**willing** 127:10
**window** 39:8 66:6
**windows** 86:20
190:23
**wine** 258:13
**wish** 124:19
148:17 171:14
**witness** 4:16,18
23:24 50:2,20,23
56:12,14 61:15,19
61:22,25 250:11
271:10 281:2,18
283:4,6 284:20

**witness's** 283:5
**woman** 40:21
46:18,19 64:23,24
89:13,20 235:4
**woman's** 44:14
**wonder** 162:2
175:24
**wondered** 72:9
**word** 67:1
**words** 7:23 48:17
48:19 56:1,4
131:6 167:23,24
168:8 172:12
237:9
**work** 20:13,14
21:1,5 22:8 29:3
36:11,13,22,24
77:5 102:8,23
105:10 107:17
109:4 134:2
136:17 166:24
196:9 210:15
221:1,4 223:10
224:10 225:5,10
227:25 228:2
229:5 240:20
256:2 270:8,9
276:22
**worked** 20:5 21:25
22:5,9 23:2
136:21 207:7
244:15 252:22
267:2
**working** 19:16
20:25 23:6,7,10
25:15,16 38:1
82:15,23,24 98:10
99:16 102:18
103:24 104:17
105:25 106:20
108:4,6 110:2,7,23

111:4 118:22,25
119:3,3 121:12,18
121:19 122:20
124:6 128:24
164:1 166:17
170:11,14,15,15
170:24,25 171:3,5
189:14 216:16
218:12 248:5
266:14 268:1
269:22 271:15
**works** 107:7
**workshop** 21:4
**world** 204:16,17
**worried** 275:7
**worry** 99:15,23
149:23
**worth** 186:21
216:2
**write** 53:6 59:9
168:25 179:20
260:1 272:18
273:1,20,23
**writes** 170:22
216:5
**writeup** 24:8
**writeups** 137:17
**writing** 53:9 56:9
57:23 152:18
177:19 227:18
253:11,14,15
268:6 272:5,6
**writings** 167:18
**written** 54:25 75:4
117:22 126:3
142:7 148:18
152:19 163:25
168:9 169:18
170:20 178:17
183:8 254:22
275:17

**wrong** 25:12
127:11 147:2
151:20 177:5
194:5 231:11
275:10
**wrongful** 271:11
**wrote** 52:25 53:4
53:17 54:11,15
55:21,24,25 56:1,4
57:4,20 59:9,11
63:25 64:8 134:19
134:22 137:18
152:6 164:9,10
169:21,22 170:16
171:4 176:21
262:13,17

**x**

**xs** 163:21

**y**

**yard** 44:2 55:13
192:2,4 231:10
**yeah** 17:15 31:7
36:17 50:20 56:12
61:3,22 67:2
69:19,24 72:9,25
80:8,8 83:10
89:18 92:20
102:11 108:21
123:10 129:20
130:15 136:18
143:2,2 152:23
153:3 154:17
158:2 164:16
175:9 195:20
202:23 223:7,13
231:17 246:2
257:18 269:24
**year** 12:15 13:15
17:24 27:7,15
38:9 71:23 78:18

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 315 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

79:3 80:3,17
88:22 90:6 91:3,8
92:16 95:18 97:5
122:21 124:5
179:4 188:4 200:8
212:14 215:4,5
**years** 10:13,24
14:14 22:2 23:4,5
24:7,12 29:1,15,15
34:23 35:11 38:10
76:23 90:15 92:20
92:21 95:19 96:3
98:6 100:10 102:7
102:8 103:13
104:2 105:16,24
106:20 110:23
120:5,6 122:12,15
125:1 145:17
154:6 164:16
170:6 173:24
198:10 226:3
244:15 267:5
274:24,25
**yellow** 231:5
**yep** 149:10
**yesterday** 168:1
**young** 29:10 96:5
96:7 255:9
**youngest** 14:21

**z**

**z** 8:18,18 41:15
**zachary** 11:18,19
11:21
**zaritz** 8:16,20,23
9:9,19,24 17:11
**zebulon** 9:19
**zoom** 213:20
**zuniga** 1:15,24
283:3

Case 4:23-cv-03015-BCW Document 15 Filed 06/43/23 Page 316 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Missouri Supreme Court Rules of Civil Procedure

Rule 57 - Interrogatories and Depositions

Section 57.03

(f) Submission to Witness; Changes; Signing.

When the testimony is fully transcribed, the Officer shall make the deposition available to the witness for examination, reading and signing, unless such examination, reading and signing are waived by the witness or by the parties. Any changes in form or substance which the witness desires to make shall be entered upon an errata sheet provided to the witness with a statement of the reasons given for making such changes. The answers or responses as originally given, together with the changes made and reasons given therefor, shall be considered as a part of the deposition. The deposition shall then be signed by the witness before a notary public unless the witness is ill, cannot be found, is dead or refuses to sign. If the deposition is not signed by the time of trial, it may be used as if signed, unless, on a motion to suppress, the court holds that the reasons given for the refusal to sign requires rejection of the deposition in whole or in part.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

DISCLAIMER:  THE FOREGOING CIVIL PROCEDURE RULES

ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY.

THE ABOVE RULES ARE CURRENT AS OF APRIL 1,

2019.  PLEASE REFER TO THE APPLICABLE STATE RULES

OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

6/27/22, 4:41 PM                    Case.net: 07RI-CV00194 - Party Information

## Your Missouri Courts



Search for Cases by   Select Search Method...  ⌄

Judicial Links  |  eFiling  |  Help  |  Contact Us  |  Print          GrantedPublicAccess  Logoff MFPUDLOWSKI

**07RI-CV00194 - DOYLE AND BARBARA FLETCHER V SUSAN AUSTIN**

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

Click here to QuickFile on behalf of the Selected Party.

○  **FLETCHER , DOYLE , Petitioner**         represented by       **MANESS , RANDOLPH , Attorney for Plaintiff**

                                                                  THE MANESS BLDG
                                                                  118 WASHINGTON ST
   910 ELM ST                                                     DONIPHAN, MO 63935-1761
   DONIPHAN, MO 63935                                             **Business: (573) 996-3814**


○  **FLETCHER , BARBARA ,**              represented by       **MANESS , RANDOLPH , Attorney for Plaintiff**
   **Petitioner**
                                                                  THE MANESS BLDG
                                                                  118 WASHINGTON ST
   910 ELM ST.                                                    DONIPHAN, MO 63935-1761
   DONIPHAN, MO 63935                                             **Business: (573) 996-3814**


○  **AUSTIN , SUSAN CAROL ,**
   **Defendant**
   HC 5 BOX 105
   DONIPHAN, MO 63935

   **Year of Birth:** 1958

---

Case.net Version 5.14.52                    Return to Top of Page                    Released 06/08/2022

EXHIBIT

9

6/29/22  B2

EXHIBIT

A

Case 6:23-cv-03015-BCW   Document 12   Filed 01/12/23   Page 320 of 786

EXHIBIT A - STATE COURT FILE
DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

# Your Missouri Courts

.net

Search for Cases by: Select Search Method... ⌄

| Judicial Links | eFiling | Help | Contact Us | Print |

GrantedPublicAccess  Logoff MFPUDLOWSKI

## 07RI-CV00194 - DOYLE AND BARBARA FLETCHER V SUSAN AUSTIN

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

**Click here to eFile on Case**
**Click here to Respond to Selected Documents**

Sort Date Entries: ● Descending  ○ Ascending

Display Options: All Entries ⌄

---

**04/26/2007** ☐ **Tried by Court-Civil**

Plaintiff in person and by Chris Miller. Defendant appears not. Trial conducted, evidence presented. At conclusion of the evidence, the court finds: Defendant in default; case submitted on verified petition by plaintiff and the court finds; That on the petition of plaintiff the plaintiff should have judgment in the amount of $425.00. Costs taxed to defendant. Plaintiffs entitled to possession of premises as well. So Ordered. TDS

    **Associated Entries: 04/09/2007 - Hearing Scheduled**
    **Scheduled For:** 04/26/2007; 9:01 AM ; THOMAS D SWINDLE; Ripley

**04/11/2007** ☐ **Family Member/Roommate Served**

Document ID - 07-SOUD-22; Served To - AUSTIN, SUSAN CAROL; Server - ; Served Date - 11-APR-07; Served Time - 00:00:00; Service Type - Sheriff Department; Reason Description - Served

**04/09/2007** ☐ **Summons Issued-Landlord/Tenant**

Document ID: 07-SOUD-22, for AUSTIN, SUSAN CAROL;

☐ **Hearing Scheduled**

    **Associated Entries:** 04/26/2007 - Tried by Court-Civil 🖆
    **Scheduled For:** 04/26/2007; 9:01 AM ; THOMAS D SWINDLE; Ripley

**04/06/2007** ☐ **Pet Filed in Associate Ct**

    **Filed By:** RANDOLPH MANESS

---

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 321 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT 1 - DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

# 11R1-MC00043

**MISSOURI DEPARTMENT OF REVENUE**
**TAXATION DIVISION**
P O BOX 3800
JEFFERSON CITY, MO 65105-3800

| FORM 5207 | Date MARCH 11, 2011 |
|---|---|
| (Rev 03-10) | Phone: (573) 522-6276 Fax: (573) 522-2404 |

## CERTIFICATE OF TAX LIEN - INDIVIDUAL INCOME TAX

RECORDER OF DEEDS
RIPLEY COUNTY COURTHOUSE
100 CT HO SQ
DONIPHAN MO 63935

| | |
|---|---|
| Case No: | |
| Primary SSN: | XXX-XX-4853 |
| Secondary SSN: | XXX-XX-0000 |
| Lien No: | 10174522004 01 |
| Total Amount Due: | 5,235.39 |

The Director of Revenue, under Section 143.902, RSMo, hereby certifies that the following assessment of tax, interest, additions to tax, penalties, and fees have been made and become final. Interest continues to accrue as provided by law until the full amount of the tax liability is paid.

Name of Debtor(s): AUSTIN,SUSAN

County Location: RIPLEY                181

| FILE PERIOD | DLN | TAX DUE | INTEREST | ADDITIONS TO TAX | PENALTIES | LIEN FEES | BALANCE DUE | EFFECTIVE DATE |
|---|---|---|---|---|---|---|---|---|
| 2004 | 10203413277 | 1,841.00 | 651.76 | 460.25 | 0.00 | 4.50 | 2,957.51 | 11/28/2010 |
| 2007 | 10174522503 | 1,117.00 | 162.54 | 279.25 | 0.00 | 0.00 | 1,558.79 | 11/14/2010 |
| 2008 | 10174522004 | 543.00 | 40.34 | 135.75 | 0.00 | 0.00 | 719.09 | 11/14/2010 |
| TOTAL | | 3,501.00 | 854.64 | 875.25 | 0.00 | 4.50 | 5,235.39 | |

Official Use Only

Under Section 143.902, RSMo, the certificate of lien filed with the Recorder of Deeds shall be a lien against all real and personal property of the debtor(s) listed above and all real and personal property acquired by manner after the filing of this lien. Under Section 143.902, RSMo, the certificate of lien filed with the circuit clerk of the circuit court shall have the full force and effect of a default judgment upon entry in the record of the circuit court and execution shall issue at the request of the Director of Revenue or agent as provided in the case of all other judgments.

**DIRECTOR OF REVENUE OR DELEGATE**
**STATE OF MISSOURI**

BY: _Mike Y Davis_
Administrator



EXHIBIT
B
6/29/22  RZ

EXHIBIT
B

Case 6:23-cv-03015-BCW   Document 17   Filed 01/12/23   Page 322 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

**MISSOURI DEPARTMENT OF REVENUE**
**TAXATION DIVISION**
P O BOX 3800
JEFFERSON CITY, MO 65105-3800

| FORM **5247** (Rev 03-10) | **Date** **FEBRUARY 17, 2012** |
|---|---|

**FULL SATISFACTION - INDIVIDUAL INCOME**

E-mail: Income@dor.mo.gov
Phone: (573) 522-6276
Fax: (573) 522-2404

RIPLEY COUNTY CIRCUIT CLERK
100 COURTHOUSE SQUARE SUITE #3
DONIPHAN MO  63935

| | |
|---|---|
| **Primary SSN:** | XXX-XX-4853 |
| **Secondary SSN:** | XXX-XX-0000 |
| **Lien No:** | 08028391875 01 |
| **Case No:** | 10RIMC00031 |

The Director of Revenue hereby gives notice that the Certificate of Lien filed in this case has been satisfied by payment of the tax, interest, additions to tax/and or penalties as applied to such taxpayer's debt.  All parties should take notice of the satisfaction of the Certificate of Lien.

**Name of Debtor(s):** AUSTIN,SUSAN

**County Location:** RIPLEY          181

**DIRECTOR OF REVENUE OR DELEGATE**
**STATE OF MISSOURI**

BY: _Mike Y Dean_
     **ADMINISTRATOR**

FILED 2012 FEB 21 AM 10: 44
SHARON A. RICHMOND
CIRCUIT CLERK
RIPLEY COUNTY, MO

C_ RIPLEY

**EXHIBIT**

**EXHIBIT C**

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

## AFFIDAVIT OF SUSAN AUSTIN

1.      I, Susan Austin, being of lawful age and having been first duly sworn, state upon my oath as follows:

2.      My name is Susan Austin, and I am 63 years of age, am a resident of Summersville Estates located in Texas County, Missouri, have personal knowledge of the facts and matters set forth herein, and I am competent to testify as to the matters set forth herein.

3.      I have lived at Summersville Estates for nearly six (6) years.

4.      In June 2021, I was presented with paperwork by my property manager, Dawn Sims, which purported to memorialize Ms. Sims' inspection of my apartment ("Inspection Report").

5.      Ms. Sims did not inspect my apartment in June 2021 or at any time in the months prior to June 2021.

6.      I signed the Inspection Report without questioning Ms. Sims.

7.      The Inspection Report states that my apartment's smoke detectors are in working condition.

8.      My apartment's smoke detectors have not been in working condition for months, if not years—despite what the Inspection Report may say.

9.      Ms. Sims' actions or inactions as stated above were a common occurrence and were in no way limited to the incident occurring in June 2021.

10.     I have observed Ms. Sims backdate inspection reports purporting to memorialize an inspection of my apartment—including the above-referenced Inspection Report.



1

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

STATE OF MISSOURI        )
                         )      SS.
COUNTY OF TEXAS          )

I, Susan Austin, declare under penalty of perjury that the above statements are true and accurate according to the best of my knowledge, information, and belief.

_Susan Austin_
SUSAN AUSTIN

Dated this __23rd__ day of __July__ , 2021.

SUBSCRIBED AND SWORN to me before the undersigned Notary Public on this __23rd__ day of __July__ , 2021.

_Virginia I. Wilbanks_
NOTARY PUBLIC

My Commission Expires: Oct. 12, 2024



VIRGINIA I. WILBANKS
Notary Public - Notary Seal
State of Missouri
Commissioned for Shannon County
My Commission Expires: October 12, 2024
Commission Number: 12409303

2

Case 6:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 325 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Electronically Filed - Texas - July 20, 2022 - 02:34 PM



# MACO Management Co., Inc.

## Smoke Alarm Policy

I acknowledge that:

As of this date: **1-15-16** , the smoke alarm(s) in this apartment # **B2** in the

**Summersville Estates** Apartments is/are in place and functional.

It is my responsibility to:

- Ensure that the red light on the smoke alarm is on at all times.
- Clean, dust and test the alarm(s) on a regular basis as needed. (Management recommends that this be done at least once a week. To test it, press the button to sound the alarm.)
- Report to management if the unit(s) is/are not

I understand that:

If the smoke alarm(s) is/are disconnected or tampered with by the resident, their family or guests, the resident may be responsible for damages caused by fire. The property owner, landlord, or their representatives are not responsible for the resident's loss by fire associated with a disabled smoke alarm(s).

I also understand:

My own personal possessions are not covered from loss or damage by fire, theft or other hazard by the landlord's insurance policy.

The landlord recommends that residents consider purchasing renter's insurance to cover their own personal possessions from loss or damage by fire, theft or other hazard.

X ___Susan Austin___
Tenant Signature

___Don Cochran___
Manager Signature

_____
Co-Tenant Signature

___Summersville Estates___
Complex Name

MM 10/2013

**EXHIBIT**
*tabbies*
E
6/29/22   B2

**EXHIBIT**
*tabbies*
E

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

## MACO Management Company, Inc.
### Quarterly Inspection Report

Property **Summersville Estates** Date **9-7-16** Inspected by **Ben Cochran**

Tenant **Susan Austin**    Unit # **B2**    Vacant & Rent Ready? Yes   No

A = ACCEPTABLE    F = FINDING    R = REPAIR    V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | | | R | | replace |
| Door Jam | | | R | | replace |
| Apartment Number | A | | | | |
| Weather Stripping | | | R | | replace |
| Screen / Storm Door | | | | | NA |
| Light Fixture | A | | | | |
| Door Knob and Dead Bolt | A | | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Outlet Covers and Switch Plates | | F | | | Broke outlet |
| Windows and Locks | A | F | R | | two latches in L.R. |
| Mini Blinds | A | | | | |
| Door Stops | A | | | | |
| Ceiling | A | | | | |
| Ceiling Fan | | | | | NA |
| Closet Door and Knobs | A | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | | | | | NA |
| Thermostat | | | | | NA |
| Flooring | | F | | | needs replaced |
| Ceiling | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Light Fixture | A | | | | |
| Refrigerator and Handles | A | | | | |
| Range and Microwave | A | | | | |
| Exhaust Fan, Filter, Light | A | | | | |
| Fire Stops # 2 Date 10/20 | A | | | | |
| Splash Guard | | | | | NA |
| Cabinets | A | | | | |
| Cabinet Drawers | A | | | | |
| Counter Tops | A | | | | |
| Water Heater | A | | | | |
| Plumbing/Faucet | A | | | | |
| Windows and Locks | | | | | NA |
| Mini Blinds | | | | | NA |

EXHIBIT F

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Smoke Alarm | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Furnace/Filter | | | | | NA |
| Return Air Vent/Filter | | | | | NA |
| Thermostat | | | | | NA |

| HALLCLOSET / STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Water Heater | A | | | | |
| Light Fixture | A | | | | |
| Closet Door and Knobs | A | | | | |
| Shelving | A | | | | |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Door and Door Stops | A | | | | |
| Lavatory | A | | | | |
| Vanity Cabinet | A | | | | |
| Medicine Cabinet | A | | | | |
| Tub, Shower, Rod | A | | | | |
| Tub and Sink Faucets | A | | | | |
| Toilet | A | | | | |
| Towel Racks and Toilet Paper Holder | | F | | | need tightened |
| Heater / Fan | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |

| 1st BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Smoke Alarm | A | | | | |
| Light Fixture | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Closet Door and Knobs | | F | | | hole in one closet door |
| Bedroom Door, Knobs, Stops | | F | | | need door stop |
| Windows and Locks | A | | | | |
| Mini Blinds | A | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 2nd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 3rd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?  Yes ☑  No ☐
Insects or Rodents?  Yes ☑  No ☐
Fire extinguisher expiration date ___

ADDITIONAL COMMENTS:
occasional roaches.
will start spraying.

Case 6:23-cv-03015-BCW   Document 11   Filed 01/12/23   Page 329 of 786
EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

## MACO Management Company, Inc.
### Quarterly Inspection Report

Property __Summersville Estates__ Date __10-7-16__ Inspected by __Ben Cochran__

Tenant __Susan Austin__ Unit # __B-2__ Vacant & Rent Ready? Yes (No)

A = ACCEPTABLE    F = FINDING    R = REPAIR    V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | | | R | | replace |
| Door Jam | | | R | | replace |
| Apartment Number | A | | | | |
| Weather Stripping | | | R | | replace |
| Screen / Storm Door | | | | | NA |
| Light Fixture | A | | | | |
| Door Knob and Dead Bolt | A | | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Outlet Covers and Switch Plates | | F | | | Broke outlet |
| Windows and Locks | | F | | | two broke latches |
| Mini Blinds | A | | | | |
| Door Stops | A | | | | |
| Ceiling | A | | | | |
| Ceiling Fan | | | | | NA |
| Closet Door and Knobs | A | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | | | | | NA |
| Thermostat | | | | | NA |
| Flooring | | F | | | worn |
| Ceiling | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Light Fixture | A | | | | |
| Refrigerator and Handles | A | | | | |
| Range and Microwave | A | | | | |
| Exhaust Fan, Filter, Light | A | | | | |
| Fire Stops # 2 Date 10/20 | A | | | | |
| Splash Guard | | | | | NA |
| Cabinets | A | | | | |
| Cabinet Drawers | A | | | | |
| Counter Tops | A | | | | |
| Water Heater | A | | | | |
| Plumbing/Faucet | A | | | | |
| Windows and Locks | A | | | | |
| Mini Blinds | A | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

| HALL | A | | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Smoke Alarm | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Furnace/Filter | A | | | | |
| Return Air Vent/Filter | | | | | NA |
| Thermostat | | | | | NA |
| | | | | | NA |

| HALLCLOSET / STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Water Heater | A | | | | |
| Light Fixture | A | | | | |
| Closet Door and Knobs | A | | | | |
| Shelving | A | | | | |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Door and Door Stops | A | | | | |
| Lavatory | A | | | | |
| Vanity Cabinet | A | | | | |
| Medicine Cabinet | A | | | | |
| Tub, Shower, Rod | A | | | | |
| Tub and Sink Faucets | A | | | | |
| Toilet | A | | | | |
| Towel Racks and Toilet Paper Holder | | F | | | need tightened |
| Heater / Fan | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |

| 1st BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Smoke Alarm | A | | | | |
| Light Fixture | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Closet Door and Knobs | | F | | | hole in one closet door |
| Bedroom Door, Knobs, Stops | | F | | | need door stop |
| Windows and Locks | A | | | | |
| Mini Blinds | A | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF



| 2nd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 3rd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?   Yes ☑   No ☐

Insects or Rodents?   Yes ☐   No ☑

Fire extinguisher expiration date _____

ADDITIONAL COMMENTS: _____

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

## MACO Management Company, Inc.
### Quarterly Inspection Report

Property _Summersville Estates_ Date _4-5-17_ Inspected by _Ben Cochran_

Tenant _Susan Austin_ Unit # _B2_ Vacant & Rent Ready? Yes    No

A = ACCEPTABLE       F = FINDING       R = REPAIR       V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | | | R | | needs replaced |
| Door Jam | | | R | | needs replaced |
| Apartment Number | A | | | | |
| Weather Stripping | | | R | | needs replaced |
| Screen / Storm Door | N/A | | | | |
| Light Fixture | A | | | | |
| Door Knob and Dead Bolt | A | | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | small stains |
| Outlet Covers and Switch Plates | A | | | | |
| Windows and Locks | A | | | | |
| Mini Blinds | | | R | | 1 blind |
| Door Stops | A | | | | |
| Ceiling | A | | | | |
| Ceiling Fan | NA | | | | |
| Closet Door and Knobs | A | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | NA | | | | |
| Thermostat | NA | | | | |
| Flooring | A | | | | Has small cuts and scratches |
| Ceiling | A | | | | |
| Outlet Covers and Switch Plates | | | R | | light switch cracked, need jumbo plate over |
| Light Fixture | A | | | | |
| Refrigerator and Handles | A | | | | |
| Range and Microwave | A | | | | |
| Exhaust Fan, Filter, Light | A | | | | |
| Fire Stops ___ Date 10/20 | A | | | | |
| Splash Guard | NA | | | | |
| Cabinets | A | | | | |
| Cabinet Drawers | A | | | | |
| Counter Tops | A | | | | |
| Water Heater | A | | | | |
| Plumbing/Faucet | A | | | | |
| Windows and Locks | NA | | | | |
| Mini Blinds | NA | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| HALL | A | | R | ✓ | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A A | | | | |
| Smoke Alarm | A A | | | | |
| Outlet Covers and Switch Plates | A A | | | | |
| Furnace/Filter | NA | | | | |
| Return Air Vent/Filter | NA | | | | |
| Thermostat | NA | | | | |

| HALL CLOSET / STORAGE | A | | | ✓ | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Water Heater | A | | | | |
| Light Fixture | A | | | | |
| Closet Door and Knobs | A | | | | |
| Shelving | A | | | | |

| BATHROOMS | A | | R | ✓ | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Door and Door Stops | A | | | | |
| Lavatory | A | | | | |
| Vanity Cabinet | A | | | | |
| Medicine Cabinet | A | | | | |
| Tub, Shower, Rod | A | | | | |
| Tub and Sink Faucets | A | | | | |
| Toilet | A | | | | |
| Towel Racks and Toilet Paper Holder | | | R | | Towel Rack needs tightened |
| Heater / Fan | A | | | | |
| Outlet Covers and Switch Plates | | | R | | GFI is broke on corner |

| 1st BEDROOM | A | | R | ✓ | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A A | | | | |
| Thermostat | A A | | | | |
| Flooring | A | | | | few small stains |
| Ceiling | A | | | | |
| Smoke Alarm | A | | | | |
| Light Fixture | A | | | | |
| Outlet Covers and Switch Plates | A A | | | | |
| Closet Door and Knobs | A | | | | |
| Bedroom Door, Knobs, Stops | | | R | | need door stop. |
| Windows and Locks | A | | | | |
| Mini Blinds | | | R | | broke blind tenant caused |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

| 2nd BEDROOM | A | | B | | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | N/A |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 3rd BEDROOM | A | | B | | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | N/A |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | | B | | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | N/A |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean? Yes ☑ No ☐ ☑

Insects or Rodents? Yes ☐ No ☐

Fire extinguisher expiration date _____

ADDITIONAL COMMENTS: _____

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

## MACO Management Company, Inc.
### Quarterly Inspection Report

Property __Summersville Estates__ Date __6-5-17__ Inspected by __Ben Cochran__

Tenant __Susan Austin__ Unit # __B2__ Vacant & Rent Ready? Yes ___ No ___

A = ACCEPTABLE    F = FINDING    R = REPAIR    V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | | F | | | |
| Door Jam | A | F | | | Need Replaced |
| Apartment Number | A | | | | |
| Weather Stripping | | F | | | |
| Screen / Storm Door | NA | | | | need replaced |
| Light Fixture | A | | | | |
| Door Knob and Dead Bolt | A | | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Outlet Covers and Switch Plates | A | | | | small stains |
| Windows and Locks | A | | | | |
| Mini Blinds | | F | | | one broke blind |
| Door Stops | A | | | | |
| Ceiling | A | | | | |
| Ceiling Fan | NA | | | | |
| Closet Door and Knobs | A | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | cut + scratches |
| Outlet Covers and Switch Plates | A | | | | |
| Light Fixture | A | | | | |
| Refrigerator and Handles | A | | | | |
| Range and Microwave | A | | | | |
| Exhaust Fan, Filter, Light | A | | | | |
| Fire Stops # 2 Date 10/8/17 | A | | | | |
| Splash Guard | NA | | | | |
| Cabinets | A | | | | |
| Cabinet Drawers | A | | | | |
| Counter Tops | A | | | | |
| Water Heater | A | | | | |
| Plumbing/Faucet | A | | | | |
| Windows and Locks | NA | | | | |
| Mini Blinds | NA | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Smoke Alarm | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Furnace/Filter | NA | | | | |
| Return Air Vent/Filter | NA | | | | |
| Thermostat | NA | | | | |

| HALL CLOSET / STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Water Heater | A | | | | |
| Light Fixture | A | | | | |
| Closet Door and Knobs | A | | | | |
| Shelving | A | | | | |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Door and Door Stops | A | | | | |
| Lavatory | A | | | | |
| Vanity Cabinet | A | | | | |
| Medicine Cabinet | A | | | | |
| Tub, Shower, Rod | A | | | | |
| Tub and Sink Faucets | A | | | | |
| Toilet | A | | | | |
| Towel Racks and Toilet Paper Holder | A | | | | |
| Heater / Fan | A | | | | |
| Outlet Covers and Switch Plates | | F | | | GFI broke on corner (tenant caused) |

| 1st BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | small stains |
| Smoke Alarm | A | | | | |
| Light Fixture | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Closet Door and Knobs | A | | | | |
| Bedroom Door, Knobs, Stops | A | | | | |
| Windows and Locks | A | | | | |
| Mini Blinds | | F | | | Broke Blind tenant caused |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

| 2nd BEDROOM | A | E | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | N/A |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 3rd BEDROOM | A | E | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | N/A |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | E | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | N/A |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?  Yes ☑   No ☐
Insects or Rodents?  Yes ☐   No ☑
Fire extinguisher expiration date _____

ADDITIONAL COMMENTS:

Case 6:23-cv-03015-BCW   Document 13   Filed 01/12/23   Page 338 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

## MACO Management Company, Inc.
### Quarterly Inspection Report

Property: _Summersville Estates_ Date: _9-20-17_ Inspected by _Ben Cochran_

Tenant: _Susan Austin_ Unit # _B2_ Vacant & Rent Ready? Yes No

A = ACCEPTABLE F = FINDING R = REPAIR V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | | | R | | |
| Door Jam | | | R | | |
| Apartment Number | A | | | | |
| Weather Stripping | | | R | | |
| Screen / Storm Door | N/A | | | | |
| Light Fixture | A | | | | |
| Door Knob and Dead Bolt | A | | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Windows and Locks | A | | | | |
| Mini Blinds | | | R | | Blind broke Tenant caused |
| Door Stops | A | | | | |
| Ceiling | A | | | | |
| Ceiling Fan | N/A | | | | |
| Closet Door and Knobs | A | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | N/A | | | | |
| Thermostat | N/A | | | | |
| Flooring | A | | | | worn |
| Ceiling | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Light Fixture | A | | | | |
| Refrigerator and Handles | A | | | | |
| Range and Microwave | A | | | | |
| Exhaust Fan, Filter, Light | A | | | | need filter |
| Fire Stops # 2 Date 10/30 | A | | | | |
| Splash Guard | N/A | | | | |
| Cabinets | A | | | | |
| Cabinet Drawers | A | | | | |
| Counter Tops | A | | | | |
| Water Heater | A | | | | |
| Plumbing/Faucet | A | | | | |
| Windows and Locks | N/A | | | | |
| Mini Blinds | N/A | | | | |

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 339 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Smoke Alarm | A | 0 | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Furnace/Filter | NA | | | | |
| Return Air Vent/Filter | NA | | | | |
| Thermostat | NA | | | | |

| HALLCLOSET / STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Water Heater | | | | | |
| Light Fixture | A | | | | |
| Closet Door and Knobs | A | | | | |
| Shelving | A | | | | |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Door and Door Stops | A | | | | |
| Lavatory | A | | | | |
| Vanity Cabinet | A | | | | |
| Medicine Cabinet | A | | | | |
| Tub, Shower, Rod | A | | | | |
| Tub and Sink Faucets | A | | | | |
| Toilet | A | | | | |
| Towel Racks and Toilet Paper Holder | A | | | | |
| Heater / Fan | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |

| 1st BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | # | | | |
| Smoke Alarm | A | 0 | | | |
| Light Fixture | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Closet Door and Knobs | | | R | | has hole (prior damage) |
| Bedroom Door, Knobs, Stops | A | | | | |
| Windows and Locks | A | | | | |
| Mini Blinds | A | | | | |

Case 6:23-cv-03015-BCW Document 13 Filed 01/13/23 Page 340 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

| 2nd BEDROOM | A | G | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 3rd BEDROOM | A | G | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | G | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean? Yes ☑ No ☐ ✓
Insects or Rodents? Yes ☐ No ☑ ✓
Fire extinguisher expiration date _____

ADDITIONAL COMMENTS: _____

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:34 PM

# MACO Management Company, Inc.
## Quarterly Inspection Report

Property __Summersville Estates__ Date __12-6-17__ Inspected by __Ben Cochran__

Tenant __Susan Austin__  Unit # __B2__  Vacant & Rent Ready? Yes  No

A = ACCEPTABLE   F = FINDING   R = REPAIR   V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | | / | | | replace |
| Door Jam | | / | | | replace |
| Apartment Number | / | | | | |
| Weather Stripping | | / | | | replace |
| Screen / Storm Door | N/A | | | | |
| Light Fixture | / | | | | |
| Door Knob and Dead Bolt | | / | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Windows and Locks | A | | | | |
| Mini Blinds | A | | | | |
| Door Stops | A | | | | |
| Ceiling | A | | | | |
| Ceiling Fan | N/A | | | | |
| Closet Door and Knobs | A | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | N/A | | | | |
| Thermostat | N/A | | | | |
| Flooring | A | | | | old - cuts and scratches |
| Ceiling | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Light Fixture | A | | | | dated - replace |
| Refrigerator and Handles | A | | | | |
| Range and Microwave | A | | | | |
| Exhaust Fan, Filter, Light | A | | | | |
| Fire Stops # 2 Date 10/20 | A | | | | |
| Splash Guard | N/A | | | | |
| Cabinets | A | | | | |
| Cabinet Drawers | A | | | | |
| Counter Tops | A | | | | |
| Water Heater | A | | | | |
| Plumbing/Faucet | A | | | | |
| Windows and Locks | N/A | | | | |
| Mini Blinds | N/A | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| HALL | A | E | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Smoke Alarm | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Furnace/Filter | | | | | |
| Return Air Vent/Filter | NA | | | | |
| Thermostat | NA | | | | |

| HALL CLOSET / STORAGE | A | E | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Water Heater | A | | | | |
| Light Fixture | A | | | | |
| Closet Door and Knobs | A | | | | |
| Shelving | A | | | | |

| BATHROOMS | A | E | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Light Fixture | A | | | | |
| Door and Door Stops | A | | | | |
| Lavatory | A | | | | |
| Vanity Cabinet | A | | | | |
| Medicine Cabinet | A | | | | |
| Tub, Shower, Rod | A | | | | |
| Tub and Sink Faucets | A | | | | |
| Toilet | A | | | | |
| Towel Racks and Toilet Paper Holder | A | | | | |
| Heater / Fan | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |

| 1st BEDROOM | A | E | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | A | | | | |
| Baseboard Heater | A | | | | |
| Thermostat | A | | | | |
| Flooring | A | | | | |
| Ceiling | A | | | | |
| Smoke Alarm | A | | | | |
| Light Fixture | A | | | | |
| Outlet Covers and Switch Plates | A | | | | |
| Closet Door and Knobs | A | | | | |
| Bedroom Door, Knobs, Stops | A | | | | |
| Windows and Locks | A | | | | |
| Mini Blinds | A | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 2nd BEDROOM | A | | R | | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 3rd BEDROOM | A | | R | | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | | R | | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?  Yes ☑  No ☐
Insects or Rodents?  Yes ☐  No ☑
Fire extinguisher expiration date_____

ADDITIONAL COMMENTS: _____

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

**Uniform Physical Condition Standards - Comprehensive Listing**
**Inspectable Area: Unit**

Page: 1 of 3

Property ID / Name: Sville Est
Building/Unit Nmbr: B 2

Inspection Date: 3-19-18

| Inspectable Item | Observable Deficiency | NOD | Level 1 | Level 2 | Level 3 | NA | H&S |
|---|---|---|---|---|---|---|---|
| Bathroom | Bathroom Cabinets - Damaged/Missing | OK | | | | | |
| | Lavatory Sink - Damaged/Missing | | | | | | |
| | Plumbing - Clogged Drains | | | | | | |
| | Plumbing - Leaking Faucet/Pipes | | | | | | |
| | Shower/Tub - Damaged/Missing | | | | | | |
| | Ventilation/Exhaust System - Inoperable | | | | | | |
| | Water Closet/Toilet - Damaged/Clogged/Missing | OK | | | | | |
| Call-for-Aid | Inoperable | NA | | | | | |
| Ceiling | Bulging/Bucking | OK | | | | | |
| | Holes/Missing Tiles/Panels/Cracks | | | | | | |
| | Peeling/Needs Paint | | | | | | |
| | Water Stains/Water Damage/Mold/Mildew | OK | | | | | |
| Doors | Damaged Frames/Threshold/Lintels/Trim | need replaced | | | | | |
| | Damaged Hardware/Locks | OK | | | | | |
| | Damaged/Missing Screen/Storm/Security Door | NA | | | | | |
| | Damaged Surface - Holes/Paint/Rusting/Glass | old | | | | | |
| | Deteriorated/Missing Seals (Entry Only) | needs replaced | | | | | |
| | Missing Door | OK | | | | | |
| Electrical System | Blocked Access to Electrical Panel | | | | | | |
| | Burnt Breakers | | | | | | |
| | Evidence of Leaks/Corrosion | | | | | | |
| | Frayed Wiring | | | | | | |
| | GFI - Inoperable | | | | | | |
| | Missing Breakers/Fuses | | | | | | |
| | Missing Covers | | | | | | |
| Floors | Bulging/Buckling | | | | | | |
| | Floor Covering Damage | | | | | | |
| | Missing Flooring Tiles | | | | | | |
| | Peeling/Needs Paint | | | | | | |
| | Rot/Deteriorated Subfloor | | | | | | |
| | Water Stains/Water Damage/Mold/Mildew | | | | | | |
| Health & Safety | Air Quality - Mold and/or Mildew Observed | | | | | | |
| | Air Quality - Sewer Odor Detected | | | | | | |
| | Air Quality - Propane/Natural Gas/Methane Gas Detected | | | | | | |
| | Electrical Hazards - Exposed Wires/Open Panels | | | | | | |
| | Electrical Hazards - Water Leaks on/near Electrical Equipment | | | | | | |
| | Emergency Fire Exits - Emergency/Fire Exits Blocked/Unusable | | | | | | |
| | Emergency Fire Exits - Missing Exit Signs | | | | | | |
| | Flammable Materials - Improperly Stored | | | | | | |
| | Garbage and Debris - Indoors | | | | | | |
| | Garbage and Debris - Outdoors | | | | | | |
| | Hazards - Other | | | | | | |
| | Hazards - Sharp Edges | | | | | | |
| | Hazards - Tripping | | | | | | |
| | Infestation - Insects | | | | | | |
| | Infestation - Rats/Mice/Vermin | | | | | | |
| Hot Water Heater | Misaligned Chimney/Ventilation System | | | | | | |
| | Inoperable Unit/Components | | | | | | |
| | Leaking Valves/Tanks/Pipes | | | | | | |
| | Pressure Relief Valve Missing | | | | | | |
| | Rust/Corrosion | | | | | | |
| HVAC System | Convection/Radiant Heat System Covers Missing/Damaged | | | | | | |
| | Inoperable | | | | | | |
| | Misaligned Chimney/Ventilation System | OK | | | | | |

Rev 12/18/2017

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Noisy/Vibrating/Leaking | | | | | | | | |
| | Rust/Corrosion | OK | | | | | | | |
| Kitchen | Cabinets - Missing/Damaged | | | | | | | | |
| | Countertops - Missing/Damaged | | | | | | | | |
| | Dishwasher/Garbage Disposal - Inoperable | OK NA | | | | | | | |
| | Plumbing - Clogged Drains | OK | | | | | | | |
| | Plumbing - Leaking Faucet/Pipes | | | | | | | | |
| | Range Hood/Exhaust Fans - Excessive Grease/Inoperable | | | | | | | | |
| | Range/Stove - Missing/Damaged/Inoperable | | | | | | | | |
| | Refrigerator-Missing/Damaged/Inoperable | | | | | | | | |
| | Sink - Damaged/Missing | | | | | | | | |
| Laundry Area (Room) | Dryer Vent - Missing/Damaged/Inoperable | OK | | | | | | | |
| Lighting | Missing/Inoperable Fixture | NA | | | | | | | |
| Outlets/Switches | Missing | OK | | | | | | | |
| | Missing/Broken Cover Plates | OK | | | | | | | |
| Patio/Porch/Balcony | Baluster/Side Railings Damaged | NA | | | | | | | |
| Smoke Detector | Missing/Inoperable | OK | | | | | | | |
| Stairs | Broken/Damaged/Missing Steps | | | | | | | | |
| | Broken/Missing Hand Railing | NA | | | | | | | |
| Walls | Bulging/Buckling | OK | | | | | | | |
| | Damaged | | | | | | | | |
| | Damaged/Deteriorated Trim | | | | | | | | |
| | Peeling/Needs Paint | | | | | | | | |
| | Water Stains/Water Damage/Mold/Mildew | | | | | | | | |
| Windows | Cracked/Broken/Missing Panes Cracked Storm Window | OK | | | | | | | |
| | Damaged Window Sill | OK | | | | | | | |
| | Missing/Deteriorated Caulking/Seals/Glazing Compound | | | | | | | | |
| | Inoperable/Not Lockable | | | | | | | | |
| | Peeling/Needs Paint | | | | | | | | |
| | Security Bars Prevent Egress | OK | | | | | | | |

- In order to accurately categorize a deficiency as a "Level 1", "Level 2" or "Level 3" (including independent Health & Safety items), you must refer to the Final Dictionary of Deficiency Definitions (PASS) Version 2.3, dated 03/08/2000. This document can be found at "http://www.hud.gov/offices/reac/pdf/pass_dict2.3.pdf" (325 Pages, 343 KB)
- Additional clarification to these definitions is contained in the REAC PASS Compilation Bulletin which can be found at "http://www.hud.gov/offices/reac/pdf/pass_bulletin.pdf" (24 Pages, 275 KB)
- Only level 3 is applied to independent Health & Safety deficiencies.
- In the H&S column, NLT is a "Non-Life Threatening" Health & Safety concern whereas LT is a "Life Threatening" concern which calls for immediate attention or remedy and will show up on the Exigent Health and Safety Report at the end of an inspection.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Windows - Missing/Deteriorated Caulking/Seals/Glazing Compound | | | | | | | | | | | |
| | Windows - Peeling/Needs Paint | | | | | | | | | | | |
| | Windows - Security Bars Prevent Egress | | | | | | | | | | | |
| Health & Safety | Air Quality - Mold and/or Mildew Observed | | | | | | | | | | | |
| | Air Quality - Propane/Natural Gas/Methane Gas Detected | | | | | | | | | | | |
| | Air Quality - Sewer Odor Detected | | | | | | | | | | | |
| | Electrical Hazards - Exposed Wires/Open Panels | | | | | | | | | | | |
| | Electrical Hazards - Water Leaks on/near Electrical Equipment | | | | | | | | | | | |
| | Emergency Fire Exits - Emergency/Fire Exits Blocked/Unusable | | | | | | | | | | | |
| | Emergency Fire Exits - Missing Exit Signs | | | | | | | | | | | |
| | Flammable/Combustible Materials - Improperly Stored | | | | | | | | | | | |
| | Garbage and Debris - Indoors | | | | | | | | | | | |
| | Garbage and Debris - Outdoors | | | | | | | | | | | |
| | Hazards - Other | | | | | | | | | | | |
| | Hazards - Sharp Edges | | | | | | | | | | | |
| | Hazards - Tripping | | | | | | | | | | | |
| | Infestation - Insects | | | | | | | | | | | |
| | Infestation - Rats/Mice/Vermin | | | | | | | | | | | |
| Pools and Related Structures | Fencing - Damaged/Not Intact | | | | | | | | | | | |
| | Pool - Not Operational | | | | | | | | | | | |
| Trash Collection Areas | Chutes - Damaged/Missing Components | | | | | | | | | | | |

- In order to accurately categorize a deficiency as a "Level 1", "Level 2" or "Level 3" (including independent Health & Safety items), you must refer to the Final Dictionary of Deficiency Definitions (PASS) Version 2.3, dated 03/08/2000. This document can be found at "http://www.hud.gov/offices/reac/pdf/pass_dict2.3.pdf" (325 Pages, 343 KB)

- Additional clarification to these definitions is contained in the REAC PASS Compilation Bulletin which can be found at "http://www.hud.gov/offices/reac/pdf/pass_bulletin.pdf" (24 Pages, 275 KB)

- Only level 3 is applied to independent Health & Safety deficiencies.

- In the H&S column, NLT is a "Non-Life Threatening" Health & Safety concern whereas LT is a "Life Threatening" concern which calls for immediate attention or remedy and will show up on the Exigent Health and Safety Report at the end of an inspection.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

# MACO Management Company, Inc.
## Quarterly Inspection Report

Property **S'ville Est.** Date **6·21·18** Inspected by **Michelle McGuire**

Tenant **Susan Austin** Unit # **B2** Vacant & Rent Ready? Yes  No

A = ACCEPTABLE  F = FINDING  R = REPAIR  V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | | | ✓ | | front door floods |
| Door Jam | — | | | | |
| Apartment Number | — | | | | |
| Weather Stripping | — | | | | |
| Screen / Storm Door | | | | | |
| Light Fixture | — | | | | |
| Door Knob and Dead Bolt | — | | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | — | | | | |
| Baseboard Heater | — | | | | |
| Thermostat | — | | | | |
| Flooring | | ✓ | | | Stain by front door |
| Outlet Covers and Switch Plates | — | | | | |
| Windows and Locks | — | | | | |
| Mini Blinds | — | | | | |
| Door Stops | — | | | | |
| Ceiling | — | | | | |
| Ceiling Fan | — | | | | |
| Closet Door and Knobs | — | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | — | | | | |
| Baseboard Heater | — | | | | |
| Thermostat | — | | | | |
| Flooring | — | | | | |
| Ceiling | — | | | | |
| Outlet Covers and Switch Plates | — | | | | |
| Light Fixture | — | | | | |
| Refrigerator and Handles | — | | | | |
| Range and Microwave | — | | | | |
| Exhaust Fan, Filter, Light | — | | | | |
| Fire Stops #2 Date 10·20 | — | | | | |
| Splash Guard | — | | | | |
| Cabinets | — | | | | |
| Cabinet Drawers | — | | | | |
| Counter Tops | — | | | | |
| Water Heater | — | | | | |
| Plumbing/Faucet | — | | | | |
| Windows and Locks | — | | | | |
| Mini Blinds | — | | | | |

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Light Fixture | ✓ | | | | |
| Smoke Alarm | ✓ | | | | |
| Outlet Covers and Switch Plates | ✓ | | | | |
| Furnace/Filter | ✓ | | | | |
| Return Air Vent/Filter | ✓ | | | | |
| Thermostat | | | | | |

| HALLCLOSET / STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Water Heater | | | | | |
| Light Fixture | ✓ | | | | |
| Closet Door and Knobs | ✓ | | | | |
| Shelving | ✓ | | | | |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Light Fixture | ✓ | | | | |
| Door and Door Stops | | | | | |
| Lavatory | ✓ | | | | |
| Vanity Cabinet | ✓ | | | | |
| Medicine Cabinet | | | | | |
| Tub, Shower, Rod | ✓ | | | | |
| Tub and Sink Faucets | ✓ | | | | |
| Toilet | ✓ | | | | |
| Towel Racks and Toilet Paper Holder | ✓ | | | | |
| Heater / Fan | ✓ | | | | |
| Outlet Covers and Switch Plates | ✓ | | | | |

| 1st BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Baseboard Heater | ✓ | | | | |
| Thermostat | | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Smoke Alarm | ✓ | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | ✓ | | | | |
| Closet Door and Knobs | ✓ | | | | |
| Bedroom Door, Knobs, Stops | ✓ | | | | |
| Windows and Locks | ✓ | | | | |
| Mini Blinds | ✓ | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 2nd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Baseboard Heater | ✓ | | | | |
| Thermostat | ✓ | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Smoke Alarm | ✓ | | | | |
| Light Fixture | ✓ | | | | |
| Outlet Covers and Switch Plates | ✓ | | | | |
| Closet Door and Knobs | ✓ | | | | |
| Bedroom Door, Knobs, Stops | ✓ | | | | |
| Windows and Locks | ✓ | | | | |
| Mini Blinds | ✓ | | | | |

| 3rd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?   Yes ☑   No ☐
Insects or Rodents?  Yes ☑   No ☐
Fire extinguisher expiration date _____

ADDITIONAL COMMENTS: Water damage around front door from water flood

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF



## MACO Management Company, Inc.
### Quarterly Inspection Report

Property _____  Date _____ Inspected by _____

Tenant _____  Unit # _____  Vacant & Rent Ready?  Yes  No

A = ACCEPTABLE          F = FINDING          R = REPAIR          V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | ✓ | | | | |
| Door Jam | ✓ | | | | |
| Apartment Number | ✓ | | | | |
| Weather Stripping | ✓ | | | | |
| Screen / Storm Door | ✓ | | | | |
| Light Fixture | ✓ | | | | |
| Door Knob and Dead Bolt | ✓ | | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Baseboard Heater | ✓ | | | | |
| Thermostat | ✓ | | | | |
| Flooring | ✓ | | | | |
| Outlet Covers and Switch Plates | ✓ | | | | |
| Windows and Locks | ✓ | | | | |
| Mini Blinds | ✓ | | | | |
| Door Stops | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Ceiling Fan | ✓ | | | | |
| Closet Door and Knobs | ✓ | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Baseboard Heater | ✓ | | | | |
| Thermostat | ✓ | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Outlet Covers and Switch Plates | ✓ | | | | |
| Light Fixture | ✓ | | | | |
| Refrigerator and Handles | ✓ | | | | |
| Range and Microwave | ✓ | | | | |
| Exhaust Fan, Filter, Light | ✓ | | | | |
| Fire Stops # ___ Date _____ | ✓ | | | | |
| Splash Guard | ✓ | | | | |
| Cabinets | ✓ | | | | |
| Cabinet Drawers | ✓ | | | | |
| Counter Tops | ✓ | | | | |
| Water Heater | ✓ | | | | |
| Plumbing/Faucet | ✓ | | | | |
| Windows and Locks | ✓ | | | | |
| Mini Blinds | ✓ | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Light Fixture | ✓ | | | | |
| Smoke Alarm | | ✓ | | | taken down |
| Outlet Covers and Switch Plates | ✓ | | | | |
| Furnace/Filter | ✓ | | | | |
| Return Air Vent/Filter | ✓ | | | | |
| Thermostat | ✓ | | | | |

| HALLCLOSET / STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Water Heater | ✓ | | | | |
| Light Fixture | ✓ | | | | |
| Closet Door and Knobs | ✓ | | | | |
| Shelving | ✓ | | | | |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Light Fixture | ✓ | | | | |
| Door and Door Stops | ✓ | | | | |
| Lavatory | ✓ | | | | |
| Vanity Cabinet | ✓ | | | | |
| Medicine Cabinet | ✓ | | | | |
| Tub, Shower, Rod | ✓ | | | | |
| Tub and Sink Faucets | ✓ | | | | |
| Toilet | ✓ | | | | |
| Towel Racks and Toilet Paper Holder | ✓ | | | | |
| Heater / Fan | ✓ | | | | |
| Outlet Covers and Switch Plates | ✓ | | | | |

| 1st BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | ✓ | | | | |
| Baseboard Heater | ✓ | | | | |
| Thermostat | ✓ | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Smoke Alarm | | X | | | taken down |
| Light Fixture | ✓ | | | | |
| Outlet Covers and Switch Plates | ✓ | | | | |
| Closet Door and Knobs | ✓ | | | | |
| Bedroom Door, Knobs, Stops | ✓ | | | | |
| Windows and Locks | ✓ | | | | |
| Mini Blinds | ✓ | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 2nd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |
| **3rd BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |
| **4th BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?  Yes ☒  No ☐
Insects or Rodents?  Yes ☐  No ☒
Fire extinguisher expiration date _____

ADDITIONAL COMMENTS: smells of Cigarette Smoke horrible

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

# MACO Management Company, Inc.

## Quarterly Inspection Report

Property _____ Date _____

Inspected by _____

Tenant _____ Unit # _____

Vacant & Rent Ready? Yes    No

| | A = ACCEPTABLE | F = FINDING | R = REPAIR | V = VIOLATION | |
|---|---|---|---|---|---|
| **FRONT ENTRANCE** | A | F | R | V | COMMENTS |
| Front Door | | | | | |
| Door Jam | | | | | |
| Apartment Number | ✓ | | | | |
| Weather Striping | | | | | |
| Screen / Storm Door | | | | N/A | |
| Light Fixture | ✓ | | | | |
| Door Knob and Dead Bolt | ✓ | | | | |
| **LIVING/DINING ROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | ✓ | | | | |
| Baseboard Heater | ✓ | | | | |
| Thermostat | ✓ | | | | |
| Flooring | ✓ | | | | |
| Outlet Covers and Switch Plates | ✓ | | | | |
| Windows and Locks | ✓ | | | | |
| Mini Blinds | ✓ | | | | |
| Door Stops | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Ceiling Fan | | | | N/A | |
| Closet Door and Knobs | ✓ | | | | |
| **KITCHEN** | A | F | R | V | COMMENTS |
| Walls and Baseboards | ✓ | | | | |
| Baseboard Heater | ✓ | | | | |
| Thermostat | ✓ | | | | |
| Flooring | ✓ | | | | |
| Ceiling | ✓ | | | | |
| Outlet Covers and Switch Plates | ✓ | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Light Fixture | X | | | | |
| Refrigerator and Handles | X | | | | |
| Range and Microwave | | ✓ | | | Need stove & oven .... |
| Exhaust Fan, Filter, Lights | | ✓ | | | Fan does not work |
| Fire Stops # 2 Date | X | | | | |
| Splash Guard | X | | | | |
| Cabinets | X | | | | |
| Cabinet Drawers | X | | | | |
| Counter Tops | X | | | | |
| Water Heater | | | | | |
| Plumbing Faucet | | ✓ | | | Need new faucet & plumbing |
| Windows and Locks | X | | | | |
| Mini Blinds | X | | | | |

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | |
| Flooring | X | | | | |
| Ceiling | X | | | | |
| Light Fixture | X | | | | |
| Smoke Alarm | X | | | | Replace battery, Test Lock |
| Outlet Covers and Switch Plates | X | | | | |
| Furnace (Filter) | | | | | N/A |
| Return Air Vent/Filter | | | | | N/A |
| Thermostat | X | | | | |

| HALLCLOSET/STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | |
| Flooring | X | | | | |
| Ceiling | X | | | | |
| Water Heater | | | | | N/A |
| Light Fixture | | | | | N/A |
| Closet Door and Knobs | X | | | | |
| Shelving | X | | | | |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | |
| Flooring | X | | | | |
| Ceiling | X | | | | |
| Light Fixture | | X | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Door and Door Stops | X | | | | |
| Lavatory | X | | | | |
| Vanity Cabinet | X | | | | |
| Medicine Cabinet | X | | | | |
| Tub, Shower, Rod | X | | | | |
| Tub and Sink Faucets | | | | | |
| Toilet | | | | | |
| Towel Racks and Toilet Paper Holder | X | | | | |
| Heater (Fan) | | | | | |
| Outlet Covers and Switch Plates | X | | | | |
| **1st BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | X | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | X | | | | Replaced battery, tested & working |
| Light Fixture | X | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | X | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | X | | | | |
| **2nd BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Case 6:23-cv-03015-BCW Document 11 Filed 01/12/23 Page 356 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 3rd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?    ( Yes    No

ADDITIONAL COMMENTS:
_____
_____

Insects or Rodents?    Yes    No

Fire extinguisher expiration date ___N/A___

Case 6:23-cv-03015-BCW   Document 15   Filed 01/12/23   Page 357 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

# MACO Management Company, Inc.

## Quarterly Inspection Report



Property **Summersville Estates**   Date **3-29-19**

Inspected by **Dawn Sims**

Tenant **Susan Austin**   Unit # **B2H**

Vacant & Rent Ready? Yes (No)

A = ACCEPTABLE    F = FINDING    R = REPAIR    V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | X | | | | New |
| Door Jam | X | | | | New |
| Apartment Number | X | | | | |
| Weather Striping | X | | | | New |
| Screen / Storm Door | | | | | N/A |
| Light Fixture | X | | | | |
| Door Knob and Dead Bolt | X | | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | |
| Baseboard Heater | X | | | | |
| Thermostat | X | | | | |
| Flooring | X | | | | |
| Outlet Covers and Switch Plates | X | | | | |
| Windows and Locks | | X | | | Large Crack in window LtLR |
| Mini Blinds | X | | | | |
| Door Stops | X | | | | |
| Ceiling | X | | | | |
| Ceiling Fan | | | | | N/A |
| Closet Door and Knobs | X | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | |
| Baseboard Heater | X | | | | |
| Thermostat | X | | | | |
| Flooring | X | | | | Some marks, overall ok |
| Ceiling | X | | | | |
| Outlet Covers and Switch Plates | X | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Light Fixture | X | | | | |
| Refrigerator and Handles | X | | | | |
| Range and Microwave | X | | | | New |
| Exhaust Fan, Filter, Lights | X | | | | New |
| Fire Stops # 2 Date 10/20 | | | | | |
| Splash Guard | | | | | N/A |
| Cabinets | X | | | | ok, worn, new handles |
| Cabinet Drawers | X | | | | New handles |
| Counter Tops | X | | | | |
| Water Heater | X | | | | |
| Plumbing Faucet | X | | | | Needs updated |
| Windows and Locks | | | | | N/A |
| Mini Blinds | | | | | N/A |

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | |
| Flooring | X | | | | |
| Ceiling | X | | | | |
| Light Fixture | X | | | | |
| Smoke Alarm | X | | | | Tested working |
| Outlet Covers and Switch Plates | X | | | | |
| Furnace (Filter) | | | | | N/A |
| Return Air Vent/Filter | | | | | N/A |
| Thermostat | | | | | N/A |

| HALLCLOSET/STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | |
| Flooring | X | | | | |
| Ceiling | X | | | | |
| Water Heater | | | | | N/A |
| Light Fixture | X | | | | |
| Closet Door and Knobs | X | | | | |
| Shelving | X | | | | |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | |
| Flooring | X | | | | |
| Ceiling | X | | | | |
| Light Fixture | X | | | | |

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 359 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Door and Door Stops | X | | | | |
| Lavatory | X | | | | |
| Vanity Cabinet | X | | | | |
| Medicine Cabinet | X | | | | |
| Tub, Shower, Rod | X | | | | |
| Tub and Sink Faucets | X | | | | |
| Toilet | X | | | | |
| Towel Racks and Toilet Paper Holder | X | | | | |
| Heater (Fan) | X | | | | |
| Outlet Covers and Switch Plates | X | | | | |
| **1st BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | X | | | | |
| Baseboard Heater | X | | | | |
| Thermostat | X | | | | |
| Flooring | X | | | | |
| Ceiling | X | | | | |
| Smoke Alarm | X | | | | Tested, working |
| Light Fixture | X | | | | |
| Outlet Covers and Switch Plates | X | | | | |
| Closet Door and Knobs | X | | | | |
| Bedroom Door, Knobs, Stops | X | | | | |
| Windows and Locks | X | | | | |
| Mini Blinds | X | | | | |
| **2nd BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| 3rd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean? (Yes) No

Insects or Rodents? Yes (No)

Fire extinguisher expiration date _____

ADDITIONAL COMMENTS:

*Very clean unit.*

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

# MACO Management Company, Inc.

## Quarterly Inspection Report



Property _Summerville Estates_    Date _June 29, 2019_

Inspected by _Dean Sims_

Tenant _Susan Austin_    Unit # _B2_

Vacant & Rent Ready? Yes (No)

| FRONT ENTRANCE | A = ACCEPTABLE | F = FINDING | R = REPAIR | V = VIOLATION | COMMENTS |
|---|:---:|:---:|:---:|:---:|---|
|  | A | F | R | V |  |
| Front Door | X |  |  |  | New, some scratches from neighbor dog. |
| Door Jam | X |  |  |  | New, excellent condition. |
| Apartment Number | X |  |  |  | Gold w/ no primer, good condition. |
| Weather Striping | X |  |  |  | New w/ door & jamb. |
| Screen / Storm Door |  |  |  |  | N/A |
| Light Fixture | X |  |  |  | Good, working. |
| Door Knob and Dead Bolt | X |  |  |  | Readjusted and working well. |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|:---:|:---:|:---:|:---:|---|
| Walls and Baseboards | X |  |  |  | Good, no holes or peeling. |
| Baseboard Heater | X |  |  |  | Clean, straight, working. |
| Thermostat | X |  |  |  | Good, working. |
| Flooring | X |  |  |  | OK. Older carpet, somewhat worn. |
| Outlet Covers and Switch Plates | X |  |  |  | Good, no cracks |
| Windows and Locks |  |  | X |  | Living room window is cracked. |
| Mini Blinds | X |  |  |  | Tenant provided own. |
| Door Stops | X |  |  |  | In place, good condition. |
| Ceiling | X |  |  |  | No cracks, good. |
| Ceiling Fan |  |  |  |  | N/A |
| Closet Door and knobs | X |  |  |  | Good, working condition. |

| KITCHEN | A | F | R | V | COMMENTS |
|---|:---:|:---:|:---:|:---:|---|
| Walls and Baseboards | X |  |  |  | Good. |
| Baseboard Heater |  |  |  |  | N/A |
| Thermostat |  |  |  |  |  |
| Flooring |  |  |  |  | Good, no peeling. |
| Ceiling | X |  |  |  | Good, no cracks or holes. |
| Outlet Covers and Switch Plates | X |  |  |  | Good, no cracks. |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Light Fixture | X | | | | Good, working |
| Refrigerator and Handles | X | | | | Good Condition Clean, nice ... |
| Range and Microwave | X | | | | New, working great. |
| Exhaust Fan, Filter, Lights | X | | | | New, All working great. |
| Fire Stops # 3 Date 4/2 | X | | | | In place, good state |
| Splash Guard | | | | | N/A |
| Cabinets | X | X | | | Old, Good use will base. |
| Cabinet Drawers | X | | | | Good, use ... |
| Counter Tops | X | | | | Old, but good condition. |
| Water Heater | | | | | N/A |
| Plumbing Faucet | X | | | | Good, working well, no leaks. |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | N/A |

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Good, no peeling or holes. |
| Flooring | X | | | | Older, Some wear, good condition |
| Ceiling | X | | | | Good, No cracks. |
| Light Fixture | X | | | | Good, working |
| Smoke Alarm | X | | | | In Place, Tested, working. |
| Outlet Covers and Switch Plates | X | | | | No issues, good. |
| Furnace (Filter) | | | | | N/A |
| Return Air Vent/Filter | | | | | |
| Thermostat | | | | | |

| HALLCLOSET/STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Good, no cracks or holes |
| Flooring | X | | | | Good Condition Older |
| Ceiling | X | | | | Good, No Cracks |
| Water Heater | X | | | | Good, working well |
| Light Fixture | X | | | | Good, working |
| Closet Door and Knobs | X | | | | Good, good working condition |
| Shelving | X | | | | Good, no splits or bows. |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Good, No cracks, holes or peeling |
| Flooring | X | | | | Good, older |
| Ceiling | X | | | | Good, No cracks |
| Light Fixture | X | | | | Good, working |

Case 6:23-cv-03015-BCW   Document 13   Filed 01/12/23   Page 363 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| | X | | Comments |
|---|---|---|---|
| Door and Door Stops | X | | Good condition, stops good |
| Lavatory | X | | Good |
| Vanity Cabinet | X | ✓ | Older, but good. |
| Medicine Cabinet | X | | Good, no cracks in mirror |
| Tub, Shower, Rod | X | | Good. |
| Tub and Sink Faucets | X | | Good, work well, no leaks. |
| Toilet | X | | Good, No leaks, works well |
| Towel Racks and Toilet Paper Holder | X | | Good condition |
| Heater (Fan) | X | | Working well, sounds good |
| Outlet Covers and Switch Plates | X | | Good, no cracks |

| 1st BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | Clean, straight line, working |
| Thermostat | | | | | Good, working |
| Flooring | X | | | | Older, slightly worn |
| Ceiling | | | | | Good, no cracks |
| Smoke Alarm | | | | | In place. Tested, working |
| Light Fixture | | | | | Good, working |
| Outlet Covers and Switch Plates | | | | | Good, no cracks |
| Closet Door and Knobs | | | | | Good, open & close well |
| Bedroom Door, Knobs, Stops | | | | | Good, door and knob stops good |
| Windows and Locks | | | | | Good, no cracks or chips |
| Mini Blinds | | | | | Tenant purchased new |

| 2nd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| 3rd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean? (Yes) No

Insects or Rodents? Yes (No)

Fire extinguisher expiration date ___N/A___

ADDITIONAL COMMENTS:
Clean Unit.

Case 6:23-cv-03015-BCW Document 17 Filed 01/12/23 Page 365 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

## MACO Management Company, Inc.
### Quarterly Inspection Report

Property _____ Date  9-26-19

Inspected by _____

Tenant _____  Unit # _____

Vacant & Rent Ready? Yes   No

A = ACCEPTABLE     F = FINDING     R = REPAIR     V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | X | | | | Newer door, scratches from neighbor's dog - noted |
| Door Jam | X | | | | Good, newer |
| Apartment Number | X | | | | Needs paint, good condition |
| Weather Striping | X | | | | Good, newer |
| Screen / Storm Door | | | | | N/A |
| Light Fixture | X | | | | Good, working |
| Door Knob and Dead Bolt | X | | | | Working well |
| **LIVING/DINING ROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | X | | | | Good condition |
| Baseboard Heater | X | | | | Good, clean |
| Thermostat | X | | | | Good |
| Flooring | | X | | | Older Carpet should be replaced |
| Outlet Covers and Switch Plates | | | X | | New dbl cover needed |
| Windows and Locks | | | X | | L.R. window huge crack |
| Mini Blinds | X | | | | Good, no issues |
| Door Stops | | X | | | Closet needs hinge stop. |
| Ceiling | X | | | | Good, no issues. |
| Ceiling Fan | | | | | N/A |
| Closet Door and Knobs | X | | | | |
| **KITCHEN** | A | F | R | V | COMMENTS |
| Walls and Baseboards | X | | | | Good |
| Baseboard Heater | | | | | N/A |
| Thermostat | | | | | N/A |
| Flooring | | X | | | Older, need replaced |
| Ceiling | X | | | | Good, no issues |
| Outlet Covers and Switch Plates | X | | | | All good |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Light Fixture | | | X | | Needs one bulb |
| Refrigerator and Handles | X | | | | Good, clean |
| Range and Microwave | X | | | | New |
| Exhaust Fan, Filter, Lights | X | | | | new |
| Fire Stops # 2 Date 10/20 | X | | | | In place, good date |
| Splash Guard | | | | | N/A |
| Cabinets | X | | | | Older, worn but ok |
| Cabinet Drawers | X | | | | Ok, older |
| Counter Tops | X | | | | Ok, older |
| Water Heater | X | | | | Good, working |
| Plumbing Faucet | X | | | | Good, working. No leaks |
| Windows and Locks | | | | | N/A |
| Mini Blinds | | | | | N/A |

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Ok, no issues |
| Flooring | | X | | | Older, worn - needs replaced |
| Ceiling | X | | | | Good, no issues |
| Light Fixture | X | | | | Good, working. |
| Smoke Alarm | X | | | | In place. Tested & working. |
| Outlet Covers and Switch Plates | X | | | | Good, no issues. |
| Furnace (Filter) | | | | | N/A |
| Return Air Vent/Filter | | | | | |
| Thermostat | | | | | |

| HALLCLOSET/STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Good, no issues. |
| Flooring | | X | | | Older worn. Needs replaced. |
| Ceiling | X | | | | good, no issues. |
| Water Heater | | | | | N/A |
| Light Fixture | | | | | N/A |
| Closet Door and Knobs | X | X | | | Small Hole in door from tenant. knob good. |
| Shelving | X | | | | Shelving good. No splits or cracks. |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Good, no issues |
| Flooring | | X | | | Older, worn. |
| Ceiling | X | | | | Good, no issues |
| Light Fixture | X | | | | Working, good condition. |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Door and Door Stops | X | | | | Good Condition, Stop in place. |
| Lavatory | X | | | | Good Condition. |
| Vanity Cabinet | X | | | | Older, but good Condition |
| Medicine Cabinet | X | | | | Good, no issues. |
| Tub, Shower, Rod | X | | | | All good. |
| Tub and Sink Faucets | X | | | | Working, good, no leaks. |
| Toilet | X | | | | Good, Clean. |
| Towel Racks and Toilet Paper Holder | X | | | | No issues. |
| Heater (Fan) | X | | | | Working, no issues |
| Outlet Covers and Switch Plates | X | | | | All good. |
| **1st BEDROOM** | **A** | **F** | **R** | **v** | **COMMENTS** |
| Walls and Baseboards | X | | | | Good, no issues |
| Baseboard Heater | X | | | | Good, Clean |
| Thermostat | X | | | | Good, working |
| Flooring | | X | | | Older, worn. needs replaced. |
| Ceiling | X | | | | Good no issues |
| Smoke Alarm | X | | | | Tested, working. In place. |
| Light Fixture | X | | | | Good Condition, working. |
| Outlet Covers and Switch Plates | X | | | | Good, No issues. |
| Closet Door and Knobs | X | | | | All good. |
| Bedroom Door, Knobs, Stops | X | | | | Good, Stops in place. |
| Windows and Locks | X | | | | Good, no cracks or chips |
| Mini Blinds | X | | | | Good, no issues |
| **2nd BEDROOM** | **A** | **F** | **R** | **V** | **COMMENTS** |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 3rd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?  (Yes)  No

Insects or Rodents?  Yes  (No)

Fire extinguisher expiration date ___ N/A ___

ADDITIONAL COMMENTS:
Clean, but tenant smokes in unit. Smells like nicotine.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

# MACO Management Company, Inc.
## Quarterly Inspection Report

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

Property _____  Date _____
Inspected by _____

Tenant _Susan Austin_     Unit # _32_

Vacant & Rent Ready? Yes   (No)

A = ACCEPTABLE     F = FINDING     R = REPAIR     V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | X | | | | |
| Door Jam | X | | | | |
| Apartment Number | X | | | | |
| Weather Striping | X | | | | |
| Screen / Storm Door | | | | | |
| Light Fixture | X | | | | |
| Door Knob and Dead Bolt | X | | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | |
| Baseboard Heater | X | | | | |
| Thermostat | X | | | | |
| Flooring | X | X | | | |
| Outlet Covers and Switch Plates | X | | | | |
| Windows and Locks | X | | | | |
| Mini Blinds | X | | | | |
| Door Stops | X | | | | |
| Ceiling | X | | | | |
| Ceiling Fan | | | | | |
| Closet Door and Knobs | X | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | X | | | | |
| Ceiling | X | | | | |
| Outlet Covers and Switch Plates | X | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | | | | | Comments |
|---|---|---|---|---|---|
| Light Fixture | X | | | | |
| Refrigerator and Handles | X | | | | _illegible_, Clean |
| Range and Microwave | X | | | | _illegible_, good, clean. |
| Exhaust Fan, Filter, Lights | X | | | | _illegible_ working, clean |
| Fire Stops # __2__ Date _illegible_ | X | | | | In place, good date |
| Splash Guard | | | | | N/A |
| Cabinets | X | | | | _illegible_ |
| Cabinet Drawers | X | | | | _illegible_ |
| Counter Tops | X | | | | Good condition |
| Water Heater | X | | | | Good, working |
| Plumbing Faucet | X | | | | Working well, No leak. |
| Windows and Locks | | | | | N/A |
| Mini Blinds | | | | | |

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Good |
| Flooring | | X | | | Needs replaced |
| Ceiling | X | | | | No issues |
| Light Fixture | X | | | | Good |
| Smoke Alarm | X | | | | In place, tested, working |
| Outlet Covers and Switch Plates | X | | | | All good |
| Furnace (Filter) | | | | | N/A |
| Return Air Vent/Filter | | | | | |
| Thermostat | | | | | |

| HALLCLOSET/STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | Good |
| Flooring | | | | | _illegible_ |
| Ceiling | X | | | | No issues |
| Water Heater | | | | | N/A |
| Light Fixture | | | | | |
| Closet Door and Knobs | | X | | | _illegible_ Shelf broke in closet |
| Shelving | X | | | | All good |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Good |
| Flooring | | X | | | Needs replaced. |
| Ceiling | X | | | | No issues |
| Light Fixture | X | | | | Working, tested good |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Door and Door Stops | x | | | | All good. |
| Lavatory | x | | | | Good. |
| Vanity Cabinet | x | | | | Underneath still good, working |
| Medicine Cabinet | x | | | | good, mirror also good. |
| Tub, Shower, Rod | x | | | | Good condition. |
| Tub and Sink Faucets | x | | | | No leaks... all. |
| Toilet | x | | | | Flushes well no leaks |
| Towel Racks and Toilet Paper Holder | x | | | | All good. Conditions good. |
| Heater (Fan) | x | | | | Still working |
| Outlet Covers and Switch Plates | x | | | | All in good shape. |

| 1st BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | x | | | | No stains |
| Baseboard Heater | x | | | | working. Clean |
| Thermostat | x | | | | still working |
| Flooring | | x | | | Needs replaced. |
| Ceiling | x | | | | No stains |
| Smoke Alarm | x | | | | In place, Tested, working |
| Light Fixture | x | | | | (Good working) |
| Outlet Covers and Switch Plates | x | | | | All in good shape |
| Closet Door and Knobs | x | | | | all in good working condition |
| Bedroom Door, Knobs, Stops | x | | | | Good shape, working, locks |
| Windows and Locks | x | | | | All good |
| Mini Blinds | x | | | | Good shape |

| 2nd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 3rd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?   (Yes)   No

Insects or Rodents?   Yes  (No)

Fire extinguisher expiration date _____

ADDITIONAL COMMENTS:

_____

_____

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

# MACO Management Company, Inc.
## Quarterly Inspection Report



Property_____ Date_____

Inspected by_____

Tenant_____ Unit #_____

Vacant & Rent Ready? Yes   No

A = ACCEPTABLE        F = FINDING        R = REPAIR        V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | | | | | |
| Door Jam | | | | | |
| Apartment Number | | | | | |
| Weather Striping | | | | | |
| Screen / Storm Door | | | | | N/A |
| Light Fixture | | | | | |
| Door Knob and Dead Bolt | | | | | |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |
| Door Stops | | | | | |
| Ceiling | | | | | |
| Ceiling Fan | | | | | N/A |
| Closet Door and Knobs | | | | | |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | N/A |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Outlet Covers and Switch Plates | | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | | | | | |
|---|---|---|---|---|---|
| Light Fixture | | | | | |
| Refrigerator and Handles | | | | | |
| Range and Microwave | | | | | |
| Exhaust Fan, Filter, Lights | | | | | |
| Fire Stops #_____ Date_____ | | | | | |
| Splash Guard | | | | | |
| Cabinets | | | | | |
| Cabinet Drawers | | | | | |
| Counter Tops | | | | | |
| Water Heater | | | | | |
| Plumbing Faucet | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Light Fixture | | | | | |
| Smoke Alarm | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Furnace (Filter) | | | | | |
| Return Air Vent/Filter | | | | | |
| Thermostat | | | | | |
| HALLCLOSET/STORAGE | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Water Heater | | | | | |
| Light Fixture | | | | | |
| Closet Door and Knobs | | | | | |
| Shelving | | | | | |
| BATHROOMS | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Light Fixture | | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | | | | | |
|---|---|---|---|---|---|
| Door and Door Stops | | | | | |
| Lavatory | | | | | |
| Vanity Cabinet | | | | | |
| Medicine Cabinet | | | | | |
| Tub, Shower, Rod | | | | | |
| Tub and Sink Faucets | | | | | |
| Toilet | | | | | |
| Towel Racks and Toilet Paper Holder | | | | | |
| Heater (Fan) | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| **1st BEDROOM** | **A** | **F** | **R** | **V** | **COMMENTS** |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |
| **2nd BEDROOM** | **A** | **F** | **R** | **V** | **COMMENTS** |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 3rd BEDROOM | A | F | R | v | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?   Yes   No

Insects or Rodents?   Yes   No

Fire extinguisher expiration date _____

ADDITIONAL COMMENTS:
_____
_____

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

# MACO Management Company, Inc.

## Quarterly Inspection Report



Property ___Summersville Estates___ Date __December 16, 2020__

Inspected by ___Dawn Sims___

Tenant ___Susan Austin___ Unit # ___B2H___

Vacant & Rent Ready? Yes [No]

A = ACCEPTABLE    F = FINDING    R = REPAIR    V = VIOLATION

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Front Door | X | | | | Scratches from another tenants dog, noted previously. Otherwise in great condition. |
| Door Jam | X | | | | Good condition, newer, no issues. |
| Apartment Number | X | | | | Good |
| Weather Striping | X | | | | Good seal, newer. No defects visable. |
| Screen / Storm Door | | | | | N/A |
| Light Fixture | X | | | | Good, working. Globe good, no defects. |
| Door Knob and Dead Bolt | X | | | | Good working condition |

| LIVING/DINING ROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | All good, no holes or mars. |
| Baseboard Heater | X | | | | Good, working clean, fins good. |
| Thermostat | | | | | Good, working. Cover/dial good. |
| Flooring | | X | | | Needs replaced. Old, extremely worn. Previously note |
| Outlet Covers and Switch Plates | X | | | | All good, outlets work |
| Windows and Locks | | | X | | Crack in LR window. Previously noted |
| Mini Blinds | X | | X | | Customer has purchased. Will install. |
| Door Stops | X | | | | Good condition, in place. |
| Ceiling | X | | | | No issues, paint is good. |
| Ceiling Fan | | | | | N/A |
| Closet Door and Knobs | | | | | Good, good working condition. No defects. |

| KITCHEN | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Paint is good, no holes or marring. |
| Baseboard Heater | | | | | N/A |
| Thermostat | | | | | |
| Flooring | | X | | | Older, needs replaced. Previously noted. |
| Ceiling | X | | | | Good, no issues. Paint is good. |
| Outlet Covers and Switch Plates | X | | | | Good, outlets working. |

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | | | | | COMMENTS |
|---|---|---|---|---|---|
| Light Fixture | X | | | | All working, globes good condition. Good seal. |
| Refrigerator and Handles | X | | | | Good working condition. clean |
| Range and Microwave | X | | | | Newer. Clean, working condition. |
| Exhaust Fan, Filter, Lights | X | | | | Newer, all working good condition |
| Fire Stops # 2 Date 9/26 | X | | | | In place, good date |
| Splash Guard | | | | | NIA |
| Cabinets | X | | | | Older, worn but ok. Mostly around bottoms. |
| Cabinet Drawers | X | | | | All working, good but worn. Newer handles, good. |
| Counter Tops | X | | | | Good, clean, No visable marring. |
| Water Heater (Bthm Closet) | X | | | | Good, no leaks. Pipes in good condition. |
| Plumbing Faucet | X | | | | Good, no leaks. No visable defects. |
| Windows and Locks | | | | | NIA |
| Mini Blinds | | | | | |

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Good, no issues. Paint is good. |
| Flooring | | X | | | Needs replaced, old & extremely worn. previously noted |
| Ceiling | X | | | | No issues, paint is good. |
| Light Fixture | X | | | | Good, no issues. Globe is good. |
| Smoke Alarm | X | | | | In place. Tested & working |
| Outlet Covers and Switch Plates | X | | | | Good. Outlet/Switch works. |
| Furnace (Filter) | | | | | NIA |
| Return Air Vent/Filter | | | | | |
| Thermostat | | | | | |

| HALLCLOSET/STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Good, no issues. |
| Flooring | X | | | | Okay, could be replaced. Older, very worn. |
| Ceiling | X | | | | Good, no issues. Paint is good. |
| Water Heater | | | | | NIA |
| Light Fixture | | | | | NIA |
| Closet Door and Knobs | X | | | | Small hole otherwise good. Knob good. No pulling apart. |
| Shelving | X | | | | No bowing or cracks, good shape |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Good, no issues |
| Flooring | X | | | | Could be replaced |
| Ceiling | X | | | | Good, no issues |
| Light Fixture | X | | | | Good, working. No defects to fixture. |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Door and Door Stops | x | | | | Good, good. No pulling apart, good shape. door stop in |
| Lavatory | x | | | | Worn but good. No cracks or chips in sink. |
| Vanity Cabinet | x | | | | Worn, older, built-in. Still functional. |
| Medicine Cabinet | x | | | | Good. Mirror good. |
| Tub, Shower, Rod | x | | | | No issues, no cracks or chips. |
| Tub and Sink Faucets | x | | | | Working, good, no leaks. no defects. |
| Toilet | x | | | | Flushes well, no leaks. No cracks or chips. |
| Towel Racks and Toilet Paper Holder | x | | x | | 1 towel rack loose, repaired. All in good condit |
| Heater (Fan) | x | | | | Good Working condition, motor sounds good. new |
| Outlet Covers and Switch Plates | x | | | | All good, outlets work (tested) |
| **1st BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | x | | | | Good, no issues. Paint still in good condition |
| Baseboard Heater | x | | | | Good, working Condition. Clean, straight fins |
| Thermostat | x | | | | Good, working. Cover/dial good. |
| Flooring | | x | | | Needs replaced, old & extremely worn. previously noted. |
| Ceiling | x | | | | Good, no issues. Paint is good. |
| Smoke Alarm | x | | | | In place. Tested, working. |
| Light Fixture | x | | | | Good, working. Glass in good shape |
| Outlet Covers and Switch Plates | x | | | | All good, outlets work (tested) |
| Closet Door and Knobs | x | | | | In good shape, hardware all good. |
| Bedroom Door, Knobs, Stops | x | | | | Good, working, good. No separating or other issues. |
| Windows and Locks | x | | | | No issues, windows go up & down good. |
| Mini Blinds | | x | | | tenant purchased replacement. will install. |
| **2nd BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Case 6:23-cv-03015-BCW Document 13 Filed 01/12/23 Page 380 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 3rd BEDROOM | A | F | R | V. | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |
| 4th BEDROOM | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?  (Yes)  No

Insects or Rodents?  Yes  (No)

Fire extinguisher expiration date  N/A

ADDITIONAL COMMENTS:
Unit clean. Flooring very worn, as previously noted.



EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

# MACO Management Company, Inc.
## Quarterly Inspection Report

Property _Summersville Estates_     Date _March 17, 2021_

Inspected by _Jason Sims_

Tenant _Susan Austin_        Unit # _B24_

Vacant & Rent Ready? Yes   No

| | A = ACCEPTABLE | F = FINDING | R = REPAIR | V = VIOLATION | |
|---|---|---|---|---|---|
| **FRONT ENTRANCE** | **A** | **F** | **R** | **V** | **COMMENTS** |
| Front Door | x | | | | |
| Door Jam | x | | | | |
| Apartment Number | x | | | | |
| Weather Striping | x | | | | |
| Screen / Storm Door | | | | N/A | |
| Light Fixture | x | | | | |
| Door Knob and Dead Bolt | x | | | | |
| **LIVING/DINING ROOM** | **A** | **F** | **R** | **V** | **COMMENTS** |
| Walls and Baseboards | x | | | | |
| Baseboard Heater | x | | | | |
| Thermostat | x | | | | |
| Flooring | x | | | | stained vinyl |
| Outlet Covers and Switch Plates | x | | | | |
| Windows and Locks | | x | | | lift broken |
| Mini Blinds | x | | | | |
| Door Stops | x | | | | |
| Ceiling | x | | | | |
| Ceiling Fan | | | | N/A | |
| Closet Door and Knobs | x | | | | |
| **KITCHEN** | **A** | **F** | **R** | **V** | **COMMENTS** |
| Walls and Baseboards | x | | | | |
| Baseboard Heater | x | | | | |
| Thermostat | x | | | | |
| Flooring | x | x | | | old |
| Ceiling | x | | | | |
| Outlet Covers and Switch Plates | x | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | | | | | |
|---|---|---|---|---|---|
| Light Fixture | x | | | | |
| Refrigerator and Handles | x | | | | |
| Range and Microwave | x | | | | |
| Exhaust Fan, Filter, Lights | x | | | | |
| Fire Stops # 2 Date 9/24 | x | | | | To place, fire detector w/B |
| Splash Guard | | | | | w/B |
| Cabinets | x | | | | |
| Cabinet Drawers | x | | | | |
| Counter Tops | x | | | | |
| Water Heater | | | | | w/B |
| Plumbing Faucet | x | | | | so working |
| Windows and Locks | | | | | NA |
| Mini Blinds | | | | | NA |

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | x | | | | |
| Flooring | x | | | | |
| Ceiling | x | | | | |
| Light Fixture | x | | | | |
| Smoke Alarm | x | | | | Inspec. Tested-working. |
| Outlet Covers and Switch Plates | x | | | | |
| Furnace (Filter) | | | | | NA |
| Return Air Vent/Filter | | | | | |
| Thermostat | | | | | |

| HALLCLOSET/STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Flooring | | | | | |
| Ceiling | x | | | | |
| Water Heater | x | | | | |
| Light Fixture | x | | | | |
| Closet Door and Knobs | x | x | | | |
| Shelving | x | | | | |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | x | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Light Fixture | | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Door and Door Stops | X | | | | |
| Lavatory | X | | | | |
| Vanity Cabinet | X | | | | |
| Medicine Cabinet | X | | | | |
| Tub, Shower, Rod | X | | | | |
| Tub and Sink Faucets | X | | | | |
| Toilet | X | | | | |
| Towel Racks and Toilet Paper Holder | X | | | | |
| Heater (Fan) | X | | | | |
| Outlet Covers and Switch Plates | X | | | | |
| **1st BEDROOM** | A | F | R | v | COMMENTS |
| Walls and Baseboards | X | | | | |
| Baseboard Heater | X | | | | |
| Thermostat | X | | | | |
| Flooring | X | X | | | |
| Ceiling | X | | | | |
| Smoke Alarm | X | | | | |
| Light Fixture | X | | | | |
| Outlet Covers and Switch Plates | X | | | | |
| Closet Door and Knobs | X | | | | |
| Bedroom Door, Knobs, Stops | X | | | | |
| Windows and Locks | X | | | | |
| Mini Blinds | X | | | | |
| **2nd BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

| 3rd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| 4th BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?  (Yes)  No

Insects or Rodents?  Yes  (No)

Fire extinguisher expiration date _____

ADDITIONAL COMMENTS:

_____

_____

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:36 PM

# MACO Management Company, Inc.

## Quarterly Inspection Report



Property Summersville Estates _____  Date June 17, 2021 _____

Inspected by Dawn Sims _____

Tenant Susan Austin _____  Unit # B2H _____

Vacant & Rent Ready? Yes / No

| FRONT ENTRANCE | A | P | R | V | Notes |
|---|---|---|---|---|---|
| Front Door | X | | | | |
| Door Jam | X | | | | |
| Apartment Number | X | | | | Good shape |
| Weather Stripping | X | | | | |
| Screen / Storm Door | | | | | N/A |
| Light Fixture | X | | | | Globe and fixture in good shape. |
| Door Knob and Deadbolt | X | | | | Knob and lock are in good working condition |

| LIVING/DINING ROOM | A | P | R | V | Notes |
|---|---|---|---|---|---|
| Walls and Baseboard | X | | | | |
| Baseboard Heater | X | | | | In good shape and is straight |
| Thermostat | X | | | | |
| Flooring | | X | | | |
| Outlet covers and switch plates | X | | | | |
| Windows and Light | X | | | | |
| Blinds | X | | | | |
| Door Stops | X | | | | Door stops in good condition |
| Ceiling | X | | | | |
| Ceiling Fan | | | | | N/A |
| Smoke Detector | X | | | | |

| KITCHEN | A | P | R | V | Notes |
|---|---|---|---|---|---|
| Walls and Baseboard | X | | | | Paint is good. No holes, cracks or marring. |
| Baseboard Heater | X | | | | Dining area in good condition clean |
| Thermostat | | | | | N/A |
| Flooring | | X | | | |
| Ceiling | X | | | | |
| Outlet covers and switch plates | X | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Light Fixture | X | | | | Both fixtures in good condition. Very Clean |
| Refrigerator and Handles | X | | | | Fridge and handles in good condition. Clean. |
| Range and Microwave | X | | | | In good condition. Very clean. |
| Exhaust Fan, Filter, Lights | X | | | | All in excellent condition. Filter is in good shape. Clean. |
| Fire Stops #__2__ Date 9/26 | X | | | | In place correctly, good date |
| Splash Guard | | | | | N/A |
| Cabinets | X | | | | Older but still in good condition. |
| Cabinet Drawers | X | | | | In good working condition. Older |
| Counter Tops | X | | | | No visable issues, in good shape. |
| Water Heater | | | | | N/A |
| Plumbing Faucet | X | | | | Good working condition. No leaks, sink in good condition. Drain is working well. |
| Windows and Locks | | | | | N/A |
| Mini Blinds | | | | | N/A |

| HALL | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Paint is good. No holes, cracks or marring. |
| Flooring | X | | | | Carpeting very worn and old. |
| Ceiling | X | | | | No cracks or other issues, paint good. |
| Light Fixture | X | | | | Globe and fixture in good shape. |
| Smoke Alarm | X | | | | In place. Tested and working |
| Outlet Covers and Switch Plates | X | | | | None damaged or missing. |
| Furnace (Filter) | | | | | N/A |
| Return Air Vent/Filter | | | | | N/A |
| Thermostat | | | | | N/A |

| HALLCLOSET/STORAGE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Paint is good. No holes, cracks or marring. |
| Flooring | X | | | | No issues. Could use light cleaning. |
| Ceiling | X | | | | No cracks or other issues, paint good |
| Water Heater | X | | | | in good condition, no leaks |
| Light Fixture | X | | | | (water heater closet light) Fixture is in good shape |
| Closet Door and Knobs | X | | | | Door has small hole. knob in good shape, door stop good |
| Shelving | X | | | | Shelves are in good shape, no bowing or cracking |

| BATHROOMS | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | X | | | | Paint is good. No holes, cracks or marring |
| Flooring | | X | | | Older worn linoleum. Clean, but could be replaced |
| Ceiling | X | | | | No cracks or other issues, paint good. |
| Light Fixture | X | | | | Fixture is in good condition. |

Case 6:23-cv-03015-BCW   Document 13   Filed 01/12/23   Page 387 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Door and Door Stops | X | | | | Door and stop in good condition, no issues. |
| Lavatory | X | | | | No cracks or chips, drain is working properly. |
| Vanity Cabinet | X | | | | Cabinet is older but still good, doors and hardware are good |
| Medicine Cabinet | X | | | | Good condition, Mirror is also good |
| Tub, Shower, Rod | X | | | | No cracks or chips in tub. Drain works well. Everything good. |
| Tub and Sink Faucets | X | | | | Both in good working condition. No leaks |
| Toilet | X | | | | Flushes well. No leaks |
| Towel Racks and Toilet Paper Holder | X | | | | All are in good condition |
| Heater (Fan) | X | | | | In good condition. |
| Outlet Covers and Switch Plates | X | | | | None damaged or missing. |
| **1st BEDROOM** | A | F | R | v | COMMENTS |
| Walls and Baseboards | X | | | | Paint is good. No holes, cracks or marring |
| Baseboard Heater | X | | | | In good condition, fins are straight. Clean. |
| Thermostat | X | | | | In good condition, clean |
| Flooring | | X | | | Carpeting is old and worn. |
| Ceiling | X | | | | No cracks or other issues, paint good. |
| Smoke Alarm | X | | | | In place, tested and working |
| Light Fixture | X | | | | Globe and fixture in good shape. |
| Outlet Covers and Switch Plates | X | | | | None damaged or missing. |
| Closet Door and Knobs | X | | | | Doors in good condition, all hardware is in good condition. |
| Bedroom Door, Knobs, Stops | X | | | | Door and knob in good condition, working well. Stop in place and in good condition as well. No separating or other issues |
| Windows and Locks | X | | | | In good working order, no cracks or chips |
| Mini Blinds | X | | | | Newer blinds that tenant purchased. No issues. |
| **2nd BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 3rd BEDROOM | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |
| 4th BEDROOM | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?    Yes  No

ADDITIONAL COMMENTS:

Insects or Rodents?    Yes  No

Fire extinguisher expiration date _____

Case 6:23-cv-03015-BCW   Document 11   Filed 01/12/23   Page 389 of 786

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

**MACO Management Company, Inc.**

Quarterly Inspection Report

Property <u>Summersville Estates</u>  Date <u>September 30, 2021</u>

Inspected by <u>Dawn Sims, Kevin Jotz police chief</u>

Tenant <u>Susan Austin</u>  Unit # <u>B2</u>

Vacant & Rent Ready? Yes (No)

| FRONT ENTRANCE | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| | A = ACCEPTABLE | F = FINDING | R = REPAIR | V = VIOLATION | |
| Front Door | X | | | | |
| Door Jam | X | | | | |
| Apartment Number | X | | | | |
| Weather Striping | X | | | | |
| Screen / Storm Door | | | | | NA |
| Light Fixture | X | | | | |
| Door Knob and Dead Bolt | X | | | | |
| **LIVING/DINING ROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | X | | | | |
| Baseboard Heater | X | | | | |
| Thermostat | X | | | | |
| Flooring | | X | | | Dirty |
| Outlet Covers and Switch Plates | X | | | | |
| Windows and Locks | X | | | | |
| Mini Blinds | X | | | | |
| Door Stops | | | X | | |
| Ceiling | X | | | | |
| Ceiling Fan | | | | | NA |
| Closet Door and Knobs | X | | | | |
| **KITCHEN** | A | F | R | V | COMMENTS |
| Walls and Baseboards | X | | | | |
| Baseboard Heater | | | | | NA |
| Thermostat | | | | | NA |
| Flooring | | X | | | Dirty, Scraped |
| Ceiling | X | | | | No Cracks |
| Outlet Covers and Switch Plates | X | | | | |

EXHIBIT A - STATE COURT FILE

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | | | | | |
|---|---|---|---|---|---|
| Light Fixture | | X | | | Very dirty |
| Refrigerator and Handles | X | | | | |
| Range and Microwave | | | | | |
| Exhaust Fan, Filter, Lights | | | | | |
| Fire Stops # _____ Date _____ | | | | | |
| Splash Guard | | | | | |
| Cabinets | | | | | |
| Cabinet Drawers | | | | | |
| Counter Tops | | | | | |
| Water Heater | | | | | |
| Plumbing Faucet | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

| HALL | A | F | R | v | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Light Fixture | | | | | |
| Smoke Alarm | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Furnace (Filter) | | | | | |
| Return Air Vent/Filter | | | | | |
| Thermostat | | | | | |
| HALLCLOSET/STORAGE | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Water Heater | | | | | |
| Light Fixture | | | | | |
| Closet Door and Knobs | | | | | |
| Shelving | | | | | |
| BATHROOMS | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Light Fixture | | | | | |

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| | A | F | R | V | COMMENTS |
|---|---|---|---|---|---|
| Door and Door Stops | | | | | |
| Lavatory | | | | | |
| Vanity Cabinet | | | | | |
| Medicine Cabinet | | | | | |
| Tub, Shower, Rod | | | | | |
| Tub and Sink Faucets | | | | | |
| Toilet | | | | | |
| Towel Racks and Toilet Paper Holder | | | | | |
| Heater (Fan) | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| **1st BEDROOM** | A | F | R | v | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |
| **2nd BEDROOM** | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

| 3rd BEDROOM | A | F | R | v | COMMENTS |
|---|---|---|---|---|---|
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |
| 4th BEDROOM | A | F | R | V | COMMENTS |
| Walls and Baseboards | | | | | |
| Baseboard Heater | | | | | |
| Thermostat | | | | | |
| Flooring | | | | | |
| Ceiling | | | | | |
| Smoke Alarm | | | | | |
| Light Fixture | | | | | |
| Outlet Covers and Switch Plates | | | | | |
| Closet Door and Knobs | | | | | |
| Bedroom Door, Knobs, Stops | | | | | |
| Windows and Locks | | | | | |
| Mini Blinds | | | | | |

Apartment clean?     Yes   (No)

Insects or Rodents?     Yes    No

Fire extinguisher expiration date _____

ADDITIONAL COMMENTS:
Was not able to finish inspection due to tenant. See notes, statement from Police Chief Kevin Jotz.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

## IN THE CIRCUIT COURT OF TEXAS COUNTY
## STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ERIC MEIER, | ) | |
| | ) | Case No.: 21TE-CC00360 |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## FIRST AMENDED PETITION
## (WRONGFUL DEATH)

COME NOW, Plaintiffs, JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through the undersigned counsel, and for their claims against Defendant MACO MANAGEMENT CO., INC. and SUMMERSVILLE ESTATES, L.P. (collectively "Defendants"), state as follows:

### INTRODUCTION, PARTIES AND VENUE

1.    Plaintiff Jennifer Bumeter is and was at all times relevant a resident of St. Charles County, Missouri.

2.    Plaintiff Eric Meier is and was at all times relevant a resident of St. Charles County, Missouri.

3.    Plaintiffs are the children and only class (1) beneficiaries of Robin Rose Fischer ("Decedent") pursuant to RSMo §537.080.

EXHIBIT

EXHIBIT
G

4.      Defendant Maco Management Co., Inc. ("Defendant Maco") is, and was at all times relevant, a professional real estate management company with offices located throughout the State of Missouri.

5.      Defendant Maco is responsible for overseeing and managing several low-income housing complexes in the state of Missouri, including the Summersville Estates, located in Summersville, Missouri ("Summersville Estates"), located in Texas County, Missouri.

6.      Defendant Summersville Estates, L.P. ("Defendant Summersville") is, and was at all times relevant, the property owner of Summersville Estates and the principal of Defendant Maco.

7.      Defendant Maco vests several of the supervision duties and responsibilities for Summersville Estates in its property manager, Dawn Sims ("Ms. Sims").

8.      Prior to her employment with Defendant Maco, Ms. Sims had no experience as a property manager or in any similar field.

9.      Decedent was a tenant of Summersville Estates from July 1, 2016 until her death on June 27, 2021.

10.      Decedent was, at all times relevant herein, disabled and required the ambulatory assistance of a cane or walker.

11.      The incident which resulted in Decedent's death ("Incident") took place at Summersville Estates and, as such, venue is proper in Texas County, Missouri.

12.      On or about June 27, 2021, Decedent's neighbor at Summersville Estates alerted authorities to the presence of smoke in her own apartment.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

13. Members of both Summersville's Police Department and Fire and Rescue Department ("Emergency Departments") arrived at Summersville Estates and were unable to determine the origin of such smoke or the location of any possible fire.

14. Incident reports from each of the Emergency Departments make absolutely no mention whatsoever of smoke detectors or any similar alarm being triggered from any apartment at Summersville Estates. One such report states that smoke detectors were present, but their power supply and operation could not be determined.

15. Eventually, officers and fire fighters determined the origin of the fire as being Decedent's apartment unit.

16. By the time a rescue could be attempted, Decedent had succumbed to the presence of smoke in her apartment unit.

17. The Texas County coroner determined Decedent's cause of death was carbon monoxide poisoning due to smoke inhalation.

18. Ms. Sims purportedly conducted an inspection of Decedent's apartment on June 15, 2021, and she reported that such inspection revealed working smoke alarms and clean firestops.

19. Neither of the two (2) smoke detectors in Decedent's apartment were in place or in working condition at the time of the Incident, and Ms. Sims was aware of the same.

20. Ms. Sims was aware, or should have been aware, of the facts set forth in paragraph 19 above prior to the Incident.

21. The fire suppression devices in Decedent's apartment unit which remained in place following the Incident expired in October 2020.

22. Ms. Sims was aware, or should have been aware, of the facts set forth in paragraph 21 above prior to the Incident.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

## COUNT I – WRONGFUL DEATH
### Against Defendant Maco

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and for their cause of action for wrongful death pursuant to RSMo §537.080 state as follows:

23. Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

24. Plaintiffs are the son and daughter of Decedent and, as such, are the proper parties under Missouri's Wrongful Death Statute to bring this cause of action against Defendant Maco.

25. Defendant Maco, by and through its agent, servant, and employee, Ms. Sims, owed a duty to Decedent to effectuate maintenance and repairs, properly inspect apartment units and generally ensure the safety of Defendant Maco's tenants.

26. Defendant Maco, by and through its agent, servant, and employee, Ms. Sims, breached this duty and is guilty of one or more of the following acts of negligence by failing to adhere to the standards of due care, skill and practice ordinarily exercised by members of their profession under the same or similar circumstances, to-wit:

    a. By negligently and carelessly hiring Ms. Sims to manage a low-income housing complex when they were aware she lacked experience in such field;

    b. By negligently and carelessly failing to train Ms. Sims or any other agent, servant or employee who was responsible for the maintenance and supervision of Summersville Estates;

    c. By negligently and carelessly failing to supervise Ms. Sims's actions, or inactions, in any way;

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

d. By negligently and carelessly allowing Ms. Sims to have improper personal relationships with tenants, and others, which hampered her ability to appropriately perform the duties for which she was hired;

e. By negligently and carelessly failing to implement appropriate supervisory measures which would have ensured Ms. Sims' performance of the duties for which she was hired;

f. By negligently and carelessly allowing Ms. Sims to forge inspection reports which purportedly memorialize the performance of her job duties;

g. By negligently and carelessly relying on Ms. Sims' purported apartment inspections and failing to take any additional efforts to ensure the safety of its tenants;

h. By negligently and carelessly failing to provide adequate personnel and/or staff to ensure Ms. Sim's oversight and supervision; and

i. By negligently and carelessly failing to perform and measure up to the required standards of care required and observed by members of the same profession and in further particulars presently unknown to Plaintiffs but which are exceedingly likely to be disclosed upon proper discovery procedures during the course of litigation.

27. Dawn Sims was, at all relevant times, an employee and agent of Defendant Maco. At all relevant times, Ms. Sims acted within the scope of her employment with Defendant Maco, and her acts and omissions are directly chargeable to her employer, Defendant Maco under state law pursuant to *respondeat superior*.

EXHIBIT A - Page 5 of 8 COURT FILE

Case 6:23-cv-03015-BCW Document 1-1 Filed 01/12/23 Page 398 of 786
EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

28. As a direct and proximate result of Defendant Maco's negligence as stated above, Decedent was forced to endure severe pain and suffering, as well as anxiety, mental distress, anguish, and ultimately death.

29. As a further direct and proximate cause of the negligence of Defendant Maco as stated above, Plaintiffs have suffered immense loss in the passing of their mother, including but in no way limited to, loss her services, consortium, companionship, comfort, guidance, instruction, counsel, and support. Moreover, Decedent's death resulted in Plaintiffs' payment of expenses for her funeral and final disposition, as well as expenses for their own therapeutic treatment.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendant Maco, for the wrongful death of Robin Rose Fischer, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

## COUNT II – WRONGFUL DEATH
### Against Defendant Summersville

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and for their cause of action for wrongful death pursuant to RSMo §537.080 state as follows:

30. Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

31. Plaintiffs are the son and daughter of Decedent and, as such, are the proper parties under Missouri's Wrongful Death Statute to bring this cause of action against Defendant Summersville.

32. Defendant Maco was, at all relevant times, an agent of Defendant Summersville. At all relevant times, Defendant Maco acted within the scope of its agency with Defendant

EXHIBIT A, Page 6 of 9

EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Summersville, and its acts and omissions are directly chargeable to its principal, Defendant Summersville under state law pursuant to *respondeat superior*.

33.     As a direct and proximate result of Defendant Maco's negligence as stated above, Decedent was forced to endure severe pain and suffering, as well as anxiety, mental distress, anguish, and ultimately death.

34.     As a further direct and proximate cause of the negligence of Defendant Maco as stated above, Plaintiffs have suffered immense loss in the passing of their mother, including but in no way limited to, loss her services, consortium, companionship, comfort, guidance, instruction, counsel, and support. Moreover, Decedent's death resulted in Plaintiffs' payment of expenses for her funeral and final disposition, as well as expenses for their own therapeutic treatment.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendant Summersville, for the wrongful death of Robin Rose Fischer, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

### COUNT III – NEGLIGENT HIRING
**Against Defendants Maco and Summersville**

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and, pleading in the alternative to Counts I and II, state as follows:

35.     Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

36.     At all times relevant to Plaintiffs' claims, Ms. Sims was acting under an agreement to perform services for Defendants.

EXHIBIT A – STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

37.     At all times relevant to Plaintiffs' claims, Ms. Sims had dangerous proclivities which included, without limitation, a refusal and inability to perform the duties and obligations required of her in the performance of employment related tasks.

38.     Defendants knew or should have known of Ms. Sims' dangerous proclivities.

39.     Prior to the Incident, Defendants, by and through their employees and agents, committed one or more of the following acts of negligence associated with the dangerous proclivities of Ms. Sims:

   a. Negligently and carelessly failing to make a reasonable inquiry into Ms. Sims' competence to work as a property manager; and/or

   b. Negligently and carelessly hiring or otherwise entrusting the management of their low-income housing complex to an inadequately trained, incompetent, or unfit property manager; and/or

   c. Negligently and carelessly failing to properly train Ms. Sims to perform the duties and tasks required of her; and/or

   d. Negligently and carelessly failing to properly oversee Ms. Sims in the performance of the duties and tasks required of her.

40.     Defendants owed a duty to all tenants of Summersville Estates, including Decedent, to exercise reasonable care to determine the qualifications of its property manager when selecting him or her, and to adequately instruct, train and supervise such property manager in order to reasonably assure her or she would manage Summersville Estates in a non-negligent manner.

41.     As a direct and proximate result of the aforesaid negligent and careless acts of Defendants, Ms. Sims was allowed to repeatedly cut corners in the performance of her job duties, including the performance of apartment inspections.

EXHIBIT 3 TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

42.    As a further direct and proximate result of the aforesaid negligent and careless acts of Defendants, Ms. Sims repeatedly failed to perform her job duties and did not ensure Decedent's apartment was properly equipped with functioning smoke detectors or fire suppression devices—resulting in Decedent's death.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendants, jointly and severally, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
　　BRANDON J. KLAR,　　　#72884
　　*Attorney for Plaintiff*
　　1125 Olivette Executive Pkwy., Ste. 120
　　St. Louis, Missouri 63132
　　Phone:　　(314) 863-1117
　　Fax:　　　(314) 863-1118
　　Email:　　bjklar@lawsaintlouis.com

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM



← B2 Susan    🎥  📞  🔍  ⋮

Monday, Jul 19 · 2:46 PM

**B** Bev's drug dealers are here. I need to go to the store but can't do it when they are watching everybody.

Living here is like being in prison.

**B** I want out.

Monday, Jul 19 · 5:01 PM

**B** She is wasting her time with this cosmetic bullshit. We need money to relocate. And shut this hellhole down.

**B** If you had any sense you would be looking for another job. This thing with Robin will stick with you forever. Get out while you can. They are blaming you for her death.

Can you please answer the call? Please? I know you're upset.

**B** No. I love you as a person. Don't waste your time here. Just sray home.

↓

Text message    ☺  🎤

---

EXHIBIT
H
6/29/22    B2

EXHIBIT
4

164

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM



2 of 4

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM



EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM



EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

**Archived:** Monday, March 28, 2022 11:24:07 AM
**From:** Cpu Admin
**Sent:** Tue, 20 Jul 2021 19:18:43
**To:** Maci Earnheart
**Subject:** New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

---

**Name**

Susan Austin

**City of Interest**

Sumnersville, Missouri

**State of Interest**

Missouri

**Send Us a Message**

Don't move into Summersville Estates, Summersville, Missouri, without LOTS of life insurance.



EXHIBIT

I

6/29/27  BZ

EXHIBIT

MACO370

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

## Karen Murphy

**From:** Jill Evans
**Sent:** Tuesday, July 27, 2021 11:04 AM
**To:** Karen Murphy
**Subject:** FW: New submission from Contact MACO Management - Susan Austin



Jill Evans
Regional Manager, MACO Management Company, Inc.
573-448-3000 Ext 1148 | Cell: 573-776-5080 | jille@macocompanies.com
www.macocompanies.com/
111 North Main Street Clarkton, MO 63837

**From:** Susan Austin <webmaster@macocompanies.com>
**Sent:** Tuesday, July 27, 2021 9:14 AM
**To:** Jill Evans <jille@macocompanies.com>
**Subject:** New submission from Contact MACO Management - Susan Austin

**Name**

Susan Austin

**City of Interest**

Sumnersville, Missouri

**State of Interest**

Arkansas

**Phone**

(417) 247-8832

**Email**

saustin4853@gmail.com

**Send Us a Message**

I live at Sumnersville Estates, where a resident recently died when her apartment caught fire and did not have working smoke alarms. Now they are wasting money on cosmetics to the property which makes no sense.

1

EXHIBIT

J

6/29/22 βz

EXHIBIT

J

Case 6:23-cv-03015-BCW   Document 17   Filed 01/12/23   Page 408 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

**From:** Susan Austin <saustin4853@gmail.com>
**Sent:** Tuesday, July 27, 2021 9:35 AM
**To:** Summersville <summersville@macoapts.com>
**Subject:** Summersville Estates

I live at Summersville Estates. I don't understand why Maco is putting time and money into cosmetics for this property. It isn't going to change the fact that there was a recent preventable death when an apartment caught fire and had no working smoke alarms or an accurate inspection.

MACO Disclaimer: The information transmitted herewith is intended only for use by the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission , dissemination, distribution, copying, or other use of, or taking of any action in reliance upon this information is strictly prohibited. If you have received this communication in error, please contact the sender and delete the material from your computer.

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF


EXHIBIT
K

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

**Archived:** Monday, March 28, 2022 11:24:01 AM
**From:** Cpu Admin
**Sent:** Fri, 30 Jul 2021 16:41:38
**To:** Maci Earnheart
**Subject:** New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

---

**Name**

Susan Austin

**City of Interest**

Summersville, Mo

**State of Interest**

Missouri

**Phone**

(417) 247-8832

**Email**

saustin4853@gmail.com

**Send Us a Message**

I would like an apartment with a regional manager doesn't block me from the emergency maintenance number so next time my bathroom floods and the toilet is unusable I can receive help. She has violated the fair housing act and she has not met hud standards. I have concerns for my safety, So soon after an apartment here caught fire and my friend did not survive. She had no working smoke alarms and her inspections were not timely or correct.



EXHIBIT
L
6/29/22 RZ

EXHIBIT
L

MACO366

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

**Archived:** Monday, March 28, 2022 11:23:55 AM
**From:** Casey Weyh
**Sent:** boundary="_000_BYAPR16MB247272FDBCF8E36F0349C6FE94669BYAPR16MB2472namp_"MIME
**To:** Summersville
**Subject:** FW: New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

---

**From:** Sheila Calvert <sheila.calvert@macocompanies.com>
**Sent:** Monday, November 29, 2021 9:47 AM
**To:** Maci Earnheart <maci@macocompanies.com>; Casey Weyh <casey.weyh@macocompanies.com>
**Subject:** FW: New submission from Contact MACO Management - Susan Austin

**From:** Michelle Ragsdale <michelle@macocompanies.com>
**Sent:** Monday, November 29, 2021 9:24 AM
**To:** Sheila Calvert <sheila.calvert@macocompanies.com>
**Subject:** FW: New submission from Contact MACO Management - Susan Austin

**From:** Susan Austin <webmaster@macocompanies.com>
**Sent:** Wednesday, November 24, 2021 4:06 PM
**To:** Michelle Ragsdale <michelle@macocompanies.com>
**Subject:** New submission from Contact MACO Management - Susan Austin

**Name**

Susan Austin

**City of Interest**

Summersville

**State of Interest**

Missouri

**Phone**

(417) 247-8832

**Email**

saustin4853@gmail.com

**Send Us a Message**

This property is being investigated by the Fair Housing Act. Not a safe place to live.



MACO362

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

**Archived:** Monday, March 28, 2022 11:24:03 AM
**From:** Cpu Admin
**Sent:** Fri, 26 Nov 2021 20:51:51
**To:** Maci Earnheart
**Subject:** New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

---

**Name**

Susan Austin

**City of Interest**

Summersville

**State of Interest**

Missouri

**Phone**

(417) 247-8832

**Email**

saustin4853@gmail.com

**Send Us a Message**

I am a witness in a wronful death lawsuit when a death occured at Summersville Esrates, a Maco property. I have been evicted, the property manager put false information in my file, I have no heat and there is mold in my apartment, I recently went seven days without a working toilet. I had to call the health department to get it fixed. I will not give up. Maco employees have made my life a living hell. I have been evicted, I have no heat, and my apartment has mold, I have information about the fire and death of my friend who died when her apartment caught fire and she,could not get out.



EXHIBIT
O
6/29/22  RZ

EXHIBIT

MACO367

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

**Archived:** Monday, March 28, 2022 11:24:00 AM
**From:** Sheila Calvert
**Sent:** Mon, 29 Nov 2021 15:20:08
**To:** Maci Earnheart; Casey Weyh
**Subject:** FW: New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

---

**From:** Michelle Ragsdale <michelle@macocompanies.com>
**Sent:** Monday, November 29, 2021 9:18 AM
**To:** Sheila Calvert <sheila.calvert@macocompanies.com>
**Subject:** FW: New submission from Contact MACO Management - Susan Austin

Wow that is some strong accusations.. she is a peach

**From:** Susan Austin <webmaster@macocompanies.com>
**Sent:** Saturday, November 27, 2021 3:56 PM
**To:** Michelle Ragsdale <michelle@macocompanies.com>
**Subject:** New submission from Contact MACO Management - Susan Austin

**Name**

Susan Austin

**City of Interest**

Summersville

**State of Interest**

Missouri

**Phone**

(417) 247-8832

**Email**

saustin4853@gmail.com

**Send Us a Message**

You and your lying employees are responsible for an innocent persons death. What are you going to do about it? Dawn Simms is a killer.



EXHIBIT
P
6/29/22 RC

EXHIBIT
P

MACO365

Case 6:23-cv-03015-BCW Document 15 Filed 01/12/23 Page 413 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

**Archived:** Monday, March 28, 2022 11:24:04 AM
**From:** Cpu Admin
**Sent:** Sun, 28 Nov 2021 22:00:57
**To:** Maci Earnheart
**Subject:** New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

---

**Name**

Susan Austin

**City of Interest**

Summersville

**State of Interest**

Missouri

**Phone**

(417) 247-8832

**Email**

saustin4853@gmail.com

**Send Us a Message**

You hire these idiots and call them 'property managers'? See you in court and your idiot Dawn Simns, whose negligence caused rhe death of my friend on one of your properties



MACO368



MACO368

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 20, 2022 - 02:37 PM

**Archived:** Monday, March 28, 2022 11:23:57 AM
**From:** Sheila Calvert
**Sent:** Wed, 23 Mar 2022 15:42:58
**To:** Maci Earnheart
**Subject:** FW: New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

---

**From:** Michelle Ragsdale <michelle@macocompanies.com>
**Sent:** Monday, December 6, 2021 10:01 AM
**To:** Sheila Calvert <sheila.calvert@macocompanies.com>
**Subject:** FW: New submission from Contact MACO Management - Susan Austin

**From:** Susan Austin <webmaster@macocompanies.com>
**Sent:** Friday, December 3, 2021 4:26 PM
**To:** Michelle Ragsdale <michelle@macocompanies.com>
**Subject:** New submission from Contact MACO Management - Susan Austin

**Name**

Susan Austin

**City of Interest**

Summersville

**State of Interest**

Missouri

**Send Us a Message**

Dawn Simms, the propperty manager at Summersville Estates, lied to the court to protect herself. It doesn't affect me because I am moving to a better place despite her lies about me. But she is in very deep trouble. She is being investigated for violating the Fair Housing Act and other agencies. She lied to USDA among others, The information has been sent to the OIG..



EXHIBIT
B
6/29/22  RZ

EXHIBIT
R

MACO363

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Archived: Monday, March 28, 2022 11:23:53 AM
From: Sheila Calvert
Sent: Wed, 23 Mar 2022 15:43:07
To: Maci Earnheart
Subject: FW:
Sensitivity: Normal

---

From: Sheila Calvert
Sent: Monday, December 6, 2021 8:29 AM
To: Sonja Bennett, MOCARH <executivedirector.mocarh@gmail.com>
Subject: RE:

Thanks! This lady has been a real peach!

From: Sonja Bennett, MOCARH <executivedirector.mocarh@gmail.com>
Sent: Monday, December 6, 2021 7:27 AM
To: Sheila Calvert <sheila.calvert@macocompanies.com>
Subject: Fwd:

Just an fyi

Sonja

Sent from my iPhone

Begin forwarded message:

> From: Susan Austin <saustin4853@gmail.com>
> Date: December 5, 2021 at 2:49:19 PM CST
> To: "Sonja Bennett, MOCARH" <executivedirector.mocarh@gmail.com>
> Subject: Re:
>
> \u-257 ?
> Thank you. Expect to be lied to. I have reported her for violating the Fair Housing Act.
>
> On Sun, Dec 5, 2021, 2:20 PM Sonja Bennett, MOCARH <executivedirector.mocarh@gmail.com> wrote:
>> Ms. Austin,
>> I will forward your email to corporate management at MACO.
>>
>> Sonja
>>
>> Sent from my iPhone
>>
>>> On Dec 4, 2021, at 8:31 PM, Susan Austin <saustin4853@gmail.com> wrote:
>>>
>>> \u-257 ?
>>> I have lived in a Maco managed apartment for the past six years. It was a nice place to live until three years ago when they hired a property manager named Dawn Simms. She is the fourth manager in the six years I have lived here. I went seven days without a working toilet, the heat doesn't work, my apartment has mold, and she lies about doing the apartment inspections. There was a fire in an apartment here and the tenant could not get out and she did not survive. Her apartment had not been inspected and the smoke alarms did not work and her fire stops were expired. When I voiced concerns over safety issues here the abuse and harrassment toward me from management has been intolerable. And now I am being evicted. I had covid and she refused to accept the assistance that SAFHR offered. Shen lied to USDA about the mold in my apartment. I had to pay for the mold test myself. Why is this allowed to happen? I am 63, and a retired Registerd Nurse. I am apalled at her behaviour and I have no confidence in Maco management.



EXHIBIT
S
6/29/22 BZ

EXHIBIT
5
_____
MACO361

Case 6:23-cv-03015-BCW Document 15 Filed 06/12/23 Page 416 of 786

EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

**From:** Susan Austin <saustin4853@gmail.com>
**Sent:** Friday, June 17, 2022 1:53 PM
**To:** Summersville <summersville@macoapts.com>
**Subject:** Dawn Simms

Dawn Simms is the most incompetent individual I have ever had the misfortune to meet. She opened my apartment for people to enter without my permission or knowledge, she forged my inspections, she spent hours locked in her office with men. See you in court.
MACO Disclaimer: The information transmitted herewith is intended only for use by the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission , dissemination, distribution, copying, or other use of, or taking of any action in reliance upon this information is strictly prohibited. If you have received this communication in error, please contact the sender and delete the material from your computer.



EXHIBIT A - STATE COURT FILE
EXHIBIT TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER
AND RESPONSE TO PLAINTIFF'S MOTION FOR RELIEF

Electronically Filed - Texas - July 21, 2022 - 04:20 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' PROPOSED ORDER REGARDING DISCOVERY PERTAINING TO PARTIES AND FACT WITNESSES

After hearing on Defendants' Motion for Protective Order and Motion to Quash, and at the request of this Court, Defendants submit the following Proposed Order Regarding Discovery Pertaining to Parties and Fact Witnesses:

1. Plaintiffs shall produce for deposition within sixty (60) days of this Order the three fact witnesses, Susan Austin, Rebecca Johnson, and Bridgette Kittner, identified in Plaintiffs' written discovery as holding the information about Defendants' purported wrongdoings. The occurrence of these depositions prior to the parties' depositions are intended to eliminate the potential need for a second deposition of the parties after obtaining information regarding the allegations from the above witnesses.

2. All parties to this action, including those persons within their control and/or employ, shall be deposed prior to the depositions of any further fact witnesses (other than those set forth in paragraph 1).

    a. Plaintiffs shall be deposed within sixty (60) days of completion of the depositions set forth in paragraph 1.

EXHIBIT A - STATE COURT FILE

b. Defendants' employee Dawn Sims and a corporate representative (if requested and topics provided) shall be deposed within fifteen (15) days of completion of the depositions set forth in paragraph 2a.

c. Defendants' other agents or representatives shall be deposed within sixty (60) days of completion of the depositions set forth in paragraph 2a. Plaintiff shall provide Defendants a written request identifying such individuals at least forty-five (45) days prior to the sixty (60) day deadline; otherwise, such deadline will be extended accordingly.

d. Fact witnesses identified by the Defendants shall be deposed within one hundred and twenty (120) days of completion of the depositions set forth in paragraph 2c;

e. Fact witnesses identified by the Plaintiffs shall be deposed within one hundred and twenty (120) days of completion of the depositions set forth in paragraph 2c.

3. In the event additional fact witnesses are identified by either party during the aforementioned depositions, any such deposition of the additional fact witness shall take place within one hundred and twenty (120) days of such fact witness' disclosure.

4. Nothing in this Order shall be read as a waiver of any discovery rules or procedures set forth in the Missouri Rules of Civil Procedure.

5. The parties will work cooperatively to schedule depositions at a date, time, and location which are amenable to both parties and the deponent(s).

6. The above order and dates are subject to change by written agreement of both parties or by further order of the Court.

2

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 21, 2022 - 04:20 PM

7. This Order shall not be read to include a scheduling order for the depositions of any experts to be named in the future by each respective party.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of July 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*                          /s/       MARIE F. PUDLOWSKI

3

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 21, 2022 - 01:04 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, ) | |
| ) | |
| and ) | |
| ) | Cause No.: 21TE-CC00360 |
| ERIC MEIER, ) | |
| ) | |
| Plaintiffs, ) | |
| v. ) | |
| ) | |
| MACO MANAGEMENT CO., INC., and ) | |
| ) | |
| SUMMERSVILLE ESTATES, L.P. ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' PROPOSED ORDER REGARDING DISCOVERY PERTAINING TO PARTIES AND FACT WITNESSES**

After hearing on Defendants' Motion for Protective Order and Motion to Quash, and at the request of this Court, Plaintiffs submit the following Proposed Order Regarding Discovery Pertaining to Parties and Fact Witnesses:

1. All parties to this action, including those persons within their control and/or employ, shall be deposed prior to the depositions of any further fact witnesses.

    a. Defendants and their agents or representatives shall be deposed within sixty (60) days of this Order, conditioned upon Plaintiffs providing ten (10) days written notice of the person(s) to be deposed;

    b. Plaintiffs shall be deposed within sixty (60) days after completion of the depositions of Defendants and their agents or representatives ("Party Deadline"), conditioned upon Defendants providing ten (10) days written notice of the person(s) to be deposed;

EXHIBIT A – STATE COURT FILE

Case 6:23-cv-03015-BCW    Document 1-1    Filed 01/12/23    Page 421 of 786

Electronically Filed - Texas - July 21, 2022 - 01:04 PM

c.  Fact witnesses identified by the Defendants shall be deposed within one hundred and twenty (120) days of the Party Deadline;

d.  Fact witnesses identified by the Plaintiffs shall be deposed within one hundred and twenty (120) days of the Party Deadline.

2.  In the event additional fact witnesses are identified by either party during the aforementioned depositions, any such deposition of the additional fact witness shall take place within one hundred and twenty (120) days of such fact witness' disclosure.

3.  Nothing in this Order shall be read as a waiver of any discovery rules or procedures set forth in the Missouri Rules of Civil Procedure.

4.  The parties will work cooperatively to schedule depositions at a date, time, and location which are amenable to both parties and the deponent(s).

5.  This Order, inclusive of the above dates, are subject to change by written agreement of the parties or by further order of the Court.

6.  This Order shall not be read to include a scheduling order for the depositions of any experts to be named in the future by each respective party.


SO ORDERED:

_____          Date: _____
The Honorable John D. Beger

EXHIBIT A - STATE COURT FILE

Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 422 of 786

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER, )
)
and )
)
)    Cause No.: 21TE-CC00360
ERIC MEIER, )
)
    Plaintiffs, )
)
v. )
)
MACO MANAGEMENT CO., INC., and )
)
SUMMERSVILLE ESTATES, L.P. )
)
    Defendants. )

## PLAINTIFFS' PROPOSED ORDER REGARDING DISCOVERY PERTAINING TO PARTIES AND FACT WITNESSES

After hearing on Defendants' Motion for Protective Order and Motion to Quash, and at the request of this Court, Plaintiffs submit the following Proposed Order Regarding Discovery Pertaining to Parties and Fact Witnesses:

1.  All parties to this action, including those persons within their control and/or employ, shall be deposed prior to the depositions of any further fact witnesses.

    a.  Defendants and their agents or representatives shall be deposed within ~~sixty~~ *Ninety* 90 (60) days of this Order, conditioned upon Plaintiffs providing ten (10) days written notice of the person(s) to be deposed;

    b.  Plaintiffs shall be deposed within ~~sixty~~ *Ninety 90* (60) days ~~after completion of the depositions of Defendants and their agents or representatives~~ *of this order.* ("Party Deadline"), conditioned upon Defendants providing ten (10) days written notice of the person(s) to be deposed;

Page 1 of 2

c. Fact witnesses identified by the Defendants shall be deposed within one hundred and twenty (120) days of the Party Deadline;

d. Fact witnesses identified by the Plaintiffs shall be deposed within one hundred and twenty (120) days of the Party Deadline.

2. In the event additional fact witnesses are identified by either party during the aforementioned depositions, any such deposition of the additional fact witness shall take place within one hundred and twenty (120) days of such fact witness' disclosure.

3. Nothing in this Order shall be read as a waiver of any discovery rules or procedures set forth in the Missouri Rules of Civil Procedure.

4. The parties will work cooperatively to schedule depositions at a date, time, and location which are amenable to both parties and the deponent(s).

5. This Order, inclusive of the above dates, are subject to change by written agreement of the parties or by further order of the Court.

6. This Order shall not be read to include a scheduling order for the depositions of any experts to be named in the future by each respective party.

7. Case set 9.2.22 at 9:00 am. for setting. Counsel May appear by Webex.

SO ORDERED:

_____
The Honorable John D. Beger

Date: 7-26-23

Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 424 of 786
EXHIBIT A - STATE COURT FILE

FILED
7/26/2022
MARCI MOSLEY
CIRCUIT CLERK
TEXAS COUNTY, MO

IN THE CIRCUIT COURT OF Texas COUNTY MISSOURI

Jennifer Burnete, et al  Maco Management, et al

Case # 21TE-cc 00360          Date: July 26, 2022

## MEMORANDUM

The Court considers Plaintiffs' Motion For Relief. The Parties appeared by counsel July 19, 2022 when the Motion was argued and taken under advisement. Since then the Defendants' counsel has filed a transcript of the deposition of Susan Austin and Exhibits used in that deposition.

It seems to the Court some or all of those exhibits should have been disclosed to Plaintiffs' Counsel in response the Plaintiffs' Request for Disclosure Number 4. (Ex A to the Motion). The Motion is granted as follows:

a. Those parts of Susan Austin's deposition testimony in response to exhibits that should have been disclosed are stricken and will Not be allowed to be used at trial or in further deposition of Ms. Austen.

b. Exhibits that have been used without proper disclosure are stricken and Not to be used until properly disclosed.

c. The Court defers the request for attorney's fees at this time.

d. The Court adopts Plaintiffs' Proposed scheduling order, as Modified and attached hereto.

O ORDERED

_____
JUDGE

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| | ) | |
| and | ) | |
| | ) | Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MACO MANAGEMENT CO., INC., and | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR RELIEF

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Memorandum in Support of Motion for Relief, state as follows:

1. On several occasions, Defendants Maco Management Co., Inc. and Summersville Estates, L.P. (collectively, "Defendants") refused to produce for deposition Ms. Dawn Sims—an employee of Defendants who was, and remains, at all times within their control and employ—or another corporate representative of Defendants.

2. Such refusal continued for weeks despite Plaintiffs' counsel repeatedly advising counsel for Defendants that their asserted position was not only without precedent under Missouri law, but the same was actually directly contrary to Missouri's Rules of Civil Procedure.

3. On July 8, 2022, due to Defendants' continued refusal to comply with Missouri law or Rules of Civil Procedure, Plaintiffs filed a Notice of Deposition for the corporate

EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 426 of 786

representative of Defendants—a party to this action—to be conducted on July 15, 2022 ("Maco Deposition").

4. The Maco Deposition was properly noticed according to Missouri law and Rule 57.01(b)(1).

5. Counsel for Plaintiffs advised Defendants' counsel several times of his intention to obtain a Certificate of Nonappearance and seek sanctions should Defendants fail to produce their client for the properly noticed Maco Deposition.

6. Though Defendants appeared by counsel at the Maco Deposition, they **failed and refused to produce their client**. *See* Record of Nonappearance, attached hereto and incorporated herein by reference as **Exhibit 1**, as well as corresponding exhibits used therein, attached hereto and incorporated herein by reference as **Exhibit 2**.

7. As a result of Defendants' failure to produce their client for the Maco Deposition, Defendants are subject to sanctions from this Court as provided by Missouri Rule 61.01. *Kingsley v. Kingsley,* 716 S.W.2d 257, 260 (Mo. 1986).

8. Plaintiffs file this Memorandum in Support of their Motion for Relief, which was recently granted by this Court, because the actions at issue in that Motion are the same as those at issue herein—Defendants' **repeated** and unjustified refusal to comply with discovery rules codified in the Missouri Rules of Civil Procedure.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for an Order and/or sanctions compelling Defendants to pay the attorneys' fees and costs related to the Maco Deposition, for an Order and/or sanctions granting Plaintiffs' attorneys fees for the deposition of Susan Austin, and for any such other relief and sanctions as this Court deems just and proper under the circumstances

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.


By: ____/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
*Attorney for Plaintiffs*
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 27th day of July 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.


_/s/ Brandon J. Klar___

IN THE CIRCUIT COURT OF TEXAS COUNTY

STATE OF MISSOURI

JENNIFER BUMETER and ERIC
MEIER,

        Plaintiffs,

vs.

           Cause No.
           21TE-CC00360

MACO MANAGEMENT CO., INC.
And SUMMERSVILLE ESTATES,
L.P.,

        Defendants.

**EXHIBIT**

**1**

RECORD OF NONAPPEARANCE
TAKEN ON BEHALF OF THE PLAINTIFFS
July 15, 2022

KELLY J. DANIELS
7405 RAY AVENUE
ST. LOUIS, MO  63116
314.570.5428

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER and          )
ERIC MEIER,                   )
                              )
          Plaintiffs,         )
vs.                           ) Cause No.
                              ) 21TE-CC00360
                              )
MACO MANAGEMENT CO.,          )
INC. And SUMMERSVILLE         )
ESTATES, L.P.,                )
                              )
          Defendants.         )


          RECORD OF NONAPPEARANCE, taken on July 15, 2022, between the hours of 12:50 in the afternoon and 1:02 in the afternoon of that day by Zoom, before KELLY J. DANIELS, Certified Court Reporter, #641, within and for the State of Missouri and Certified Shorthand Reporter within and for the State of Illinois, in a certain cause now pending in the Circuit Court of Texas County, State of Missouri, wherein JENNIFER BUMETER and ERIC MEIER are Plaintiffs and MACO MANAGEMENT CO., INC. And SUMMERSVILLE ESTATES, L.P. are Defendants.

2

EXHIBIT A   STATE COURT FILE

A P P E A R A N C E S:

For the Plaintiffs:

Mr. Brandon J. Klar
Klar, Izsak & Stenger, LLC
1125 Olivette Executive Parkway, #120
St. Louis, Missouri   63132

For the Defendants:

Ms. Marie Pudlowski
Childress, Ahlheim Cary
1010 Market Street, #500
St. Louis, Missouri   63101

Also present:
Reporter:  Kelly J. Daniels, CCR #641
MO-CCR IL-CSR

3

INDEX

PAGE NO.

Mr. Klar            5

INDEX OF EXHIBITS

EXHIBIT NO.                    PAGE NO.

1 through 8     Marked prior to start.

Exhibits attached to transcript.

4

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the Plaintiffs and counsel for the Defendants that this Record of Nonappearance may be taken in shorthand by Kelly J. Daniels, Certified Court Reporter, Missouri and Illinois, afterwards transcribed into typewriting.

* * * * *

RECORD OF NONAPPEARANCE

BY MR. KLAR:

On the record, my name is Brandon Klar. I am from the law firm of Klar, Izsak & Stenger. I represent the plaintiffs in this action, Jennifer Bumeter and Eric Meier.

This is to be the deposition of Maco Management's corporate representative taken pursuant to Rule 57, the Missouri Rules of Civil Procedure. Case number is 21TE-CC00360 pending in Texas County, Missouri.

It is now 12:50 on July 15th. We have been given authority by defendant's counsel to proceed prior to the 1:00 p.m. noticed deposition.

I will take note that the representative for defendants, Maco Management and Summersville Estates are not present. They have not appeared, however, counsel for deponent is here. As a result

5

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

of that I would like to say that Ms. Pudlowski's appearance is indicative of this deposition's prior proper notice. The legal authority authorizing this deposition in Missouri Rule 57 as well as 56. The purpose of this deposition is to obtain facts from the corporate representative of defendants as evidenced, which may be produced by such defendant.

MS. PUDLOWSKI: Brandon, if you don't mind, I will just put my objection on the record, and then you can proceed with anything that you would like to say if that works. I am Marie --

MR. KLAR: You can make it after if that's okay.

MS. PUDLOWSKI: Oh, I would like to object first since the deposition is now underway to make sure that my objection is not later argued that I didn't object in time.

So I would object because I just don't know how you roll.

So my name is Marie Pudlowsi, and I am the attorney for the defendants. I appear on behalf of Maco and Summersville Estates. Defendants have requested prior to this deposition that this deposition cease and not go forward for all the reasons set forth in the Defendant's Motion for

6

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

Protective Order as well as their objection to the topics that were filed on July 14th, 2022 and all the previous correspondences noted within those findings.

This motion is actually set for hearing at the next available date provided by the Court, which is next week on July 19th, 2022.

I would also like to make note and reference Exhibit 1, which was provided previously to counsel and the court reporter, which is an email chain between the two attorneys and shows my last message sent to Mr. Klar regarding this deposition, which was dated Thursday, July 14, 2022 at 12:25 p.m., and which I have not received any response.

You can go ahead and proceed now, Mr. Klar, and if it can just be a continuing objection.

MR. KLAR:  Move to strike all speaking portions of the objection.  I will continue.

The steps that have been taken to produce this deposition have been well documented.  They have complied with all Missouri law.

Ms. Pudlowski has asserted a variety of reasons as to why we not go forth, but the predominant reason is that she feels all of her depositions must be conducted prior to the

7

deposition of her own client.

It is identified nowhere in Missouri law, no statutes, there are no case law precedent, there is absolutely nothing which authorizes the position Ms. Pudlowski has asserted.

I would like at this time to admit eight exhibits, which I'll -- into the record, which I will describe.

The first is Plaintiff's Exhibit 1, which is a notice of deposition set for July 15, 2022 at 1:00 p.m. It was filed July 8th, 2022 at 3:52 p.m. per the timestamp of the Texas County Circuit Court. This is a properly noticed deposition, and in it it states that the corporate representative of Maco Management Company, who is a party to this action is to appear at this scheduled time. As a result, required to appear at this date and time.

Plaintiff's Exhibit 2 is a Casenet printoff which reflects exactly what I just mentioned. It identifies the notice to take this deposition as being filed 7/8/22. That is seven days prior to today, which is within the time period requested by Missouri law.

Plaintiff's Exhibit 3, Exhibit A, which is a topic list for all of the topics to be discussed at

8

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

this deposition, It's plaintiff's position that none of these are objectionable. None of them are requesting any documents as defendant's requested as pointed out in pleadings, and by the wording of the exhibit, no documents are requested, so again, this is a proper deposition.

Exhibit 4 is an email from defense counsel, Marie Pudlowski dated --

MS. PUDLOWSKI: Defendant would object to the use of Exhibits 4 and beyond that are emails to the extent that they are taken out of context and do not supply the full email chain or correspondence between counsel, but for the purpose of this you can move forward.

MR. KLAR: I will object to the speaking portion again, and I will reassert that there is no protection whatsoever between counsel.

This an email from Marie Pudlowski, defendant's counsel, dated Wednesday, April 20th, 2022 at 9:37 p.m. in which she says I cannot agree to produce my clients, which mean Dawn Sims or another corporate representative --

MS. PUDLOWSKI: Objection to the exhibits to the extent that you are speaking for the exhibits themselves, and what is written in them

9

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

speaks for themselves, so if you paraphrase --

MR. KLAR: I'll --

MS. PUDLOWSKI: Objection.

MR. KLAR: It's exactly what this exhibit states, and I'm going to continue with my deposition.

The exhibit specifically states I cannot agree to produce my clients until after the motion to dismiss hearing.

It then goes on to state I am happy to get dates for after the hearing.

Again, this hearing was heard and denied. Defendants move to dismiss the petition, and that motion was heard and denied, and Marie Pudlowski, defense counsel did not produce dates for her client.

Plaintiff's Exhibit 5 is an email from counsel for plaintiffs, Brandon J. Klar to defense counsel, Marie Pudlowski. The date is Tuesday, July 5th, 2022 at 4:26 p.m. in which Brandon Klar states that Rule 56.01(d) of Missouri law specifically permits plaintiffs to conduct this deposition.

It also advises that if Ms. Pudlowski does not present -- or produce, pardon me, her client or someone within her control that I, being plaintiff's

10

attorney, will move to compel her deposition prior to providing any further dates.

Plaintiff's Exhibit 6 is an email again from plaintiff's counsel, Brandon Klar to defense counsel dated Wednesday, July 6, 2022 at 4:09 p.m.

MS. PUDLOWSKI: I would just like to state for the record a continuing objection to the extent that these are paraphrased. The records speak for themselves.

MR. KLAR: Okay. These are not paraphrased. These are being read straight from the document, and there's a continuing objection so no further speaking objections are required.

This is an email from Brandon Klar to Marie Pudlowski dated Wednesday, July 6, 2022 at 4:09 p.m. in which Brandon Klar states Marie, I do not intend to produce another witness until your client has been deposed. Ms. Sims is a party to this action. If Ms. Sims does not appear at the deposition on the 11th, I will obtain the certificate of nonappearance.

This is the deposition of a corporate representative of which Ms. Sims is for defendants, Maco and Summersville, and she has not been produced and I will obtain a certificate of nonappearance.

11

EXHIBIT A - STATE COURT FILE

Defendant's Exhibit 7 is an email from plaintiff's counsel, Brandon J. Klar to defense counsel, Marie Pudlowski sent Tuesday, July 12, 2022 at 2:00 p.m. -- 2:20 p.m., pardon me, in which Brandon Klar states, due to your continued refusal to produce your client, until all depositions in this case are conducted, despite her being noticed first, and because there exists absolutely zero Missouri case law or statutes would authorize the same, you are correct that I will not produce my clients or witnesses until your client has been deposed.

Further, to our conversation -- pardon me. Should you and your client not appear, I will obtain a certificate of nonappearance as we discussed. Again, Ms. Pudlowski is present, but her client is not. This is a properly noticed deposition, and I will continue to obtain a certificate of nonappearance.

Plaintiff's Exhibit 8 is an email from Brandon Klar to defense counsel, Marie Pudlowski dated Thursday, July 14, 2022 at 11:35 p.m., that is yesterday, in which Brandon Klar, counsel for plaintiffs provided Ms. Pudlowski a Zoom link for this deposition, which is again a properly noticed

12

deposition according to Missouri law.

And I would like to again put on the record that Ms. Pudlowski is present, but she has not produced her client, and it is plaintiff's understanding that she refuses to produce her client, despite what the Missouri Rules of Discovery require until plaintiff's depositions are all conducted, which again, has no legal authority, none based in Missouri law. There is no precedent, there are no statutes, there is nothing which requires what Ms. Pudlowski requests.

That will complete my record for now, and I will reserve any time based on what Ms. Pudlowski has to offer.

MS. PUDLOWSKI: I have no further statements.

MR. KLAR: I would like to go on if there is no further statements to say that it is again plaintiff's intention to seek sanctions for the nonappearance of defendant's client, who is the named party to this action pursuant to Missouri Rule of Civil Procedure 61.01. Thank you.

THE REPORTER: Would you like to order a copy, Ms. Pudlowski?

MS. PUDLOWSKI: I'll just take a PDF

13

copy. That's fine.

MR. KLAR: Yes, for me too, Kelly.
Thank you.

EXHIBIT A - STATE COURT FILE

Certified Court Reporter Certificate

        STATE OF MISSOURI              )
                                       ) SS
        COUNTY OF ST. LOUIS            )


        I, KELLY J. Daniels, a Certified Court
Reporter, #641, within and for the state of
Missouri, a Certified Shorthand Reporter within the
state of Illinois, do hereby certify that a Record
of Nonappearance taken by Zoom was made July 15,
2022.



        I further certify that I am neither attorney
nor counsel for nor related nor employed by any of
the parties to the action in which this deposition
is taken; further that I am not a relative or
employee of any attorney or counsel employed by the
parties hereto or financially interested in this
action.

        IN WITNESS WHEREOF, July 16, 2022.


        _____
              Kelly J. Daniels, CCR #641
        Certified Court Reporter within and for
                the State of Missouri

EXHIBIT A - STATE COURT FILE

## #

**#120** [1] - 3:4
**#500** [1] - 3:8
**#641** [4] - 2:14, 3:13, 15:5, 15:15

## 1

**1** [3] - 4:7, 7:9, 8:9
**1010** [1] - 3:8
**1125** [1] - 3:4
**11:35** [1] - 12:22
**11th** [1] - 11:20
**12** [1] - 12:3
**12:25** [1] - 7:13
**12:50** [2] - 2:11, 5:19
**14** [2] - 7:13, 12:22
**14th** [1] - 7:2
**15** [4] - 1:18, 2:10, 8:10, 15:6
**15th** [1] - 5:19
**16** [1] - 15:13
**19th** [1] - 7:7
**1:00** [2] - 5:21, 8:10
**1:02** [1] - 2:12

## 2

**2** [1] - 8:18
**2022** [15] - 1:18, 2:11, 7:2, 7:7, 7:13, 8:10, 8:11, 9:20, 10:20, 11:5, 11:15, 12:3, 12:22, 15:7, 15:13
**20th** [1] - 9:19
**21TE** [3] - 1:6, 2:5, 5:17
**21TE-CC00360** [3] - 1:6, 2:5, 5:17
**2:00** [1] - 12:4
**2:20** [1] - 12:4

## 3

**3** [1] - 8:24
**314.570.5428** [1] - 1:24
**3:52** [1] - 8:11

## 4

**4** [2] - 9:7, 9:10
**4:09** [2] - 11:5, 11:15
**4:26** [1] - 10:20

## 5

**5** [2] - 4:3, 10:17
**56** [1] - 6:4

**56.01(d** [1] - 10:21
**57** [2] - 5:16, 6:4
**5th** [1] - 10:20

## 6

**6** [3] - 11:3, 11:5, 11:15
**61.01** [1] - 13:22
**63101** [1] - 3:8
**63116** [1] - 1:24
**63132** [1] - 3:5

## 7

**7** [1] - 12:1
**7/8/22** [1] - 8:21
**7405** [1] - 1:23

## 8

**8** [2] - 4:7, 12:20
**8th** [1] - 8:11

## 9

**9:37** [1] - 9:20

## A

**absolutely** [2] - 8:4, 12:8
**according** [1] - 13:1
**action** [6] - 5:12, 8:15, 11:18, 13:21, 15:10, 15:12
**admit** [1] - 8:6
**advises** [1] - 10:23
**afternoon** [2] - 2:11, 2:12
**afterwards** [1] - 5:4
**agree** [2] - 9:20, 10:8
**AGREED** [1] - 5:1
**ahead** [1] - 7:15
**Ahlheim** [1] - 3:7
**AND** [1] - 5:1
**appear** [5] - 6:21, 8:16, 8:17, 11:19, 12:14
**appearance** [1] - 6:2
**appeared** [1] - 5:24
**April** [1] - 9:19
**argued** [1] - 6:16
**asserted** [2] - 7:22, 8:5
**attached** [1] - 4:8
**attorney** [4] - 6:21, 11:1, 15:9, 15:11
**attorneys** [1] - 7:11
**authority** [3] - 5:20,

6:3, 13:8
**authorize** [1] - 12:9
**authorizes** [1] - 8:4
**authorizing** [1] - 6:3
**available** [1] - 7:6
**AVENUE** [1] - 1:23

## B

**based** [2] - 13:9, 13:13
**behalf** [1] - 6:21
**BEHALF** [1] - 1:17
**between** [5] - 2:11, 5:2, 7:11, 9:13, 9:17
**beyond** [1] - 9:10
**Brandon** [12] - 3:3, 5:10, 6:8, 10:18, 10:20, 11:4, 11:14, 11:16, 12:2, 12:5, 12:21, 12:23
**BUMETER** [3] - 1:4, 2:3, 2:18
**Bumeter** [1] - 5:13
**BY** [1] - 5:9

## C

**cannot** [2] - 9:20, 10:7
**Cary** [1] - 3:7
**case** [4] - 5:17, 8:3, 12:7, 12:9
**Casenet** [1] - 8:18
**CC00360** [3] - 1:6, 2:5, 5:17
**CCR** [3] - 3:13, 3:13, 15:15
**cease** [1] - 6:24
**certain** [1] - 2:16
**Certificate** [1] - 15:1
**certificate** [4] - 11:20, 11:25, 12:15, 12:18
**Certified** [7] - 2:13, 2:15, 5:3, 15:1, 15:4, 15:5, 15:15
**certify** [2] - 15:6, 15:9
**chain** [2] - 7:10, 9:12
**Childress** [1] - 3:7
**CIRCUIT** [2] - 1:1, 2:1
**Circuit** [2] - 2:17, 8:12
**Civil** [2] - 5:16, 13:22
**client** [11] - 8:1, 10:16, 10:24, 11:17, 12:6, 12:11, 12:14, 12:16, 13:4, 13:6, 13:20
**clients** [3] - 9:21, 10:8, 12:11
**CO** [3] - 1:7, 2:6, 2:19
**Company** [1] - 8:15
**compel** [1] - 11:1
**complete** [1] - 13:12

**complied** [1] - 7:21
**conduct** [1] - 10:22
**conducted** [3] - 7:25, 12:7, 13:8
**context** [1] - 9:11
**continue** [3] - 7:18, 10:5, 12:18
**continued** [1] - 12:5
**continuing** [3] - 7:16, 11:7, 11:12
**control** [1] - 10:25
**conversation** [1] - 12:13
**copy** [2] - 13:24, 14:1
**corporate** [5] - 5:15, 6:6, 8:14, 9:22, 11:22
**correct** [1] - 12:10
**correspondence** [1] - 9:12
**correspondences** [1] - 7:3
**counsel** [20] - 5:2, 5:20, 5:25, 7:9, 9:7, 9:13, 9:17, 9:19, 10:15, 10:18, 10:19, 11:4, 12:2, 12:3, 12:21, 12:23, 15:9, 15:11
**COUNTY** [3] - 1:1, 2:1, 15:3
**County** [3] - 2:17, 5:17, 8:12
**court** [1] - 7:10
**COURT** [2] - 1:1, 2:1
**Court** [8] - 2:13, 2:17, 5:3, 7:6, 8:12, 15:1, 15:4, 15:15
**CSR** [1] - 3:13

## D

**DANIELS** [2] - 1:23, 2:13
**Daniels** [4] - 3:13, 5:3, 15:4, 15:15
**date** [3] - 7:6, 8:17, 10:19
**dated** [6] - 7:13, 9:8, 9:19, 11:5, 11:15, 12:22
**dates** [3] - 10:11, 10:15, 11:2
**Dawn** [1] - 9:21
**days** [1] - 8:21
**defendant** [2] - 6:7, 9:9
**Defendant's** [2] - 6:25, 12:1
**defendant's** [4] - 5:20,

9:3, 9:19, 13:20
**Defendants** [5] - 1:9, 2:8, 2:20, 3:6, 5:2
**defendants** [6] - 5:23, 6:6, 6:21, 6:22, 10:13, 11:23
**defense** [6] - 9:7, 10:15, 10:18, 11:4, 12:2, 12:21
**denied** [2] - 10:12, 10:14
**deponent** [1] - 5:25
**deposed** [2] - 11:18, 12:12
**deposition** [24] - 5:14, 5:21, 6:4, 6:5, 6:15, 6:23, 6:24, 7:12, 7:20, 8:1, 8:10, 8:13, 8:20, 9:1, 9:6, 10:6, 10:22, 11:1, 11:19, 11:22, 12:17, 12:25, 13:1, 15:10
**deposition's** [1] - 6:2
**depositions** [3] - 7:25, 12:6, 13:7
**describe** [1] - 8:8
**despite** [2] - 12:7, 13:6
**Discovery** [1] - 13:6
**discussed** [2] - 8:25, 12:15
**dismiss** [2] - 10:9, 10:13
**document** [1] - 11:12
**documented** [1] - 7:20
**documents** [2] - 9:3, 9:5
**due** [1] - 12:5

## E

**eight** [1] - 8:6
**email** [9] - 7:10, 9:7, 9:12, 9:18, 10:17, 11:3, 11:14, 12:1, 12:20
**emails** [1] - 9:10
**employed** [2] - 15:9, 15:11
**employee** [1] - 15:11
**ERIC** [3] - 1:4, 2:3, 2:18
**Eric** [1] - 5:13
**ESTATES** [3] - 1:8, 2:7, 2:20
**Estates** [2] - 5:24, 6:22
**evidenced** [1] - 6:7
**exactly** [2] - 8:19, 10:4
**Executive** [1] - 3:4

exhibit [3] - 9:5, 10:5, 10:7
EXHIBIT [1] - 4:6
Exhibit [10] - 7:9, 8:9, 8:18, 8:24, 9:7, 10:17, 11:3, 12:1, 12:20
exhibits [3] - 8:7, 9:24, 9:25
EXHIBITS [1] - 4:5
Exhibits [2] - 4:8, 9:10
exists [1] - 12:8
extent [3] - 9:11, 9:24, 11:8

**F**

facts [1] - 6:5
filed [3] - 7:2, 8:11, 8:21
financially [1] - 15:11
findings [1] - 7:4
fine [1] - 14:1
firm [1] - 5:11
first [3] - 6:15, 8:9, 12:8
forth [2] - 6:25, 7:23
forward [2] - 6:24, 9:14
full [1] - 9:12

**G**

given [1] - 5:20

**H**

happy [1] - 10:10
heard [2] - 10:12, 10:14
hearing [4] - 7:5, 10:9, 10:11, 10:12
HEREBY [1] - 5:1
hereby [1] - 15:6
hereto [1] - 15:11
hours [1] - 2:11

**I**

identified [1] - 8:2
identifies [1] - 8:20
IL [1] - 3:13
IL-CSR [1] - 3:13
Illinois [3] - 2:16, 5:3, 15:6
IN [3] - 1:1, 2:1, 15:13
INC [3] - 1:7, 2:7, 2:19
INDEX [2] - 4:1, 4:5
indicative [1] - 6:2
intend [1] - 11:16

intention [1] - 13:19
interested [1] - 15:11
IS [1] - 5:1
IT [1] - 5:1
Izsak [2] - 3:4, 5:11

**J**

JENNIFER [3] - 1:4, 2:3, 2:18
Jennifer [1] - 5:12
July [15] - 1:18, 2:10, 5:19, 7:2, 7:7, 7:13, 8:10, 8:11, 10:19, 11:5, 11:15, 12:3, 12:22, 15:6, 15:13

**K**

kelly [1] - 3:13
KELLY [3] - 1:23, 2:13, 15:4
Kelly [3] - 5:3, 14:2, 15:15
Klar [16] - 3:3, 3:4, 4:3, 5:10, 5:11, 7:12, 7:15, 10:18, 10:20, 11:4, 11:14, 11:16, 12:2, 12:5, 12:21, 12:23
KLAR [9] - 5:9, 6:12, 7:17, 9:15, 10:2, 10:4, 11:10, 13:17, 14:2

**L**

L.P [3] - 1:8, 2:7, 2:20
last [1] - 7:11
law [9] - 5:11, 7:21, 8:2, 8:3, 8:23, 10:21, 12:9, 13:1, 13:9
legal [2] - 6:3, 13:8
link [1] - 12:24
list [1] - 8:25
LLC [1] - 3:4
LOUIS [2] - 1:24, 15:3
Louis [2] - 3:5, 3:8

**M**

MACO [3] - 1:7, 2:6, 2:19
Maco [5] - 5:14, 5:23, 6:22, 8:14, 11:24
MANAGEMENT [3] - 1:7, 2:6, 2:19
Management [2] - 5:23, 8:15
Management's [1] -

5:15
Marie [11] - 3:7, 6:11, 6:20, 9:8, 9:18, 10:14, 10:19, 11:14, 11:16, 12:3, 12:21
Marked [1] - 4:7
Market [1] - 3:8
mean [1] - 9:21
Meier [1] - 5:13
MEIER [3] - 1:4, 2:3, 2:18
mentioned [1] - 8:19
message [1] - 7:11
mind [1] - 6:9
MISSOURI [3] - 1:2, 2:1, 15:2
Missouri [19] - 2:14, 2:18, 3:5, 3:8, 5:3, 5:16, 5:18, 6:4, 7:21, 8:2, 8:23, 10:21, 12:9, 13:1, 13:6, 13:9, 13:21, 15:5, 15:16
MO [2] - 1:24, 3:13
MO-CCR [1] - 3:13
Motion [1] - 6:25
motion [3] - 7:5, 10:8, 10:14
move [4] - 7:17, 9:14, 10:13, 11:1
MR [9] - 5:9, 6:12, 7:17, 9:15, 10:2, 10:4, 11:10, 13:17, 14:2
MS [8] - 6:8, 6:14, 9:9, 9:23, 10:3, 11:6, 13:15, 13:25
must [1] - 7:25

**N**

name [2] - 5:10, 6:20
named [1] - 13:21
next [2] - 7:6, 7:7
NO [3] - 4:2, 4:6
nonappearance [5] - 11:21, 11:25, 12:15, 12:19, 13:20
Nonappearance [2] - 5:2, 15:6
NONAPPEARANCE [3] - 1:17, 2:10, 5:8
none [3] - 9:1, 9:2, 13:8
note [2] - 5:22, 7:8
noted [1] - 7:3
nothing [2] - 8:4, 13:10
notice [3] - 6:3, 8:10, 8:20

noticed [5] - 5:21, 8:13, 12:7, 12:17, 12:25
nowhere [1] - 8:2
number [1] - 5:17

**O**

object [5] - 6:15, 6:17, 6:18, 9:9, 9:15
Objection [2] - 9:23, 10:3
objection [7] - 6:9, 6:16, 7:1, 7:16, 7:18, 11:7, 11:12
objectionable [1] - 9:2
objections [1] - 11:13
obtain [5] - 6:5, 11:20, 11:25, 12:14, 12:18
OF [11] - 1:1, 1:2, 1:17, 1:17, 2:1, 2:1, 2:10, 4:5, 5:8, 15:2, 15:3
offer [1] - 13:14
Olivette [1] - 3:4
ON [1] - 1:17
Order [1] - 7:1
order [1] - 13:23
own [1] - 8:1

**P**

p.m [11] - 5:21, 7:13, 8:11, 9:20, 10:20, 11:5, 11:15, 12:4, 12:22
PAGE [2] - 4:2, 4:6
paraphrase [1] - 10:1
paraphrased [2] - 11:8, 11:11
pardon [3] - 10:24, 12:4, 12:13
Parkway [1] - 3:4
parties [2] - 15:10, 15:11
party [3] - 8:15, 11:18, 13:21
PDF [1] - 13:25
pending [2] - 2:16, 5:17
per [1] - 8:11
period [1] - 8:22
permits [1] - 10:22
petition [1] - 10:13
Plaintiff's [6] - 8:9, 8:18, 8:24, 10:17, 11:3, 12:20
plaintiff's [7] - 9:1, 10:25, 11:4, 12:2, 13:4, 13:7, 13:19

Plaintiffs [5] - 1:5, 2:4, 2:19, 3:2, 5:2
plaintiffs [4] - 5:12, 10:18, 10:22, 12:24
PLAINTIFFS [1] - 1:17
pleadings [1] - 9:4
pointed [1] - 9:4
portion [1] - 9:16
portions [1] - 7:18
position [2] - 8:4, 9:1
precedent [2] - 8:3, 13:9
predominant [1] - 7:24
present [5] - 3:12, 5:24, 10:24, 12:16, 13:3
previous [1] - 7:3
previously [1] - 7:9
printoff [1] - 8:18
Procedure [2] - 5:16, 13:22
proceed [3] - 5:20, 6:10, 7:15
produce [9] - 7:19, 9:21, 10:8, 10:15, 10:24, 11:17, 12:6, 12:10, 13:5
produced [3] - 6:7, 11:24, 13:4
proper [2] - 6:3, 9:6
properly [3] - 8:13, 12:17, 12:25
protection [1] - 9:17
Protective [1] - 7:1
provided [3] - 7:6, 7:9, 12:24
providing [1] - 11:2
Pudlowsi [1] - 6:20
Pudlowski [17] - 3:7, 7:22, 8:5, 9:8, 9:18, 10:14, 10:19, 10:23, 11:15, 12:3, 12:16, 12:21, 12:24, 13:3, 13:11, 13:13, 13:24
PUDLOWSKI [8] - 6:8, 6:14, 9:9, 9:23, 10:3, 11:6, 13:15, 13:25
Pudlowski's [1] - 6:1
purpose [2] - 6:5, 9:13
pursuant [2] - 5:15, 13:21
put [2] - 6:9, 13:2

**R**

RAY [1] - 1:23
read [1] - 11:11
reason [1] - 7:24
reasons [2] - 6:25,

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

7:23
reassert [1] - 9:16
received [1] - 7:14
Record [2] - 5:2, 15:6
RECORD [3] - 1:17, 2:10, 5:8
record [6] - 5:10, 6:9, 8:7, 11:7, 13:2, 13:12
records [1] - 11:8
reference [1] - 7:8
reflects [1] - 8:19
refusal [1] - 12:5
refuses [1] - 13:5
regarding [1] - 7:12
related [1] - 15:9
relative [1] - 15:10
reporter [1] - 7:10
REPORTER [1] - 13:23
Reporter [8] - 2:13, 2:15, 3:13, 5:3, 15:1, 15:5, 15:5, 15:15
represent [1] - 5:12
representative [6] - 5:15, 5:22, 6:6, 8:14, 9:22, 11:23
requested [4] - 6:23, 8:22, 9:3, 9:5
requesting [1] - 9:3
requests [1] - 13:11
require [1] - 13:7
required [2] - 8:17, 11:13
requires [1] - 13:10
reserve [1] - 13:13
response [1] - 7:14
result [2] - 5:25, 8:16
roll [1] - 6:19
Rule [4] - 5:16, 6:4, 10:21, 13:21
Rules [2] - 5:16, 13:6

### S

sanctions [1] - 13:19
scheduled [1] - 8:16
seek [1] - 13:19
sent [2] - 7:12, 12:3
set [3] - 6:25, 7:5, 8:10
seven [1] - 8:21
Shorthand [2] - 2:15, 15:5
shorthand [1] - 5:3
shows [1] - 7:11
Sims [4] - 9:21, 11:18, 11:19, 11:23
someone [1] - 10:25
speaking [4] - 7:17, 9:16, 9:24, 11:13

speaks [1] - 10:1
specifically [2] - 10:7, 10:21
SS [1] - 15:2
ST [2] - 1:24, 15:3
St [2] - 3:5, 3:8
start [1] - 4:7
state [4] - 10:10, 11:7, 15:5, 15:6
STATE [3] - 1:2, 2:1, 15:2
State [4] - 2:14, 2:16, 2:17, 15:16
statements [2] - 13:16, 13:18
states [6] - 8:14, 10:5, 10:7, 10:20, 11:16, 12:5
statutes [3] - 8:3, 12:9, 13:10
Stenger [2] - 3:4, 5:11
steps [1] - 7:19
STIPULATED [1] - 5:1
straight [1] - 11:11
Street [1] - 3:8
strike [1] - 7:17
SUMMERSVILLE [3] - 1:8, 2:7, 2:20
Summersville [3] - 5:23, 6:22, 11:24
supply [1] - 9:12

### T

TAKEN [1] - 1:17
TEXAS [2] - 1:1, 2:1
Texas [3] - 2:17, 5:17, 8:12
THE [4] - 1:1, 1:17, 2:1, 13:23
themselves [3] - 9:25, 10:1, 11:9
Thursday [2] - 7:13, 12:22
timestamp [1] - 8:12
today [1] - 8:22
topic [1] - 8:25
topics [2] - 7:2, 8:25
transcribed [1] - 5:4
transcript [1] - 4:8
Tuesday [2] - 10:19, 12:3
two [1] - 7:11
typewriting [1] - 5:4

### U

underway [1] - 6:15

### V

variety [1] - 7:22
vs [2] - 1:6, 2:5

### W

Wednesday [3] - 9:19, 11:5, 11:15
week [1] - 7:7
whatsoever [1] - 9:17
wherein [1] - 2:18
WHEREOF [1] - 15:13
witness [1] - 11:17
WITNESS [1] - 15:13
witnesses [1] - 12:11
wording [1] - 9:4
works [1] - 6:11
written [1] - 9:25

### Y

yesterday [1] - 12:23

### Z

zero [1] - 12:8
Zoom [3] - 2:12, 12:24, 15:6

PLAINTIFF'S
EXHIBIT
1

EXHIBIT
2

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER, )
)
and )
)
ERIC MEIER, )  Cause No.: 21TE-CC00360
)
Plaintiffs, )
v. )
)
MACO MANAGEMENT CO., INC., and )
)
SUMMERSVILLE ESTATES, L.P. )
)
Defendants. )

## NOTICE OF DEPOSITION

TO:            Counsel of Record

DATE & TIME:   July 15, 2022, at 1:00 P.M.

DEPONENT(S):   Corporate Representative of Maco Management Co., Inc.

LOCATION:      Zoom link to be provided

REPORTER:      Kelly Daniels, CCR

PLEASE TAKE NOTICE that at the above-stated date, time and place, the deposition of a Corporate Representative of Maco Management Co., Inc., will be taken on oral examination, via Zoom, before a court reporter, pursuant to Missouri Supreme Court Rule 57.03(a) Rule 57.03(b)(4), the topics upon which inquiry will be made are attached hereto as **Exhibit A**. Said deposition will continue on a day to day basis until the same is completed and is being taken for any and all purposes allowed by law, including use as evidence at trial. All parties and the court reporter will attend the deposition remotely.

The deposition will be conducted remotely using Kelly Daniels Court Reporter reporting services. In addition, such court reporter will provide a Zoom platform for the taking of the deposition which will be provided at a later date and time. A licensed and qualified court reporter will administer the oath to the witness remotely and will record the testimony by audio and stenographic means.

Dated this 8th day of July 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
Attorney for Plaintiffs
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of July 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.

CC: **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
Kelly J. Daniels, CCR
7405 Ray Avenue
St. Louis, MO 63116

/s/ Brandon J. Klar____

Electronically Filed - Texas - July 27, 2022 - 11:01 AM



## Your Missouri Courts

Search for Cases by: Select S

Judicial Links | eFiling | Help | Contact Us | Print                     Logon

21TE-CC00360 - JENNIFER SUMETER ET AL V MACO MANAGEMENT COM ET AL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

Sort Date Entries:  ◉ Descending  ○ Ascending       Display Options: All Entries  ⌄

**07/14/2022**   **Objections Filed**

Defendant Macos Objections to Corporate Representative Topics; Electronic Filing Certificate of Service.

**Filed By:** MARIE FRANCES WEISENBERGER

**On Behalf Of:** MACO MANAGEMENT COMPANY, INC.

**Memo of Law in Suppt of Filed**

Memorandum in Support and Opposition; Exhibit 1; Electronic Filing Certificate of Service.

**Filed By:** BRANDON JACOB KLAR

**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Motion Filed**

Defendants Motion for Protective Order and Motion to Quash Corporate Representative Deposition Notice; Exhibit A; Electronic Filing Certificate of Service.

**Filed By:** MARIE FRANCES WEISENBERGER

**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**07/12/2022**   **Judge/Clerk - Note**

By computer: https://mocourts.webex.com/meet/john.beger Join by phone +1-408-418-9388 United States Toll Access code: 960 524 065

**Notice of Hearing Filed**

NOH on Plfs Mtn for Relief; Electronic Filing Certificate of Service.

**Filed By:** BRANDON JACOB KLAR

**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Motion Hearing Scheduled**

**Scheduled For:** 07/19/2022;  8:59 AM ;  JOHN D BEGER;  Texas

**Notice of Hearing Filed**

Notice of Hearing; Electronic Filing Certificate of Service.

**Filed By:** MARIE FRANCES WEISENBERGER

**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**07/08/2022**   **Notice to Take Deposition**

NOD of Corp Rep of Maco Managment Co; Ex A; Electronic Filing Certificate of Service.

**Filed By:** BRANDON JACOB KLAR

**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Notice**

Notice of Cancellation of Deposition of Rebecca Johnson; Electronic Filing Certificate of Service.

**Filed By:** MARIE FRANCES WEISENBERGER

**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.



PLAINTIFF'S
EXHIBIT
3

### Exhibit A

### TOPICS FOR MACO MANAGEMENT CO., INC. CORPORATE REPRESENTATIVE DEPOSITION

1. All facts relating to the performance of property manager ("Property Manager") duties and responsibilities at Summersville Estates since September 2018.

2. All facts relating to the relationships between Summersville Estates' Property Manager and its tenants since September 2018.

3. Specific details regarding the performance of all inspections and the completion of all inspection reports at Summersville Estates since September 2018.

4. Specific details regarding the physical state and operative condition of all smoke detectors/alarms at Summersville Estates since September 2018.

5. All facts relating to the Property Manager of Summersville Estates' compliance with the Maco Management Employee Handbook since September 2018.

6. All facts relating to the Property Manager of Summersville Estates' compliance with the Maco Management Site Manager & Maintenance Personnel Duties and Responsibilities since September 2018.

7. Specific details regarding the tenancy of Ms. Robin Fischer since September 2018, including, but not limited to, all conversations Ms. Fischer had with the Property Manager at Summersville Estates.

8. All facts relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

9. All facts relating to the use of cigarettes in apartment units at Summersville Estates since September 2018.

10. Specific details regarding the relationship maintained between the Property Manager of Summersville Estates and members of the Summersville Police Department.

11. All facts supporting any affirmative defenses asserted by Defendants Maco Management Co., Inc. and Summersville Estates, L.P.

12. All facts relating to the resume and past employment history of the Property Manager hired by Summersville Estates in September 2018.

EXHIBIT A – STATE COURT FILE

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

Electronically Filed - Texas - July 08, 2022 - 03:52 PM

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

Electronically Filed - Texas - July 08, 2022 - 03:52 PM

13. All facts relating to any prior legal action taken against the Property Manager hired by Summersville Estates in September 2018.

14. Any written or oral communications between Plaintiffs or their identified witnesses and Defendant or its agents/representatives regarding facts underlying the allegations contained in Plaintiffs' First Amended Petition or Defendant's Answer and Affirmative Defenses.

**Law Clerk**



PLAINTIFF'S EXHIBIT 4

| | |
|---|---|
| **From:** | Marie Pudlowski <MPudlowski@jchildresslaw.com> |
| **Sent:** | Wednesday, April 20, 2022 9:37 AM |
| **To:** | Brandon J. Klar |
| **Cc:** | Dave Ahlheim |
| **Subject:** | RE: 21TE-CC00360 |

Brandon:

I appreciate you wanting to keep this case moving. However, I cannot agree to produce my clients until after the motion to dismiss hearing. My motion is seeking clarity of the claims alleged so I can prepare and defend my clients during future discovery (including depositions). Obviously, the Judge may disagree with me, but I need his decision. I am happy to get dates for after the hearing. Are you wanting virtual or in-person?

Also, we are wanting to depose both Plaintiffs as well as Susan Austin, Rebecca Johnson, and Bridget Kittner. Please provide dates and your preferred location for these depositions. I will be out of state the weeks of May 30 and June 6 so will not be able to make those weeks work.

Best,

Childress Ahlheim Cary LLC
Attorneys at Law

**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct:**
**314.584.4568**
www.jchildresslaw.com | mpudlowski@jchildresslaw.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Tuesday, April 19, 2022 12:50 PM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Subject:** RE: 21TE-CC00360

Marie:

While we are waiting for the next law day, I would like to keep the ball rolling on discovery and get some depositions scheduled. I would like to depose Dawn Sims and Karen Murphy sometime in the month of May; if you could please provide me their exclusionary dates and/or dates that work best for them both, that would be great.

Thank you.
Brandon

1

## Brandon J. Klar

PLAINTIFF'S
EXHIBIT
5

**From:** Brandon J. Klar
**Sent:** Tuesday, July 5, 2022 4:26 PM
**To:** Marie Pudlowski
**Cc:** Dave Ahlheim
**Subject:** RE: Bumeter et al. v. Maco et al.

Marie:

While I understand the position you are taking, I disagree with it. As Ms. Sims is a party to this action, the Plaintiffs have every right to take her deposition prior to the depositions of witnesses. Moreover, Rule 56.01(d) specifically permits Plaintiffs to conduct Ms. Sims' deposition prior to the depositions you seek. As such, please be advised that I will move to compel Ms. Sims' deposition prior to providing any further dates.

Thank you.

Brandon

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Tuesday, July 5, 2022 3:12 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

I received through eFiling a notice of deposition for my client's employee Dawn Sims to take place on July 11. Please note we will not be appearing or producing Ms. Sims on that day. I will get a motion to quash on file, but I wanted to give you a heads up.

First, I am not available on July 11, having two other depositions previously scheduled on that date and time.

Second, as relayed below, I cannot agree to the order of depositions you have proposed. Defendants are entitled to understand the claims to prepare their witnesses and their defense. Given the broad pleadings and the inability to serve written interrogatories on the non-parties who purportedly will testify to wrongdoing by my client, depositions are my only mechanism for discovering the allegations against my client. My intent is not to delay the discovery process or prevent you from obtaining Sim's testimony. My intent is to ensure I understand the claims so I can properly advise and prepare my clients accordingly.

In a continued effort of cooperation, please note that I would be happy to provide you dates and produce Ms. Sims for a deposition once we get the below requested depositions finalized and completed. My July is rather full, but I may be able to squeeze in some additional depositions (if your people are available) to allow us to get to Sims' deposition in early August.

Let me know your position and dates for you people.

Best,

1

PLAINTIFF'S EXHIBIT
tabbies
6

**Law Clerk**

| | |
|---|---|
| **From:** | Brandon J. Klar |
| **Sent:** | Wednesday, July 6, 2022 4:09 PM |
| **To:** | 'Marie Pudlowski' |
| **Cc:** | Dave Ahlheim |
| **Subject:** | RE: Bumeter et al. v. Maco et al. |

Marie:

I do not intend to produce another witness until your client has been deposed. Ms. Sims is a party to this action. If Ms. Sims does not appear at deposition on the 11th, I will obtain a Certificate of Nonappearance.

If you would like to discuss this, I am available. Thank you.

Brandon

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Wednesday, July 6, 2022 3:52 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

Please advise whether you intend to produce Ms. Johnson for her deposition previously scheduled and noticed for July 15 in Springfield.

Also, let me know if your position changes upon reviewing my pleadings or if further discussion might be beneficial in resolving these discovery disputes outside of court involvement.

Thanks,



Childress Ahlheim Cary LLC
Attorneys at law

**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct: 314.584.4568**
www.jchildresslaw.com | mpudlowski@jchildresslaw.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

## Brandon J. Klar

PLAINTIFF'S EXHIBIT 7

| | |
|---|---|
| **From:** | Brandon J. Klar |
| **Sent:** | Tuesday, July 12, 2022 2:20 PM |
| **To:** | Marie Pudlowski |
| **Cc:** | Dave Ahlheim |
| **Subject:** | RE: Bumeter et al. v. Maco et al. |

Marie:

Thanks. Due to your continued refusal to produce your client until all depositions in this case are conducted (despite her being noticed first), and because there exists absolutely zero Missouri caselaw or statutes which authorize the same, you are correct that I will not produce my clients or witnesses until your client has been deposed. As advised, it is my intent to appear at the properly noticed deposition on Friday. Should you and your client not appear, I will obtain a Certificate of Nonappearance as we discussed.

Further to our conversation, I will notice my Motion for Relief at the same date and time as your Motions. That way we can hopefully knock everything out at once. Thank you again, and I hope you have a good rest of your day.

Best,
Brandon Klar

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Tuesday, July 12, 2022 2:12 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

Despite it not being productive, I appreciate you taking my call today to discuss our discovery disputes.

From our conversation, it is my understanding you are continuing to refuse to provide me dates for the two plaintiffs and three facts witnesses with alleged testimony of wrongdoing by my client. You will do nothing until we produce employee Dawn Sims for deposition. And, you tailored the corporate representative deposition set for July 11 in a fashion that you believe requires us to produce Sims as the corporate representative.

As indicated, I plan to get a motion to quash and motion for protective order on file. Neither I nor my client will be appearing for the deposition on Friday. The Judge is available for a hearing on my motions on July 19 at 9:00AM. You indicated availability for such hearing so I will notice up shortly. Once we obtain some Court guidance, I hope we can procced in a more cooperative fashion moving forward.



Childress Ahlheim Cary LLC
Attorneys at Law

**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct: 314.584.4568**

1

Electronically Filed - Texas - July 27, 2022 - 11:01 AM

**Brandon J. Klar**

PLAINTIFF'S
EXHIBIT
8
tabbies

| | |
|---|---|
| **From:** | Brandon J. Klar |
| **Sent:** | Thursday, July 14, 2022 11:35 AM |
| **To:** | Marie Pudlowski |
| **Cc:** | Dave Ahlheim |
| **Subject:** | FW: Zoom for Friday at one Bumeter case- corp rep |

Marie:

The zoom link for tomorrow's deposition is below. I understand you do not intend to appear, but should you change your mind, please see the below Link, Meeting ID and Passcode. Thanks much.

Brandon Klar

**From:** Kelly Daniels <kjdaniels12@yahoo.com>
**Sent:** Thursday, July 14, 2022 10:01 AM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Subject:** Zoom for Friday at one Bumeter case- corp rep

Kelly Daniels is inviting you to a scheduled Zoom meeting.

Topic: My Meeting
Time: Jul 15, 2022 01:00 PM Central Time (US and Canada)

Join Zoom Meeting
https://us02web.zoom.us/j/87442698545?pwd=ek5KQ0R4aHJSZngzOUcvM0t0V25YQT09

Meeting ID: 874 4269 8545
Passcode: 247186
One tap mobile
+16469313860,,87442698545#,,,,*247186# US
+13017158592,,87442698545#,,,,*247186# US (Washington DC)

Dial by your location
    +1 646 931 3860 US
    +1 301 715 8592 US (Washington DC)
    +1 312 626 6799 US (Chicago)
    +1 646 876 9923 US (New York)
    +1 253 215 8782 US (Tacoma)
    +1 346 248 7799 US (Houston)
    +1 408 638 0968 US (San Jose)
    +1 669 444 9171 US
    +1 669 900 6833 US (San Jose)
Meeting ID: 874 4269 8545
Passcode: 247186
Find your local number: https://us02web.zoom.us/u/kc0fwGskhC

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )       Cause No.      21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

**JOINT STIPULATION AND PROTECTIVE ORDER**

WHEREAS, discovery in the above-entitled action may involve the production of financial, commercial, trade, personal identifiers, and other information which is considered to be sensitive, confidential, proprietary, and/or protected by privilege (including but not limited to non-party tenant files), for the purposes of expediting discovery only, and for no other reason, the parties have stipulated, and the court HEREBY ORDERS THAT:

1.      Any party may designate documents, interrogatory responses, responses to requests for admissions, exhibits, testimony, transcripts, and other information (and/or copies thereof) produced, provided by, or provided on behalf of that party (or anyone acting on behalf of that party) and all information derived therefrom and/or contained therein, as Confidential Information within the meaning of this Stipulation and Protective Order.

2.      Documents, interrogatory responses, responses to requests for admissions, exhibits, testimony, transcripts, and other physical information shall be designated as Confidential Information by marking it "Confidential" at or prior to the time the physical information to be so designated is produced or provided, or as soon thereafter as may be practicable.

3.      A deposition and/or the transcript thereof shall be designated as Confidential

Information by orally so declaring during the taking of a deposition or by notifying all other parties to this action of such designation within twenty (20) days after the receipt of the transcript of such deposition. If only a portion of a deposition is so designated, the transcript of that portion shall be separately bound.

4.      Unless otherwise ordered by the Court in this action, all Confidential Information will be held by the attorney for the receiving party solely for use in connection with, and shall be used solely in connection with, this action.

5.      Except with the prior written consent of the parties, or upon prior order of this Court obtained upon notice to the parties, or as otherwise provided in this Stipulation and Protective Order, Confidential Information shall not be disclosed to any person other than:

    a.      A party;

    b.      Counsel for the parties to this litigation, including house counsel and co-counsel;

    c.      Secretaries, legal assistants, and other employees or agents of such counsel assigned to assist such counsel in this litigation;

    d.      Expert witnesses, consultants, and their employees, retained for the prosecution or defense of this litigation;

    e.      Deposition reporters engaged for any deposition at which Confidential Information is provided, and;

    f.      The Court, if filed pursuant to Paragraph 12 of this Stipulation and Protective Order.

6.      Any person who is given access to Confidential Information pursuant to subparagraphs 5(a), 5(d) or 5(e) above shall, prior thereto, be provided with a copy of this Stipulation and Protective Order and such order shall be explained to them by an attorney. Such person(s) shall then, after such explanation and prior to having access to any such Confidential Information, agree not to disclose such information or to use it for any purpose other than the prosecution and defense

2

of this action, and shall execute a Written Representation and Assurance of Confidentiality in the form annexed hereto. Counsel for each party shall be supplied with a copy of each Written Representation and Assurance of Confidentiality, at or near the time of the execution thereof, except those executed by expert witnesses, consultants, and their employees. Expert witnesses, consultants and their employees shall be governed by this Paragraph 6 and other terms of this Stipulation and Protective Order (including the requirement that they execute such Written Assurances prior to having access to such Confidential Information) but copies of Written Assurances executed by such persons need not be provided to other parties until such persons are designated as witnesses for trial or until the final resolution of this action, which first occurs.

7. In the event that counsel for any party determines to lodge, file or otherwise submit to this Court (a) any Confidential Information or information derived therefrom, or (b) any papers containing or making reference to such information, such documents shall be filed only in sealed envelopes on which shall be endorsed the caption of this action and a statement substantially in the following form:

<div align="center">

**<u>CONFIDENTIAL</u>**

</div>

> This envelope contains documents that are subject to an Order of this Court governing discovery and the use of confidential discovery material. Pursuant to such Order, this envelope shall not be opened, nor the contents thereof displayed or revealed except pursuant to the terms of this Order. Violation of such Order may be regarded as contempt of the Court.

8. Nothing herein shall restrict the use or disclosure by a party of documents or information contained by such party independently of discovery proceedings herein. Further, unless otherwise agreed between counsel in writing, no party shall have the right to designate as Confidential Information any discovery material produced by an adverse party. A party who disagrees with another party's confidential designation must nevertheless abide by the same until the

<div align="center">

3

</div>

matter is resolved by agreement or by order of the Court.

9. Entering into, agreeing to, and/or complying with the terms of this Stipulation and Protective Order shall not prejudice in any way the right of a party to: (i) seek a judicial determination of whether particular discovery material should be produced or, if produced, whether it should be subject to the terms of this Stipulation and Protective Order; (ii) interpose an objection to a request for discovery on any ground; (iii) seek either from the Court, or through negotiations between counsel, protection greater than that contained herein; or (iv) seek relief on notice from any provision of this Stipulation and Protective Order, either generally or as to any particular discovery material.

10. The provisions of this Stipulation and Protective Order shall remain in full force and effect after the termination of this action.

11. All documents and/or deposition transcripts designated by any producing party as Confidential and all copies thereof shall be delivered to such counsel or certify the destruction of such documents within thirty (30) days after entry of final judgment and exhaustion and/or expiration of all rights of appellate review, settlement, or other final termination of this action. Additionally, counsel for all parties and any persons counsel has provided such Confidential Information will send a letter to the producing party within thirty (30) days after entry of final judgment and exhaustion and/or expiration of all rights of appellate review, settlement, or other final termination of this action.

12. Confidential Information may be used in connection with the deposition of any witness. Whether Confidential Information is to be so used, the deponent must be informed, on the record, that the use of such Confidential Information is subject to the terms of this Stipulation and Protective Order.

13. Nothing herein shall be deemed to constitute a waiver of any applicable privilege.

14. This agreement and order shall in no way be construed to make confidential matters

4

EXHIBIT A - STATE COURT FILE

which are (a) already known to the other party, (b) a matter of public record, or (c) is subsequently

obtained from an independent non-confidential or non-privileged source.

**SO ORDERED.**

**Date:**_____

5

Electronically Filed - Texas - August 03, 2022 - 11:28 AM

## WRITTEN ASSURANCE OF CONFIDENTIALITY (Individual)

I, _____, acknowledge that I am about to receive Confidential Information and expressly certify that: I understand and agree that such Confidential Information is being provided to me pursuant to the terms and on the conditions of the Protective Order dated _____, in _____, Cause No. _____. I have been given a copy of and have read the Stipulation and Protective Order and agree to be bound by it; I agree that I will not disclose any Confidential Information, as defined in the Stipulation and Protective Order; to any persons or in any manner not specifically authorized by the Stipulation and Protective Order; I agree that I will not copy or use any Confidential Information except solely for the purpose of the case referenced above; and I agree that I will return all Confidential Information or certify the destruction of such information no later than thirty (30) days after the final termination of this action to the counsel or the party who provided such Confidential Information to me.

Dated: _____

_____
Signature

_____
Name (typed or printed)

Electronically Filed - Texas - August 03, 2022 - 11:28 AM

## WRITTEN ASSURANCE OF CONFIDENTIALITY
### (Corporation and Individual)

I, _____, on behalf of myself and_____, a _____ of _____ (the "Company") acknowledge that I am about to receive Confidential Information on behalf of myself and the Company and expressly certify that: I understand and agree that such Confidential Information is being provided to me pursuant to the terms and on the conditions of the Protective Order dated _____, in _____, Cause No. _____. I have been given a copy of and have read the Stipulation and Protective Order and I agree that I and the Company are and shall be bound by it; I agree that neither I nor the Company will disclose any Confidential Information, as defined in the Stipulation and Protective Order; to any persons or in any manner not specifically authorized by the Stipulation and Protective Order; I agree that neither I nor the Company shall copy or use any Confidential Information except solely for the purpose of the case referenced above; and I agree that I and the Company will return all Confidential Information or certify the destruction of such information no later than thirty (30) days after the final termination of this action to the counsel or the party who provided such Confidential Information to me and the Company.

Dated: _____

_____
("THE COMPANY")

By:_____

Title_____

_____
Signature

_____
(Name typed or printed)
In my individual capacity

7

Electronically Filed - Texas - August 05, 2022 - 10:22 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,              )
and ERIC MEIER,                )
                               )
    Plaintiffs,                )
                               )
v.                             )    Cause No.    21TE-CC00360
                               )
MACO MANAGEMENT CO., INC.,     )
and SUMMERSVILLE ESTATES, L.P.,)
                               )
    Defendants.                )

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFFS' MEMORANDUM IN SUPPORT FOR MOTION FOR RELIEF
FILED JULY 27, 2022**

COME NOW, Defendants Maco Management Co. Inc., and Summersville Estates, L.P., by and through undersigned counsel, and for Defendants' Response in Opposition to Plaintiffs' Memorandum in Support for Motion for Relief filed July 27, 2022 state as follows:

1. Plaintiffs cite no rule or Missouri caselaw recognizing a motion for relief. Defendants are aware of no such remedy in Missouri law.

2. To the extent the Court interprets this as a motion for sanctions, Missouri provides two, grounds for seeking and granting sanctions, Rule 55.03 related to bad faith and Rule 61.01 related to discovery failures. Each rule having its own conditions and interpreting caselaw setting forth the specific circumstances when sanctions are warranted.

3. Missouri courts encourage Judges to issue sanctions sparingly. S*ee State ex rel. Area 25 Trial Off. v. Clayton,* 628 S.W.3d 263, 267 (Mo. S.D. App. 2021); *E.K.H.-G. v. R.C.,* 613 S.W.3d 449, 454–55 (Mo. E.D. App. 2020).

4. Here, a dispute arose between Plaintiffs and Defendants regarding the sequence of discovery and depositions, resulting in numerous pleadings and notices being filed with the Court.

5.  Defendants incorporate the facts, arguments, pleadings, and associated exhibits previously filed as if stated herein, including Defendants' Response in Opposition to Motion for relief filed July 6, 2022; Defendants' Motion to Quash Sims Notice, or alternatively for Protective Order filed July 6, 2022; Defendants' Motion for Protective Order filed July 14, 2022, and Defendants' Objections to the Corpore representative Topics filed July 14, 2022.

6.  In advance of the deposition and upon Plaintiffs unilaterally setting a corporate representative deposition on Friday, July 8, 2022, Defendants, via email, phone call, and pleadings, informed Plaintiffs' counsel of their objections to the deposition.  See above cited pleadings for details.

7.  In advance of the deposition, Defendants timely filed a Motion for Protective Order.

8.  In advance of the deposition, Defendants obtained the Court's next available hearing date (2 business days after the scheduled deposition date) to allow argument and a Court decision regarding the dispute.

9.  In advance of the deposition, Defendants informed Plaintiffs' counsel of their position that *Kingsley v. Kingsley*, 716 S.W.2d 257, 260 (Mo. 1986) is not applicable in these circumstances as it involved a situation where the party filed a motion to quash **only**, not a motion for protective order.  *See* Exhibit A.  Defendants informed counsel of *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 928 (Mo. 1992) ("If the corporation believes the deposition should not go forth, its remedy is to file a motion for a protective order") and *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 609 (Mo. 2002) (holding the circuit court abused its discretion in not issuing a protective order over last-minute corporate representative depositions set by plaintiff's counsel).  *See* Exhibit A.  And, Defendants explained their intention not to produce a witness at the deposition given the protective order and these cases.

2

10. Despite the above, Plaintiffs' counsel chose to proceed with the deposition and incur the associated expenses, which Plaintiffs' counsel now seeks Defendants pay as a sanction.

11. Plaintiffs allege no conduct by Defendants that gives rise to a sanction under Rule 55.03 or Rule 61.01.

12. Defendants complied with Missouri rules by filing a Motion for Protective Order over a deposition Defendants found to be oppressive and burdensome.

13. Plaintiffs suffer no prejudice to their case by not being able to depose the corporate representative on the date set.

14. Therefore, for all the reasons set forth above, Defendants request the Court deny Plaintiffs' Memorandum in Support for Motion for Relief filed July 27, 2022.

WHEREFORE, Defendants pray this Court deny Plaintiffs' Memorandum in Support for Motion for Relief filed July 27, 2022, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 5th day of August 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/      MARIE F. PUDLOWSKI

3

**From:** Marie Pudlowski
**Sent:** Thursday, July 14, 2022 12:25 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Zoom for Friday at one Bumeter case- corp rep

Brandon:

Per your email and filed response, I take you do not believe the rules provide any remedy for the unilateral setting of depositions that are oppressive and result in undue burden. I take it you read *Kingsley v. Kingsley*, 716 S.W.2d 257, 260 (Mo. 1986) to require my appearance on Friday. Please note *Kingsley* involved a situation where the party filed a motion to quash **only**, not a motion for protective order. I have filed a motion for protective order.

This Missouri Supreme Court has set forth that a motion for protective order is the proper remedy when a party believes a deposition should not go forward. *See State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 928 (Mo. 1992) ("If the corporation believes the deposition should not go forth, its remedy is to file a motion for a protective order"); *see also State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 609 (Mo. 2002) (holding the circuit court abused its discretion in not issuing a protective order over last-minute corporate representative depositions set by plaintiff's counsel).

If you have a different case on point that contradicts these cases and my understanding of the law, I would ask you to share it so I can reconsider my position and appearance tomorrow.

Best,



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct: 314.584.4568**
**www.jchildresslaw.com | mpudlowski@jchildresslaw.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Thursday, July 14, 2022 11:35 AM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** FW: Zoom for Friday at one Bumeter case- corp rep

EXHIBIT A - STATE COURT FILE

EXHIBIT A

Marie:

The zoom link for tomorrow's deposition is below. I understand you do not intend to appear, but should you change your mind, please see the below Link, Meeting ID and Passcode. Thanks much.

Brandon Klar

**From:** Kelly Daniels <kjdaniels12@yahoo.com>
**Sent:** Thursday, July 14, 2022 10:01 AM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Subject:** Zoom for Friday at one Bumeter case- corp rep

Kelly Daniels is inviting you to a scheduled Zoom meeting.

Topic: My Meeting
Time: Jul 15, 2022 01:00 PM Central Time (US and Canada)

Join Zoom Meeting
https://us02web.zoom.us/j/87442698545?pwd=ek5KQ0R4aHJSZngzOUcvM0t0V25YQT09

Meeting ID: 874 4269 8545
Passcode: 247186
One tap mobile
+16469313860,,87442698545#,,,,*247186# US
+13017158592,,87442698545#,,,,*247186# US (Washington DC)

Dial by your location
    +1 646 931 3860 US
    +1 301 715 8592 US (Washington DC)
    +1 312 626 6799 US (Chicago)
    +1 646 876 9923 US (New York)
    +1 253 215 8782 US (Tacoma)
    +1 346 248 7799 US (Houston)
    +1 408 638 0968 US (San Jose)
    +1 669 444 9171 US
    +1 669 900 6833 US (San Jose)
Meeting ID: 874 4269 8545
Passcode: 247186
Find your local number: https://us02web.zoom.us/u/kc0fwGskhC

Electronically Filed - Texas - August 05, 2022 - 10:22 AM

Electronically Filed - Texas - August 08, 2022 - 03:37 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER,                )
                                 )
and                              )
                                 )  Cause No.: 21TE-CC00360
ERIC MEIER,                      )
                                 )
     Plaintiffs,         )
                                 )
v.                               )
                                 )
MACO MANAGEMENT CO., INC., and   )
                                 )
SUMMERSVILLE ESTATES, L.P.       )
                                 )
     Defendants.        )

## NOTICE OF DEPOSITION

TO:          Counsel of Record

DATE & TIME:     August 24, 2022, at 11:00 A.M.

DEPONENT(S):     Dawn Sims

LOCATION:     Zoom link to be provided

REPORTER:     Kelly Daniels, CCR

PLEASE TAKE NOTICE that the attorney for Plaintiffs will at the above date, hour and place, take the deposition of the above person upon oral examination pursuant to Rule 57.03 of the Missouri Rules of Civil Procedure, before a certified court reporter and suitable Notary Public. All parties are invited to attend and cross examine.

Dated this 8th day of August 2022.

Electronically Filed - Texas - August 08, 2022 - 03:37 PM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
Attorney for Plaintiffs
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of August 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.

CC:      **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
Kelly J. Daniels, CCR
49 W. Glenwood Ln.
St. Louis, MO 63122-5142

/s/ Brandon J. Klar_____

Electronically Filed - Texas - August 08, 2022 - 02:19 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                       )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )        Cause No.        21TE-CC00360
                                      )
MACO MANAGEMENT CO., INC.,            )
and SUMMERSVILLE ESTATES, L.P.,       )
                                      )
        Defendants.                   )

## CERTIFICATE OF SERVICE

COME NOW Defendants, by and through counsel, and state that Defendants Summersville

Estates and Maco's Objections and First Supplemental Responses to Plaintiff's First Request for

Production of Documents have been served on all counsel of record via electronic mail on this 8th

August 2022:

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

                                              CHILDRESS AHLHEIM CARY LLC

                                              BY:/s/ MARIE F. PUDLOWSKI
                                              David T. Ahlheim      #50853
                                              Marie F. Pudlowski    #64228
                                              1010 Market Street, Suite 500
                                              St. Louis, Missouri 63101
                                              314-621-9800
                                              314-621-9802 (fax)
                                              dahlheim@jchildresslaw.com
                                              mpudlowski@jchildresslaw.com
                                              *Attorneys for Defendants*

FILED
8-4-2022
MARCI MOSLEY
CIRCUIT CLERK
TEXAS COUNTY, MO

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )        Cause No.    21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

## JOINT STIPULATION AND PROTECTIVE ORDER

WHEREAS, discovery in the above-entitled action may involve the production of financial, commercial, trade, personal identifiers, and other information which is considered to be sensitive, confidential, proprietary, and/or protected by privilege (including but not limited to non-party tenant files), for the purposes of expediting discovery only, and for no other reason, the parties have stipulated, and the court HEREBY ORDERS THAT:

1.      Any party may designate documents, interrogatory responses, responses to requests for admissions, exhibits, testimony, transcripts, and other information (and/or copies thereof) produced, provided by, or provided on behalf of that party (or anyone acting on behalf of that party) and all information derived therefrom and/or contained therein, as Confidential Information within the meaning of this Stipulation and Protective Order.

2.      Documents, interrogatory responses, responses to requests for admissions, exhibits, testimony, transcripts, and other physical information shall be designated as Confidential Information by marking it "Confidential" at or prior to the time the physical information to be so designated is produced or provided, or as soon thereafter as may be practicable.

3.      A deposition and/or the transcript thereof shall be designated as Confidential

Information by orally so declaring during the taking of a deposition or by notifying all other parties to this action of such designation within twenty (20) days after the receipt of the transcript of such deposition. If only a portion of a deposition is so designated, the transcript of that portion shall be separately bound.

4. Unless otherwise ordered by the Court in this action, all Confidential Information will be held by the attorney for the receiving party solely for use in connection with, and shall be used solely in connection with, this action.

5. Except with the prior written consent of the parties, or upon prior order of this Court obtained upon notice to the parties, or as otherwise provided in this Stipulation and Protective Order, Confidential Information shall not be disclosed to any person other than:

    a. A party;

    b. Counsel for the parties to this litigation, including house counsel and co-counsel;

    c. Secretaries, legal assistants, and other employees or agents of such counsel assigned to assist such counsel in this litigation;

    d. Expert witnesses, consultants, and their employees, retained for the prosecution or defense of this litigation;

    e. Deposition reporters engaged for any deposition at which Confidential Information is provided, and;

    f. The Court, if filed pursuant to Paragraph 12 of this Stipulation and Protective Order.

6. Any person who is given access to Confidential Information pursuant to subparagraphs 5(a), 5(d) or 5(e) above shall, prior thereto, be provided with a copy of this Stipulation and Protective Order and such order shall be explained to them by an attorney. Such person(s) shall then, after such explanation and prior to having access to any such Confidential Information, agree not to disclose such information or to use it for any purpose other than the prosecution and defense

2

EXHIBIT A - STATE COURT FILE

of this action, and shall execute a Written Representation and Assurance of Confidentiality in the form annexed hereto. Counsel for each party shall be supplied with a copy of each Written Representation and Assurance of Confidentiality, at or near the time of the execution thereof, except those executed by expert witnesses, consultants, and their employees. Expert witnesses, consultants and their employees shall be governed by this Paragraph 6 and other terms of this Stipulation and Protective Order (including the requirement that they execute such Written Assurances prior to having access to such Confidential Information) but copies of Written Assurances executed by such persons need not be provided to other parties until such persons are designated as witnesses for trial or until the final resolution of this action, which first occurs.

7. In the event that counsel for any party determines to lodge, file or otherwise submit to this Court (a) any Confidential Information or information derived therefrom, or (b) any papers containing or making reference to such information, such documents shall be filed only in sealed envelopes on which shall be endorsed the caption of this action and a statement substantially in the following form:

### CONFIDENTIAL

This envelope contains documents that are subject to an Order of this Court governing discovery and the use of confidential discovery material. Pursuant to such Order, this envelope shall not be opened, nor the contents thereof displayed or revealed except pursuant to the terms of this Order. Violation of such Order may be regarded as contempt of the Court.

8. Nothing herein shall restrict the use or disclosure by a party of documents or information contained by such party independently of discovery proceedings herein. Further, unless otherwise agreed between counsel in writing, no party shall have the right to designate as Confidential Information any discovery material produced by an adverse party. A party who disagrees with another party's confidential designation must nevertheless abide by the same until the

3

EXHIBIT A - STATE COURT FILE

matter is resolved by agreement or by order of the Court.

9. Entering into, agreeing to, and/or complying with the terms of this Stipulation and Protective Order shall not prejudice in any way the right of a party to: (i) seek a judicial determination of whether particular discovery material should be produced or, if produced, whether it should be subject to the terms of this Stipulation and Protective Order; (ii) interpose an objection to a request for discovery on any ground; (iii) seek either from the Court, or through negotiations between counsel, protection greater than that contained herein; or (iv) seek relief on notice from any provision of this Stipulation and Protective Order, either generally or as to any particular discovery material.

10. The provisions of this Stipulation and Protective Order shall remain in full force and effect after the termination of this action.

11. All documents and/or deposition transcripts designated by any producing party as Confidential and all copies thereof shall be delivered to such counsel or certify the destruction of such documents within thirty (30) days after entry of final judgment and exhaustion and/or expiration of all rights of appellate review, settlement, or other final termination of this action. Additionally, counsel for all parties and any persons counsel has provided such Confidential Information will send a letter to the producing party within thirty (30) days after entry of final judgment and exhaustion and/or expiration of all rights of appellate review, settlement, or other final termination of this action.

12. Confidential Information may be used in connection with the deposition of any witness. Whether Confidential Information is to be so used, the deponent must be informed, on the record, that the use of such Confidential Information is subject to the terms of this Stipulation and Protective Order.

13. Nothing herein shall be deemed to constitute a waiver of any applicable privilege.

14. This agreement and order shall in no way be construed to make confidential matters

4

which are (a) already known to the other party, (b) a matter of public record, or (c) is subsequently obtained from an independent non-confidential or non-privileged source.

**SO ORDERED.**

Date: _8·4·22_

5

## WRITTEN ASSURANCE OF CONFIDENTIALITY (Individual)

I, _____, acknowledge that I am about to receive Confidential Information and expressly certify that: I understand and agree that such Confidential Information is being provided to me pursuant to the terms and on the conditions of the Protective Order dated _____, in _____, Cause No. _____. I have been given a copy of and have read the Stipulation and Protective Order and agree to be bound by it; I agree that I will not disclose any Confidential Information, as defined in the Stipulation and Protective Order; to any persons or in any manner not specifically authorized by the Stipulation and Protective Order; I agree that I will not copy or use any Confidential Information except solely for the purpose of the case referenced above; and I agree that I will return all Confidential Information or certify the destruction of such information no later than thirty (30) days after the final termination of this action to the counsel or the party who provided such Confidential Information to me.

Dated: _____

_____
Signature

_____
Name (typed or printed)

6

## WRITTEN ASSURANCE OF CONFIDENTIALITY
### (Corporation and Individual)

I, _____, on behalf of myself and_____, a _____ of _____ (the "Company") acknowledge that I am about to receive Confidential Information on behalf of myself and the Company and expressly certify that: I understand and agree that such Confidential Information is being provided to me pursuant to the terms and on the conditions of the Protective Order dated _____, in _____, Cause No. _____. I have been given a copy of and have read the Stipulation and Protective Order and I agree that I and the Company are and shall be bound by it; I agree that neither I nor the Company will disclose any Confidential Information, as defined in the Stipulation and Protective Order; to any persons or in any manner not specifically authorized by the Stipulation and Protective Order; I agree that neither I nor the Company shall copy or use any Confidential Information except solely for the purpose of the case referenced above; and I agree that I and the Company will return all Confidential Information or certify the destruction of such information no later than thirty (30) days after the final termination of this action to the counsel or the party who provided such Confidential Information to me and the Company.

Dated: _____

_____
("THE COMPANY")

By:_____

Title_____

_____
Signature

_____
(Name typed or printed)
In my individual capacity

7

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - August 17, 2022 - 02:11 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER, )
and ERIC MEIER, )
)
Plaintiffs, )
)
v. ) Cause No. 21TE-CC00360
)
MACO MANAGEMENT CO., INC., )
and SUMMERSVILLE ESTATES, L.P., )
)
Defendants. )

## CROSS NOTICE OF VIDEOTAPED DEPOSITION

TO:                                   COUNSEL OF RECORD

DATE & HOUR:                          August 24, 2022 at 11:00 a.m.

PLACE OF DEPOSITION:        Zoom

PERSON TO BE DEPOSED:       Dawn Sims

VIDEOGRAPHER:                        Veritext
                                    800-567-8658

PLEASE TAKE NOTICE that pursuant to Missouri Supreme Court Rule 57.03, Defendants shall take the above-described videotaped deposition upon oral examination at the time and place indicated, continuing day-to-day thereafter until completed, before a Notary Public, or officer authorized to take such deposition.

1

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 17th day of August 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

2

Electronically Filed - Texas - August 26, 2022 - 11:04 AM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| JENNIFER BUMETER, an individual | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| ERIC MEIER, an individual | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.:  21TE-CC00360 |
| | ) | |
| v. | ) | Division: |
| | ) | |
| MACO MANAGEMENT COMPANY, INC., | ) | |
| A Missouri Limited Liability Company | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P., | ) | |
| A Missouri Limited Liability Company | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER, by and through their undersigned counsel, and hereby certify that original copies of Plaintiffs Jennifer Bumeter and Eric Meier's Supplemental Requests for Production of Documents Directed to Defendants, together with a copy of this Certificate, were served upon the following attorneys of record via electronic mail this 26th day of August 2022.

CHILDRESS AHLHEIM CARY LLC
David T. Ahlheim
Marie F. Pudlowski
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com

Electronically Filed - Texas - August 26, 2022 - 11:04 AM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
    BRANDON J. KLAR, #72884
    *Attorney for Plaintiffs*
    1125 Olivette Executive Parkway,
    Suite 120
    St. Louis, Missouri 63132
    Phone:    (314) 863-1117
    Fax:    (314) 863-1118
    Email:    bjklar@lawsaintlouis.com

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - August 26, 2022 - 10:52 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,               )
and ERIC MEIER,                 )
                                )
        Plaintiffs,             )
                                )
v.                              )      Cause No.      21TE-CC00360
                                )
MACO MANAGEMENT CO., INC.,      )
and SUMMERSVILLE ESTATES, L.P., )
                                )
        Defendants.             )

### DEFENDANTS' MOTION FOR CLARIFICATION AND TO AMEND THE JULY 26, 2022 ORDER

COME NOW, Defendants Maco Management Co. Inc., and Summersville Estates, L.P., by and through undersigned counsel, and for Defendants' Motion for Clarification and to Amend the July 26, 2022 Order state as follows:

1. Plaintiffs cite no rule or Missouri caselaw recognizing a motion for relief. Defendants are aware of no such remedy in Missouri law.

2. To the extent the Court interpreted this as a motion for sanctions, Missouri provides two, grounds for seeking and granting sanctions, Rule 55.03 related to bad faith and Rule 61.01 related to discovery failures. Each rule having its own conditions and interpreting caselaw setting forth the specific circumstances when sanctions are warranted.

3. Pursuant to Missouri Rule 61.01(d), "If a party . . . fails to produce documents . . . as requested under Rule 58.01, or timely serves objections thereto **that are thereafter overruled** and the documents and things are not timely produced, . . . the court **may**, upon motion and reasonable notice to other parties, take such action in regard to the failure as are just." (emphasis added). "Any failure to act described in this Rule 61 may not be excused on the ground that the discovery sought

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - August 26, 2022 - 10:52 AM

is objectionable **unless** the party failing to act has served timely objections to the discovery request or has applied for a protective order as provided by Rule 56.01(c)." Mo. Civ. R. 61.01(a) (emphasis added).

4. As written, the Order states, "It seems to the Court some or all of those exhibits should have been disclosed to Plaintiffs' counsel in response to Plaintiffs' Request for Disclosure Number 4 (Ex A to the Motion)." Order filed 7/26/22.

5. Plaintiffs' Request for Disclosure Number 4 states, "All correspondence, emails, notes, memoranda or other communications between you and either Plaintiff, or anyone else (other than your attorney) related to the Incident, or the damages and injuries resulting from the same." Ex. A to the Motion for Relief.

6. Defendants' timely response states:

> Objection. Maco objects to said request because the documents sought are overly broad as drafted without sufficient limitations, specifically as it calls for all such documents from "anyone else." It seeks documents protected as intangible attorney work product and/or impermissibly seeks documents obtained in anticipation of litigation and/or in preparation for trial by defendants, its counsel, its insured, or its consultants. It calls for documents protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, and the insurer-insured privilege. Further, it is objectionable under *State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley,* 898 S.W.2d 550, 553 (Mo.banc 1995) and *State ex rd. Hackler v. Dierker,* 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).
>
> Subject to and without waiving the same: See MACO0187-226, MACO425-444 for communications with Plaintiff.
> Ex. A to the Motion for Relief.

7. Prior to the deposition of Austin, Plaintiffs' counsel never asked Defendants to remove the written objection and never asked the Court to overrule the written objection.

8. The Order goes on to issue sanctions that include but are not limited to striking of exhibits and deposition testimony.

2

9. From this Order, it remains unclear which exhibits the Court deemed responsive to discovery and stricken, and what corresponding testimony of Austin's is stricken. Defendants request clarity on both matters.

10. To assist the Court, Defendants have attached **Exhibit 1**, a list of all exhibits used during the deposition, for use in providing clarity to the Order.

11. Thus, Defendants request this Court clarify via an amended order which exhibits the Court deemed responsive to discovery and stricken, and what corresponding testimony of Austin's is stricken.

WHEREFORE, Defendants pray this Court Clarify via an Amendment to the July 26, 2022 Order, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 26th day of August 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/      MARIE F. PUDLOWSKI

3

**EXHIBIT 1 to Defendants' Motion for Clarification and to Amend the July 26, 2022 Order**

| Exhibit | Disclosed/ Undisclosed | Description | Stricken or Not | Corresponding Stricken Testimony |
|---|---|---|---|---|
| A | During and Post Deposition Disclosure | Publicly accessible Casenet print out related to non-party witness Austin | | |
| B | During and Post Deposition Disclosure | Publicly accessible Casenet print out related to non-party witness Austin | | |
| C | During and Post Deposition Disclosure | Publicly accessible Casenet print out related to non-party witness Austin | | |
| D | Pre-Deposition Disclosure | Affidavit of non-party witness Austin | | |
| E | During and Post Deposition Disclosure | Non-party witness Austin's executed Maco Smoke Alarm Policy dated 1/15/2016 | | |
| F | During and Post Deposition Disclosure | Maco's completed Quarterly Inspection Reports for Non-party witness Austin's units on 9/30/2021 6/17/2021 3/17/2021 12/16/2020 12/19/2019 9/26/2019 6/28/2019 3/29/2019 11/13/2018 9/4/2018 6/21/2018 3/19/2018 12/6/2017 9/20/2017 6/5/2017 4/5/2017 12/7/2016 9/7/2016 | | |

EXHIBIT A - STATE COURT FILE

| G | Pre-Deposition Disclosure | First Amended Petition | | |
|---|---|---|---|---|
| H | During and Post Deposition Disclosure | Non-party witness Austin's text messages to Maco in July 2021 (post-incident) | | |
| I | Pre-Deposition Disclosure | Non-party witness Austin's Maco Submission dated 7/20/2021 (post-incident) | | |
| J | During and Post Deposition Disclosure | Non-party witness Austin's Maco Submission dated 7/27/2021 at 9:14AM (post-incident) | | |
| K | During and Post Deposition Disclosure | Non-party witness Austin's Maco Submission dated 7/27/2021 at 9:35AM (post-incident) | | |
| L | Pre-Deposition Disclosure | Non-party witness Austin's Maco Submission dated 7/30/2021 (post-incident) | | |
| M | During and Post Deposition Disclosure | Non-party witness Austin's Maco Work Order dated 8/24/21 (post-incident) | | |
| N | Pre-Deposition Disclosure | Non-party witness Austin's Maco Submission dated 11/24/2021 (post-incident) | | |
| O | Pre-Deposition Disclosure | Non-party witness Austin's Maco Submission dated 11/26/2021 (post-incident) | | |
| P | Pre-Deposition Disclosure | Non-party witness Austin's Maco Submission dated 11/27/2021 (post-incident) | | |
| Q | Pre-Deposition Disclosure | Non-party witness Austin's Maco Submission dated 11/28/2021 (post-incident) | | |
| R | Pre-Deposition Disclosure | Non-party witness Austin's Maco Submission dated 12/3/2021 (post-incident) | | |
| S | Pre-Deposition Disclosure | Non-party witness Austin's Maco Submission dated 12/4/2021 (post-incident) | | |
| T | During and Post | Non-party witness Austin's Maco Submission dated 6/17/2022 (post-incident) | | |

2

| | | | | |
|---|---|---|---|---|
| | Deposition Disclosure | | | |
| U | During and Post Deposition Disclosure | Non-party witness Austin's Maco Submission dated 5/20/2022 (post-incident) | | |
| | During and Post Deposition Disclosure | Non-party witness Austin's Voicemail to Maco dated 4/9/2022 (post-incident) | | |

3

Electronically Filed - Texas - September 02, 2022 - 09:48 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

COME NOW Defendants, by and through counsel, and state that Defendant Maco

Management Co., Inc.'s Objections and Responses to Plaintiff's First Supplemental Request for

Production has been served on all counsel of record via electronic mail on this 2nd day of September

2022:

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

                                        CHILDRESS AHLHEIM CARY LLC

                                        BY:/s/  MARIE F. PUDLOWSKI
                                        David T. Ahlheim     #50853
                                        Marie F. Pudlowski     #64228
                                        1010 Market Street, Suite 500
                                        St. Louis, Missouri 63101
                                        314-621-9800
                                        314-621-9802 (fax)
                                        dahlheim@jchildresslaw.com
                                        mpudlowski@jchildresslaw.com
                                        *Attorneys for Defendants*

1

Electronically Filed - Texas - September 08, 2022 - 04:26 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, an individual | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| ERIC MEIER, an individual | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.:  21TE-CC00360 |
| | ) | |
| v. | ) | Division: |
| | ) | |
| MACO MANAGEMENT COMPANY, INC., | ) | |
| A Missouri Limited Liability Company | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P., | ) | |
| A Missouri Limited Liability Company | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO COMPEL

COME NOW Plaintiffs, Jennifer Bumeter and Eric Meier ("Plaintiffs"), by and through their undersigned counsel, and pursuant to the Missouri Supreme Court Rules 57.01 and 61.01, and for their Motion to Compel, state to the Court as follows:

1.     On August 24, 2022, Plaintiffs took the deposition of Dawn Sims, the property manager of Summersville Estates ("Deposition").

2.     In the underlying litigation, the Plaintiffs allege, among other things, that Ms. Sims failed to perform her job duties and that such failures caused the death of decedent.

3.     In the Deposition, Ms. Sims testified to performing apartment inspections at Summersville Estates for a period beginning in 2018 and continuing through the present date.

4.     Despite her testimony, Defendants only produced inspection reports through June

2021.

5. When prompted by Plaintiffs' counsel during the Deposition about the production of post-June 2021 inspection reports, Ms. Sims assured the same existed and would be produced.

6. Moreover, during the Deposition, Ms. Sims testified to completing journals and work orders related to her purported replacement of batteries in smoke detectors during the entirety of her employment as property manager.

7. Despite her testimony, Defendants did not produce any such journals or work orders in response to Plaintiffs' previous discovery requests.

8. When prompted by Plaintiffs' counsel during the Deposition about the production of such journals or work orders, Ms. Sims again assured the same existed and would be produced.

9. Lastly, during the Deposition, Ms. Sims testified to completing "24-Hour Notices to Enter Apartment" ("Notices") every single time she entered a tenant's apartment unit—including for quarterly inspections.

10. Despite her testimony, Defendants produced Notices only through December 2018.

11. When prompted by Plaintiffs' counsel during the Deposition about the production of Notices provided after December 2018, Ms. Sims assured the same existed and would be produced.

12. On August 26, 2022—just two (2) days after the Deposition—Plaintiffs' counsel issued to Defendants' counsel Plaintiffs' First Supplemental Requests for Production ("Supplemental Requests"), a copy of which is attached hereto as **Exhibit 1**.

13. As demonstrated by the attached exhibit, the Supplemental Requests simply seek the production of documents raised by Ms. Sims in her Deposition testimony.

14. On September 2, 2022, counsel for Defendants issued Defendant Maco

Electronically Filed - Texas - September 08, 2022 - 04:26 PM

Management Company Inc.'s Objections and Responses to the Supplemental Requests ("Objections").

15. The Objections are improper and inappropriate, claiming privilege where none exists and, more egregiously, objecting based on *relevance* to the production of documents **Ms. Sims testified to creating in the performance of her job duties.**

16. Due to the objectively unreasonable positions asserted by Defendants within the Objections, counsel for Plaintiffs sent a golden rule letter ("Golden Rule Letter") to Defendants' counsel on September 2, 2022, a copy of which is attached hereto as **Exhibit 2**.

17. To this date, Defendants have not responded to the Golden Rule Letter or otherwise attempted to provide complete and proper responses to the Supplemental Requests.

18. Plaintiffs require the full and complete responses of Defendants in order to properly prepare for trial in this case.

19. The Objections mark Defendants' **third** attempt to subvert Missouri discovery practice—with the first being the use of unproduced relevant documents in the deposition of Susan Austin and the second being the refusal to produce their client (Ms. Sims) for a properly noticed deposition on July 15, 2022[1].

20. Defendants' repeated and unjustified attempts to disregard Missouri rules and statutes should not be permitted to continue.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for an Order compelling Defendants to issue complete and accurate responses to the Supplemental Requests, for an Order and/or sanctions compelling Defendants to pay the attorneys' fees and costs related to the instant

---

[1] For which Plaintiffs obtained a Certificate of Nonappearance, filed with this Court July 27, 2022.

Motion, for an Order and/or sanctions granting Plaintiffs' attorneys fees for the deposition of Susan Austin, for an Order and/or sanctions granting Plaintiffs' attorneys fees for Defendants' refusal to produce their client for a properly noticed deposition, and for any such other relief and sanctions as this Court deems just and proper under the circumstances

Dated this 8th day of September 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar_____
    BRANDON J. KLAR, #72884
    *Attorney for Plaintiff*
    1125 Olivette Executive Parkway
    Suite 120
    St. Louis, Missouri 63132
    Phone:    (314) 863-1117
    Fax:      (314) 863-1118
    Email:    bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of September 2022 a true and correct copy of the foregoing was served via the court's electronic filing system to all attorneys of record.

/s/ Brandon J. Klar

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - September 08, 2022 - 04:26 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER, an individual )
)
AND )
)
ERIC MEIER, an individual )
)
        Plaintiffs, )
)
    v. )
)
MACO MANAGEMENT COMPANY, INC., )
A Missouri Limited Liability Company )
)
AND )
)
SUMMERSVILLE ESTATES, L.P., )
A Missouri Limited Liability Company )
)
        Defendants. )

Cause No.: 21TE-CC00360

Division:

**PLAINTIFF'S EXHIBIT 1**

## PLAINTIFFS' SUPPLEMENTAL REQUESTS FOR PRODUCTION OF DOCUMENTS DIRECTED TO DEFENDANT SUMMERSVILLE ESTATES, L.P.

COMES NOW Plaintiffs JENNIFER BUMETER and ERIC MEIER, by and through the undersigned counsel, and propound the following Supplemental Requests for Production of documents and things to be answered by Defendant SUMMERSVILLE ESTATES, L.P. under oath within thirty (30) days.

## DEFINITIONS

A.    The term "you" or "your" as used hereafter means this Defendant, Summersville Estates, L.P., and any person who is or was an employee, representative, associate, partner or agent of said Defendant.

B.      The term "person(s)" means all entities and, without limiting the generality of the foregoing, includes natural persons, joint owners, associations, proprietorships, companies, partnerships, joint ventures, corporations, professional corporations, trusts and estates.

C.      The term "identify" when referring to an individual person means to state: (a) the full name, present or last known address and telephone number; (b) present or last known position in business affiliation; and (c) title of position held and by whom employed at the time of each event, transaction, or occurrence hereinafter referred to.

D.      The term "identify" as used herein in connection with a document means to state: (a) the type of document and its date; (b) the originator of the document; (c) the identity of the person, if any, to whom the document was addressed or directed; (d) the subject matter of the document or a copy thereof. If any such document was, but is no longer, in your possession or custody, or subject to your control, or is no longer in existence, state whether it: (a) is missing or lost; (b) has been destroyed; and/or (c) has been transferred voluntarily or involuntarily and, in each instance, explain the circumstances surrounding the authorization for each such disposition thereof and state the date or approximate date thereof.

E.      The term "Summersville Estates" means the low-income housing complex located at 720 Cherry Avenue in Summersville Missouri.

F.      The term "Inspection Report" means the document(s) evidencing the inspection of apartment units at Summersville Estates, located in Summersville, Missouri.

G.      The term "Incident" means the events which took place on June 26, 2020, resulting in a fire at Summersville Estates and the death of Robin Rose Fischer.

H.      The phrase "related to" includes pertain to, refer to, consist of, concern, memorialize, regard, reflect, depict, describe, evidence, embody, contain, or constitute, in whole

or in part.

## INSTRUCTIONS

A.    These requests extend to all Documents and other matters in the possession, custody or control of you or any agent, servant, employee, representative (including attorneys) or other person acting or purporting to act on your behalf.

B.    In producing Documents responsive to these requests, identify by paragraph number the request to which each produced Document is responsive. If a Document is responsive to more than one request, identify each request to which it is responsive.

C.    If copies of Documents are produced in lieu of originals, such copies shall be legible and bound or stapled in the same manner as the originals.

D.    If any Document is withheld from production on grounds of privilege or work product immunity: (i) identify the Document with particularity sufficient to allow the matter to be brought before the Court, including a description of the Document's type (e.g., letter, memorandum, report), subject matter, number of pages, date, author(s), addressee(s), custodian and that person's business address; and (ii) explain the nature and basis for each claim of privilege or work product immunity.

E.    In responding to these requests, you must make a diligent search of your records and of other papers and materials in your possession or available to you or your representatives. This request is continuing, and your production must be supplemented to the extent required by law and the applicable rules.

## REQUESTS

1.    All documents, statements, recordings, reports, records, photographs, videotapes and writings of any kind identified, referenced or referred to in any way during the deposition of Dawn

Electronically Filed - Texas - September 08, 2022 - 04:26 PM

Sims, conducted August 24, 2022 ("Deposition"), and which were not previously produced to Plaintiffs.

**RESPONSE:**

2. All Inspection Reports conducted by Dawn Sims at Summersville Estates from June 1, 2021 to the present.

**RESPONSE:**

3. All documents, including logs, journals, and work orders, reflecting Dawn Sims' purported replacement of batteries in smoke detectors/alarms during the entirety of her employment as property manager.

**RESPONSE:**

4. All 24-Hour Notices to Enter Apartment prepared by Dawn Sims from and after December 1, 2018.

**RESPONSE:**

5. A photograph of Dawn Sims' "Making a Difference Award", as described by her during the Deposition.

**RESPONSE:**

Electronically Filed - Texas - September 08, 2022 - 04:26 PM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
    BRANDON J. KLAR, #72884
    *Attorney for Plaintiff*
    1505 S. Big Bend Boulevard
    St. Louis, Missouri 63117
    Phone:    (314) 863-1117
    Fax:    (314) 863-1118
    Email:    bjklar@lawsaintlouis.com

Electronically Filed - Texas - September 08, 2022 - 04:26 PM

# KLAR, IZSAK & STENGER, L.L.C.
*Attorneys and Counselors at Law*

1125 Olivette Executive Parkway, Suite 120
Olivette, Missouri 63132
Telephone: [314] 863.1117
Facsimile: [314] 863.1118
www.lawsaintlouis.com

**BRANDON J. KLAR**
*Licensed in Missouri and Illinois*
bjklar@lawsaintlouis.com


**PLAINTIFF'S EXHIBIT 2**

BRIAN D. KLAR
MICHAEL H. IZSAK
ALLISON F. STENGER

BRANDON J. KLAR
RICHARD E. "TED" HANSON
MICHAEL P. SINGER

September 2, 2022

**VIA EMAIL TO:** mpudlowski@jchildresslaw.com
Childress Ahlheim Cary
**Attn: Marie Pudlowski**

> **Re:** **Bumeter et al. v. MACO, et al.**
> **Cause No.: 21TE-CC00360**

Dear Ms. Pudlowski:

On August 26, 2022, we served you with Supplemental Requests for Production ("RFPs") directed to your client, MACO Management Company, Inc. ("MACO"). It is our position that MACO's September 2, 2022 responses to each of the RFPs include improper objections and incomplete responses.

Not only are the documents requested extremely relevant to the underlying litigation, but **Ms. Dawn Sims explicitly implicated them during her deposition taken August 24, 2022**. As previously advised, we believe that we are properly entitled to full and complete responses to our RFPs and that none of your objections are proper. This will therefore constitute certification of our good faith effort to resolve this dispute.

**BLANKET OBJECTIONS:** First, your blanket objections to the RFPs are improper and do not identify with any specificity the means by which we may amend such requests to obtain discoverable information pursuant to Missouri Supreme Court Rule 56.01. Your blanket objections are improper in that you are required to "specify why a discovery request is overbroad, oppressive, burdensome or intrusive." *State ex rel. Health Midwest Development Group, Inc. v. Daugherty*, 965 S.W.2d 841, 844 (Mo. 1998). Please either confirm that you will immediately fully and completely answer each discovery request or, alternatively, immediately provide us with the precise reason why each request is objectionable as claimed.

Electronically Filed - Texas - September 08, 2022 - 04:26 PM

Childress Ahlheim Cary
**Attn: Marie Pudlowski**
September 2, 2022
Page 2 of 2

Specifically, we believe we are entitled to the below information:

1. **REQUEST FOR PRODUCTION #1:** Your objections to Request for Production #1 are improper. You object based on overbreadth, vagueness and ambiguity, but none of those objections are appropriate. The documents sought are relevant and were explicitly discussed by your own client during her deposition. Moreover, none of the requested documents are protected by any privilege, nor are they invasive.

2. **REQUEST FOR PRODUCTION #2:** Your objection to Request for Production #2 is improper and altogether without merit. The information sought is directly relevant to Ms. Sims' purported conduction of apartment inspections. As you are aware, the method by which she completes such Inspection Reports is **undoubtedly** relevant to this litigation. If Ms. Sims has failed to conduct additional apartment inspections, or forged additional signatures, such information is both relevant and probative of her continued wrongdoing. As such, this information is unquestionably reasonably calculated to lead to the discovery of admissible evidence and must be produced.

3. **REQUEST FOR PRODUCTION #3 and #4:** Your objections to Request for Production #3 and #4 are entirely baseless and fly in the face of Missouri discovery practice. The information sought is directly related to your clients' breach of duties owed to Ms. Fischer and other tenants of Summersville Estates. Your client not only assured the production of these documents in deposition, but she also made them directly relevant to this litigation when she testified to completing each requested document as a common duty of her employment. As you failed to produce any of these documents, and now object to their obviously necessary production, we are left only with the understanding that such documents **do not exist**.

Please advise me immediately if we will be able to resolve these disputes without the necessity of obtaining the Court's ruling.

Thank you for your prompt attention to this matter.

Sincerely,

BRANDON J. KLAR

BJK

Electronically Filed - Texas - September 12, 2022 - 04:25 PM

## IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

| | |
|---|---|
| JENNIFER BUMETER, and ERIC MEIER,    ) ) ) Plaintiffs,    ) v.    ) ) MACO MANAGEMENT CO., INC., and    ) SUMMERSVILLE ESTATES, L.P.    ) ) Defendants.    ) | Cause No.:   21TE-CC00360 |

### NOTICE OF HEARING VIA WEBEX

PLEASE TAKE NOTICE that Plaintiffs Jennifer Bumeter and Eric Meier will call for hearing their **Motion to Compel** on **Wednesday, November 2, 2022, at 9:00 A.M.** in the Circuit Court of Texas County, via Webex.

Dated this 12th day of September, 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By:    /s/ Brandon J. Klar
      BRANDON J. KLAR      #72884
      *Attorney for Plaintiffs*
      1125 Olivette Executive Parkway
      Suite 120
      St. Louis, Missouri 63132
      Tel:    (314) 863-1117
      Fax:   (314) 863-1118
      Email: bjklar@lawsaintlouis.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 12th day of September, 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - September 23, 2022 - 01:30 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| JENNIFER BUMETER, <br> and ERIC MEIER, <br><br>     Plaintiffs, <br><br> v. <br><br> MACO MANAGEMENT CO., INC., <br> and SUMMERSVILLE ESTATES, L.P., <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )     Cause No.     21TE-CC00360 <br> ) <br> ) <br> ) <br> ) <br> ) |

**CERTIFICATE OF SERVICE**

COME NOW Defendants, by and through counsel, and state that Defendant Maco Management Co., Inc.'s Objections and Responses to Plaintiff's First Supplemental Request for Production and Maco Management's Objections and Third Supplemental Responses to Plaintiffs' Request for Production, Defendant Summersville Estate's Objections and First Supplemental Responses to Plaintiffs' Supplemental Request for Production and Summersville Estate's Third Supplemental Responses to Plaintiff's First Request for Production of Documents have been served on all counsel of record via electronic mail on this 23rd day September 2022 to all counsel of record.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim     #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of September 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*                    /s/      MARIE F. PUDLOWSKI

2

Electronically Filed - Texas - September 30, 2022 - 11:57 AM

# IN THE 25th JUDICIAL CIRCUIT COURT, TEXAS COUNTY, MISSOURI

**RECEIVED**
**JUL 12 2022**
By _____

| Judge or Division: | Case Number: 21TE-CC00360 | |
|---|---|---|
| Plaintiff/Petitioner:<br>Jennifer Bumeter and Eric Meier | Person Subpoenaed:<br>Bridgette L. Kittner | Plaintiff's/Petitioner's Attorney:<br>Brandon J. Klar |
| | Address:<br>267 6th Street, Summersville, MO 65571 | Address:<br>1125 Olivette Executive Parkway, Suite 120<br>Olivette, MO 63132<br><br>Telephone: 314-863-1117 |
| vs. | | |
| Defendant/Respondent:<br>Maco Management Co., Inc.<br>and<br>Summersville Estates, L.P. | Requesting Party:<br>☒ Plt./Pet. Atty  ☐ Plt./Pet.<br>☐ Def/Resp. Atty  ☐ Def./Resp. | Defendant's/Respondent's Attorney:<br>Marie Pudlowski |
| | Address: (Of Party Checked Above)<br>1125 Olivette Executive Parkway, Suite 120<br>Olivette, MO 63132<br><br>Telephone: 314-863-1117 | Address:<br>1010 Market Street, Suite 500<br>St. Louis, Missouri 63101<br><br>Telephone: 314-621-9800 |

For depositions attach a list of all attorneys of record and self-represented parties. Include the name, address and telephone number.

(Date File Stamp)

## Subpoena
## Order to Appear/Produce Documents/Give Depositions

The State of Missouri to: _____Bridgette Leigh Kittner_____ (person subpoenaed)

You are commanded:

☒ to contact ___Brandon J. Klar_____ (name) at __314-863-1117_____ (telephone) who will advise of time and place appearance is required.

☐ to appear at

_____

on _____ (date), at _____ (time).

☐ to testify on behalf of: _____.

☐ to give depositions.

☐ to bring the following _____

_____

**5/25/2022**
Date Issued

**/s/ MARCI MOSLEY CIRCUIT CLERK**

_Bobbie Martin_ Deputy Clerk

OSCA (08-13) CR190        1 of 2        491.100, 491.130 RSMo, SCR 57.09, 58.02

## Return/Affidavit

I certify that I served this subpoena in _Texas_ (County/City of St. Louis), Missouri, by:

☒ delivering a copy to the person subpoenaed _7-12-22_ (date).

☐ reading a copy to the person subpoenaed on _____ (date).

☐ I tendered legal fees for travel expenses per section 491.130, RSMo, in the amount of $ _____.

☐ Other: _____.

**Sheriff's Fees (if applicable)**

Summons                                                    $ _____

Non Est                                                      $ _____

Sheriff's Deputy Salary Supplemental
Surcharge (Civil Cases Only-$10.00)      $ _____

Mileage                                                     $ _____ (_____ miles @ $._____ per mile)

Total                                                         $ _____

_____
Person Serving Subpoena

## Instructions

1.  This subpoena will remain in effect until this trial is concluded or you are discharged by the Court.  You must attend trial from time to time as directed.  **No additional Subpoena is required for your future appearance at any trial of this case**.  If you fail to appear, you may be held in contempt of court.

2.  If you have any questions regarding this subpoena, contact the person who requested it listed on the front.

3.  **Bring this form with you to court**.  This form must be completed, signed, and returned to the clerk as soon as you have testified or been dismissed.

## Witness Claim

I have served _____ day(s) as a witness and I traveled _____ mile(s) round-trip from my home to the courthouse to attend this proceeding.

_____
Signature

_____
Current Address

_____
City, State, Zip

Subscribed and sworn to before me on _____ (date).

Total Claimed $ _____

_____
Clerk

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )    Cause No.    21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Defendants Maco Management Co., Inc. and Summersville

Estates, LP, by and through undersigned counsel, will call up for hearing their Defendants' Motion

for an Order to Protect a Witness pursuant to Missouri Revised Statutes 491.600 (filed 10/3/22);

for Defendants' Motion for Clarification and to Amend the July 26, 2022 (filed 8/26/22); and

Plaintiffs' Motion for Relief and 2nd Request for Sanctions (filed 7/27/22); and Plaintiffs' Motion

to Compel and 3rd Request for Sanctions (filed 9/8/22) on **November 2, 2022 at 9:00 AM** in Texas

County Circuit Court before Judge Beger, or as soon thereafter as counsel may be heard, via

WebEx.

https://mocourts.webex.com/meet/john.beger

Join by phone
+1-408-418-9388 United States Toll

Access code: 960 524 065

1

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 3rd day of October 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

2

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,　　　　　　　)
and ERIC MEIER,　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　)
　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　Cause No.　　21TE-CC00360
　　　　　　　　　　　　　　　　)
MACO MANAGEMENT CO., INC.,　　　)
and SUMMERSVILLE ESTATES, L.P.,　)
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　)

**DEFENDANTS' MOTION FOR AN ORDER
TO PROTECT WITNESS**

COMES NOW, Defendants Maco Management Co. Inc. (hereinafter "Maco") and Summersville Estates, L.P. (hereinafter "Summersville"), by and through undersigned counsel, and for Defendants' Motion for an Order to Protect a Witness pursuant to Missouri Revised Statutes 491.600 states as follows:

1. "Any court with jurisdiction over **any** criminal matter may, in its discretion, upon substantial evidence, which may include hearsay, that **intimidation or dissuading** of any person . . . who is a witness **has occurred or is reasonably likely to occur**, issue orders including but not limited to . . . [a]n order that a person before the court . . . including but not limited to a subpoenaed witness or other person entering the courtroom of said court, not engage in activity as defined by section 575.270, and . . . have no connection whatsoever with any specified witness." Mo. Rev. Stat. § 491.600 (emphasis added).

2. Chapter 575 is titled "Offenses Against the Administration of Justice." The sections contained therein are for the purpose of promoting of the orderly administration of justice. "Anything which obstructs the procurement of witnesses, or once procured, which **hinders their**

freedom and **willingness to speak the truth** before any court or body charged with the enforcement of our laws, civil or criminal, is an offense against the administration of justice and is within the contemplation of Chapter 575." *State v. Hedge*, 793 S.W.2d 478, 480 (Mo. Ct. App. 1990) (emphasis added).

3. Here, the above case for damages is pending before this Court. *See* 1st Am. Pet. This Court also holds jurisdiction in criminal matters.

4. Dawn Sims is a witness in said case. Sims served as property manager of Summersville Estate at the time of the incident alleged in the case for damages.

5. Susan Austin is also a witness in said case. Austin was a tenant of Summersville Estate at the time of the incident alleged in the case for damages.

6. On July 19, 2021, Sims received a text on her personal phone from Austin's personal phone stating, "If you had any sense you would be looking for another job. This thing with Robin will stick with you forever. Get out while you can. They are blaming you for her death." *See* Exhibit A attached.

7. On July 20, 2021, Sims received a text on her personal phone from Austin's personal phone stating, "Dawn, don't walk, run away. . . Robin died in vain. Maco killed Robin." *See* Exhibit B attached.

8. On July 27, 2021, Austin verbally stated to Sims that "You need to watch your back. Someone has to take the fall for Robin's death and I'm afraid it's going to be you. If I were you, I would get your own attorney." *See* Exhibit C attached.

9. On August 24, 2021, Sims received a Facebook notification on her personal page from a Susan Austin personal page laughing at a comment posted by Sims asking for prayers due to Sim's own personal house fire that had just taken place. Sims was later informed that Austin commented

2

to another person on Facebook, "I wish she would've died, karma is a bitch." *See* Exhibit D attached.

10. On October 13, 2022, (while serving Austin with a restraining order for a different individual), Summersville Police Department issued a warning to Susan Austin related to her harassing actions and comments toward Sims on that day. *See* Exhibit E attached.

11. On October 26, 2021, Sims received a text on her personal phone from Austin's personal phone stating, "Dawn, I do not want to be your enemy . . . . I am calling a truce . . . . Let's settle this." After receiving no response, she goes on to state, "Ok. I guess I'll see you in court. And you will lose." *See* Exhibit F attached.

12. On an unknown date in fall 2021, Sims received a text on her personal phone from Austin's personal phone stating, "I am looking forward to seeing you in court. People are lining up to testify against you. Good luck." *See* Exhibit G attached.

13. On November 25, 2021, Sims received a Facebook message on her personal page from a Susan Austin stating, "You will get what you deserve. You are a liar. I guess that's the only way people like you can survive . . . How do you sleep at night knowing you are responsible for a death and trying to ruin lives. You need help." *See* Exhibit P attached.

14. On November 27, 2021, Maco received a contact submission from a Susan Austin stating, "I have been evicted, but that won't stop me from testifying against your lying employees, Dawn Simms and Karen Murphy . . . I am a witness in a wrongful death lawsuit against Dawn Simms, she has lied about inspections, and she has lied to USDA and HUD about me. You will not win this wrongful death case." *See* Exhibit H attached

3

EXHIBIT A - STATE COURT FILE

15. Later on November 27, 2021, Maco received a contact submission from a Susan Austin stating, "You and your lying employees are responsible for an innocent person's death. What are you going to do about it? Dawn Sims is a killer." *See* Exhibit I attached.

16. On November 28, 2021, Maco received a contact submission from a Susan Austin stating, "You hire these idiots and call them property managers? See you in court and your idiot, Dawn Sims, whose negligence caused the death of my friend on one of your properties." *See* Exhibit J attached.

17. On December 3, 2021, Maco received a contact submission from a Susan Austin stating, "Dawn Simms, the property manager at Summersville Estates, lied to the court to protect herself. It doesn't affect me because I am moving to a better place despite her lies about me. But she is in very deep trouble. She is being investigated for violating the Fair Housing Act and other agencies. She lied to USDA among others. The information has been sent to the OIG." *See* Exhibit K attached.

18. On April 3, 2022, Sims received a voicemail on her work line from Austin's personal phone number, stating "You lying, fucking whore. I had a maintenance emergency, and because of that, I went without a toilet for seven days. I'm suing your ass, you fucking old bitch." *See* Exhibit L attached with recording available upon request.

19. On June 17, 2022 (about a week and a half before Austin's deposition), Sims received an email in Sim's Maco email account from Austin's personal email account, stating "Dawn Simms is the most incompetent individual I have ever had the misfortune to meet. She opened my apartment for people to enter without my permission or knowledge, she forged my inspections, she spent hours locked in her office with men. See you in court." *See* Exhibit M attached.

20. On August 3, 2022, Sims received a voicemail on her work line from Austin's personal phone number, stating "Haven't you committed enough felonies?" *See* Exhibit N attached.

21. On September 11, 2022 (two days after Sim's deposition transcript is provided to counsel), Sims received an email in Sim's Maco email account from Austin's personal email account, stating "Please inform Dawn Sims the definition of perjury committed during a legal deposition." *See* Exhibit O attached.

22. Austin's continued and ongoing contacts with Maco and Sims serve no reasonable purpose beyond intimidating and dissuading witness Sims from testifying in this case.

23. Austin's continued and ongoing contacts with Maco and Sims have in fact caused witness Sims a mental strain, making her fearful and reluctant to continue to serve as a witness in this case.

24. For the reasons stated herein, Defendants requests this Court issue an Order forbidding Austin from engaging in activity set forth in section 575.270 and forbidding Austin from having any further contact with Maco and Dawn Sims by any means and through any person besides counsel.

WHEREFORE, Defendants pray this Court grant Defendants' Motion for Order to Protect Witness as set forth above, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim     #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

5

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 3rd day of October 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/      MARIE F. PUDLOWSKI

EXHIBIT A - STATE COURT FILE

Case 6:23-cv-03015-BGW    Document 1-1    Filed 01/12/23    Page 513 of 786

Electronically Filed - Texas - October 03, 2022 - 02:49 PM



EXHIBIT A - STATE COURT FILE
CONFIDENTIAL

EXHIBIT A

1 of 4

MACO1029

Electronically Filed - Texas - October 03, 2022 - 02:49 PM



EXHIBIT B

EXHIBIT A - STATE COURT FILE
CONFIDENTIAL

Case 6:23-cv-03015-BCW    Document 1-1   Filed 01/12/23    Page 515 of 786

MACO533

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

something else I was unable to hear and Karen replied "Well if you don't like it you could always move."

The tenant called West Plains office and left a voicemail saying "A lady from your office, Karen, was sitting there on her fat ass telling me if I didn't like living here to move."

07/27/2021

Tenant B2 was in the laundry room. She stated to me "You need to watch your back. Someone has to take the fall for Robin's death and I'm afraid it's going to be you. If I were you, I would get your own attorney." And walked away.

07/28/2021

Tenant from B2 kept coming out of her unit walking to and from the dumpster while RM, DM and I were with fire investigators. She then kept walking from the laundry room to her unit, back and forth several times. I was advised to go to another property to work for the rest of the day.

07/29/2021

Tenant in B2H called West Plains office after hours. She stated her toilet was leaking and she couldn't get a work order because the laundry room was locked. I received the call from my DM, Casey Carter, at 8:31 am to let me know about the situation. I gathered some tools and a new toilet flange in case it was needed and headed over to B2. I knocked twice, once loudly, and once louder than the first knock. The tenant would not open the door. At 8:47, I phoned the tenant from the office phone and left a voicemail for her to please call me back so I could get the

from South Carolina. She said you weren't going to be here today." And walked away.

8/18/21

I received an email from my regional manager Karen Murphy telling me that the tenant had reported mold in her apartment. I had not received any work orders for this issue, nor had it been mentioned to me by the tenant. DM Casey Carter and I set up a time for Tuesday August 24th to go to the apartment and investigate the situation.

8/24/21

DM Casey Carter and Maintenance Jonathan went into the tenant's apartment. What they discovered was not mold, but nicotine dust balls on top of where the air conditioner unit was. They offered to clean the area and spray dsv on the spot to give the tenant some piece of mind, but she refused. She told the DM she had filled out a work order. I had not received one.

While on my lunch, I had a Facebook notification come through on my phone. I had posted asking people to pray for us as we had lost everything in a house fire on 8/15. The notification was "Susan Dale Austin reacted to your post with haha".

I was told she screenshotted my post and posted it to her personal page. She was commenting things such as "I wish she would've died, karma is a bitch".

9/2/21

I received a complaint form from B2. It was incomplete, but stated "My headlight was broken out by a tenant at this property.

EXHIBIT A – STATE COURT FILE
CONFIDENTIAL

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

# SUMMERSVILLE POLICE DEPARTMENT

195 ROGERS AVE.
SUMMERSVILLE, MO  65571

# Call For Service
## Event Detail Page

| Event # | Print Date |
|---|---|
| **21-000058** | **10/14/2021** |

| | | | | | |
|---|---|---|---|---|---|
| Date **10/13/2021** | Day **Wednesday** | Time **00:00:00** | Dispatcher ID **500** | Agency **SPD** | Source **C** |

| Beat | Sector | District | Incident # |
|---|---|---|---|
| | | | |

| Fire # | Med # | Other Inc. #1 | Other Inc. #2 |
|---|---|---|---|
| | | | |

**Call For Service / Event**

| Address | **720** | **CHERRY STREET** | | |
|---|---|---|---|---|
| Location | **720 CHERRY STREET** | | | |
| City | **SUMMERSVILLE** | County **TEXAS** | State **MO** | |

## REPORTING PARTY INFORMATION

| Name | **SIMS, DAWN  06/07/1980** |
|---|---|
| Location | **720 CHERRY STREET** |
| Phone | **417   247-0468**   Requests Contact **N** |

## RESPONSE INFORMATION

| Unit | **Kevin F. Jotz** | Unit | | Total Consumed Minutes of all associated Units : |
|---|---|---|---|---|
| Officer ID | **500 KEVIN JOTZ** | Officer ID | | |
| Dispatch Time | **10/13/2021 14:15:00** | Dispatch Time | | **105** |
| Enroute Time | | Enroute Time | | |
| Arrive Time | | Arrive Time | | Dispatch ID **500** |
| Clear Time | **10/13/2021 16:00:00** | Clear Time | | |

## CALL DETAILS

| Call Type | **HARR** | **Harrasment** | Priority **0** |
|---|---|---|---|

**Description :**

RP contacted police asked that police come by the Summersville Estates apartment managers office.

| Disposition | **WI** | **Warning Issued** | EMD Code |
|---|---|---|---|

Comments   *I Chief Jotz, responded to and contacted Summersville Estates manager Dawn Sims, Sims advised that a resident of the apartments Susan Austin, has been yelling and screaming out in the court yard disturbing and intimidating the other residents. Manager Sims, also explained that Austin has verbally abused her on multiple occasion calling Sims a murderer and screaming at her in front of other residents, Austin has the cell phone number of Manager Sims, and Austin sends Sims text messages attacking Sims causing her to feel threatened at work and at home.*
*I contacted Austin at her apartment B2, at the time of contact Austin was under the influence of an alcoholic beverage, while I was at the location a Texas County Deputy came to the apartment of Austin and served her with a restraining order for another person that she has caused to feel threatened . Austin in a moment of anger in my presents tore up the order and threw it on the ground, I had Austin pick up the trash.*
*I explained that her actions are coming very close to harassment of Manager Sims and other residents, and if another incident occurs she will be criminally liable.*

EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW   Document ... Filed 01/12/23   Page 518 of 786
CONFIDENTIAL

EXHIBIT E

MACO1050



EXHIBIT A - STATE COURT FILE
CONFIDENTIAL

EXHIBIT F

MACO1056



EXHIBIT A - STATE COURT FILE
CONFIDENTIAL

EXHIBIT G
MACO1080

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

**Archived:** Monday, March 28, 2022 11:23:58 AM
**From:** Sheila Calvert
**Sent:** Mon, 29 Nov 2021 15:20:30
**To:** Casey Weyh
**Subject:** FW: New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

---

**From:** Michelle Ragsdale <michelle@macocompanies.com>
**Sent:** Monday, November 29, 2021 9:19 AM
**To:** Sheila Calvert <sheila.calvert@macocompanies.com>
**Subject:** FW: New submission from Contact MACO Management - Susan Austin

**From:** Susan Austin <webmaster@macocompanies.com>
**Sent:** Saturday, November 27, 2021 3:40 PM
**To:** Michelle Ragsdale <michelle@macocompanies.com>
**Subject:** New submission from Contact MACO Management - Susan Austin

| Name |
|---|
| Susan Austin |
| **City of Interest** |
| Summersville |
| **State of Interest** |
| Missouri |
| **Phone** |
| (417) 247-8832 |
| **Email** |
| saustin4853@gmail.com |
| **Send Us a Message** |
| I have been evicted, but that won't stop me from testifying against your lying employees, Dawn Simms and Karen Murphy. I had Covid and rhey refused the SAFHR program for rental arrears. I am a witness in a wrongful death lawsuit against Dawn Simms, she has lied about inspections and she has lied to USDA and HUD about me. You will not win this wrongful death case. |

EXHIBIT H

**From:** Sheila Calvert
**Sent:** Mon, 29 Nov 2021 15:20:08
**To:** Maci Earnheart; Casey Weyh
**Subject:** FW: New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

---

**From:** Michelle Ragsdale <michelle@macocompanies.com>
**Sent:** Monday, November 29, 2021 9:18 AM
**To:** Sheila Calvert <sheila.calvert@macocompanies.com>
**Subject:** FW: New submission from Contact MACO Management - Susan Austin

Wow that is some strong accusations.. she is a peach

**From:** Susan Austin <webmaster@macocompanies.com>
**Sent:** Saturday, November 27, 2021 3:56 PM
**To:** Michelle Ragsdale <michelle@macocompanies.com>
**Subject:** New submission from Contact MACO Management - Susan Austin

| Name |
| --- |
| Susan Austin |

| City of Interest |
| --- |
| Summersville |

| State of Interest |
| --- |
| Missouri |

| Phone |
| --- |
| (417) 247-8832 |

| Email |
| --- |
| saustin4853@gmail.com |

| Send Us a Message |
| --- |
| You and your lying employees are responsible for an innocent persons death. What are you going to do about it? Dawn Simms is a killer. |

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

**Archived:** Monday, March 28, 2022 11:24:04 AM
**From:** Cpu Admin
**Sent:** Sun, 28 Nov 2021 22:00:57
**To:** Maci Earnheart
**Subject:** New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

| Name |
| --- |
| Susan Austin |

| City of Interest |
| --- |
| Summersville |

| State of Interest |
| --- |
| Missouri |

| Phone |
| --- |
| (417) 247-8832 |

| Email |
| --- |
| saustin4853@gmail.com |

| Send Us a Message |
| --- |
| You hire these idiots and call them 'property managers'? See you in court and your idiot Dawn Simns, whose negligence caused rhe death of my friend on one of your properties |

**Archived:** Monday, March 28, 2022 11:23:57 AM
**From:** Sheila Calvert
**Sent:** Wed, 23 Mar 2022 15:42:58
**To:** Maci Earnheart
**Subject:** FW: New submission from Contact MACO Management - Susan Austin
**Sensitivity:** Normal

---

**From:** Michelle Ragsdale <michelle@macocompanies.com>
**Sent:** Monday, December 6, 2021 10:01 AM
**To:** Sheila Calvert <sheila.calvert@macocompanies.com>
**Subject:** FW: New submission from Contact MACO Management - Susan Austin

**From:** Susan Austin <webmaster@macocompanies.com>
**Sent:** Friday, December 3, 2021 4:26 PM
**To:** Michelle Ragsdale <michelle@macocompanies.com>
**Subject:** New submission from Contact MACO Management - Susan Austin

| Name |
|---|
| Susan Austin |

| City of Interest |
|---|
| Summersville |

| State of Interest |
|---|
| Missouri |

| Send Us a Message |
|---|
| Dawn Simms, the propperty manager at Summersville Estates, lied to the court to protect herself. It doesn't affect me because I am moving to a better place despite her lies about me. But she is in very deep trouble. She is being investigated for violating the Fair Housing Act and other agencies. She lied to USDA among others. The information has been sent to the OIG.. |

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

EXHIBIT L

**From:** Susan Austin <saustin4853@gmail.com>
**Sent:** Friday, June 17, 2022 1:53 PM
**To:** Summersville <summersville@macoapts.com>
**Subject:** Dawn Simms

Dawn Simms is the most incompetent individual I have ever had the misfortune to meet. She opened my apartment for people to enter without my permission or knowledge, she forged my inspections, she spent hours locked in her office with men. See you in court.

MACO Disclaimer: The information transmitted herewith is intended only for use by the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission , dissemination, distribution, copying, or other use of, or taking of any action in reliance upon this information is strictly prohibited. If you have received this communication in error, please contact the sender and delete the material from your computer.



Electronically Filed - Texas - October 03, 2022 - 02:49 PM

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

**From:** Susan Austin <saustin4853@gmail.com>
**Sent:** Sunday, September 11, 2022, 5:46 PM
**To:** Summersville <summersville@macoapts.com>
**Subject:** Dawn Sims

Please inform Dawn Sims the definition of perjury committed during a legal deposition.

MACO Disclaimer: The information transmitted herewith is intended only for use by the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, you are hereby notified that any review, retransmission , dissemination, distribution, copying, or other use of, or taking of any action in reliance upon this information is strictly prohibited. If you have received this communication in error, please contact the sender and delete the material from your computer.

EXHIBIT O

Electronically Filed - Texas - October 03, 2022 - 02:49 PM



EXHIBIT P

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )        Cause No.      21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO COMPEL AND THIRD REQUEST FOR SANCTIONS**

COMES NOW, Defendants Maco Management Co. Inc. (hereinafter "Maco") and

Summersville Estates, L.P. (hereinafter "Summersville"), by and through undersigned counsel,

and for Defendants' Response in Opposition to Plaintiffs' Motion to Compel and Third Request

for Sanctions states as follows:

**Discovery Dispute Background**

1. Plaintiffs First Amended Petition for Damages (Wrongful Death) alleges three counts

stemming from a single fire on June 27, 2021 within a single apartment unit rented by Decedent,

and owned and managed by Defendants. *See* 1st. Am. Pet.

- Count I: General Negligence via *respondeat superior* against Maco

- Count II: General Negligence via *respondeat superior* against Summersville

- Count III: Negligent Hiring and Supervision against Maco and Summersville

2. Plaintiffs First Amended Petition does not include a count against employee Sims nor does

it include a count for fraud.

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

3.    Plaintiffs served Defendants with 1st Supplemental Requests for Production on August 26, 2022.  Defendants timely provided objections and responses on September 2, 2022.[1]

4.    That same day, Plaintiffs send a golden rule letter to Defendants' demanding an immediate response.

5.    A few days later, September 9, 2022, Plaintiffs file a Motion to Compel and request a hearing be set as early as September 20 (despite the actual deadline for such responses not being due until September 25, 2022).

6.    Later on September 9, 2022, Defendants send a written response to Plaintiffs further explaining their objections and position on the discovery requests, including caselaw citation and a proposal to produce under a more limited time/scope.  *See* **Exhibit A** attached.

7. Plaintiff responds within minutes that "The offered production will not suffice and it remains Plaintiffs' position that we are entitled to the production of such obviously relevant documents."  *See* **Exhibit A** attached.

8.  In a further attempt to resolve, Defendants follow up on September 12, 2022 with a phone call to Plaintiffs' counsel wherein counsel refused to limit time/scope and argued entitlement to all documents requested to prove fraud and potential criminal perjury of witness and employee Sims.

9. Lastly, in a continued effort of cooperation, Defendants produced on September 23, 2022 the few remaining documents not previously requested or disclosed responsive to the 1st Supplemental Requests as they pertain to Decedent's unit.  *See* **Exhibit B** attached stating:

> Maco produced MACO001-2148 (previously produced up to 2124), 911 recording (previously produced), and 11 voicemail recordings (previously produced). Included in this production is:
> - all Inspection Reports related to the unit of Decedent, MACO227-259, MACO371-402.

---

[1]Defendants served objections without a more narrowed production based on Plaintiffs' counsel prior argument that Defendants' objection with a "subject to and without waiving the same" was a conditional discovery response that waives the discovery objection.  *See* Pl. Mot. For relief filed July 5, 2022.  The Court's subsequent Order of Sanctions appeared to accept this argument.  *See* Order dated July 26, 2022.

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

- all Inspection Reports completed in June of 2021 at Summersville, MACO348-359, MACO344-351, MACO2035-2102.
- all Inspections Reports completed on the units of Plaintiffs' named witnesses and former tenants Susan Austin (scattered throughout tenant file MACO448-1128), Bridgette Kittner (scattered throughout tenant file MACO1693-2024), and Rebecca Johnson (scattered throughout tenant file MACO1436-1692).
- all Fire Stop and Smoke Alarm Inspection Reports for Summersville during Decedent's tendency (noting battery changes), MACO 1131, MACO2133-2144.
- all 24-Hour Notices still in Maco's possession for the unit of Decedent, scattered throughout tenant file MACO448-1128, MACO2145, MACO2128-2132, MACO2146-2148.[2]

### Legal Argument and Analysis

10. "The discovery process was not designed to be a scorched earth battlefield upon which the rights of the litigants and the efficiency of the justice system should be sacrificed to mindless overzealous representation of plaintiffs and defendants. *State ex rel. Madlock v. O'Malley*, 8 S.W.3d 890, 891 (Mo. 1999).

11. Discovery must relate to a claim of the party seeking the discovery. Mo. R. 56.01(b)(1).

12. Even if the discovery is potentially related to the claim, the discovery must also be proportional to the needs of the case considering the totality of the circumstances, including but not limited to, the importance of the discovery in resolving the issues and whether the burden or expenses of the proposed discovery outweighs its likely benefit. Mo. R. 56.01(b)(1).

13. Moreover, such requests must be geared toward ascertaining the truth, eliminating surprise, narrowing issues, and facilitating trial preparation, not a fishing expedition or for the purpose of harassment. *See State ex rel. Kawasaki Motors Corp. USA v. Ryan, 777 S.W. 2d 247, 251 (Mo. App. 1989); State ex rel. An. Standard Ins. Co. of Wisconsin v. Clark, 243 S.W.3d 526, 531 (Mo. App. 2008).*

---

[2] It is important to note that Maco possesses and disclosed quarterly inspection reports for each quarter from Sims' start of employment to the date of the incident for Decedent's unit as well as the three former tenants disclosed as witnesses for Plaintiffs. The only time period missing inspection reports correlates to the COVID time period where inspections were halted due to the national, health pandemic.

3

14.    Here, RFP 1 broadly requests "all" documents . . . and writings of any kind identified, referenced, or referred to in any way during the deposition of Sims.  This request does not specify the specific documents/writings "with reasonable particularity" as required by Missouri Supreme Court Rule 58.01.  *See also State ex rel Wilson v. Copeland*, 685 S.W. 2d 252 (Mo. App. 1985) (finding an RFP that commences "[a]ny and all documents, reports, statements, or any other written or transcribed material ..." can scarcely be regarded as reasonably particular).  This request would require counsel to parse through a deposition and speculate as what testimony may be argued as referencing a document and speculate as what document may be referenced.  Defendants have offered to more fully respond if a specific list that reasonably identifies the documents requested is provided.  To date, no such list has been provided.

15.    RFP 2, 3, and 4 request **all Summersville units**' inspection reports, battery logs, and 24-hour notices from **2018 to present**.   This request is not limited to the unit or timeframe at issue in the First Amended Petition.  Such documents for the 19 other units in the 3 years prior and year following the incident cannot reveal admissible evidence for the specific negligence alleged, that is an alleged failure to complete an inspection of Decedent's unit in June of 2021.  The documents requested at times contain personal and private information about a tenant's condition of living.  The documents requested are a fishing expedition to <u>try</u> to find documents that could be argued as contrary to Sims' testimony on matters of insignificant consequence to the issue in this case.[3]  This request is further a

---

[3]Though quarterly inspection reports for each tenant are retained by Maco in the normal course of business (and all such have been produced for Decedent), the associated 24-hour notices for such inspections are not routinely retained. Plaintiffs mischaracterize Sims' testimony in their motion as relaying certainty in possessing all such documents and argues relevance because lack of possession would reveal perjury.  Yet, the specific testimony reveals uncertainty as to possession and states:

> Q: Okay. Dawn, are you required to give tenants notice when you enter their apartment?
> A: Yes.
> Q Okay. To provide them written notice?
> A: Yes, a 24-hour notice.
> Q: Okay. Does it look like this one, Plaintiff's Exhibit 27?
> A: Correct.

form of harassment (and coupled with the continued contact by witness and former tenant Austin)[4] further insinuates a threat to witness Sims that if she continues to support Maco in this litigation then someone will pursue a criminal perjury claim against Sims. The potential benefit that may be discovered from such documents is substantially outweighed by the time, cost, violation of tenant privacy rights, and witness harassment associated with gathering, producing, redacting, and reviewing such.

16. Lastly, Missouri courts encourage Judges to issue sanctions sparingly. S*ee State ex rel. Area 25 Trial Off. v. Clayton,* 628 S.W.3d 263, 267 (Mo. S.D. App. 2021); *E.K.H.-G. v. R.C.,* 613 S.W.3d 449, 454–55 (Mo. E.D. App. 2020). Missouri provides two grounds for seeking and granting sanctions, Rule 55.03 related to bad faith and Rule 61.01 related to discovery failures. Each rule having its own conditions and interpreting caselaw setting forth the specific circumstances when sanctions are warranted.

17. Here, Defense counsel exercised a legal right to timely object to burdensome and harassing discovery requests, supporting such objections with reasonable legal arguments and case law. Requesting and granting sanctions for engaging in such a routine (if not required) practice of law given the specific circumstances set forth above, goes against Missouri precent and policy related to sanctions.

18. For the reasons stated herein, Defendants requests this Court deny Plaintiffs' Motion to Compel and Third Request for Sanctions.

---

Q: Okay. Dawn, did you do any of these notices after December of 2018?
A: Yes.
Q: Do you have records of those?
**A: Some of them I do believe I may -- I may have in my master file here.**
Depo of Sims 118:20-119:8.

[4]*See* Defendants' Motion for Order to Protect Witness per 491.600 filed simultaneously and incorporated herein.

5

WHEREFORE, Defendants pray this Court deny Plaintiffs' Motion to Compel and Third Request for Sanctions, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 3rd day of October 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/        MARIE F. PUDLOWSKI

6

Childress Ahlheim Cary LLC

Attorneys at Law

Marie F. Pudlowski
Direct Dial: (314) 584-4568
mpudlowski@jchildresslaw.com

September 9, 2022

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1125 Olivette Executive Parkway
St. Louis, MO 63132
bjklar@lawsaintlouis.com

IN RE: *Jennifer Bumeter and Eric Meier v. Maco Management Co., Inc. and Summersville Estates, LP*; Circuit Court of Texas County, Missouri; Cause No: 21TE-CC00360
Our File Number: 46.2444

Dear Brandon:

I am writing in response to your letter September 2, 2022 related to the ongoing discovery dispute over the Supplemental Requests for Production directed to Maco. Please accept the below as a good faith effort to resolve this matter without the need for court involvement.

From your letter and motion to compel, it appears you are arguing that Sims' (an employee witness') reference to any indication of willingness to produce documents creates a legal obligation for the employer to produce such documents. I am aware of no Missouri rule or case that holds a witness's reference to or referral to a document in response to questioning by opposing counsel makes such document automatically discoverable or relevant. For a Court to hold otherwise, would create a loophole in the rules of discovery that allows counsel to just ask about documents to obtain production of such documents, regardless of the document's relevancy or the proportional need in a case. Thus, I do not agree with your position that we are required to produce because Ms. Sims references a document and/or indicated a willingness to produce. Please let me know if I am misunderstanding your position or if you have a rule or caselaw that states otherwise. I would be happy to reconsider my position based on such information.

We offer the below additional position more specific to each request.

- **RFP 1**: You broadly request "all" documents . . . and writings of any kind identified, referenced, or referred to in any way during the deposition of Sims. This request is broad, vague, and ambiguous in that it does not specify the specific documents/writings "with reasonable particularity" as required by Missouri Supreme Court Rule 58.01. *See also State ex rel Wilson v. Copeland*, 685 S.W. 2d 252 (Mo. App. 1985) (finding an RFP that commences "[a]ny and all documents, reports, statements, or any other written or transcribed material ..." can scarcely be

EXHIBIT A - STATE COURT FILE

Case 6:23-cv-03015-BCW Document 1-1 Filed 01/12/23 Page 536 of 786

EXHIBIT A

regarded as reasonably particular). This request would require counsel to parse through a deposition and speculate as what testimony may be argued as referencing a document and speculate as what document may be referenced. Given the clear difference of perception you and I have displayed throughout this case and the speculation required, a complete response would require further details and clarification from you. Should you serve supplemental request(s) that provides a list of the specific documents you deem referenced in Sim's deposition, I would be happy to respond as necessary to each.

- **RFP 2, 3, and 4**: You request **all Summersville units**' inspection reports, battery logs, and 24-hour notices from **2018 to present**. Your request is not limited to information related to the decedent's unit. Your request is not limited to information in existence prior to the incident. Your request is not limited to information regarding documents pertaining to the status of units near the time of the incident. Yet, Plaintiffs' claims are limited to a fire that occurred in decedent's unit only and on a single date.

    I do not see how the inspection reports and associated documents from 2018 into early 2020 of other units could contain any admissible information to Plaintiffs' specific claim. I do not see how the inspection reports and associated documents from after the incident to present could contain any admissible information to Plaintiffs' claim, especially considering Missouri rules related to subsequent remedial measures. More significantly, the time, burden, and expense of gathering, redacting, and producing such voluminous documents is not "proportional to the case needs" as required by Rule 56.01(B)(1).

    Despite this position, we have provided all inspection reports for decedent's unit. We provided all inspection reports completed the week the fire occurred. We provided all inspection reports completed in June 2021 pertaining to decedent's building. We also provided all inspection reports of the units of the three former Maco tenants listed as witnesses for Plaintiff.

    Should you be willing to revise and limit these three requests to decedent's unit and Jan 1, 2020 to the date of the incident, we would be happy to respond and produce any documents in possession that are responsive to RFP 2, 3, and 4.

Thank you for your continued consideration. I look forward to your response and would welcome a call to discuss in more detail.

Sincerely,

/s/ *Marie F. Pudlowski*

MARIE F. PUDLOWSKI

MFP
cc:    David T. Ahlheim

1010 Market Street, Suite 500 St. Louis, MO 63101 Phone: 314.621.2005 Fax: 314.621.9802 www.37filders.com
Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 53 of 78

EXHIBIT A - STATE COURT FILE

EXHIBIT A

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Friday, September 9, 2022 5:14 PM
**To:** Tanya Liverar <TLiverar@jchildresslaw.com>
**Cc:** Marie Pudlowski <MPudlowski@jchildresslaw.com>; Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** Re: 46.2444; Bumeter and Meier v. Maco Management

Marie:

Please feel free to give me a call Monday. The offered production will not suffice and it remains Plaintiffs' position that we are entitled to the production of such obviously relevant documents. Hopefully we can narrow the issues some on Monday. Thanks, and have a great weekend!

Brandon

Sent from my iPhone

On Sep 9, 2022, at 4:53 PM, Tanya Liverar <TLiverar@jchildresslaw.com> wrote:

Attached please find correspondence from Marie Pudlowski regarding the above referenced matter. Thank you.

**TANYA E. LIVERAR**
**LEGAL ASSISTANT**
**1010 Market, Suite 500 | St. Louis, Missouri 63101**
**Phone: 314.621.9800 | Fax: 314.621.9802**
**www.jchildresslaw.com | tliverar@jchildresslaw.com**

This e-mail message, including attachments, is confidential, intended only for the named recipient and may contain information that is privileged, attorney work product or exempt from disclosure under applicable law. If you have received this message in error, or are not the named recipient, please immediately notify the sender listed above and delete this message from your computer. Do not disclose its contents to any other person or store or copy them in any medium. Thank you for your cooperation.

EXHIBIT A - STATE COURT FILE

EXHIBIT A

Electronically Filed - Texas - October 03, 2022 - 02:49 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, an individual | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| ERIC MEIER, an individual | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.: 21TE-CC00360 |
| | ) | |
| v. | ) | Division: |
| | ) | |
| MACO MANAGEMENT COMPANY, INC., | ) | |
| A Missouri Limited Liability Company | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P., | ) | |
| A Missouri Limited Liability Company | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT MACO MANAGEMENT COMPANY, INC.'S OBJECTIONS AND 1st SUPPLEMENTAL RESPONSES TO PLAINTIFFS' 1st SUPPLEMENTAL REQUESTS FOR PRODUCTION OF DOCUMENTS**

COMES NOW Defendant Maco Management Company, Inc., by and through counsel,

Childress Ahlheim Cary LLC, and provides its Objections and 1st Supplemental Responses to

Plaintiffs' 1st Supplemental Request for Production of Documents as follows:

**PRELIMINARY STATEMENT AND GENERAL OBJECTIONS**

**The below objections and responses are submitted on behalf of Defendant Maco Management Company, Inc. (hereinafter "Maco") as the responding party to these Interrogatories/Requests for Production. Nothing in Maco's specific answers should be construed as a waiver of these general objections.**

**1. Maco hereby expressly reserves the right to object to the introduction into evidence, at trial, or in any other proceeding of any information or documents contained in or referred to in the following Interrogatories/Requests for Production on any ground. Maco does not concede that the information it discloses is relevant or material to the subject matter at issue in this case, admissible in evidence, or reasonably calculated to lead to discovery of admissible evidence.**

EXHIBIT A - STATE COURT FILE

Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 539 of 786

EXHIBIT B

2.  Maco's responses to these Interrogatories/Requests for Production are limited to information and documents not protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, the insurer-insured privilege, or any other privilege or immunity; insofar as any Interrogatories/Requests for Production calls for the disclosure of any such information or documents, Maco objects to the Interrogatories/Requests for Production on each such ground.

3.  Maco's responses are also limited to information reasonably related to the subject matter of this action and information currently available to Maco based on a reasonable and thorough search of those places where such information could reasonably be expected to be found.

4.  Maco's investigation continues.  Maco expressly reserves the right to modify, supplement, or amend any or all of its responses if necessary or appropriate.

**1st SUPPLEMENTAL PRELIMINARY STATEMENT: Subject to and without waiving the above or below objections: Maco produced MACO001-2148 (previously produced up to 2124), 911 recording (previously produced), and 11 voicemail recordings (previously produced).  Included in this production is:**
- **all Inspection Reports related to the unit of Decedent, MACO227-259, MACO371-402.**
- **all Inspection Reports completed in June of 2021 at Summersville, MACO348-359, MACO344-351, MACO2035-2102.**
- **all Inspections Reports completed on the units of Plaintiffs' named witnesses and former tenants Susan Austin (scattered throughout tenant file MACO448-1128), Bridgette Kittner (scattered throughout tenant file MACO1693-2024), and Rebecca Johnson (scattered throughout tenant file MACO1436-1692).**
- **all Fire Stop and Smoke Alarm Inspection Reports for Summersville during Decedent's tendency (noting battery changes), MACO 1131, MACO2133-2144.**
- **all 24-Hour Notices still in Maco's possession for the unit of Decedent, scattered throughout tenant file MACO448-1128, MACO2145, MACO2128-2132, MACO2146-2148.**

## REQUESTS

1.  All documents, statements, recordings, reports, records, photographs, videotapes and writings of any kind identified, referenced or referred to in any way during the deposition of Dawn Sims, conducted August 24, 2022 ("Deposition"), and which were not previously produced to Plaintiffs.

**RESPONSE: Objection.  Maco objects to this interrogatory as overbroad, vague, and ambiguous to the extent it fails to specify the documents to be produced with reasonable**

particularity as required by Missouri Supreme Court Rule 58.01. **S***ee State ex rel Wilson v. Copeland***, 685 S.W, 2d, 252 (Mo.Ct.App.SD 1985). Maco further objects to the extent it seeks documents protected as intangible attorney work product and/or impermissibly seeks documents obtained in anticipation of litigation and/or in preparation for trial by defendants, its counsel, its insured, or its consultants. It calls for documents protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, and the insurer-insured privilege.**

2.      All Inspection Reports conducted by Dawn Sims at Summersville Estates from June

1, 2021 to the present.

**RESPONSE: Objection. Maco objects to said Request as overly broad and unduly burdensome as drafted as it is not sufficiently limited to a relevant scope or time. These reports pertain to multiple units over multiple years (most taking place after the incident). Maco objects to said Request because the majority, if not all, the information sought is immaterial and irrelevant to any issue in the case and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the burden associated with such a response is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

3.      All documents, including logs, journals, and work orders, reflecting Dawn Sims'

purported replacement of batteries in smoke detectors/alarms during the entirety of her employment

as property manager.

**RESPONSE: Objection. Maco objects to this Request as vague and ambiguous to the extent it refers to "all documents" "reflecting purported replacement of batteries," making a response impossible without speculation. Maco objects to said Request as overly broad and unduly burdensome as drafted as it is not sufficiently limited to a relevant scope or time. These documents pertain to multiple units over multiple years (including years after the incident took place). Maco objects to said Request because the majority, if not all, the information sought is immaterial and irrelevant to any issue in the case and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the burden associated with such a response is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

4.      All 24-Hour Notices to Enter Apartment prepared by Dawn Sims from and after

December 1, 2018.

**RESPONSE: Objection. Maco objects to said Request as overly broad and unduly burdensome as drafted as it is not sufficiently limited to a relevant scope or time. These notices pertain to multiple units, over multiple years (including years after the incident took place), and issued quarterly each year. Maco objects to said Request because the majority, if not all, the information sought is immaterial and irrelevant to any issue in the case and is**

**not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the burden associated with such a response is not proportional to the needs of the case as required by Rule 56.01(b)(1)**.

5.     A photograph of Dawn Sims' "Making a Difference Award", as described by her during the Deposition.

**RESPONSE: MACO2125-2126.**

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim     #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of September 2022, the foregoing was served via electronic mail upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

/s/ MARIE F. PUDLOWSKI

Electronically Filed - Texas - October 05, 2022 - 02:31 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER, )
)
and )
)
ERIC MEIER, ) Cause No.: 21TE-CC00360
)
      Plaintiffs, )
v. )
)
MACO MANAGEMENT CO., INC., and )
)
SUMMERSVILLE ESTATES, L.P. )
)
      Defendants. )

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Response to Defendants' Motion for Protective Order ("Motion"), state as follows:

1. This matter is not a criminal proceeding, as alleged in paragraph 1 of the Motion.

2. Counsel for Plaintiffs has made no contact whatsoever with Ms. Susan Austin since her deposition, which took place on June 29th, 2022—despite Defendants' intimations in paragraph 21 of the Motion.

3. The undersigned does not represent Ms. Austin in the present litigation or any other. As a result, the undersigned has no control over her actions.

4. Plaintiffs do not otherwise object to a protective order requiring Ms. Austin to cease further contact with Ms. Sims.

EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW Document 1-1 Filed 01/12/23 Page 543 of 786

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for an Order granting the identified relief as to only Ms. Dawn Sims, and for any such other relief and sanctions as this Court deems just and proper under the circumstances

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
*Attorney for Plaintiffs*
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 5th day of October 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar___

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER,                )
                                 )
and                              )
                                 )   Cause No.: 21TE-CC00360
ERIC MEIER,                      )
                                 )
      Plaintiffs,              )
                                 )
v.                               )
                                 )
MACO MANAGEMENT CO., INC., and   )
                                 )
SUMMERSVILLE ESTATES, L.P.       )
                                 )
      Defendants.              )

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Memorandum in Support of Motion to Compel, state as follows:

1. On several occasions, Defendants Maco Management Co., Inc. and Summersville Estates, L.P. (collectively, "Defendants"), through counsel, refused to comply with Missouri law regarding discovery practice.

2. First, Defendants failed to properly disclose relevant information which they intended to, and did, use during deposition. As a result, this Court struck portions of the improper deposition, required Defendants produce the relevant and responsive documents, and deferred an order of attorneys' fees to Plaintiffs.

3. Next, Defendants refused to produce for deposition Ms. Dawn Sims—an employee of Defendants who was, and remains, at all times within their control and employ—or another corporate representative of Defendants.

EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 545 of 786

4. Such refusal continued for weeks despite Plaintiffs' counsel repeatedly advising counsel for Defendants that their asserted position was not only without precedent under Missouri law, but the same was actually directly contrary to Missouri's Rules of Civil Procedure.

5. On July 8, 2022, due to Defendants' continued refusal to comply with Missouri law or Rules of Civil Procedure, Plaintiffs filed a Notice of Deposition for the corporate representative of Defendants—a party to this action—to be conducted on July 15, 2022 ("Maco Deposition").

6. The Maco Deposition was properly noticed according to Missouri law and Rule 57.01(b)(1).

7. Counsel for Plaintiffs advised Defendants' counsel several times of his intention to obtain a Certificate of Nonappearance and seek sanctions should Defendants fail to produce their client for the properly noticed Maco Deposition.

8. Though Defendants appeared by counsel at the Maco Deposition, they **failed and refused to produce their client**. *See* Record of Nonappearance, attached hereto and incorporated herein by reference as **Exhibit 1**, as well as corresponding exhibits used therein, attached hereto and incorporated herein by reference as **Exhibit 2**.

9. As a result of Defendants' failure to produce their client for the Maco Deposition, Defendants are subject to sanctions from this Court as provided by Missouri Rule 61.01. *Kingsley v. Kingsley,* 716 S.W.2d 257, 260 (Mo. 1986).

10. Finally, most recently, Defendants flagrantly ignore Missouri rules regarding discovery practice and again refuse to produce relevant documents which were unquestionably

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

called into the scope of this litigation during the deposition of Ms. Sims ("Sims Documents").

11. As a result of Defendants' repeated, unjustifiable refusal to comply with Missouri discovery practice, Plaintiffs filed a Motion to Compel the Sims Documents on September 8, 2022 ("Motion to Compel").

12. On October 3, 2022, Defendants filed a Memorandum in Opposition to the Motion to Compel ("Memorandum in Opposition"). The Memorandum in Opposition, as seemingly par for the course, is laden with misrepresentations and attempts to mislead this Court.

13. Defendants, who have **already been sanctioned once by this Court for discovery violations**, try to paint themselves as a "victim" of their own refusal to comply with Missouri law.

14. Defendants' counsel repeatedly attempts to redefine Missouri law regarding discovery practice and, on more than one occasion, proudly refused to comply with Missouri law "absent a court order". As a result, Plaintiffs request this Court issue such an Order— as well as necessary further relief to deter this continued conduct.

15. In example, Defendants unabashedly and incorrectly claim Plaintiffs must allege a count in fraud for the forging of apartment inspections to become relevant in the instant litigation—a wrongful death case in which Plaintiffs **explicitly pled Ms. Sims forged apartment inspections**. Plaintiffs need not explain to this Court the relevance of such a document, as well as its relevance to Ms. Sims's credibility during trial. *See* Memorandum in Opposition, paragraphs 2, 8.

16. Next, in the Memorandum in Opposition, Defendants entirely misrepresent communications with Plaintiffs' counsel. *See* Memorandum in Opposition, paragraph 7. Defendants' counsel quotes an email from the undersigned, but creatively cuts the same to fit her own narrative. This Court need only review Defendants' **Exhibit A** to make such a determination for itself.

17. Further, counsel for Defendants freely provides exhibits demonstrating her correspondence with the undersigned, but she neglects to provide any such correspondence supporting her claim that she offered to respond to a specific list provided by Plaintiffs. *See* Memorandum in Opposition, paragraph 14. No such correspondence exists, no such offer was ever made, and Defendants again seek to mislead this Court.

18. In a final attempt to mislead this Court, Defendants cut portions of Ms. Sims' deposition testimony to fit the arguments made in the Memorandum in Opposition. *See* Memorandum in Opposition, footnotes on page 4 and 5. The below footnote contains the full conversation, which was cut by Defendants[1].

---

[1]  Q   Okay.  Dawn, did you do any of these notices after December of 2018?
   A   Yes.
   Q   Do you have records of those?
   A   Some of them I do believe I may -- I may have in my master file here.
   Q   **Okay.  So you continued to use these 24-hour notices after December of 2018?**
   A   **Yes.**
   Q   **Every time you went into a tenant's apartment unit?**
   A   **Yes.**
   Q   **So then you would have an extensive record considering you're supposed to do quarterly inspections of every tenant, right?**
   A   **Yes.**
   Q   **Okay.  Well, I only have up to December of 2018, so can you do me a favor and find all of your other notices and produce those?**
   A   **Yep.**

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

19. Counsel for Defendants has exhibited a remarkable level of bad faith during the discover practice of this litigation, and Plaintiffs respectfully request this Court order sanctions as appropriate to deter such further conduct.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for an Order and/or sanctions compelling Defendants to pay the attorneys' fees and costs related to the Maco Deposition, for an Order and/or sanctions granting Plaintiffs' attorneys fees for the deposition of Susan Austin, for an Order and/or sanctions granting Plaintiffs' attorneys fees in preparing for and arguing the instant motion and for any such other relief and sanctions as this Court deems just and proper under the circumstances

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
        BRANDON J. KLAR, #72884
        *Attorney for Plaintiffs*
        1125 Olivette Executive Parkway
        St. Louis, Missouri 63132
        Tel: (314) 863-1117
        Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 5th day of October 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar___

EXHIBIT A - STATE COURT FILE

IN THE CIRCUIT COURT OF TEXAS COUNTY

STATE OF MISSOURI

JENNIFER BUMETER and ERIC
MEIER,

        Plaintiffs,

vs.

        Cause No.
        21TE-CC00360

MACO MANAGEMENT CO., INC.
And SUMMERSVILLE ESTATES,
L.P.,

        Defendants.

**EXHIBIT**

**1**

RECORD OF NONAPPEARANCE
TAKEN ON BEHALF OF THE PLAINTIFFS
July 15, 2022

KELLY J. DANIELS
7405 RAY AVENUE
ST. LOUIS, MO   63116
314.570.5428

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER and       )
ERIC MEIER,
                           )
        Plaintiffs,        )
vs.                        ) Cause No.
                           ) 21TE-CC00360
                           )
MACO MANAGEMENT CO.,       )
INC. And SUMMERSVILLE
ESTATES, L.P.,
                           )
        Defendants.        )

        RECORD OF NONAPPEARANCE, taken on July 15, 2022, between the hours of 12:50 in the afternoon and 1:02 in the afternoon of that day by Zoom, before KELLY J. DANIELS, Certified Court Reporter, #641, within and for the State of Missouri and Certified Shorthand Reporter within and for the State of Illinois, in a certain cause now pending in the Circuit Court of Texas County, State of Missouri, wherein JENNIFER BUMETER and ERIC MEIER are Plaintiffs and MACO MANAGEMENT CO., INC. And SUMMERSVILLE ESTATES, L.P. are Defendants.

2

A P P E A R A N C E S:

For the Plaintiffs:

Mr. Brandon J. Klar
Klar, Izsak & Stenger, LLC
1125 Olivette Executive Parkway, #120
St. Louis, Missouri   63132

For the Defendants:

Ms. Marie Pudlowski
Childress, Ahlheim Cary
1010 Market Street, #500
St. Louis, Missouri   63101

Also present:
Reporter:  Kelly J. Daniels, CCR #641
MO-CCR IL-CSR

3

INDEX

PAGE NO.

Mr. Klar                5

INDEX OF EXHIBITS

EXHIBIT NO.                    PAGE NO.

1 through 8    Marked prior to start.

Exhibits attached to transcript.

4

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the Plaintiffs and counsel for the Defendants that this Record of Nonappearance may be taken in shorthand by Kelly J. Daniels, Certified Court Reporter, Missouri and Illinois, afterwards transcribed into typewriting.

* * * * *

RECORD OF NONAPPEARANCE

BY MR. KLAR:

On the record, my name is Brandon Klar. I am from the law firm of Klar, Izsak & Stenger. I represent the plaintiffs in this action, Jennifer Bumeter and Eric Meier.

This is to be the deposition of Maco Management's corporate representative taken pursuant to Rule 57, the Missouri Rules of Civil Procedure. Case number is 21TE-CC00360 pending in Texas County, Missouri.

It is now 12:50 on July 15th. We have been given authority by defendant's counsel to proceed prior to the 1:00 p.m. noticed deposition.

I will take note that the representative for defendants, Maco Management and Summersville Estates are not present. They have not appeared, however, counsel for deponent is here. As a result

5

of that I would like to say that Ms. Pudlowski's appearance is indicative of this deposition's prior proper notice. The legal authority authorizing this deposition in Missouri Rule 57 as well as 56. The purpose of this deposition is to obtain facts from the corporate representative of defendants as evidenced, which may be produced by such defendant.

MS. PUDLOWSKI: Brandon, if you don't mind, I will just put my objection on the record, and then you can proceed with anything that you would like to say if that works. I am Marie --

MR. KLAR: You can make it after if that's okay.

MS. PUDLOWSKI: Oh, I would like to object first since the deposition is now underway to make sure that my objection is not later argued that I didn't object in time.

So I would object because I just don't know how you roll.

So my name is Marie Pudlowsi, and I am the attorney for the defendants. I appear on behalf of Maco and Summersville Estates. Defendants have requested prior to this deposition that this deposition cease and not go forward for all the reasons set forth in the Defendant's Motion for

6

Protective Order as well as their objection to the topics that were filed on July 14th, 2022 and all the previous correspondences noted within those findings.

This motion is actually set for hearing at the next available date provided by the Court, which is next week on July 19th, 2022.

I would also like to make note and reference Exhibit 1, which was provided previously to counsel and the court reporter, which is an email chain between the two attorneys and shows my last message sent to Mr. Klar regarding this deposition, which was dated Thursday, July 14, 2022 at 12:25 p.m., and which I have not received any response.

You can go ahead and proceed now, Mr. Klar, and if it can just be a continuing objection.

MR. KLAR: Move to strike all speaking portions of the objection. I will continue.

The steps that have been taken to produce this deposition have been well documented. They have complied with all Missouri law.

Ms. Pudlowski has asserted a variety of reasons as to why we not go forth, but the predominant reason is that she feels all of her depositions must be conducted prior to the

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

deposition of her own client.

It is identified nowhere in Missouri law, no statutes, there are no case law precedent, there is absolutely nothing which authorizes the position Ms. Pudlowski has asserted.

I would like at this time to admit eight exhibits, which I'll -- into the record, which I will describe.

The first is Plaintiff's Exhibit 1, which is a notice of deposition set for July 15, 2022 at 1:00 p.m. It was filed July 8th, 2022 at 3:52 p.m. per the timestamp of the Texas County Circuit Court. This is a properly noticed deposition, and in it it states that the corporate representative of Maco Management Company, who is a party to this action is to appear at this scheduled time. As a result, required to appear at this date and time.

Plaintiff's Exhibit 2 is a Casenet printoff which reflects exactly what I just mentioned. It identifies the notice to take this deposition as being filed 7/8/22. That is seven days prior to today, which is within the time period requested by Missouri law.

Plaintiff's Exhibit 3, Exhibit A, which is a topic list for all of the topics to be discussed at

8

this deposition, It's plaintiff's position that none of these are objectionable. None of them are requesting any documents as defendant's requested as pointed out in pleadings, and by the wording of the exhibit, no documents are requested, so again, this is a proper deposition.

Exhibit 4 is an email from defense counsel, Marie Pudlowski dated --

MS. PUDLOWSKI: Defendant would object to the use of Exhibits 4 and beyond that are emails to the extent that they are taken out of context and do not supply the full email chain or correspondence between counsel, but for the purpose of this you can move forward.

MR. KLAR: I will object to the speaking portion again, and I will reassert that there is no protection whatsoever between counsel.

This an email from Marie Pudlowski, defendant's counsel, dated Wednesday, April 20th, 2022 at 9:37 p.m. in which she says I cannot agree to produce my clients, which mean Dawn Sims or another corporate representative --

MS. PUDLOWSKI: Objection to the exhibits to the extent that you are speaking for the exhibits themselves, and what is written in them

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

speaks for themselves, so if you paraphrase --

MR. KLAR: I'll --

MS. PUDLOWSKI: Objection.

MR. KLAR: It's exactly what this exhibit states, and I'm going to continue with my deposition.

The exhibit specifically states I cannot agree to produce my clients until after the motion to dismiss hearing.

It then goes on to state I am happy to get dates for after the hearing.

Again, this hearing was heard and denied. Defendants move to dismiss the petition, and that motion was heard and denied, and Marie Pudlowski, defense counsel did not produce dates for her client.

Plaintiff's Exhibit 5 is an email from counsel for plaintiffs, Brandon J. Klar to defense counsel, Marie Pudlowski. The date is Tuesday, July 5th, 2022 at 4:26 p.m. in which Brandon Klar states that Rule 56.01(d) of Missouri law specifically permits plaintiffs to conduct this deposition.

It also advises that if Ms. Pudlowski does not present -- or produce, pardon me, her client or someone within her control that I, being plaintiff's

10

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

attorney, will move to compel her deposition prior to providing any further dates.

Plaintiff's Exhibit 6 is an email again from plaintiff's counsel, Brandon Klar to defense counsel dated Wednesday, July 6, 2022 at 4:09 p.m.

MS. PUDLOWSKI: I would just like to state for the record a continuing objection to the extent that these are paraphrased. The records speak for themselves.

MR. KLAR: Okay. These are not paraphrased. These are being read straight from the document, and there's a continuing objection so no further speaking objections are required.

This is an email from Brandon Klar to Marie Pudlowski dated Wednesday, July 6, 2022 at 4:09 p.m. in which Brandon Klar states Marie, I do not intend to produce another witness until your client has been deposed. Ms. Sims is a party to this action. If Ms. Sims does not appear at the deposition on the 11th, I will obtain the certificate of nonappearance.

This is the deposition of a corporate representative of which Ms. Sims is for defendants, Maco and Summersville, and she has not been produced and I will obtain a certificate of nonappearance.

11

Defendant's Exhibit 7 is an email from plaintiff's counsel, Brandon J. Klar to defense counsel, Marie Pudlowski sent Tuesday, July 12, 2022 at 2:00 p.m. -- 2:20 p.m., pardon me, in which Brandon Klar states, due to your continued refusal to produce your client, until all depositions in this case are conducted, despite her being noticed first, and because there exists absolutely zero Missouri case law or statutes would authorize the same, you are correct that I will not produce my clients or witnesses until your client has been deposed.

Further, to our conversation -- pardon me. Should you and your client not appear, I will obtain a certificate of nonappearance as we discussed. Again, Ms. Pudlowski is present, but her client is not. This is a properly noticed deposition, and I will continue to obtain a certificate of nonappearance.

Plaintiff's Exhibit 8 is an email from Brandon Klar to defense counsel, Marie Pudlowski dated Thursday, July 14, 2022 at 11:35 p.m., that is yesterday, in which Brandon Klar, counsel for plaintiffs provided Ms. Pudlowski a Zoom link for this deposition, which is again a properly noticed

12

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

deposition according to Missouri law.

And I would like to again put on the record that Ms. Pudlowski is present, but she has not produced her client, and it is plaintiff's understanding that she refuses to produce her client, despite what the Missouri Rules of Discovery require until plaintiff's depositions are all conducted, which again, has no legal authority, none based in Missouri law. There is no precedent, there are no statutes, there is nothing which requires what Ms. Pudlowski requests.

That will complete my record for now, and I will reserve any time based on what Ms. Pudlowski has to offer.

MS. PUDLOWSKI: I have no further statements.

MR. KLAR: I would like to go on if there is no further statements to say that it is again plaintiff's intention to seek sanctions for the nonappearance of defendant's client, who is the named party to this action pursuant to Missouri Rule of Civil Procedure 61.01. Thank you.

THE REPORTER: Would you like to order a copy, Ms. Pudlowski?

MS. PUDLOWSKI: I'll just take a PDF

13

EXHIBIT A - STATE COURT FILE

copy. That's fine.

MR. KLAR: Yes, for me too, Kelly.
Thank you.

EXHIBIT A - STATE COURT FILE

Certified Court Reporter Certificate

STATE OF MISSOURI              )
                               ) SS
COUNTY OF ST. LOUIS            )


I, KELLY J. Daniels, a Certified Court Reporter, #641, within and for the state of Missouri, a Certified Shorthand Reporter within the state of Illinois, do hereby certify that a Record of Nonappearance taken by Zoom was made July 15, 2022.


I further certify that I am neither attorney nor counsel for nor related nor employed by any of the parties to the action in which this deposition is taken; further that I am not a relative or employee of any attorney or counsel employed by the parties hereto or financially interested in this action.

IN WITNESS WHEREOF, July 16, 2022.


------------------------------------------------
            Kelly J. Daniels, CCR #641
     Certified Court Reporter within and for
            the State of Missouri

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

**#**

#120 [1] - 3:4
#500 [1] - 3:8
#641 [4] - 2:14, 3:13, 15:5, 15:15

**1**

1 [3] - 4:7, 7:9, 8:9
1010 [1] - 3:8
1125 [1] - 3:4
11:35 [1] - 12:22
11th [1] - 11:20
12 [1] - 12:3
12:25 [1] - 7:13
12:50 [2] - 2:11, 5:19
14 [2] - 7:13, 12:22
14th [1] - 7:2
15 [4] - 1:18, 2:10, 8:10, 15:6
15th [1] - 5:19
16 [1] - 15:13
19th [1] - 7:7
1:00 [2] - 5:21, 8:10
1:02 [1] - 2:12

**2**

2 [1] - 8:18
2022 [15] - 1:18, 2:11, 7:2, 7:7, 7:13, 8:10, 8:11, 9:20, 10:20, 11:5, 11:15, 12:3, 12:22, 15:7, 15:13
20th [1] - 9:19
21TE [3] - 1:6, 2:5, 5:17
21TE-CC00360 [3] - 1:6, 2:5, 5:17
2:00 [1] - 12:4
2:20 [1] - 12:4

**3**

3 [1] - 8:24
314.570.5428 [1] - 1:24
3:52 [1] - 8:11

**4**

4 [2] - 9:7, 9:10
4:09 [2] - 11:5, 11:15
4:26 [1] - 10:20

**5**

5 [2] - 4:3, 10:17
56 [1] - 6:4

56.01(d [1] - 10:21
57 [2] - 5:16, 6:4
5th [1] - 10:20

**6**

6 [3] - 11:3, 11:5, 11:15
61.01 [1] - 13:22
63101 [1] - 3:8
63116 [1] - 1:24
63132 [1] - 3:5

**7**

7 [1] - 12:1
7/8/22 [1] - 8:21
7405 [1] - 1:23

**8**

8 [2] - 4:7, 12:20
8th [1] - 8:11

**9**

9:37 [1] - 9:20

**A**

absolutely [2] - 8:4, 12:8
according [1] - 13:1
action [6] - 5:12, 8:15, 11:18, 13:21, 15:10, 15:12
admit [1] - 8:6
advises [1] - 10:23
afternoon [2] - 2:11, 2:12
afterwards [1] - 5:4
agree [2] - 9:20, 10:8
AGREED [1] - 5:1
ahead [1] - 7:15
Ahlheim [1] - 3:7
AND [1] - 5:1
appear [5] - 6:21, 8:16, 8:17, 11:19, 12:14
appearance [1] - 6:2
appeared [1] - 5:24
April [1] - 9:19
argued [1] - 6:16
asserted [2] - 7:22, 8:5
attached [1] - 4:8
attorney [4] - 6:21, 11:1, 15:9, 15:11
attorneys [1] - 7:11
authority [3] - 5:20, 6:3, 13:8
authorize [1] - 12:9
authorizes [1] - 8:4
authorizing [1] - 6:3
available [1] - 7:6
AVENUE [1] - 1:23

**B**

based [2] - 13:9, 13:13
behalf [1] - 6:21
BEHALF [1] - 1:17
between [5] - 2:11, 5:2, 7:11, 9:13, 9:17
beyond [1] - 9:10
Brandon [12] - 3:3, 5:10, 6:8, 10:18, 10:20, 11:4, 11:14, 11:16, 12:2, 12:5, 12:21, 12:23
BUMETER [3] - 1:4, 2:3, 2:18
Bumeter [1] - 5:13
BY [1] - 5:9

**C**

cannot [2] - 9:20, 10:7
Cary [1] - 3:7
case [4] - 5:17, 8:3, 12:7, 12:9
Casenet [1] - 8:18
CC00360 [3] - 1:6, 2:5, 5:17
CCR [3] - 3:13, 3:13, 15:15
cease [1] - 6:24
certain [1] - 2:16
Certificate [1] - 15:1
certificate [4] - 11:20, 11:25, 12:15, 12:18
Certified [7] - 2:13, 2:15, 5:3, 15:1, 15:4, 15:5, 15:15
certify [2] - 15:6, 15:9
chain [2] - 7:10, 9:12
Childress [1] - 3:7
CIRCUIT [2] - 1:1, 2:1
Circuit [2] - 2:17, 8:12
Civil [2] - 5:16, 13:22
client [11] - 8:1, 10:16, 10:24, 11:17, 12:6, 12:11, 12:14, 12:16, 13:4, 13:6, 13:20
clients [3] - 9:21, 10:8, 12:11
CO [3] - 1:7, 2:6, 2:19
Company [1] - 8:15
compel [1] - 11:1
complete [1] - 13:12
complied [1] - 7:21
conduct [1] - 10:22
conducted [3] - 7:25, 12:7, 13:8
context [1] - 9:11
continue [3] - 7:18, 10:5, 12:18
continued [1] - 12:5
continuing [3] - 7:16, 11:7, 11:12
control [1] - 10:25
conversation [1] - 12:13
copy [2] - 13:24, 14:1
corporate [5] - 5:15, 6:6, 8:14, 9:22, 11:22
correct [1] - 12:10
correspondence [1] - 9:12
correspondences [1] - 7:3
counsel [20] - 5:2, 5:20, 5:25, 7:9, 9:7, 9:13, 9:17, 9:19, 10:15, 10:18, 10:19, 11:4, 12:2, 12:3, 12:21, 12:23, 15:9, 15:11
COUNTY [3] - 1:1, 2:1, 15:3
County [3] - 2:17, 5:17, 8:12
court [1] - 7:10
COURT [2] - 1:1, 2:1
Court [8] - 2:13, 2:17, 5:3, 7:6, 8:12, 15:1, 15:4, 15:15
CSR [1] - 3:13

**D**

DANIELS [2] - 1:23, 2:13
Daniels [4] - 3:13, 5:3, 15:4, 15:15
date [3] - 7:6, 8:17, 10:19
dated [6] - 7:13, 9:8, 9:19, 11:5, 11:15, 12:22
dates [3] - 10:11, 10:15, 11:2
Dawn [1] - 9:21
days [1] - 8:21
defendant [2] - 6:7, 9:9
Defendant's [2] - 6:25, 12:1
defendant's [4] - 5:20, 9:3, 9:19, 13:20
Defendants [5] - 1:9, 2:8, 2:20, 3:6, 5:2
defendants [6] - 5:23, 6:6, 6:21, 6:22, 10:13, 11:23
defense [6] - 9:7, 10:15, 10:18, 11:4, 12:2, 12:21
denied [2] - 10:12, 10:14
deponent [1] - 5:25
deposed [2] - 11:18, 12:12
deposition [24] - 5:14, 5:21, 6:4, 6:5, 6:15, 6:23, 6:24, 7:12, 7:20, 8:1, 8:10, 8:13, 8:20, 9:1, 9:6, 10:6, 10:22, 11:1, 11:19, 11:22, 12:17, 12:25, 13:1, 15:10
deposition's [1] - 6:2
depositions [3] - 7:25, 12:6, 13:7
describe [1] - 8:8
despite [2] - 12:7, 13:6
Discovery [1] - 13:6
discussed [2] - 8:25, 12:15
dismiss [2] - 10:9, 10:13
document [1] - 11:12
documented [1] - 7:20
documents [2] - 9:3, 9:5
due [1] - 12:5

**E**

eight [1] - 8:6
email [9] - 7:10, 9:7, 9:12, 9:18, 10:17, 11:3, 11:14, 12:1, 12:20
emails [1] - 9:10
employed [2] - 15:9, 15:11
employee [1] - 15:11
ERIC [3] - 1:4, 2:3, 2:18
Eric [1] - 5:13
ESTATES [3] - 1:8, 2:7, 2:20
Estates [2] - 5:24, 6:22
evidenced [1] - 6:7
exactly [2] - 8:19, 10:4
Executive [1] - 3:4

**exhibit** [3] - 9:5, 10:5, 10:7
**EXHIBIT** [1] - 4:6
**Exhibit** [10] - 7:9, 8:9, 8:18, 8:24, 9:7, 10:17, 11:3, 12:1, 12:20
**exhibits** [3] - 8:7, 9:24, 9:25
**EXHIBITS** [1] - 4:5
**Exhibits** [2] - 4:8, 9:10
**exists** [1] - 12:8
**extent** [3] - 9:11, 9:24, 11:8

### F

**facts** [1] - 6:5
**filed** [3] - 7:2, 8:11, 8:21
**financially** [1] - 15:11
**findings** [1] - 7:4
**fine** [1] - 14:1
**firm** [1] - 5:11
**first** [3] - 6:15, 8:9, 12:8
**forth** [2] - 6:25, 7:23
**forward** [2] - 6:24, 9:14
**full** [1] - 9:12

### G

**given** [1] - 5:20

### H

**happy** [1] - 10:10
**heard** [2] - 10:12, 10:14
**hearing** [4] - 7:5, 10:9, 10:11, 10:12
**HEREBY** [1] - 5:1
**hereby** [1] - 15:6
**hereto** [1] - 15:11
**hours** [1] - 2:11

### I

**identified** [1] - 8:2
**identifies** [1] - 8:20
**IL** [1] - 3:13
**IL-CSR** [1] - 3:13
**Illinois** [3] - 2:16, 5:3, 15:6
**IN** [3] - 1:1, 2:1, 15:13
**INC** [3] - 1:7, 2:7, 2:19
**INDEX** [2] - 4:1, 4:5
**indicative** [1] - 6:2
**intend** [1] - 11:16

**intention** [1] - 13:19
**interested** [1] - 15:11
**IS** [1] - 5:1
**IT** [1] - 5:1
**Izsak** [2] - 3:4, 5:11

### J

**JENNIFER** [3] - 1:4, 2:3, 2:18
**Jennifer** [1] - 5:12
**July** [15] - 1:18, 2:10, 5:19, 7:2, 7:7, 7:13, 8:10, 8:11, 10:19, 11:5, 11:15, 12:3, 12:22, 15:6, 15:13

### K

**kelly** [1] - 3:13
**KELLY** [3] - 1:23, 2:13, 15:4
**Kelly** [3] - 5:3, 14:2, 15:15
**Klar** [16] - 3:3, 3:4, 4:3, 5:10, 5:11, 7:12, 7:15, 10:18, 10:20, 11:4, 11:14, 11:16, 12:2, 12:5, 12:21, 12:23
**KLAR** [9] - 5:9, 6:12, 7:17, 9:15, 10:2, 10:4, 11:10, 13:17, 14:2

### L

**L.P** [3] - 1:8, 2:7, 2:20
**last** [1] - 7:11
**law** [9] - 5:11, 7:21, 8:2, 8:3, 8:23, 10:21, 12:9, 13:1, 13:9
**legal** [2] - 6:3, 13:8
**link** [1] - 12:24
**list** [1] - 8:25
**LLC** [1] - 3:4
**LOUIS** [2] - 1:24, 15:3
**Louis** [2] - 3:5, 3:8

### M

**MACO** [3] - 1:7, 2:6, 2:19
**Maco** [5] - 5:14, 5:23, 6:22, 8:14, 11:24
**MANAGEMENT** [3] - 1:7, 2:6, 2:19
**Management** [2] - 5:23, 8:15
**Management's** [1] -

5:15
**Marie** [11] - 3:7, 6:11, 6:20, 9:8, 9:18, 10:14, 10:19, 11:14, 11:16, 12:3, 12:21
**Marked** [1] - 4:7
**Market** [1] - 3:8
**mean** [1] - 9:21
**Meier** [1] - 5:13
**MEIER** [3] - 1:4, 2:3, 2:18
**mentioned** [1] - 8:19
**message** [1] - 7:11
**mind** [1] - 6:9
**MISSOURI** [3] - 1:2, 2:1, 15:2
**Missouri** [19] - 2:14, 2:18, 3:5, 3:8, 5:3, 5:16, 5:18, 6:4, 7:21, 8:2, 8:23, 10:21, 12:9, 13:1, 13:6, 13:9, 13:21, 15:5, 15:16
**MO** [2] - 1:24, 3:13
**MO-CCR** [1] - 3:13
**Motion** [1] - 6:25
**motion** [3] - 7:5, 10:8, 10:14
**move** [4] - 7:17, 9:14, 10:13, 11:1
**MR** [9] - 5:9, 6:12, 7:17, 9:15, 10:2, 10:4, 11:10, 13:17, 14:2
**MS** [8] - 6:8, 6:14, 9:9, 9:23, 10:3, 11:6, 13:15, 13:25
**must** [1] - 7:25

### N

**name** [2] - 5:10, 6:20
**named** [1] - 13:21
**next** [2] - 7:6, 7:7
**NO** [3] - 4:2, 4:6
**nonappearance** [5] - 11:21, 11:25, 12:15, 12:19, 13:20
**Nonappearance** [2] - 5:2, 15:6
**NONAPPEARANCE** [3] - 1:17, 2:10, 5:8
**none** [3] - 9:1, 9:2, 13:8
**note** [2] - 5:22, 7:8
**noted** [1] - 7:3
**nothing** [2] - 8:4, 13:10
**notice** [3] - 6:3, 8:10, 8:20

**noticed** [5] - 5:21, 8:13, 12:7, 12:17, 12:25
**nowhere** [1] - 8:2
**number** [1] - 5:17

### O

**object** [5] - 6:15, 6:17, 6:18, 9:9, 9:15
**Objection** [2] - 9:23, 10:3
**objection** [7] - 6:9, 6:16, 7:1, 7:16, 7:18, 11:7, 11:12
**objectionable** [1] - 9:2
**objections** [1] - 11:13
**obtain** [5] - 6:5, 11:20, 11:25, 12:14, 12:18
**OF** [11] - 1:1, 1:2, 1:17, 1:17, 2:1, 2:1, 2:10, 4:5, 5:8, 15:2, 15:3
**offer** [1] - 13:14
**Olivette** [1] - 3:4
**ON** [1] - 1:17
**Order** [1] - 7:1
**order** [1] - 13:23
**own** [1] - 8:1

### P

**p.m** [11] - 5:21, 7:13, 8:11, 9:20, 10:20, 11:5, 11:15, 12:4, 12:22
**PAGE** [2] - 4:2, 4:6
**paraphrase** [1] - 10:1
**paraphrased** [2] - 11:8, 11:11
**pardon** [3] - 10:24, 12:4, 12:13
**Parkway** [1] - 3:4
**parties** [2] - 15:10, 15:11
**party** [3] - 8:15, 11:18, 13:21
**PDF** [1] - 13:25
**pending** [2] - 2:16, 5:17
**per** [1] - 8:11
**period** [1] - 8:22
**permits** [1] - 10:22
**petition** [1] - 10:13
**Plaintiff's** [6] - 8:9, 8:18, 8:24, 10:17, 11:3, 12:20
**plaintiff's** [7] - 9:1, 10:25, 11:4, 12:2, 13:4, 13:7, 13:19

**Plaintiffs** [5] - 1:5, 2:4, 2:19, 3:2, 5:2
**plaintiffs** [4] - 5:12, 10:18, 10:22, 12:24
**PLAINTIFFS** [1] - 1:17
**pleadings** [1] - 9:4
**pointed** [1] - 9:4
**portion** [1] - 9:16
**portions** [1] - 7:18
**position** [2] - 8:4, 9:1
**precedent** [2] - 8:3, 13:9
**predominant** [1] - 7:24
**present** [5] - 3:12, 5:24, 10:24, 12:16, 13:3
**previous** [1] - 7:3
**previously** [1] - 7:9
**printoff** [1] - 8:18
**Procedure** [2] - 5:16, 13:22
**proceed** [3] - 5:20, 6:10, 7:15
**produce** [9] - 7:19, 9:21, 10:8, 10:15, 10:24, 11:17, 12:6, 12:10, 13:5
**produced** [3] - 6:7, 11:24, 13:4
**proper** [2] - 6:3, 9:6
**properly** [3] - 8:13, 12:17, 12:25
**protection** [1] - 9:17
**Protective** [1] - 7:1
**provided** [3] - 7:6, 7:9, 12:24
**providing** [1] - 11:2
**Pudlowsi** [1] - 6:20
**Pudlowski** [17] - 3:7, 7:22, 8:5, 9:8, 9:18, 10:14, 10:19, 10:23, 11:15, 12:3, 12:16, 12:21, 12:24, 13:3, 13:11, 13:13, 13:24
**PUDLOWSKI** [8] - 6:8, 6:14, 9:9, 9:23, 10:3, 11:6, 13:15, 13:25
**Pudlowski's** [1] - 6:1
**purpose** [2] - 6:5, 9:13
**pursuant** [2] - 5:15, 13:21
**put** [2] - 6:9, 13:2

### R

**RAY** [1] - 1:23
**read** [1] - 11:11
**reason** [1] - 7:24
**reasons** [2] - 6:25,

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

| | | |
|---|---|---|
| 7:23 | **speaks** [1] - 10:1 | **V** |
| **reassert** [1] - 9:16 | **specifically** [2] - 10:7, 10:21 | |
| **received** [1] - 7:14 | **SS** [1] - 15:2 | **variety** [1] - 7:22 |
| **Record** [2] - 5:2, 15:6 | **ST** [2] - 1:24, 15:3 | **vs** [2] - 1:6, 2:5 |
| **RECORD** [3] - 1:17, 2:10, 5:8 | **St** [2] - 3:5, 3:8 | **W** |
| **record** [6] - 5:10, 6:9, 8:7, 11:7, 13:2, 13:12 | **start** [1] - 4:7 | **Wednesday** [3] - 9:19, 11:5, 11:15 |
| | **state** [4] - 10:10, 11:7, 15:5, 15:6 | **week** [1] - 7:7 |
| **records** [1] - 11:8 | **STATE** [3] - 1:2, 2:1, 15:2 | **whatsoever** [1] - 9:17 |
| **reference** [1] - 7:8 | **State** [4] - 2:14, 2:16, 2:17, 15:16 | **wherein** [1] - 2:18 |
| **reflects** [1] - 8:19 | **statements** [2] - 13:16, 13:18 | **WHEREOF** [1] - 15:13 |
| **refusal** [1] - 12:5 | **states** [6] - 8:14, 10:5, 10:7, 10:20, 11:16, 12:5 | **witness** [1] - 11:17 |
| **refuses** [1] - 13:5 | | **WITNESS** [1] - 15:13 |
| **regarding** [1] - 7:12 | **statutes** [3] - 8:3, 12:9, 13:10 | **witnesses** [1] - 12:11 |
| **related** [1] - 15:9 | **Stenger** [2] - 3:4, 5:11 | **wording** [1] - 9:4 |
| **relative** [1] - 15:10 | **steps** [1] - 7:19 | **works** [1] - 6:11 |
| **reporter** [1] - 7:10 | **STIPULATED** [1] - 5:1 | **written** [1] - 9:25 |
| **REPORTER** [1] - 13:23 | **straight** [1] - 11:11 | **Y** |
| **Reporter** [8] - 2:13, 2:15, 3:13, 5:3, 15:1, 15:5, 15:5, 15:15 | **Street** [1] - 3:8 | **yesterday** [1] - 12:23 |
| | **strike** [1] - 7:17 | **Z** |
| **represent** [1] - 5:12 | **SUMMERSVILLE** [3] - 1:8, 2:7, 2:20 | **zero** [1] - 12:8 |
| **representative** [6] - 5:15, 5:22, 6:6, 8:14, 9:22, 11:23 | **Summersville** [3] - 5:23, 6:22, 11:24 | **Zoom** [3] - 2:12, 12:24, 15:6 |
| **requested** [4] - 6:23, 8:22, 9:3, 9:5 | **supply** [1] - 9:12 | |
| **requesting** [1] - 9:3 | **T** | |
| **requests** [1] - 13:11 | | |
| **require** [1] - 13:7 | **TAKEN** [1] - 1:17 | |
| **required** [2] - 8:17, 11:13 | **TEXAS** [2] - 1:1, 2:1 | |
| **requires** [1] - 13:10 | **Texas** [3] - 2:17, 5:17, 8:12 | |
| **reserve** [1] - 13:13 | **THE** [4] - 1:1, 1:17, 2:1, 13:23 | |
| **response** [1] - 7:14 | **themselves** [3] - 9:25, 10:1, 11:9 | |
| **result** [2] - 5:25, 8:16 | **Thursday** [2] - 7:13, 12:22 | |
| **roll** [1] - 6:19 | **timestamp** [1] - 8:12 | |
| **Rule** [4] - 5:16, 6:4, 10:21, 13:21 | **today** [1] - 8:22 | |
| **Rules** [2] - 5:16, 13:6 | **topic** [1] - 8:25 | |
| **S** | **topics** [2] - 7:2, 8:25 | |
| | **transcribed** [1] - 5:4 | |
| **sanctions** [1] - 13:19 | **transcript** [1] - 4:8 | |
| **scheduled** [1] - 8:16 | **Tuesday** [2] - 10:19, 12:3 | |
| **seek** [1] - 13:19 | **two** [1] - 7:11 | |
| **sent** [2] - 7:12, 12:3 | **typewriting** [1] - 5:4 | |
| **set** [3] - 6:25, 7:5, 8:10 | **U** | |
| **seven** [1] - 8:21 | | |
| **Shorthand** [2] - 2:15, 15:5 | **underway** [1] - 6:15 | |
| **shorthand** [1] - 5:3 | | |
| **shows** [1] - 7:11 | | |
| **Sims** [4] - 9:21, 11:18, 11:19, 11:23 | | |
| **someone** [1] - 10:25 | | |
| **speaking** [4] - 7:17, 9:16, 9:24, 11:13 | | |



IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                        )
                                          )
and                                       )
                                          )   Cause No.: 21TE-CC00360
ERIC MEIER,                               )
                                          )
          Plaintiffs,                     )
v.                                        )
                                          )
MACO MANAGEMENT CO., INC., and            )
                                          )
SUMMERSVILLE ESTATES, L.P.                )
                                          )
          Defendants.                     )

## NOTICE OF DEPOSITION

TO:               Counsel of Record

DATE & TIME:      July 15, 2022, at 1:00 P.M.

DEPONENT(S):      Corporate Representative of Maco Management Co., Inc.

LOCATION:         Zoom link to be provided

REPORTER:         Kelly Daniels, CCR

PLEASE TAKE NOTICE that at the above-stated date, time and place, the deposition of a
Corporate Representative of Maco Management Co., Inc., will be taken on oral examination, via
Zoom, before a court reporter, pursuant to Missouri Supreme Court Rule 57.03(a) Rule
57.03(b)(4), the topics upon which inquiry will be made are attached hereto as **Exhibit A**. Said
deposition will continue on a day to day basis until the same is completed and is being taken for
any and all purposes allowed by law, including use as evidence at trial. All parties and the court
reporter will attend the deposition remotely.

The deposition will be conducted remotely using Kelly Daniels Court Reporter reporting services. In addition, such court reporter will provide a Zoom platform for the taking of the deposition which will be provided at a later date and time. A licensed and qualified court reporter will administer the oath to the witness remotely and will record the testimony by audio and stenographic means.

Dated this 8th day of July 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
Attorney for Plaintiffs
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 8th day of July 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.

CC: **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
Kelly J. Daniels, CCR
7405 Ray Avenue
St. Louis, MO 63116

/s/ Brandon J. Klar___

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

**Your Missouri Courts**

Search for Cases by: Select S

PLAINTIFF'S EXHIBIT
2

Judicial Links | eFiling | Help | Contact Us | Print | Logon

21TE-CC00366 - JENNIFER SUMETER ET AL V MACO MANAGEMENT COM ET AL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

Sort Date Entries: ⦿ Descending ◯ Ascending     Display Options: All Entries ⌄

**07/14/2022**   **Objections Filed**

Defendant Macos Objections to Corporate Representative Topics; Electronic Filing Certificate of Service.

**Filed By:** MARIE FRANCES WEISENBERGER

**On Behalf Of:** MACO MANAGEMENT COMPANY, INC.

**Memo of Law in Suppt of Filed**

Memorandum in Support and Opposition; Exhibit 1; Electronic Filing Certificate of Service.

**Filed By:** BRANDON JACOB KLAR

**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Motion Filed**

Defendants Motion for Protective Order and Motion to Quash Corporate Representative Deposition Notice; Exhibit A; Electronic Filing Certificate of Service.

**Filed By:** MARIE FRANCES WEISENBERGER

**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**07/12/2022**   **Judge/Clerk - Note**

By computer: https://mocourts.webex.com/meet/john.beger Join by phone +1-408-418-9388 United States Toll Access code: 960 524 065

**Notice of Hearing Filed**

NOH on Plfs Mtn for Relief; Electronic Filing Certificate of Service.

**Filed By:** BRANDON JACOB KLAR

**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Motion Hearing Scheduled**

**Scheduled For:** 07/19/2022; 8:59 AM ; JOHN D BEGER; Texas

**Notice of Hearing Filed**

Notice of Hearing; Electronic Filing Certificate of Service.

**Filed By:** MARIE FRANCES WEISENBERGER

**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.

**07/08/2022**   **Notice to Take Deposition**

NOD of Corp Rep of Maco Managment Co; Ex A; Electronic Filing Certificate of Service.

**Filed By:** BRANDON JACOB KLAR

**On Behalf Of:** JENNIFER BUMETER, ERIC MEIER

**Notice**

Notice of Cancellation of Deposition of Rebecca Johnson; Electronic Filing Certificate of Service.

**Filed By:** MARIE FRANCES WEISENBERGER

**On Behalf Of:** MACO MANAGEMENT COMPANY, INC., SUMMERSVILLE ESTATES, L.P.



PLAINTIFF'S
EXHIBIT
3

## Exhibit A

### TOPICS FOR MACO MANAGEMENT CO., INC. CORPORATE REPRESENTATIVE DEPOSITION

1. All facts relating to the performance of property manager ("Property Manager") duties and responsibilities at Summersville Estates since September 2018.

2. All facts relating to the relationships between Summersville Estates' Property Manager and its tenants since September 2018.

3. Specific details regarding the performance of all inspections and the completion of all inspection reports at Summersville Estates since September 2018.

4. Specific details regarding the physical state and operative condition of all smoke detectors/alarms at Summersville Estates since September 2018.

5. All facts relating to the Property Manager of Summersville Estates' compliance with the Maco Management Employee Handbook since September 2018.

6. All facts relating to the Property Manager of Summersville Estates' compliance with the Maco Management Site Manager & Maintenance Personnel Duties and Responsibilities since September 2018.

7. Specific details regarding the tenancy of Ms. Robin Fischer since September 2018, including, but not limited to, all conversations Ms. Fischer had with the Property Manager at Summersville Estates.

8. All facts relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

9. All facts relating to the use of cigarettes in apartment units at Summersville Estates since September 2018.

10. Specific details regarding the relationship maintained between the Property Manager of Summersville Estates and members of the Summersville Police Department.

11. All facts supporting any affirmative defenses asserted by Defendants Maco Management Co., Inc. and Summersville Estates, L.P.

12. All facts relating to the resume and past employment history of the Property Manager hired by Summersville Estates in September 2018.

13. All facts relating to any prior legal action taken against the Property Manager hired by Summersville Estates in September 2018.

14. Any written or oral communications between Plaintiffs or their identified witnesses and Defendant or its agents/representatives regarding facts underlying the allegations contained in Plaintiffs' First Amended Petition or Defendant's Answer and Affirmative Defenses.

EXHIBIT A - STATE COURT FILE

PLAINTIFF'S
EXHIBIT
4

## Law Clerk

| | |
|---|---|
| **From:** | Marie Pudlowski <MPudlowski@jchildresslaw.com> |
| **Sent:** | Wednesday, April 20, 2022 9:37 AM |
| **To:** | Brandon J. Klar |
| **Cc:** | Dave Ahlheim |
| **Subject:** | RE: 21TE-CC00360 |

Brandon:

I appreciate you wanting to keep this case moving. However, I cannot agree to produce my clients until after the motion to dismiss hearing. My motion is seeking clarity of the claims alleged so I can prepare and defend my clients during future discovery (including depositions). Obviously, the Judge may disagree with me, but I need his decision. I am happy to get dates for after the hearing. Are you wanting virtual or in-person?

Also, we are wanting to depose both Plaintiffs as well as Susan Austin, Rebecca Johnson, and Bridget Kittner. Please provide dates and your preferred location for these depositions. I will be out of state the weeks of May 30 and June 6 so will not be able to make those weeks work.

Best,

**Childress Ahlheim Cary** LLC
Attorneys at Law

**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct: 314.584.4568**
www.jchildresslaw.com | mpudlowski@jchildresslaw.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Tuesday, April 19, 2022 12:50 PM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Subject:** RE: 21TE-CC00360

Marie:

While we are waiting for the next law day, I would like to keep the ball rolling on discovery and get some depositions scheduled. I would like to depose Dawn Sims and Karen Murphy sometime in the month of May; if you could please provide me their exclusionary dates and/or dates that work best for them both, that would be great.

Thank you.
Brandon

1

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

## Brandon J. Klar

PLAINTIFF'S
EXHIBIT
5

| | |
|---|---|
| **From:** | Brandon J. Klar |
| **Sent:** | Tuesday, July 5, 2022 4:26 PM |
| **To:** | Marie Pudlowski |
| **Cc:** | Dave Ahlheim |
| **Subject:** | RE: Bumeter et al. v. Maco et al. |

Marie:

While I understand the position you are taking, I disagree with it. As Ms. Sims is a party to this action, the Plaintiffs have every right to take her deposition prior to the depositions of witnesses. Moreover, Rule 56.01(d) specifically permits Plaintiffs to conduct Ms. Sims' deposition prior to the depositions you seek. As such, please be advised that I will move to compel Ms. Sims' deposition prior to providing any further dates.

Thank you.

Brandon

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Tuesday, July 5, 2022 3:12 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

I received through eFiling a notice of deposition for my client's employee Dawn Sims to take place on July 11. Please note we will <u>not</u> be appearing or producing Ms. Sims on that day. I will get a motion to quash on file, but I wanted to give you a heads up.

First, I am not available on July 11, having two other depositions previously scheduled on that date and time.

Second, as relayed below, I cannot agree to the order of depositions you have proposed. Defendants are entitled to understand the claims to prepare their witnesses and their defense. Given the broad pleadings and the inability to serve written interrogatories on the non-parties who purportedly will testify to wrongdoing by my client, depositions are my only mechanism for discovering the allegations against my client. My intent is not to delay the discovery process or prevent you from obtaining Sim's testimony. My intent is to ensure I understand the claims so I can properly advise and prepare my clients accordingly.

In a continued effort of cooperation, please note that I would be happy to provide you dates and produce Ms. Sims for a deposition once we get the below requested depositions finalized and completed. My July is rather full, but I may be able to squeeze in some additional depositions (if your people are available) to allow us to get to Sims' deposition in early August.

Let me know your position and dates for you people.

Best,

1

## Law Clerk

**PLAINTIFF'S EXHIBIT**
6

**From:** Brandon J. Klar
**Sent:** Wednesday, July 6, 2022 4:09 PM
**To:** 'Marie Pudlowski'
**Cc:** Dave Ahlheim
**Subject:** RE: Bumeter et al. v. Maco et al.

Marie:

I do not intend to produce another witness until your client has been deposed. Ms. Sims is a party to this action. If Ms. Sims does not appear at deposition on the 11th, I will obtain a Certificate of Nonappearance.

If you would like to discuss this, I am available. Thank you.

Brandon

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Wednesday, July 6, 2022 3:52 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

Please advise whether you intend to produce Ms. Johnson for her deposition previously scheduled and noticed for July 15 in Springfield.

Also, let me know if your position changes upon reviewing my pleadings or if further discussion might be beneficial in resolving these discovery disputes outside of court involvement.

Thanks,



**Childress Ahlheim Cary** LLC
Attorneys at law

**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct: 314.584.4568
www.jchildresslaw.com | mpudlowski@jchildresslaw.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

Electronically Filed - Texas - October 05, 2022 - 02:14 PM

## Brandon J. Klar

**PLAINTIFF'S EXHIBIT 7**

| | |
|---|---|
| **From:** | Brandon J. Klar |
| **Sent:** | Tuesday, July 12, 2022 2:20 PM |
| **To:** | Marie Pudlowski |
| **Cc:** | Dave Ahlheim |
| **Subject:** | RE: Bumeter et al. v. Maco et al. |

Marie:

Thanks. Due to your continued refusal to produce your client until all depositions in this case are conducted (despite her being noticed first), and because there exists absolutely zero Missouri caselaw or statutes which authorize the same, you are correct that I will not produce my clients or witnesses until your client has been deposed. As advised, it is my intent to appear at the properly noticed deposition on Friday. Should you and your client not appear, I will obtain a Certificate of Nonappearance as we discussed.

Further to our conversation, I will notice my Motion for Relief at the same date and time as your Motions. That way we can hopefully knock everything out at once. Thank you again, and I hope you have a good rest of your day.

Best,
Brandon Klar

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Tuesday, July 12, 2022 2:12 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter et al. v. Maco et al.

Brandon:

Despite it not being productive, I appreciate you taking my call today to discuss our discovery disputes.

From our conversation, it is my understanding you are continuing to refuse to provide me dates for the two plaintiffs and three facts witnesses with alleged testimony of wrongdoing by my client. You will do nothing until we produce employee Dawn Sims for deposition. And, you tailored the corporate representative deposition set for July 11 in a fashion that you believe requires us to produce Sims as the corporate representative.

As indicated, I plan to get a motion to quash and motion for protective order on file. Neither I nor my client will be appearing for the deposition on Friday. The Judge is available for a hearing on my motions on July 19 at 9:00AM. You indicated availability for such hearing so I will notice up shortly. Once we obtain some Court guidance, I hope we can procced in a more cooperative fashion moving forward.



**Childress Ahlheim Cary** LLC
Attorneys at Law

**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct: 314.584.4568

1

Electronically Filed - Texas - October 05, 2022 - 02:14 PM



PLAINTIFF'S
EXHIBIT
8

## Brandon J. Klar

| | |
|---|---|
| **From:** | Brandon J. Klar |
| **Sent:** | Thursday, July 14, 2022 11:35 AM |
| **To:** | Marie Pudlowski |
| **Cc:** | Dave Ahlheim |
| **Subject:** | FW: Zoom for Friday at one Bumeter case- corp rep |

Marie:

The zoom link for tomorrow's deposition is below. I understand you do not intend to appear, but should you change your mind, please see the below Link, Meeting ID and Passcode. Thanks much.

Brandon Klar

**From:** Kelly Daniels <kjdaniels12@yahoo.com>
**Sent:** Thursday, July 14, 2022 10:01 AM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Subject:** Zoom for Friday at one Bumeter case- corp rep

Kelly Daniels is inviting you to a scheduled Zoom meeting.

Topic: My Meeting
Time: Jul 15, 2022 01:00 PM Central Time (US and Canada)

Join Zoom Meeting
https://us02web.zoom.us/j/87442698545?pwd=ek5KQ0R4aHJSZngzOUcvM0t0V25YQT09

Meeting ID: 874 4269 8545
Passcode: 247186
One tap mobile
+16469313860,,87442698545#,,,,*247186# US
+13017158592,,87442698545#,,,,*247186# US (Washington DC)

Dial by your location
        +1 646 931 3860 US
        +1 301 715 8592 US (Washington DC)
        +1 312 626 6799 US (Chicago)
        +1 646 876 9923 US (New York)
        +1 253 215 8782 US (Tacoma)
        +1 346 248 7799 US (Houston)
        +1 408 638 0968 US (San Jose)
        +1 669 444 9171 US
        +1 669 900 6833 US (San Jose)
Meeting ID: 874 4269 8545
Passcode: 247186
Find your local number: https://us02web.zoom.us/u/kc0fwGskhC

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, | ) |
| | ) |
| and | ) |
| | ) Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| MACO MANAGEMENT CO., INC., and | ) |
| | ) |
| SUMMERSVILLE ESTATES, L.P. | ) |
| | ) |
| Defendants. | ) |

**NOTICE OF DEPOSITION OF MICHELLE McGUIRE**

TO:              Counsel of Record

DATE & TIME:     Tuesday, October 18, 2022, at 4:00 P.M.

DEPONENT(S):    Michelle McGuire

LOCATION:       Zoom link to be provided

REPORTER:       Kelly Daniels, CCR

PLEASE TAKE NOTICE that the attorney for Plaintiffs will at the above date, hour and place, take the deposition of the above person upon oral examination pursuant to Rule 57.03 of the Missouri Rules of Civil Procedure, before a certified court reporter and suitable Notary Public. All parties are invited to attend and cross examine.

Dated this 10th day of October, 2022.

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - October 10, 2022 - 10:31 AM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.


By:    /s/ Brandon J. Klar
       BRANDON J. KLAR          #72884
       Attorney for Plaintiffs
       1125 Olivette Executive Parkway
       St. Louis, Missouri 63132
       Tel: (314) 863-1117
       Fax: (314) 863-1118
       Email: bjklar@lawsaintlouis.com


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 10th day of October, 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.


CC:    **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
       Kelly J. Daniels, CCR
       49 W. Glenwood Ln.
       St. Louis, MO 63122-5142


                              /s/ Brandon J. Klar

Electronically Filed - Texas - October 10, 2022 - 10:31 AM

# IN THE CIRCUIT COURT OF TEXAS COUNTY
## STATE OF MISSOURI

JENNIFER BUMETER,  )
                          )
and                    )
                          )  Cause No.: 21TE-CC00360
ERIC MEIER,            )
                          )
      Plaintiffs,        )
v.                     )
                          )
MACO MANAGEMENT CO., INC., and  )
                          )
SUMMERSVILLE ESTATES, L.P.    )
                          )
      Defendants.      )

## NOTICE OF DEPOSITION OF CASEY CARTER

TO:            Counsel of Record

DATE & TIME:      Tuesday, October 18, 2022, at 2:30 P.M.

DEPONENT(S):     Casey Carter

LOCATION:        Zoom link to be provided

REPORTER:       Kelly Daniels, CCR

PLEASE TAKE NOTICE that the attorney for Plaintiffs will at the above date, hour and place, take the deposition of the above person upon oral examination pursuant to Rule 57.03 of the Missouri Rules of Civil Procedure, before a certified court reporter and suitable Notary Public. All parties are invited to attend and cross examine.

Dated this 10th day of October, 2022.

Electronically Filed - Texas - October 10, 2022 - 10:31 AM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By:    /s/ Brandon J. Klar
BRANDON J. KLAR     #72884
Attorney for Plaintiffs
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of October, 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.

CC:    **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
Kelly J. Daniels, CCR
49 W. Glenwood Ln.
St. Louis, MO 63122-5142

                    /s/ Brandon J. Klar

Electronically Filed - Texas - October 10, 2022 - 10:31 AM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER,      )
         )
and          )
         )    Cause No.: 21TE-CC00360
ERIC MEIER,      )
         )
    Plaintiffs,      )
v.          )
         )
MACO MANAGEMENT CO., INC., and    )
         )
SUMMERSVILLE ESTATES, L.P.      )
         )
    Defendants.      )

**NOTICE OF DEPOSITION OF LINDA EBERLY**

TO:        Counsel of Record

DATE & TIME:        Tuesday, October 18, 2022, at 1:00 P.M.

DEPONENT(S):        Linda Eberly

LOCATION:        Zoom link to be provided

REPORTER:        Kelly Daniels, CCR

PLEASE TAKE NOTICE that the attorney for Plaintiffs will at the above date, hour and place, take the deposition of the above person upon oral examination pursuant to Rule 57.03 of the Missouri Rules of Civil Procedure, before a certified court reporter and suitable Notary Public. All parties are invited to attend and cross examine.

Dated this 10th day of October, 2022.

Electronically Filed - Texas - October 10, 2022 - 10:31 AM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR         #72884
Attorney for Plaintiffs
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of October, 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.

CC:     **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
Kelly J. Daniels, CCR
49 W. Glenwood Ln.
St. Louis, MO 63122-5142

/s/ Brandon J. Klar

Electronically Filed - Texas - October 10, 2022 - 10:31 AM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, | ) |
| | ) |
| and | ) |
| | ) Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| MACO MANAGEMENT CO., INC., and | ) |
| | ) |
| SUMMERSVILLE ESTATES, L.P. | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF DEPOSITION OF JENNIFER CHRISTIANSON

TO: Counsel of Record

DATE & TIME: Tuesday, October 18, 2022, at 11:30 A.M.

DEPONENT(S): Jennifer Christianson

LOCATION: Zoom link to be provided

REPORTER: Kelly Daniels, CCR

PLEASE TAKE NOTICE that the attorney for Plaintiffs will at the above date, hour and place, take the deposition of the above person upon oral examination pursuant to Rule 57.03 of the Missouri Rules of Civil Procedure, before a certified court reporter and suitable Notary Public. All parties are invited to attend and cross examine.

Dated this 10th day of October, 2022.

EXHIBIT A - STATE COURT FILE

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.


By:    /s/ Brandon J. Klar    
     BRANDON J. KLAR    #72884
     Attorney for Plaintiffs
     1125 Olivette Executive Parkway
     St. Louis, Missouri 63132
     Tel: (314) 863-1117
     Fax: (314) 863-1118
     Email: bjklar@lawsaintlouis.com


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 10th day of October, 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.


**CC:**   **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
     Kelly J. Daniels, CCR
     49 W. Glenwood Ln.
     St. Louis, MO 63122-5142


         /s/ Brandon J. Klar

Electronically Filed - Texas - October 10, 2022 - 10:31 AM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER,           )
           )
and           )
           )   Cause No.: 21TE-CC00360
ERIC MEIER,           )
           )
     Plaintiffs,        )
v.           )
           )
MACO MANAGEMENT CO., INC., and           )
           )
SUMMERSVILLE ESTATES, L.P.           )
           )
     Defendants.        )

<u>**NOTICE OF DEPOSITION OF STEVE CONNER**</u>

TO:        Counsel of Record

DATE & TIME:        Tuesday, October 18, 2022, at 10:00 A.M.

DEPONENT(S):        Steve Conner

LOCATION:        Zoom link to be provided

REPORTER:        Kelly Daniels, CCR

PLEASE TAKE NOTICE that the attorney for Plaintiffs will at the above date, hour and place, take the deposition of the above person upon oral examination pursuant to Rule 57.03 of the Missouri Rules of Civil Procedure, before a certified court reporter and suitable Notary Public. All parties are invited to attend and cross examine.

Dated this 10th day of October, 2022.

EXHIBIT A - STATE COURT FILE

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR          #72884
Attorney for Plaintiffs
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 10th day of October, 2022, a true and correct copy of the Notice of Deposition was served via the court's electronic filing system to all parties of record.

CC:    **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
Kelly J. Daniels, CCR
49 W. Glenwood Ln.
St. Louis, MO 63122-5142

/s/ Brandon J. Klar

Electronically Filed - Texas - October 11, 2022 - 04:18 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER,　　　　　　　)
　　　　　　　　　　　　　　　　)
and　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　Cause No.: 21TE-CC00360
ERIC MEIER,　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　Plaintiffs,　　　　　　　　)
v.　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)
MACO MANAGEMENT CO., INC., and　)
　　　　　　　　　　　　　　　　)
SUMMERSVILLE ESTATES, L.P.　　　)
　　　　　　　　　　　　　　　　)
　　　　Defendants.　　　　　　　　)

## ENTRY OF APPEARANCE

COMES NOW RICHARD E. "TED" HANSON of the law firm KLAR, IZSAK &

STENGER, LLC, and hereby enters his appearance as co-counsel on behalf of Plaintiffs Jennifer

Bumeter and Eric Meier in the above matter.

Dated this 10th day of October, 2022.

　　　　　　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　KLAR, IZSAK & STENGER, L.L.C.


By: /s/ Richard E. Hanson
　　BRANDON J. KLAR　　　　　　#72884
　　RICHARD E. "TED" HANSON　　#69589
　　Attorney for Plaintiffs
　　1125 Olivette Executive Parkway, Ste. 120
　　St. Louis, Missouri 63132
　　Tel:　(314) 863-1117
　　Fax:　(314) 863-1118
　　Email: bjklar@lawsaintlouis.com
　　　　　thanson@lawsaintlouis.com

EXHIBIT A – STATE COURT FILE

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of October, 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Richard E. Hanson

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and | ) | |
| ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.: 21TE-CC00360 |
| | ) | |
| v. | ) | |
| | ) | |
| MACO MANAGEMENT CO., INC., and | ) | |
| SUMMERSVILLE ESTATES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF CANCELLATION OF DEPOSITIONS**

PLEASE TAKE NOTICE, that the below depositions, all currently scheduled on October 18, 2022, via Zoom by Kelly Daniels, CCR, are hereby cancelled and will be rescheduled at a later date convenient for all parties.

1. Deposition of Steve Conner at 10:00 A.M.

2. Deposition of Jennifer Christianson at 10:30 A.M.

3. Deposition of Linda Eberly at 1:00 P.M.

4. Deposition of Casey Carter at 2:30 P.M.

5. Deposition of Michelle McGuire at 4:00 P.M.

Dated this 12th day of October, 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By:   /s/ Brandon J. Klar
      BRANDON J. KLAR    #72884
      Attorney for Plaintiffs
      1125 Olivette Executive Parkway
      St. Louis, Missouri 63132
      Tel: (314) 863-1117
      Fax: (314) 863-1118
      Email: bjklar@lawsaintlouis.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 12th day of October, 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

CC:   **VIA EMAIL ONLY TO: kjdaniels12@yahoo.com**
      Kelly J. Daniels, CCR
      49 W. Glenwood Ln.
      St. Louis, MO 63122-5142

/s/ Brandon J. Klar

Electronically Filed - Texas - October 14, 2022 - 03:02 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )    Cause No.    21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

### NOTICE OF DEPOSITION

TO:                     COUNSEL OF RECORD

DATE & HOUR:            November 14, 2022 immediately following the deposition of
                        Jennifer Bumeter

PLACE OF DEPOSITION:    Klar, Izsak & Stenger, LLC
                        1125 Olivette Executive Parkway
                        St. Louis, MO 63132

PERSON TO BE DEPOSED:   Eric Meier

VIDEOGRAPHER:           Veritext
                        800-567-8658

PLEASE TAKE NOTICE that pursuant to Missouri Supreme Court Rule 57.03, Defendants shall take the above-described deposition upon oral examination at the time and place indicated, continuing day-to-day thereafter until completed, before a Notary Public, or officer authorized to take such deposition.

1

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of October 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

2

Electronically Filed - Texas - October 14, 2022 - 03:02 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,  )
and ERIC MEIER,  )
 )
     Plaintiffs,  )
 )
v.  )    Cause No.    21TE-CC00360
 )
MACO MANAGEMENT CO., INC.,  )
and SUMMERSVILLE ESTATES, L.P.,  )
 )
     Defendants.  )

**<u>NOTICE OF DEPOSITION</u>**

TO:                  COUNSEL OF RECORD

DATE & HOUR:        November 14, 2022 at 10:00 a.m.

PLACE OF DEPOSITION:    Klar, Izsak & Stenger, LLC
                            1125 Olivette Executive Parkway
                            St. Louis, MO 63132

PERSON TO BE DEPOSED:   Jennifer Bumeter

VIDEOGRAPHER:        Veritext
                            800-567-8658

PLEASE TAKE NOTICE that pursuant to Missouri Supreme Court Rule 57.03, Defendants shall take the above-described deposition upon oral examination at the time and place indicated, continuing day-to-day thereafter until completed, before a Notary Public, or officer authorized to take such deposition.

1

EXHIBIT A - STATE COURT FILE

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 14th day of October 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

2

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| JENNIFER BUMETER, an individual | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| ERIC MEIER, an individual | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.: 21TE-CC00360 |
| | ) | |
| v. | ) | |
| | ) | |
| MACO MANAGEMENT COMPANY, INC., | ) | |
| A Missouri Limited Liability Company | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P., | ) | |
| A Missouri Limited Liability Company | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER, by and through their undersigned counsel, and hereby certify that original copies of Plaintiffs Jennifer Bumeter and Eric Meier's 2nd Supplemental Requests for Production of Documents Directed to Defendants in Word and PDF formats, together with a copy of this Certificate, were served upon the following attorneys of record via electronic mail this 24th day of October 2022:

CHILDRESS AHLHEIM CARY LLC
David T. Ahlheim
Marie F. Pudlowski
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
    BRANDON J. KLAR, #72884
    *Attorney for Plaintiffs*
    1125 Olivette Executive Parkway
    Suite 120
    St. Louis, Missouri 63132
    Phone:    (314) 863-1117
    Fax:    (314) 863-1118
    Email:    bjklar@lawsaintlouis.com

Electronically Filed - Texas - October 25, 2022 - 10:39 AM

**IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI**

JENNIFER BUMETER, and )
ERIC MEIER, )
                            ) Cause No.:    21TE-CC00360
      Plaintiffs, )
v. )
                            )
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
                            )
      Defendants. )

**NOTICE OF HEARING VIA WEBEX**

PLEASE TAKE NOTICE that Plaintiffs Jennifer Bumeter and Eric Meier will call for hearing their **Motion to Amend Scheduling Order and for Attorneys' Fees** on **Wednesday, November 2, 2022, at 9:00 A.M.** in the Circuit Court of Texas County, via Webex.

Dated this 25th day of October, 2022.

                                       Respectfully Submitted,

                                       KLAR, IZSAK & STENGER, L.L.C.

By:    /s/ Brandon J. Klar
            BRANDON J. KLAR       #72884
            RICHARD E. HANSON    #69589
            *Attorney for Plaintiffs*
            1125 Olivette Executive Parkway
            Suite 120
            St. Louis, Missouri 63132
            Tel:   (314) 863-1117
            Fax:   (314) 863-1118
            Email: bjklar@lawsaintlouis.com
                       thanson@lawsaintlouis.com

EXHIBIT A — STATE COURT FILE

Electronically Filed - Texas - October 25, 2022 - 10:39 AM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 25th day of October, 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - October 25, 2022 - 10:36 AM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| | ) | |
| and | ) | |
| | ) | Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| MACO MANAGEMENT CO., INC., and | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO AMEND SCHEDULING ORDER AND FOR ATTORNEYS'**
**FEES**

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Motion to Amend Scheduling Order and for Attorneys' Fees, state as follows:

1. On July 26, 2022, this Court specifically entered an Order Regarding Discovery Pertaining to Parties and Fact Witnesses ("Order"). For convenience, the Order is attached hereto as **Exhibit 1**.

2. The Order, which identifies deadlines for depositions in this case, was **requested by Defendants** because of their continued insistence that all such depositions take place in an order of their choosing.

3. The Order identifies a "Party Deadline", by which time the depositions of Plaintiffs and a representative of Defendant were to take place ("Party Deadline"). *See* Exhibit 1, paragraph 1(b).

EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 600 of 786

4. The Party Deadline of October 24, 2022 was ninety (90) days following entry of the Order.

5. Plaintiffs deposed the corporate representative of Defendant, Ms. Dawn Sims, on August 24, 2022—two months before the Party Deadline ("Sims Deposition").

6. Plaintiffs then requested dates to depose other individuals employed by Defendants, who were identified in the Sims Deposition, and who purportedly intend to act as witnesses supporting Defendants' claims.

7. The depositions of five (5) such individuals were scheduled for October 18, 2022 ("October Depositions"), as indicated by Notices of Deposition filed with this Court on October 7, 2022.

8. However, due to Defendants' refusal to produce relevant documents identified by Ms. Sims during the Sims Deposition, Plaintiffs were forced to cancel the October Depositions. The same are to be rescheduled following further document production after this Court hears Plaintiffs' Motion to Compel on November 2, 2022.

9. Defendants' refusal to comply with discovery procedures is the sole reason the October Depositions did not take place as scheduled.

10. Defendants' continued frivolous refusal to comply with Missouri discovery practice, which has been well-documented, has delayed this matter by at least six (6) months and caused additional work for **both Plaintiffs' counsel and this Court**.

11. Now, Defendants yet again refuse to comply with Missouri discovery practice and, more specifically, **the Order**.

12. The Party Deadline, as stated explicitly in paragraph 1(b), **requires Plaintiffs be deposed "within ninety days" of the Order** (October 24, 2022).

EXHIBIT A - STATE COURT FILE

Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 601 of 786

13. Despite this, and despite being presented the opportunity to meet the Party Deadline in corresponding with Plaintiffs' counsel on October 10, 2022, Defendants requested Plaintiffs be deposed at earliest on October 28, 2022—four (4) days after the Party Deadline. *See* **Exhibit 2**.

14. Defendants subsequently filed Notices of Deposition for both Plaintiffs, with the date of such depositions being November 14, 2022—**three weeks after the Party Deadline**.

15. In light of Defendants' refusal to comply with the Order, which Defendants explicitly requested, this Court's enforcement of the Order—prohibiting the depositions of Plaintiffs beyond the Party Deadline—would not be an abuse of discretion.

16. However, in the event this Court allows Defendants to take such depositions, Plaintiffs request this Court issue an amended scheduling order, as well as an order granting Plaintiffs attorneys' fees for the preparation for, and attendance at, Plaintiffs' depositions set for November 14, 2022.

17. Assuming an order granting such fees is entered, Plaintiffs will submit an affidavit of fees and expenses as necessary.

18. Counsel for Defendants has exhibited a remarkable level of bad faith during the discovery practice of this litigation, and her repeated frivolous objections and refusal to comply with Missouri law and this Court's orders have caused nothing but delay and additional expense for both parties and this Court. Plaintiffs respectfully request this Court order sanctions as appropriate to deter such further conduct.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for an order and/or sanctions enforcing this Court's order of July 26, 2022 and prohibiting Defendants from deposing

the Plaintiffs or, alternatively, for an order and/or sanctions granting Plaintiffs' attorneys fees in preparing for and attending the depositions of Plaintiffs Eric Meier and Jennifer Bumeter; for an order and/or sanctions granting Plaintiffs' attorneys fees for the deposition of Susan Austin (as such fees were previously deferred by this Court); for an order and/or sanctions compelling Defendants to pay the attorneys' fees and costs related to the Maco Deposition—as defined in Plaintiffs' July 27, 2022 Memorandum in Support—at which Defendants refused to produce their client for a properly noticed deposition; for an order and/or sanctions granting Plaintiffs' attorneys fees in preparing for and arguing the instant motion; and for any such other relief and sanctions as this Court deems just and proper under the circumstances

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
RICHARD E. HANSON, #69589
*Attorneys for Plaintiffs*
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Email: bjklar@lawsaintlouis.com
       thanson@lawsaintlouis.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 25th day of October 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar___

FILED
7/26/2022
MARCI MOSLEY
CIRCUIT CLERK
TEXAS COUNTY, MO

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, | ) |
| | ) |
| and | ) |
| | )  Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| MACO MANAGEMENT CO., INC., and | ) |
| | ) |
| SUMMERSVILLE ESTATES, L.P. | ) |
| | ) |
| Defendants. | ) |

EXHIBIT
1
tabbies

## PLAINTIFFS' PROPOSED ORDER REGARDING DISCOVERY PERTAINING TO PARTIES AND FACT WITNESSES

After hearing on Defendants' Motion for Protective Order and Motion to Quash, and at the request of this Court, Plaintiffs submit the following Proposed Order Regarding Discovery Pertaining to Parties and Fact Witnesses:

1. All parties to this action, including those persons within their control and/or employ, shall be deposed prior to the depositions of any further fact witnesses.

   a. Defendants and their agents or representatives shall be deposed within ~~sixty~~ *Ninety* 90 ~~(60)~~ days of this Order, conditioned upon Plaintiffs providing ten (10) days written notice of the person(s) to be deposed;

   b. Plaintiffs shall be deposed within ~~sixty~~ *Ninety* 90 ~~(60)~~ days ~~after completion of the depositions of Defendants and their agents or representatives~~ *of this order.* ("Party Deadline"), conditioned upon Defendants providing ten (10) days written notice of the person(s) to be deposed;

Page 1 of 2

  c. Fact witnesses identified by the Defendants shall be deposed within one hundred and twenty (120) days of the Party Deadline;

  d. Fact witnesses identified by the Plaintiffs shall be deposed within one hundred and twenty (120) days of the Party Deadline.

2. In the event additional fact witnesses are identified by either party during the aforementioned depositions, any such deposition of the additional fact witness shall take place within one hundred and twenty (120) days of such fact witness' disclosure.

3. Nothing in this Order shall be read as a waiver of any discovery rules or procedures set forth in the Missouri Rules of Civil Procedure.

4. The parties will work cooperatively to schedule depositions at a date, time, and location which are amenable to both parties and the deponent(s).

5. This Order, inclusive of the above dates, are subject to change by written agreement of the parties or by further order of the Court.

6. This Order shall not be read to include a scheduling order for the depositions of any experts to be named in the future by each respective party.

7. Case set 9.2.22 at 9:00 am. for setting. Counsel May appear by Webey.

SO ORDERED: _____

The Honorable John D. Beger

Date: 7-26-25

Page 2 of 2

# Brandon J. Klar

| | |
|---|---|
| **From:** | Marie Pudlowski <MPudlowski@jchildresslaw.com> |
| **Sent:** | Monday, October 10, 2022 2:24 PM |
| **To:** | Brandon J. Klar |
| **Cc:** | Dave Ahlheim |
| **Subject:** | RE: Bumeter and Meier v. Maco |



Would any of the following dates work for Plaintiffs: Oct 28, Nov 3, 14, or 16? If not, let me know what later Nov/early Dec dates would work.

From there, I would like to get Johnson and Kittner's depositions set. Let me know if you will be able to produce them or if we will need to find an agreed date to subpoena them.

Thanks,



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct:
314.584.4568
www.jchildresslaw.com | mpudlowski@jchildresslaw.com

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Monday, October 10, 2022 2:12 PM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter and Meier v. Maco

I will reach out to them both today and get back to you as soon as I am able. Is there a particular time period you are interested in or just as soon as possible? Thanks

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Monday, October 10, 2022 11:23 AM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** Bumeter and Meier v. Maco

Brandon:

Electronically Filed - Texas - October 25, 2022 - 10:36 AM

Electronically Filed - Texas - October 26, 2022 - 04:41 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER,    )
             )
and           )
             ) Cause No.: 21TE-CC00360
ERIC MEIER,       )
             )
  Plaintiffs,      )
v.            )
             )
MACO MANAGEMENT CO., INC., and )
             )
SUMMERSVILLE ESTATES, L.P.  )
             )
  Defendants.     )

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO AMEND SCHEDULING ORDER**
**AND FOR ATTORNEYS' FEES**

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through their undersigned counsel, and for their Reply in Support of their Motion to Amend Scheduling Order and for Attorneys' Fees ("Motion"), state as follows:

1. On July 26, 2022, this Court specifically entered an Order Regarding Discovery Pertaining to Parties and Fact Witnesses ("Order").

2. Defendants' own inability to follow the Order is the sole reason the Court may need to amend the same. Despite Defendants' (again) incorrect intimations in paragraph 6 of their Response, Plaintiffs do not require deadlines of the Order be moved for their own future depositions.

3. As stated in the Motion, Plaintiffs learned of new witnesses during the deposition of Ms. Sims and, as explicitly provided for in the Order, Plaintiffs received an additional 120 days to perform such depositions. *See* Order, ¶ 2.

EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW Document 1-1 Filed 01/12/23 Page 607 of 786

4. Plaintiffs' counsel **did not** provide written agreement to the deposition dates of Plaintiffs. As explicitly stated in Defendants' own attached exhibit, Plaintiffs simply advised of availability within **"the options presented"** by Defendants' counsel—which, again, were **already beyond** the defined Party Deadline .

5. It is not incumbent upon the Plaintiffs to ensure Defendants follow this Court's orders, including specifically the Order.

6. Defendants' counsel time and again refuses to comply with Missouri Rules of Civil Procedure and, it is for that reason alone, this Court is required to resolve these continued frivolous disputes.

7. Plaintiffs need not manufacture any appearances of bad faith by Defendants for this Court to be aware of the continued actions and inactions of Defendants' counsel.

8. In advance of the November 2, 2022 hearing, Plaintiffs will submit an Application for Attorneys' Fees and corresponding Affidavit.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for an order and/or sanctions enforcing this Court's order of July 26, 2022 and prohibiting Defendants from deposing the Plaintiffs or, alternatively, for an order and/or sanctions granting Plaintiffs' attorneys fees in preparing for and attending the depositions of Plaintiffs Eric Meier and Jennifer Bumeter; for an order and/or sanctions granting Plaintiffs' attorneys fees for the deposition of Susan Austin (as such fees were previously deferred by this Court); for an order and/or sanctions compelling Defendants to pay the attorneys' fees and costs related to the Maco Deposition—as defined in Plaintiffs' July 27, 2022 Memorandum in Support—at which Defendants refused to produce their client for a properly noticed deposition; for an order and/or sanctions granting Plaintiffs' attorneys

fees in preparing for and arguing the instant motion; and for any such other relief and sanctions as this Court deems just and proper under the circumstances

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: ___/s/ Brandon J. Klar_____
BRANDON J. KLAR, #72884
RICHARD E. HANSON, #69589
*Attorneys for Plaintiffs*
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Email: bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 26th day of October 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar____

Electronically Filed - Texas - October 26, 2022 - 04:18 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | |
|---|---|
| JENNIFER BUMETER, | ) |
| and ERIC MEIER, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )　　Cause No.　　21TE-CC00360 |
| | ) |
| MACO MANAGEMENT CO., INC., | ) |
| and SUMMERSVILLE ESTATES, L.P., | ) |
| | ) |
| Defendants. | ) |

## NOTICE OF HEARING COMBINED SUMMARY

For the Court's convenience, please take notice that the following motions are being called

up for hearing **November 2, 2022 at 9:00 AM** in Texas County Circuit Court before Judge Beger,

or as soon thereafter as counsel may be heard, via WebEx.

https://mocourts.webex.com/meet/john.beger

Join by phone
+1-408-418-9388 United States Toll

Access code: 960 524 065

| Motion | Date Filed | Date Response Filed |
|---|---|---|
| Plaintiffs' Motion for Relief and 2nd Request for Sanctions | 7/27/22 | 8/5/22 |
| Plaintiffs' Motion to Compel and 3rd Request for Sanctions <br> Plaintiff's Memo in Support | 9/8/22 <br><br> 10/5/22 | 10/3/22 |
| Plaintiffs' Motion to Amend Scheduling Order and Request for Attorney Fees (4th Request for Sanctions) | 10/25/22 | 10/26/22 |
| Defendants' Motion for an Order to Protect a Witness pursuant to Missouri Revised Statutes 491.600 | 10/3/22 | 10/5/22 |
| Defendants' Motion for Clarification and to Amend the July 26, 2022 | 8/26/22 | |

1

Case 6:23-cv-03015-BCW　　Document 1-1　　Filed 01/12/23　　Page 610 of 786

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26th day of October 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

2

EXHIBIT A - STATE COURT FILE

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO AMEND SCHEDULING OREDER AND FOR ATTORNEY'S FEES**

COMES NOW, Defendants Maco Management Co. Inc. (hereinafter "Maco") and Summersville Estates, L.P. (hereinafter "Summersville"), by and through undersigned counsel, and for Defendants' Response in Opposition to Plaintiffs' Motion to Amend Scheduling Order and For Attorney's Fees (Fourth Request for Sanctions) states as follows:

1. Case remains set for Jury trial on August 14, 2023.

2. Plaintiffs' depositions are set and noticed for the date agreed upon by both counsel of November 14, 2022. *See* Exhibit 1 attached.

3. Given an initial misreading of the Scheduling Order by Defendants' counsel that Defendants had to be produced in advance of Plaintiffs and scheduling conflicts, Defendants were not able to secure a date for Plaintiffs' depositions until a few weeks after the scheduling order "party deadline."

4. Plaintiffs' counsel at no time expressed to Defendants' counsel an objection or issue with this requested later date. *See* Exhibit 1 attached. Plaintiffs' counsel at no time offered up a date in advance of the "party deadline." *See* Exhibit 1 attached. Plaintiff's counsel waited until the day

after the deadline passed (October 25) to file their motion and relay their opposition for the first time in a motion requesting sanctions.

5. An order preventing Defendants from deposing Plaintiffs as noticed on the agreed November 14 date that is just a few weeks post scheduling order deadline would unfairly prejudice Defendants.

6. This later deposition date in no way prejudices Plaintiffs. This date does not create additional time expense in preparing or producing the witness. This date will not result in a trail continuance. Given no other depositions are set, this date will continue to allow party depositions to occur in advance of any fact witness depositions as set forth in the Scheduling Order. And, lastly, Plaintiff themselves are requesting the deadline to be moved to allow for further Defendant depositions.

7. Ultimately, this motion appears to be yet another attempt by Plaintiffs to manufacture an alleged appearance of bad faith by Defendants so Plaintiffs can request Defendants pay for their routine litigation costs. Plaintiffs own frivolous motions and requests for sanctions are the cause of any additional delay and expense, especially considering Plaintiffs continue to refuse to make any effort to cooperate and resolve these matters without the need for Court motions and request for sanctions.

8. For all the reasons stated herein, Defendants requests.

WHEREFORE, Defendants pray this Court Amend the Scheduling Order to allow Plaintiffs depositions to occur on the agreed November 14 date and to deny Plaintiffs' Fourth Request for Sanctions/Attorney Fees, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
  David T. Ahlheim  #50853
  Marie F. Pudlowski  #64228
  1010 Market Street, Suite 500
  St. Louis, Missouri 63101
  314-621-9800
  314-621-9802 (fax)
  dahlheim@jchildresslaw.com
  mpudlowski@jchildresslaw.com
  *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26th day of October 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

    /s/  MARIE F. PUDLOWSKI

3

EXHIBIT A - STATE COURT FILE

**From:** Marie Pudlowski
**Sent:** Friday, October 14, 2022 12:08 PM
**To:** 'Brandon J. Klar' <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter and Meier v. Maco

That works. I'll prepare a notice for 14th, your office, and start time 10AM.

Can you get me dates in December where we can depose Kittner and Johnson?

Best,



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax:**
**314.621.9802 |Direct: 314.584.4568**
**www.jchildresslaw.com | mpudlowski@jchildresslaw.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Friday, October 14, 2022 9:51 AM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter and Meier v. Maco

Of the options presented, Monday the 14th is the first available for both Plaintiffs.

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Monday, October 10, 2022 2:24 PM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter and Meier v. Maco

Would any of the following dates work for Plaintiffs: Oct 28, Nov 3, 14, or 16? If not, let me know what later Nov/early Dec dates would work.

EXHIBIT A - STATE COURT FILE

EXHIBIT 1

From there, I would like to get Johnson and Kittner's depositions set. Let me know if you will be able to produce them or if we will need to find an agreed date to subpoena them.

Thanks,



**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 |Direct: 314.584.4568**
**www.jchildresslaw.com | mpudlowski@jchildresslaw.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

**From:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Sent:** Monday, October 10, 2022 2:12 PM
**To:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** RE: Bumeter and Meier v. Maco

I will reach out to them both today and get back to you as soon as I am able. Is there a particular time period you are interested in or just as soon as possible? Thanks

**From:** Marie Pudlowski <MPudlowski@jchildresslaw.com>
**Sent:** Monday, October 10, 2022 11:23 AM
**To:** Brandon J. Klar <Bjklar@lawsaintlouis.com>
**Cc:** Dave Ahlheim <DAhlheim@jchildresslaw.com>
**Subject:** Bumeter and Meier v. Maco

Brandon:

Can you please provide available dates for Jennifer and Eric's in-person depositions? I am fine doing them at your office. My office is always an option as well.

Thanks,



Electronically Filed - Texas - October 26, 2022 - 04:18 PM

**MARIE F. PUDLOWSKI**
**ATTORNEY AT LAW**
**1010 Market, Suite 500 | St. Louis, Missouri 63101 | Phone: 314.621.9800 | Fax: 314.621.9802 | Direct: 314.584.4568**
**www.jchildresslaw.com | mpudlowski@jchildresslaw.com**

CONFIDENTIALITY NOTICE: This e-mail message including attachments, if any, is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message and attachments.

NOTICE: The Missouri Bar and Missouri Supreme Court require all Missouri attorneys to notify e-mail recipients that e-mail is not a secure method of communication, that it may be copied and held by any computer through which it passes, and persons not participating in the communication may intercept the communication. Should you wish to discontinue this method of communication, please advise, and no further e-mail communication will be sent.

Electronically Filed - Texas - October 26, 2022 - 04:18 PM

Electronically Filed - Texas - October 27, 2022 - 03:59 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, | ) |
| | ) |
| and | ) |
| | ) Cause No.: 21TE-CC00360 |
| ERIC MEIER, | ) |
| | ) |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| MACO MANAGEMENT CO., INC., and | ) |
| | ) |
| SUMMERSVILLE ESTATES, L.P. | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFFS' APPLICATION FOR ATTORNEYS' FEES RELATED TO DISCOVERY DISPUTES**

COMES NOW the law firm of Klar, Izsak & Stenger, LLC, by and through Brandon J. Klar, and states under oath as follows:

1. This law firm was retained by Plaintiffs Jennifer Bumeter and Eric Meier to represent their claims.

2. All relevant records are kept in the ordinary course of business.

3. All relevant records are relied upon for various business purposes.

4. All business records are accurate and backed up electronically.

5. This law firm has billed Plaintiffs and/or incurred the following in relation to the following discovery disputes (collectively, the "Discovery Disputes"), including Defendants' use of improper and undisclosed exhibits during the deposition of Susan Austin—the subject of Plaintiffs' Motion for Relief (filed 7/5/2022, granted 7/26/2022); Defendants' refusal to produce a corporate representative for a properly noticed deposition—the subject of Plaintiffs' Memorandum in Support (filed 7/27/2022, to be

heard 11/2/2022); Defendants' refusal to produce relevant documents—the subject of Plaintiffs' Motion to Compel (filed 9/8/2022, to be heard 11/2/2022); and Defendants' refusal to comply with this Court's July 26, 2022 Order—the subject of Plaintiffs' Motion to Amend Scheduling Order and for Attorneys' Fees (filed 10/25/2022, to be heard 11/2/2022):

    a. **Susan Austin Deposition and Motion for Relief (preparation, oral presentation, and argument): June 29, 2022 through July 19, 2022 – $3,650.00.**

    b. **Corporate Representative Deposition and Memorandum in Support: July 8, 2022 through July 27, 2022 – $2,001.50.**

    c. **Motion to Compel and Memorandum in Support: August 22, 2022 through September 8, 2022 – $1,554.00.**

    d. **Fees and expenses related to preparing for and arguing Plaintiffs' Motion to Compel are currently undetermined, but the same are anticipated to reach, at minimum, $500.**

    e. **Fees and expenses related to preparing, presenting and arguing Plaintiffs' Motion to Amend Scheduling Order and for Attorneys' Fees are currently undetermined, but the same are anticipated to reach, at minimum, $1,500.00.**

    f. **In addition, fees and expenses related to preparation and attendance at the depositions of Plaintiffs are currently undetermined, but the same are anticipated to reach, at minimum, $2,000.00.**

**PERFORMED TOTAL: $7,205.50**

**ESTIMATED FUTURE TOTAL: Minimum of $4,000.00**

EXHIBIT A – STATE COURT FILE

Electronically Filed - Texas - October 27, 2022 - 03:59 PM

**GRAND TOTAL: Minimum of $11,205.50**

6.      All work performed was reasonable and necessary. **See attached Affidavit of Brandon J. Klar**.

7.      All legal expenses and fees charged were reasonable and necessary in and around the St. Louis County area and, on information and belief, also in the Texas County area. Similarly, all fees charged and are in line with other attorneys' charges and fees in the St. Louis County Area and, on information and belief, also in the Texas County area.

WHEREFORE, Plaintiffs pray this Court to make and enter an order for Attorney's Fees Related to the Discovery Disputes in the amount of no less than $11,205.50.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By:    /s/ Brandon J. Klar      
BRANDON J. KLAR, #72884
RICHARD E. HANSON, #69589
*Attorneys for Plaintiffs*
1125 Olivette Executive Parkway
St. Louis, Missouri 63132
Tel: (314) 863-1117
Email: bjklar@lawsaintlouis.com
        thanson@lawsaintlouis.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on this 27th day of October 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar   

## IN THE CIRCUIT COURT OF TEXAS COUNTY
## STATE OF MISSOURI

JENNIFER BUMETER,⁣ )
　 )
and　 )
　 )　 Cause No.: 21TE-CC00360
ERIC MEIER,　 )
　 )
　 Plaintiffs,　 )
v.　 )
　 )
MACO MANAGEMENT CO., INC., and　 )
　 )
SUMMERSVILLE ESTATES, L.P.　 )
　 )
　 Defendants.　 )

## AFFIDAVIT OF BRANDON J. KLAR

1.　 I, Brandon J. Klar, being of lawful age and having been first duly sworn, state upon my oath as follows:

2.　 I am counsel for Plaintiffs Jennifer Bumeter and Eric Meier in cause number 21TE-CC00360. I am a licensed and active member of the Missouri Bar. My Bar number is 72884.

3.　 The facts and arguments set forth in Plaintiffs Jennifer Bumeter and Eric Meier's Motion for Relief, Plaintiffs' Memorandum in Support of Motion for Relief, Plaintiffs' Motion to Compel, Plaintiffs' Memorandum in Support of Motion to Compel, and Plaintiffs' Motion to Amend Scheduling Order and for Attorneys' Fees are based on facts that are within my personal knowledge.

4.　 I am a personal witness to the following events:

　 a.　 On June 29, 2022, at the deposition of Susan Austin, I witnessed Ms. Pudlowski, counsel for Defendants, use several exhibits which she did not

1

disclose to Plaintiffs, were unquestionably relevant to the instant litigation, and were undoubtedly requested by Plaintiffs in discovery.

b.      On July 15, 2022, I attended the properly noticed deposition for the corporate representative of Defendant Maco Management Company, Inc. Though Ms. Pudlowski appeared at the deposition, she refused to produce her client. Instead, she continuously insisted the Plaintiffs must be deposed first. I advised Ms. Pudlowski on several occasions that her insisted position was not only without legal authority, but it was actually contrary to Missouri Rules of Civil Procedure.

c.      On July 15, 2022, I obtained a Certificate of Nonappearance for the above-identified deposition.

d.      On July 26, 2022, this Court denied Defendants' request for a protective order and, instead, ordered Defendants to produce a representative of their client for deposition within ninety (90) days.

e.      On August 24, 2022, I deposed Ms. Dawn Sims—the representative of Defendants. At this deposition, Ms. Sims raised the importance and existence of several undisclosed documents which are both unquestionably relevant to the instant litigation and were undoubtedly requested by Plaintiffs in discovery[1].

---

[1] See attached **Exhibit 1**, a copy of Defendant Maco Management Company, Inc.'s Third Supplemental Responses to Plaintiffs' First Request for Production of Documents. See also attached **Exhibit 2**, exemplar of Defendants' responsive bates stamped production (labeled Maco 1217 through Maco 1221). Though the attached documents (dated through December 2018) were produced as responsive, Defendants now object to the relevance of producing the same documents reportedly created after December 2018 (despite the incident giving rise to this litigation taking place in 2021)—see **Exhibit 3**.

2

Electronically Filed - Texas - October 27, 2022 - 03:59 PM

f.    On September 2, 2022, I provided Ms. Pudlowski with Supplemental Requests for Production, specifically seeking those documents which were undisclosed and newly raised by Ms. Sims.

g.    Shortly thereafter, Ms. Pudlowski objected to the relevance of such documents. As a result, I sent her a golden rule letter and subsequently informed her that the information to which she objected was both relevant and discoverable.

h.    Ms. Pudlowski refused to make concessions to her objections and, on September 8, 2022, I filed a Motion to Compel the documents discussed by Ms. Sims during her deposition.

i.    On October 25, 2022, I filed a Motion to Amend Scheduling Order and for Attorneys' Fees because Defendants failed to comply with this Court's July 26, 2022 Order. Specifically, Defendants failed to depose Plaintiffs prior to the identified deadline for all such depositions.

5.    This repeated, frivolous conduct has brought discovery to a complete stop, and each party's time has been burdened by the unnecessary effort (and expenses) required to obtain relevant and discoverable information.

6.    Any attempt to move this case toward resolution has been severely hampered by the Defendants' repeated and unwarranted objections. Their continued refusal to participate in appropriate discovery practice or abide by this Court's orders is deliberate and operates only to delay.

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - October 27, 2022 - 03:59 PM

STATE OF MISSOURI )
                   )    SS.

ST. LOUIS COUNTY )

I, Brandon J. Klar, declare under penalty of perjury that the above statements are true and accurate according to the best of my knowledge, information, and belief.

#72884

BRANDON J. KLAR

Dated this 27th day of October 2022

SUBSCRIBED AND SWORN to me before the undersigned Notary Public on this 27th day of October, 2022.

EMA REMTULA
Notary Public, Notary Seal
State of Missouri
St. Louis County
Commission # 17543784
My Commission Expires 06-30-2026

NOTARY PUBLIC

My Commission Expires: June 30, 2026

Electronically Filed - Texas - October 27, 2022 - 03:59 PM



IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER, an individual )
)
AND )
)
ERIC MEIER, an individual )
)
      Plaintiffs, )    Cause No.: 21TE-CC00360
)
  v. )    Division:
)
MACO MANAGEMENT COMPANY, INC., )
A Missouri Limited Liability Company )
)
AND )
)
SUMMERSVILLE ESTATES, L.P., )
A Missouri Limited Liability Company )
)
      Defendants. )

## DEFENDANT MACO MANAGEMENT COMPANY, INC.'S OBJECTIONS AND 3rd SUPPLEMENTAL RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

COMES NOW Defendant Maco Management Company, Inc., by and through counsel, Childress Ahlheim Cary LLC, and provides its Objections and 3rd Supplemental Responses to Plaintiffs' First Request for Production of Documents as follows:

### PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

The below objections and responses are submitted on behalf of Defendant Maco Management Company, Inc. (hereinafter "Maco") as the responding party to these Interrogatories/Requests for Production. Nothing in Maco's specific answers should be construed as a waiver of these general objections.

1. Maco hereby expressly reserves the right to object to the introduction into evidence, at trial, or in any other proceeding of any information or documents contained in or referred to in the following Interrogatories/Requests for Production on any ground. Maco does **not** concede that the information it discloses is relevant or material to the subject matter at issue in this case, admissible in evidence, or reasonably calculated to lead to discovery of admissible evidence.

Page 1 of 6

2. **Maco's responses to these Interrogatories/Requests for Production are limited to information and documents not protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, the insurer-insured privilege, or any other privilege or immunity; insofar as any Interrogatories/Requests for Production calls for the disclosure of any such information or documents, Maco objects to the Interrogatories/Requests for Production on each such ground.**

3. **Maco's responses are also limited to information reasonably related to the subject matter of this action and information currently available to Maco based on a reasonable and thorough search of those places where such information could reasonably be expected to be found.**

4. **Maco's investigation continues. Maco expressly reserves the right to modify, supplement, or amend any or all of its responses if necessary or appropriate.**

## REQUESTS

1.      All documents, statements, recordings, reports, records, photographs, videotapes and writings of any kind identified, referenced or referred to in any way in response to Plaintiffs' First Set of Interrogatories Directed to Defendant Maco Management Company, Inc. in the above cause of action.

**RESPONSE: Objection. Maco objects to this interrogatory as vague and ambiguous to the extent it fails to specify the documents to be produced with reasonable particularity as required by Missouri Supreme Court Rule 58.01.**

**Subject to and without waiving the same: See MACO001-447.**

**1st SUPPLEMENTAL RESPONSE: Subject to and without waiving said objection and in accordance with the Court's July 26, 2022 Order: See MACO001-2102 and attached voicemail recording to the extent any such document may be interpreted as responsive. MACO448-2102 deemed confidential per protective order.**

**2nd SUPPLEMENTAL RESPONSE: Subject to and without waiving said objection and in accordance with the Court's July 26, 2022 Order: See MACO001-2124 and attached voicemails recording to the extent any such document may be interpreted as responsive. MACO448-2124 deemed confidential per protective order.**

**3rd SUPPLEMENTAL RESPONSE: Subject to and without waiving said objection and in accordance with the Court's July 26, 2022 Order and Confidential Protective Order: See MACO001-2148 (previously produced up to 2124), 911 recording (previously produced), and 11 voicemail recordings (previously produced) to the extent any such document may be**

interpreted as responsive.

2.    All written statements, memoranda, notes or other communications in your possession

which relate to the Incident.

**RESPONSE: Objection. Maco objects to said request because the documents sought are overly broad as drafted without sufficient limitations. It seeks documents protected as intangible attorney work product and/or impermissibly seeks documents obtained in anticipation of litigation and/or in preparation for trial by defendants, its counsel, its insured, or its consultants. It calls for documents protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, and the insurer-insured privilege. Further, it is objectionable under *State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley*, 898 S.W.2d 550, 553 (Mo.banc 1995) and *State ex rd. Hackler v. Dierker*, 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).**

3.    All photographs, videos or other recordings in your possession which relate to the

Incident.

**RESPONSE: Objection. Maco objects to said request because the documents sought are overly broad as drafted without sufficient limitations. It seeks documents protected as intangible attorney work product and/or impermissibly seeks documents obtained in anticipation of litigation and/or in preparation for trial by defendants, its counsel, its insured, or its consultants. It calls for documents protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, and the insurer-insured privilege. Further, it is objectionable under *State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley*, 898 S.W.2d 550, 553 (Mo.banc 1995) and *State ex rd. Hackler v. Dierker*, 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).**

**Subject to and without waiving the same: See photos MACO010-022 (photos attached to Missouri State Fire Marshall Report), MACO041-089 (Sedgwick Photo Sheet), MACO262-280, MACO417-424, MACO445-447, and 911 recording.**

4.    All correspondence, emails, notes, memoranda or other communications between you

and either Plaintiff, or anyone else (other than your attorney) related to the Incident, or the damages

and injuries resulting from the same.

**RESPONSE: Objection. Maco objects to said request because the documents sought are overly broad as drafted without sufficient limitations, specifically as it calls for all such documents from "anyone else." It seeks documents protected as intangible attorney work product and/or impermissibly seeks documents obtained in anticipation of litigation and/or in preparation for trial by defendants, its counsel, its insured, or its consultants. It calls for documents protected from disclosure pursuant to the work-product doctrine, the attorney-**

client privilege, and the insurer-insured privilege. Further, it is objectionable under *State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley,* 898 S.W.2d 550, 553 (Mo.banc 1995) and *State ex rd. Hackler v. Dierker,* 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).

Subject to and without waiving the same: See MACO0187-226, MACO425-444 for communications with Plaintiff.

**1st SUPPLEMENTAL RESPONSE:** Subject to and without waiving said objection and in accordance with the Court's July 26, 2022 Order: See MACO001-2102 and attached voicemail recording to the extent any such document may be interpreted as responsive. MACO448-2102 deemed confidential per protective order.

**2nd SUPPLEMENTAL RESPONSE:** Subject to and without waiving said objection and in accordance with the Court's July 26, 2022 Order: See MACO001-2124 and attached voicemails recording to the extent any such document may be interpreted as responsive. MACO448-2124 deemed confidential per protective order.

5.      All correspondence, including but not limited to, emails, notes, memoranda or other communications between you and Defendant Summersville Estates, L.P. related to the Incident, or the damages and injuries resulting from the same.

**RESPONSE:** Objection. Said Request is beyond the scope of discovery as provided by the Missouri Rules of Civil Procedure. Maco objects to said request given the relationship between these entities and shared insurer. Such request seeks documents protected as intangible attorney work product and/or impermissibly seeks documents obtained in anticipation of litigation and/or in preparation for trial by defendants, its counsel, its insured, or its consultants. It calls for documents protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, and the insurer-insured privilege.

6.      All documents, including but not limited to training manuals, employee handbooks, brochures and PDFs which relate to or describe the duties and responsibilities of the property manager at Summersville Estates.

**RESPONSE:** See MACO285-304.

**2nd SUPPLEMENTAL RESPONSE:** See also MACO2111-2124.

7.      A copy of the entire personnel file maintained for Ms. Dawn Sims, including, but not limited to any employment agreement.

**RESPONSE:** See MACO 305-334.

**2ⁿᵈ SUPPLEMENTAL RESPONSE:** See also MACO2110.

8. All Inspection Reports related to the apartment unit of Ms. Robin Rose Fischer ("Decedent").

**RESPONSE: See MACO227-259, MACO371-402. See also MACO348-359 for the Summersville Estates Inspection Reports completed in June 2021 of the 3 other apartment units making up building D.**

9. All Inspection Reports for the week of June 21, 2020 through June 28, 2020.

**RESPONSE: See MACO344-351 for Summersville Estates Inspection Reports from the week of June 21, 2021 through June 28, 2021.**

10. Any correspondence or other notice to you from any insurance company who may have an interest in this lawsuit, indicating that they are denying coverage for the damages or injuries alleged in this suit, or are defending this lawsuit under a reservation of rights.

**RESPONSE: Not applicable.**

11. All documents which memorialize, identify, or are otherwise related to the policies and procedures which are to be followed by your employees.

**RESPONSE: Objection. Maco objects to said Request as vague and lacking in reasonable particularity as required by Missouri Supreme Court Rule 58.01 to the extent it asks for documents that "otherwise" relate to the policies and procedures. A response is impossible without speculation. Furthermore, Maco objects given the information sought is overly broad and unduly burdensome as drafted as it is not sufficiently limited to a relevant scope or time, especially considering the varying employment positions within the Maco company. The burden associated with such a response is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

12. A copy of the resume used by Ms. Dawn Sims in applying for employment with you.

**RESPONSE: See MACO317-318.**

EXHIBIT A - STATE COURT FILE

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim    #50853
Marie F. Pudlowski   #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of September 2022, the foregoing was served via electronic mail upon counsel of record.

Brandon J. Klar
Klar, Izsak & Stenger, L.L.C.
1505 S. Big Bend Boulevard
St. Louis, MO 63117
bjklar@lawsaintlouis.com
*Attorneys for Plaintiffs*

/s/ MARIE F. PUDLOWSKI

**Page 6 of 6**



EXHIBIT
**2**



# MACO MANAGEMENT CO., INC.

## 24-HOUR NOTICE TO ENTER APARTMENT

Today's Date: **12/05/2018**

Complex **Summersville Estates**          Apt. #   **ALL**

I, **Dawn Sims and Pest Control Man**          , Property Manager. will be entering your apartment to do the following work:

Pest Control to the apartments that need it

Date work is to be done: December 6, 2018

If this time and date are inconvenient, please contact me immediately to make other arrangements. All maintenance repairs will be done during the hours of 8:00 a.m. to 5:00 p.m., unless other arrangements are made with your Property Manager.

If this notice is due to Pest control inspections / treatment, it is not necessary for you to be present, we must enter at the time scheduled.

Thank you.

*Dawn Sims*

Property Manager

This institution is an equal opportunity provider.

Rev 12/18/2017

CONFIDENTIAL

EXHIBIT A - STATE COURT FILE

MACO1217

Electronically Filed - Texas - October 27, 2022 - 03:59 PM



# MACO MANAGEMENT CO., INC.

## 24-HOUR NOTICE TO ENTER APARTMENT

Today's Date: **11/14/2018**

Complex **Summersville Estates** Apt. # **ALL**

I, **Dawn and Pest Control** , Property Manager, will be entering your apartment to do the following work:

Pest Control will be Spraying Outdoors. He will be visiting the apartments that Still have issues.

Date work is to be done: 11/15/18 or 11/16/18

If this time and date are inconvenient, please contact me immediately to make other arrangements. All maintenance repairs will be done during the hours of 8:00 a.m. to 5:00 p.m., unless other arrangements are made with your Property Manager.

If this notice is due to Pest control inspections / treatment, it is not necessary for you to be present, we must enter at the time scheduled.

Thank you,

*Dawn Sims*

Property Manager

This institution is an equal opportunity provider.

Rev 12/18/2017

CONFIDENTIAL

MACO1218

# MACO MANAGEMENT CO., INC.

## 24-HOUR NOTICE TO ENTER APARTMENT

Today's Date: **11/09/2018**

Complex **Summersville Estates** Apt. # **ALL**

I, **Dawn Sims** , Property Manager. will be entering your apartment to do the following work:

I will be doing quarterly inspections.

Date work is to be done: November 12, 2018

If this time and date are inconvenient, please contact me immediately to make other arrangements. All maintenance repairs will be done during the hours of 8:00 a.m. to 5:00 p.m., unless other arrangements are made with your Property Manager.

If this notice is due to Pest control inspections / treatment, it is not necessary for you to be present, we must enter at the time scheduled.

Thank you,

*Dawn Sims*

Property Manager

This institution is an equal opportunity provider.

Rev 12/18/2017

CONFIDENTIAL
EXHIBIT A - STATE COURT FILE
MACO1219

**MACO MANAGEMENT CO., INC.**

# 24-HOUR NOTICE TO ENTER APARTMENT

Today's Date: **10/17/2018**

Complex **Summersville Estates** Apt. # Any with issues

I, **Management and Pest Control**, Property Manager, will be entering your apartment to do the following work:

Pest Control as needed.

Date work is to be done: 10-19-18

If this time and date are inconvenient, please contact me immediately to make other arrangements. All maintenance repairs will be done during the hours of 8:00 a.m. to 5:00 p.m., unless other arrangements are made with your Property Manager.

If this notice is due to Pest control inspections / treatment, it is not necessary for you to be present, we must enter at the time scheduled.

Thank you,

Dawn Sims

Property Manager

This institution is an equal opportunity provider.

Rev 12/18/2017

Electronically Filed - Texas - October 27, 2022 - 03:59 PM



# MACO MANAGEMENT CO., INC.

## 24-HOUR NOTICE TO ENTER APARTMENT

Today's Date: **08/17/2018**

Complex **SUMMERSVILLE ESTATES** Apt. # **ALL**.

I, **BRANDON AND BUG GUY**, Property Manager, will be entering your apartment to do the following work:

Monthly Pest Control

Date work is to be done: 09-17-18

If this time and date are inconvenient, please contact me immediately to make other arrangements. All maintenance repairs will be done during the hours of 8:00 a.m. to 5:00 p.m., unless other arrangements are made with your Property Manager.

If this notice is due to Pest control inspections / treatment, it is not necessary for you to be present, we must enter at the time scheduled.

Thank you,

*Michelle McGuire*
Property Manager

This institution is an equal opportunity provider.

Rev 12/18/2017

CONFIDENTIAL

MACO1221

Electronically Filed - Texas - October 27, 2022 - 03:59 PM



EXHIBIT
3

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER, an individual )
)
AND )
)
ERIC MEIER, an individual )
)
      Plaintiffs, )    Cause No.: 21TE-CC00360
)
  v. )    Division:
)
MACO MANAGEMENT COMPANY, INC., )
A Missouri Limited Liability Company )
)
AND )
)
SUMMERSVILLE ESTATES, L.P., )
A Missouri Limited Liability Company )
)
      Defendants. )

## DEFENDANT MACO MANAGEMENT COMPANY, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' 1st SUPPLEMENTAL REQUESTS FOR PRODUCTION OF DOCUMENTS

COMES NOW Defendant Maco Management Company, Inc., by and through counsel, Childress Ahlheim Cary LLC and provides its Objections and Responses to Plaintiff's 1st Supplemental Request for Production of Documents as follows:

## PRELIMINARY STATEMENT AND GENERAL OBJECTIONS

The below objections and responses are submitted on behalf of Defendant Maco Management Company, Inc. (hereinafter "Maco") as the responding party to these Interrogatories/Requests for Production. Nothing in Maco's specific answers should be construed as a waiver of these general objections.

1. Maco hereby expressly reserves the right to object to the introduction into evidence, at trial, or in any other proceeding of any information or documents contained in or referred to in the following Interrogatories/Requests for Production on any ground. Maco does **not** concede that the information it discloses is relevant or material to the subject matter at issue in this case, admissible in evidence, or reasonably calculated to lead to discovery of admissible evidence.

Page 1 of 4

Electronically Filed - Texas - October 27, 2022 - 03:59 PM

the discovery of admissible evidence. Moreover, the burden associated with such a response is not proportional to the needs of the case as required by Rule 56.01(b)(1).

Further, Maco already produced pursuant to other Requests:
- **all Inspection Reports related to the apartment unit of Ms. Robin Rose Fischer ("Decedent"), MACO227-259, MACO371-402.**
- **all Inspection Reports completed in June of 2021 for the 3 other apartment units making up Fischer's Building D, MACO348-359**
- **all Inspection Reports for the week of June 21, 2020 through June 28, 2020, MACO344-351.**

3. All documents, including logs, journals, and work orders, reflecting Dawn Sims' purported replacement of batteries in smoke detectors/alarms during the entirety of her employment as property manager.

**RESPONSE:** Objection. Maco objects to this Request as vague and ambiguous to the extent it refers to "all documents" "reflecting purported replacement of batteries," making a response impossible without speculation. Maco objects to said Request as overly broad and unduly burdensome as drafted as it is not sufficiently limited to a relevant scope or time. These documents pertain to multiple units over multiple years (including years after the incident took place). Maco objects to said Request because the majority, if not all, the information sought is immaterial and irrelevant to any issue in the case and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the burden associated with such a response is not proportional to the needs of the case as required by Rule 56.01(b)(1).

4. All 24-Hour Notices to Enter Apartment prepared by Dawn Sims from and after December 1, 2018.

**RESPONSE:** Objection. Maco objects to said Request as overly broad and unduly burdensome as drafted as it is not sufficiently limited to a relevant scope or time. These notices pertain to multiple units, over multiple years (including years after the incident took place), and issued quarterly each year. Maco objects to said Request because the majority, if not all, the information sought is immaterial and irrelevant to any issue in the case and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, the burden associated with such a response is not proportional to the needs of the case as required by Rule 56.01(b)(1).

5. A photograph of Dawn Sims' "Making a Difference Award", as described by her during the Deposition.

**RESPONSE:** MACO2125-2126.

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS'
APPLICATION FOR ATTORNEYS' FEES AND AFFIDAVIT**

COMES NOW, Defendants Maco Management Co. Inc. (hereinafter "Maco") and Summersville Estates, L.P. (hereinafter "Summersville"), by and through undersigned counsel, and for Defendants' Response in Opposition to Plaintiffs' Application for Attorneys' Fees and Affidavit states as follows:

1.      Plaintiffs are attempting to turn this matter from a trial against an apartment complex for a single unit fire into a trial against defense counsel for alleged events of "bad faith."

2.      Missouri has written Rules of Professional Conduct for Lawyers.  Each rule has its own requirements and interpreting caselaw.

3.      Missouri also has two written grounds for seeking and granting sanctions, Rule 55.03 related to bad faith and Rule 61.01 related to discovery failures.  Each rule has its own conditions and interpreting caselaw, setting forth the specific circumstances when sanctions are warranted.  Missouri courts also continually encourage Judges to issue sanctions sparingly.  S*ee State ex rel. Area 25 Trial Off. v. Clayton,* 628 S.W.3d 263, 267 (Mo. S.D. App. 2021); *E.K.H.-G. v. R.C.,* 613 S.W.3d 449, 454–55 (Mo. E.D. App. 2020).

4.      Despite this, Plaintiffs' counsel has chosen to file four separate motions requesting sanctions against Defendants (and more specifically against Defense Counsel Pudlowski) along with an Application for Fees and Personal Affidavit of alleged events of "bad faith" by Defense Counsel Pudlowski for events amounting to basic discovery disputes.

5.      Plaintiffs' counsel cites no ethical rule, sanction rule, or caselaw on point.

6.      Plaintiffs' counsel omits the surrounding contextual events to each alleged event of "bad faith."

7.      Plaintiffs' counsel makes little to no reasonable attempts to cooperate or avoid these alleged events of "bad faith" as required under Missouri Civil Rule 56.01(g), and at times, counsel appears to be creating situations to allow a basis for such requests.[1]

8.      Moreover, Plaintiffs' counsel argues these alleged events of "bad faith" entitle Plaintiffs to an order that would force Defendants to pay for all the costs associated with (1) Plaintiffs' depositions; (2) the deposition of Plaintiffs' key non-party witness; (3) the depositions of Defendants' employees; and (4) the pleadings, letters, and calls related to the ongoing discovery disputes (so essentially almost all Plaintiffs costs to date and many upcoming costs).

9.      Defendants incorporate the facts, arguments, pleadings, and associated exhibits previously filed as if stated herein, including:

- Defendants' Response in Opposition to Motion for relief filed July 6, 2022;

---

[1] For example, Plaintiffs' Motion to Amend the Scheduling Order could have easily been avoided and resolved. On October 10, Plaintiff could have voiced his objection to dates outside the October 24 party deadline rather than providing a date outside the party deadline and waiting until the day after the deadline to voice his opposition in the form of a motion for sanctions. Had counsel relayed his opposition prior to filing this motion, the parties could have found a date before the party deadline or filed an agreed order to allow such depositions to occur outside the party deadline.

2

EXHIBIT A - STATE COURT FILE

- Defendants' Motion to Quash Sims Notice, or alternatively for Protective Order filed July 6, 2022;

- Defendants' Motion for Protective Order filed July 14, 2022;

- Defendants' Objections to the Corpore representative Topics filed July 14, 2022;

- Defendants' Response in Opposition to Plaintiffs' Motion for Relief and 2nd Request for Sanctions filed August 5, 2022;

- Defendants' Motion for Clarification and to Amend the July 26, 2022 filed August 26, 2022

- Defendants' Response in Opposition to Plaintiffs' Motion to Compel and 3rd Request for Sanctions filed October 3, 2022;

- Defendants' Motion for an Order to Protect a Witness pursuant to Missouri Revised Statutes 491.600 filed October 3, 2022; and

- Defendants' Response in Opposition to Motion to Amend Scheduling Order and Request for Attorney Fees filed October 26, 2022.

10.     Defendants additionally provide the below responses and contextual events in response to the attached personal affidavit of counsel Klar.

| Plaintiff's Witnessed Event Per Affidavit | Response and Additional Events |
|---|---|
| a. On June 29, 2022 at the deposition of Susan Austin, I witnessed Ms. Pudlowski, counsel for defendants use several exhibits which she did not disclose to Plaintiffs, were unquestionably relevant to the instant litigation, and were undoubtedly requested by Plaintiffs in discovery. | • Alleged event previously argued and subject to the Court's Order dated 7/26/22<br>• Defendants utilized and complied with the discovery remedies available under Missouri Civil Rules.<br>• Neither Missouri Civil Rules nor the local rules require Defendants to produce all unquestionably relevant documents<br>• Such documents must be requested in accordance with Missouri Civil Rule 58.01<br>• Missouri Civil Rule 58.01(c)(3) allows documents to be withheld because of an objection. |

3

| | |
|---|---|
| | • Plaintiffs' Request for Production Number 4 (that allegedly requires disclosure of the previously, undisclosed documents) states, "All correspondence, emails, notes, memoranda or other communications between you and either Plaintiff, or anyone else (other than your attorney) related to the Incident, or the damages and injuries resulting from the same." |
| | • Defendants timely objected and provided a limited response that stated: "Objection.  Maco objects to said request because the documents sought are overly broad as drafted without sufficient limitations, specifically as it calls for all such documents from "anyone else."  It seeks documents protected as intangible attorney work product and/or impermissibly seeks documents obtained in anticipation of litigation and/or in preparation for trial by defendants, its counsel, its insured, or its consultants. It calls for documents protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, and the insurer-insured privilege. Further, it is objectionable under *State ex rd. The Atchison, Topeka & Santa Fe Railway Company v. O'Malley,* 898 S.W.2d 550, 553 (Mo.banc 1995) and *State ex rd. Hackler v. Dierker,* 987 S.W.2d 337, 338 (Mo.App. E.D. 1998).<br>Subject to and without waiving the same:  See MACO0187-226, MACO425-444 for communications with Plaintiffs. |
| | • Plaintiffs never asked Defense counsel to remove the objection. |
| | • Plaintiffs never asked the Court to remove the objection. |
| | • Plaintiffs never objected to the use of the documents during the deposition. |
| | • The undisclosed documents comprise of publicly accessible Casenet print outs, quarterly inspection reports for a non-party witness of her non-involved apartment unit, and numerous correspondences between Maco and a non-party witness post incident. |
| b.On July 15, 2022, I attended the properly noticed deposition for the corporate representative of Defendant Maco Management Company, Inc. Though Ms. Pudlowski appeared at the deposition, she refused to produce her client. Instead, she continuously insisted the Plaintiffs must be deposed first.  I advised Ms. | • Defendants utilized and complied with the discovery remedies available under Missouri Civil Rules.<br>• Missouri Civil Rule 56.01(c) and Rule 57.03(b)(2) and (e) allows the Court to issue an order that discovery (including depositions) may be had only on specified time or place, when justice requires, and good cause is shown.<br>• Missouri caselaw has held that if a party believes a deposition should not go forth, its remedy is to file a |

4

EXHIBIT A - STATE COURT FILE

| | |
|---|---|
| Pudlowski on several occasions that her insisted position was not only without legal authority, but it was actually contrary to Missouri Rules of Civil Procedure. | motion for a protective order. *State ex rel. Plank v. Koehr*, 831 S.W.2d 926, 928 (Mo. 1992); *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 609 (Mo. 2002)<br>• Plaintiffs unilaterally set and filed notice of this deposition on July 8, 2022<br>• Defendants filed a Motion for Protective Order on July 14, 2022 related to the deposition as well as Objections to the Corporate Representative Topics<br>• Defendants noticed the Motion for hearing at the next available date of July 19, 2022<br>• Defendants relayed in an email the lack of intent to produce a witness on July 15 given the pending objections, motion, and hearing<br>• Plaintiffs chose to proceed with the deposition and incur costs despite the pending motion and hearing<br>• Defense counsel appeared at the depositions to place the objections and pending motion on the record. |
| c. On July 15, 2022, I obtained a Certificate of Nonappearance for the above-identified deposition. | • See response to b. above |
| d. On July 26, 2022, this Court denied Defendants' request for a protective order and, instead, ordered Defendants to produce a representative of their client for deposition within ninety (90) days. | • Defendants complied with this subject provision of the Order.<br>• Order states in pertinent part that "Defendants…representatives shall be deposed within 90 days of this Order, conditioned upon Plaintiff providing tens (10) days written notice of the person(s) to be deposed."<br>• Plaintiffs never requested a corporate representative deposition nor noticed up a corporate representative deposition after such Order.<br>• Defendants provided dates for and agreed to produce all requested representatives with 90 days. |
| e. On August 24, 2022, I deposed Ms. Dawn Sims—the representative of Defendants. At this deposition, Ms. Sims raised the importance and existence of several undisclosed documents which are both unquestionably relevant to the instant litigation and were undoubtedly requested by Plaintiffs in discovery | • Defendants utilized and complied with the discovery remedies available under Missouri Civil Rules.<br>• Neither Missouri Civil Rules nor the local rules require Defendants to produce all unquestionably relevant documents<br>• Such documents must be requested in accordance with Missouri Civil Rule 58.01<br>• Plaintiff cites no specific request served on Defendants prior to this deposition requiring disclosure of such alleged unquestionably, relevant documents<br>• Moreover, it is not unusual for a deposition to reveal the existence of additional, possibly relevant documents |

5

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - November 01, 2022 - 04:54 PM

| | |
|---|---|
| | • Lastly, Defendants objected during the deposition to Plaintiffs' counsel's demand for such documents absent a written discovery request |
| f. On September 2, 2022, I provided Ms. Pudlowski with Supplemental Requests for Production, specifically seeking those documents which were undisclosed and newly raised by Ms. Sims. | • Defendants utilized and complied with the discovery remedies available under Missouri Civil Rules.<br>• Missouri Civil Rule 58.01(c)(3) allows documents to be withheld because of an objection.<br>• Missouri Civil Rule 58.01(c) allows 30 days for a response<br>• Plaintiff served supplemental requests on August 26, 2022<br>• Defendants timely filed objections on September 2, 2022 |
| g. Shortly thereafter, Ms. Pudlowski objected to the relevance of such documents. As a result, I sent her a golden rule letter and subsequently informed her that the information to which she objected was both relevant and discoverable. | • See response f above<br>• Plaintiffs sent a golden rule letter that same day he received objections, September 2, 2022 |
| h. Ms. Pudlowski refused to make concessions to her objections, and on September 8, 2022, I filed a Motion to Compel the documents discussed by Ms. Sims during her deposition. | • See response to f and g above<br>• Plaintiffs made no further attempt to reach out to Defendants' counsel beyond the September 2 golden rule letter<br>• Plaintiff had received no response from Defendants' counsel indicating a refusal to make concessions as of the September 8, 2022 Motion to Compel filing<br>• 30-day deadline for responses had not passed as of the September 8, 2022 Motion to Compel filing<br>• On September 23, 2022 (prior to the response 30-day deadline) Defendants provided additional production in an effort of cooperation<br>• Defendants continue to stand by their objections based on the broad scope and given the lack of relevancy and proportionality<br>• The Court has made no ruling on such objections |
| i. On October 25, 2022, I filed a Motion to Amend Scheduling Order and for Attorneys' Fees because Defendants failed to comply with this Court's July 26, 2022 Order. Specifically, Defendants failed to depose Plaintiffs prior to the identified deadline for all such depositions. | • Court has discretion to amend a scheduling order as justice so requires<br>• Defendants admit Plaintiffs' depositions are set two weeks outside the party deadline set by the Court's July 26, 2022 Order<br>• In advance of the party deadline and on October 10, 2022, Defendants requested dates for Plaintiffs' depositions |

Electronically Filed - Texas - November 01, 2022 - 04:54 PM

| | |
|---|---|
| | • In response, Plaintiffs requested a more particular timeframe |
| | • Defendants provided some available dates outside the party deadline |
| | • On October 14, 2022, Plaintiffs stated availability for one such date outside the party, November 14, 2022 |
| | • Defendants responded with a plan to notice up the depositions and in turn filed notices for the November 14, 2022 date outside the party deadline |
| | • At no point between October 10 and the October 24 party deadline, did Plaintiffs express opposition to the date proposed and noticed a few weeks outside the party deadline |
| | • Defendants first learn of such opposition when reading the Motion filed the day after the deadline passed |

9. Given the above events, this affidavit and Application for Fees is offensive. The continued, frivolous requests for sanctions by Plaintiffs are a waste of the Court's time and resources as well as the parties time and resources. Any order granting such requests would go against the interest of justice, the purpose and rules of discovery, and the Missouri rules and caselaw related to sanctions.

10. For all the reasons stated herein and in the incorporated pleadings cited above, Defendants pray this Court issue an order denying Plaintiffs' Application for Fees and for any other relief as this Court deems just and proper.

WHEREFORE, Defendants pray this Court deny Plaintiff's Application for Fees and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC


BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Craig R. Klotz          #58850
Marie F. Pudlowski      #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of November 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/        MARIE F. PUDLOWSKI

8

Electronically Filed - Texas - November 01, 2022 - 04:52 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,⠀⠀⠀⠀⠀⠀)
and ERIC MEIER,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiffs,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Cause No.⠀⠀⠀21TE-CC00360
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
MACO MANAGEMENT CO., INC.,⠀⠀)
and SUMMERSVILLE ESTATES, L.P.,⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀⠀)

## ENTRY OF APPEARANCE

COMES NOW Craig R. Klotz and Childress Ahlheim Cary LLC and enter their appearance

on behalf of Defendants Maco Management Co., Inc., and Summersville Estates, L.P.

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀CHILDRESS AHLHEIM CARY LLC

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀BY:/s/ CRAIG R. KLOTZ
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀David T. Ahlheim⠀⠀#50853
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Craig R. Klotz⠀⠀⠀⠀#58850
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀Marie F. Pudlowski⠀#64228
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀1010 Market Street, Suite 500
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀St. Louis, Missouri 63101
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀314-621-9800
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀314-621-9802 (fax)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀dahlheim@jchildresslaw.com
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀cklotz@jchildresslaw.com
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀mpudlowski@jchildresslaw.com
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of November 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀/s/ CRAIG R. KLOTZ

1

46.2444⠀⠀⠀⠀⠀⠀EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW⠀⠀Document 1-1⠀⠀Filed 01/12/23⠀⠀Page 646 of 786

Electronically Filed - Texas - November 02, 2022 - 03:13 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,            )
and ERIC MEIER,             )
                            )
        Plaintiffs,         )
                            )
v.                          )      Cause No.      21TE-CC00360
                            )
MACO MANAGEMENT CO., INC.,  )
and SUMMERSVILLE ESTATES, L.P.,  )
                            )
        Defendants.         )

## NOTICE OF CANCELLATION OF DEPOSITION

TO:                          COUNSEL OF RECORD

DATE & HOUR:                 November 14, 2022 immediately following the deposition of
                             Jennifer Bumeter

PLACE OF DEPOSITION:         Klar, Izsak & Stenger, LLC
                             1125 Olivette Executive Parkway
                             St. Louis, MO 63132

PERSON TO BE DEPOSED:        Eric Meier

VIDEOGRAPHER:                Veritext
                             800-567-8658

PLEASE TAKE NOTICE that the above deposition is cancelled pending the motions set for hearing on December 29, 2022. Defendants will notice such deposition for a future date as deemed necessary.

1

2

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2nd day of November 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

Electronically Filed - Texas - November 02, 2022 - 03:13 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF CANCELLATION OF DEPOSITION

TO:                                    COUNSEL OF RECORD

DATE & HOUR:                 November 14, 2022 at 10:00 a.m.

PLACE OF DEPOSITION:    Klar, Izsak & Stenger, LLC
                                           1125 Olivette Executive Parkway
                                           St. Louis, MO 63132

PERSON TO BE DEPOSED:    Jennifer Bumeter

VIDEOGRAPHER:                 Veritext
                                             800-567-8658

PLEASE TAKE NOTICE that the above deposition is cancelled pending the motions set for

hearing on December 29, 2022.  Defendants will notice such deposition for a future date as deemed

necessary.

1

46.2444                                     EXHIBIT A - STATE COURT FILE

2

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim       #50853
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 2nd day of November 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/ MARIE F. PUDLOWSKI

Electronically Filed - Texas - November 23, 2022 - 12:57 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                  )
and ERIC MEIER,                    )
                                   )
        Plaintiffs,                )
                                   )
v.                                 )        Cause No.      21TE-CC00360
                                   )
MACO MANAGEMENT CO., INC.,         )
and SUMMERSVILLE ESTATES, L.P.,    )
                                   )
        Defendants.                )

## CERTIFICATE OF SERVICE

COME NOW Defendants, by and through counsel, and state that Defendant Maco Management Co., Inc.'s Objections Plaintiff's Second Supplemental Request for Production Defendant Summersville Estate's Objections to Plaintiffs' Second Supplemental Request for Production have been served on all counsel of record via electronic mail on this 23rd day November 2022 to all counsel of record.

                                CHILDRESS AHLHEIM CARY LLC

                                BY:/s/ MARIE F. PUDLOWSKI
                                David T. Ahlheim      #50853
                                Craig R. Klotz        #58850
                                Marie F. Pudlowski     #64228
                                1010 Market Street, Suite 500
                                St. Louis, Missouri 63101
                                314-621-9800
                                314-621-9802 (fax)
                                dahlheim@jchildresslaw.com
                                cklotz@jchildresslaw.com
                                mpudlowski@jchildresslaw.com
                                *Attorneys for Defendants*

1

Electronically Filed - Texas - November 23, 2022 - 12:57 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 23rd day of November 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/      MARIE F. PUDLOWSKI

2

Electronically Filed - Texas - December 05, 2022 - 04:16 PM

# IN THE CIRCUIT COURT OF TEXAS COUNTY
## STATE OF MISSOURI

JENNIFER BUMETER, an individual )
                                 )

AND )
                                 )

ERIC MEIER, an individual )
                                 )

        Plaintiffs, )        Cause No.:  21TE-CC00360
                                 )

        v. )

MACO MANAGEMENT COMPANY, INC., )
A Missouri Limited Liability Company )
                                 )

AND )
                                 )

SUMMERSVILLE ESTATES, L.P., )
A Missouri Limited Liability Company )
                                 )

        Defendants. )

## CERTIFICATE OF SERVICE

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER, by and through their undersigned counsel, and hereby certify that original copies of Plaintiffs' 3rd Supplemental Requests for Production of Documents Directed to Defendant MACO MANAGEMENT COMPANY, INC., and Plaintiffs' 3rd Supplemental Requests for Production of Documents Directed to Defendant SUMMERSVILLE ESTATES, L.P., in Word and PDF formats, together with a copy of this Certificate of Service, were served upon the following attorneys of record via electronic mail this 5th day of December, 2022:

        CHILDRESS AHLHEIM CARY LLC
        David T. Ahlheim
        Marie F. Pudlowski
        dahlheim@jchildresslaw.com
        mpudlowski@jchildresslaw.com

Electronically Filed - Texas - December 05, 2022 - 04:16 PM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar_____
    BRANDON J. KLAR, #72884
    RICHARD E. HANSON, #69589
    *Attorneys for Plaintiff*
    1125 Olivette Executive Parkway
    Suite 120
    St. Louis, Missouri 63132
    Phone:    (314) 863-1117
    Fax:       (314) 863-1118
    Email:    bjklar@lawsaintlouis.com
              thanson@lawsaintlouis.com

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - December 09, 2022 - 02:23 PM

## IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

JENNIFER BUMETER, and ) 
ERIC MEIER, )
                        )    Cause No.:    21TE-CC00360
      Plaintiffs, )
                        )
v. )
                        )
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
                        )
      Defendants. )

### NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE OF SUMMERSVILLE ESTATES, L.P.

TO:             Counsel of Record

DATE & TIME:      January 17, 2023, at 2:00 P.M.

DEPONENT(S):     Corporate Representative of Summersville Estates, L.P.

LOCATION:      Law offices of Childress, Ahlhiem and Cary
                 1010 Market St., Ste. 500
                 St. Louis, MO 63101

REPORTER:      Kelly Daniels, CCR

PLEASE TAKE NOTICE that at the above-stated date, time and place, the deposition of a

Corporate Representative of Summersville Estates, L.P., will be taken on oral examination, before

a court reporter, pursuant to Missouri Supreme Court Rule 57.03(a) Rule 57.03(b)(4), the topics

upon which inquiry will be made are attached hereto as **Exhibit A**. Said deposition will continue

on a day to day basis until the same is completed and is being taken for any and all purposes

allowed by law, including use as evidence at trial. All parties and the court reporter will attend the

deposition remotely.

A licensed and qualified court reporter will administer the oath to the witness remotely and will record the testimony by audio and stenographic means.

Dated this 9th day of December, 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
BRANDON J. KLAR, #72884
Richard E. "Ted" Hanson # 69589
Attorney for Plaintiffs
1125 Olivette Executive Parkway
Suite 120
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of December 2022, a true and correct copy of the forgoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

Electronically Filed - Texas - December 09, 2022 - 02:23 PM

Electronically Filed - Texas - December 09, 2022 - 02:23 PM

## Exhibit A

TOPICS FOR SUMMERSVILLE ESTATES, L.P. CORPORATE REPRESENTATIVE DEPOSITION

1. *Details relating to the job performance duties, maintenance responsibilities, and recordkeeping obligations put in place by Summersville Estates, L.P. related to fulfilling the role of property manager ("Property Manager") at all units of Summersville Estates (the "Property") since September 2018.

2. *Details relating to the relationships between the Property Manager of Summersville Estates and its tenants since September 2018, including any contracts between the two.

3. *The business relationship between Maco Management Co., Inc. and Summersville Estates L.P. since September 2018, including contracts between the two.

4. *Specific details regarding the performance of all inspections and the completion of all inspection reports for all units (including all documents made in conjunction with such reports) at the Property since September 2018.

5. *Specific details regarding the physical state, type, model, age and operating condition of all smoke detectors/alarms at the Property (in all units) since September 2018. Specifically, those documents, work orders, replacement of smoke detectors, replacement of batteries, and the "fire stop and smoke alarm log" referred to in the deposition of Dawn Sims.

6. *All details relating to Summersville Estates, L.P.'s employees located at the Property's compliance with the Maco Management Employee Handbook since September 2018, including such employees' compliance with management rules and policies set forth by Summersville Estates, L.P.

7. *All information relating to the Property Manager of Summersville Estates' compliance with the Maco Management Site Manager & Maintenance Personnel Duties and Responsibilities since September 2018.

8. *Specific details or documentation regarding the tenancy of Ms. Robin Fischer since September 2018, including, but not limited to, all conversations Ms. Fischer had with the Property Manager(s) at Summersville Estates.

9. *All information relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

10. All details relating to smoking in apartment units at the Property since September 2018.

11. Specific details regarding the relationship maintained between any employee of Maco Management Co., Inc., an employee of Summersville Estates, L.P., and members of the Summersville Police Department.

12. All specific facts supporting any of the affirmative defenses asserted by Defendants Maco

EXHIBIT A - STATE COURT FILE

Management Co., Inc. and Summersville Estates, L.P., including the basis on which a good faith belief is held that such facts support the defenses.

13. *All resumes and past employment history of the Property Manager(s) and maintenance workers hired by Summersville Estates in September 2018.

14. All facts relating to any prior legal action taken against the Property Manager hired by Summersville Estates in September 2018 based upon negligence resulting in personal injury.

15. This Defendant's knowledge of the Incident described in Plaintiffs' Petition, including how they learned of such Incident.

16. *This Defendant's knowledge of issues with fire alarm or smoke detector batteries, including their replacement in any unit managed by Summersville Estates, L.P. and located at the Property which are not documented in work orders, incident reports, the "fire stop and smoke alarm log" identified by Dawn Sims, or police reports, if any.

17. *This Defendant's meetings, discussions, and decisions on the reasons for hiring or not hiring a third-party contractor to inspect the premises of the Property and ensure proper smoke detector or fire alert function, including any notes or minutes.

18. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding proper smoke detector or fire alarm function at the Property.

19. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of apartment inspections at the Property.

20. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of fire alarm or smoke detector inspections at the Property.

21. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of complaints concerning fire alarm or smoke detector malfunction and smoke detector replacement.

22. This Defendant's knowledge of inspections made by a third party or governmental agency which inspected the Property for any safety or code violation which Defendant or Maco Management Co., Inc. was supposed to meet or be incompliance with.

23. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding documentation of complaints and/or occurrences of fires at the Property.

24. *The security or maintenance budget, as well as measures in use, at the Property from September 2018 through July 2021, including any other budget related to fire safety.

25. *Any discussions, meetings, or documents regarding communications between employees of

EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW    Document 1-13    Filed 01/12/23    Page 658 of 786

Summersville Estates, L.P. and their supervisors regarding requests for service or maintenance concerning smoke detectors or fire alarms.

26. *How this Defendant instructed its Property Manager to respond to tenants who expressed their concerns about safety at the premises in writing or verbally from September 2018 through July 2021.

27. *Defendant's knowledge of all efforts taken by Defendant to advance the safety of the Property's residents and guests from September 1, 2018 through July 1, 2021.

28. This Defendant's knowledge of calls for service to the Property received by the Summersville Fire and Rescue or Police Department during the timeframe of September 1, 2018 through July 1, 2021.

29. *This Defendant's knowledge of any management agreement or other written contract between itself and any other defendant to this action, or any other owner of Summerville Estates.

30. *This Defendant's knowledge of insurance policies insuring this Defendant against loss, damage, or liability arising from events such as the Incident set forth in Plaintiffs' Petition which were in effect during June 2021, including commercial general liability policies and umbrella policies.

31. This Defendant's knowledge of the whereabouts of any Summersville Estates, L.P. employee on the Property who acted in a managerial or maintenance capacity from September 1, 2018 through the date of the Incident.

32. *This Defendant's meetings, discussions, or conferences with tenants concerning fire safety, whether initiated by Summersville Estates, L.P., a fire department, or a governmental body.

The * next to a numbered topic means the representative on a particular topic is commanded to bring documents which pertain too and are logically related to that numbered topic, so long as they are not privileged or otherwise not subject to production, 30 days after service of the request, at the Law office of Klar Isak and Stenger during normal business hours.

Electronically Filed - Texas - December 09, 2022 - 02:23 PM

## IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

JENNIFER BUMETER, and )
ERIC MEIER, )
                )    Cause No.:     21TE-CC00360
     Plaintiffs, )
                )
v. )
                )
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
                )
     Defendants. )

### AMENDED NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE OF MACO MANAGEMENT CO., INC.

TO:            Counsel of Record

DATE & TIME:      January 13, 2023, at 9:00 A.M.

DEPONENT(S):      Corporate Representative of Maco Management Co., Inc.

LOCATION:      Law offices of Childress, Ahlheim and Cary
                       1010 Market St., Ste. 500
                       St. Louis, MO 63101

REPORTER:      Kelly Daniels, CCR

PLEASE TAKE NOTICE that at the above-stated date, time and place, the deposition of a Corporate Representative(s) of Maco Management Co., Inc., will be taken on oral examination, before a court reporter, pursuant to Missouri Supreme Court Rule 57.03(a) Rule 57.03(b)(4), the topics upon which inquiry will be made are attached hereto as **Exhibit A**. Said deposition will continue on until the time permitted has expired or the deposition is otherwise concluded. This deposition is being taken for any and all purposes allowed by law, including use as evidence at trial. All parties and the court reporter will attend the deposition remotely.

A licensed and qualified court reporter will administer the oath to the witness remotely and will record the testimony by audio and stenographic means.

Dated this 9th day of December, 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Richard E. "Ted" Hanson
BRANDON J. KLAR, #72884
Richard E. "Ted" Hanson # 69589
Attorney for Plaintiffs
1125 Olivette Executive Parkway
Suite 120
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 9th day of December 2022, a true and correct copy of the forgoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

## Exhibit A

### TOPICS FOR MACO MANAGEMENT CO., INC. CORPORATE REPRESENTATIVE DEPOSITION

1. *Details relating to the job performance duties, maintenance responsibilities, and recordkeeping obligations put in place by Maco Management Co. Inc. ("Maco Management") related to fulfilling the role of property manager ("Property Manager") for all units at Summersville Estates since September 2018.

2. *Details relating to the relationships between Summersville Estates' Property Manager and its tenants since September 2018, including any contracts between the two.

3. *The business relationship between Maco Management and Summersville Estates L.P. since September 2018, including any contracts between the two.

4. *Specific details regarding the performance of all inspections and the completion of all inspection reports of all units (including all documents made in conjunction with such reports) at Summersville Estates since September 2018.

5. *Specific details regarding the physical state, type, model, age and operating condition of all smoke detectors/alarms in all units at Summersville Estates since September 2018. Specifically, those documents, work orders, replacement of smoke detectors, replacement of batteries, and the "fire stop and smoke alarm log" referred to in the deposition of Dawn Sims.

6. *All details relating to Maco Management employees located at Summersville Estates' compliance with the Maco Management Employee Handbook since September 2018, including such employees' compliance with management rules and policies set forth by Summersville Estates, L.P.

7. *All information relating to the Property Manager of Summersville Estates' compliance with the Maco Management Site Manager & Maintenance Personnel Duties and Responsibilities since September 2018.

8. *Specific details and/or documentation regarding the tenancy of Ms. Robin Fischer since September 2018, including, but not limited to, all conversations Ms. Fischer had with the Property Manager(s) at Summersville Estates.

9. *All information relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

10. All details relating to smoking in apartment units at Summersville Estates since September 2018.

11. Specific details regarding the relationship maintained between any employee of Maco Management Co., Inc., any employee of Summersville Estates L.P., and/or any member(s) of the Summersville Police Department.

12. All specific facts supporting any of the affirmative defenses asserted by Defendants Maco Management Co., Inc. and Summersville Estates, L.P., as well as the basis on which a good faith belief exists that the facts support the defenses.

13. *All resumes and past employment history of the Property Manager and maintenance workers employed at Summersville Estates in June 2021.

14. All facts relating to any prior legal action taken against the Property Manager hired by Summersville Estates in September 2018 based upon negligence causing personal injury.

15. This Defendant's knowledge of the Incident described in Plaintiffs' Petition, including how they learned of such Incident.

16. *This Defendant's knowledge of issues with fire alarm or smoke detector batteries, including their replacement in any unit managed by Maco Management and located at Summerville Estates which are not documented in work order, incident reports, the "fire stop and smoke alarm log" identified by Dawn Sims, or police reports, if any.

17. *This Defendant's meetings, discussions, and decisions on the reasons for hiring or not hiring third party contractor to inspect the premises of Summersville Estates and ensure proper smoke detector or fire alert function, including any notes or minutes.

18. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding proper smoke detector or fire alarm function on the Summersville Estates premises.

19. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of apartment inspections at Summerville Estates.

20. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of fire alarm or smoke detector inspections at Summerville Estates.

21. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of complaints concerning fire alarm or smoke detector malfunction and smoke detector replacement.

22. This Defendant's knowledge of inspections made by a third party or governmental agency which inspected the Summersville Estates property for any safety or code violation which Defendant or Summersville Estates, L.P. was supposed to meet or be incompliance with.

Electronically Filed - Texas - December 09, 2022 - 02:23 PM

23. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding documentation of complaints and/or occurrences of fires on the Summerville Estate premises.

24. *The security or maintenance budget, as well as measures in use, at Summersville Estates from September 2018 through July 2021, including any other budget related to fire safety.

25. *Any discussions, meetings, electronic messages or conversations between Maco Management employees and their supervisors regarding requests for service or maintenance concerning smoke detectors or fire alarms.

26. *How this Defendant instructed its Property Manager to respond to tenants who expressed their concerns about safety at the premises in writing or verbally from September 2018 through July 2021.

27. *Defendant's knowledge of all efforts taken by Defendant to advance the safety of Summerville Estates residents and guests from September 1, 2018 through July 1, 2021.

28. This Defendant's knowledge of calls for service to the Summersville Estates property received by the Summersville Fire and Rescue or Police Department during the timeframe of September 1, 2018 through July 1, 2021.

29. *This Defendant's knowledge of any management agreement or other written contract between itself and any other defendant to this action, or any other owner of Summerville Estates.

30. *This Defendant's knowledge of insurance policies insuring this Defendant against loss, damage, or liability arising from events such as the Incident set forth in Plaintiffs' Petition which were in effect during June 2021, including commercial general liability policies and umbrella policies.

31. This Defendant's knowledge of the whereabouts of any Maco Management employee on the property of Summerville Estates who acted in a managerial or maintenance capacity from September 1, 2018 through the date of the Incident.

32. *This Defendant's meetings, discussions, or conferences with tenants concerning fire safety, whether initiated by Maco Management, a fire department, or a governmental body.

33. *Maco Managements' qualifications as a property management company under the rules established by the United States Government, Fannie-Mae, or Freddie Mac loan programs for Section 8 Housing.

The * next to a numbered topic means the representative on a particular topic is commanded to bring documents which pertain too and are logically related to that numbered topic, so long as they are not privileged or otherwise not subject to production, 30 days after service of the request, at the Law office of Klar Isak and Stenger during normal business hours.

Electronically Filed - Texas - December 14, 2022 - 02:51 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, and ERIC MEIER, | ) ) ) |
| Plaintiffs, | ) ) Cause No.:    21TE-CC00360 ) |
| v. | ) ) |
| MACO MANAGEMENT CO., INC., and SUMMERSVILLE ESTATES, L.P. | ) ) ) |
| Defendants. | ) |

## MOTION FOR ENTRY OF SCHEDULING ORDER AND REQUEST FOR TRIAL SETTING

COME NOW Plaintiffs, Jennifer Bumeter and Eric Meier, by and through their undersigned counsel, and for their Motion for Entry of a Scheduling Order and Request for Trial Setting, state to this Court as follows:

1. Pursuant to Rule 62 of the Missouri Rules of Civil Procedure, Plaintiffs request that the court enter a Pre-Trial Scheduling Order as to the remainder of discovery, including the methods and deadline by which expert(s) must be designated and other discovery matters will be conducted.

2. The court has absolute discretion to enter such orders and control the subsequent course of this action.

3. A proposed Scheduling Order has been provided to defense counsel and is attached hereto as **Exhibit 1**.

4. Plaintiffs respectfully request a new trial date in this matter. In furtherance thereof, Plaintiffs state:

   a) This cause of action is currently set for trial on August 14, 2023.

Electronically Filed - Texas - December 14, 2022 - 02:51 PM

b) The matter has been on file since November 9, 2021.

c) Counsel for Plaintiffs requests this matter be set for trial on February ___, 2024 (with such specific date to be filled in based on this Court's availability).

d) Counsel for Plaintiff Requests a Preferential Trial Setting.

Respectfully submitted,

KLAR, IZSAK & STENGER, L.L.C.

By:  /s/ *Brandon J. Klar*  
BRANDON J. KLAR                    #72884  
RICHARD E. "TED" HANSON       #69589  
1125 Olivette Executive Pkwy, Ste. 120  
Olivette, MO 63132  
Tel:    (314) 863-1117  
Fax:    (314) 863-1118  
Email: bjklar@lawsaintlouis.com  
Email: thanson@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 14th day of December 2022, a true and correct copy of the forgoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

Electronically Filed - Texas - December 14, 2022 - 02:51 PM

## IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

JENNIFER BUMETER, and )
ERIC MEIER, )
)
        Plaintiffs, )
)
v. )
)
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
)
        Defendants. )

Cause No.:    21TE-CC00360

**PLAINTIFF'S EXHIBIT**

**1**

### FIRST AMENDED CASE MANAGEMENT SCHEDULING ORDER

NOW ON THE DATE reflected below, this matter was called and heard before the Court. Plaintiffs and Defendants appear by and through their respective counsel. The Court, being fully advised in the premises, hereby enters the following Orders:

1.    All requests to amend pleadings and/or add parties shall be filed no later than April 3, 2023. All Continuance requests, saving and accepting death or illness of a party or lead counsel, will be denied if not filed before October 1, 2023.

2.    Plaintiffs shall disclose and designate all experts on or before **July 10, 2023**. Along with Plaintiffs' disclosure(s) and designation(s), Plaintiffs shall provide, by **August 11, 2023**, three (3) dates for each expert to be deposed.

3.    Defendants shall disclose and designate all experts on or before **August 21, 2023.** Along with Defendants' respective disclosure(s) and designation(s), Defendants shall provide, by **September 30, 2022**, three (3) dates for each expert to be deposed.

4.    Any rebuttal expert(s) named by Plaintiffs shall be disclosed and designated on or before **November 1, 2023**. Plaintiffs shall provide, by **December 15, 2023,** two (2) dates for each rebuttal expert to be deposed.

5.    All fact discovery shall be *completed* and shall close (i.e., all written discovery, including responses to timely propounded discovery requests, and depositions) on or

before **January 6, 2024**. Discovery may not be conducted after the closure date except by agreement of the parties or a prior order of the Court for good cause shown upon the filing of a timely motion to extend discovery filed *before* the original closure date. Nothing contained herein shall excuse the party from the continuing obligation to update responses to discovery or to respond to discovery requests made before the closure date set forth above.

6. All dispositive motions shall be filed on or before**, January 15, 2024**. Any dispositive motion filed after said date will not be considered.

7. No later than **fourteen (14) days** before the pre-trial conference, counsel shall provide to the Court and/or file with the Court all Motions in Limine, deposition designations and interrogatory designations; provided, however, that in the event a deposition transcript has not yet been received, then the party shall have **seven (7) days** after receipt of such deposition transcript to file the deposition designation for such deposition. Any party opposing such designation(s) shall provide to the Court, and/or file with the Court, their opposition/objections thereto, no later than **seven (7) days** before the pre-trial conference.

8. No later than **seven (7) days** before the pre-trial conference, counsel shall provide the Court with an electronic copy of proposed jury instructions by e-mailing said proposed instructions in Word (.doc or .docx) format.

9. The parties shall file and exchange witness, deposition testimony, exhibit lists, as well as all exhibits they anticipate offering, **seven (7) days** prior to trial.

10. Trial in this matter will have the first setting and will take place over **two (2) weeks** starting **February \_\_\_\_, 2024. The case is set #1 on the Court's docket.**

**IT IS SO ORDERED.**

_____        _____
**December ____, 2022**                              **The Honorable John D. Berger**

Prepared, Approved, and Submitted by:

KLAR, IZSAK & STENGER, L.L.C.

_/s/ Brandon J. Klar_
Bradon J. Klar,            MO Bar#72884
Richard E. "Ted" Hanson, MO Bar #69589
1125 Olivette Executive Parkway
St. Louis, MO 63132
Telephone:  (314) 863-1117
Facsimile:  (314) 863-1118
Email:
bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com

**ATTORNEYS FOR PLAINTIFFS**

EXHIBIT A - STATE COURT FILE

## IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

JENNIFER BUMETER, and )
ERIC MEIER, )
                                )
                                )      Cause No.:     21TE-CC00360
      Plaintiffs, )
v. )
                                )
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
                                )
      Defendants. )

## AMENDED NOTICE OF VIDEO DEPOSITION OF CORPORATE REPRESENTATIVE OF SUMMERSVILLE ESTATES, L.P.

| | |
|---|---|
| TO: | Counsel of Record |
| DATE & TIME: | January 19, 2023, at 1:00 P.M. |
| DEPONENT(S): | Corporate Representative of Summersville Estates L.P. |
| LOCATION: | Law offices of Childress, Ahlheim and Cary<br>1010 Market St., Ste. 500<br>St. Louis, MO 63101 |
| REPORTER: | Kelly Daniels, CCR |

PLEASE TAKE NOTICE that at the above-stated date, time and place, the deposition of a Corporate Representative(s) of Summersville Estates L.P., will be taken on oral examination, before a court reporter, pursuant to Missouri Supreme Court Rule 57.03(a) Rule 57.03(b)(4), the topics upon which inquiry will be made are attached hereto as **Exhibit A**. Said deposition will continue on until the time permitted has expired or the deposition is otherwise concluded. This deposition is being taken for any and all purposes allowed by law, including use as evidence at trial. All parties and the court reporter will attend the deposition remotely.

A licensed and qualified court reporter will administer the oath to the witness remotely and will record the testimony by audio and stenographic means.

Dated this 16th day of December, 2022.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Richard E. "Ted" Hanson
BRANDON J. KLAR, #72884
Richard E. "Ted" Hanson # 69589
Attorney for Plaintiffs
1125 Olivette Executive Parkway
Suite 120
St. Louis, Missouri 63132
Tel: (314) 863-1117
Fax: (314) 863-1118
Email: bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of December 2022, a true and correct copy of the forgoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

## Exhibit A

TOPICS FOR SUMMERSVILLE ESTATES L.P. CORPORATE REPRESENTATIVE DEPOSITION

1.	*Details relating to the job performance duties, maintenance responsibilities, and recordkeeping obligations put in place by Summersville Estates L.P. ("Summersville Estates") related to fulfilling the role of property manager ("Property Manager") for all units at Summersville Estates since September 2018.

2.	*Details relating to the job duties of Summersville Estates' Property Manager in relation to Summerville Estates' tenants since September 2018, including any contracts between the two.

3.	*The business relationship between Maco Management and Summersville Estates L.P. since September 2018, including any contracts between the two.

4.	*Specific details regarding the performance of all inspections and the completion of all inspection reports for all units and buildings (including all documents made in conjunction with such reports) at Summersville Estates since September 2018.

5.	*Details regarding the physical state, type, model, age and operating condition of all smoke detectors/alarms in all units at Summersville Estates since September 2018. Specifically, those documents, work orders, replacement of smoke detectors, replacement of batteries, and the "fire stop and smoke alarm log" referred to in the deposition of Dawn Sims.

6.	*Policies and Procedures relating to Maco Management employees located at Summersville Estates concerning compliance with the management of this particular property and or others owned or controlled by Summersville since September 2018, including such employees' compliance with management rules and policies set forth by Summersville Estates, L.P.

7.	*Information relating to the Property Manager of Summersville Estates' compliance with the Maco Management Site Manager & Maintenance Personnel Duties and Responsibilities since September 2018.

8.	*Specific details and/or documentation regarding the tenancy of Ms. Robin Fischer since September 2018, including, but not limited to, all conversations Ms. Fischer had with the Property Manager(s) at Summersville Estates.

9.	*Information relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

10.	Details relating to smoking in apartment units at Summersville Estates since September 2018.

11. Details regarding the relationship maintained between any employee of Maco Management Co., Inc., any employee of Summersville Estates L.P., and/or any member(s) of the Summersville Police Department.

12. Specific facts supporting any of the affirmative defenses asserted by Defendants Maco Management Co., Inc. and Summersville Estates, L.P., as well as the basis on which a good faith belief exists that the facts support the defenses.

13. *All resumes and past employment history of the Property Manager and maintenance workers employed at Summersville Estates in June 2021.

14. All facts relating to any prior legal action taken against the Property Manager hired by Summersville Estates in September 2018 based upon negligence causing personal injury.

15. This Defendant's knowledge of the Incident described in Plaintiffs' Petition, including how they learned of such Incident.

16. *This Defendant's knowledge of issues with fire alarm or smoke detector batteries, including their replacement in any unit managed by Maco Management and located at Summerville Estates which are not documented in work order, incident reports, the "fire stop and smoke alarm log" identified by Dawn Sims, or police reports, if any.

17. *This Defendant's meetings, discussions, and decisions on the reasons for hiring or not hiring third party contractor to inspect the premises of Summersville Estates and ensure proper smoke detector or fire alert function, including any notes or minutes.

18. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding proper smoke detector or fire alarm function on the Summersville Estates premises.

19. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of apartment inspections at Summerville Estates.

20. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of fire alarm or smoke detector inspections at Summerville Estates.

21. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of complaints concerning fire alarm or smoke detector malfunction and smoke detector replacement.

22. This Defendant's knowledge of inspections made by a third party or governmental agency which inspected the Summersville Estates property for any safety reason or a code violation which Defendant or Summersville Estates, L.P. was supposed to meet or be incompliance with

local state or federal laws and regulations.

23. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding documentation of complaints and/or occurrences of fires on the Summerville Estate premises.

24. *The maintenance budget, as well as measures in use to maintain the units, at Summersville Estates from September 2018 through July 2021, including budget items related to fire safety.

25. *Any discussions, meetings, electronic messages or conversations between Summersville Estates' employees and their supervisors regarding requests for service or maintenance concerning smoke detectors or fire alarms.

26. *How this Defendant instructed its Property Manager to respond to tenants who expressed their concerns about safety at the premises in writing or verbally from September 2018 through July 2021.

27. *Defendant's knowledge of all efforts taken by Defendant to advance the safety of Summerville Estates residents and guests from September 1, 2018 through July 1, 2021.

28. This Defendant's knowledge of calls for service to the Summersville Estates property received by the Summersville Fire and Rescue or Police Department during the timeframe of September 1, 2018 through July 1, 2021.

29. *This Defendant's knowledge of any management agreement or other written contract between itself and any other defendant to this action, or any other owner of Summerville Estates.

30. *This Defendant's knowledge of insurance policies insuring this Defendant against loss, damage, or liability arising from events such as the Incident set forth in Plaintiffs' Petition which were in effect during June 2021, including commercial general liability policies, indemnity agreements and umbrella policies.

31. This Defendant's knowledge of the whereabouts of any Maco Management employee on the property of Summerville Estates who acted in a managerial or maintenance capacity from September 1, 2018 through the date of the Incident.

32. *This Defendant's meetings, discussions, or conferences with tenants concerning fire safety, whether initiated by Summersville Estates L.P., a fire department, or a governmental body.

33. *Summersville Estates L.P.'s qualifications as a property management company under the rules established by the United States Government, Fannie-Mae, or Freddie Mac loan programs for Section 8 Housing.

34. *Specific details regarding the hiring and training process (including any and all procedures and policies followed to onboard a new employee).

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - December 16, 2022 - 02:30 PM

35. Details regarding the actions taken to supervise, monitor, oversee, and/or manage the work performance of Ms. Dawn Sims at Summerville Estates.

36. All facts relating to all employees responsible for conducting safety inspections at Summersville Estates, including the frequency inspections were performed in the five (5) year period preceding the Incident.

37. This Defendant's knowledge of employees, agents, and/or representatives who has or potentially has knowledge of the Incident itself.

38. This Defendant's knowledge of any witness, statements, photographs, videos, or movies taken by individuals present at the scene within sixty (60) minutes of the Incident.

39. *All contact information for tenants and former tenants of Summersville Estates in the past five (5) years.(2017- 2022)

40. *Specific details for any report(s) made regarding the Incident made by you, Ms. Dawn Sims, or another of your employees, agents, or representatives (including but not limited to police reports, internal reports, company policies and or operating procedures, and the identity and contact information of the individual creating the report or having access to same).

41. *Specific details regarding any changes made to your policies and procedures following the Incident to mitigate the risk of similar incidents in the future.

42. *Specific details regarding actions taken to verify the apartment units at Summerville Estates are inspected and meet the standards set forth in your company's policies and procedures.

43. *This Defendant's knowledge of any statements/reports made by tenants (or former tenants) of Summersville Estates to your agents/representatives of Ms. Dawn Sims' purported misconduct or failure to complete her job duties as property manager or maintenance personnel.

44. *This Defendant's knowledge of any agreement(s) with a governmental entity in effect at the time of the Incident regarding local and federal management practices regarding safety, inspections, and employment qualifications that Summerville Estates is required to adhere to for Section 8 Housing.

45. *This Defendant's corporate documents from 2018 through the present date relating to your management and/or ownership of the Summersville Estates property.

46. *All training materials, including but not limited to manuals, course materials, videos, and training software, you require property managers and maintenance personnel to participate in or study before beginning on-the-job employment.

47. The date on which the defendant had a reasonable factual basis and belief that litigation would

result or be brought after the incident.

48.      *Details of capital improvements and the amounts budgeted for capital improvements between 2017 and 2022, including fire Safety.

**The \* next to a numbered topic means the representative on a particular topic is commanded to bring documents which pertain too and are logically related to that numbered topic, so long as they are not privileged or otherwise not subject to production, 30 days after service of the request, at the Law office of Klar Isak and Stenger during normal business hours.**

Electronically Filed - Texas - December 16, 2022 - 02:30 PM

Electronically Filed - Texas - December 16, 2022 - 02:30 PM

## IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

JENNIFER BUMETER, and )
ERIC MEIER, )
                         )     Cause No.:     21TE-CC00360
      Plaintiffs, )
                         )
v. )
                         )
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
                         )
      Defendants. )

## SECOND AMENDED NOTICE OF VIDEO DEPOSITION OF CORPORATE REPRESENTATIVE OF MACO MANAGEMENT CO., INC.

TO:               Counsel of Record

DATE & TIME:       January 19, 2023, at 9:00 A.M.

DEPONENT(S):      Corporate Representative of Maco Management Co., Inc.

LOCATION:         Law offices of Childress, Ahlheim and Cary
                         1010 Market St., Ste. 500
                         St. Louis, MO 63101

REPORTER:         Kelly Daniels, CCR

PLEASE TAKE NOTICE that at the above-stated date, time and place, the deposition of a Corporate Representative(s) of Maco Management Co., Inc., will be taken on oral examination, before a court reporter, pursuant to Missouri Supreme Court Rule 57.03(a) Rule 57.03(b)(4), the topics upon which inquiry will be made are attached hereto as **Exhibit A**. Said deposition will continue on until the time permitted has expired or the deposition is otherwise concluded. This deposition is being taken for any and all purposes allowed by law, including use as evidence at trial. All parties and the court reporter will attend the deposition remotely.

A licensed and qualified court reporter will administer the oath to the witness remotely and will record the testimony by audio and stenographic means.

Dated this 16th day of December, 2022.

<div align="right">

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Richard E. "Ted" Hanson
 BRANDON J. KLAR, #72884
 Richard E. "Ted" Hanson # 69589
 Attorney for Plaintiffs
 1125 Olivette Executive Parkway
 Suite 120
 St. Louis, Missouri 63132
 Tel: (314) 863-1117
 Fax: (314) 863-1118
 Email: bjklar@lawsaintlouis.com
  thanson@lawsaintlouis.com

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of December 2022, a true and correct copy of the forgoing was served via the court's electronic filing system to all parties of record.

<div align="right">

/s/ Brandon J. Klar

</div>

Electronically Filed - Texas - December 16, 2022 - 02:30 PM

## Exhibit A

TOPICS FOR MACO MANAGEMENT CO., INC. CORPORATE REPRESENTATIVE
DEPOSITION

1.     *Details relating to the job performance duties, maintenance responsibilities, and recordkeeping obligations put in place by Maco Management Co. Inc. ("Maco Management") related to fulfilling the role of property manager ("Property Manager") for all units at Summersville Estates since September 2018.

2.     *Details relating to the job duties of Summersville Estates' Property Manager in relation to Summerville Estates' tenants since September 2018, including any contracts between the two.

3.     *The business relationship between Maco Management and Summersville Estates L.P. since September 2018, including any contracts between the two.

4.     *Specific details regarding the performance of all inspections and the completion of all inspection reports for all units and buildings (including all documents made in conjunction with such reports) at Summersville Estates since September 2018.

5.     *Details regarding the physical state, type, model, age and operating condition of all smoke detectors/alarms in all units at Summersville Estates since September 2018. Specifically, those documents, work orders, replacement of smoke detectors, replacement of batteries, and the "fire stop and smoke alarm log" referred to in the deposition of Dawn Sims.

6.     *Details relating to Maco Management employees located at Summersville Estates' compliance with the Maco Management Employee Handbook since September 2018, including such employees' compliance with management rules and policies set forth by Summersville Estates, L.P.

7.     *Information relating to the Property Manager of Summersville Estates' compliance with the Maco Management Site Manager & Maintenance Personnel Duties and Responsibilities since September 2018.

8.     *Specific details and/or documentation regarding the tenancy of Ms. Robin Fischer since September 2018, including, but not limited to, all conversations Ms. Fischer had with the Property Manager(s) at Summersville Estates.

9.     *Information relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

10.    Details relating to smoking in apartment units at Summersville Estates since September 2018.

11. Details regarding the relationship maintained between any employee of Maco Management Co., Inc., any employee of Summersville Estates L.P., and/or any member(s) of the Summersville Police Department.

12. Specific facts supporting any of the affirmative defenses asserted by Defendants Maco Management Co., Inc. and Summersville Estates, L.P., as well as the basis on which a good faith belief exists that the facts support the defenses.

13. *All resumes and past employment history of the Property Manager and maintenance workers employed at Summersville Estates in June 2021.

14. All facts relating to any prior legal action taken against the Property Manager hired by Summersville Estates in September 2018 based upon negligence causing personal injury.

15. This Defendant's knowledge of the Incident described in Plaintiffs' Petition, including how they learned of such Incident.

16. *This Defendant's knowledge of issues with fire alarm or smoke detector batteries, including their replacement in any unit managed by Maco Management and located at Summerville Estates which are not documented in work order, incident reports, the "fire stop and smoke alarm log" identified by Dawn Sims, or police reports, if any.

17. *This Defendant's meetings, discussions, and decisions on the reasons for hiring or not hiring third party contractor to inspect the premises of Summersville Estates and ensure proper smoke detector or fire alert function, including any notes or minutes.

18. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding proper smoke detector or fire alarm function on the Summersville Estates premises.

19. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of apartment inspections at Summerville Estates.

20. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of fire alarm or smoke detector inspections at Summerville Estates.

21. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of complaints concerning fire alarm or smoke detector malfunction and smoke detector replacement.

22. This Defendant's knowledge of inspections made by a third party or governmental agency which inspected the Summersville Estates property for any safety reason or a code violation which Defendant or Summersville Estates, L.P. was supposed to meet or be incompliance with

Electronically Filed - Texas - December 16, 2022 - 02:30 PM

local state or federal laws and regulations.

23. *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding documentation of complaints and/or occurrences of fires on the Summerville Estate premises.

24. *The maintenance budget, as well as measures in use to maintain the units, at Summersville Estates from September 2018 through July 2021, including budget items related to fire safety.

25. *Any discussions, meetings, electronic messages or conversations between Maco Management employees and their supervisors regarding requests for service or maintenance concerning smoke detectors or fire alarms.

26. *How this Defendant instructed its Property Manager to respond to tenants who expressed their concerns about safety at the premises in writing or verbally from September 2018 through July 2021.

27. *Defendant's knowledge of all efforts taken by Defendant to advance the safety of Summerville Estates residents and guests from September 1, 2018 through July 1, 2021.

28. This Defendant's knowledge of calls for service to the Summersville Estates property received by the Summersville Fire and Rescue or Police Department during the timeframe of September 1, 2018 through July 1, 2021.

29. *This Defendant's knowledge of any management agreement or other written contract between itself and any other defendant to this action, or any other owner of Summerville Estates.

30. *This Defendant's knowledge of insurance policies insuring this Defendant against loss, damage, or liability arising from events such as the Incident set forth in Plaintiffs' Petition which were in effect during June 2021, including commercial general liability policies, indemnity agreements and umbrella policies.

31. This Defendant's knowledge of the whereabouts of any Maco Management employee on the property of Summerville Estates who acted in a managerial or maintenance capacity from September 1, 2018 through the date of the Incident.

32. *This Defendant's meetings, discussions, or conferences with tenants concerning fire safety, whether initiated by Maco Management, a fire department, or a governmental body.

33. *Maco Managements' qualifications as a property management company under the rules established by the United States Government, Fannie-Mae, or Freddie Mac loan programs for Section 8 Housing.

34. *Specific details regarding the hiring and training process (including any and all procedures and policies followed to onboard a new employee).

Electronically Filed - Texas - December 16, 2022 - 02:30 PM

35. Details regarding the actions taken to supervise, monitor, oversee, and/or manage the work performance of Ms. Dawn Sims at Summerville Estates.

36. All facts relating to all employees responsible for conducting safety inspections at Summersville Estates, including the frequency inspections were performed in the five (5) year period preceding the Incident.

37. This Defendant's knowledge of employees, agents, and/or representatives who has or potentially has knowledge of the Incident itself.

38. This Defendant's knowledge of any witness, statements, photographs, videos, or movies taken by individuals present at the scene within sixty (60) minutes of the Incident.

39. *All contact information for tenants and former tenants of Summersville Estates in the past five (5) years.(2017- 2022)

40. *Specific details for any report(s) made regarding the Incident made by you, Ms. Dawn Sims, or another of your employees, agents, or representatives (including but not limited to police reports, internal reports, company policies and or operating procedures, and the identity and contact information of the individual creating the report or having access to same).

41. *Specific details regarding any changes made to your policies and procedures following the Incident to mitigate the risk of similar incidents in the future.

42. *Specific details regarding actions taken to verify the apartment units at Summerville Estates are inspected and meet the standards set forth in your company's policies and procedures.

43. *This Defendant's knowledge of any statements/reports made by tenants (or former tenants) of Summersville Estates to your agents/representatives of Ms. Dawn Sims' purported misconduct or failure to complete her job duties as property manager or maintenance personnel.

44. *This Defendant's knowledge of any agreement(s) with a governmental entity in effect at the time of the Incident regarding local and federal management practices regarding safety, inspections, and employment qualifications that Summerville Estates is required to adhere to for Section 8 Housing.

45. *This Defendant's corporate documents from 2018 through the present date relating to your management and/or ownership of the Summersville Estates property.

46. *All training materials, including but not limited to manuals, course materials, videos, and training software, you require property managers and maintenance personnel to participate in or study before beginning on-the-job employment.

47. The date on which the defendant had a reasonable factual basis and belief that litigation would

result or be brought after the incident.

48. *Details of capital improvements and the amounts budgeted for capital improvements between 2017 and 2022, including fire Safety.

**The * next to a numbered topic means the representative on a particular topic is commanded to bring documents which pertain too and are logically related to that numbered topic, so long as they are not privileged or otherwise not subject to production, 30 days after service of the request, at the Law office of Klar Isak and Stenger during normal business hours.**

Electronically Filed - Texas - December 16, 2022 - 02:30 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| JENNIFER BUMETER, an individual | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| ERIC MEIER, an individual | ) | |
| | ) | |
| Plaintiffs, | ) | Cause No.: 21TE-CC00360 |
| | ) | |
| v. | ) | |
| | ) | |
| MACO MANAGEMENT COMPANY, INC., | ) | |
| A Missouri Limited Liability Company | ) | |
| | ) | |
| AND | ) | |
| | ) | |
| SUMMERSVILLE ESTATES, L.P., | ) | |
| A Missouri Limited Liability Company | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER, by and through their undersigned counsel, and hereby certify that original copies of Plaintiffs' 4th Supplemental Requests for Production of Documents Directed to Defendant MACO MANAGEMENT COMPANY, INC., and Plaintiffs' 4th Supplemental Requests for Production of Documents Directed to Defendant SUMMERSVILLE ESTATES, L.P., together with a copy of this Certificate of Service, were served upon the following attorneys of record via electronic mail this 16th day of December, 2022:

CHILDRESS AHLHEIM CARY LLC
David T. Ahlheim
Marie F. Pudlowski
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
    BRANDON J. KLAR    #72884
    RICHARD E. HANSON  #69589
    *Attorneys for Plaintiff*
    1125 Olivette Executive Parkway
    Suite 120
    St. Louis, Missouri 63132
    Phone:    (314) 863-1117
    Fax:    (314) 863-1118
    Email:    bjklar@lawsaintlouis.com
             thanson@lawsaintlouis.com

**IN THE CIRCUIT COURT OF TEXAS COUNTY**
**STATE OF MISSOURI**

JENNIFER BUMETER, an individual )
)
AND )
)
ERIC MEIER, an individual )
)
        Plaintiffs, )    Cause No.: 21TE-CC00360
)
   v. )
)
MACO MANAGEMENT COMPANY, INC., )
A Missouri Limited Liability Company )
)
AND )
)
SUMMERSVILLE ESTATES, L.P., )
A Missouri Limited Liability Company )
)
      Defendants. )

## CERTIFICATE OF SERVICE

COME NOW, Plaintiffs JENNIFER BUMETER and ERIC MEIER, by and through their undersigned counsel, and hereby certify that original copies of Plaintiff Eric Meier's 1st Supplemental Answers to Defendants' Revised Written Interrogatories, and Plaintiff Jennifer Bumeter's 1st Supplemental Answers to Defendants' Revised Written Interrogatories, together with a copy of this Certificate of Service, were served upon the following attorneys of record via electronic mail this 16th day of December, 2022:

CHILDRESS AHLHEIM CARY LLC
David T. Ahlheim
Marie F. Pudlowski
dahlheim@jchildresslaw.com
mpudlowski@jchildresslaw.com

Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 686 of 786

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
    BRANDON J. KLAR    #72884
    RICHARD E. HANSON  #69589
    *Attorneys for Plaintiff*
    1125 Olivette Executive Parkway
    Suite 120
    St. Louis, Missouri 63132
    Phone:    (314) 863-1117
    Fax:    (314) 863-1118
    Email:    bjklar@lawsaintlouis.com
             thanson@lawsaintlouis.com

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )        Cause No.      21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

## DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO LIMIT CORPORATE REPRESENTATIVES' TOPICS AND DOCUMENT PRODUCTION

COME NOW, Defendants Maco Management Co. Inc. and Summersville Estates, L.P., by and through undersigned counsel, and for Defendants' Motion for Protective Order to Limit the Corporate Representatives' Topics and Document Production state as follows:

1. On December 12, 2022, Plaintiffs filed a Notice of a Corporate Representative deposition for both Maco and Summersville with a list of 33 topics and 25 requests for documents each.

2. On December 16, 2022 (after Defendants provided a date of availability for the designated representative based on the previous topics), Plaintiffs filed an Amended Notice of a Corporate Representative deposition for both Maco and Summersville adding topics and requested for documents to total 48 topics and 35 requests for documents each.

3. This deposition is currently set for January 19, 2023.

4. Missouri Rule of Civil Procedure 57.03(b)(4) calls for the designated representative to testify as to "matters known or reasonably available to the organization." Such topics and requests for production must "describe with reasonable particularity" the topic and documents as well as be limited to relevant subject matters and timeframes. *See* Mo. R. 58.01, 57.03(b)(4), 56.01.

5. Many of Plaintiffs' topics and requests for documents are overly broad in violation of Missouri Rules and accompanying caselaw.

6. Moreover, the time and expense associated with preparing for such overbroad topics and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).

7. Defendants have more specifically set forth their objections to the specific topics and request for production in **Exhibit 1** and **Exhibit 2**, attached and incorporated herein.

8. Missouri Civil Rule 56.01(c)(4) and Rule 57.03(e) allow the Court to issue an order of protection that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters.

9. Thus, based on and in accordance with the objections stated herein and in Exhibits 1 and 2, Defendants request the Court sustain Defendants objections and order the topics and request for documents be limited in scope and not inquired into at deposition.

WHEREFORE, Defendants pray this Court sustain Defendants objections and grant Defendants' Motion for Protective Order to Limit the Corporate Representatives' Topics and Document Production, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim       #50853
Craig R. Klotz          #58850
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

2

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 20th day of December 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/    MARIE F. PUDLOWSKI

EXHIBIT A - STATE COURT FILE

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER,<br>and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.     21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**OBJECTIONS TO PLAINTIFFS' TOPICS FOR SECOND AMENDED NOTICE OF DEPOSITION OF CORPORATE REPRESENTATIVE OF MACO MANAGEMENT CO., INC. FILED DECEMBER 16, 2022**

COMES NOW, Defendant Maco Management Co. Inc., by and through counsel, Childress

Ahlheim Cary LLC and provides its Objections as follows:

Exhibit A

TOPICS FOR MACO MANAGEMENT CO., INC. CORPORATE
REPRESENTATIVE DEPOSITION

**GENERAL OBJECTION**

**Objection to the extent any such topic seeks the individual with first-hand, personal knowledge and recollection of the topic, especially given the topics request for "details" and "specific details."  Missouri Rule of Civil Procedure 57.03(b)(4) calls for the designated representative to testify as to "matters known or reasonably available to the organization."  The designated representative, Shelia Calvert, will have general knowledge known or reasonable available to the company (and not obtained through attorney-client privilege or work product).  The designated individual will not have first-hand, personal knowledge and recollection of each topic.**

**Plaintiffs have already deposed Property Manager Dawn Sims to obtain her first-hand, personal knowledge and recollection of such topics.  Plaintiffs were previously provided dates for depositions of Maco employees Linda Everle, Michelle McGire, Jennifer Christensen, Steve Conner, and Casey Weyh to discover their first-hand, personal knowledge and recollection of such topics.  Plaintiffs canceled those depositions and to date have not requested new dates for such depositions.**

EXHIBIT 1

1.	*Details relating to the job performance duties, maintenance responsibilities, and recordkeeping obligations put in place by Maco Management Co. Inc. ("Maco Management") related to fulfilling the role of property manager ("Property Manager") for all units at Summersville Estates since September 2018.

**RESPONSE: See MACO281-304, MACO2111-2124 (previously produced).**

2.	*Details relating to the job duties of Summersville Estates' Property Manager in relation to Summerville Estates' tenants since September 2018, including any contracts between the two.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  Leases, documents, and relationships between each tenant with the property manager over an almost 5-year-period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential.  Further, leases, documents, and relationship of each tenant with the property manager <u>after</u> this incident are even more tangential.**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

3.	*The business relationship between Maco Management and Summersville Estates L.P. since September 2018, including any contracts between the two.

**RESPONSE: See MACO335-343 (previously produced).**

4.	*Specific details regarding the performance of all inspections and the completion of all inspection reports for all units and buildings (including all documents made in conjunction with such reports) at Summersville Estates since September 2018.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

EXHIBIT A – STATE COURT FILE

EXHIBIT 1

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

**It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). Inspection of each tenant's unit over an almost 5-year-period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential. Further, such inspections completed <u>after</u> this incident are even more tangential.**

**The time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

**See Maco's and Summersville's Objections to Plaintiffs' 1st Supplemental Request for Production # 2 not yet ruled upon by the Court encompassing the same request for documents.**

5.     *Details regarding the physical state, type, model, age and operating condition of all smoke detectors/alarms in all units at Summersville Estates since September 2018. Specifically, those documents, work orders, replacement of smoke detectors, replacement of batteries, and the "fire stop and smoke alarm log" referred to in the deposition of Dawn Sims.

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

**It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). The operating condition and other details requested of each smoke alarm at the property over an almost 5-year-period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential. Further, such operating condition and other details completed <u>after</u> this incident are even more tangential.**

**The time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

**See Maco's and Summersville's Objections to Plaintiffs' 1st Supplemental Request for Production # 3 not yet ruled upon by the Court encompassing the same request for documents.**

6.     *Details relating to Maco Management employees located at Summersville Estates' compliance with the Maco Management Employee Handbook since September 2018, including such employees' compliance with management rules and policies set forth by Summersville Estates, L.P.

EXHIBIT A – STATE COURT FILE

EXHIBIT 1

**RESPONSE: See MACO281-334, 2110-2124, 2133 (previously produced).**

7.      *Information relating to the Property Manager of Summersville Estates' compliance with the Maco Management Site Manager & Maintenance Personnel Duties and Responsibilities since September 2018.

**RESPONSE: See MACO281-334, 2110-2124, 2133 (previously produced).**

8.      *Specific details and/or documentation regarding the tenancy of Ms. Robin Fischer since September 2018, including, but not limited to, all conversations Ms. Fischer had with the Property Manager(s) at Summersville Estates.

**RESPONSE: See MACO40, 185-186, 227-259, 371-402, 1129-1435 (previously produced).**

9.      *Information relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

**RESPONSE: Objection.  Said topic and request for documents is overly broad.  It does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

10.     Details relating to smoking in apartment units at Summersville Estates since September 2018.

**RESPONSE:**

11.     Details regarding the relationship maintained between any employee of Maco Management Co., Inc., any employee of Summersville Estates L.P., and/or any member(s) of the Summersville Police Department.

**RESPONSE: Objection.  Said topic is overly broad.  It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority, if not all, the information immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  Such relationships do not make it any more or less likely that Defendant's committed the alleged negligence claimed in the pleadings.  Such topic appears to be for the purpose of harassment and to place Maco employees in a bad light by the mere incitation of an improper relationship with Summersville Police Department.**

12. Specific facts supporting any of the affirmative defenses asserted by Defendants Maco Management Co., Inc. and Summersville Estates, L.P., as well as the basis on which a good faith belief exists that the facts support the defenses.

**RESPONSE:**

13. *All resumes and past employment history of the Property Manager and maintenance workers employed at Summersville Estates in June 2021.

**RESPONSE: See MACO317-319.**

14. All facts relating to any prior legal action taken against the Property Manager hired by Summersville Estates in September 2018 based upon negligence causing personal injury.

**RESPONSE:**

15. This Defendant's knowledge of the Incident described in Plaintiffs' Petition, including how they learned of such Incident.

**RESPONSE:**

16. *This Defendant's knowledge of issues with fire alarm or smoke detector batteries, including their replacement in any unit managed by Maco Management and located at Summerville Estates which are not documented in work order, incident reports, the "fire stop and smoke alarm log" identified by Dawn Sims, or police reports, if any.

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

**It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). The operating condition and other details requested of each smoke alarm at the property over an almost 5-year-period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential. Further, such operating condition and other details completed <u>after</u> this incident are even more tangential.**

**The time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

EXHIBIT A - STATE COURT FILE

EXHIBIT 1

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

17.     *This Defendant's meetings, discussions, and decisions on the reasons for hiring or not hiring third party contractor to inspect the premises of Summersville Estates and ensure proper smoke detector or fire alert function, including any notes or minutes.

**RESPONSE:**

18.     *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding proper smoke detector or fire alarm function on the Summersville Estates premises.

**RESPONSE: See MACO40, 281-334, 2133 (previously produced).**

19.     *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of apartment inspections at Summerville Estates.

**RESPONSE: See MACO40, 281-334, 2133 (previously produced).**

20.     *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of fire alarm or smoke detector inspections at Summerville Estates.

**RESPONSE: See MACO40, 281-334, 2133 (previously produced).**

21.     *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of complaints concerning fire alarm or smoke detector malfunction and smoke detector replacement.

**RESPONSE: See MACO40, 281-334, 2133 (previously produced).**

22.     This Defendant's knowledge of inspections made by a third party or governmental agency which inspected the Summersville Estates property for any safety reason or a code violation which Defendant or Summersville Estates, L.P. was supposed to meet or be incompliance with local state or federal laws and regulations.

**RESPONSE: Objection.  Said topic is overly broad.**

**It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information sought immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  Third party inspections for potential non fire related violations, and even fire related violations, from early 2000s to present do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings in June of 2021, and at best, would be significantly tangential.**

**The time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

23.     *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding documentation of complaints and/or occurrences of fires on the Summerville Estate premises.

**RESPONSE:**

24.     *The maintenance budget, as well as measures in use to maintain the units, at Summersville Estates from September 2018 through July 2021, including budget items related to fire safety.

**RESPONSE:**

25.     *Any discussions, meetings, electronic messages or conversations between Maco Management employees and their supervisors regarding requests for service or maintenance concerning smoke detectors or fire alarms.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  Discussions between the Maco employees and supervisors at Maco's numerous other properties and throughout the existence of the company (1970s to present) do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential.**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

26. \*How this Defendant instructed its Property Manager to respond to tenants who expressed their concerns about safety at the premises in writing or verbally from September 2018 through July 2021.

**RESPONSE:**

27. \*Defendant's knowledge of all efforts taken by Defendant to advance the safety of Summerville Estates residents and guests from September 1, 2018 through July 1, 2021.

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4). See also State ex rel Wilson v. Copeland, 685 S.W, 2d, 252 (Mo. S.D App. 1985). Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing, especially considering the vague and ambiguous phrase "to advance safety.". See State ex rel. Plank v. Koehr, 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. See State ex rel. Plank v. Koehr, 831 S.W.2d 926, 929 (Mo. 1992).**

28. This Defendant's knowledge of calls for service to the Summersville Estates property received by the Summersville Fire and Rescue or Police Department during the timeframe of September 1, 2018 through July 1, 2021.

**RESPONSE:**

29. \*This Defendant's knowledge of any management agreement or other written contract between itself and any other defendant to this action, or any other owner of Summerville Estates.

**RESPONSE: See MACO335-343 (previously produced).**

30. \*This Defendant's knowledge of insurance policies insuring this Defendant against loss, damage, or liability arising from events such as the Incident set forth in Plaintiffs' Petition which were in effect during June 2021, including commercial general liability policies, indemnity agreements and umbrella policies.

**RESPONSE: Objection. Such topic is outside the scope of a corporate representative's knowledge as it calls for a legal contention and opinion as to a legal conclusion regarding insurance coverage. See MACO090-184 (previously provided), policy speaks for itself.**

EXHIBIT A - STATE COURT FILE

EXHIBIT 1

31.     This Defendant's knowledge of the whereabouts of any Maco Management employee on the property of Summerville Estates who acted in a managerial or maintenance capacity from September 1, 2018 through the date of the Incident.

**RESPONSE:**

32.     *This Defendant's meetings, discussions, or conferences with tenants concerning fire safety, whether initiated by Maco Management, a fire department, or a governmental body.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  Discussions between the Maco and tenants at their numerous other properties and throughout the existence of the company (1970s to present) do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential.**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

33.     *Maco Managements' qualifications as a property management company under the rules established by the United States Government, Fannie-Mae, or Freddie Mac loan programs for Section 8 Housing.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing, especially given these alleged rules have not been plead, listed, or provided.**

EXHIBIT 1

Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* **831 S.W.2d 926, 929 (Mo. 1992). The information and documents are not reasonably calculated to lead to the discovery of admissible evidence. This is a negligence claim by Decedent's beneficiaries, not breach of contract claim.**

34.     *Specific details regarding the hiring and training process (including any and all procedures and policies followed to onboard a new employee).

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4). S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985). Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). At the time of this incident, Maco employed people for numerous different jobs ranging from maintenance workers at properties to executives with jobs for everything in between.**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). Hiring and training process and associated documents for all employees from creation to present does not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings.**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

35.     Details regarding the actions taken to supervise, monitor, oversee, and/or manage the work performance of Ms. Dawn Sims at Summerville Estates.

**RESPONSE:**

36.     All facts relating to all employees responsible for conducting safety inspections at Summersville Estates, including the frequency inspections were performed in the five (5) year period preceding the Incident.

**RESPONSE: Objection. Said topic is overly broad and duplicative of Topic #4.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4). S*ee also State ex rel***

*Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985). **Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition without speculation and guessing, especially given the vague an ambiguous phrase "all facts relating to all employees responsible for conducting safety inspections."** *See State ex rel. Plank v. Koehr,* **831 S.W.2d 926, 929 (Mo. 1992).**

**It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case.** *See State ex rel. Plank v. Koehr,* **831 S.W.2d 926, 929 (Mo. 1992). All facts related to employees and inspections of each tenant's unit over an almost 5-year-period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential. Further, such inspections completed <u>after</u> this incident are even more tangential.**

**The time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

37.    This Defendant's knowledge of employees, agents, and/or representatives who has or potentially has knowledge of the Incident itself.

**RESPONSE:**

38.    This Defendant's knowledge of any witness, statements, photographs, videos, or movies taken by individuals present at the scene within sixty (60) minutes of the Incident.

**RESPONSE:**

39.    *All contact information for tenants and former tenants of Summersville Estates in the past five (5) years. (2017- 2022)

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

**It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information sought immaterial and irrelevant to any issue in this case.** *See State ex rel. Plank v. Koehr,* **831 S.W.2d 926, 929 (Mo. 1992).**

**Defendant further objects to said topic and request in the interest of justice as said request is for the purpose of annoyance, embarrassment, oppression, and/or undue burden and expense. This topic is a mere fishing expedition that images upon the privacy rights of nonparties and is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

40.     *Specific details for any report(s) made regarding the Incident made by you, Ms. Dawn Sims, or another of your employees, agents, or representatives (including but not limited to police reports, internal reports, company policies and or operating procedures, and the identity and contact information of the individual creating the report or having access to same).

**RESPONSE: See MACO256-259 (previously produced).**

41.     *Specific details regarding any changes made to your policies and procedures following the Incident to mitigate the risk of similar incidents in the future.

**RESPONSE:**

42.     *Specific details regarding actions taken to verify the apartment units at Summerville Estates are inspected and meet the standards set forth in your company's policies and procedures.

**RESPONSE: Objection to the extent this duplicated Topic 4 and seeks copies of all quarterly inspection reports.  Topic 4 objection incorporated herein.  See also Maco's and Summersville's Objections to Plaintiffs' 1st Supplemental Request for Production # 2 not yet ruled upon by the Court encompassing the same request for documents.**

43.     *This Defendant's knowledge of any statements/reports made by tenants (or former tenants) of Summersville Estates to your agents/representatives of Ms. Dawn Sims' purported misconduct or failure to complete her job duties as property manager or maintenance personnel.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**It lacks <u>relevant</u> subject matter limitations and time limitations to the extent it seeks post-incident statements/reports that would not place Defendants on notice in advance of this incident; and thus, not make the claims more or less likely.**

44.     *This Defendant's knowledge of any agreement(s) with a governmental entity in effect at the time of the Incident regarding local and federal management practices regarding safety, inspections, and employment qualifications that Summerville Estates is required to adhere to for Section 8 Housing.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing.**

Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). The information and documents are not reasonably calculated to lead to the discovery of admissible evidence. This is a negligence claim by Decedent's beneficiaries, not breach of contract claim.

See Maco's and Summersville's Objections to Plaintiffs' 2nd Supplemental Request for Production # 1, and Maco's and Summersville's Objections to Plaintiffs' 3rd Supplemental Request for Production # 2 and 3, not yet ruled upon by the Court encompassing the same request for documents.

45.     *This Defendant's corporate documents from 2018 through the present date relating to your management and/or ownership of the Summersville Estates property.

RESPONSE: Objection. Said topic and request for documents is overly broad.

First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4). S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985). Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing, considering the vague phrase "corporate documents." *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).

Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).

And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).

46.     *All training materials, including but not limited to manuals, course materials, videos, and training software, you require property managers and maintenance personnel to participate in or study <u>before</u> beginning on-the-job employment.

RESPONSE:

47.     The date on which the defendant had a reasonable factual basis and belief that litigation would result or be brought after the incident.

RESPONSE:

EXHIBIT A - STATE COURT FILE                    EXHIBIT 1

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

48.     *Details of capital improvements and the amounts budgeted for capital improvements between 2017 and 2022, including fire Safety.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  There is no place limitation.  And, most if not all improvements made by Defendants over a 5-year period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential.  Moreover, Plaintiffs have already included a more narrow, similar topic #24.**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

The * next to a numbered topic means the representative on a particular topic is commanded to bring documents which pertain too and are logically related to that numbered topic, so long as they are not privileged or otherwise not subject to production, 30 days after service of the request, at the Law office of Klar Isak and Stenger during normal business hours.

**Investigation and further understanding of the topic/request for production scope is continuing.  Defendant reserves the right to Defendant expressly reserves the right to modify, supplement, or amend any or all of its responses if necessary or appropriate and/or in accordance with any court order.**

CHILDRESS AHLHEIM CARY LLC

BY:/s/  MARIE F. PUDLOWSKI
David T. Ahlheim       #50853
Craig R. Klotz          #58850
Marie F. Pudlowski     #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com

EXHIBIT A - STATE COURT FILE                    EXHIBIT 1

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the   day of December 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Richard E. "Ted" Hanson
Klar, Izsak & Stenger, L.L.C.
1125 Olivette Executive Parkway
St. Louis, MO 63132
bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com
*Attorneys for Plaintiffs*                    /s/        MARIE F. PUDLOWSKI

EXHIBIT A - STATE COURT FILE

EXHIBIT 1

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                       )
                                      )
        Plaintiffs,                   )
                                      )
v.                                    )     Cause No.     21TE-CC00360
                                      )
MACO MANAGEMENT CO., INC.,            )
and SUMMERSVILLE ESTATES, L.P.,       )
                                      )
        Defendants.                   )

**OBJECTIONS TO PLAINTIFFS' AMENDED NOTICE OF DEPOSITION
OF CORPORATE REPRESENTATIVE OF SUMMERSVILLE ESTATES, L.P.
FILED DECEMBER 16, 2022**

COMES NOW, Defendant Summersville Estates, L.P., by and through counsel, Childress

Ahlheim Cary LLC and provides its Objections as follows:

Exhibit A

TOPICS FOR SUMMERSVILLE ESTATES L.P. CORPORATE REPRESENTATIVE
DEPOSITION

**GENERAL OBJECTION**

**Objection to the extent any such topic seeks the individual with first-hand, personal
knowledge and recollection of the topic, especially given the topics request for "details" and
"specific details." Missouri Rule of Civil Procedure 57.03(b)(4) calls for the designated
representative to testify as to "matters known or reasonably available to the organization."
The designated representative, Shelia Calvert, will have general knowledge known or
reasonable available to the company (and not obtained through attorney-client privilege or
work product). The designated individual will not have first-hand, personal knowledge and
recollection of each topic.**

**Plaintiffs have already deposed Property Manager Dawn Sims to obtain her first-hand,
personal knowledge and recollection of such topics. Plaintiffs were previously provided
dates in October 2022 for depositions of Maco employees Linda Everle, Michelle McGire,
Jennifer Christensen, Steve Conner, and Casey Weyh to discover their first-hand, personal
knowledge and recollection of such topics. Plaintiffs canceled the October depositions.
Plaintiffs recently requested new dates. Parties have agreed upon the date of February 22
for such depositions.**

1.	*Details relating to the job performance duties, maintenance responsibilities, and recordkeeping obligations put in place by Summersville Estates L.P. ("Summersville Estates") related to fulfilling the role of property manager ("Property Manager") for all units at Summersville Estates since September 2018.

**RESPONSE: See MACO281-304, MACO2111-2124 (previously produced).**

2.	*Details relating to the job duties of Summersville Estates' Property Manager in relation to Summerville Estates' tenants since September 2018, including any contracts between the two.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  Leases, documents, and relationships between each tenant with the property manager over an almost 5-year-period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential.  Further, leases, documents, and relationship of each tenant with the property manager <u>after</u> this incident are even more tangential.**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

3.	*The business relationship between Maco Management and Summersville Estates L.P. since September 2018, including any contracts between the two.

**RESPONSE: See MACO335-343 (previously produced).**

4.	*Specific details regarding the performance of all inspections and the completion of all inspection reports for all units and buildings (including all documents made in conjunction with such reports) at Summersville Estates since September 2018.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). Inspection of each tenant's unit over an almost 5-year-period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential. Further, such inspections completed <u>after</u> this incident are even more tangential.

The time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).

See Maco's and Summersville's Objections to Plaintiffs' 1st Supplemental Request for Production # 2 not yet ruled upon by the Court encompassing the same request for documents.

5.      *Details regarding the physical state, type, model, age and operating condition of all smoke detectors/alarms in all units at Summersville Estates since September 2018. Specifically, those documents, work orders, replacement of smoke detectors, replacement of batteries, and the "fire stop and smoke alarm log" referred to in the deposition of Dawn Sims.

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). The operating condition and other details requested of each smoke alarm at the property over an almost 5-year-period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential. Further, such operating condition and other details completed <u>after</u> this incident are even more tangential.

The time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).

See Maco's and Summersville's Objections to Plaintiffs' 1st Supplemental Request for Production # 3 not yet ruled upon by the Court encompassing the same request for documents.

6.      *Policies and Procedures relating to Maco Management employees located at Summersville Estates concerning compliance with the management of this particular property and or others owned or controlled by Summersville since September 2018, including such

EXHIBIT A - STATE COURT FILE

EXHIBIT 2

Case 6:23-cv-03015-BCW    Document 1-1    Filed 01/12/23    Page 708 of 786

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

employees' compliance with management rules and policies set forth by Summersville Estates, L.P.

**RESPONSE: See MACO281-334, 2110-2124, 2133 (previously produced).**

7.      *Information relating to the Property Manager of Summersville Estates' compliance with the Maco Management Site Manager & Maintenance Personnel Duties and Responsibilities since September 2018.

**RESPONSE: See MACO281-334, 2110-2124, 2133 (previously produced).**

8.      *Specific details and/or documentation regarding the tenancy of Ms. Robin Fischer since September 2018, including, but not limited to, all conversations Ms. Fischer had with the Property Manager(s) at Summersville Estates.

**RESPONSE: See MACO40, 185-186, 227-259, 371-402, 1129-1435 (previously produced).**

9.      *Information relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

**RESPONSE: Objection.  Said topic and request for documents is overly broad.  It does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland***, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

10.     Details relating to smoking in apartment units at Summersville Estates since September 2018.

**RESPONSE:**

11.     Details regarding the relationship maintained between any employee of Maco Management Co., Inc., any employee of Summersville Estates L.P., and/or any member(s) of the Summersville Police Department.

**RESPONSE: Objection.  Said topic is overly broad.  It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority, if not all, the information immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  Such relationships do not make it any more or less likely that Defendant's committed the alleged negligence claimed in the pleadings.  Such topic appears to be for the**

Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 709 of 786

EXHIBIT A - STATE COURT FILE

EXHIBIT 2

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

**purpose of harassment and to place Maco employees in a bad light by the mere incitation of an improper relationship with Summersville Police Department.**

12.     Specific facts supporting any of the affirmative defenses asserted by Defendants Maco Management Co., Inc. and Summersville Estates, L.P., as well as the basis on which a good faith belief exists that the facts support the defenses.

**RESPONSE:**

13.     *All resumes and past employment history of the Property Manager and maintenance workers employed at Summersville Estates in June 2021.

**RESPONSE: See MACO317-319.**

14.     All facts relating to any prior legal action taken against the Property Manager hired by Summersville Estates in September 2018 based upon negligence causing personal injury.

**RESPONSE:**

15.     This Defendant's knowledge of the Incident described in Plaintiffs' Petition, including how they learned of such Incident.

**RESPONSE:**

16.     *This Defendant's knowledge of issues with fire alarm or smoke detector batteries, including their replacement in any unit managed by Maco Management and located at Summerville Estates which are not documented in work order, incident reports, the "fire stop and smoke alarm log" identified by Dawn Sims, or police reports, if any.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  The operating condition and other details requested of each smoke alarm at the property over an almost 5-year-period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential.  Further, such operating condition and other details completed <u>after</u> this incident are even more tangential.**

**The time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

5

17.	*This Defendant's meetings, discussions, and decisions on the reasons for hiring or not hiring third party contractor to inspect the premises of Summersville Estates and ensure proper smoke detector or fire alert function, including any notes or minutes.

RESPONSE:

18.	*This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding proper smoke detector or fire alarm function on the Summersville Estates premises.
RESPONSE:

19.	*This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of apartment inspections at Summerville Estates.

RESPONSE: See MACO40, 281-334, 2133 (previously produced).

20.	*This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of fire alarm or smoke detector inspections at Summerville Estates.

RESPONSE: See MACO40, 281-334, 2133 (previously produced).

21.	*This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding maintaining a record of complaints concerning fire alarm or smoke detector malfunction and smoke detector replacement.

RESPONSE: See MACO40, 281-334, 2133 (previously produced).

22.	This Defendant's knowledge of inspections made by a third party or governmental agency which inspected the Summersville Estates property for any safety reason or a code violation which Defendant or Summersville Estates, L.P. was supposed to meet or be incompliance with local state or federal laws and regulations.

RESPONSE: Objection.  Said topic is overly broad.

It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information sought immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  Third party inspections for potential non fire related violations, and even fire related violations, from early 2000s to present do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings in June of 2021, and at best, would be significantly tangential.

6

**The time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

23.     *This Defendant's knowledge of policies, written or verbal, in effect at the time of the Incident alleged in Plaintiffs' Petition, regarding documentation of complaints and/or occurrences of fires on the Summerville Estate premises.

**RESPONSE:**

24.     *The maintenance budget, as well as measures in use to maintain the units, at Summersville Estates from September 2018 through July 2021, including budget items related to fire safety.

**RESPONSE:**

25.     *Any discussions, meetings, electronic messages or conversations between Summersville Estates' employees and their supervisors regarding requests for service or maintenance concerning smoke detectors or fire alarms.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  Discussions between the Maco employees and supervisors at Maco's numerous other properties and throughout the existence of the company (1970s to present) do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential.**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

7

EXHIBIT A - STATE COURT FILE

EXHIBIT 2

26.  *How this Defendant instructed its Property Manager to respond to tenants who expressed their concerns about safety at the premises in writing or verbally from September 2018 through July 2021.

**RESPONSE:**

27.  *Defendant's knowledge of all efforts taken by Defendant to advance the safety of Summerville Estates residents and guests from September 1, 2018 through July 1, 2021.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  See also *State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing, especially considering the vague and ambiguous phrase "to advance safety.".  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

28.  This Defendant's knowledge of calls for service to the Summersville Estates property received by the Summersville Fire and Rescue or Police Department during the timeframe of September 1, 2018 through July 1, 2021.

**RESPONSE:**

29.  *This Defendant's knowledge of any management agreement or other written contract between itself and any other defendant to this action, or any other owner of Summerville Estates.

**RESPONSE: See MACO335-343 (previously produced).**

30.  *This Defendant's knowledge of insurance policies insuring this Defendant against loss, damage, or liability arising from events such as the Incident set forth in Plaintiffs' Petition which were in effect during June 2021, including commercial general liability policies, indemnity agreements and umbrella policies.

**RESPONSE: Objection. Such topic is outside the scope of a corporate representative's knowledge as it calls for a legal contention and opinion as to a legal conclusion regarding insurance coverage.  See MACO090-184 (previously provided), policy speaks for itself.**

EXHIBIT A – STATE COURT FILE

EXHIBIT 2

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

31.    This Defendant's knowledge of the whereabouts of any Maco Management employee on the property of Summerville Estates who acted in a managerial or maintenance capacity from September 1, 2018 through the date of the Incident.

**RESPONSE:**

32.    *This Defendant's meetings, discussions, or conferences with tenants concerning fire safety, whether initiated by Summersville Estates L.P., a fire department, or a governmental body.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case.  *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).  Discussions between the Maco and tenants at their numerous other properties and throughout the existence of the company (1970s to present) do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential.**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

33.    *Summersville Estates L.P.'s qualifications as a property management company under the rules established by the United States Government, Fannie-Mae, or Freddie Mac loan programs for Section 8 Housing.

**RESPONSE: Objection.  Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4).  S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985).  Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing, especially given these alleged rules have not been plead, listed, or provided.**

9

Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* **831 S.W.2d 926, 929 (Mo. 1992). The information and documents are not reasonably calculated to lead to the discovery of admissible evidence. This is a negligence claim by Decedent's beneficiaries, not breach of contract claim.**

34.     *Specific details regarding the hiring and training process (including any and all procedures and policies followed to onboard a new employee).

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4). S***ee also State ex rel Wilson v. Copeland***, 685 S.W, 2d, 252 (Mo. S.D App. 1985). Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). At the time of this incident, Maco employed people for numerous different jobs ranging from maintenance workers at properties to executives with jobs for everything in between.**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). Hiring and training process and associated documents for all employees from creation to present does not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings.**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

35.     Details regarding the actions taken to supervise, monitor, oversee, and/or manage the work performance of Ms. Dawn Sims at Summerville Estates.

**RESPONSE:**

36.     All facts relating to all employees responsible for conducting safety inspections at Summersville Estates, including the frequency inspections were performed in the five (5) year period preceding the Incident.

**RESPONSE: Objection. Said topic is overly broad and duplicative of Topic #4.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4). S***ee also State ex rel***

10

*Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985). Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition without speculation and guessing, especially given the vague an ambiguous phrase "all facts relating to all employees responsible for conducting safety inspections." *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).

It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). All facts related to employees and inspections of each tenant's unit over an almost 5-year-period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential. Further, such inspections completed <u>after</u> this incident are even more tangential.

The time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).

37.     This Defendant's knowledge of employees, agents, and/or representatives who has or potentially has knowledge of the Incident itself.

RESPONSE:

38.     This Defendant's knowledge of any witness, statements, photographs, videos, or movies taken by individuals present at the scene within sixty (60) minutes of the Incident.

RESPONSE:

39.     *All contact information for tenants and former tenants of Summersville Estates in the past five (5) years.(2017- 2022)

RESPONSE: Objection. Said topic and request for documents is overly broad.

It lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).

Defendant further objects to said topic and request in the interest of justice as said request is for the purpose of annoyance, embarrassment, oppression, and/or undue burden and expense. This topic is a mere fishing expedition that images upon the privacy rights of nonparties and is not proportional to the needs of the case as required by Rule 56.01(b)(1).

40.     *Specific details for any report(s) made regarding the Incident made by you, Ms. Dawn Sims, or another of your employees, agents, or representatives (including but not limited to police

reports, internal reports, company policies and or operating procedures, and the identity and contact information of the individual creating the report or having access to same).

**RESPONSE: See MACO256-259 (previously produced).**

41.    *Specific details regarding any changes made to your policies and procedures following the Incident to mitigate the risk of similar incidents in the future.

**RESPONSE:**

42.    *Specific details regarding actions taken to verify the apartment units at Summerville Estates are inspected and meet the standards set forth in your company's policies and procedures.

**RESPONSE: Objection to the extent this duplicated Topic 4 and seeks copies of all quarterly inspection reports. Topic 4 objection incorporated herein. See also Maco's and Summersville's Objections to Plaintiffs' 1st Supplemental Request for Production # 2 not yet ruled upon by the Court encompassing the same request for documents.**

43.    *This Defendant's knowledge of any statements/reports made by tenants (or former tenants) of Summersville Estates to your agents/representatives of Ms. Dawn Sims' purported misconduct or failure to complete her job duties as property manager or maintenance personnel.

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

**It lacks <u>relevant</u> subject matter limitations and time limitations to the extent it seeks post-incident statements/reports that would not place Defendants on notice in advance of this incident; and thus, not make the claims more or less likely.**

44.    *This Defendant's knowledge of any agreement(s) with a governmental entity in effect at the time of the Incident regarding local and federal management practices regarding safety, inspections, and employment qualifications that Summerville Estates is required to adhere to for Section 8 Housing.

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4). S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985). Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing.**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). The**

12

**information and documents are not reasonably calculated to lead to the discovery of admissible evidence. This is a negligence claim by Decedent's beneficiaries, not breach of contract claim.**

**See Maco's and Summersville's Objections to Plaintiffs' 2nd Supplemental Request for Production # 1, and Maco's and Summersville's Objections to Plaintiffs' 3rd Supplemental Request for Production # 2 and 3, not yet ruled upon by the Court encompassing the same request for documents.**

45.     *This Defendant's corporate documents from 2018 through the present date relating to your management and/or ownership of the Summersville Estates property.

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4). S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985). Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing, considering the vague phrase "corporate documents." *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

46.     *All training materials, including but not limited to manuals, course materials, videos, and training software, you require property managers and maintenance personnel to participate in or study before beginning on-the-job employment.

**RESPONSE:**

47.     The date on which the defendant had a reasonable factual basis and belief that litigation would result or be brought after the incident.

**RESPONSE:**

48.     *Details of capital improvements and the amounts budgeted for capital improvements between 2017 and 2022, including fire Safety.

**RESPONSE: Objection. Said topic and request for documents is overly broad.**

13

EXHIBIT A - STATE COURT FILE

EXHIBIT 2

**First, it does not "describe with reasonable particularity" the topic or documents as required by Missouri Supreme Court Rule 58.01 and 57.03(b)(4). S*ee also State ex rel Wilson v. Copeland*, 685 S.W, 2d, 252 (Mo. S.D App. 1985). Defendant is unable to discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992).**

**Second, it lacks <u>relevant</u> subject matter limitations and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in this case. *See State ex rel. Plank v. Koehr,* 831 S.W.2d 926, 929 (Mo. 1992). There is no place limitation. And, most if not all improvements made by Defendants over a 5-year period do not make it more or less likely that Defendant's committed the alleged negligence claimed in the pleadings, and at best, would be significantly tangential. Moreover, Plaintiffs have already included a more narrow, similar topic #24.**

**And lastly, the time and expense associated with preparing for such topic and producing such documents is overly burdensome, requiring significant time and expense that is not proportional to the needs of the case as required by Rule 56.01(b)(1).**

The * next to a numbered topic means the representative on a particular topic is commanded to bring documents which pertain too and are logically related to that numbered topic, so long as they are not privileged or otherwise not subject to production, 30 days after service of the request, at the Law office of Klar Isak and Stenger during normal business hours.

**Investigation and further understanding of the topic/request for production scope is continuing. Defendant reserves the right to Defendant expressly reserves the right to modify, supplement, or amend any or all of its responses if necessary or appropriate and/or in accordance with any court order.**

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Craig R. Klotz          #58850
Marie F. Pudlowski   #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

14

EXHIBIT 2

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the     day of December 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Richard E. "Ted" Hanson
Klar, Izsak & Stenger, L.L.C.
1125 Olivette Executive Parkway
St. Louis, MO 63132
bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com
*Attorneys for Plaintiffs*                                                      /s/        MARIE        F. PUDLOWSKI

15

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,             )
and ERIC MEIER,                )
                                     )
      Plaintiffs,             )
                                     )
v.                            )      Cause No.     21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,     )
and SUMMERSVILLE ESTATES, L.P.,  )
                                   )
      Defendants.          )

## DEFENDANTS' MOTION FOR APPOINTMENT OF A SPECIAL MASTER

COMES NOW, Defendants Maco Management Co. Inc. and Summersville Estates, LP., by and through counsel, Childress Ahlheim Cary LLC, and in support of their Motion for Appointment of Special Master:

1. Plaintiffs filed suit against Defendants for general negligence via respondeat superior and negligent hiring and supervision. *See* 1st. Am. Pet. All counts stem from a single fire on June 27, 2021 within a single apartment unit rented by Decedent, and owned and managed by Defendants. *See* 1st. Am. Pet.

2. Written discovery continues to be exchanged and depositions of party and fact witnesses continue to be set. No expert disclosures have occurred. No expert depositions have occurred.

3. Plaintiffs and Defendants currently have numerous discovery disputes, some with corresponding motions filed and some with corresponding motions expected to be filed. *See* Case Pleadings.

4. Both parties have spent significant time and expense corresponding and responding to these disputes with no resolution in sight. The Court has already taken significant time and will need to reserve additional time to make orders related to such disputes.

EXHIBIT A - STATE COURT FILE

5. Given the parties have been unable to resolve these discovery disputes and given such disputes continue to grow (and will likely grow more as more deposition and requests for documents continue to occur), Defendants file this motion asking the Court to appoint a Special Master pursuant to Missouri Civil Rule 68.01 to handle all discovery disputes. Defendants further request the Court choose this Special Master and order costs split evenly between parties as further incentive to both parties to cooperate and resolve such disputes in a reasonable manner.

WHEREFORE, Defendants pray this Court grant Defendants' Motion to Appoint a Special Master, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim    #50853
Craig R. Klotz    #58850
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 20th day of December 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/    MARIE F. PUDLOWSKI

2

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.     21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

COME NOW Defendants, by and through counsel, and state that Defendant Maco Management Co., Inc.'s Objections Plaintiff's Third Supplemental Request for Production Defendant Summersville Estate's Objections to Plaintiffs' Third Supplemental Request for Production have been served on all counsel of record via electronic mail on this 20th day December 2022 to all counsel of record.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Craig R. Klotz          #58850
Marie F. Pudlowski      #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

1

Electronically Filed - Texas - December 20, 2022 - 12:47 PM

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 20th day of December 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/      MARIE F. PUDLOWSKI

2

Electronically Filed - Texas - December 21, 2022 - 05:41 PM

# IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

JENNIFER BUMETER, and )
ERIC MEIER, )
)  Cause No.:    21TE-CC00360
)
     Plaintiffs, )
v. )
)
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
)
     Defendants. )

## NOTICE OF HEARING

PLEASE TAKE NOTICE that Plaintiffs Jennifer Bumeter and Eric Meier will call for

hearing their **Motion for Leave to File Second Amended Petition** on **December 29, 2022, at**

**1:00 P.M.** in the Circuit Court of Texas County.

Dated this 21st day of December, 2022.


Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.


By:    /s/ Brandon J. Klar
     BRANDON J. KLAR     #72884
     RICHARD E. HANSON     #69589
     *Attorney for Plaintiffs*
     1125 Olivette Executive Parkway
     Suite 120
     St. Louis, Missouri 63132
     Tel:   (314) 863-1117
     Fax:   (314) 863-1118
     Email: bjklar@lawsaintlouis.com
           thanson@lawsaintlouis.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this 21ˢᵗ day of December, 2022, a true and correct copy of the foregoing was served via the court's electronic filing system to all parties of record.

/s/ Brandon J. Klar

**IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI**

JENNIFER BUMETER, and )
ERIC MEIER, )
         )    Cause No.:     21TE-CC00360
         )
     Plaintiffs, )
v. )
         )
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
         )
     Defendants. )

**MEMORANDUM**

COME NOW Plaintiffs, Jennifer Bumeter and Eric Meier, by and through undersigned counsel, and for their Memorandum regarding a good faith effort to resolve discovery disputes, state as follows:

1. Plaintiffs' counsel supplemented Plaintiffs' Requests for Production on multiple occasions to address Defendants' objections on grounds that such requests were overbroad, vague, ambiguous, and irrelevant.

    a. On August 26th, 2022, Plaintiffs filed their Fist Supplemental Requests for Production of Documents directed at Defendants. Shortly thereafter, on September 9, 2022, Plaintiffs' counsel sent Defendants a Golden Rule letter outlining the relevance and discoverability of the requested documents.

    b. On October 24th, 2022, Plaintiffs filed their Second Supplemental Requests for Production of Documents directed to Defendants.

    c. On December 5th, 2022, Plaintiffs filed their Third Supplemental Requests for Production of Documents directed to Defendants.

    d. On December 16th, 2022, Plaintiff filed their Fourth Supplemental Requests for Production of Documents directed to Defendants.

1

2. Plaintiffs' counsel has met with Defendants' counsel by phone and email several times attempting to resolve the ongoing discovery disputes.

3. On December 9th, 2022, Plaintiffs' counsel informed Defendants' counsel of Plaintiffs' intent to **withdraw** the following in a good faith effort to resolve the existing discovery disputes:

   a. Plaintiffs' Motion regarding Defendants' refusal to appoint a corporate representative(s), file July 27, 2022;

   b. Plaintiffs' Motion regarding Defendants' failure to follow this Court's scheduling order, filed October 25,2022; and

   c. Plaintiffs' Application for Attorney's fees, filed October 27, 2022.

4. On December 16, 2022, Plaintiffs filed their First Supplemental Answers to Defendants Revised Written Interrogatories, designating Plaintiffs' retained expert.

5. On that same date, Plaintiffs filed Notices of Deposition for Defendants' Corporate Representative which included designated topics and documents. Some such designations restated or reframed discovery requests which the Defendants previously objected to. This was done to eliminate the need for Defendants' previously stated objections.

6. On December 20, 2022, Plaintiff's counsel received Defendants' objections to the topics/documents designated by Plaintiff. These objections are to be taken up at the December 29, 2022 hearing, along with various motions filed by the Defendants. All other discovery motions urged by Plaintiffs will be reset at a later date, if necessary.

Electronically Filed - Texas - December 21, 2022 - 04:57 PM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar

    BRANDON J. KLAR    #72884
    RICHARD E. HANSON    #69589
    *Attorneys for Plaintiffs*
    1125 Olivette Executive Parkway
    Suite 120
    St. Louis, Missouri, 63132
    Phone: (314) 863-1117
    Fax:    (314) 863-1118
    Email: bjklar@lawsaintlouis.com
           thanson@lawsaintlouis.com


CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of December, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.


/s/ Brandon J. Klar

3

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| And SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO CORPORATE
REPRESENTATIVE TOPICS FILED DECEMBER 20, 2022**

COME NOW Plaintiffs, Jennifer Bumeter and Eric Meier, by and through counsel, for their response to Defendants Maco Management Co. Inc. and Summersville Estates, L.P.'s objections, and state as follows:

**Plaintiffs' Response to General Objections:**

Missouri courts have held that blanket assertions are insufficient to invoke protection. *State ex rel*. *Ford Motor Co v. Westbroke,* 151 S.W.3d 364, 367 (MO. 2004). The Defendants assert four general objections. None of these are proper. Defendants generally object to the extent any such topic seeks the individual with first-hand, personal knowledge and recollection of the topic. This is a meaningless objection. Pursuant to Missouri Supreme Court Rule 57.03(b)(4), the corporate representative shall "testify as to matters known or reasonably available to the organization." This is customary for the deposition of any corporate representative. Defendants' general objection to the Exhibit A Topics is a step in a calculated course of obstruction to further delay the discovery process and trial.

Exhibit A

**Plaintiffs' Response to Topic Objections:**

Defendants Maco and Summersville use two (2) boilerplate objections for all of their objections to Plaintiffs' Corporate Representative topics in an effort to establish Plaintiffs' topics as overly broad. Such boilerplate objections being: (1) not described with reasonable particularity; and (2) lacks relevant subject matter limitations and time limitations. Further, Defendants consistently use the blanket objection that the topics are overly burdensome. All of Defendants' objections are general, copy-paste objections with no other purpose than to delay discovery and cause additional fees. These objections come following objections to several supplemental requests for production. The Supreme Court operating rules recognize that deliberate and

Page **1** of **12**

calculated courses of obstruction are inappropriate, and therefore, allow the court to impose sanctions, even severe sanctions, when there is an unreasonable lack of cooperation in discovery.

Missouri Supreme Court Rule 56.01(b) allows for discovery of any matter, not privileged, that is relevant to the subject matter in the pending action. Defendants rely on *State ex rel. Plank v. Koehr,* as improper justification for their objections. Defendants correctly state the rule for determining if a topic is overbroad, that "the topic is relevant to the case and whether the matters to be covered are stated with sufficient clarity so that the deponent is able to discern the times, places, persons, objects, or events to be covered." *State ex rel. Plank v. Koehr,* 931 S.W.2d 926, 929 (Mo. 1992). However, this rule is largely misapplied to the topics provided in Exhibit A for both Maco Management and Summersville Estates.

2.  *[1]Details relating to the job duties of Summersville Estates' Property Manager in relation to Summerville Estates' tenants since September 2018, including any contracts between the two.

**PLAINTIFFS' RESPONSE:**

This topic clearly allows deponent to discern the times, places, persons, objects, or events to be covered at the deposition. Topic No. 2 describes with reasonable particularity the job duties of the Property Manager at Summersville Estates with respect to the Summersville Estates' tenants since September 2018, and deponent is to provide documents outlining these duties, contractual or otherwise.

Defendants claim Topic No. 2 lacks relevant subject matter and time limitations. Topic No. 2 explicitly limits the subject matter to the property manager's job duties in relation to tenants of Summersville Estates, and Topic 2 further limits the time to September 2018 and beyond. Plaintiffs allege negligent management in their Petition. Further, Plaintiffs amended their petition to include negligence per se in light of Maco Management's statutory duty to have properly located and operating smoke detectors in each apartment unit. Information regarding the property manager's duties owed to the tenants for the past five (5) years is relevant and properly time limited. Further, the timeframe imposed by Plaintiffs' request is the same as other requests, such as Topic No. 3, which Defendants do not object to. Therefore, the timeframe objection is arbitrary and just used to further delay and increase costs.

4.  *Specific details regarding the performance of all inspections and the completion of all inspection reports for all units and buildings (including all documents made in conjunction with such reports) at Summersville Estates since September 2018.

---

[1] The * next to a numbered topic means the representative on a particular topic is commanded to bring documents which pertain to and are logically related to that numbered topic, so long as they are not privileged or otherwise not subject to production, 30 days after service of the request, at the law office of Klar, Izsak, and Stenger during normal business hours

Page **2** of **12**

**PLAINTIFFS' RESPONSE:**

As stated, Plaintiffs allege negligent management and supervision in their Petition. Further, Plaintiffs amended their petition to include negligence per se in light of Maco Management's statutory duty to have properly located and operating smoke detectors in each apartment unit. This topic is clearly limited to relevant subject matter and time. Discovery of the manner of inspections and their subsequent inspection reports for the past five years are crucial to establishing whether or not Defendants committed negligence as described in the pleadings. This information sought is not tangential, but central to the facts of this case. The Plaintiffs have recently discovered that the Defendants were under legal obligations and duties imposed by statute, 7 CFR § 3560.103(xx), to have properly located and operating smoke alarms in all apartment units.

Further, Defendants reference Maco and Summerville's Objections to Plaintiffs' 1st Supplemental Request for Production #2 not yet ruled upon by the Court encompassing the same request for documents. There, Defendants objected on grounds that the request was overly broad, seeks documents protected from disclosure pursuant to the work-product doctrine, the attorney-client privilege, and the insurer-insured privilege.

Missouri courts have held that blanket assertions of work product, attorney-client privilege, and insurer-insured privilege are insufficient to invoke protection. *State ex rel. Ford Motor Co v. Westbroke,* 151 S.W.3d 364, 367 (MO. 2004). Defendants improperly rely on *State ex rel. Atchison, Topeka and Santa Fe Ry. Co. v. O'Malley* to justify their objection. However, the Supreme Court in that case held that the "party challenging privilege must have "sufficient information to assess whether the claimed privilege is applicable."" *Id.* This is in line with Rule 57.01(b) where "if a privilege of the work product doctrine is asserted as a reason for withholding information… the objecting party shall state information that will permit others to assess the applicability of the privilege or work product doctrine." Defendants did not provide any such information. In fact, in order to invoke protection, "the party opposing discovery 'must establish, via competent evidence, that the materials sought to be protected (1) are documents or tangible things, (2) were prepared in anticipation of litigation or for trial, and (3) were prepared by or for a party or a representative of that party." *Id.* quoting *Raytheon Aircraft Co. v. United States Army Corps of Eng'rs,* 183 F. Supp. 2d 1280, 1287-88 (D. Kan. 2001). Competent evidence may include a privilege log and affidavits from counsel. While Missouri courts do not require a privilege log be submitted, competent evidence is still required. *State ex rel. Collom v. Fulton,* 528 S.W.3d 42, 48 (Mo. App. 2017). Here, Defendants provide no competent evidence required to invoke privilege. Therefore, Defendants' objection is a mere blanket assertion insufficient to invoke any protection. It is well settled in Missouri that while a privileged communication may be a shield of defense, it cannot be used as "a sword or weapon of offense to enable persons to carry out improper conduct." *State ex rel. Coster v. Cain,* 383 S.W.3d 105, 121 (Mo. App. 2012).

5.  *Details regarding the physical state, type, model, age and operating condition of all smoke detectors/alarms in all units at Summersville Estates since September 2018. Specifically, those documents, work orders, replacement of smoke detectors, replacement of batteries, and the "fire stop and smoke alarm log" referred to in the deposition of Dawn Sims.

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

**PLAINTIFFS' RESPONSE:**

Again, Plaintiffs allege negligent management and supervision in its' Petition. Further, Plaintiffs amended their petition to include negligence per se in light of Maco Management's statutory duty to have properly located and operating smoke detectors in each apartment unit. This topic is clearly limited to relevant subject matter and time. Discovery of the operating condition of all smoke detectors/alarms for the past five years are crucial to establishing whether or not Defendants committed negligence as described in the pleadings. This information sought is not tangential, but central to the facts of this case.

Further, Defendants reference Maco and Summerville's Objections to Plaintiffs' 1st Supplemental Request for Production #3 not yet ruled upon by the Court encompassing the same request for documents. Plaintiff's 1st Supplemental Request for Production #3 asks for "All photographs, videos or other recordings in your possession which relate to the Incident." Defendants objected on the grounds that said request was overly broad as drafted and calls for documents protected from disclosure pursuant to the work product doctrine, the attorney-client privilege, and the insurer-insured privilege. Given Defendants' reference has nothing to do with Topic No. 5, it is clear that Defendants are simply copy-pasting non-sense objections to further delay discovery and trial. This is further evidenced by the fact that Plaintiffs' Topic No. 38 asks for "Defendant's knowledge of any witness, statements, photographs, videos, or movies taken by individuals present at the scene within sixty (60) minutes of the Incident." Topic No. 38 is substantially similar to Plaintiff's 1st Supplemental Request for Production #3, yet Defendant did not respond to this topic with any call for privilege.

Further, like the privilege claimed for Topic No. 4, the same faulty arguments exist here. Defendants still provide no competent evidence required to invoke privilege. Therefore, Defendants' objection is a mere blanket assertion insufficient to invoke any protection. It is well settled in Missouri that while a privileged communication may be a shield of defense, it cannot be used as "a sword or weapon of offense to enable persons to carry out improper conduct." *State ex rel. Coster v. Cain,* 383 S.W.3d 105, 121 (Mo. App. 2012).

9.  *Information relating to the apartment fire at issue in this litigation (identified as the "Incident" in prior pleadings).

**PLAINTIFFS' RESPONSE:**

The incident has been previously identified as the fire that occurred on or about June 27, 2021, that resulted in the death of death of the decedent. It is clear the aforementioned topic is referring to the apartment fire on or about June 27, 2021, that occurred at Summersville Estates. Information relating to this incident clearly allows deponent to discern the times, places, persons, objects, or events to be covered as well as allow deponent to provide documents without speculation or guessing. Defendants claim this topic is not described with "reasonable particularity" is just another objection in a long line of delay tactics and tools.

11. Details regarding the relationship maintained between any employee of Maco Management

Co., Inc., any employee of Summersville Estates L.P., and/or any member(s) of the Summersville Police Department.

**PLAINTIFFS' RESPONSE:**

Defendants claim this topic is for the purpose of harassment and place Maco employees in a bad light. This is not the case. The deposition of Dawn Sims revealed she herself had a relevant connection to members of the Summersville Police Department. Discovery of this subject matter is relevant and material to the discovery of admissible information. Such information could reveal facts directly related to Defendants' alleged negligence.

16. *This Defendant's knowledge of issues with fire alarm or smoke detector batteries, including their replacement in any unit managed by Maco Management and located at Summerville Estates which are not documented in work order, incident reports, the "fire stop and smoke alarm log" identified by Dawn Sims, or police reports, if any.

**PLAINTIFFS' RESPONSE:**

Like all other topics, this topic is properly limited to a relevant subject given Dawn Sims' alleged failure to properly inspect the fire alarm and smoke detectors at Summersville Estates is a matter central to this case.

22. This Defendant's knowledge of inspections made by a third party or governmental agency which inspected the Summersville Estates property for any safety reason or a code violation which Defendant or Summersville Estates, L.P. was supposed to meet or be incompliance with local state or federal laws and regulations.

**PLAINTIFFS' RESPONSE:**

Defendants claim this topic is not relevant because third-party inspections for potential non-fire related violations, and fire related violations do not make it more or less likely that Defendants committed the alleged negligence and therefore, would be tangential at best. Plaintiffs allege negligent management and negligent hiring in their petition. Further, Plaintiffs amended their petition to include negligence per se in light of Maco Management's statutory duty to have properly located and operating smoke detectors in each apartment unit. Discovery of third-party inspections due to safety reasons or a code violation is directly related to how Defendants manages their property. Information pertaining to Defendants' compliance or non-compliance is central to discovering facts regarding the standard of care Defendants allegedly deviated from.

25. *Any discussions, meetings, electronic messages or conversations between Maco Management employees and their supervisors regarding requests for service or maintenance concerning smoke detectors or fire alarms.

**PLAINTIFFS' RESPONSE:**
Plaintiffs clearly designate with reasonable particularity the topic and documents to be covered at the deposition. No speculation or guessing is required to know Plaintiffs are seeking information

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

and documents related to communications between Maco Management employees and their supervisors regarding requests for service or maintenance of smoke detectors or fire alarms. Given the Incident and alleged negligence takes place at Summersville Estates, it is unreasonable to assume or speculate that Plaintiffs are concerned with Maco Management's employees anywhere else.

Plaintiff concedes there could have been a more concrete limitation on the time frame. Therefore, we pray that Defendants produce said documents or communications from September 2018 as asked for, in all of the topics requested. However, Defendants did not object to Topic No. 29 calling for *This Defendant's knowledge of any management agreement or other written contract between itself and any other defendant to this action, or any other owner of Summerville Estates." There is no time frame limitation set to this topic, yet Defendant did not object. It is clear that Defendant is simply arbitrarily copy-pasting objections to topics for no other reason than to delay the inevitable discovery of this information.

27. *Defendant's knowledge of all efforts taken by Defendant to advance the safety of Summerville Estates residents and guests from September 1, 2018 through July 1, 2021.

**PLAINTIFFS' RESPONSE:**

Topic No. 26 clearly outlines the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation and guessing. Defendants claim the phrase "advance the safety" is ambiguous. Blanket objections that an interrogatory is "vague" are meaningless without explanation of the specific and particular ways in which the request is vague. Taking the plain meaning of this phrase, it is clear Defendants' safety protocols, actions, and reports are being sought. Defendants intentionally deem common sense words and phrases as "vague" to object as a tactic to delay their response. Defendants have utilized this tactic every step of the discovery process as a deliberate and calculated course of obstruction.

30. *This Defendant's knowledge of insurance policies insuring this Defendant against loss, damage, or liability arising from events such as the Incident set forth in Plaintiffs' Petition which were in effect during June 2021, including commercial general liability policies, indemnity agreements and umbrella policies.

**PLAINTIFFS' RESPONSE:**

Defendants claim this topic is outside the scope of a corporate representative's knowledge as it calls for a legal contention and opinion regarding insurance coverage. Like interrogatories under Rule 57.01, a topic otherwise proper is not necessarily objectionable merely because the answer involves an opinion or contention that relates to fact of the application of law to fact. Further, this topic is not calling for said legal contention or opinion as Defendants claim. Instead, it is asking for mere knowledge of relevant policies Maco Management has in place against loss, damage, or liability arising from events such as the Incident. This topic is not calling for an opinion specific to any such liability arising specifically from this Incident.

EXHIBIT A – STATE COURT FILE

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

32. *This Defendant's meetings, discussions, or conferences with tenants concerning fire safety, whether initiated by Maco Management, a fire department, or a governmental body.

**PLAINTIFFS' RESPONSE:**

Defendants yet again use the blanket "reasonable particularity" objection for this topic. It is clear Plaintiff is seeking information and documents related to communications between Maco Management and tenants regarding fire safety. Given the Incident and alleged negligence takes place at Summersville Estates, it is unreasonable to assume or speculate that Plaintiffs are concerned with Maco Management's employees anywhere else.

Further, Plaintiffs concede there could have been a more concrete limitation on the time frame. Therefore, Plaintiffs pray that Defendants produce said documents or communications from September 2018 as asked for, in all of the topics requested. However, Defendants did not object to Topic No. 29 calling for *This Defendant's knowledge of any management agreement or other written contract between itself and any other defendant to this action, or any other owner of Summerville Estates." There is no time frame limitation set to this topic, yet Defendant did not object. It is clear that Defendants are simply arbitrarily copy-pasting objections to topics for no other reason than to delay the inevitable discovery of this information.

33. *Maco Managements' qualifications as a property management company under the rules established by the United States Government, Fannie-Mae, or Freddie Mac loan programs for Section 8 Housing.

**PLAINTIFFS' RESPONSE:**

Defendants yet again use the blanket "reasonable particularity" objection for this topic. It is clear Plaintiff is seeking information and documents pertaining to the standards set out by the United States Government, Fannie-Mae, or Freddie Mac loan programs for Section 8 Housing by which Maco Management must abide. Defendants claim they are required to speculate and guess as to what this topic calls for given these alleged rules have not been plead, listed, or provided.

Further, Plaintiffs concede there could have been a more concrete limitation on the time frame. Therefore, Plaintiffs pray that Defendants produce said documents or communications from September 2018 as asked for, in all of the topics requested. However, Defendants did not object to Topic No. 29 calling for *This Defendant's knowledge of any management agreement or other written contract between itself and any other defendant to this action, or any other owner of Summerville Estates." There is no time frame limitation set to this topic, yet Defendant did not object. It is clear that Defendant is simply arbitrarily copy-pasting objections to topics for no other reason than to delay the inevitable discovery of this information.

Finally, Defendants claim this information is not reasonably calculated to lead to the discovery of admissible evidence because this is "a negligence claim by Decedent's beneficiaries, not a breach

EXHIBIT A - STATE COURT FILE

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

of contract claim." Plaintiffs allege negligent management and negligent hiring in their petition. Also, Plaintiffs amended their petition to include negligence per se in light of Maco Management's statutory duty to have properly located and operating smoke detectors in each apartment unit. Discovery of Maco Management and Summerville Estates' qualifications regarding government and loan programs for Section 8 Housing is directly related to how Defendants manages their property. Information pertaining to Defendants' compliance or non-compliance is central to discovering facts regarding the standard of care Defendants allegedly deviated from.

34. *Specific details regarding the hiring and training process (including any and all procedures and policies followed to onboard a new employee).

**PLAINTIFFS' RESPONSE:**

Defendants claim this topic is overbroad because they are unable to discern the times, places, objects, persons, or events to be covered at deposition or located in company documents without guessing because at the time of this incident, Maco employed people for numerous different jobs. It is clear Defendants are just attempting to delay further. Speculation and guesswork are not required to understand Plaintiffs intend Defendants to provide the procedures and policies for onboarding a new employee. These are generally a set of standardized procedures and policies applicable to any employee.

Further, Defendants do not respond, nor object, to Topic No. 46 which calls for *All training materials, including but not limited to manuals, course materials, videos, and training software, you require property managers and maintenance personnel to participate in or study before beginning on-the-job employment. There is no rational reason that Defendants can understand this topic but not Topic 34. This just further evidences the fact that Defendants' objections are arbitrary and their only purpose is to delay the inevitable discovery of this information.

36. All facts relating to all employees responsible for conducting safety inspections at Summersville Estates, including the frequency inspections were performed in the five (5) year period preceding the Incident.

**PLAINTIFFS' RESPONSE:**

Defendants claim the phrase "all facts relating to all employees responsible for conducting safety inspections" is vague and ambiguous, and therefore, Defendants cannot ascertain with reasonable particularity what topics or company documents are being sought without speculation or guesswork. Again, blanket objections that an interrogatory is "vague" is meaningless without explanation of the specific and particular ways in which the request is vague. Taking the plain meaning of this phrase, it is clear information regarding the frequency, the method, reports, or otherwise of employees responsible for conducting the safety inspections at Summersville are being sought. Defendants intentionally deem common sense words and phrases as "vague" to object as a tactic to delay their response. Defendants have utilized this tactic every step of the discovery process as a calculated course of obstruction.

Further, Defendants simply copy and paste prior objections that this topic lacks relevant subject matter and time limitations. Facts relating directly to the employees responsible for conducting safety inspections at Summersville are central to the alleged negligence plead in Plaintiffs petition.

39. *All contact information for tenants and former tenants of Summersville Estates in the past five (5) years.(2017- 2022)

**PLAINTIFFS' RESPONSE:**

Defendants again copy and paste the objection that this topic lacks relevant subject matter and time limitations. Contact information for tenants and former tenants are relevant subject matter given the alleged negligence resulted in the death of a tenant at Summersville Estates. Further, Plaintiffs placed a relevant time limitation on the request. The time limitation is for five years, encompassing before and after the Incident in order to cover people who may have since moved and to potentially discover any facts related to changes made to Defendants' safety protocols.

Defendants claim this topic is for the purpose of annoyance, embarrassment, oppression, and/or undue burden and expense, and is a mere fishing expedition. This is not the case. Plaintiff has already contacted a few tenants and former tenants of Summersville Estates who have provided information directly related to the performance of quarterly inspections as required by Maco Management. The contact info of all tenants and former tenants of Summersville Estates in the past five years could lead to the discovery of facts central to Plaintiffs' case. Defendants are in a better position to provide this information given these are their tenants/former tenants.

42. *Specific details regarding actions taken to verify the apartment units at Summerville Estates are inspected and meet the standards set forth in your company's policies and procedures.

**PLAINTIFFS' RESPONSE:**

Defendants object on the grounds Topic No. 42 duplicates Topic No. 4. This topic expands beyond information sought in Topic No. 4 as it includes any actions taken beyond the quarterly inspection reports. Plaintiffs incorporate their response to Defendants' objection to Topic No. 4 herein.

43. *This Defendant's knowledge of any statements/reports made by tenants (or former tenants) of Summersville Estates to your agents/representatives of Ms. Dawn Sims' purported misconduct or failure to complete her job duties as property manager or maintenance personnel.

**PLAINTIFFS' RESPONSE:**

Defendants object that Topic No. 43 lacks relevant subject matter and time limitations to the extent it seeks post-incident statements/reports that would not place Defendants on notice in advance of this incident. This topic clearly has the requisite subject matter and time limitations. It is limited to the time frame that Ms. Dawn Sims began her employment and beyond. Further, the subject

matter is clearly limited to instances where tenants or former tenants made statements or reports directly to Maco Management/Summersville Estates regarding Ms. Sims' compliance with her job duties as property manager or maintenance personnel. Defendants' objection is baseless.

44. *This Defendant's knowledge of any agreement(s) with a governmental entity in effect at the time of the Incident regarding local and federal management practices regarding safety, inspections, and employment qualifications that Summerville Estates is required to adhere to for Section 8 Housing.

**PLAINTIFFS' RESPONSE:**

Defendants copy the same objection from Topic No. 33. It is clear Defendants' representative is asked to discuss and provide documents pertaining to its agreement(s) with a governmental entity in effect at the time of the Incident. These agreements are specifically narrowed down to those regarding local and federal practices for safety, inspections, and employment qualifications required for Summersville Estates to be compliant with Section 8 Housing standards. Zero guesswork or speculation is required to understand this topic.

Further, as stated, this topic is reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs allege negligent supervision and negligent hiring in their petition. Plaintiffs also amended their petition to include negligence per se in light of Maco Management's statutory duty to have properly located and operating smoke detectors in each apartment unit. Discovery of Maco Management and Summerville Estates' qualifications and adherence to local and federal government regulations for Section 8 Housing is directly related to how Defendants manage their property. Information pertaining to Defendants' compliance or non-compliance is central to discovering facts regarding the standard of care Defendants allegedly deviated from.

Defendants further object on the grounds that Defendants' objections to Plaintiffs' 2nd Supplemental Request for Production #1 and Plaintiffs' 3rd Supplemental Request for Production #2 and 3 have not yet been ruled upon by the Court and encompass the same documents. Plaintiffs have clearly narrowed the subject matter requested in light of Defendants' objections to Plaintiffs' 2nd Supplemental Request for Production #1. Further, Plaintiffs' 3rd Supplemental Request for Production #2 and #3 which Defendants reference call for "all written statements, memoranda, notes or other communications which relate to the Incident" and "all photographs, videos, or other recordings in your possession which related to the Incident." These requests have nothing to do with the current topic at issue. Given Defendants' reference has nothing to do with Topic No. 44, it is clear that Defendants are simply copy-pasting non-sense objections to further delay discovery and trial. This is further evidenced by the fact that Plaintiffs' Topic No. 38 asks for "Defendant's knowledge of any witness, statements, photographs, videos, or movies taken by individuals present at the scene within sixty (60) minutes of the Incident," yet Defendants did not respond to this topic with any objection for privilege.

45. *This Defendant's corporate documents from 2018 through the present date relating to your management and/or ownership of the Summersville Estates property.

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

**PLAINTIFFS' RESPONSE:**

Defendants claim they cannot ascertain with reasonable particularity what topics or documents are to be produced at deposition because the phrase "corporate documents" is vague. Again, blanket objections that an interrogatory is "vague" is meaningless without explanation of the specific and particular ways in which the request is vague. Taking the plain meaning of this phrase, it is clear Defendants' safety protocols, actions, and reports are being sought. Defendants intentionally deem common sense words and phrases as "vague" in order to object as a tactic to delay their response. Defendants have utilized this tactic every step of the discovery process.

Further, Defendants claim said topic lacks relevant subject matter and time limitations, making the majority of the information and documents sought immaterial and irrelevant to any issue in the case. This is not the case. Plaintiffs specifically limited this request to corporate documents, beginning in 2018 to present date, related to Maco Management's ownership/management of the Summersville Estates property. This information is likely to lead to the discovery of admissible evidence as required by the Missouri Rules of Civil Procedure due to the fact Maco Management's management of the Summersville Estates property is a genuine issue of material fact in this case.

48. *Details of capital improvements and the amounts budgeted for capital improvements between 2017 and 2022, including Fire Safety.

**PLAINTIFFS' RESPONSE:**

This is simply another copy-paste objection. Defendants can clearly discern the times, places, persons, objects, or events to be covered at the deposition or located in company documents without speculation or guessing. Plaintiffs purposefully drafted said topic to limit discovery to a relevant time frame. Plaintiffs further limited the subject matter to capital investments and amounts budgeted primarily for fire safety which includes fire alarms and smoke detectors. This information is highly relevant to the issues in this case. Further, Defendants claim this topic is similar to Topic No. 24. Defendants did not object to Topic No. 24. Topic No. 24 call for *The maintenance budget, as well as measures in use to maintain the units, at Summersville Estates from September 2018 through July 2021, including budget items related to fire safety." These topics are different from those in Topic No. 24. Furthermore, even if these topics are substantially similar, then there should not be an objection to this topic when there is no objection to the other.

EXHIBIT A – STATE COURT FILE
Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 740 of 786

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
    BRANDON J. KLAR, #72884
    RICHARD E. HANSON, #69589
    *Attorneys for Plaintiff*
    1125 Olivette Executive Parkway
    Suite 120
    St. Louis, Missouri, 63132
    Phone: (314) 863-1117
    Fax:   (314) 863-1118
    Email: bjklar@lawsaintlouis.com
           thanson@lawsaintlouis.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of December 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/    BRANDON J. KLAR___

## IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

JENNIFER BUMETER, and ) 
ERIC MEIER, )
                           )   Cause No.:    21TE-CC00360
        Plaintiffs, )
v. )
                           )
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
                           )
        Defendants. )

## MOTION FOR LEAVE TO FILE SECOND AMENDED PETITION

COME NOW Plaintiffs, Jennifer Bumeter and Eric Meier, by and through undersigned counsel, and for their Motion for Leave to File Second Amended Petition, state as follows:

1.  Plaintiffs filed their Petition in this matter on November 9, 2021.

2.  Plaintiffs filed their First Amended Petition in this matter on May 17, 2022.

3.  Through the course of discovery, Plaintiffs uncovered additional information and evidence which requires them to amend their pleadings.

4.  Plaintiffs now request leave to file a Second Amended Petition, including such additional information and modifying their claims as necessary.

5.  A copy of Plaintiffs' Second Amended Petition is attached hereto as **Exhibit A**, to be filed *instanter*.

6.  No hardship or undue prejudice will result by this Court's granting of the instant Motion, as Plaintiffs have not acted in bad faith requesting leave to file the Second Amended Petition, and no prejudice will result to Defendants.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier move this Court to make and enter its Order, granting Plaintiffs' Motion for Leave to File Second Amended Petition,

EXHIBIT A - STATE COURT FILE

and for any such other and further relief as this Court deems just and equitable under the circumstances.

<div align="right">

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
    BRANDON J. KLAR    #72884
    RICHARD E. HANSON    #69589
    *Attorneys for Plaintiff*
    1125 Olivette Executive Parkway
    Suite 120
    St. Louis, Missouri, 63132
    Phone: (314) 863-1117
    Fax:    (314) 863-1118
    Email: bjklar@lawsaintlouis.com
          thanson@lawsaintlouis.com

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of December, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

<div align="right">

/s/ Brandon J. Klar

</div>

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI**

JENNIFER BUMETER,                    )
                                     )
and                                  )
                                     )
ERIC MEIER,                          )
                                     )     Cause No.:  21TE-CC00360
          Plaintiffs,                )
v.                                   )
                                     )
MACO MANAGEMENT CO., INC., and       )
                                     )
                                     )
SUMMERSVILLE ESTATES, L.P.           )
                                     )
          Defendants.                )
                                     )

**SECOND AMENDED PETITION
(WRONGFUL DEATH)**

COME NOW, Plaintiffs, JENNIFER BUMETER and ERIC MEIER (collectively, "Plaintiffs"), by and through the undersigned counsel, and for their claims against Defendant MACO MANAGEMENT CO., INC. and SUMMERSVILLE ESTATES, L.P. (collectively "Defendants"), state as follows:

**INTRODUCTION, PARTIES AND VENUE**

1.      Plaintiff Jennifer Bumeter is and was at all times relevant a resident of St. Charles County, Missouri.

2.      Plaintiff Eric Meier is and was at all times relevant a resident of St. Charles County, Missouri.

3.      Plaintiffs are the children and only class (1) beneficiaries of Robin Rose Fischer ("Decedent") pursuant to RSMo §537.080.

EXHIBIT A - STATE COURT FILE
Case 6:23-cv-03015-BCW   Document 1-1   Filed 01/12/23   Page 744 of 786

4.      Defendant Maco Management Co., Inc. ("Defendant Maco") is, and was at all times relevant, a professional real estate management company with offices located throughout the State of Missouri.

5.      Defendant Maco is responsible for overseeing and managing several low-income housing complexes in the state of Missouri, including the Summersville Estates, located in Summersville, Missouri ("Summersville Estates"), located in Texas County, Missouri.

6.      Defendant Summersville Estates, L.P. ("Defendant Summersville") is, and was at all times relevant, the property owner of Summersville Estates and the principal of Defendant Maco.

7.      Summersville Estates is a Section 515 rural multi-family housing rental apartment complex, subsidized by the United States Department of Agriculture, and is therefore bound to follow requirements, policies, and procedures set forth in 7 CFR § 3560.

8.      Defendant Maco vests several of the supervision duties and responsibilities for Summersville Estates in its property manager, Dawn Sims ("Ms. Sims"). Defendant Maco and Defendant Summersville have no factual or operational discernable separation as legal entities.

9.      Prior to her employment with Defendant Maco, Ms. Sims had no experience as a property manager or in any similar field.

10.     Decedent was a tenant of Summersville Estates from July 1, 2016 until her death on June 27, 2021.

11.     Decedent was, at all times relevant herein, disabled and required the ambulatory assistance of a cane or walker.

12.     The incident which resulted in Decedent's death ("Incident") took place at Summersville Estates and, as such, venue is proper in Texas County, Missouri.

EXHIBIT A - STATE COURT FILE

13.     On or about June 27, 2021, Decedent's neighbor at Summersville Estates alerted authorities to the presence of smoke in her own apartment.

14.     Members of both Summersville's Police Department and Fire and Rescue Department ("Emergency Departments") arrived at Summersville Estates and were unable to determine the origin of such smoke or the location of any possible fire.

15.     Incident reports from each of the Emergency Departments make absolutely no mention whatsoever of smoke detectors or any similar alarm being triggered from any apartment at Summersville Estates. One such report states that smoke detectors were present, but their power supply and operation could not be determined.

16.     Eventually, officers and fire fighters determined the origin of the fire as being Decedent's apartment unit.

17.     By the time a rescue could be attempted, Decedent had succumbed to the presence of smoke in her apartment unit.

18.     The Texas County coroner determined Decedent's cause of death was carbon monoxide poisoning due to smoke inhalation.

19.     Ms. Sims purportedly conducted an inspection of Decedent's apartment on June 15, 2021, and she reported that such inspection revealed working smoke alarms and clean firestops.

20.     Neither of the two (2) smoke detectors in Decedent's apartment were in place or in working condition at the time of the Incident, and Ms. Sims was aware of the same.

21.     Ms. Sims was aware, or should have been aware, of the facts set forth in paragraph 20 above prior to the Incident.

22.     The fire suppression devices in Decedent's apartment unit, that were provided by the Defendants, which remained in place following the Incident expired in October 2020.

23. Ms. Sims was aware, or should have been aware, of the facts set forth in paragraph 22 above prior to the Incident.

## COUNT I – NEGLIGENCE PER SE
**Against Defendant Maco**

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and for their cause of action for Negligence Per Se pursuant to 7 CFR § 3560 state as follows:

24. Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

25. During the Incident, on or about June 27, 2021, Decedent was not made aware of the presence of fire in her apartment by any smoke detector located in her apartment.

26. Decedent was provided no reasonable early warning as to the presence of such fire, and as a result, Decedent did not possess adequate time to extinguish said fire or to manage an escape from her apartment on her own.

27. Defendant Maco, by and through its agent, servant, and employee, Ms. Sims, was careless and negligent in the following respects, to wit:

a. Defendant failed to inspect, properly install, and/or maintain operable smoke detectors in Decedent's apartment unit at Summersville Estates;

b. Defendant Maco, by and through its agent, servant, and employee, Ms. Sims, failed to inspect, properly install, and/or maintain operable smoke detectors in Decedent's apartment unit at Summersville Estates in violation of 7 CFR § 3560.103(xx) which provides that low income housing projects, like Summersville Estates, "must have smoke alarms which are properly located according to local code and which operate properly", and is therefore negligent per se;

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

28.     Dawn Sims was, at all relevant times, an employee and agent of Defendant Maco. At all relevant times, Ms. Sims acted within the scope of her employment with Defendant Maco, and her acts and omissions are directly chargeable to her employer, Defendant Maco under state law pursuant to *respondeat superior*.

29.     Defendant's negligent actions as stated above violated 7 CFR § 3560.103(xx).

30.     Decedent is a member of the class of persons intended to be protected by 7 CFR § 3560.103(xx).

31.     The death of Decedent is an injury of the kind 7 CFR § 3560.103(xx) was designed to prevent.

32.     As a direct and proximate result of Defendant Maco's negligence as stated above, Decedent was forced to endure severe pain and suffering, as well as anxiety, mental distress, anguish, and ultimately death.

33.     As a further direct and proximate cause of the negligence of Defendant Maco as stated above, Plaintiffs have suffered immense loss in the passing of their mother, including but in no way limited to, loss her services, consortium, companionship, comfort, guidance, instruction, counsel, and support. Moreover, Decedent's death resulted in Plaintiffs' payment of expenses for her funeral and final disposition, as well as expenses for their own therapeutic treatment.

### COUNT II – WRONGFUL DEATH
**Against Defendant Maco**

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and for their cause of action for wrongful death pursuant to RSMo §537.080 state as follows:

34.     Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

EXHIBIT A - STATE COURT FILE

Case 6:23-cv-03015-BCW     Document 1-1     Filed 01/12/23     Page 748 of 786

35.     Plaintiffs are the son and daughter of Decedent and, as such, are the proper parties under Missouri's Wrongful Death Statute to bring this cause of action against Defendant Maco.

36.     Defendant Maco, by and through its agent, servant, and employee, Ms. Sims, owed a duty to Decedent to effectuate maintenance and repairs, properly inspect apartment units and generally ensure the safety of Defendant Maco's tenants.

37.     Defendant Maco, by and through its agent, servant, and employee, Ms. Sims, breached this duty and is guilty of one or more of the following acts of negligence by failing to adhere to the standards of due care, skill and practice ordinarily exercised by members of their profession under the same or similar circumstances, to-wit:

      c.  By negligently and carelessly managing a low-income housing complex without proper experience in such field;

      d.  By negligently and carelessly performing the duties of property manager at Summersville Estates;

      e.  By negligently and carelessly failing to undergo proper training required to maintain and supervise supervision of Summersville Estates;

      f.  By negligently and carelessly maintaining improper personal relationships with tenants, and others;

      g.  By negligently and carelessly failing to adhere to appropriate supervisory measures;

      h.  By negligently and carelessly failing to perform inspections of tenant apartment units;

      i.  By negligently and carelessly forging inspection reports which purportedly memorialize the performance of job duties;

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

j. By negligently and carelessly allowing smoke detectors, smoke alarms, and/or other fire suppression devices in tenant apartment units, including that of Decedent, to remain inoperable;

k. By negligently and carelessly failing to perform and measure up to the required standards of care required and observed by members of the same profession and in further particulars presently unknown to Plaintiffs but which are exceedingly likely to be disclosed upon proper discovery procedures during the course of litigation.

38. Dawn Sims was, at all relevant times, an employee and agent of Defendant Maco. At all relevant times, Ms. Sims acted within the scope of her employment with Defendant Maco, and her acts and omissions are directly chargeable to her employer, Defendant Maco under state law pursuant to *respondeat superior*.

39. As a direct and proximate result of Defendant Maco's negligence as stated above, Decedent was forced to endure severe pain and suffering, as well as anxiety, mental distress, anguish, and ultimately death.

40. As a further direct and proximate cause of the negligence of Defendant Maco as stated above, Plaintiffs have suffered immense loss in the passing of their mother, including but in no way limited to, loss her services, consortium, companionship, comfort, guidance, instruction, counsel, and support. Moreover, Decedent's death resulted in Plaintiffs' payment of expenses for her funeral and final disposition, as well as expenses for their own therapeutic treatment.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendant Maco, for the wrongful death of Robin Rose Fischer, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

### COUNT III – WRONGFUL DEATH
**Against Defendant Summersville**

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and for their cause of action for wrongful death pursuant to RSMo §537.080 state as follows:

41.    Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

42.    Plaintiffs are the son and daughter of Decedent and, as such, are the proper parties under Missouri's Wrongful Death Statute to bring this cause of action against Defendant Summersville.

43.    Defendant Maco was, at all relevant times, an agent of Defendant Summersville. At all relevant times, Defendant Maco acted within the scope of its agency with Defendant Summersville, and its acts and omissions are directly chargeable to its principal, Defendant Summersville under state law pursuant to *respondeat superior*.

44.    As a direct and proximate result of Defendant Maco's negligence as stated above, Decedent was forced to endure severe pain and suffering, as well as anxiety, mental distress, anguish, and ultimately death.

45.    As a further direct and proximate cause of the negligence of Defendant Maco as stated above, Plaintiffs have suffered immense loss in the passing of their mother, including but in no way limited to, loss her services, consortium, companionship, comfort, guidance, instruction, counsel, and support. Moreover, Decedent's death resulted in Plaintiffs' payment of expenses for her funeral and final disposition, as well as expenses for their own therapeutic treatment.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendant Summersville, for the wrongful death of Robin Rose Fischer, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

<u>**COUNT III – NEGLIGENT HIRING**</u>
**Against Defendants Maco and Summersville**

COMES NOW Plaintiffs Jennifer Bumeter and Eric Meier, and, pleading in the alternative to Counts I, II and III, state as follows:

46.     Plaintiffs hereby incorporate by this reference each of the foregoing paragraphs the same as though fully set forth herein.

47.     At all times relevant to Plaintiffs' claims, Ms. Sims was acting under an agreement to perform services for Defendants.

48.     At all times relevant to Plaintiffs' claims, Ms. Sims had dangerous proclivities which included, without limitation, a refusal and inability to perform the duties and obligations required of her in the performance of employment related tasks.

49.     Defendants knew or should have known of Ms. Sims' dangerous proclivities.

50.     Prior to the Incident, Defendants, by and through their employees and agents, committed one or more of the following acts of negligence associated with the dangerous proclivities of Ms. Sims:

a.    Negligently and carelessly failing to make a reasonable inquiry into Ms. Sims' competence to work as a property manager; and/or

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

b. Negligently and carelessly hiring or otherwise entrusting the management of their low-income housing complex to an inadequately trained, incompetent, or unfit property manager; and/or

c. Negligently and carelessly failing to properly train Ms. Sims to perform the duties and tasks required of her; and/or

d. Negligently and carelessly failing to properly oversee Ms. Sims in the performance of the duties and tasks required of her.

51. Defendants owed a duty to all tenants of Summersville Estates, including Decedent, to exercise reasonable care to determine the qualifications of its property manager when selecting him or her, and to adequately instruct, train and supervise such property manager in order to reasonably assure her or she would manage Summersville Estates in a non-negligent manner.

52. As a direct and proximate result of the aforesaid negligent and careless acts of Defendants, Ms. Sims was allowed to repeatedly cut corners in the performance of her job duties, including the performance of apartment inspections.

53. As a further direct and proximate result of the aforesaid negligent and careless acts of Defendants, Ms. Sims repeatedly failed to perform her job duties and did not ensure Decedent's apartment was properly equipped with functioning smoke detectors or fire suppression devices—resulting in Decedent's death.

WHEREFORE, Plaintiffs Jennifer Bumeter and Eric Meier pray for judgment against Defendants, jointly and severally, for such sum as is fair and reasonable, in an amount in excess of $25,000.00, together with prejudgment interest and all costs incurred herein, and for any such other relief as this Court deems just and proper under the circumstances.

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
    BRANDON J. KLAR, #72884
    RICHARD E. HANSON, #69589
    *Attorneys for Plaintiff*
    1125 Olivette Executive Parkway
    Suite 120
    St. Louis, Missouri, 63132
    Phone: (314) 863-1117
    Fax:    (314) 863-1118
    Email: bjklar@lawsaintlouis.com
           thanson@lawsaintlouis.com

EXHIBIT A - STATE COURT FILE

## IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

JENNIFER BUMETER, and )
ERIC MEIER, )
                )    Cause No.:    21TE-CC00360
      Plaintiffs, )
v. )
                )
MACO MANAGEMENT CO., INC., and )
SUMMERSVILLE ESTATES, L.P. )
                )
      Defendants. )

### MEMORANDUM IN OPPOSITION TO MOTION FOR APPOINTMENT OF A SPECIAL MASTER

COME NOW Plaintiffs, Jennifer Bumeter and Eric Meier, by and through undersigned counsel, and for their Memorandum in Opposition to Defendants' Motion to Appoint a Special Master, state as follows:

1. On December 20, 2022, Defendants filed their Motion for Appointment of a Special Master, pursuant to Missouri Rule 68.01.

2. This matter is presently set for jury trial, but the parties have requested a new scheduling order and trial date.

3. Missouri Rule 68.01 explicitly states that references to a master "**shall be the exception** and **not the rule**" (emphasis added). Mo. R. Civ. P. 68.01(b).

4. Missouri Rule 68.01 explicitly states that references to a master in an action tried by a jury "**shall only** be made when the issues are complicated". Mo. R. Civ. P. 68.01(b).

5. While neither the statute, nor Missouri case law defines "exceptional conditions," the United States Supreme Court has, to a limited degree, addressed the issue in *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957), reh'g denied, 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 560 (1957).

6. In *La Buy*, where the United States District Judge appointed a special master in a seemingly

1

complex antitrust suit under Federal Rule 53(b), the U.S. Supreme Court noted that the case had complex issues of fact and law but held that the complex issues did not arise to and were otherwise insufficient to warrant reference to a master. *See also*, *Russell v. Thompson*, 96 Nev. 830, 619 P.2d 537, 539 (1980); *Gaskie v. Gaskie*, 534 P.2d 629 (Colo. 1975); *Bell v. Bell*, 540 S.W.2d 432 (Tex. Civ. App. 1st Dist. 1976).

7. Missouri Rule 68.01(b) is based on Federal Rule 53(b).

8. The issues existing in this matter are not complicated. This is a wrongful death case based upon negligence, negligence per se and negligent hiring. There are no apparent medical issues, nor economic issues requiring expert testimony.

9. The Defendants cannot assert, as a basis for their request, congestion and aggravation caused by procedural "games" played by attorneys-as this does not provide sufficient cause for reference to a special master. *S.K.B. v. J.C.B.*, 867 S.W.2d 651, 658 (Mo. Ct. App. 1993).

10. Discovery disputes existing in this matter, although requiring motions now set to be heard by the Court on December 29, 2022, do not establish any grounds upon which a special master may be appointed.

11. Plaintiffs filed a Memorandum regarding a good faith effort to resolve discovery disputes on December 21, 2022, wherein they withdrew Plaintiffs' Motion regarding Defendants' refusal to appoint a corporate representative(s), Plaintiffs' Motion regarding Defendants' failure to follow the scheduling order provided by this Court on July 26, 2022, and Plaintiffs' Application for additional attorney's fees, filed October 27, 2022.

12. In the event this Court appoints a special master, Plaintiffs request Defendants bear all such costs.

EXHIBIT A - STATE COURT FILE

WHEREFORE, Plaintiffs pray this Court deny Defendants' Motion for Appointment of a Special Master, and for any other relief as is just and proper under the circumstances.

Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
  BRANDON J. KLAR  #72884
  RICHARD E. HANSON #69589
  *Attorneys for Plaintiffs*
  1125 Olivette Executive Parkway
  Suite 120
  St. Louis, Missouri, 63132
  Phone: (314) 863-1117
  Fax: (314) 863-1118
  Email: bjklar@lawsaintlouis.com
     thanson@lawsaintlouis.com

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of December, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Brandon J. Klar

3

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

**IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI**

| | |
|---|---|
| JENNIFER BUMETER, and ERIC MEIER, | ) |
| | ) |
| | )    Cause No.:     21TE-CC00360 |
| Plaintiffs, | ) |
| v. | ) |
| | ) |
| MACO MANAGEMENT CO., INC., and | ) |
| SUMMERSVILLE ESTATES, L.P. | ) |
| | ) |
| Defendants. | ) |

## <u>MEMORANDUM IN OPPOSITION TO MOTION FOR APPOINTMENT OF A SPECIAL MASTER</u>

COME NOW Plaintiffs, Jennifer Bumeter and Eric Meier, by and through undersigned counsel, and for their Memorandum in Opposition to Defendants' Motion to Appoint a Special Master, state as follows:

1. On December 20, 2022, Defendants filed their Motion for Appointment of a Special Master, pursuant to Missouri Rule 68.01.

2. This matter is presently set for jury trial, but the parties have requested a new scheduling order and trial date.

3. Missouri Rule 68.01 explicitly states that references to a master "**shall be the exception** and **not the rule**" (emphasis added). Mo. R. Civ. P. 68.01(b).

4. Missouri Rule 68.01 explicitly states that references to a master in an action tried by a jury "**shall only** be made when the issues are complicated". Mo. R. Civ. P. 68.01(b).

5. While neither the statute, nor Missouri case law defines "exceptional conditions," the United States Supreme Court has, to a limited degree, addressed the issue in *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957), reh'g denied, 352 U.S. 1019, 77 S.Ct. 553, 1 L.Ed.2d 560 (1957).

6. In *La Buy*, where the United States District Judge appointed a special master in a seemingly

1

EXHIBIT A - STATE COURT FILE

complex antitrust suit under Federal Rule 53(b), the U.S. Supreme Court noted that the case had complex issues of fact and law but held that the complex issues did not arise to and were otherwise insufficient to warrant reference to a master. *See also*, *Russell v. Thompson*, 96 Nev. 830, 619 P.2d 537, 539 (1980); *Gaskie v. Gaskie*, 534 P.2d 629 (Colo. 1975); *Bell v. Bell*, 540 S.W.2d 432 (Tex. Civ. App. 1st Dist. 1976).

7. Missouri Rule 68.01(b) is based on Federal Rule 53(b).

8. The issues existing in this matter are not complicated. This is a wrongful death case based upon negligence, negligence per se and negligent hiring. There are no apparent medical issues, nor economic issues requiring expert testimony.

9. The Defendants cannot assert, as a basis for their request, congestion and aggravation caused by procedural "games" played by attorneys-as this does not provide sufficient cause for reference to a special master. *S.K.B. v. J.C.B.*, 867 S.W.2d 651, 658 (Mo. Ct. App. 1993).

10. Discovery disputes existing in this matter, although requiring motions now set to be heard by the Court on December 29, 2022, do not establish any grounds upon which a special master may be appointed.

11. Plaintiffs filed a Memorandum regarding a good faith effort to resolve discovery disputes on December 21, 2022, wherein they withdrew Plaintiffs' Motion regarding Defendants' refusal to appoint a corporate representative(s), Plaintiffs' Motion regarding Defendants' failure to follow the scheduling order provided by this Court on July 26, 2022, and Plaintiffs' Application for additional attorney's fees, filed October 27, 2022.

12. In the event this Court appoints a special master, Plaintiffs request Defendants bear all such costs.

2

Electronically Filed - Texas - December 21, 2022 - 04:44 PM

WHEREFORE, Plaintiffs pray this Court deny Defendants' Motion for Appointment of a

Special Master, and for any other relief as is just and proper under the circumstances.


Respectfully Submitted,

KLAR, IZSAK & STENGER, L.L.C.

By: /s/ Brandon J. Klar
     BRANDON J. KLAR    #72884
     RICHARD E. HANSON   #69589
     *Attorneys for Plaintiffs*
     1125 Olivette Executive Parkway
     Suite 120
     St. Louis, Missouri, 63132
     Phone: (314) 863-1117
     Fax:   (314) 863-1118
     Email: bjklar@lawsaintlouis.com
            thanson@lawsaintlouis.com


CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of December, 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.


/s/ Brandon J. Klar

3

EXHIBIT A - STATE COURT FILE

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.     21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF HEARING MOTION SUMMARY**
**FOR DECEMBER 29, 2022**

For the Court and parties' convenience, please take notice that the following motions are

currently noticed for an **in-person** hearing on **December 29, 2022 at 1:00 PM** to be conducted **on**

**the record** at Phelps County Circuit Court before Judge Beger.

| Motion | Date Filed | Date Response Filed |
|---|---|---|
| Plaintiffs' Motion for Relief and 2nd Request for Sanctions | 7/27/22 | 8/5/22 |
| Plaintiffs' Motion to Compel and 3rd Request for Sanctions<br>Plaintiff's Memo in Support | 9/8/22<br><br>10/5/22 | 10/3/22 |
| Plaintiffs' Motion to Amend Scheduling Order and Request for Attorney Fees (4th Request for Sanctions) | 10/25/22 | 10/26/22 |
| Plaintiff's Application for Fees and Affidavit | 10/28/22 | 11/1/22 |
| Plaintiff's Motion for First Amended Scheduling Order | 12/14/22 | 12/21/22 |
| Defendants' Motion for an Order to Protect a Witness pursuant to Missouri Revised Statutes 491.600 | 10/3/22 | 10/5/22 |
| Defendants' Motion for Clarification and to Amend the July 26, 2022 | 8/26/22 | |
| Defendant's Motion for Protective Order to Limit Corporate Representative Topics and Document Production | 12/20/22 | |
| Defendant's Motion to Special Master | 12/20/22 | |

1

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim          #50853
Craig R. Klotz            #58850
Marie F. Pudlowski        #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of December 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Richard E. "Ted" Hanson
Klar, Izsak & Stenger, L.L.C.
1125 Olivette Executive Parkway
St. Louis, MO 63132
bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com
*Attorneys for Plaintiffs*                    /s/        MARIE F. PUDLOWSKI

2

Electronically Filed - Texas - December 21, 2022 - 11:51 AM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER, )
and ERIC MEIER, )
)
    Plaintiffs, )
)
v. )    Cause No.    21TE-CC00360
)
MACO MANAGEMENT CO., INC., )
and SUMMERSVILLE ESTATES, L.P., )
)
    Defendants. )

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR FIRST AMENDED CASE MANAGEMENT ORDER FILED 12/14/22

COMES NOW, Defendants Maco Management Co. Inc. and Summersville Estates, LP., by and through counsel, Childress Ahlheim Cary LLC, and in Response states as follows:

1. Plaintiffs filed a Motion for Entry of Scheduling Order on December 14, 2022, attaching a proposed order as Exhibit 1.

2. Plaintiffs did not provide a copy to Defendants or seek out Defendants position on Exhibit 1 prior to filing.

3. In a continued effort of cooperation, Defendants reviewed Exhibit 1 upon receipt via filing and sent Plaintiffs a redline version of the disputed language as well as reasoning for such disputes.

4. Plaintiffs and Defendants have come to compromises on most of the language. Please find attached the Agreed Order labeled Exhibit A with areas of agreement in black and areas of dispute redlined along with counsel's positions noted.

5. Based on the reasons above and contained in Exhibit A, Defendants request the Court enter an amended Case Management Order using the language set forth in Exhibit A.

WHEREFORE, Defendants pray this Court deny Plaintiff's Motion and enter an amended Case Management Order using the language set forth in Exhibit A, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim        #50853
Craig R. Klotz          #58850
Marie F. Pudlowski      #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of December 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

Brandon J. Klar
Richard E. "Ted" Hanson
Klar, Izsak & Stenger, L.L.C.
1125 Olivette Executive Parkway
St. Louis, MO 63132
bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com
*Attorneys for Plaintiffs*              /s/      MARIE F. PUDLOWSKI

2

## IN THE CIRCUIT COURT OF TEXAS COUNTY, STATE OF MISSOURI

JENNIFER BUMETER, and       )
ERIC MEIER,       )
      ) Cause No.:     21TE-CC00360
       Plaintiffs,       )
      )
v.       )
      )
MACO MANAGEMENT CO., INC., and       )
SUMMERSVILLE ESTATES, L.P.       )
      )
       Defendants.       )

### AGREED AMENDED CASE MANAGEMENT SCHEDULING ORDER

NOW ON THE DATE reflected below, this matter was called and heard before the Court. Plaintiffs and Defendants appear by and through their respective counsel and present this Agreed First Amended Case Management Scheduling Order. The Court, being fully advised in the premises, hereby enters the following Orders:

1. All requests to amend pleadings and/or add parties shall be filed no later than April 3, 2023. All Continuance requests, saving and accepting death or illness of a party or lead counsel, will be denied if not filed before October 1, 2023.

2. Plaintiffs shall disclose and designate all experts (retained and non-retained) on or before **May 10, 2023.** Along with Plaintiffs' disclosure(s) and designation(s), Plaintiffs shall provide three (3) dates for each expert to be deposed on or before **July 11, 2023.**

3. Defendants shall disclose and designate all experts (retained and non-retained) on or before **August 1, 2023.** Along with Defendants' respective disclosure(s) and designation(s), Defendants shall provide three (3) dates for each expert to be deposed on or before **October 1, 2022.**

**Commented [MP1]:** I have never seen such language in an order nor do I see it as necessary. The Court can always deny any such request that lacks good cause. This language limits both our clients' rights. Given neither of know exactly know how this matter will progress, I do not feel comfortable agreeing to such a restriction to my clients rights. I see no gain from this provision and only potential harm to both our clients.

Please advise as to your position.

**Commented [RE"H2R1]:** We used this all the time in Texas. It prevents everyone getting ready for trial and then having a motion filed for some reason like expert conflict or something. I like it if you want to put it closer to the trial date 12-1-23 that's ok.

**Commented [MP3R1]:** We cannot agree to this restrictive language. We can present the language to the Court for a decision on such.

EXHIBIT A

<p style="writing-mode: vertical-rl">Electronically Filed - Texas - December 21, 2022 - 11:51 AM</p>

4. Any rebuttal expert(s) named by Plaintiffs shall be disclosed and designated on or before **October 15, 2023.** Plaintiffs shall provide two (2) dates for each rebuttal expert to be deposed on or before **November 15, 2023.**

5. All fact discovery shall be *completed* and shall close (i.e., all written discovery, including responses to timely propounded discovery requests, and depositions) on or before **December 1, 2023.** Discovery may not be conducted after the closure date except by agreement of the parties or a prior order of the Court for good cause shown upon the filing of a timely motion to extend discovery filed *before* the original closure date. Nothing contained herein shall excuse the party from the continuing obligation to update responses to discovery or to respond to discovery requests made before the closure date set forth above.

6. All dispositive motions shall be filed on or before, **December 10, 2023.** Any dispositive motion filed after said date will not be considered.

7. No later than **fourteen (14) days** before the pre-trial conference, counsel shall provide to the Court and/or file with the Court all Motions in Limine, deposition designations and interrogatory designations; provided, however, that in the event a deposition transcript has not yet been received, then the party shall have **seven (7) days** after receipt of such deposition transcript to file the deposition designation for such deposition. Any party opposing such designation(s) shall provide to the Court, and/or file with the Court, their opposition/objections thereto, no later than **seven (7) days** before the pre-trial conference.

8. No later than **seven (7) days** before the pre-trial conference, counsel shall provide the Court with an electronic copy of proposed jury instructions by e-mailing said proposed instructions in Word (.doc or .docx) format.

Electronically Filed - Texas - December 21, 2022 - 11:51 AM

9.  The parties shall file and exchange witness, deposition testimony, exhibit lists, as well as all exhibits they anticipate offering, **seven (7) days** prior to trial.

10. Trial in this matter will have the first setting and will take place over **two (2) weeks** starting **February**    , 2024 with pre-trial set on    , 2024. **The case is set #1 on the Court's docket.**

EXHIBIT A - STATE COURT FILE

EXHIBIT A

**IT IS SO ORDERED.**

_____          _____
December     , 2022                The Honorable John D. Berger

Prepared, Approved, and Submitted by:

KLAR, IZSAK & STENGER, L.L.C.

*/s/ Brandon J Klar*
_____
Bradon J. Klar,         MO Bar#72884
Richard E. "Ted" Hanson, MO Bar #69589
1125 Olivette Executive Parkway
St. Louis, MO 63132
Telephone: (314) 863-1117
Facsimile: (314) 863-1118
Email:
bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com

**ATTORNEYS FOR PLAINTIFFS**

Electronically Filed - Texas - December 21, 2022 - 11:51 AM

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim     #50853
Craig R. Klotz       #58850
Marie F. Pudlowski   #64228
\1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

EXHIBIT A - STATE COURT FILE

EXHIBIT A

Electronically Filed - Texas - December 28, 2022 - 03:42 PM

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

JENNIFER BUMETER,                    )
and ERIC MEIER,                      )
                                     )
        Plaintiffs,                  )
                                     )
v.                                   )     Cause No.     21TE-CC00360
                                     )
MACO MANAGEMENT CO., INC.,           )
and SUMMERSVILLE ESTATES, L.P.,      )
                                     )
        Defendants.                  )

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED PETITION**

COME NOW, Defendants Maco Management Co. Inc. and Summersville Estates, LP., by and through counsel, Childress Ahlheim Cary LLC, and in Response to Plaintiffs' Motion for Leave to File Second Amended Petition state as follows:

1. On Thursday, December 22, 2022, Plaintiffs filed a Motion for Leave to File the Second Amended Petition without providing any advance notice or warning to Defendants. This Second Amended Petition adds two additional counts—a count for negligence per se (based on a Federal Fair Housing Regulation) and a count for negligent hiring.

2. There are several factors that the trial court should consider in determining whether to grant leave to amend a pleading, which include the hardship to the moving party if leave to amend is denied, the moving party's reasons for failing to include any new matter in earlier pleadings, the timeliness of the motion for leave to amend, whether the proposed amendment would cure the moving party's inadequate pleading, and any injustice to the opposing party if the motion for leave to amend is granted. *Firemen's Ret. Sys. v. City of St. Louis*, 2006 WL 2403955,

EXHIBIT A - STATE COURT FILE

at *5 (Mo. Ct. App. Aug. 22, 2006).  The trial court does not err when it denies a motion to amend a pleading to assert a non-meritorious claim.  *Id.*

3.  Over the last two months and in anticipation of the upcoming hearing on December 29, 2022, related to numerous discovery disputes, Defendants spent significant time agreeing to a revised scheduling order, agreeing to a date for a corporate representative deposition, working to form agreements on numerous other depositions, responding to additional requests for production, responding to 48 corporate representative topics, and attempting to reach agreements on discovery disputes where possible.

4.  **All such discussions, agreements, and associated pleadings were based on the First Amended Petition. No new discovery was exchanged. At no point during any of the numerous correspondence and discussions related to the numerous discovery disputes did Plaintiffs' counsel advise of their intention of filing additional claims or an amended petition.**

5.  Instead, Plaintiffs waited until Defendants filed their positions and agreements based on the First Amended Petition, and within 24 hours Plaintiffs filed the Second Amended Petition. Plaintiffs based their responses to Defendants' positions on the Second Amended Petition that was not even in existence at the time Defendants filed their responses, attempted resolution with Plaintiffs, or made agreements with Plaintiffs.

6.  Moreover, the Second Amended Petition adds a non-meritorious, negligence per se claim based on federal law.[1]

---

[1] Plaintiffs' Second Amended Petition sets forth a negligence per se claim under count I, citing 7 CFR §3560.103(xx).  7 CFR §3560.103 also states:

> At all times, borrowers must maintain housing projects in compliance with local, state and federal laws and regulations **and according to the following Agency requirements for affordable, decent, safe, and sanitary housing . . . The Agency acknowledges that property maintenance is an ongoing process and will <u>not</u> penalize borrowers for less than 100 percent compliance as long as it is evident that the borrower is striving to achieve the standards listed in this**

7. Granting leave to file the Second Amended Petition at this time has and will result in prejudice to Defendants. Granting leave will also likely result in a motion to dismiss, or in the alternative, a motion for removal to federal court. Granting leave significantly impacts parties' positions and the Court's ruling on the numerous pending discovery disputes.

8. This filing (without any notice) immediately after significant time and expense went into responding and attempting agreements of discovery does not reflect good faith or an effort of cooperation, especially considering such filing could have taken place two months ago given no new discovery/evidence has been exchanged.

9. For all these reasons, Defendants request the Court deny the motion for leave based on the addition of a non-meritorious claim of negligence per se, or alternatively, the Court make an order:

    a. Granting Defendants until January 31, 2023 to file responsive pleadings;

    b. Pausing all discovery, including pending depositions, until pleadings are finalized;

    c. Continuing the hearing and rulings on the pending discovery disputes/motions until pleadings are finalized; and

    d. Postponing the entry of any scheduling order until pleadings are finalized.

---

**paragraph.** In addition, the Agency understands that although its multifamily housing portfolio is relatively homogeneous, no one standard is appropriate for all properties. 7 CFR §3560.103(a)(3) (emphasis added)

. . .

The Agency expects that upon discovery of a condition not in compliance with the standards listed in this section that the borrower will remedy the situation in a timeframe required by the Agency. The Borrower must provide documentation and justification for any failure to meet such timeframe. **Properties with deficiencies in the process of being addressed will not be deemed to be out of compliance unless there are so many deficiencies that it would result in a declaration of substantial noncompliance and call into questions the viability of the property and the effectiveness of the borrower's maintenance program.** Failure to make such corrections or repairs constitutes a non-monetary default under § 3560.452(e). 7 CFR §3560.103(a)(4) (emphasis added).

WHEREFORE, Defendants pray this Court deny Plaintiff's Motion for Leave or enter an Order as requested above, and for any other relief as this Court deems just and proper.

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
David T. Ahlheim      #50853
Craig R. Klotz        #58850
Marie F. Pudlowski    #64228
1010 Market Street, Suite 500
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
dahlheim@jchildresslaw.com
cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 28th day of December 2022, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon counsel of record.

/s/      MARIE F. PUDLOWSKI

4

EXHIBIT A - STATE COURT FILE

 

**THE JUDICIAL BRANCH OF STATE GOVERNMENT**

--Select Destination-- ▾

Case.net  |  Courts Home  |  My Account  |  eFiling Info

**log out mfpudlowski - 64228**

### File on Existing Case Confirmation

Thank you for your submission on **1/12/23 at 4:04 PM**. Below is important information regarding this submission. You will receive e-mails from the eFiling System regarding the status of your submission. This page is printer friendly.

If you need to contact the clerk about this submission or if you need to submit another filing and you do not have the case number, please use the following.

**eFiling Confirmation Number:**  EF29504988

The following information and documents were submitted with this filing.

**Filer Reference Number:**  None entered by filer

**No filing fee or payment information on this filing.**

#### Case

**Court Case Number:** 21TE-CC00360

**Court Case Description:** JENNIFER BUMETER ET AL V MACO MANAGEMENT COM ET AL

Wrongful Death filed in Texas County - Circuit Court

**Notes to Clerk:**  None entered by filer

#### Document

**Proposed Document - Order (other)**

Agreed Order for 12.29.23 Hearing

    **Attachments**

    Exhibit A Proposed No Contact Order

    Electronic Filing Certificate of Service

#### eService

| Party | Service E-mail Address |
|---|---|
| RICHARD EDWARD HANSON, Co-Counsel for Petitioner | thanson@lawsaintlouis.com |
| CRAIG KLOTZ, Attorney for Respondent | cklotz@jchildresslaw.com |
| Party | Service E-mail Address |
|  | bjklar@lawsaintlouis.com |

BRANDON  JACOB
KLAR, Attorney for
Petitioner

**Party**                          **Service E-mail Address**

LINDA  MARIE                       linda.freeman@mspd.mo.gov,
FREEMAN, Attorney                  lfreeman@jchildresslaw.com,
for Respondent                     lfreeman@marlerlawpartners.com,
                                   lfreeman@sfcgov.org

**Party**                          **Service E-mail Address**

DAVID  THOMAS
AHLHEIM, Attorney                  dahlheim@jchildresslaw.com
for Respondent

EFILINGMENU

eFiling Version 1.5.57.6                                              Released 12/09/2022

JENNIFER BUMETER,　　　　　　　　　)
and ERIC MEIER,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　Cause No.　　21TE-CC00360
　　　　　　　　　　　　　　　　　　　)
MACO MANAGEMENT CO., INC.,　　　　)
and SUMMERSVILLE ESTATES, L.P.,　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　)

## AGREED ORDER REGARDING
## ORDERS FROM THE 12.29.2022 HEARING

Counsel for Defendants, Marie Pudlowski and Craig Klotz, and counsel for Plaintiffs, Brandon Klar and Richard Hanson, appeared for an in-person hearing at Phelps County Circuit Court before Judge Beger in chambers on December 29, 2022 regarding numerous pending motions. At the request of this Court, the parties submitted the following Proposed Order regarding the 12.29.22 hearing.

The following Motions were not argued:

1. Plaintiffs' Memorandum in Support of Motion for Relief filed July 27, 2022;

2. Plaintiffs' Motion to Compel filed September 8, 2022 and Memorandum in Support filed October 5, 2022; (said motion remains pending)

3. Plaintiffs' Motion to Amend Scheduling Order and Request for Attorney Fees filed October 25, 2022;

4. Plaintiff's Application for Fees and Affidavit filed October 28, 2022; and

5. Plaintiff's Motion for First Amended Scheduling Order filed December 14, 2022.

Following argument from the parties on all remaining motions and review of the pleadings, this Court orders as follows:

1. The Court grants Plaintiffs' Motion for Leave to File Second Amended Petition. Defendants are granted thirty (30) days, through and including January 28, 2023, to file responsive pleadings.

2. The Court grants in part and denies in part Defendants' Motion for Protective Order to Limit Corporate Representative Topics and Document Production filed December 20, 2022. The Court limits the topics and requests for production to the language set forth below and orders Defendants to produce the following within thirty (30) days, through and including January 28, 2023 and/or testify to such matters during subsequent deposition:

   a. Employment contract(s) between Maco Management Co., Inc. and Dawn Sims; Employment contract(s) between Summersville Estates, L.P. and Dawn Sims; and any other documents evidencing the list of duties for both the Property Manager and Maintenance positions held by Dawn Sims with Maco Management Co., Inc. and Summersville Estates, L.P. *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #2*

   b. All documents regarding the performance of all inspections reports and the completion of all inspection reports for <u>all</u> units and buildings at Summersville Estates for the period between September 1, 2018 and July 7, 2021 (10 days post-incident), *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #4*

EXHIBIT A - STATE COURT FILE

c. All documents regarding the physical state, type, model, age and operating condition of all smoke detectors/alarms in all units at Summersville Estates for the period between September 1, 2018 and July 7, 2021 (10 days post-incident)– *Plaintiffs' Corporate Representative Deposition Topic and Request for Production #5*

d. Objection to *Plaintiffs' Corporate Representative Deposition Topic and Request for Production #9* is sustained.

e. Provide testimony regarding the relationship maintained between any employee of Maco Management Co., Inc., any employee of Summersville Estates L.P., and/or any member(s) of the Summersville Police Department. *–Plaintiffs' Corporate Representative Deposition Topic #11*

f. All documents regarding issues with fire alarm or smoke detector batteries, including their replacement in any unit managed by Maco Management and located at Summerville Estates which are not documented in work order, incident reports, the "fire stop and smoke alarm log" identified by Dawn Sims, or police reports, if any, for the period between September 1, 2018 and July 7, 2021 (10 days post-incident). *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #16*

g. Provide testimony regarding all knowledge of inspections regarding fire safety made by a third party or governmental agency which inspected the Summersville Estates property for any fire safety reason or a fire code violation which Defendant or Summersville Estates, L.P. was supposed to meet or be incompliance with local state or federal laws and regulations, for the period

EXHIBIT A - STATE COURT FILE

between September 1, 2018 and July 7, 2021 (10 days post-incident). – *Plaintiffs' Corporate Representative Deposition Topic #22*

h. All documents related to any discussions, meetings, electronic messages or conversations between Maco Management employees and their supervisors regarding requests for service or maintenance concerning smoke detectors or fire alarms at Summersville Estates, for the period between September 1, 2018 and July 7, 2021 (10 days post-incident). *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #25*

i. Objection to *Plaintiffs' Corporate Representative Deposition Topic and Request for Production #27* is sustained.

j. Any applicable primary and/or umbrella policies. *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #30*

k. All documents related to any meetings, discussions, or conferences with tenants of Summersville Estates concerning fire safety, whether initiated by Maco Management, a fire department, or a governmental body, for the period between September 1, 2018 and July 7, 2021 (10 days post-incident). *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #32*

l. Any contract or agreement between Maco Management Co., Inc. or Summersville Estates, L.P. and any entity granting them Section 8, Section 515, or other HUD classification, for the period between September 1, 2018 and the Incident Date related to Summersville Estates. *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #33*

EXHIBIT A - STATE COURT FILE

m. All documents related to specific details regarding the hiring and training process (including any and all procedures and policies followed to onboard a new employee) of Property Managers at Summersville Estates. *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #34*

n. Provide testimony regarding fire safety related facts relating to all employees responsible for conducting fire safety inspections at Summersville Estates, including the frequency such inspections were performed in the five (5) year period preceding the Incident Date. *–Plaintiffs' Corporate Representative Deposition Topic #36*

o. Contact information for tenants and former tenants of Summersville Estates during the period of September 1, 2018 and August 26, 2021 (60 days post-incident). *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #39*

p. All documents related to actions taken to verify the apartment units at Summerville Estates are inspected and meet the standards set forth in Defendants' policies and procedures, for the period between September 1, 2018 and July 7, 2021 (10 days post-incident) *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #42*

q. All documents related to Defendants' knowledge of any statements/reports made by tenants (or former tenants) of Summersville Estates to any of Defendants' agents/representatives regarding Ms. Dawn Sims' purported misconduct or failure to complete her job duties as property manager or

EXHIBIT A - STATE COURT FILE

maintenance personnel related to fire safety. *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #43*

r. Any contract or agreement between Maco Management Co., Inc. or Summersville Estates, L.P. and any entity granting them Section 8, Section 515, or other HUD classification, for the period between September 1, 2018 and the Incident Date related to Summersville Estates. *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #44*

s. Objection to *Plaintiffs' Corporate Representative Deposition Topic and Request for Production #45* is sustained.

t. Capital improvements and the amounts budgeted for capital improvements at Summersville Estates for the period between September 1, 2018 and July 7, 2021 (10 days post-incident), including fire safety. *–Plaintiffs' Corporate Representative Deposition Topic and Request for Production #48*

3. The Court grants Defendants' Motion for Clarification and to Amend the July 26, 2022 Order filed August 26, 2022. The Court clarifies the July 26, 2022 Order by clarifying the language in provisions a. and b. to state:

a. Those parts of Susan Austin's deposition testimony in response to **all** exhibits that were not previously disclosed by Defendants in written discovery (that is Exhibits A, B, C, D, E, F, G, H, J, K, M, T, U, and Unmarked Recording) are stricken and will not be allowed to be used at trial or in further deposition of Ms. Austin.

EXHIBIT A - STATE COURT FILE

b. **All** exhibits not previously disclosed by Defendants in written discovery (that is Exhibits A, B, C, D, E, F, G, H, J, K, M, T, U, and Unmarked Recording) are stricken and not to be used until properly disclosed.

4. The Court grants Defendants' Motion for an Order to Protect a Witness pursuant to Missouri Revised Statute 491.600. The Court will serve an Order of No Contact on witness Susan Austin, proposed Order of No Contact attached as **Exhibit A**.

5. The Court defers Defendants' Motion to Appoint a Special Master at this time.

6. By agreement of the parties and Order of the Court, all previously noticed depositions are hereby cancelled with parties to re-notice and/or notice depositions for agreed dates after finalization of the amended pleading and production of documents responsive to corporate representatives' notices. Plaintiffs will file a Notice with this Court canceling the corporate representative depositions previously noticed for January 19, 2023.

**SO ORDERED this _____ day of January 2023.**

_____
**Honorable John D. Beger**

EXHIBIT A - STATE COURT FILE

*Submitted and approved by:*

CHILDRESS AHLHEIM CARY LLC

BY:/s/ MARIE F. PUDLOWSKI
Craig R. Klotz          #58850
Marie F. Pudlowski     #64228
St. Louis, Missouri 63101
314-621-9800
314-621-9802 (fax)
cklotz@jchildresslaw.com
mpudlowski@jchildresslaw.com
*Attorneys for Defendants*

And

KLAR, IZSAK & STENGER, L.L.C.

BY:/s/ Richard E. Hansen (with consent)
Brandon J. Klar,        #72884
Richard E. Hanson,      #69589
1125 Olivette Executive Parkway, Suite 120
St. Louis, MO 63132
bjklar@lawsaintlouis.com
thanson@lawsaintlouis.com
*Attorneys for Plaintiffs*

IN THE CIRCUIT COURT OF TEXAS COUNTY
STATE OF MISSOURI

| | | |
|---|---|---|
| JENNIFER BUMETER, | ) | |
| and ERIC MEIER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Cause No.    21TE-CC00360 |
| | ) | |
| MACO MANAGEMENT CO., INC., | ) | |
| and SUMMERSVILLE ESTATES, L.P., | ) | |
| | ) | |
| Defendants. | ) | |

## NO CONTACT ORDER AND PROHIBITION

| **Witness before the Court** | | **Witness before the Court** | |
|---|---|---|---|
| **to be Prohibited:** | Susan Carol Austin | **to be Protected:** | Dawn Marie Sims |
| Date of Birth: | 03/04/1958 | | |
| Address: | 720 Apricot | | |
| | Doniphan, Missouri | | |
| | 53935 | | |

**You, Susan Austin, are hereby DIRECTED and ORDERED to refrain from all contact by any means with Dawn Sims until a dismissal or final judgment is reached in the above matter. Such prohibited contact includes but is not limited to directly contacting Dawn Sims or directing a third-party to contact Dawn Sims via her personal email, her general work email (summersville@macoapts.com), her personal phone, her general work phone (417-932-6601), her social media accounts, at her place work, or at her home address.**

Pursuant to Missouri Revised Statute 491.600:

Any court with jurisdiction over any criminal matter may, in its discretion, upon substantial evidence, which may include hearsay, that intimidation or dissuading of any person who is a victim or who is a witness has occurred or is reasonably likely to occur, issue orders including but not limited to the following:

(1) An order that a defendant not engage in activity as defined by section 575.270 and maintain a prescribed geographic distance from a witness or victim;

(2) An order that a person before the court other than a defendant, including but not limited to a subpoenaed witness or other person entering the courtroom of said court, not engage in activity as defined by section 575.270, and maintain a prescribed geographic distance from a witness or victim;

(3) An order that any person described in subdivision (1) or (2) of this section have no connection whatsoever with any specified witness or any victim, except through an attorney under such reasonable restrictions as the court may impose.

Pursuant to Missouri Revised Statute 575.270:

1. A person commits the offense of tampering with a witness or victim if:

(1) With the purpose to induce a witness or a prospective witness to disobey a subpoena or other legal process, absent himself or herself, avoid subpoena or other legal process, withhold evidence, information, or documents, or testify falsely, he or she:

(a) Threatens or causes harm to any person or property; or

(b) Uses force, threats or deception; or

(c) Offers, confers or agrees to confer any benefit, direct or indirect, upon such witness; or

(d) Conveys any of the foregoing to another in furtherance of a conspiracy; or

(2) He or she purposely prevents or dissuades or attempts to prevent or dissuade any person who has been a victim of any crime or a person who is acting on behalf of any such victim from:

(a) Making any report of such victimization to any peace officer, state, local or federal law enforcement officer, prosecuting agency, or judge;

(b) Causing a complaint, indictment or information to be sought and prosecuted or assisting in the prosecution thereof;

(c) Arresting or causing or seeking the arrest of any person in connection with such victimization.

2. The offense of tampering with a witness or victim is a class A misdemeanor, unless the original charge is a felony, in which case tampering with a witness or victim is a class D felony. Persons convicted under this section shall not be eligible for parole.

**SO ORDERED this _____ day of January 2023.**

_____
**Honorable John D. Beger**

### Directions to Clerk

The No Contact Order and Prohibition should be signed by the Judge under seal of the Court and a copy of the No Contact Order and Prohibition should be delivered to the Ripley County Sheriff for personal service on Susan Carol Austin at 720 Apricot Doniphan, Missouri 53935.

2

EXHIBIT A - STATE COURT FILE

**Return on Service**
**of the No Contact Order and Prohibition**

I hereby certify that I have served the within No Contact Order and Prohibition by delivering on the _____day of_____, 2023 a copy of the No Contact Order and Prohibition to Susan Carol Austin.

All done in Ripley County, Missouri

_____

Sheriff of Ripley County, Missouri

3

EXHIBIT A - STATE COURT FILE